**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SPENCER MEYER, individually and on behalf of those similarly situated, <br><br>                      Plaintiffs, <br><br>    v. <br><br> TRAVIS KALANICK, <br><br>                      Defendant. | **Case No. 1:15-cv-9796 (JSR)** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT TRAVIS KALANICK'S MOTION FOR RECONSIDERATION OF THE**
**COURT'S HOLDING REGARDING PLAINTIFF'S CLASS ACTION WAIVER**

BOIES, SCHILLER & FLEXNER LLP

Karen L. Dunn
William A. Isaacson
Ryan Y. Park
5301 Wisconsin Ave, NW
Washington, DC 20015
Tel:  (202) 237-2727
Fax:  (202) 237-6131
kdunn@bsfllp.com
wisaacson@bsfllp.com
rpark@bsfllp.com

Alanna C. Rutherford
Peter M. Skinner
575 Lexington Ave, 7th Floor
New York, NY 10022
Tel:  (212) 446-2300
Fax:  (212) 446-2350
arutherford@bsfllp.com
pskinner@bsfllp.com

*Counsel for Defendant Travis Kalanick*

April 14, 2016

## Table of Contents

FACTUAL AND PROCEDURAL BACKGROUND ...................................................................2

STANDARD OF REVIEW ...................................................................................................4

ARGUMENT ......................................................................................................................5

I.      Defendant Can Seek to Enforce the Class Waiver Without Compelling
        Arbitration. .............................................................................................................5

    A.  The Plain Language of Plaintiff's User Agreement Bars Class Actions
        Irrespective of Arbitration ..................................................................................5

    B.  Controlling Law Permits Defendant to Enforce the Class Waiver Without
        Arbitrating this Dispute .......................................................................................7

II.     Mr. Kalanick, a Non-Signatory, Can Enforce the Class Waiver Provision. ..................9

    A.  Defendant, as Uber's CEO, Can Enforce the Class Waiver in Uber's User
        Agreement ............................................................................................................9

    B.  Because Plaintiff Benefited from the User Agreement and Because His Claims
        Are Intertwined with the User Agreement, He is Equitably Estopped From
        Avoiding the User Agreement's Class Waiver ........................................................11

    CONCLUSION....................................................................................................................14

## Table of Authorities

**Cases**

*Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*,
  170 F.3d 349 (2d Cir. 1999) .................................................................................11

*American Express Co. v. Italian Colors Restaurant*,
  133 S. Ct. 2304 (2013) .......................................................................................6

*Ass'n of Veterinarians for Animal Rights v. Sacramento Cty. Animal Care & Regulation*,
  No. C049105, 2006 WL 1413428 (Cal. Ct. App. May 23, 2006) .............................8

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ........................................................................................6, 7

*Benedict v. Greer-Robbins Co.*,
  26 Cal.App. 468 (1915) ......................................................................................8

*California Bank & Trust, Inc. v. Tate-Mann*,
  No. B234477, 2012 WL 1330446 (Cal. Ct. App. Apr. 18, 2012) ............................8

*Choctaw Generation Ltd. Partnership v. American Home Assur. Co.*,
  271 F.3d 403 (2d Cir. 2001) .............................................................................7, 10

*Comer v. Micor, Inc.*,
  436 F.3d 1098 (9th Cir. 2006) ...........................................................................11

*Contec Corp. v. Remote Solution, Co.*,
  398 F.3d 205 (2d Cir. 2005) ..............................................................................10

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
  352 F.3d 775 (2d Cir. 2003) ..............................................................................13

*Dataserv, Ltd. v. Mgmt. Techs., Inc.*,
  No. 90 Civ. 7759  (SWK), 1993 WL 138852 (S.D.N.Y. Apr. 27, 1993).................11

*DIRECTV, Inc. v. Imburgia*,
  136 S. Ct. 463, 469 (2015) ................................................................................14

*Discover Bank v. Superior Court*,
  113 P.3d 1100 (Cal. 2005)..................................................................................7

*Dryer v. L.A. Rams*,
  40 Cal. 3d 406 (1985).........................................................................................9

*EchoStar Satellite L.L.C. v. ESPN, Inc.*,
  79 A.D.3d 614 (N.Y. App. Div. 1st Dept. 2010)....................................................8

*Fed. Ins. Co. v. Am. Home Assurance Co.*,
  639 F.3d 557 (2d Cir. 2011) ...........................................................................................7

*Finance One Public Co. Ltd. v. Lehman Bros. Special Fin., Inc.*,
  414 F.3d 325 (2d Cir. 2005) ...........................................................................................7

*Int'l Chartering Servs., Inc., v. Eagle Bulk Shipping Inc.*,
  No. 12 Civ. 3463, 2015 WL 5915958 (S.D.N.Y. Oct. 8, 2015) ............................................12

*Irwin v. UBS Painewebber, Inc.*,
  324 F. Supp. 2d 1103 (C.D. Cal. 2004) .............................................................................8

*Jacobson v. Snap-on Tools Co.*,
  15 Civ. 2141 (JD), 2015 WL 8293164 (N.D. Cal. Dec. 9, 2015)...........................................10

*JLM Indus. v. Stolt-Nielsen SA*,
  387 F.3d 163 (2d Cir. 2004) ...........................................................................................12

*JSM Tuscany, LLC v. Superior Court*,
  193 Cal. App. 4th 1222 (2011) ...................................................................................7, 13

*Kerr-McGee Refining Corp. v. M/T Triumph*,
  924 F.2d 467 (2d Cir. 1991) ...........................................................................................13

*Magi XXI, Inc. v. Stato della Citta del Vaticano*,
  714 F.3d 714 (2d Cir. 2013) ...........................................................................................12

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
  500 F.3d 171 (2d Cir. 2007) .............................................................................................6

*Merrill Lynch Int'l Fin. Inc. v. Donaldson*,
  28 Misc. 3d 391 (N.Y. Sup. Ct. 2010) ...............................................................................9

*Metalclad Corp. v. Ventana Envt'l Org. P'ship*,
  109 Cal. App. 4th 1705 (2003) .......................................................................................11

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*,
  473 U.S. 614 (1985).......................................................................................................13

*Munafo v. Metro. Transp. Auth*,
  381 F.3d 99 (2d Cir. 2004) ...............................................................................................5

*NetTech Solutions, L.L.C. v. ZipPark.com*,
  No. 01 Civ. 2683, 2001 WL 1111966 (S.D.N.Y. Sept. 20, 2001)............................................8

*Palmer v. Convergys Corp.*,
  No. 10 Civ. 145 (HL), 2012 WL 425256 (M.D. Ga. Feb. 9, 2012) .........................................8

*R.A.C. Holding, Inc. v. City of Syracuse*,
    258 A.D.2d 877 (N.Y. App. Div. 4th Dept. 1999) ................................................................ 11

*Ross v. Am. Express Co.*,
    547 F.3d 137 (2d Cir. 2008) ............................................................................................... 9

*Rowe v. Exline*, 153 Cal. App. 4th 1276, 1284 (2007) ................................................................ 9

*Shrader v. CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995) ................................................................................................ 4

*Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Int'l, Inc.*,
    198 F.3d 88 (2d Cir. 1999) ................................................................................................ 10

*U1it4Less v. FedEx Corp.*,
    No. 11 Civ. 1713(KBF), 2015 WL 3916247 (S.D.N.Y. June 25, 2015) ....................... 7, 8, 13

*United States v. Woods*,
    469 U.S. 70 (1984) ........................................................................................................... 6

*Waggoner v. Dallaire*,
    649 F.2d 1362 (9th Cir. 1981) ........................................................................................... 13

**Rules**

Fed. R. Civ. P. 54(b) ................................................................................................................... 4

## PRELIMINARY STATEMENT

Defendant Travis Kalanick respectfully requests that this Court reconsider a narrow and discrete issue.  Namely, Defendant requests that the Court reconsider its conclusion that Plaintiff Spencer Meyer is not bound by the class waiver to which he expressly agreed.  The Court's conclusion that Plaintiff is not bound by this waiver is premised on two errors of law: (1) that the waiver of Plaintiff's right to bring a class action is effective only if Defendant moves to compel arbitration, and (2) that Defendant cannot enforce Plaintiff's class waiver as a non-signatory to the User Agreement between Plaintiff and Uber Technologies, Inc. ("Uber").

The Court's first conclusion—that the class waiver is effective only if the arbitration provision is enforced—is at odds with both the User Agreement (which Plaintiff indisputably agreed to when he signed up), and relevant authority both within and outside this Circuit.  The plain language of Plaintiff's User Agreement provides: "You acknowledge and agree that you and Company are each waiving the right to a trial by jury *or* to participate as a plaintiff or class User in any purported class action or representative proceeding."  (emphasis added).  The Supreme Court has held—twice—that such class waivers are enforceable, and two district courts—one within this district—have held that such waivers are enforceable regardless of whether a party enforces an arbitration provision.  These decisions are consistent with the universal principle of contract law that a party may choose not to enforce a contractual right without affecting the enforceability of other rights.

The Court's second conclusion—that Defendant cannot enforce the class waiver against Plaintiff as a non-signatory to the User Agreement—is also at odds with the law.  There are two bases for Defendant to enforce the class waiver: (1) agency, and (2) equitable estoppel.  Agency allows a non-signatory agent to enforce a contract entered into by a signatory principal.  As

alleged, Defendant is Uber's co-founder and Chief Executive Officer who can enforce the class waiver as to Plaintiff.  Defendant can also enforce the class waiver through equitable estoppel. Equitable estoppel applies where, as here, a signatory has benefited from the underlying agreement—as Plaintiff has by using the Uber App—and where, as here, the signatory's claims are inextricably intertwined with the underlying Agreement—which here includes a specific provisions regarding pricing, which are at the heart of Plaintiff's case.  Both agency and equitable estoppel then apply here and permit Defendant to enforce the class waiver in the User Agreement.

Defendant does not bring this motion lightly.  He is sensitive to the Court's busy docket and wary of adding to the Court's burden.  But this issue is important—indeed critical—to the shape and scope of this case.  Given its import, and given the relative brevity of the Court's Order on this issue—one short footnote—Defendant requests that the Court reconsider Plaintiff's class waiver and conclude, consistent with both the law and Plaintiff's agreed-upon class waiver, that Plaintiff's case cannot proceed as a class action and dismiss Plaintiff's class claims.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Spencer Meyer, like all users of the Uber App, expressly agreed to Uber's terms and conditions "in exchange for [an] Uber Account[] and access to the Uber App."  Am. Compl. ¶¶ 28-29.  Meyer agreed that "[i]n order to use the [Uber App] you must agree to the terms and conditions that are set out below."  Declaration of Michael Colman to Defendant's Travis Kalanick's Motion To Dismiss, Dkt No. 29, Ex. 1 ("User Agreement") at 1 (Feb. 8, 2016); *see*

---

[1] This Court ordered Defendant to file both its motion for reconsideration and its Answer to the First Amended Complaint on the same day.  As the Court stated, the filing of the Answer will not moot consideration of the issues raised by Defendant's motion and to the extent the Court's decision on the motion changes any legal or procedural stance in this case, Defendant will have an opportunity to amend its Answer as necessary.

*also id.* ("By using or receiving any services supplied to you by [Uber], . . . you hereby expressly acknowledge and agree to be bound by the terms and conditions of the Agreement").  Among those conditions was the Dispute Resolution provision, which provides as follows:

> **Dispute resolution**
>
> You and [Uber] agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services (collectively, "Disputes") will be settled by binding arbitration, except that each party retains the right to bring an individual action in small claims court and the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights.  **You acknowledge and agree that you and [Uber] are each waiving the right to a trial by jury or to participate as a plaintiff or class User in any purported class action or representative proceeding.**

User Agreement at 8 (bold in original).

Notwithstanding his unambiguous waiver of his right to bring a class action, Mr. Meyer nonetheless filed this case as a class action on behalf of "all persons in the United States who, on one or more occasions, have used the Uber App to obtain rides from Uber driver-partners and paid fares for their rides set by the Uber pricing algorithm," alleging that "Uber has a simple but illegal business plan: to fix prices."  Am. Compl. ¶¶ 1, 113.  Plaintiff alleges that Mr. Kalanick— acting in his role as "the chief executive officer and co-founder of Uber"—is the "chief architect" of this conspiracy.  *Id.* at 1, ¶ 76; *see also id.* ¶ 1 ("Kalanick is the proud architect of [Uber's] business plan and, *as CEO*, its primary facilitator") (emphasis added).

Defendant Mr. Kalanick is the sole defendant named in Plaintiff's Amended Complaint. *Id.*  On February 8, 2016, Mr. Kalanick moved to dismiss the Amended Complaint on multiple grounds, including that Plaintiff is equitably estopped from avoiding the class action waiver contained in the User Agreement.  As Mr. Kalanick explained, principles of equitable estoppel

and agency require enforcement of the User Agreement's' class waiver because Plaintiff's claims are intimately intertwined with the User Agreement. *See* Memorandum Of Law In Support Of Defendant Travis Kalanick's Motion To Dismiss ("Def. Mem."), Dkt No. 28 ("Def. Mem.") at 21-25 (Feb. 8, 2016).

On March 31, 2016, the Court denied Mr. Kalanick's motion to dismiss. At the end of a lengthy opinion otherwise devoted to examining whether Plaintiff had stated a claim under Section 1 of the Sherman Act, the Court, in a footnote, addressed Plaintiff's class action waiver without discussion of any applicable law. The Court found that "since defendant is not seeking to compel arbitration, and plaintiff is not seeking to enforce the User Agreement against defendant, plaintiff is not equitably estopped from pursuing a class action suit against Mr. Kalanick, nor has plaintiff waived the right to proceed through this mechanism." Opinion and Order Dkt. No. 37 at 23 n.8 (March 31, 2016) ("Order"). On April 11, 2016, the Court granted leave for Mr. Kalanick to move for reconsideration of the Court's determination that Plaintiff's class action waiver does not apply to the instant dispute.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure provides district courts with wide discretion to alter or amend their intermediary rulings prior to final judgment. Fed. R. Civ. P. 54(b) ("any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). To prevail on a motion for reconsideration, the movant must "point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusions reached by the court." *Shrader v. CSX*

4

*Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); SDNY Local Civil Rule 6.3 (same).  A motion for reconsideration should also be granted when necessary to correct "clear error" or to "prevent manifest injustice."  *Munafo v. Metro. Transp. Auth*, 381 F.3d 99, 105 (2d Cir. 2004).

**ARGUMENT**

The Court's Opinion and Order on Defendant's Motion to Dismiss states that Plaintiff's class action waiver is inapplicable because "defendant is not seeking to compel arbitration, and plaintiff is not seeking to enforce the User Agreement against defendant."  Order at 23 n.8.  That holding is incorrect and is premised on two errors of law.  Defendant does not need to compel arbitration to enforce the class waiver, and Defendant can enforce the class waiver as a non-signatory to the User Agreement.  The Court should reconsider its ruling to the contrary, enforce the class waiver to which Plaintiff agreed, and dismiss Plaintiff's class claims.

**I.     Defendant Can Seek to Enforce the Class Waiver Without Compelling Arbitration**

In its Order, the Court states that "since defendant is not seeking to compel arbitration," he cannot seek to enforce the class waiver.  Order at 23 n.8.  This ruling is contrary to the express provisions of the Plaintiff's User Agreement, which explicitly precludes Plaintiff from bringing a class action *irrespective* of whether he is compelled to arbitrate.  Equally important, the Court's ruling is contrary to controlling law that permits parties to enforce their contractual rights selectively.  Put simply, the Court's statement that the class action waiver was somehow contingent upon compelling arbitration was a mistake of law and should be reconsidered here.

**A.     The Plain Language of Plaintiff's User Agreement Bars Class Actions Irrespective of Arbitration**

The text of the User Agreement is clear: Plaintiff's agreement to arbitrate some types of disputes and his waiver of class action rights are separate and distinct issues.  The "Dispute Resolution" section in Plaintiff's User Agreement provides that both parties agree that all

5

disputes arising out of or relating to the User Agreement would be "settled by binding arbitration." User Agreement at 8. In the very next sentence, the User Agreement provides: "**You acknowledge and agree that you and Company are each waiving the right to a trial by jury or to participate as a plaintiff or class User in any purported class action or representative proceeding.**" *Id.* (bold in original).

The key word in the Agreement is "*or*". Here, the Agreement's use of the word "or" creates two distinct waivers: the right to a trial by jury and, separately, the right to participate in a class action. *See United States v. Woods*, 469 U.S. 70, 73 (1984) ("the operative terms are connected by the conjunction 'or'. . . . Its ordinary use is almost always disjunctive, that is, the words it connects are to 'be given separate meanings'"). Put simply, Plaintiff's agreement to arbitrate and his agreement to waive his right to participate in a class action do not rely on one another; Plaintiff could—and did—agree to both.[2] The Supreme Court has concluded—twice— that such waivers are enforceable, and therefore this Court should enforce the class waiver in the User Agreement. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (in a consumer contract); *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309 (2013). The fact that a class action waiver provision is being invoked absent arbitration does not change that analysis.

---

[2] Moreover, even if the Court were to consider Plaintiff's class action waiver alongside his waiver of jury trial rights, this would only confirm that both waivers are wholly distinct from the User Agreement's arbitration provisions. Arbitration, of course, is not conducted before juries, but before private arbitrators. The User Agreement's juxtaposition of the jury trial waiver and the class action waiver therefore indicates that the latter must apply, at minimum, to disputes before a court where arbitration has not been invoked. *See Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007) (observing that "arbitration represents a more dramatic departure from the judicial forum than does a bench trial from a jury trial" and upholding enforcement of contractual jury waiver and adjudication of plaintiff's claims in a bench trial).

**B.    Controlling Law Permits Defendant to Enforce the Class Waiver Without Arbitrating this Dispute**

Beside the plain language of the User Agreement, the Court also erred in concluding that Defendant could not enforce the class waiver without also enforcing its right to arbitrate. Controlling law[3] is to the contrary.

In *U1it4Less v. FedEx Corp.*, No. 11 Civ. 1713(KBF), 2015 WL 3916247, *4 (S.D.N.Y. June 25, 2015), plaintiff, an internet retailer, argued that FedEx's class action waiver provision did not apply to its RICO claims absent a corresponding arbitration provision. *Id.* at *3. Reviewing the Supreme Court's decision in *Italian Colors*, Judge Forrest rejected this contention finding: "Nothing in *Italian Colors* suggests that class action waivers contained in a provision also containing an arbitration agreement should be treated as more sacrosanct than waivers in context of a contract without an arbitration provision." *Id.* at *4. "No legal principle or policy principle," Judge Forrest concluded, suggests that the rationale underlying the *Italian Colors*

---

[3]    New York courts apply an "interest analysis" to determine choice of law for contract issues, "pursuant to which the law of the jurisdiction having the greatest interest in the litigation controls" construction of the contract. *See Philips Credit Corp. v. Regent Health Grp.*, 953 F. Supp. 482, 502 (S.D.N.Y. 1997). The relevant factors in this analysis are the "place of contracting," "place of contract negotiations," and "place of performance"; the "location of the subject matter of the contract"; and the parties' contacts with a given jurisdiction. *Id.* Uber is a California-headquartered company and versions of the User Agreement explicitly reference a California choice of law provision. The Amended Complaint alleges that Plaintiff is a resident of Connecticut, and has used the Uber App "[i]n both New York City and elsewhere." Am. Compl. ¶ 7. Plaintiff does not specify where he executed the User Agreement, or where in particular he has used the Uber App outside of New York.

In its initial ruling on this issue, the Court did not expressly determine choice of law with respect to the enforceability of the User Terms, but cited a Ninth Circuit case applying California law. *See* Order at 23 n.8. Given the facts pled in the Complaint, California law would appear to apply given Uber's connections to California; the only other alternative is New York. To the extent any dispute concerning the choice of law exists, the laws of California and New York do not conflict. *See, e.g.*, *Choctaw Generation Ltd. Partnership v. American Home Assur. Co.*, 271 F.3d 403, 405 (2d Cir. 2001) ; *JSM Tuscany, LLC v. Superior Court*, 193 Cal. App. 4th 1222, 1241 (2011). As shown in this Memorandum, Plaintiff's class action waiver bars his right to bring the instant class action in either jurisdiction. *See Finance One Public Co. Ltd. v. Lehman Bros. Special Fin., Inc.,* 414 F.3d 325, 331 (2d Cir. 2005).

decision differed when applied solely to a class action waiver provision.  After assessing the class waiver to determine if it was unconscionable or violated legislative intent or policy, the court held that the class action waiver provision was applicable and enforceable.  *Id.* at *5; *see also Palmer v. Convergys Corp.*, No. 10 Civ. 145 (HL), 2012 WL 425256, at *3 (M.D. Ga. Feb. 9, 2012) ("Class action waivers, like many other contractual terms, are proper subjects for contractual bargaining because there is no substantive right associated with class action litigation.  Further, these waivers are not limited to the context of arbitration, which would unreasonably restrict parties from the freedom to contract in non-arbitration settings.").

*U1it4Less*'s conclusion is entirely consistent with the general principle of contract law— true in this Circuit, New York, and California—that a party can choose not to enforce a contractual right without affecting the enforceability of other rights.  *See, e.g., California Bank & Trust, Inc. v. Tate-Mann*, No. B234477, 2012 WL 1330446, at *2 (Cal. Ct. App. Apr. 18, 2012) (enforcing contract because "[d]efendants have not demonstrated that Plaintiff's acceptance of Defendants' partial payments constituted a waiver of the contractual payment requirements"); *Benedict v. Greer-Robbins Co.*, 26 Cal.App. 468, 487 (1915) (acceptance of partial payment under property sale contract does not waive right to take the property); *Ass'n of Veterinarians for Animal Rights v. Sacramento Cty. Animal Care & Regulation*, No. C049105, 2006 WL 1413428, at *5 (Cal. Ct. App. May 23, 2006) (it is permissible for "a party entitled to certain performance [to] accept partial or defective performance"); *EchoStar Satellite L.L.C. v. ESPN, Inc.*, 79 A.D.3d 614, 618 (N.Y. App. Div. 1st Dept. 2010) (accepting late payments under a contract does not mean that a party waived its right to collect interest under the contract); *see also NetTech Solutions, L.L.C. v. ZipPark.com*, No. 01 Civ. 2683, 2001 WL 1111966, *6 (S.D.N.Y. Sept. 20, 2001) ("a waiver may be established as a matter of law by the express declaration of a party or in

situations where the party's undisputed acts or language are so inconsistent with his purpose to stand upon his rights as to leave no opportunity for a reasonable inference to the contrary.") (quotation marks omitted); *Irwin v. UBS Painewebber, Inc.*, 324 F. Supp. 2d 1103, 1110 (C.D. Cal. 2004) (Under California law, "waiver of the right to arbitrate is disfavored because it is a contractual right; thus the party arguing waiver bears a heavy burden of proof"). If there were any doubt on this front, the parties resolved it by explicitly agreeing that Uber retains the right to selectively enforce certain provisions in the parties' agreement. The User Agreement states: "The failure of the Company to enforce any right or provision in this Agreement shall not constitute a waiver of such right or provision unless acknowledged and agreed to by the Company in writing." User Agreement at 9.

Accordingly, under both the plain language of the parties' contract and the law of this Circuit, New York, and California, Defendant's decision not to invoke its right to arbitration has no bearing on its independent right to enforce Plaintiff's class action waiver.

## II.    Mr. Kalanick, a Non-Signatory, Can Enforce the Class Waiver Provision.

This Court's ruling in footnote 8 was also premised on the implicit conclusion that Defendant, as a non-signatory to the User Agreement, could not enforce the User Agreement's class waiver, stating the waiver does not apply because "plaintiff is not seeking to enforce the User Agreement against defendant." Opinion and Order (3/31/16) at 23 n.8. This conclusion was also in error. Defendant can enforce the User Agreement's class waiver under principles of both agency and equitable estoppel.

### A.    Defendant, as Uber's CEO and as an Alleged Agent of Uber, Can Enforce the Class Waiver in Uber's User Agreement

Where a complaint alleges that "the individual defendants, though not signatories, were acting as agents for [their principal], then they are entitled to the benefit" of the contract's

provisions. *Dryer v. L.A. Rams*, 40 Cal. 3d 406, 418 (1985); *see also Merrill Lynch Int'l Fin.*

*Inc. v. Donaldson*, 28 Misc. 3d 391, 396-97 (N.Y. Sup. Ct. 2010) (non-signatory may enforce

arbitration clause where it has "a close and connected relationship" with the signatory); *Ross v.*

*Am. Express Co.*, 547 F.3d 137, 144 (2d Cir. 2008) (non-signatory agent can enforce dispute

resolution provision of contract); *Rowe v. Exline*, 153 Cal. App. 4th 1276, 1284 (2007) (Under

California law, "a nonsignatory sued as an *agent* of a signatory may enforce the terms of an

arbitration agreement.") (emphasis in original)..

Here, Plaintiffs allege that Mr. Kalanick—a non-signatory—was acting as an agent for

Uber—a signatory.  Indeed, the Amended Complaint's allegations against Mr. Kalanick relate

exclusively to his role as "the chief executive officer and co-founder of Uber." Am. Compl. at 1.

Plaintiff alleges that Mr. "Kalanick is the proud architect of [Uber's] business plan and, as CEO,

its primary facilitator." *Id.* ¶ 1; *see also id.* ¶ 76 (alleging Mr. Kalanick is the "chief architect" of

Uber's business model).  The Amended Complaint also leaves no doubt that Plaintiff is claiming

"concerted misconduct" by Uber and Mr. Kalanick, alleging:  "Kalanick, Uber, and Uber's

driver-partners have entered into an unlawful agreement, combination and conspiracy in restraint

of trade." *Id.* ¶ 123.  The Amended Complaint almost uniformly portrays Mr. Kalanick's role in

the alleged conspiracy as interchangeable with that of Uber.  *See, e.g.*, *id.* ¶ 54; ("Kalanick and

Uber are authorized by drivers to control the fares charged to riders"); *id.* ¶ 111 (referring to the

Uber App as "Kalanick's Uber ride-share service").[4]  Under these facts, the law is clear: Mr.

---

[4] Notably, a plaintiff's failure to meaningfully differentiate a signatory defendant from a non-signatory defendant is itself sufficient to equitably estop a plaintiff from barring a non-signatory from enforcing the signatory's contractual rights.  *See Jacobson v. Snap-on Tools Co.*, 15 Civ. 2141 (JD), 2015 WL 8293164, at *6 (N.D. Cal. Dec. 9, 2015) (where complaint treated two entities "as a single actor" and "consistently refers to them collectively," defendants' conduct is "interdependent" and the two entities are treated as a single actor for purposes of enforcement of an agreement); *Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Int'l,*

Kalanick, as Uber's alleged agent, is entitled to enforce the class waiver.  The Court's ruling to the contrary was in error.[5]

### B. Because Plaintiff Benefited from the User Agreement and Because His Claims Are Intertwined with the User Agreement, He is Equitably Estopped From Avoiding the User Agreement's Class Waiver

While Mr. Kalanick can enforce the class waiver as a non-signatory under principles of agency, he can also do so under principles of equitable estoppel.  Plaintiff benefited from the User Agreement by requesting and taking rides on the Uber App and Plaintiff's claims are intertwined with the User Agreement, which concern alleged price fixing, the Uber App, and Uber's pricing algorithm, which are covered in the pricing provision of the User Agreement.

Equitable estoppel prevents Plaintiff from enjoying the benefits of User Agreement, while simultaneously evading its obligations.  *See Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999) ("A party is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause"); *Dataserv, Ltd. v. Mgmt. Techs., Inc.*, No. 90 Civ. 7759  (SWK), 1993 WL 138852, at *4 (S.D.N.Y. Apr. 27, 1993) ("the doctrine of equitable estoppel is supported by the rule that a person who accepts and retains the benefits of a particular transaction will not thereafter be permitted to avoid its obligations or repudiate the disadvantageous portions") (quotations omitted); *R.A.C. Holding, Inc. v. City of Syracuse*, 258 A.D.2d 877, 877 (N.Y. App. Div. 4th Dept. 1999) ("Parties cannot accept benefits under a contract fairly made and at the same time

---

*Inc.*, 198 F.3d 88, 98 (2d Cir. 1999) (party equitably estopped from circumventing arbitration because it had treated non-signatory companies and their signatory assignees "as a single unit" in its complaint in a related lawsuit).

[5] Mr. Kalanick's role as Uber's CEO, provides a separate ground for permitting him to enforce the class waiver.  Namely, principles of equitable estoppel apply to permit enforcement of dispute resolution provisions where "the parties have sufficient relationship to each other and to the rights created under the agreement" in question.  *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 209 (2d Cir. 2005); *Choctaw Generation Ltd. Partnership v. American Home Assur. Co.*, 271 F.3d 403, 405 (2d Cir. 2001); *JSM Tuscany*, 193 Cal. App. 4th at 1241.

question its validity"); *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) ("Equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes."); *Metalclad Corp. v. Ventana Envt'l Org. P'ship*, 109 Cal. App. 4th 1705, 1713 (2003) (principles of equitable estoppel apply where a party "seeks enforcement of other provisions of the same contract that benefit him").[6]

Here, the entire purpose of the User Agreement was to allow Plaintiff to use the Uber App to connect with independent third-party transportation providers.  Indeed, an explicit term of the User Agreement was that his assent to the User Agreement was a prerequisite to use the Uber Service.  *See* User Agreement at 1 ("In order to use the Service (defined below) and the associated Application (defined below) you must agree to the terms and conditions that are set out below.").  Part of that bargain was, again, Plaintiff's agreement to waive any right or ability to bring a class claim.  *Id*. at 8.  Put simply, Plaintiff enjoyed the benefit of his bargain—using the Uber App.  Am. Compl. ¶ 7.  He cannot now avoid the class waiver that was attendant to that benefit.  Mr. Kalanick, as a non-signatory, can enforce the class waiver under the same principle.

Moreover, courts equitably enforce dispute resolution provisions where the subject matter of the lawsuit is "intertwined with" or "dependent upon" the contract at issue.  *JLM Indus. v.*

---

[6] While equitable estoppel is most commonly applied where a plaintiff seeks to evade an arbitration clause, the "same principle" governs the enforceability of other types of contractual dispute resolution provisions by non-signatories.  *See, e.g.*, *Int'l Chartering Servs., Inc., v. Eagle Bulk Shipping Inc.*, No. 12 Civ. 3463 (AJN), 2015 WL 5915958, at *5 (S.D.N.Y. Oct. 8, 2015) (the "same principle" that bars a party from denying its obligation to arbitrate "applies to bind non-signatories to choice-of-law clauses"); *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013) ("We hold that a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory" such that "the non-signatory's enforcement of the forum selection clause is 'foreseeable' to the signatory against whom the clause is enforced.")

*Stolt-Nielsen SA*, 387 F.3d 163, 177-78 (2d Cir. 2004); *JSM Tuscany, LLC v. Superior Court*, 193 Cal. App. 4th 1222, 1241 (2011).

That is exactly the case here.  Plaintiff's price-fixing claims fall within the ambit of the User Agreement.  The centerpiece of the Amended Complaint is Uber's pricing algorithm, which can only be utilized through the Uber App.  *See* Am. Compl. ¶ 2 ("The apps provide a standard fare formula, the Uber pricing algorithm"); *id.* ¶ 30 ("Uber account holders can obtain a 'Fare Quote' directly from the Uber App by entering their pickup location and destination").  But pricing—including pricing through the "Uber pricing algorithm"—is specifically contemplated by the User Agreement.  Under the User Agreement, Uber "reserve[d] the right to determine final prevailing pricing."  User Agreement at 4.  The Amended Complaint directly challenges this practice.

Likewise, as Plaintiff acknowledges, his access to the App—and the alleged damages that he suffered as a result—resulted from him accepting the User Agreement.  *See* Am. Compl. ¶ 29 ("To become an Uber account holder, an individual first must agree to Uber's terms and conditions and privacy policy.").  Put simply, all of Plaintiff's causes of action relate to the App and pricing for transportation services received through the Uber App, which Uber—through the User Agreement—reserves the right to determine.

Because the claims "touch matters covered by the [terms of the contract between the parties]," the claims are subject to the User Agreement's dispute resolution provision.  *JLM,* 387 F.3d at 173 (brackets in original) (citing and quoting *Mitsubishi Motors Corp. v. Soler Chrysler– Plymouth, Inc.,* 473 U.S. 614, 624 n.13 (1985)); *see JSM Tuscany*, 193 Cal. App. 4th 1222, 1238 (2011) ("Claims that rely upon, make reference to, or are intertwined with claims under the subject contract ar arbitrable"); *Kerr-McGee Refining Corp. v.*

*M/T Triumph,* 924 F.2d 467, 470 (2d Cir. 1991) (holding that plaintiffs RICO claims were subject to arbitration because "any and all differences and disputes of whatsoever nature arising out of" an agreement could be subject to the arbitration provision in the agreement).[7]

## CONCLUSION

For the reasons described in this Memorandum, Defendant Travis Kalanick respectfully requests this Court reconsider its prior decision and hold that Plaintiff Spencer Meyer has agreed to waive his right to bring this action as a class action and, on that basis, dismiss the class claims in his Amended Complaint.

---

[7] Plaintiff has not pled and cannot prove the only exception to the application of equitable estoppel that remains – that the agreement is unconscionable.  Standard form contracts and other contracts of adhesion are not unconscionable prima facie.  *U1it4Less*, 2015 WL 3916247 at * 4 (finding standard form contract not unconscionable where there was no use of "high pressure tactics or deceptive language," and plaintiff acknowledged in the Amended Complaint that other firms provided the same services); *see also Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 787 (2d Cir. 2003); *Waggoner v. Dallaire*, 649 F.2d 1362, 1367 (9th Cir. 1981) ("California law requires a party to show more than simply that a standardized legal form was used and that the party had less bargaining strength than the other contracting party. A party wishing to avoid the contract must also show that the contract contained harsh or unconscionable terms that the party would not have agreed to but for his weak bargaining position").  Plaintiff previously argued that California law prevents the enforcement of class action waivers, but, as stated before, California cases like *Discover Bank v. Superior Court*, 36 Cal.4th 148, 161 (2005) were decided prior to and were expressly abrogated by the Supreme Court.  *See Concepcion*, 563 U.S. at 352 (Invalidating "California's *Discover Bank* rule" "[b]ecause it stands an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"); *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 469 (2015) ("this Court . . . held in *Concepcion* that the *Discover Bank* rule was invalid. Thus the underlying question of contract law at the time the Court of Appeal made its decision was whether the 'law of your state' included *invalid* California law"). As such, they are irrelevant as to whether alternative dispute resolution or waiver provisions are applicable here.  Moreover, it is Plaintiff's burden to establish unconscionability, *Pinnacle Museum Tower Ass'n. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 247 (2012).  Even under California law before *Concepcion*, class action waivers were unconscionable only where "they operate to insulate a party from liability that otherwise would be imposed *under California law*." *Discover Bank v. Superior Court*, 36 Cal.4th 148, 161 (2005) (emphasis added).  Plaintiff could not establish that the class action waiver in the User Agreement was unconscionable under this standard because he only brings claims for violations of federal and New York law.

Dated: April 14, 2016

Respectfully submitted,

BOIES, SCHILLER & FLEXNER LLP

s/ Karen L. Dunn
Karen L. Dunn
William A. Isaacson
Ryan Y. Park
5301 Wisconsin Ave, NW
Washington, DC 20015
Tel:  (202) 237-2727
Fax:  (202) 237-6131
kdunn@bsfllp.com
wisaacson@bsfllp.com
rpark@bsfllp.com

Alanna C. Rutherford
Peter M. Skinner
575 Lexington Ave, 7th Floor
New York, NY 10022
Tel:  (212) 446-2300
Fax:  (212) 446-2350
arutherford@bsfllp.com
pskinner@bsfllp.com

*Counsel for Defendant Travis Kalanick*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 14, 2016, I filed and therefore caused the foregoing document to be served via the CM/ECF system in the United States District Court for the Southern District of New York on all parties registered for CM/ECF in the above-captioned matter.

*/s/ Ryan Y. Park*
Ryan Y. Park
