UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SPENCER MEYER, individually and on behalf of
those similarly situated,

                             Plaintiffs,

        -against-

TRAVIS KALANICK,

                          Defendant.

1:15 Civ. 9796 (JSR)

ECF Case


**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT TRAVIS KALANICK'S MOTION FOR PARTIAL
RECONSIDERATION OF THE COURT'S MARCH 31, 2016 OPINION AND ORDER**


ANDREW SCHMIDT LAW PLLC
Andrew Arthur Schmidt

*-and-*

HARTER SECREST & EMERY LLP
Brian Marc Feldman
Jeffrey A. Wadsworth
Edwin M. Larkin
A. Paul Britton

*Attorneys for Plaintiff
Spencer Meyer*

April 21, 2016

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT .............................................................................................................. 2

I.    DEFENDANT'S RENEWED CLASS WAIVER ARGUMENTS—WHICH WERE
      PREVIOUSLY PRESENTED AND REJECTED—ARE NOT PROPER GROUNDS
      FOR RECONSIDERATION. ............................................................................. 2

II.   IN ANY EVENT, THIS COURT'S CLASS WAIVER RULING IS CORRECT AND
      FAR FROM CLEARLY ERRONEOUS. ............................................................ 5

      A.    This Court Properly Held That The User Agreement Does Not Apply
            Outside The Arbitration Context. ............................................................ 5

            i.    The User Agreement Contains No Class Waiver Outside The Arbitration
                  Context. ....................................................................................... 6

            ii.   In Any Event, Any Class Waiver Outside The Arbitration Context
                  Would Be Unconscionable Under California Law.............................. 9

      B.    This Court Properly Held That Defendant Cannot Invoke The User Agreement
            That Does Not Apply To Him. ............................................................... 14

            i.    Equitable Estoppel Does Not Permit Defendant To Invoke The User
                  Agreement. ................................................................................ 14

            ii.   Agency Doctrine Does Not Permit Defendant To Invoke The User
                  Agreement. ................................................................................ 17

CONCLUSION.......................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Adrea, LLC v. Barnes & Noble, Inc.*,
    No. 13 Civ. 4137(JSR), 2016 U.S. Dist. LEXIS 27819 (S.D.N.Y. Feb. 24, 2016) ...........3

*America Online, Inc. v. Superior Court*,
    108 Cal. Rptr. 2d 699 (Cal. Ct. App. 2001)......................................................................11

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
    684 F.3d 36 (2d Cir. 2012)...............................................................................................2, 14

*AP v. United States DOD*,
    395 F. Supp. 2d 17 (S.D.N.Y. 2005)...................................................................................5

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)..........................................................................................................11

*Bank Leumi Trust Co. of N.Y. v. Istim, Inc.*,
    902 F. Supp. 46 (S.D.N.Y. 1995).......................................................................................5

*Bynum v. Maplebear Inc.*,
    2016 U.S. Dist. LEXIS 17644 (E.D.N.Y. Feb. 12, 2016)…..............................................13

*Castellar v. United States*,
    2011 U.S. Dist. LEXIS 99050 (S.D.N.Y. Aug. 26, 2011)...............................................3, 8

*Devinsky v. Kingsford*,
    No. 05 Civ. 2064 (PAC), 2008 U.S. Dist. LEXIS 52675 (S.D.N.Y. July 10, 2008)..........4

*DIRECTV, Inc. v. Imburgia*,
    136 S. Ct. 463 (2015).....................................................................................................11,12

*Discover Bank v. Superior Court*,
    113 P.3d 1100 (Cal. 2005).......................................................................10,11, 12, 13

*Dryer v. L.A. Rams*,
    709 P.2d 826 (Cal. 1985).................................................................................................17

*Eisemann v. Greene*,
    204 F.3d 393 (2d Cir. 2000)...............................................................................................3

*Goldman v. KPMG, LLP*,
    92 Cal. Rptr. 3d 534 (Cal. Ct. App. 2009).....................................................................14,15

*Gonyer v. Vane Line Bunkering, Inc.*,
  No. 13-cv-8488 (RJS), 2014 U.S. Dist. LEXIS 184598 (S.D.N.Y. Nov. 6, 2014).........4, 9

*Grigson v. Creative Artists Agency*,
  210 F.3d 524 (5th Cir. 2000) ................................................................14,15,16

*Ingle v. Circuit City Stores, Inc.*,
  328 F.3d 1165 (9th Cir. 2003) .....................................................................13

*In re Health Mgmt. Sys. Inc. Sec. Litig.*,
  113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)……………………………………………….2

*In re Houbigant, Inc.*,
  914 F. Supp. 997 (S.D.N.Y. 1996).................................................................5

*In re Wholesale Grocery Prods. Antitrust Litig.*,
  707 F.3d 917 (8th Cir. 2013) ......................................................................16

*JSM Tuscany, LLC v. Superior Court*,
  123 Cal. Rptr. 3d 429 (Cal. Ct. App. 2011) ......................................................15

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
  729 F.3d 99 (2d Cir. 2013)…......................................................................3

*Kramer v. Toyota Motor Corp.*,
  705 F.3d 1122 (9th Cir. 2013) ....................................................................15

*Kunica v. St. Jean Fin.*,
  63 F. Supp. 2d 342 (S.D.N.Y. 1999)..............................................................5

*Lou v. MA Labs., Inc.*,
  No. C 12-05409 WHA, 2013 U.S. Dist. LEXIS 70665 (N.D. Cal. May 17, 2013)..........13

*Levy v. Young Adult Institute*,
  103 F. Supp. 3d 426 (S.D.N.Y. 2015) ...........................................................14

*Merrill Lynch Intl. Fin., Inc. v. Donaldson*,
  895 N.Y.S.2d 698 (N.Y. Sup. Ct. 2010) .......................................................17

*M.K.B. v. Eggleston*,
  05 Civ. 10446 (JSR), 2006 U.S. Dist. LEXIS 81704 (S.D.N.Y. Nov. 7, 2006). ...............2

*National Immigration Project of the Nat'l Lawyers Guild v. United States Dep't of Homeland Sec.*,
  No. 11 Civ. 3235 (JSR), 2013 U.S. Dist. LEXIS 68469 (S.D.N.Y. May 6, 2013).............3

*Peters v. Jinkosolar Holding Co.*,
  No. 11 Civ. 7133 (JPO), 2012 U.S. Dist. LEXIS 38489 (S.D.N.Y. Mar. 19, 2012) ..........2

*Pretter v. Metro N. Commuter R. Co.*,
  No. 00 Civ. 4366, 2002 U.S. Dist. LEXIS 18332 (S.D.N.Y. Sept. 30, 2002)...............3

*Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*,
  No. 09 Civ. 1086 (JSR), 2015 U.S. Dist. LEXIS 127185 (S.D.N.Y. Sep. 10, 2015) .........2

*Ross v. Am. Express Co.*,
  547 F.3d 137 (2d Cir. 2008)........................................................................18

*Rowe v. Exline*,
  63 Cal. Rptr. 3d 787 (Cal. Ct. App. 2007) .....................................................17

*Sanchez v. Valencia Holding Co., LLC*,
  353 P.3d 741 (Cal. 2015) ..................................................................10, 11, 13

*Schermerhorn v. James*,
  No. 96 Civ. 980 (JSR), 1998 U.S. Dist. LEXIS 848 (S.D.N.Y. Jan. 30, 1998)…..............4

*Shrader v. CSX Transp.*,
  70 F.3d 255 (2d Cir. 1995)...........................................................................3

*Shroyer v. New Cingular Wireless Servs.*,
  498 F.3d 976 (9th Cir. 2007) ......................................................................13

*Sonic-Calabasas A, Inc. v. Moreno*,
  311 P.3d 184 (Cal. 2013) .....................................................................10,11,12

*UFCW & Employers Benefit Trust v. Sutter Health*,
  194 Cal. Rptr. 3d 190 (Cal. Ct. App. 2015)… ...............................................16

*Wu Lin v. Lynch*,
  813 F.3d 122 (2d Cir. 2016)..........................................................................3

*Zaborowski v. MHN Gov't Servs.*,
  936 F. Supp. 2d 1145 (N.D. Cal. 2013) ......................................................13

**Other Authorities**

S.D.N.Y. Local Rule 6.3… ..........................................................................3

Plaintiff Spencer Meyer ("Plaintiff") respectfully submits this memorandum of law in opposition to an April 14, 2016 motion by Defendant Travis Kalanick ("Defendant") seeking reconsideration of this Court's March 31, 2016 Opinion and Order (the "Opinion").

## PRELIMINARY STATEMENT

Defendant's motion for reconsideration is dead on arrival.  To seek reconsideration, Defendant must demonstrate that the Court made an obvious and glaring mistake by identifying material facts or controlling authority that Defendant placed before the Court, but which the Court overlooked.  Defendant nowhere identifies any such mistake; his motion identifies no controlling authority or facts overlooked by this Court.  Accordingly, Defendant's motion fails.

In any event, the Court properly rejected Defendant's arguments the first time around. Defendant contends that Plaintiff waived his right to proceed by way of a class action.  To prevail on that claim, Defendant must establish both (i) that the Uber Technologies, Inc. ("Uber") User Agreement contains a class waiver provision applicable outside the arbitration context, and (ii) that Defendant may enforce the provision, even though by its express terms it applies only to Uber, not Defendant.  This Court, in its March 31, 2016 Opinion and Order, properly held that Defendant failed on both elements:  "[S]ince defendant is not seeking to compel arbitration, and plaintiff is not seeking to enforce the Uber Agreement against defendant, plaintiff is not equitably estopped from pursuing a class action suit against Mr. Kalanick, nor has plaintiff waived the right to proceed through this mechanism."  The Court's ruling was correct, and Defendant's motion provides no basis for reconsideration.

**ARGUMENT**

I.  **DEFENDANT'S RENEWED CLASS WAIVER ARGUMENTS—WHICH WERE PREVIOUSLY PRESENTED AND REJECTED—ARE NOT PROPER GROUNDS FOR RECONSIDERATION.**

Defendant seeks to relitigate an issue squarely resolved by the Court:  whether Plaintiff has waived his right to proceed via a class action.  The Court properly rejected Defendant's argument on two independent grounds: (i) the class waiver is inapplicable under the User Agreement because "defendant is not seeking to compel arbitration," and (ii) Defendant lacks standing under the User Agreement in any event because it applies to Uber, not Defendant, and "plaintiff is not seeking to enforce the Uber Agreement against defendant."  Opinion at 23 n.8. Defendant now asks the Court to reconsider those rulings.

Defendant has not met the high standard for reconsideration.  Reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  *Peters v. Jinkosolar Holding Co.*, No. 11 Civ. 7133 (JPO), 2012 U.S. Dist. LEXIS 38489, at *8 (S.D.N.Y. Mar. 19, 2012) (quoting *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)).  "Motions for reconsideration are 'not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or likewise taking a second bite at the apple.'"  *Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*, 09 Civ. 1086 (JSR), 2015 U.S. Dist. LEXIS 127185, at *8 (S.D.N.Y. Sep. 10, 2015)  (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)).  "Rather, the sole function of a proper motion for reconsideration is to call to the Court's attention dispositive facts or controlling authority that were plainly presented in the prior proceedings but were somehow overlooked in the Court's decision: in other words, an obvious and glaring mistake."  *M.K.B. v. Eggleston*, 05 Civ. 10446 (JSR), 2006 U.S. Dist. LEXIS 81704, at *3 (S.D.N.Y. Nov. 7, 2006).

Under the "strict" standard governing motions for reconsideration, such motions are generally "'denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"  *Adrea, LLC v. Barnes & Noble, Inc.*, 13 Civ. 4137(JSR), 2016 U.S. Dist. LEXIS 27819, at *18 (S.D.N.Y. Feb. 24, 2016) (quoting *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995)).  To prevail, the moving party "must demonstrate an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or, prevent manifest injustice."  *Nat'l Immigration Project of the Nat'l Lawyers Guild v. United States Dep't of Homeland Sec.*, No. 11 Civ. 3235 (JSR), 2013 U.S. Dist. LEXIS 68469, at *7 (S.D.N.Y. May 6, 2013); *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (motion for reconsideration "should be granted *only* when the defendant identifies" one or more of these grounds (emphasis added)).

Defendant does not present any cognizable ground for reconsideration.  He identifies no intervening change of controlling law and points to no newly discovered evidence.  Nowhere does he claim that the Court committed "clear error" or that a manifest injustice is at stake.  *Cf. Wu Lin v. Lynch*, 813 F.3d 122, 127 (2d Cir. 2016) ("What is not in doubt . . . is that the phrase 'clear error' is to be taken literally: the error must be clear").  And nowhere does Defendant claim that the Court "overlooked" controlling decisions or factual matters that he placed "before [the Court] on the underlying motion.'"  *Castellar v. United States*, 2011 U.S. Dist. LEXIS 99050, at *1-2 (S.D.N.Y. Aug. 26, 2011) (quoting *Eisemann v. Greene*, 204 F.3d 393, 395 n.2 (2d Cir. 2000)); *see* Local Rule 6.3 (requiring the moving party to set forth "concisely the matters or controlling decisions which counsel believes the Court has overlooked.").  Every precedent Defendant now cites was decided long before this Court issued its March 31, 2016

Opinion and Order; yet nearly three-quarters of those authorities were never cited in Plaintiff's original motion papers, and none is "controlling" on the class waiver issue. *See Gonyer v. Vane Line Bunkering, Inc.*, No. 13-cv-8488 (RJS), 2014 U.S. Dist. LEXIS 184598, at *3 (S.D.N.Y. Nov. 6, 2014) ("The additional cases that Defendant now cites [on reconsideration] stand for propositions that are not in conflict with the Court's holding and which the Court did not overlook."). Without any basis for reconsideration, Defendant's motion fails at the gate.

Defendant wrongly suggests, without citing any authority, that the Court must reconsider its ruling because it addressed Defendant's arguments concerning class waiver only in a footnote. *See* Memo. of Law in Support of Defendant's Motion for Reconsideration ("MFR"), at 2. Yet, "the fact that the Court did not deem [the moving party's] argument on this issue sufficiently persuasive to warrant further detail does not justify [the moving party's] attempt to reargue it here." *Schermerhorn v. James*, 96 Civ. 980 (JSR), 1998 U.S. Dist. LEXIS 848, at *9 (S.D.N.Y. Jan. 30, 1998); *see also Devinsky v. Kingsford*, 05 Civ. 2064 (PAC), 2008 U.S. Dist. LEXIS 52675, at *10 (S.D.N.Y. July 10, 2008) ("The Court is not required to delineate every reason for the decisions it makes; it is in the Court's discretion to respond specifically—or not—to arguments made by the parties."). Defendant's suggestion that the Court paid insufficient attention to his argument rings particularly hollow because Defendant himself devoted merely a few pages of his original briefing to the argument and never even mentioned it at oral argument.

Nor may Defendant end-run the standards for reconsideration by characterizing his request as concerning a "narrow and discrete issue." MFR at 1. No matter the packaging, Defendant's second-bite effort epitomizes how reconsideration may not be used. *See AP v. United States DOD*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005) (Rakoff, J.) (reconsideration motion is not "an occasion for repeating old arguments previously rejected"); *Kunica v. St. Jean Fin.*, 63

F. Supp. 2d 342, 348 (S.D.N.Y. 1999) ("Rejection of a party's assessment of the law is not a proper ground on which to seek reconsideration."); *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996) (reconsideration motion "is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved.").

In sum, Defendant's arguments on its motion for reconsideration "merely recapitulate and reiterate points it had previously raised . . . and do not demonstrate that the Court failed to adequately consider this information" in its order. *Bank Leumi Trust Co. of N.Y. v. Istim, Inc.*, 902 F. Supp. 46, 48 (S.D.N.Y. 1995).   These "arguments are precisely the type of claims that the local rules seek to avoid."  *Id.*  The Court should therefore deny Defendant's motion.

## II.   IN ANY EVENT, THIS COURT'S CLASS WAIVER RULING IS CORRECT AND FAR FROM CLEARLY ERRONEOUS.

Even if Defendant identified a basis for reconsideration—which he has not—there would be no basis for a different conclusion because this Court properly rejected Defendant's class waiver arguments in the first instance.  As explained below, this Court properly held (a) that the User Agreement's class waiver provision does not apply outside the arbitration context, and (b) that Defendant, who is not covered by the terms of the User Agreement, cannot invoke the agreement in any event.

### A.   This Court Properly Held That The User Agreement's Class Waiver Provision Does Not Apply Outside The Arbitration Context.

This Court properly concluded that Defendant cannot invoke the class action waiver provision because he has not moved to compel arbitration, both (i) because the User Agreement nowhere provides for any class action waiver outside the context of arbitration and (ii) because even if the User Agreement did contain a separate class action waiver, it would be unenforceable under California law.

5

###### i. The User Agreement Contains No Class Waiver Outside The Arbitration Context.

As an initial matter, this Court properly concluded that, even if the User Agreement were to apply, Plaintiff could not have waived any right to bring a class action because the User Agreement contains a class action waiver limited to the arbitration context, and Defendant has not sought to compel arbitration. *See* Opinion at 23 n.8; *see also* MTD at 22 n.10 (express waiver by Defendant of any right to arbitration in the present case, with a purported reservation of the right "in other cases"). The Court's conclusion is consistent with the plain language of the User Agreement and Uber's own position on the meaning of the very language relied upon by Defendant. Defendant's citations to new cases—improper on a motion to reconsider—simply reinforce the propriety of this Court's original conclusion.

*First*, the plain language of the User Agreement limits any class action waiver to the arbitration context. Defendant relies entirely on a single sentence of the User Agreement within a paragraph that provides for arbitration of disputes with Uber. *See* MFR at 3. The topic sentence of the paragraph states that the user agrees that certain disputes with Uber "will be settled by binding arbitration." Colman Decl., Ex. 1 at 9. The next sentence, which Defendant cites out of context, changes tense. Instead of stating what the parties "will" do, the sentence explains the ramifications of their agreement to arbitrate: "each [is] waiving the right to a trial by jury or to participate as a plaintiff or class User in any purported class action or representative proceeding." *Id.* The sentence that follows ties that explanation expressly back into the agreement to arbitrate—and nothing beyond the agreement to arbitrate—by stating that "*[f]urther*, unless you and Company otherwise agree in writing, *the arbitrator* may not consolidate more than one person's claims, and may not otherwise preside over any form of any class or representative proceeding." *Id*. (emphases added). Together, these sentences form an

arbitration provision that outlines for the benefit of users the principal consequences of agreeing to arbitrate:  the loss of a jury right and the inability to participate in a class action proceeding. *See id.*

The limitation of the class waiver sentence to the arbitration context is made even clearer by the fact that the sentence in question is located not only within a paragraph limited to arbitration,[1] but, moreover, within a section of the User Agreement devoted solely to the subject of arbitration.  In particular, the provision at issue is part of a "Dispute Resolution" section dealing exclusively with arbitration provisions:  "Arbitration Rules and Governing Law," "Arbitration Process," "Arbitration Location and Procedure," "Arbitrator's Decisions," "Fees" (governing "arbitrator fees"), and "Changes" (a provision referring the preceding provisions). There is no class waiver provision outside the context of the User Agreement's arbitration agreement in this "Dispute Resolution" section.  This Court thus correctly concluded that Plaintiff has not "waived the right to proceed" by class action because "defendant is not seeking to compel arbitration."  Opinion at 23 n.8

*Second*, the Court's construction of the class waiver language matches Uber's position on this language in other cases.  For instance, in *Philliben v. Uber Technologies, Inc.*, 4:14-cv-05616 (N.D. Cal.), Uber described the identical language in the same version of the User Agreement as part of an "Arbitration Agreement," just as Plaintiff describes it here.  *See* Def. Reply in Support of Motion to Stay Proceedings Pending Arbitration (N.D. Cal. filed June 11, 2015), at 8 (citing Declaration of R. Michael Cianfrani, dated Mar. 20, 2015, Exhibit A (May 17,

---

[1] For purposes of this motion, Plaintiff assumes, without conceding, that the version of the User Agreement cited by Defendant is applicable.  In more recent iterations, Uber has entitled the paragraph at issue—with the identical content, including the explanatory language relied upon by Defendant—"Arbitration."  *See, e.g.*, User Terms of Service at https://www.uber.com/legal/terms/us/ (last visited Apr. 16, 2016).  That label reinforces the obvious conclusion that the paragraph is limited to the arbitration context.

7

2013 User Agreement identical to User Agreement submitted by Defendant in this case)).  There, in explaining why the arbitration clause was not procedurally unconscionable, Uber argued there was "no surprise" because "[t]here is literally one bolded sentence in all of the Terms:  *the part of the Arbitration Agreement* that waives the right to a jury trial and to participate in a class action."  *Id.* (emphasis added).  Thus, according to Uber, the bolded language Defendant relies upon—the acknowledgement of "waiving the right to a trial by jury or to participate as a plaintiff or class User in any purported class action"—was part of an "Arbitration Agreement," and not a stand-alone class waiver.  *See id.*  In adopting a similar conclusion, consistent with Uber's own position, this Court properly rejected Defendant's contrary argument.

*Third*, Defendant's argument that "controlling law" permits the class waiver provision to operate outside the arbitration context is both procedurally improper and mistaken on the merits.  Non-intervening decisions not placed "before [the Court] on the underlying motion" are improperly presented for the first time on reconsideration.  *See Castellar*, 2011 U.S. Dist. LEXIS 99050, at *1–2.   Yet, here, *none* of the eight decisions Defendant relies on to make his erroneous argument—including, notably, the case he discusses, *U1it4less, Inc. v. FedEx Corp.*, No. 11 Civ. 1713 (KBF), 2015 U.S. Dist. LEXIS 82933, 2015 WL 3916247 (S.D.N.Y. June 25, 2015) —were cited anywhere in his original briefing.  *Compare* MFR 8–9, *with* MTD at 21–25, *and* MTD Reply at 9–10.  Moreover, "[t]he additional cases that Defendant now cites [on reconsideration] stand for propositions that are not in conflict with the Court's holding and which the Court did not overlook."  *Gonyer*, 2014 U.S. Dist. LEXIS 184598, at *3.

Defendant's heavy reliance on *U1it4less* is misplaced.  That case simply reinforces the Court's conclusion.  The class waiver clause in the Uber User Agreement is a component of what Uber has correctly termed the "Arbitration Agreement."  The clause shifts tenses from a prior

sentence stating what the parties "will" do (arbitrate) to an explanation of what they "are" waiving by agreeing to arbitrate, *i.e.*, the opportunity to participate in a class action in court and a jury trial, which are both lost in arbitration.  By contrast, in *U1it4less*, there was no arbitration agreement.  *Ulit4less,* 2015 U.S. Dist. LEXIS 82933, at *10 ("this case does not involve an arbitration agreement").   There, the contract contained an unambiguous stand-alone class action waiver provision.  *See id.* at *5.  That provision, unlike the Uber clause, stated what the parties "will" do in a dispute (waive the right to bring a class action), explicitly stating that the waiver would operate independently from arbitration.  *Id.* at *10-11.  The stand-alone class action waiver clause in *U1it4less* perfectly illustrates what Uber might have drafted to obtain a class waiver outside the context of an arbitration agreement.  Uber's User Agreement contains no such provision.

### ii.  Any Class Waiver Outside The Arbitration Context Would Be Unconscionable Under California Law.

In any event, any stand-alone class waiver provision in the User Agreement, independent of the arbitration agreement, would be unenforceable as a matter of law.  Outside the arbitration context, the FAA preemption cases cited by Defendant are wholly irrelevant.  *See* MFR at 14 & n.3.  Instead, as the parties agree, California law would govern the enforceability of such a class waiver provision.  *See* Memo. of Law in Support of Defendant's Motion to Dismiss ("MTD"), at 23; Reply Memo. of Law in Support of Defendant's Motion to Dismiss ("MTD Reply"), at 10; MFR at 7 & n.3 ("California law would appear to apply").  And, under California law, such a class waiver would be unenforceable as unconscionable.  Even though this issue is dispositive, Defendant addresses it only in a footnote of his motion for reconsideration.  *See* MFR at 14 n.7.

Defendant's footnote analysis goes astray by importing Federal Arbitration Act ("FAA") preemption into a California contract analysis.  Nothing in the FAA preempts California law here

because Defendant has affirmatively waived any right to arbitration in the present proceeding while claiming to reserve the right "in other cases."  *See* MTD at 22 n.10.  Accordingly, California law provides the first and last word on the enforceability of the class waiver provision.[2]  That law is clear:

> [W]hen a [class waiver] is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then the waiver becomes in practice the exemption of the party from responsibility for [its] own fraud, or willful injury to the person or property of another.  Under these circumstances, such waivers are unconscionable under California law and should not be enforced.

*Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184, 196 (Cal. 2013) (quotation marks and alterations omitted) (citing *Discover Bank v. Superior Court*, 113 P.3d 1100, 1110 (Cal. 2005)); *id.* 1112 (observing that rule "applies equally to class action litigation waivers . . . as it does to class arbitration waivers"); *accord Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 757 (Cal. 2015); *see also id.* at 751 ("[I]n the context of consumer contracts, we have never required, as a prerequisite to finding procedural unconscionability, that the complaining party show it tried to negotiate standardized contract provisions.").  Under these standards, it is indisputable that any class waiver in the User Agreement (outside the arbitration context) would be unconscionable under California law.

These standards remain good law in California.  In *America Online, Inc. v. Superior Court,* 108 Cal. Rptr. 2d 699 (Cal. Ct. App. 2001), the California Court of Appeals squarely held outside the arbitration context that contractual class action waivers violate "strong California public policy" and California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et. seq.*

---

[2] Defendant does not dispute the fundamental proposition that the absence of FAA preemption means California law controls.  *See* MTD at 23; Memo. of Law in Opposition to Defendant's Motion to Dismiss ("MTD Opp."), at 23; MTD Reply at 9-10; MFR at 14 n.7.

*Id*. at 710.    Relying on that decision, the California Supreme Court in *Discover Bank* crystalized the state's class waiver unconscionability doctrine and "further held that the FAA does not preempt this unconscionability rule." *Sonic-Calabasas A*, 311 P.3d at 196 (citing *Discover Bank*, 113 P.3d at 1110-11).  Only this latter preemption holding was invalidated "in *Concepcion* [which] held that the FAA preempts the unconscionability of [class waivers] in consumer contracts, thereby abrogating *Discover Bank*."  *Id*. at 196 (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011)).

The Supreme Court's preemption decisions in *Concepcion* and *DIRECTV* never addressed, much less invalidated, the merits of *Discover Bank's* restatement of California unconscionability law; those decisions dealt only with *Discover Bank's* FAA preemption holding.  *See DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) (expressly not deciding "whether [the state court's] decision is a correct statement of California law"); *Concepcion*, 563 U.S. at 340 (addressing "whether [FAA] § 2 pre-empts California's rule classifying most collective-arbitration waivers in consumer contracts as unconscionable"); *see also Sanchez*, 353 P.3d at 750 (recognizing that "*Concepcion* clarifies the limits the FAA places on state unconscionability rules" and that unconscionability remains a valid defense under California law post-*Concepcion*).  Indeed, in *DIRECTV*, the Supreme Court recognized the unexceptional principle that "the interpretation of a contract is ordinarily a matter of state law to which we defer."  *DIRECTV, Inc.*, 136 S. Ct. at 468.  Although Defendant appears newly conflicted about this issue,[3] California's class waiver unconscionability doctrine controls.

---

[3] *Compare* MFR at 14 n.7 (labeling *Discover Bank* invalid and irrelevant to California class waiver analysis in the post-*Concepcion* era), *with* MTD Reply at 10 (quoting and applying *Discover Bank*'s rule for California class waiver analysis).

Once again, Defendant is seeking to reargue his point by improperly submitting new cases and by stretching them beyond any fair reading. For this argument, Defendant again relies on *U1it4less*—which he cited nowhere in his original briefing on the motion to dismiss—for the purported principle that any class waiver within the User Agreement would be enforceable. *See* MTR at 14 n.7. That citation is just as misplaced as Defendant's citation to irrelevant FAA preemption cases: *U1it4less* concerned the application of New York law (not California law) to a class waiver provision signed by a business (not a consumer). *See U1it4less*, 2015 U.S. Dist. LEXIS at *12 (assessing unconscionability "[u]nder New York law," and highlighting that "Plaintiff is a business . . . not an individual"). Here, of course, the class waiver is unenforceable because of California law governing consumer contracts. *See, e.g.*, *Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d at 196 (settling when class waivers "in a consumer contract" are "unconscionable under California law"). *U1it4less* is therefore irrelevant.

Defendant also mistakenly argues that the *scope* of California's unconscionability doctrine does not reach Plaintiff's claims. Defendant contends, based on cherry-picked language, that *Discover Bank* invalidates class waivers "*only where* 'they operate to insulate a party'" from liability under California law. *See* MFR at 14 n.7 (emphasis added) (quoting *Discover Bank*, 113 P.3d at 1109). But Defendant is quoting *Discover Bank* out of context. The court in fact invalidated class waivers "*at least* [where] they operate to insulate a party" from liability under California law. *Discover Bank*, 113 P.3d at 1109. The difference is crucial: Defendant says the court limits the rule to only California-based liability while the court explicitly stated that it was not limiting the rule to only California-based liability.[4]

_____

[4] Moreover, both the Ninth Circuit and the California Supreme Court have rearticulated California's unconscionability doctrine without any reference to a source of liability, *see, e.g., Shroyer v. New Cingular Wireless Servs.*, 498 F.3d 976, 983 (9th Cir. 2007). The California

Defendant identifies no decision that has applied (or even recognized) his circumscribed reading of California's unconscionability doctrine, but he nonetheless claims the doctrine does not apply because "Plaintiff raises claims under federal and New York state law."  *See* MFR at 14 n.7; MTD Reply at 10.  Of course, numerous courts *have* applied the doctrine where liability arose under federal or New York state law.  The Ninth Circuit, for example, found a contract provision unconscionable under California law where there were claims of sex discrimination and retaliation under Title VII, 42 U.S.C. § 2000e, *et seq*.  *See Ingle v. Circuit City Stores, Inc*., 328 F.3d 1165 (9th Cir. 2003).  California federal district judges have done the same in the context of the Fair Labor Standards Act ("FLSA").  *See Zaborowski v. MHN Gov't Servs*., 936 F. Supp. 2d 1145, 1149, 1156-57 (N.D. Cal. 2013); *Lou v. MA Labs., Inc*., No. C 12-05409 WHA, 2013 U.S. Dist. LEXIS 70665 (N.D. Cal. May 17, 2013).  Indeed, just earlier this year, Judge Weinstein found an agreement provision unenforceable under California's unconscionability doctrine in an FLSA and New York Labor Law action.  *See Bynum v. Maplebear Inc.*, 2016 U.S. Dist. LEXIS 17644, *9–11, *15 (E.D.N.Y. Feb. 12, 2016) (relying parenthetically on the California Supreme Court's post-*Discover Bank* decision in *Sonic-Calabasas A*).[5]

For these reasons, California's unconscionability doctrine remains good law; it controls here; and it renders the User Agreement's class waiver provision unenforceable.  Moreover, Defendant's footnote critique is procedurally improper, not only because it is merely a footnote, *see, e.g.*, *Levy v. Young Adult Institute*, 103 F. Supp. 3d 426, 441 (S.D.N.Y. 2015) ("the Court will not evaluate arguments that are so drastically underdeveloped, particularly when they are

---

Supreme Court has consistently omitted from its restatement of the rule the very qualifier on which Defendant hangs his argument.  *See, e.g., Sanchez*, 61 Cal. 4th at 923; *Sonic-Calabasas A*, 57 Cal. 4th at 1136.

[5] The court ultimately upheld the agreement after the parties stipulated to severing the objectionable provisions.  *See Bynum*, 2016 U.S. Dist. LEXIS at *15.

raised only in a footnote"), but also because much of it is being raised for the first time in this

motion, *see Analytical Surveys*, 684 F.3d at 52.  Indeed, four of the cases Defendant cites for his

misguided argument—including, notably, *DIRECTV*—are found nowhere in his original

briefing.  *Compare* MFR 14 n.7, *with* MTD at 21–25, *and* MTD Reply at 9–10.

### B.  This Court Properly Held That Defendant Cannot Invoke The User Agreement, Which Does Not Apply To Him.

Even if the class waiver provision applied outside the arbitration agreement and were

somehow enforceable, Defendant could not enforce it because he is not party to the User

Agreement.  Defendant concedes that the express terms of the User Agreement do not extend the

arbitration provision or its class action waiver to Defendant.  Yet Defendant once again argues

that equitable estoppel and agency doctrine would permit him to stand in Uber's shoes and

enforce the User Agreement.  Those arguments are nonstarters because Plaintiff's antitrust

claims are independent of the User Agreement.  Neither doctrine applies here.

### i.  Equitable Estoppel Does Not Permit Defendant To Invoke The User Agreement.

The doctrine of equitable estoppel ensures that "a signatory to an agreement . . . 'cannot,

on the one hand, seek to hold the non-signatory liable *pursuant to duties imposed by the*

*agreement*, which contains an arbitration provision, but, on the other hand, deny [the]

arbitration's applicability because the defendant is a non-signatory."  *Goldman v. KPMG, LLP*,

92 Cal. Rptr. 3d 534, 543 (Cal. Ct. App. 2009) (quoting *Grigson v. Creative Artists Agency*, 210

F.3d 524, 528 (5th Cir. 2000)) (emphasis added).  Accordingly, "the sine qua non" for equitable

estoppel "is that the claims plaintiff asserts against the nonsignatory must be *dependent upon, or*

*founded in and inextricably intertwined with*, the underlying contractual obligations of the

agreement containing the arbitration clause."  *Id.* at 540 (emphasis added); *JSM Tuscany, LLC v.*

*Superior Court*, 123 Cal. Rptr. 3d 429, 441 (Cal. Ct. App. 2011) (same); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128–29 (9th Cir. 2013) (same).

This Court properly held that equitable estoppel is inapplicable here because "[P]laintiff is not seeking to enforce the User Agreement against [D]efendant," Opinion and Order Dkt. No. 37 at 23 n.8 (March 31, 2016) ("Order") (citing *Kramer*, 705 F.3d at 1128). Plaintiff's price-fixing claims do not seek to hold Defendant "liable pursuant to duties imposed by the [User] [A]greement," nor are those claims "dependent upon, or founded in and inextricably intertwined with, the underlying contractual obligations of the [User] [A]greement." *Goldman*, 92 Cal. Rptr. 3d at 528, 543, 540. And "allegations of substantially interdependent and concerted misconduct by signatories and nonsignatories, standing alone, are not enough." *Id.* at 541.

Defendant skates over many User Agreement provisions, *see* MFR at 10, but fails to identify a single one that this price-fixing suit seeks to enforce; there is none.[6] By contrast, *Grigson*—the same Fifth Circuit decision that helped shape California's equitable estoppel doctrine, *see Goldman*, 92 Cal. Rptr. at 543 (quoting *Grigson*, 210 F.3d at 528)—illustrates a proper application of the doctrine. There, the court permitted nonsignatory enforcement of an arbitration provision because the plaintiff's tortious interference claim depended on the scope and interpretation of specific provisions in the underlying distribution agreement. *See Grigson*, 210 F.3d at 528–30. The entire lawsuit, the court observed, "turn[ed] on the meaning of the distribution agreement's numerous—often intricate—provisions," offering "the quintessential situation for when the doctrine [of equitable estoppel] should be applied." *Id*. at 530–31.

---

[6] Plaintiff's lawsuit does not seek to enforce, for example, User Agreement terms concerning the "reliability, timeliness, quality, suitability, [and] availability" of rides, *see* User Agreement at 7, or user obligations to "not copy, or distribute the App[] or other content without written permission from [Uber]" or to "only use the App[] and Service for [the user's] own use and [to] not resell it to a third party," *see* User Agreement at 3.

Astoundingly, Defendant continues to ignore cases rejecting the extension of equitable estoppel to antitrust claims like Plaintiff's. This lawsuit seeks to enforce only federal and state antitrust laws. Its price-fixing claims would be the same even if Uber had distributed its App without any user terms or conditions. In similar cases, set out in Plaintiff's opposition memorandum, *see* MTD Opp. at 24, and ignored in Defendant's reply, *see* MTD Reply at 9–10, and again here, *see* MTD at 11-13, courts have properly rejected claims of equitable estoppel akin to Defendant's.

For instance, just last year, the California Court of Appeals held that "[t]he doctrine of equitable estoppel has no application" where the complaint alleged an "unlawful scheme to prevent price competition" because the plaintiff was "only seeking to enforce [California antitrust laws;] it [was] clearly not seeking to enforce or otherwise take advantage of any portion of the [underlying agreement]." *UFCW & Employers Benefit Trust v. Sutter Health*, 194 Cal. Rptr. 3d 190, 206 (Cal. Ct. App. 2015). And the Eight Circuit drew a similar line in *In re Wholesale Grocery Prods. Antitrust Litig.*, 707 F.3d 917 (8th Cir. 2013). That Circuit held that while equitable estoppel could work where "claims arose directly from violations of the terms of a contract containing an arbitration clause," *i.e.,* because, "[w]ithout the contracts . . . plaintiffs would not have had a cause of action," the doctrine did not apply where plaintiffs were "bringing antitrust conspiracy claims against the non-signatory [defendants]," because they are "statutory claims [that] exist independent of the [underlying] supply and arbitration agreements." *Id.* at 923. The reasoning of both cases defeats Defendant's argument.

Yet, even as Defendant cites eleven decisions for the first time in this motion—not one of which is properly presented or helps his cause, *see* MFR at 11–13—he continues to ignore these and other key precedents that illustrate precisely why his equitable estoppel claim fails, *see id.*

16

### ii. Agency Doctrine Does Not Permit Defendant To Invoke The User Agreement.

Defendant gets no further with his agency argument, which added so little that Defendant never even reprised the argument in his original reply. *See* MTD Reply at 9-10. His agency argument posits erroneously, just as his equitable estoppel argument does, that Plaintiff is seeking to enforce the User Agreement. Upon that false premise, Defendant cites three state law cases for his agency argument. *See* MFR at 10. Each involved efforts to enforce obligations arising from an underlying agreement. *See Dryer v. L.A. Rams*, 709 P.2d 826, 827 (Cal. 1985) (plaintiff alleging a "violation of his [employment] contract"); *Merrill Lynch Intl. Fin., Inc. v. Donaldson*, 895 N.Y.S.2d 698, 700, 703 (N.Y. Sup. Ct. 2010) (plaintiff "seek[ing] payment on a promissory note"; "loan was part of [defendant's] employment contract"); *Rowe v. Exline*, 63 Cal. Rptr. 3d 787, 795 (Cal. Ct. App. 2007) (breach of contract claim "obviously relies upon the Agreement" and statutory claims "also rely upon, make reference to, presume the existence of, and are intertwined with the Agreement.").[7] Yet, as established above, and as this Court correctly found previously, Plaintiff is not seeking to enforce the User Agreement in this suit.

Ultimately, Defendant stretches the authorities he cites far beyond their holdings, as illustrated by his reliance on *Ross v. Am. Express Co.*, 547 F.3d 137 (2d Cir. 2008). *Ross* was not about agency; it was about equitable estoppel, and its holding cuts against Defendant's position even on that. *See id.* at 148 (rejecting equitable estoppel argument because, *inter alia*, "it would be wrong to suggest that a claim against a co-conspirator of a party alleged to have engaged in antitrust violations will always be intertwined to a degree sufficient to work an

---

[7] *Rowe* did not apply an agency theory; it applied an alter ego theory. *See Rowe*, 63 Cal. Rptr. 3d at 792–94. The court recognized *Dryer*'s agency rationale while noting that, there, "the individual defendants were alleged to have been party to the contract and breached the contract." *Rowe*, at 793. Moreover, *Rowe* circumscribed its alter ego rationale "only to the first cause of action for breach of contract." *Id*. at 794.

estoppel." (internal quotation marks and citation omitted)).  Moreover, far from validating that a "non-signatory agent can enforce [the] dispute resolution provision of [a] contract," as Defendant claims, *see* MFR at 10, the Second Circuit cast doubt on the very existence of a mechanism for nonsignatory agency enforcement.  *See Ross*, 547 F.3d at 143 n.3 (observing that "it remains an open question in this Circuit whether the non-signatory may proceed upon any theory other than estoppel," such as "assumption, agency, [or] alter ego.").  Even the "agency" cases catalogued by the court in *Ross* undermine Defendant's argument.  *See id.* at 144-145 (discussing cases where, for example, "plaintiffs had asserted the existence of more than simply an agency relationship"; where "signatory plaintiffs specifically and repeatedly allege[d] that signatory defendant acted at all relevant times as the agent of non-signatory defendants" (internal quotation marks and alterations omitted)).

Defendant's agency argument thus adds nothing to his misplaced equitable estoppel argument.  And, in a now familiar pattern, his erroneous reliance on *Dryer*, *Merrill Lynch*, and *Ross* is improper because he raises those decisions for the first time on reconsideration   Thus, Defendant's agency argument fails for the same reasons his equitable estoppel argument does.

**CONCLUSION**

For these reasons, the Court should deny Defendant's motion for partial reconsideration.

Dated:  April 21, 2016                         HARTER SECREST & EMERY LLP

                                  By:    /s/ Brian M. Feldman
                                         Brian Marc Feldman
                                         Jeffrey A. Wadsworth
                                         Edwin M. Larkin
                                         A. Paul Britton
                                         1600 Bausch & Lomb Place
                                         Rochester, New York 14604
                                         Telephone No. (585) 232-6500
                                         Facsimile No. (585) 232-2152
                                         bfeldman@hselaw.com
                                         jwadsworth@hselaw.com
                                         elarkin@hselaw.com
                                         pbritton@hselaw.com

                                         ANDREW SCHMIDT LAW PLLC
                                         Andrew Arthur Schmidt
                                         97 India Street
                                         Portland, Maine 04101
                                         Telephone No. (207) 619-0320
                                         Facsimile No. (207) 221-1029
                                         andy@maineworkerjustice.com

                                         *Attorneys for Plaintiff Spencer Meyer*

19