UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------x
SPENCER MEYER, individually and on
behalf of those similarly situated,      :

     Plaintiffs,                        :

         -v-                          :

TRAVIS KALANICK,                         :

     Defendant.                         :
-------------------------------------x

       15 Civ. 9796

     OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.

    On January 29, 2016, plaintiff Spencer Meyer, on behalf of
himself and those similarly situated, filed his First Amended
Complaint in this putative class action lawsuit against
defendant Travis Kalanick, CEO and co-founder of Uber
Technologies Inc. ("Uber"). See First Amended Complaint, Dkt.
26. Plaintiff Meyer alleged that defendant Kalanick, as CEO of
Uber and an occasional Uber driver, had conspired with Uber
drivers to fix prices through the Uber mobile application (the
"Uber app") in violation of federal and state antitrust laws.
See id. ¶¶ 1, 3, 120-40. On March 31, 2016, this Court issued an
Opinion and Order denying defendant Kalanick's motion to dismiss
the First Amended Complaint. See Opinion and Order dated March
31, 2016, Dkt. 37. Among much else, the Court found that,
contrary to defendant's contentions, plaintiff Meyer had not, in
signing a User Agreement with Uber, waived the right to proceed

via class action, nor was plaintiff equitably estopped from pursuing a class action suit against Mr. Kalanick. See id. at 23 n.8.

On April 14, 2016, defendant Kalanick filed a motion for partial reconsideration of the Court's Opinion and Order denying his motion to dismiss. See Notice of Motion, Dkt. 40.[1] In this motion, defendant Kalanick challenges what he describes as a "narrow and discrete issue," viz., the Court's finding that plaintiff Meyer had not waived the right to proceed via class action. See Memorandum of Law in Support of Defendant Travis Kalanick's Motion for Reconsideration of the Court's Holding Regarding Plaintiff's Class Action Waiver ("Def. Br."), Dkt. 41, at 1. Plaintiff filed his opposition to the motion for partial reconsideration on April 21, 2016. See Memorandum of Law in Opposition to Defendant Travis Kalanick's Motion for Partial Reconsideration of the Court's March 31, 2016 Opinion and Order ("Pl. Opp. Br."), Dkt. 43. Having reviewed the parties' papers, the Court, for the reasons stated below, hereby denies defendant's motion for partial reconsideration and holds that plaintiff may continue to seek to pursue a class action.

---

[1] Defendant Kalanick, as instructed by the Court during a telephone conference held on April 11, 2016, filed his answer to the First Amended Complaint on the same day as his motion for partial reconsideration. See Answer, Dkt. 42. As the Court further informed defendant on that call (without objection from plaintiff), the Court would not construe the filing of the Answer as, per se, a waiver of any issue that defendant might raise in his motion for reconsideration.

By way of background, plaintiff Meyer, in signing-up to use Uber, agreed to Uber's Terms and Conditions for users (the "User Agreement"),[2] which included the following provision:

**Dispute Resolution**

You and Company agree that any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof or the use of the Service or Application (collectively, **"Disputes"**) will be settled by binding arbitration, except that each party retains the right to bring an individual action in small claims court and the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights. **You acknowledge and agree that you and Company are each waiving the right to a trial by jury or to participate as a plaintiff or class User in any purported class action or representative proceeding**. Further, unless both you and Company otherwise agree in writing, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of any class or representative proceeding. If this specific paragraph is held unenforceable, then the entirety of this "Dispute Resolution" section will be deemed void. Except as provided in the preceding sentence, this "Dispute Resolution" section will survive any termination of this Agreement.

User Agreement at 7-8 (boldface in the original). Defendant Kalanick, though not himself a signatory to the agreement between plaintiff and Uber, claims that the above-quoted language constitutes plaintiff's waiver of the right to proceed

---

[2] It may be noted that the User Agreement, a lengthy and detailed agreement written in highly legalistic language, bears all the earmarks of a classic contract of adhesion. See generally Todd D. Rakoff, Contracts of Adhesion: An Essay in Reconstruction, 96 Harv. L. Rev. 1173 (1983). It is doubtful that any Uber user other than a lawyer has ever read it, let alone understood it.

3

via class action, and that he may lawfully enforce this class action waiver even without seeking to compel arbitration. See Def. Br. at 5. Mr. Kalanick asks the Court to reconsider its ruling to the contrary.

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995). "A motion for reconsideration should be granted only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted).

Here, defendant has not identified any "controlling decision" that the Court overlooked, "intervening change of controlling law," or "clear error" made by the Court in ruling that plaintiff retained the right to proceed via class action. While defendant's arguments are not frivolous, no controlling precedent or obvious point of law requires the Court to rule in defendant's favor. In fact, defendant's arguments on the motion

4

for partial reconsideration essentially accord with those made, albeit much more briefly, in defendant's motion to dismiss. This time, however, defendant has expanded its argument and cited several new cases, such as U1it4Less, Inc. v. FedEx Corp., No. 11-cv-1713, 2015 WL 3916247 (S.D.N.Y. June 25, 2015) and DIRECTV, Inc. v. Imburgia, 136 S. Ct. 463 (Dec. 14, 2015). Defendant's motion thus fails to comply with the direction that a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012), as amended (July 13, 2012) (internal quotation marks omitted). On this ground alone, the Court declines to grant defendant's motion for partial reconsideration.

Independently, even if defendant's motion did not fall short of the standard required for reconsideration, the motion would not succeed. As an initial matter, the Court hereby clarifies that it will apply California law to interpret the User Agreement. Indeed, the parties do not appear to disagree on this point – or, at least, they did not disagree during the briefing on defendant's motion to dismiss. See Def. Memorandum of Law in Support of Defendant Travis Kalanick's Motion to Dismiss ("Def. MTD Br."), Dkt. 28, at 23 ("In this case, the

5

relevant contract law is the law of California."); Memorandum of
Law in Opposition to Defendant Travis Kalanick's Motion to
Dismiss ("Pl. Opp. MTD Br."), Dkt. 33, at 23 ("California
contract law governs the User Agreement"); Def. Br. at 7 n.3
("Given the facts pled in the Complaint, California law would
appear to apply given Uber's connections to California; the only
other alternative is New York."). Moreover, under New York's
"interest analysis" for choice of law, a court "must consider
five factors: (1) the place of contracting; (2) the place of the
contract negotiations; (3) the place of the performance of the
contract; (4) the location of the subject matter of the
contract; and (5) the domicile, residence, nationality, places
of incorporation, and places of business of the parties."
Philips Credit Corp. v. Regent Health Grp., Inc., 953 F. Supp.
482, 502 (S.D.N.Y. 1997). Here, the interest analysis points to
the application of California law, especially since Uber is
headquartered in California. See Def. Br. at 7 n.3. Therefore,
the Court will apply California law to interpret the User
Agreement.

     Turning to the merits of the motion for partial
reconsideration, three main issues present themselves for the
Court's consideration. First, does the User Agreement contain a
class action waiver that is effective in the absence of a motion

6

to compel arbitration?[3] (The Court will refer to such a class action waiver as an "independent class action waiver.") Second, if the User Agreement contains an independent class action waiver, is this waiver enforceable, or is it, as plaintiff urges, unconscionable under valid California law? See Pl. Opp. Br. at 9-14. Third, if the User Agreement contains an independent and enforceable class action waiver, may Mr. Kalanick, as a non-signatory to the User Agreement, enforce such a waiver against plaintiff Meyer? In response, the Court finds that, first, the User Agreement contains no independent class action waiver, and that, second, even assuming arguendo that such waiver existed, it would be unenforceable under California law. The Court therefore has no occasion to reach the third issue, i.e., whether Mr. Kalanick, as a non-signatory to the User Agreement, may enforce this agreement against plaintiff Meyer.

Regarding the presence of an independent class action waiver in the User Agreement, defendant Kalanick argues that the bolded sentence in the "Dispute Resolution" section of the User Agreement is not limited to the arbitration context, but simply

---

[3] Defendant has not made any motion to compel arbitration. In fact, defendant represented in its briefing on the motion to dismiss that "Mr. Kalanick does not seek to compel arbitration here" and that "Mr. Kalanick does not waive and expressly reserves his right to move to compel arbitration in other cases arising out of the User Agreement." See Def. MTD Br. at 22 n.10 (emphasis added).

states "**You acknowledge and agree that you and Company are each
waiving the right to a trial by jury or to participate as a
plaintiff or class User in any purported class action or
representative proceeding**." User Agreement at 8; see Def. Br. at
6. In defendant's view, the use of the word "or" in the User
Agreement "creates two distinct waivers: the right to a trial by
jury and, separately, the right to participate in a class
action," Def. Br. at 5, and those waivers can each be
independently enforceable, not just in the arbitration context
but also in a court.

However, defendant's reading of this language in the User
Agreement ignores important context. As noted, the bolded
sentence referencing class proceedings appears in a section of
the User Agreement titled "Dispute Resolution." User Agreement
at 7-8. The first sentence of this section provides that "any
dispute, claim, or controversy arising out of or relating to
this Agreement . . . will be settled by binding arbitration,"
with certain narrow exceptions. See User Agreement at 7-8
(emphasis added). The bolded sentence quoted above is the second
sentence of this section. The third sentence then states:
"Further, . . . the arbitrator may not consolidate more than one
person's claims . . ." User Agreement at 8. The provisions
directly before and after the bolded sentence, then, concern
arbitration. The sentence beginning "Further" elaborates on

8

certain features of the arbitration proceedings discussed in the preceding part of the paragraph, including the bolded sentence. Additionally, the first sentence of the Dispute Resolution section lays out the path that the user "will" be required to follow in signing up to use Uber ("any dispute . . . will be settled by binding arbitration"), while the bolded sentence referencing class proceedings contains a description of the consequences of following this path ("you and Company are each waiving the right to trial by jury or to participate as a plaintiff or class User . . ."). User Agreement at 8.

Given this context, the bolded sentence is most plausibly read as an explanation of the rights that the parties are giving up in agreeing to arbitrate disputes, and not as an independently effective waiver of the right to pursue a class action outside the arbitration context. Since no motion to compel arbitration has been made (and, as noted, appears to have been effectively relinquished), plaintiff Meyer has not, by agreeing to the Dispute Resolution paragraph, waived any right to proceed via a class action lawsuit outside the arbitration context.

The conclusion that the User Agreement does not contain an independent class action waiver outside the arbitration context is also supported by Uber's description of the User Agreement's provision on class proceedings in a suit against Uber in the

Northern District of California, <u>Matthew Philliben and Byron
McKnight v. Uber Technologies, Inc. and Rasier, LLC</u>, No. 14-cv-
5615 (N.D. Cal.).  Although Uber is not a party to the instant
proceeding between plaintiff Meyer and defendant Kalanick,
nevertheless, insofar as Mr. Kalanick seeks to enforce a
contract drafted by Uber, Uber's description of the relevant
contractual language carries some weight. In <u>Philliben</u>, in the
course of arguing that the arbitration clause in Uber's User
Agreement is not procedurally unconscionable, Uber stated that
"[t]here is literally one bolded sentence in all the Terms: the
part of the <u>Arbitration Agreement</u> that waives the right to a
jury trial and to participate in a class action." Defendants'
Reply in Support of Motion to Stay Proceedings Pending
Arbitration, <u>Philliben</u>, No. 14-cv-5615, Dkt. 38[4] (May 26, 2015)
("Def. N.D. Cal. Br.") (emphasis added). Uber then cited the
"Cianfrani Declaration," Exhibit A, at 8, which contains the
same language as that found in plaintiff Meyer's User Agreement.
<u>See</u> Def. N.D. Cal. Br., citing Declaration of R. Michael
Cianfrani in Support of Uber's Motion to Stay Proceedings
Pending Arbitration, Exhibit A, <u>Philliben</u>, Dkt. 26-1, at 7-8.
While defendant Kalanick contends that plaintiff Meyer has

---

[4] All docket numbers following references to <u>Philliben</u> refer to the docket of
that case.

mischaracterized Uber's reply brief in the <u>Philliben</u> matter,[5] the Court reads Uber's statement in this brief to acknowledge that the class action waiver is "part of the Arbitration Agreement," and therefore not an independent provision of the User Agreement. This statement by Uber provides additional, though not essential, support for the Court's holding that the User Agreement does not include an independent class action waiver.

Defendant Kalanick, in arguing to the contrary, cites two cases in which class action waivers were held to be enforceable outside the arbitration context.[6] <u>See</u> Def. Br. at 7-8, citing <u>Ulit4Less</u>, 2015 WL 3916247; <u>Palmer v. Convergys Corp.</u>, No. 10-cv-145, 2012 WL 425256 (M.D. Ga. Feb. 9, 2012). But in these cases, the relevant contracts contained class action waivers and no arbitration clauses, so that the issue of whether the class action waiver had effect independently of the arbitration clause did not even arise. <u>See</u> <u>Ulit4Less</u>, 2015 WL 3916247, at *1, *4; <u>Palmer</u>, 2012 WL 425256, at *1. Defendant also contends that a party does not waive the ability to enforce all contractual rights simply by not enforcing certain contractual provisions. <u>See</u> Def. Br. at 8. But this argument does not apply if, as the

---

[5] Mr. Kalanick's short letter to this effect, dated April 25, 2016, will be docketed along with this Opinion and Order.

[6] Neither of these cases applied California law, which, as discussed <u>infra</u>, would hold an independent class action waiver in the User Agreement to be unconscionable.

Court now concludes, the arbitration and class action provisions in Uber's User Agreement are not different or separate. For all these reasons, the Court determines that the User Agreement does not contain an independent class action waiver outside the arbitration context.

Moreover, even assuming arguendo that any such independent class action waiver were included in the User Agreement, it would be unconscionable under the applicable law: the law of California. In Discover Bank v. Superior Court, the California Supreme Court held that when a class action waiver

> is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party "from responsibility for [its] own fraud, or willful injury to the person or property of another." (Civ. Code, § 1668.) Under these circumstances, such waivers are unconscionable under California law and should not be enforced.

Discover Bank v. Superior Court, 113 P.3d 1100, 1110 (Cal. 2005). The California Supreme Court noted that

> the principle that class action waivers are, under certain circumstances, unconscionable as unlawfully exculpatory is a principle of California law that does not specifically apply to arbitration agreements, but to contracts generally. In other words, it applies equally to class action litigation waivers in contracts without arbitration agreements as it does to class arbitration waivers in contracts with such agreements.

12

Id. at 1112. In support of this proposition, the California Supreme Court cited America Online, Inc. v. Superior Court, 108 Cal. Rptr. 2d 699 (Cal. Ct. App. 2001), as modified (July 10, 2001), in which the California Court of Appeals stated that "[i]n contrast to Virginia consumer law's ostensible hostility to class actions, the right to seek class action relief in consumer cases has been extolled by California courts. . . . The unavailability of class action relief in this context is sufficient in and by itself to preclude enforcement of the [Terms of Service] forum selection clause." America Online, 108 Cal. Rptr. at 712.

In this case, it is readily apparent that the User Agreement is a contract of adhesion; that plaintiff Meyer's dispute "predictably involve[s] small amounts of damages"; and that plaintiff alleges that Mr. Kalanick "has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." Discover Bank, 113 P.3d at 1110.[7] Indeed, defendant Kalanick does not argue to the contrary. See Def. Br. at 14 n.7. Mr. Kalanick argues, however, that because plaintiff Meyer's claims arise only under federal and New York law, and not California law, Discover Bank's holding on

---

[7] As noted supra, the Court does not reach the issue of whether any independent and enforceable class action waiver in the User Agreement could be enforced by Mr. Kalanick, a non-signatory.

the unconscionability of class action waivers does not apply to
plaintiff's suit. See Def. Br. at 14 n.7; Reply Memorandum of
Law in Support of Defendant Travis Kalanick's Motion to Dismiss
("Def. MTD Reply Br."), Dkt. 34, at 10. This argument is based
on Discover Bank's use of the phrase "at least to the extent the
obligation at issue is governed by California law." Discover
Bank, 113 P.3d at 1110; see also id. at 1109 ("[s]uch one-sided,
exculpatory contracts in a contract of adhesion, at least to the
extent they operate to insulate a party from liability that
otherwise would be imposed under California law, are generally
unconscionable.").

        It is highly problematic, however, to argue that California
law on the unconscionability of class action waivers applies
only when California law itself provides the source of
liability. The use of the phrase "at least" in the above-cited
language from Discover Bank indicates the California Supreme
Court's view that a contractual provision could be
unconscionable at minimum where the source of liability is
California law. The California Supreme Court did not thereby
restrict such sources of liability only to California law. See
Pl. Opp. Br. at 12-13. This conclusion accords with subsequent
statements of Discover Bank's holding by the California Supreme
Court. For example, the California Supreme Court in 2013
described the holding of Discover Bank using ellipses in lieu of

the phrase "at least to the extent the obligation at issue is governed by California law":

> We held in Discover Bank that when a class arbitration waiver "is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then . . . the waiver becomes in practice the exemption of the party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.' (Civ. Code, § 1668.) Under these circumstances, such waivers are unconscionable under California law and should not be enforced."

See Sonic-Calabasas A, Inc. v. Moreno, 311 P.3d 184, 196 (Cal. 2013). See also Sanchez v. Valencia Holding Co., LLC, 353 P.3d 741, 757 (Cal. 2015) ("In Discover Bank v. Superior Court (2005) 36 Cal. 4th 148, 30 Cal. Rptr. 3d 76, 113 P.3d 1100, we announced a rule that class arbitration waivers in consumer contracts are unconscionable when they are found 'in a setting in which disputes between the contracting parties predictably involve small amounts of damages and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money.'") (quoting Discover Bank, 113 P.3d at 1110)). Moreover, courts have applied California's unconscionability doctrine without limitation to any specific source of liability. See, e.g., Ingle v. Circuit City Stores,

15

Inc., 328 F.3d 1165, 1170 (9th Cir. 2003); Zaborowski v. MHN
Gov't Servs., Inc., 936 F. Supp. 2d 1145, 1149-56 (N.D. Cal.
2013), aff'd, 601 Fed. App'x 461 (9th Cir. 2014); Bynum v.
Maplebear Inc., No. 15-cv-6263, 2016 WL 552058, at *9 (E.D.N.Y.
Feb. 12, 2016). The Court therefore holds that California's
doctrine on the unconscionability of class action waivers
applies to claims arising under law other than California law,
including federal and New York law, where, as here, the waiver
itself is contained in an agreement governed by California law.

Mr. Kalanick also argues that "[p]laintiff has not pled . .
. that the [User] agreement is unconscionable." Def. Br. at 14
n.7. In his reply on the motion to dismiss, Mr. Kalanick cited a
California Supreme Court case in which that court, in evaluating
a motion to compel arbitration, stated that "[t]he party
resisting arbitration bears the burden of proving
unconscionability." Pinnacle Museum Tower Assn. v. Pinnacle Mkt.
Dev. (US), LLC, 282 P.3d 1217, 1232 (Cal. 2012); see Def. MTD
Reply Br. at 10. However, the Court finds that plaintiff, in its
briefing on the motion to dismiss and the instant motion for
partial reconsideration, has adequately argued in favor of
unconscionability. For all these reasons, the Court determines
that even if the User Agreement were read (contrary to the
Court's reading) to contain an independent class action waiver
outside the arbitration context, such a waiver would be

unconscionable under California law here applicable to all claims.

Defendant Kalanick, however, argues that California cases holding class action waivers to be unconscionable, notably Discover Bank, "were decided prior to and were expressly abrogated by the Supreme Court." Def. Br. at 14 n.7, citing AT&T Mobility LLC v. Concepcion, 563 U.S. 333 (2011); DIRECTV, 136 S. Ct. As a threshold matter, however, to the extent that defendant is claiming that California law on the unconscionability of class action waivers has been nullified in its entirety, defendant appears to have waived that argument. In Mr. Kalanick's reply brief on the motion to dismiss, Mr. Kalanick conceded that "it remains possible post-Concepcion to conclude that a given class waiver is unconscionable." Def. MTD Reply Br. at 10; see also id. ("Class action waivers are unconscionable where 'they operate to insulate a party from liability that otherwise would be imposed under California law.'") (quoting Discover Bank, 113 P.3d at 1110)(emphasis added by defendant).

More importantly, it is clear that the Supreme Court has not overridden the California Supreme Court's determination that class action waivers are unconscionable in the circumstances discussed above, except in the case of an arbitration proceeding. Specifically, in 2011, the Supreme Court held that the Federal Arbitration Act preempted the California Supreme

17

Court's decision in Discover Bank classifying most collective
arbitration waivers in consumer contracts as unconscionable. See
Concepcion, 563 U.S. at 340, 352. Two years later, the Supreme
Court held, citing "the [Federal Arbitration Act's] mandate,"
that a class arbitration waiver was enforceable even when the
plaintiff's cost of individually arbitrating an antitrust claim
outweighed the possible individual recovery. See American
Express Co. v. Italian Colors Restaurant, 133 S. Ct. 2304, 2308-
2312 (2013). And in December 2015, the Supreme Court held that a
class arbitration waiver was enforceable, even though the
contract at issue provided that the arbitration provision would
be unenforceable if "the law of your state" rendered the class
arbitration waiver unenforceable. DIRECTV, 136 S. Ct. at 466.
The Supreme Court reasoned that "the law of your state" could
not refer to California law on the unconscionability of class
arbitration waivers that had been invalidated in Concepcion. See
id. at 469-71.

These Supreme Court decisions, notably Concepcion, stand
for the proposition that the Federal Arbitration Act ("FAA")
preempts California's rule that class waivers in arbitration
agreements are, in certain circumstances, unconscionable. See
Sonic-Calabasas, 311 P.3d at 201 ("What is new is that
Concepcion clarifies the limits the FAA places on state
unconscionability rules as they pertain to arbitration

18

agreements."); Smith v. Jem Grp., Inc., 737 F.3d 636, 641 (9th Cir. 2013) ("Concepcion held that a California law forbidding a class-action waiver provision in arbitration agreements was preempted by the FAA."). But these Supreme Court decisions do not invalidate in toto the California rule that class action waivers may be held unconscionable. In particular, the Supreme Court's cases on FAA preemption do not invalidate California's unconscionability rule outside the arbitration context. For as the California Supreme Court has stated, "state-law rules that do not 'interfere[ ] with fundamental attributes of arbitration' . . . do not implicate Concepcion's limits on state unconscionability rules." Sonic-Calabasas, 311 P.3d at 201 (quoting Concepcion, 563 U.S. at 344).

In addition to this doctrinal observation, the logic behind the Supreme Court decisions on FAA preemption of class arbitration waivers is not readily transferable to class actions outside the arbitration setting. Thus, in Concepcion, the Supreme Court's reasoning centered on the point that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration." Concepcion, 563 U.S. at 344. The Supreme Court cited various "changes brought about by the shift from bilateral arbitration to class-action arbitration," which, the Court indicated, were "fundamental." Id. at 347, citing Stolt-Nielsen S.A. v.

19

AnimalFeeds Int'l Corp., 559 U.S. 662, 686 (2010). The Court
indicated that class arbitration "makes the process slower, more
costly, and more likely to generate procedural morass than final
judgment"; that "class arbitration requires procedural
formality"; and that "[a]rbitration is poorly suited to the
higher stakes of class litigation." Concepcion, 563 U.S. at 347-
50. These points are clearly directed specifically to the
relationship between required class procedures and arbitration.
They do not apply to litigation, which mandates procedural
formality, even at the cost of more extended proceedings, and
which accepts the higher stakes of class action suits.
Concepcion thus provides no basis on which to conclude that
California law on the unconscionability of class action waivers
would be invalid outside the arbitration setting.

        To be sure, the Supreme Court in Italian Colors stated that
"[t]he antitrust laws do not evinc[e] an intention to preclude a
waiver of class-action procedure" and "[n]or does congressional
approval of Rule 23 establish an entitlement to class
proceedings for the vindication of statutory rights." Italian
Colors, 133 S. Ct. at 2309 (internal quotation marks omitted);
see also Ulit4Less, 2015 WL 3916247, at *3-*4. But these
statements in Italian Colors simply reject certain possible
grounds for holding that "the FAA's mandate" did not require the
relevant class action waiver to be enforced. See Italian Colors,

133 S. Ct. at 2309 (noting that courts must enforce arbitration agreements according to their terms, even in the face of claims that "allege a violation of a federal statute, unless the FAA's mandate has been overridden by a contrary congressional command.") (internal quotation marks omitted). These statements in Italian Colors do not remotely support the conclusion that state law on the unconscionability of class action waivers is defunct outside the arbitration context. Indeed, adopting defendant's views on the effect of Concepcion and related cases on California's unconscionability doctrine would be, not a necessary or inevitable result of Supreme Court precedent, but a dramatic extension of case law on the Federal Arbitration Act into the hitherto largely undisturbed waters of independent class action waivers. Into those waters the Court declines to recklessly plunge.

For all these reasons, the Court denies defendant Kalanick's motion for partial reconsideration. The Clerk of Court is directed to close docket entry 40.

SO ORDERED.

Dated:    New York, NY
          May 7, 2016

                                     JED S. RAKOFF, U.S.D.J.