# **EXHIBIT C**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SPENCER MEYER, individually and on behalf of those similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> TRAVIS KALANICK, <br> Defendant | 1:15 Civ. 9796 (JSR) |

**RIDER TO SUBPOENA DUCES TECUM**
**TO UBER TECHNOLOGIES, INC., DATED MAY 6, 2016**

Pursuant to Federal Rule of Civil Procedure 45, Plaintiff causes the attached subpoena to be served on Uber Technologies, Inc. ("Uber") commanding the production of all of the documents and other tangible things specified in the subpoena that are in Uber's possession, custody, or control. All documents and tangible things responsive to the attached subpoena should be produced for inspection and/or copying within 30 calendar days to the offices of Constantine Cannon LLP at 335 Madison Avenue, 9th Floor**,** New York, New York  10017-4625**,** or as otherwise agreed to by the parties.

**INSTRUCTIONS**

1. Unless otherwise specified, this document request covers the period from January 1, 2009 through the present (the "Relevant Period").

2. The request shall be construed to include any additional documents responsive to these requests that are discovered or produced after the date of production, and therefore require further and supplemental responses.

3. The request extends to any and all documents in your possession, custody, or control regardless of the physical location of the documents, or whether such documents are possessed by you, any person or entity acting on your behalf, including not but limited to any parent or subsidiary organizations, any predecessors-in-interest, any affiliated entities, your officers, directors, partners, associates, shareholders, agents, servants, representatives, accountants, investigators, or attorneys, and Defendant.

4. All documents should be produced as they are kept in the usual course of business or shall be organized and labeled to correspond to the categories in the request. All documents should be produced in the order in which they appear in the files of the custodian, and should contain a clear indication of where each document ends and the next begins. Documents maintained in a file folder or binder should be preceded by the file folder or binder label, if one exists, and should contain a clear indication of where the file folder or binder begins and ends. All attachments to a document should be produced with the document.  A unique control number should be affixed to each page (or, to each document, where a native file is produced). Computer files and other documents maintained in electronic form should be produced in machine-readable electronic form.  The source and location of each responsive document should be designated, including the entity or person from which or whom it was obtained.

5. If you object to any of the categories of documents set forth below, you must fully set forth your objections in writing. If objection is made to part of any document or category, the part should be specified. If you object to any request or part of any request, you must produce all documents to which your objection does not apply.

6. If any documents cannot be produced in full, you are requested to produce them to the fullest extent possible, specifying the reasons for your inability to produce the remainder and stating any information, knowledge, or belief you have concerning the unproduced portion.

7. In the event that multiple copies of a document exist, produce every copy on which appear any notations or markings of any sort that do not appear on any other copy.

## DEFINITIONS

1. "Plaintiff" refers to Spencer Meyer, the plaintiff in this action.

2. "Defendant" refers to Travis Kalanick, the defendant in this action.

3. "Uber," "You," and "Your," means and includes Uber Technologies, Inc. and each person or entity acting on its behalf, including but not limited to its parent and subsidiary companies, predecessors-in-interest, successors-in-interest, affiliated entities, officers, directors, partners, associates, shareholders, agents, employees, servants, representatives, accountants, investigators, attorneys, and Defendant.

4. The "Uber App" means the application for smartphone devices through which users of the Uber App can request drivers to pick them up and take them to their desired destinations, and which utilizes dispatch software to send the nearest independent drivers to the requesting parties' locations.

5. The term "users" or "Uber users" means individuals who seek and receive rides through the Uber App.

6. The term "driver-partner" means a driver who has provided transportation service through the Uber App.

7. "Surge pricing" means the mechanism or the component of the Uber algorithm by which the standard fares calculated by Uber may be multiplied by factors of up to ten times during periods of high user demand or low driver-partner supply.

8. "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

9. "Documents sufficient to identify" and "documents sufficient to show" mean documents that are necessary and sufficient to provide the information requested. Where "documents sufficient to identify" and "documents sufficient to show" are requested, Uber may submit either responsive documents or an affidavit executed by Uber that contains the requested information, identifies the specific source of the information, and which indicates that the statement is based on information contained in documents or records maintained in the ordinary course of business.

10. "To identify", when referring to documents, means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

11. "To identify", when referring to a person, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

12. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

13. "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

14. "All" and "any" shall be construed as encompassing any and all.

15. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that might otherwise be outside its scope.

16. "Include" or "including" denotes a portion of a larger whole and is used without limitation.

17. "Concerning" means relating to, referring to, describing, evidencing or constituting.

## DOCUMENTS REQUESTED

1. Documents sufficient to show each version of all written agreements, including terms and conditions, between Uber and its driver-partners.

2. Documents sufficient to show each version of all written agreements, including terms and conditions, between Uber and its users.

3. Your organizational charts and personnel directories.

4. Documents sufficient to show all Uber prices and pricing policies.

5. All correspondence or other communications between Uber and prospective or actual driver-partners regarding Uber prices and pricing policies.

6. All correspondence or other communications between Uber and prospective or actual driver-partners soliciting the driver-partners to join Uber's network.

7. All correspondence or other communications between Uber and its driver-partners suggesting or encouraging drivers to log in or log out of the Uber App.

8. Documents sufficient to show the names, identification numbers, addresses, email addresses, contact information, and amounts paid to driver-partners through the Uber App, for all current and past Uber driver-partners, including any tables or spreadsheets that can be used to access those names and identification numbers.

9. Documents sufficient to show the names, account numbers, addresses, email addresses, contact information, and amounts paid to driver-partners through the Uber App, for all current and past Uber users, including any tables or spreadsheets that can be used to access those names and account numbers.

10. For all meetings of and/or events for active or prospective Uber driver-partners that have been organized by, sponsored by, or facilitated by Defendant and/or Uber, (a) documents sufficient to show the dates, places, and purposes of all such meetings and events; (b) documents provided to Uber driver-partners at such meetings and events; and (c) documents presented to Uber driver-partners at such meetings and events.

11. From 2007 to present, all documents reflecting, referring to, or related to the conception, design, development, and implementation of the Uber App with respect to setting prices for fares to be charged by Uber driver-partners.

12. From 2007 to present, all business plans, corporate strategies, and proposed business plans of Uber or of any other contemplated or proposed rideshare application or business.

13. From 2007 to present, documents sufficient to identify all persons who participated in the conception, design, development, or implementation of the component of the Uber App that relates to setting prices for fares charged by Uber driver-partners.

14. Documents sufficient to show whether and how the Uber App affords users a mechanism or ability to negotiate fares with drivers for rides matched through the Uber App, and the extent to which Uber has considered such a mechanism.

15. Documents sufficient to show the percentage of times that Uber driver-partners charge a price lower than the fare calculated by the Uber pricing algorithm.

16. Documents sufficient to show the manner in which the Uber App calculates fare quotes communicated to users.

17. Documents sufficient to show the manner in which the Uber App calculates the fares charged to users.

18. Documents sufficient to show the manner in which the Uber App identifies driver-partners and dispatches them to the locations of users.

19. Documents sufficient to identify driver-partners who have provided rides to Uber users in multiple cities, identifying the name of each such driver-partner and, for each such driver-partner, all cities in which the driver-partner has provided rides to Uber users and the dates in which the driver-partner provided rides in each such city.

20. All documents, communications, data, or analysis reflecting, referring to, or related to the distribution to and use of discount coupons or promotional allowances by Uber users.

21. Documents sufficient to show the functioning of the Uber App's pricing algorithm, including documents sufficient to show (a) the process and methodology by which the pricing algorithm calculates fares; and (b) the process and methodology by which the pricing algorithm determines when and where to implement surge pricing.

22. From 2007 to present, documents sufficient to show the extent to which Uber allows or has considered allowing Uber driver-partners to set their own individual fares.

23. Documents sufficient to show the number of rides provided through the Uber App since January 1, 2010, and for each such ride, documents sufficient to show the following:

   a. the origin address (including, without limitation, zip code) and destination address (including, without limitation, zip code);

   b. the date and time at which the ride was requested;

   c. the commencement date and time, the termination date and time, and the duration of the ride;

   d. the distance traveled;

   e. the fare charged to the user;

   f. the fare collected from the user;

   g. the portion of the fare collected from the user and paid to the driver-partner;

   h. whether or not Uber's surge pricing applied to the fare;

   i. the amount of the surge applied to the fare (e.g., 1.5x, 2x, 5x, etc.); and

   j. the Uber service used (e.g., UberX, UberBLACK, UberSUV, UberLUX or UberPOOL).

24. Documents sufficient to show (a) the average time between a user's initial request for service on the Uber App and the response from the Uber App indicating the availability of a driver-partner, and (b) the average time between a user's accepting a ride on the Uber App and a driver-partner's arrival at the user's departure location.

25. From January 1, 2010 forward, documents sufficient to show data, and all regularly prepared reports, reflecting

   a. the number of Uber App signups;

   b. the number of active Uber App users;

    c. the number of Uber App downloads;

    d. the number of ride requests made by users;

    e. the number of ride requests compared to the number of ride requests fulfilled;

    f. and the number of times users opened the Uber App.

26. From January 1, 2010 forward, documents sufficient to show data, and all regularly prepared reports, reflecting the geographic distribution of Uber U.S. ridership (including data and reports reflecting Uber's U.S. revenues and number of riders by city and state).

27. From January 1, 2010 forward, documents sufficient to show data, and all regularly prepared reports, relating to complaints received from Uber users or driver-partners.

28. All documents reflecting, referring to, or related to any research or analysis regarding the rideshare company Sidecar, its business model, its app design, its pricing in comparison to Uber's pricing, or its competitive position vis-à-vis Uber or other companies.

29. All documents reflecting, referring to, or related to any research or analysis regarding the rideshare company Lyft, its business model, its app design, its pricing in comparison to Uber's pricing, or its competitive position vis-à-vis Uber or other companies.

30. All documents reflecting, referring to, or related to any research or analysis regarding the taxicab or limousine service industries, including any apps used with taxicabs or limousines, or their competitive positions vis-à-vis Uber or other companies.

31. From 2007 to present, documents sufficient to show the launch or potential launch of the Uber car service anywhere in the United States.

32. From 2007 to present, all studies, analyses, research, or reports reflecting, referring to, or related to Uber's market share, potential entry, or actual or potential competition anywhere in the United States.

33. From 2007 to present, for any debt issued by Uber or equity investment made in Uber, (a) all documents prepared by or for all financial institutions, advisors, and consultants retained by Uber; and (b) all documents provided to actual or potential investors, related to the subject matter of this litigation and/or to any of the other requests in this rider.

34. In connection with any potential initial public offer of Uber stock, (a) all documents prepared by or for all financial institutions, advisors, and consultants retained by Uber; and (b) all documents provided to potential investors of Uber, related to the subject matter of this litigation and/or to any of the other requests in this rider.

35. All documents filed or served in any class action lawsuits filed against Defendant or Uber by driver-partners.

36. All documents related to any actual, proposed, or contemplated association or other organization between driver-partners.

37. Documents sufficient to identify and describe all facilities and electronic systems used by Defendant or Uber to create, maintain or store documents responsive to these requests, including documents sufficient to identify and describe the physical locations of and individuals with access to such systems.

38. All documents, including internal and external communications, relating to protests, strikes, organized action, demands, or requests by driver-partners relating to Uber pricing, including but not limited to strikes by driver-partners in New York City in September 2014.

39. Uber's monthly, quarterly, and annual financial statements, including balance sheets, income statements, and statements of operations.

40. Uber's document preservation, retention, backup, and litigation hold policies and any documents relating to any departures from those policies.

May 6, 2016

                                      HARTER SECREST & EMERY LLP

By:    <u>/s/ Brian M. Feldman</u>
        Brian Marc Feldman
        A. Paul Britton
        Rochester, New York 14604
        Telephone No. (585) 232-6500
        Facsimile No. (585) 232-2152
        bfeldman@hselaw.com
        pbritton@hselaw.com

***Attorneys for Plaintiffs***

**Certificate of Service**

I hereby certify that the foregoing document was served via email upon counsel of record on May 6, 2016.

/s/ Brian M. Feldman
*Counsel for Plaintiffs*