UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                                       :

SPENCER MEYER, individually and on      :
behalf of those similarly situated,         :
                                         :
                 Plaintiffs,      :   Case No. 1:15-cv-9796 (JSR)
                                         :
        -against-              :
                                         :   **ORAL ARGUMENT REQUESTED**
TRAVIS KALANICK,                :
                                         :
                Defendant.      :
---------------------------------------------------------x


## PROPOSED INTERVENOR UBER TECHNOLOGIES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF COMPELLING ARBITRATION

GIBSON, DUNN & CRUTCHER LLP

Reed Brodsky
200 Park Avenue
New York, NY 10166-0193
Tel: (212) 351-4000
Fax: (212) 351-4035
RBrodsky@gibsondunn.com

Theodore J. Boutrous, Jr.
   (*motion for admission pro hac vice pending*)
Daniel G. Swanson
   (*motion for admission pro hac vice pending*)
Nicola T. Hanna
   (*motion for admission pro hac vice pending*)
Joshua S. Lipshutz
   (*motion for admission pro hac vice pending*)
333 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 229-7000
Fax: (213) 229-7520
Tboutrous@gibsondunn.com

DSwanson@gibsondunn.com
NHanna@gibsondunn.com
JLipshutz@gibsondunn.com

Cynthia E. Richman
  (*motion for admission pro hac vice pending*)
1050 Connecticut Avenue, N.W.
Washington, DC  20036
Tel:  (202) 955-8500
Fax:  (202) 467-0539
CRichman@gibsondunn.com


*Attorneys for Proposed Intervenor Uber
Technologies, Inc.*

May 24, 2016

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND................................................................. 2

LEGAL STANDARD.................................................................................................... 4

ARGUMENT .............................................................................................................. 5

I.  UBER IS ENTITLED AS A MATTER OF RIGHT TO LIMITED
    INTERVENTION TO COMPEL ARBITRATION ............................................................. 5

    A.  Uber's Motion Is Timely ............................................................................... 6

    B.  Uber Has A Legally Protectable Interest ........................................................ 8

        1.  Uber's Interest In Enforcing The Arbitration Agreement As To Itself And
            Mr. Kalanick ....................................................................................... 9

        2.  Uber's Interests In Defending Its Driver-Partner Agreements In
            Arbitration........................................................................................ 12

        3.  Estoppel Considerations Warrant Intervention...................................... 13

    C.  This Case Will Impair Uber's Ability To Protect Its Interests ........................ 15

    D.  Uber's Interests Are Not Adequately Represented ....................................... 18

II.  UBER IS ENTITLED TO PERMISSIVE INTERVENTION............................................ 19

CONCLUSION.......................................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*7 W. 57th St. Realty co., LLC v. Citigroup, Inc.*,
No. 13 Civ. 981 (PGG), 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ................................ 17

*Am. Express Co. v. Italian Colors Rest.*,
133 S. Ct. 2304 (2013) ................................................................................................ 8, 16

*Atl. Refinishing & Restoration, Inc. v. Travelers Cas. & Sur. Co. of Am.*,
272 F.R.D. 26 (D.D.C. 2010) ....................................................................................... 18, 19

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*,
440 F.3d 541 (1st Cir. 2006) ............................................................................................ 13

*Brumfield v. Dodd*,
749 F.3d 339 (5th Cir. 2014) ............................................................................................. 5

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
250 F.3d 171 (2d Cir. 2001) ............................................................................................. 18

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) .......................................................................................... 9, 10

*Cole Mech. Corp. v. Nat'l Grange Mut. Ins. Co.*,
No. 06 Civ. 2875, 2007 WL 2593000 (S.D.N.Y. Sept. 7, 2007) ............................................. 7

*Crouse-Hinds Co. v. InterNorth, Inc.*,
634 F.2d 690 (2d Cir. 1980) .......................................................................................... 12, 13

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
149 F.R.D. 55 (S.D.N.Y. 1993) ......................................................................................... 13

*Doctor's Assocs., Inc. v. Stuart*,
85 F.3d 975 (2d Cir. 1996) ............................................................................................... 11

*Floyd v. City of N.Y.*,
770 F.3d 1051 (2d Cir. 2014) ............................................................................................. 6

*United States ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.*,
239 F.R.D. 404 (W.D. Pa. 2006) ..................................................................................... 8, 21

*Freeman v. Nw. Acceptance Corp.*,
754 F.2d 553 (5th Cir. 1985) ............................................................................................ 14

*United States ex rel. Hall v. Tribal Dev. Corp.*,
    100 F.3d 476 (7th Cir. 1996) ........................................13

*California ex rel. Lockyer v. United States*,
    450 F.3d 436 (9th Cir. 2006) ........................................15

*Magnus Pac. Corp. v. Advanced Explosives Demolition, Inc.*,
    No. 2:13-cv-0060, 2013 WL 6095427 (D. Idaho Nov. 20, 2013) ...........7

*Marcus v. Frome*,
    275 F. Supp. 2d 496 (S.D.N.Y. 2003)..................................12

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*,
    471 F.3d 377 (2d Cir. 2006)..........................................12

*McNeill v. N.Y. City Hous. Auth.*,
    719 F. Supp. 233 (S.D.N.Y. 1989) .....................................5

*Messerschmitt-Boelkow-Blohm v. Hughes Aircraft Co.*,
    483 F. Supp. 49 (S.D.N.Y. 1979) ....................................18

*Mosca v. Doctors Assocs., Inc. v. Stuart*,
    852 F. Supp. 152 (E.D.N.Y. 1993) ...................................11

*United States ex rel. MPA Constr., Inc. v. XL Specialty Ins. Co.*,
    349 F. Supp. 2d 934 (D. Md. 2004).....................................8

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Konvalinka*,
    No. 10-9355, 2011 WL 13070859 (S.D.N.Y. Mar. 17, 2011).............11

*Nat. Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n*,
    578 F.2d 1341 (10th Cir. 1978) ....................................14

*Novus v. Dawson*,
    725 F.3d 885 (8th Cir. 2013) ......................................15

*Pride v. Allstate Ins. Co.*,
    No. 10-13988, 2011 WL 692299 (E.D. Mich. Feb. 18, 2011)..............7

*Pro Lawns, Inc. v. Fidelity & Deposit Co. of Md.*,
    No. 3:14-cv-408-WKW, 2015 WL 350637 (M.D. Ala. Jan. 23, 2015)........21

*Ram v. Lal*,
    906 F. Supp. 2d 59 (E.D.N.Y. 2012) ................................17

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010).................................................10

*Rosenshein v. Kleban*,
918 F. Supp. 98 (S.D.N.Y. 1996) ...................................................................7

*S2 Automation LLC v. Micron Tech., Inc.*,
No. 11-0884, 2012 WL 3656462 (D.N.M. Aug. 14, 2012) ....................................7

*Estate of Siemen ex rel. Siemen v. Huron Med. Ctr.*,
No. 11-11249, 2012 WL 909820 (E.D. Mich. Mar. 16, 2012) ...............................7

*Spirt v. Teachers Ins. & Annuity Ass'n of Am.*,
416 F. Supp. 1019 (S.D.N.Y. 1976) .............................................................14

*Swink v. Uber Technologies, Inc. & Travis Kalanick*,
No. 16 Civ. 1092 (KPE), Dkt. No. 2 (S.D. Tex. April 22, 2016) ..............................2

*Takeda v. Nw. Nat'l Life Ins. Co.*,
765 F.2d 815 (9th Cir. 1985) .....................................................................14

*Tech. & Intellectual Prop. Strategies Group PC v. Insperity, Inc.*,
No. 12-03163, 2012 WL 6001098 (N.D. Cal. Nov. 29, 2012) .............................9, 11, 16, 19

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) ...............................................................................18

*United States v. Columbia Pictures Indus., Inc.*,
88 F.R.D. 186 (S.D.N.Y. 1980) ................................................................20, 21

*United States v. Pitney Bowes, Inc.*,
25 F.3d 66 (2d Cir. 1994) ..........................................................................5

*Univ. Furniture Int'l, Inc. v. Frankel*,
538 F. App'x 267 (4th Cir. 2013) .................................................................17

*Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
922 F.2d 92 (2d Cir. 1990) .......................................................................5, 9

*Weizmann Inst. of Sci. v. Neschis*,
229 F. Supp. 2d 234 (S.D.N.Y. 2002) ...........................................................17

*Z&B Enters., Inc. v. Tastee-Freez Int'l, Inc.*,
162 Fed. App'x 16 (1st Cir. 2006) ...............................................................14

**Statutes**

15 U.S.C. § 1 ........................................................................................2

N.Y. Gen. Bus. Law § 340 ..........................................................................2

**Rules**

Fed. R. Civ. P. 19.................................................................................................12

Fed. R. Civ. P. 24(a) .............................................................1, 4, 9, 12, 15, 18

Fed. R. Civ. P. 24(b) ..................................................................... 2, 5, 19-20

Fed. R. Civ. P. 24(c) ...................................................................................1, 21

**Treatises**

7C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure Civil*
    § 1908.2....................................................................................................15

Uber Technologies, Inc. ("Uber") respectfully submits this Memorandum of Law in support of its Motion to Intervene as a defendant in the above-captioned case for the limited purpose of moving to compel arbitration. Attached to this Motion, Uber separately submits a Motion to Compel Arbitration. *See* Fed. R. Civ. P. 24(c).

## PRELIMINARY STATEMENT

Plaintiff seeks to wield potent legal tools—the class action procedural device and antitrust laws—to wage a broad attack on Uber's business model. As he explains, "Uber has a simple but illegal business plan: to fix prices among competitors and take a cut of the profits." First Amended Complaint ("Complaint" or "Am. Compl.") ¶ 1. But Plaintiff is contractually forbidden from utilizing the courts to resolve such disputes with Uber by virtue of the arbitration provisions in his User Terms with Uber (the "Arbitration Agreement"). Thus, Plaintiff named only Uber's CEO, Travis Kalanick—and not Uber—as a defendant in a strategic effort to avoid the dispute mechanism the parties agreed upon (binding arbitration), even though the heart of Plaintiff's antitrust liability theory is *Uber's* allegedly illegal pricing algorithm and *Uber's* allegedly unlawful contracts. At the same time, Plaintiff has sought to treat Uber as a virtual party for discovery purposes, seeking an extraordinary breadth of information and volume of documents that are only in Uber's possession, not Mr. Kalanick's.

Accordingly, under Federal Rule of Civil Procedure 24(a), Uber is entitled to intervene as a matter of right in this action so that it can move to compel Plaintiff to honor the arbitration process that he accepted as a condition of using the very pricing algorithm that he claims caused his injury. As a signatory to the Arbitration Agreement, Uber possesses a legally protected and significant interest in its contractual right to resolve Plaintiff's challenge to its business model through arbitration, and an equally significant interest in compelling arbitration in a suit against

its CEO. Uber has been named (though not yet served) in a new, nearly identical class action lawsuit in the Southern District of Texas, *Swink v. Uber Technologies, Inc. & Travis Kalanick*, No. 16 Civ. 1092 (KPE), Dkt. No. 2 (S.D. Tex. April 22, 2016), where it intends to exercise its arbitration rights. Uber's right to arbitrate in that or any other copycat case would be illusory, however, if Plaintiff here is allowed to continue litigating in this venue, jeopardizing Uber's rights, and subjecting it to broad and burdensome discovery, class action procedures, and other costs and risks of *litigation*. Uber's interests in avoiding that outcome would be severely impaired if Uber cannot assert them now. Although Mr. Kalanick, as Uber's CEO, is also entitled to enforce the Arbitration Agreement, Uber is best situated to adequately represent its interests under the Arbitration Agreement since Uber is an undisputed signatory to the Agreement. Uber is, alternatively, entitled to permissive intervention under Rule 24(b)'s liberal standard.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Spencer Meyer filed a Complaint on December 16, 2015, alleging that Mr. Kalanick, Uber's co-founder and CEO, violated the Sherman Act (15 U.S.C. § 1) and the Donnelly Act (N.Y. Gen. Bus. Law § 340). Plaintiff filed this suit against Mr. Kalanick despite his agreement—entered into as a condition of registering for an Uber account and using Uber's service—that "any dispute, claim or controversy arising out of or relating to this Agreement . . . or the use of the Service or Application . . . will be settled by binding arbitration." DE 29-1 (Colman Decl.) at 9.

Plaintiff alleges that Uber is a technology company that connects persons seeking rides with third-party transportation providers ("driver-partners"). Am. Compl. ¶ 2. Riders utilize this service by first registering for an Uber account and then using the Uber Application ("Uber

App") on their smartphones to submit requests for transportation; those requests are in turn submitted to driver-partners in the user's area who transport the rider to his or her destination. *Id*. ¶ 24.

Plaintiff alleges that Mr. Kalanick is the "proud architect" and "primary facilitator" of Uber's supposedly "illegal business plan: to fix prices among competitors and take a cut of the profits." *Id*. ¶ 1. Uber fixes fare prices, Plaintiff claims, through the "Uber pricing algorithm," which allegedly determines the prices that driver-partners may charge their riders. *Id*. ¶ 2. Plaintiff alleges that, because drivers are bound to charge the price determined by Uber's algorithm under the terms of their agreements with Uber, "Uber controls the prices" and thereby allegedly "injure[s]" "Uber riders." *Id*. ¶¶ 2, 5-6, 26, 47, 77-78. Based on these allegations, Plaintiff purports to bring this suit on behalf of a class comprising "all persons in the United States who, on one or more occasions, have used the Uber App to obtain rides from Uber driver-partners and paid fares for their rides set by the Uber pricing algorithm." *Id*. ¶ 113.

Plaintiff's Amended Complaint describes the alleged price-fixing conspiracy as arising out of Uber's business model, not any alleged independent conduct by Mr. Kalanick. The Amended Complaint states plainly that "Uber has a simple but illegal business plan: to fix prices among competitors and take a cut of the profits." *Id*. ¶ 1. Plaintiff's allegations relate to the purported operation of Uber—including the Uber smartphone application, Uber's fare calculation, Uber's facilitation of payments, and Uber's organization of driver-partner events. *Id*. ¶¶ 24, 26, 32, 41. For example, Plaintiff alleges that "Kalanick *and Uber* artificially set the fares for its driver-partners to charge to riders," *id*. ¶ 54 (emphasis added), and that driver-partners "relinquish control over fares to Uber," *id*. ¶ 56. Continuing his focus on Uber's business conduct, not Mr. Kalanick's, Plaintiff states that "Uber uses surge pricing to incentivize

3

its driver-partners," and "Uber manipulates its pricing algorithm by . . . encouraging drivers who are not available or willing to receive trip requests to log out of the Uber App in order to show less supply[.]" *Id.* ¶¶ 57, 59. Plaintiff's Amended Complaint further avers that "Uber claims to allow its driver-partners to depart downward from the fare set by the Uber algorithm" but that "Uber controls the fare," and "Uber has effectively conceded this fact in other litigation." *Id.* ¶ 69.

Plaintiff also focuses on the agreement between Uber and its driver-partners—alleging that the "[d]river-partners agree to participate in a combination, conspiracy, or contract to fix prices when they swipe 'accept' to accept the terms of Uber's written agreement." *Id.* ¶ 70. Indeed, the very relief sought by Plaintiff is designed to grind Uber's business to a halt by enjoining the use of Uber's pricing algorithm and the driver-partner agreements that reference it. *Id.* ¶¶ 133, 140. Yet Plaintiff declined to name Uber as a defendant.

Mr. Kalanick moved to dismiss the Amended Complaint on February 8, 2016. DE 27. The Court denied that motion on March 31, 2016. DE 37. In doing so, the Court concluded that, because Mr. Kalanick had not yet sought to compel arbitration, Plaintiff had not waived his right to bring a class action. *Id.* at 23 n.8. Mr. Kalanick moved for reconsideration of the class waiver ruling, and the Court denied the motion. The Court, on the motions to dismiss and for reconsideration, did not reach the issue of whether Mr. Kalanick, as a non-signatory to the User Terms, could enforce the agreement against Plaintiff. DE 37 at 23; DE 44 at 1-2, 7.

## LEGAL STANDARD

Under Rule 24(a)(2), a court "must permit anyone to intervene" who satisfies the Rule's requirements. That standard is met where the applicant "(1) files a timely motion; (2) asserts an interest relating to the property or transaction that is the subject of the action; (3) is so situated

that without intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) has an interest not adequately represented by the other parties." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994).

In addition, this Court may permissively allow intervention so long as Uber "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "The principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Pitney Bowes*, 25 F.3d at 73 (quoting Fed. R. Civ. P. 24(b)(2)). Rule 24's permissive intervention requirement "is to be liberally construed," and is "satisfied where a single common question of law or fact is involved, despite factual differences between the parties." *McNeill v. N.Y. City Hous. Auth.*, 719 F. Supp. 233, 250 (S.D.N.Y. 1989).

Whether styled as mandatory or permissive, the overarching purpose of intervention is to help "prevent a multiplicity of suits where common questions of law or fact are involved." *Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990). Indeed, "[t]he very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions." *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014).

## ARGUMENT

### I. UBER IS ENTITLED AS A MATTER OF RIGHT TO LIMITED INTERVENTION TO COMPEL ARBITRATION

Courts in this jurisdiction and elsewhere have repeatedly rejected plaintiffs' strategic attempts to plead around necessary parties and resolve disputes in the absence of those whose interests would be affected by the claims made and relief requested in a lawsuit. This suit is exactly such an attempt. Indeed, it is a uniquely aggressive attempt, as there is no apparent

precedent for pleading—as Plaintiff does—an antitrust claim against the business model of a large corporation, while naming its CEO as the sole defendant. Plaintiff's decision to name Mr. Kalanick but not Uber was not some mere oversight. Rather, Plaintiff's decision to omit Uber from the case was a strategic choice to avoid the scope of the Arbitration Agreement that Plaintiff agreed to. But Uber has a legally protected interest in enforcing these terms, just as it has a legally protected interest in defeating through arbitration Plaintiff's efforts to brand illegal and enjoin Uber's pricing algorithm and the contracts with its driver-partners that reference the algorithm. Moreover, Uber has an interest in compelling a suit against its CEO into arbitration, as the Arbitration Agreement requires and as courts have repeatedly affirmed is proper. Those interests would be impaired if Uber is not permitted to assert them in this case and cannot be adequately represented in Uber's absence. Rule 24 is designed in part to ensure that Uber suffers no such prejudice.

### A.     Uber's Motion Is Timely

While Rule 24 requires that any motion for intervention be timely, whether a party has intervened in a timely fashion is a "flexible" determination. *Floyd v. City of N.Y.*, 770 F.3d 1051, 1058 (2d Cir. 2014) (citation omitted). The Second Circuit considers several factors relevant to the timeliness requirement, including (as relevant here) "the length of time the applicant knew or should have known of its interest before making the motion," "[the] prejudice to existing parties resulting from the applicant's delay," and any "prejudice to the applicant if the motion is denied." *Id.* (citation omitted). Judged by this standard, Uber's motion is timely.

Given the flexible timeframe for intervention previously approved by courts in this District and elsewhere, Uber did not unduly delay before making this motion. Indeed, Plaintiff's First Amended Complaint was filed less than four months ago, Mr. Kalanick has only recently

filed his answer, and discovery is still in its early stages. Courts considering motions to intervene at similar stages of litigation have concluded such motions are timely under Rule 24. *See, e.g.*, *Cole Mech. Corp. v. Nat'l Grange Mut. Ins. Co.*, No. 06 Civ. 2875, 2007 WL 2593000, at *3 (S.D.N.Y. Sept. 7, 2007) (granting motion to intervene during discovery); *Rosenshein v. Kleban*, 918 F. Supp. 98, 106 (S.D.N.Y. 1996) (granting motion for permissive intervention when "discovery [was] in the relatively early stages"); *Estate of Siemen ex rel. Siemen v. Huron Med. Ctr.*, No. 11-11249, 2012 WL 909820, at *3 (E.D. Mich. Mar. 16, 2012) ("[C]ourts place particular emphasis on the progress of litigation and generally find intervention timely if discovery is in its early stages[.]"); *Pride v. Allstate Ins. Co.*, No. 10-13988, 2011 WL 692299, at *3 (E.D. Mich. Feb. 18, 2011) (intervention timely where "discovery is still occurring and is not scheduled to close" for over three months).[1] Uber also has submitted its motion well in advance of the Court's July 12 deadline for joinder of additional parties. Case Management Order, DE 39; *see, e.g.*, *Magnus Pac. Corp. v. Advanced Explosives Demolition, Inc.*, No. 2:13-cv-0060, 2013 WL 6095427, at *1-3 (D. Idaho Nov. 20, 2013) (motion to intervene timely when filed "the day prior to the Court's September 1 deadline for joinder of parties"); *S2 Automation LLC v. Micron Tech., Inc.*, No. 11-0884, 2012 WL 3656462, at *13 (D.N.M. Aug. 14, 2012) (motion to

---

[1] Uber has, of course, had knowledge of this suit from shortly after the time it was filed, but three factors now animate this motion. First, the Court only recently concluded that the User Terms do not contain a class action waiver that is effective in the absence of a motion to compel arbitration. Second, Plaintiff propounded extensive discovery on Uber itself, highlighting that Plaintiff intends to burden Uber with the discovery responsibilities of a party without ever naming Uber as such. Third, the filing of the *Swink* complaint, naming both Mr. Kalanick and Uber as defendants, created a possibility of a decision in this case collaterally estopping Uber in the Southern District of Texas. In sum, as discussed in more detail below, these recent developments all suggest that Mr. Kalanick cannot adequately represent Uber's interests here.

intervene timely when filed before deadline "that the Court set for amendments and joinder of parties").

Nor will Uber's intervention prejudice Plaintiff or create undue delay.  To the contrary, if Uber's motion is granted, Uber will move to enforce its contractual right to compel arbitration— a motion that, if successful, will result in conservation of judicial and party resources.  *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2312 (2013) (bilateral arbitration characterized by "informality" intended to offer "the prospect of speedy resolution"); *United States ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404, 415 (W.D. Pa. 2006) ("Given the principles animating the federal policy favoring arbitration, the Court is not convinced that a stay in this proceeding will unduly delay or prejudice the adjudication of FMS' rights."); *United States ex rel. MPA Constr., Inc. v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934, 939 (D. Md. 2004) (no prejudice where nonparty sought to intervene and stay action pending arbitration because "[a]ny potential for undue delay is likely to be mitigated, not exacerbated, by arbitration").

Finally, as explained below, denying Uber's motion to intervene would cause it to suffer prejudice.  If its motion is denied, Uber will be unable to vindicate its plain and legally protected interest in compelling disputes like the instant one to be adjudicated through binding arbitration, may face the prospect of this proceeding potentially impairing its ability to utilize the Uber pricing algorithm, and may face the possibility that its extant contracts with driver-partners could be substantially impaired.

### B.    Uber Has A Legally Protectable Interest

Uber has a profound legal interest in this case.  This case involves a constellation of contracts to which Uber (not Mr. Kalanick) is a party and on which Uber's business model is

structured:  Uber's terms-of-dealing with its drivers-partners, its User Terms with riders, and the User Terms' arbitration provisions that govern all disputes arising against the Company or its personnel relating to the User Terms or the services provided under them.  Uber's interests in the validity and enforcement of the terms of those contracts are powerfully in play, as ample authority confirms.  Uber's absence from this case undermines its User Terms, implicates its agreement with its driver-partners, and poses collateral estoppel risks.

### 1.    Uber's Interest In Enforcing The Arbitration Agreement As To Itself And Mr. Kalanick

First, Uber has a "direct, substantial, and legally protectable interest" in enforcing the arbitration provisions to defend against claims that threaten its fundamental business model—satisfying Rule 24(a)(2).  *Washington Elec. Coop.*, 922 F.2d at 96-97; *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) ("To demonstrate a significant protectable interest [under Rule 24(a)(2)], an applicant must establish that the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue.").

In similar circumstances, courts have found a protectable interest "in enforcing the rights provided within [an arbitration] Agreement" with Plaintiff.  *Tech. & Intellectual Prop. Strategies Group PC v. Insperity, Inc.*, No. 12-03163, 2012 WL 6001098, at *7 (N.D. Cal. Nov. 29, 2012) (granting intervention as a matter of right where nonparty sought to intervene to enforce provisions of its arbitration agreement with plaintiff).  The Federal Arbitration Act ("FAA") governs this dispute and affords Uber a legal right to enforce the Arbitration Agreement in the same manner as any other valid contract.  Because the Arbitration Agreement here is valid and enforceable, *see* Mot. to Compel Arbitration at 10-20, and the Rider Terms Plaintiff accepted specify that the FAA governs, DE 29-1 at 9, Uber has a legally protected interest under both the

FAA and state contract law that easily satisfies Rule 24's requirements. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) ("The FAA . . . places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." (citations omitted)).

There is a plain "relationship between [Uber's] legally protected interest and the claims at issue" because Plaintiff's case is founded on allegations against Uber that fall squarely within the scope of the arbitration provisions. *Citizens for Balanced Use*, 647 F.3d at 897. Though the highly unusual Complaint in this case names only Uber's CEO as a defendant, as described, his pleading makes clear that his dispute is with Uber and its business model. *See supra* pp. 2-4. Indeed, Plaintiff seeks a declaration that Uber's pricing algorithm is illegal (Am. Compl. ¶ 141)—all the while acknowledging that the algorithm is generated by Uber, exists only in the Uber App, and can only be a part of the alleged price-fixing scheme if it is (as Plaintiff alleges) somehow incorporated into Uber's contracts with drivers and affects the price riders pay through their User Terms with Uber. Further, Plaintiff's alleged representative injury rests entirely on his claim that as a user of "Uber car services" he has "paid higher prices for car service as a direct and foreseeable result of the unlawful conduct" he alleges. *Id.* ¶¶ 7-8.

These allegations implicate Uber and its business model and thus fall squarely within the scope of the Arbitration Agreement,[2] which covers "any dispute, claim or controversy arising out of or relating to this Agreement . . . or the use of the Service or Application." DE 29-1 at 9. Uber is thus entitled to intervene and assert its legally protected interest in compelling arbitration

---

[2] Pursuant to the terms of the Arbitration Agreement, an arbitrator (not a federal court) is delegated the responsibility to determine gateway questions of arbitrability. Mot. to Compel Arbitration at 9-10. Even if the Court rejects that position, this dispute clearly falls within the scope of the Arbitration Agreement. *Id.* at 15-17.

of Plaintiff's claims arising from the use of Uber's services and the Uber App. *Insperity*, 2012 WL 6001098, at *7 (nonparty "seek[ing] to assert its right to enforcement of [an] arbitration provision . . . has a significant protectable interest that supports intervention as of right").

Plaintiff cannot strategically omit Uber as a defendant while espousing a theory of antitrust liability that attacks Uber's fundamental business model. Uber has a legally protected interest in enforcing the Arbitration Agreement in a suit that names one of its key employees, involves acts that fall within the terms of the Arbitration Agreement that were allegedly taken in his employment capacity, and requests relief that (if granted) would affect that employee's ability to discharge his duties to the Company. "Courts have consistently held that the acts of employees of a party to an arbitration agreement are arbitrable 'as long as the challenged acts fall within the scope of the customer agreement.'" *Mosca v. Doctors Assocs., Inc. v. Stuart*, 852 F. Supp. 152, 155 (E.D.N.Y. 1993) (citations omitted). That rule makes immense practical sense, as companies generally indemnify their key employees, arrange for their legal representation, and cope with the impact of any legal restrictions or relief granted against their agents.

Accordingly, Plaintiff cannot "avoid arbitration by suing entities related to the counterparty to the contract." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Konvalinka*, No. 10-9355, 2011 WL 13070859, at *3 (S.D.N.Y. Mar. 17, 2011). Nor can Plaintiff "'avoid arbitration simply by naming individual agents of the party to the arbitration and suing them in their individual capacity,'" as Plaintiff has done in this case with Mr. Kalanick. *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 984-85 (2d Cir. 1996) (quoting *Mosca*, 852 F. Supp. at 155). Instead, as Uber has explained, Mr. Kalanick is entitled to enforce the Arbitration Agreement as Uber's CEO, and Plaintiff is estopped from contending otherwise given that (as pleaded) his claims are closely intertwined with Uber's User Terms and consistently treat Uber and Mr. Kalanick as

interchangeable. Mot. to Compel Arbitration at 23-25. Uber itself thus has a legally protected interest in intervening to direct claims that implicate the Company by way of its CEO into the arbitral forum where they belong. *Marcus v. Frome*, 275 F. Supp. 2d 496, 505 (S.D.N.Y. 2003) ("were claims against employees or disclosed agents not also subject to arbitration, 'it would be too easy to circumvent the agreements by naming individuals as defendants instead of the entity Agents themselves'" (quoting *Roby v. Corp. of Lloyd's*, 996 F. 2d 1353, 1360 (2d Cir. 1993))).

### 2. Uber's Interests In Defending Its Driver-Partner Agreements In Arbitration

Second, that this case may implicate Uber's agreement with its driver-partners and thereby warrant intervention under Rule 24 is well illustrated by *Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690 (2d Cir. 1980). In *Crouse-Hinds*, InterNorth alleged that a proposed merger agreement between Crouse-Hinds and Belden (a nonparty) was unfair under the business judgment rule and should be enjoined. *Id.* at 701-03. The Second Circuit held that Belden was a necessary party to the litigation because it was a party to the agreement and "materially altered its financial structure" in reliance on its terms. *Id.* at 701. InterNorth's claim (that the Agreement was unfair) and its requested relief (that Belden's partner be enjoined from performance) would "clearly . . . prejudice[]" Belden "if the relief sought by [InterNorth] were to be granted," and thus Belden's presence was "required."[3] *Id.* As in *Crouse-Hinds*, Plaintiff here

---

[3] While *Crouse-Hinds* arose in the joinder context, intervention of right under Rule 24(a)(2) is "a kind of counterpart to Rule 19(a)" and "provides that an applicant is entitled to intervene in an action when his position is comparable to that of a party" whose joinder would be necessary under Rule 19(a)(2)(1). Fed. R. Civ. P. 24, advisory committee's note to 1966 amendment; *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 390 (2d Cir. 2006) ("These rules are intended to mirror each other."). *See* Kalanick Mot. for Joinder at 10-11 (discussing *Crouse-Hinds* in Rule 19 context). Rule 24 also requires that existing parties be inadequate representatives of the movant's interest. As explained below, that is the case here.

12

argues that Uber's contracts with its driver-partners are substantively unfair (to competition) and should be enjoined.  Uber—like Belden—has "materially" built its company structure in reliance on these terms-of-dealing and the business model they support, meaning Uber's presence is required in a suit seeking to declare them illegal and forbid their use.  *Id.* ("'No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable.'"(quoting *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975))).

Uber is thus entitled to intervene in an action that, like this one, threatens to adversely affect its vital contractual interests.  *See, e.g., B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 545 (1st Cir. 2006) ("An intervenor has a sufficient interest in the subject of the litigation where the intervenor's contractual rights may be affected by a proposed remedy."); *cf. United States ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 479 (7th Cir. 1996) (party to contract alleged to violate federal law is necessary party: it has "a commercial stake in the outcome of this litigation" and a "judicial declaration as to the validity of a contract necessarily affects, 'as a practical matter,' the interests of both parties to the contract").

### 3.    Estoppel Considerations Warrant Intervention

Third, and especially in light of the already existing and potential future copycat litigation against Uber (*e.g.*, *Swink*), Uber has a legally protected interest in ensuring that it is not adversely affected by any finding of antitrust liability or relief granted in this case.  As explained in Mr. Kalanick's Motion for Joinder, plaintiffs in future actions involving the Company may argue that Uber is collaterally estopped from protesting its own antitrust liability if Plaintiff prevails against Mr. Kalanick here.  *Diduck v. Kaszycki & Sons Contractors, Inc.*, 149 F.R.D. 55, 58 (S.D.N.Y. 1993) (noting that intervention should be granted "especially" when proposed

intervenor would be bound by judgment); *cf. Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815, 820-21 (9th Cir. 1985) (under Rule 19, interest is established where "significant possibility" exists that the nonparty "could be collaterally estopped from relitigating issues decided against" an arguable privy "in this proceeding"). This Court "need not conclusively determine how collateral estoppel would operate in future litigation" (*Takeda*, 765 F.2d at 821) to conclude that its possible operation adverse to Uber gives the Company an undeniably strong interest in this case under Rule 24(a)(2). *See Nat. Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1344 (10th Cir. 1978) ("interest within the meaning of Rule 24(a)(2)" is established where "consequence" of requested relief would be "felt" by, or "could have a profound effect upon," proposed intervenor).

Courts have applied these same principles in the analogous joinder context, piercing the pleadings to require the presence of a nonparty who has an obvious interest in the outcome and who figures prominently in the plaintiff's complaint even though not named in it. *See, e.g., Z&B Enters., Inc. v. Tastee-Freez Int'l, Inc.*, 162 Fed. App'x 16, 19-20 (1st Cir. 2006) (where "vaguely-worded Complaint" alleged that "most of the acts causing harm to Plaintiffs" were done by a nonparty, joinder is necessary); *Freeman v. Nw. Acceptance Corp.*, 754 F.2d 553, 559 (5th Cir. 1985) (joinder of a subsidiary "required" where subsidiary is "more than an active participant" and is in fact "the primary participant" in the wrongful acts alleged). Under Plaintiff's own theory of the case, the alleged conspiracy to fix prices involves an Uber-generated algorithm that functions only through Uber's App and touches consumers only through agreements Uber enters with riders and driver-partners. Indeed, Plaintiff's antitrust case depends on his allegation that Uber is an "active participant" in the alleged conspiracy involving Mr. Kalanick; "[w]ithout [Uber's] participation, the challenged program could not operate." *Spirt v.*

*Teachers Ins. & Annuity Ass'n of Am.*, 416 F. Supp. 1019, 1022 (S.D.N.Y. 1976) (joinder required where "relationship out of which the alleged" wrongdoing grows "is a triangular one" between plaintiff, defendant, and a nonparty). Accordingly, Uber's significant and legally protected interest in compelling the use of arbitration to settle Plaintiff's assault on its business model and its CEO cannot be circumvented by omitting Uber as a defendant.

## C. This Case Will Impair Uber's Ability To Protect Its Interests

Unless Uber is permitted to intervene, its legally protected interests will be impaired as both a practical and legal matter. Fed. R. Civ. P. 24(a)(2); *see* 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure Civil* § 1908.2, Westlaw (updated Apr. 2016) ("The rule is satisfied whenever disposition of the present action would put the movant at a practical disadvantage in protecting its interest."). Since Uber has demonstrated that it has a "significant protectable interest" at stake, this Court should "have little difficulty concluding that the disposition of this case may, as a practical matter, affect it." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) (Kozinski, J.).

If Plaintiff prevails against Mr. Kalanick and is granted the relief he seeks, that relief would have the real potential to adversely affect Uber's fundamental business model. Plaintiff seeks an injunction against the use of Uber's pricing algorithm and restraining enforcement of Uber's contracts with its driver-partners that reference the algorithm. Aside from effectively tying the hands of its CEO, if granted, this relief would have potentially dramatic ramifications in view of holdings by some courts suggesting that injunctions may bind nonparties or alleged co-conspirators who have a relationship with the party whose conduct has been enjoined. *See, e.g.*, *Novus v. Dawson*, 725 F.3d 885, 892 (8th Cir. 2013) (injunction applies to "to those 'in active concert or participation with'" the defendant against whom it issued (quoting Fed. R. Civ.

P. 65(d)(2)(C))). Though Uber does not concede that it would be bound by any relief granted to Plaintiff in the unlikely event he prevails in Uber's absence, the fact that it is even remotely possible suffices to show that Uber's interests would be impaired if it is not allowed to intervene. *See* Kalanick Mot. for Joinder at 8-9 (explaining that this possibility also makes Uber a necessary party to this litigation under Rule 19).

Further, permitting this case to proceed to a merits determination without allowing Uber to invoke arbitration would impair Uber's interest in enforcing the provisions of the User Terms. If Plaintiff "prevails in this lawsuit without [Uber]," the Company "will, as a practical matter, be denied the right to enforce the provisions" of the User Terms "requiring mandatory arbitration." *Insperity*, 2012 WL 6001098, at *7 (finding practical impairment in such circumstances). As explained above and in Uber's Motion to Compel Arbitration, Uber also has a legally protected interest in submitting litigation against its CEO for acts allegedly committed in that capacity to binding arbitration, as the User Terms require.

Uber's protected interests in the enforcement of the User Terms and the legal procedures and remedies they afford Plaintiff will be impaired if this case proceeds without Uber. The User Terms limit the relief a prevailing consumer can obtain—for instance, permitting declaratory or injunctive relief "*only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim*." DE 29-1 at 9 (emphasis added). Unless the Terms are enforced and arbitration is compelled according to these terms, Uber will potentially be forced to undergo repetitive litigation to defend its business model in light of any judgment entered or relief granted against Mr. Kalanick in this case—a result that would frustrate the "prospect of speedy resolution" through the "informality" of arbitration. *Italian Colors*, 133 S. Ct. at 2312.

As Mr. Kalanick has explained (Kalanick Mot. for Joinder at 5-6), Plaintiff's broad request for relief conflicts with the well-accepted principle that courts cannot grant declaratory or injunctive relief against an absent third party's conduct. *See, e.g.*, *Ram v. Lal*, 906 F. Supp. 2d 59, 78 (E.D.N.Y. 2012) (court cannot issue an injunction against an absent third-party's conduct); *Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 251 (S.D.N.Y. 2002) (nonparty is necessary to suit where plaintiff seeks a declaratory judgment "explicitly" implicating that nonparty). That Plaintiff's sought-after relief (a declaration that Uber's pricing algorithm is unlawful and an injunction against all "unlawful conduct" alleged in the Complaint) cannot be obtained effectively without binding Uber itself confirms that this case affects Uber's interests. Further, in the event Uber is not allowed to intervene, it may well be forced to "separately litigate the merits of any equitable relief issued in this action" as well as "face the risk of being bound by it due to collateral estoppel." Kalanick Mot. for Joinder at 6.

Specifically, if this case is resolved on the merits in a judicial proceeding, future plaintiffs will argue that Uber and Mr. Kalanick are in privity and thus that a finding of antitrust liability against Uber's CEO estops Uber from contesting its own liability as a co-conspirator in a future action naming the Company. *See* Kalanick Mot. for Joinder at 10 (discussing how this risk threatens to impair Uber's interests as an absent party); *see, e.g.*, *Univ. Furniture Int'l, Inc. v. Frankel*, 538 F. App'x 267 (4th Cir. 2013) (per curiam) (holder of a judgment against a company could use offensive collateral estoppel against officer of the company in a successive suit); *7 W. 57th St. Realty co., LLC v. Citigroup, Inc.*, No. 13 Civ. 981 (PGG), 2015 WL 1514539, at *26-27 (S.D.N.Y. Mar. 31, 2015) (the relationship between co-conspirators constitutes privity for purposes of claim or issue preclusion). While Uber would vigorously contest the application of offensive collateral estoppel in this manner, the very possibility strongly indicates that Uber's

interests "*may* as a practical matter" be impeded unless the Company is allowed to intervene. Fed. R. Civ. P. 24(a)(2) (emphasis added); *cf. Messerschmitt-Boelkow-Blohm v. Hughes Aircraft Co.*, 483 F. Supp. 49, 53 (S.D.N.Y. 1979) (impairment under Rule 19 shown where nonparty "may be equitably bound" by "the collateral estoppel effect of a judgment"). Indeed, Uber already faces copycat litigation (*e.g.*, *Swink*) that names the Company as a party, raising the possibility of estoppel based on the outcome of this case, which alone suffices to show Uber's interests will be impaired absent intervention here.

### D. Uber's Interests Are Not Adequately Represented

Finally, Uber's interest in enforcing the arbitration provisions is not adequately represented by the parties to this action. This requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). While a "more rigorous showing of inadequacy" is required in cases "where the putative intervenor and a named party have the same ultimate objective," *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179-80 (2d Cir. 2001), courts have held that that presumption is rebutted where the movant "intends to raise claims or arguments that would not otherwise be raised," *Atl. Refinishing & Restoration, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 272 F.R.D. 26, 30 (D.D.C. 2010). Uber satisfies this standard.

Uber possesses the legal and contractual entitlement to enforce the Arbitration Agreement to which users like Plaintiff have consented. As this Court has ruled, the User Terms do not contain a class action waiver that is effective in the absence of a motion to compel arbitration. DE 37; DE 44. The Court observed that Mr. Kalanick is "not himself a signatory to the agreement between plaintiff and Uber" and that he "has not made any motion to compel

arbitration." DE 44 at 3, 7 n.3. The Court also carefully noted that it did not reach the issue of whether, as a non-signatory, Mr. Kalanick could enforce any valid class action waiver in the User Terms. *Id*. at 7.

In light of these recent findings, and to eliminate any doubt that Plaintiff's claim is subject to the arbitration provision in the User Terms, Uber has moved to intervene as the most appropriate way to protect its interests. As Uber argues, Mr. Kalanick should be permitted to enforce the Arbitration Agreement in his capacity as Uber's CEO and due to principles of equitable estoppel. *See* Mot. to Compel Arbitration at 23-25. But Plaintiffs are sure to dispute that issue. If Plaintiff prevails in arguing that Mr. Kalanick cannot invoke the Arbitration Agreement, Uber "will be deprived of the right to resolve Plaintiff's claims through arbitration if it is not permitted to intervene in this case," which shows that its interests in invoking arbitration cannot be protected "sufficiently." *Insperity*, 2012 WL 6001098, at *8 (granting intervention where—as here—plaintiff argued that existing defendant was not party to the contract and thus could not enforce its arbitration provisions); *Atl. Refinishing*, 272 F.R.D. at 30 (intervention as of right granted where movant intended to compel arbitration and existing defendant alleged to be its adequate representative "has not advanced this defense"). As Uber is an undisputed signatory to the Arbitration Agreement, its presence in this case is the surest way to guarantee that its interest in enforcing that Agreement is adequately represented.

## II.  UBER IS ENTITLED TO PERMISSIVE INTERVENTION

Even if this Court finds that Uber is not entitled to intervene in this case as of right, the Court should nevertheless exercise its discretion to permit intervention. Federal Rule of Civil Procedure 24(b)(1)(B) authorizes permissive intervention when the prospective intervenor "has a claim or defense that shares with the main action a common question of law or fact." The rule further requires courts to "consider whether the intervention will unduly delay or prejudice the

adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). These standards counsel the Court to permit Uber to intervene in this action permissively even if the Court concludes Uber cannot intervene as of right.

First, the requirement that the proposed intervenor have a defense that shares a common legal or factual question with the main action is satisfied here because Plaintiff's legal theory is premised on the notion that Uber's core business model is unlawful. *See United States v. Columbia Pictures Indus., Inc.*, 88 F.R.D. 186, 188 (S.D.N.Y. 1980) (proposed intervenor had "obvious[]" interest in intervening when "its existence depend[ed] upon the outcome of the" main action). Moreover, Uber and Mr. Kalanick would share the affirmative defense that Plaintiff agreed to settle a dispute of this kind in an arbitral forum. *See* DE 23; DE 42 at 24, ¶¶ 143, 147. And because Plaintiff's Complaint is fundamentally directed toward conduct of Uber as a company and not Mr. Kalanick personally, it is apparent that Uber's defenses would share common questions of fact with the main action. *See* Fed. R. Civ. P. 24(b)(1)(B).

In addition, the Court should be satisfied that Uber's intervention would not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). In fact, the intervention of Uber in this case would likely have the *opposite* outcome, by "speed[ing] the adjudication of the action as well as aid[ing] in shaping the judicial remedy." *Columbia Pictures*, 88 F.R.D. at 189. Plaintiff's claims are directly aimed at Uber's business model and Uber is best positioned to defend itself and its interests. Moreover, Mr. Kalanick's defense will require the cooperation of the Company: for example, Plaintiff has sought to subpoena a vast and exhaustive range of Uber's documents, and further litigation (in the event Uber's motion to compel arbitration is not granted) would surely bring further burdensome discovery requests involving Uber's property and personnel. As in *Columbia Pictures*, then, there is manifestly

"more to be gained than to be lost" in permitting Uber to intervene as a defendant. *Id.* Even if this Court concludes that Uber is not entitled to intervene as of right, the Court should exercise its discretion to permit Uber to intervene as a defendant.

## CONCLUSION

For these reasons, this Court should grant Uber's motion to intervene for the limited purpose of moving to compel arbitration.[4]

Dated: May 24, 2016                                   Respectfully submitted,

                                           /s/  Reed Brodsky
                                           Reed Brodsky

GIBSON, DUNN & CRUTCHER LLP

Reed Brodsky
200 Park Avenue
New York, NY  10166-0193
Tel: (212) 351-4000
Fax:  (212) 351-4035
RBrodsky@gibsondunn.com

Theodore J. Boutrous, Jr.
  (*motion for admission pro hac vice pending*)
Daniel G. Swanson
  (*motion for admission pro hac vice pending*)
Nicola T. Hanna
  (*motion for admission pro hac vice pending*)

---

[4] Pursuant to Federal Rule of Civil Procedure 24(c), Uber attaches as Exhibit A its Motion to Compel Arbitration.  District courts routinely conclude that attaching a motion to compel arbitration to a motion to intervene is sufficient to satisfy the Rule 24(c) pleading requirement.  *See, e.g.*, *Pro Lawns, Inc. v. Fidelity & Deposit Co. of Md.*, No. 3:14-cv-408-WKW, 2015 WL 350637, at *3 (M.D. Ala. Jan. 23, 2015) (motion to compel acceptable because it was "apparent" that proposed intervenor "intends to intervene in order to compel arbitration of its liability"); *United States ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404, 409-12 (W.D. Pa. 2006) (proposed intervenor "adequately complied with Rule 24(c)" by "attach[ing] a copy of its Motion to Stay Proceedings and Compel Arbitration as Exhibit A to its Motion to Intervene").

Joshua S. Lipshutz
   (*motion for admission pro hac vice pending*)
333 South Grand Avenue
Los Angeles, CA  90071
Tel:  (213) 229-7000
Fax:  (213) 229-7520
Tboutrous@gibsondunn.com
DSwanson@gibsondunn.com
NHanna@gibsondunn.com
JLipshutz@gibsondunn.com

Cynthia E. Richman
   (*motion for admission pro hac vice pending*)
1050 Connecticut Avenue, N.W.
Washington, DC  20036
Tel:  (202) 955-8500
Fax:  (202) 467-0539
CRichman@gibsondunn.com

*Attorneys for Proposed Intervenor Uber
Technologies, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2016, I filed and therefore caused the foregoing

document to be served via the CM/ECF system in the United States District Court for the

Southern District of New York on all parties registered for CM/ECF in the above-captioned

matter.

/s/ Reed Brodsky
Reed Brodsky