UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SPENCER MEYER,

    individually and on behalf of
    those similarly situated,

                Plaintiff,

        v.

TRAVIS KALANICK,

                Defendant.

Civil Action No. 1:15 Civ. 9796 (JSR)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO (1) DEFENDANT TRAVIS KALANICK'S EXPEDITED MOTION FOR JOINDER OF UBER TECHNOLOGIES, INC. AS A NECESSARY PARTY, AND (2) PROPOSED INTERVENOR UBER TECHNOLOGIES, INC.'S MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF COMPELLING ARBITRATION**

**CONSTANTINE CANNON LLP**
Matthew L. Cantor
David A. Scupp
335 Madison Avenue
New York, New York 10017

**ANDREW SCHMIDT LAW PLLC**
Andrew Arthur Schmidt
97 India Street
Portland, Maine 04101

**MCKOOL SMITH**
John Briody
James H. Smith
One Bryant Park, 47th Floor
New York, New York 10036

**HARTER SECREST & EMERY LLP**
Brian Marc Feldman
Jeffrey A. Wadsworth
Edwin M. Larkin
1600 Bausch & Lomb Place
Rochester, New York 14604

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes
Ellen Meriwether
1101 Market Street, Suite 2650
Philadelphia, Pennsylvania 19107

*Counsel for Plaintiff Spencer Meyer*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

RELEVANT FACTS .............................................................................................4

    A.    Plaintiff's Claims Against Defendant Kalanick.................................4

    B.    Uber's Response to This Lawsuit ........................................................5

    C.    Defendant's Motion to Dismiss and Motion for Reconsideration .............6

    D.    The Motions for Joinder and Intervention ...................................7

ARGUMENT ..................................................................................................7

  I.    THE COURT SHOULD DENY DEFENDANT'S MOTION
      TO JOIN UBER AS A NECESSARY PARTY ......................................7

    A.    Relevant Standards.................................................................7

    B.    The Court Can Afford Complete Relief Among
        Plaintiff and Defendant Without Joining Uber ...........................8

    C.    Disposing of This Action Will Not Impair or Impede
        Uber's Ability to Protect Its Interests ...................................10

        1.    Uber Will Not Be Bound by the Terms of an
            Injunction Entered Against Defendant............................11

        2.    Uber Cannot Be Bound By Offensive
            Collateral Estoppel To Rulings In This Case...............11

        3.    Plaintiff Does Not Seek to Enjoin Uber's
            Contracts with Its Driver-Partners ...............................14

    D.    Defendant Is Not Subject to Substantial Risk of Incurring Double,
        Multiple, or Otherwise Inconsistent Obligations Absent Uber's Joinder..14

    E.    Defendant May Not Seek Permissive Joinder of Uber Under Rule 20......15

  II.    THE COURT SHOULD DENY UBER'S MOTION TO INTERVENE.............16

    A.    Relevant Standards.................................................................16

    B.    Uber Is Not a Necessary Party Under Rule 19 and Is Therefore Not
        Entitled to Intervention as of Right Under Rule 24 ...................18

    C.    Uber's Motion to Intervene Is Untimely.................................18

        1.    Uber's Motion Is Untimely in Light of the Length
            of Time That Uber Knew of its Purported Interest
            in this Case Before Seeking Intervention.......................19

2.      Uber's Delay Will Prejudice Plaintiff...............................................22

3.      Denial of the Motion to Intervene Will Not Prejudice Uber .........23

4.      The Presence of Unusual Circumstances Warrants Denial of
        Uber's Motion as Untimely ............................................................23

D.      Uber Has No Legally Protectable Interest in this Action ..........................24

        1.      Uber Does Not Have a Legally Protectable
                Interest in Compelling Plaintiff to Arbitrate His
                Claims Against Defendant .............................................................24

        2.      Plaintiff Does Not Seek to Enjoin Uber's Driver-Partner
                Agreements ....................................................................................27

        3.      Uber Will Not Be Collaterally Estopped by Rulings Against
                Defendant in This Case.................................................................28

E.      This Action Will Not Impair or Impede Uber's
        Ability to Protect Its Interest.....................................................................29

F.      Defendant Adequately Represents Uber's Interests .................................30

G.      The Court Should Deny Permissive Intervention Because
        Uber Does Not Have a Defense That Shares a Common
        Question of Law or Fact with the Main Action and
        Intervention Would Unduly Delay Adjudication.......................................30

CONCLUSION...................................................................................................................32

## TABLE OF AUTHORITIES

**Cases**

*7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*,
   No. 13 Civ. 981(PGG), 2015 U.S. Dist. LEXIS 44031 (S.D.N.Y. Mar. 31, 2015) ................. 13

*Arkwright-Bos. Mfrs. Mut. Ins. Co. v. N.Y.*,
   762 F.2d 205 (2d Cir. 1985) ........................................................................................... 8

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*,
   440 F.3d 541 (1st Cir. 2006) ......................................................................................... 28

*Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*,
   No. 14-cv-9687 (VEC), 2016 U.S. Dist. LEXIS 18330 (S.D.N.Y. Feb. 11, 2016) ................... 7

*Bartfield v. Murphy*,
   578 F. Supp. 2d 638 (S.D.N.Y. 2008) ............................................................................ 9

*Brown v. United States*,
   42 Fed. Cl. 538 (Fed. Cl. 1998) ................................................................................... 10

*Catanzano by Catanzano v. Wing*,
   103 F.3d 223 (2d Cir. 1996) .................................................................................... 18-19

*ConnTech Dev. Co. v. Univ. of Conn. Educ. Props.*,
   102 F.3d 677 (2d Cir. 1996) ....................................................................................... 7-8

*Corchado v. Prod. Design & Dev., Inc.*,
   No. 99 Civ. 9032 (JSR), 2000 U.S. Dist. LEXIS 1179 (S.D.N.Y. Feb. 4, 2000) ..................... 16

*Crouse-Hinds Co. v. InterNorth, Inc.*,
   634 F.2d 690 (2d Cir. 1980) .................................................................................. 14, 27

*D'Amico v. Doe*,
   No. 3:03-cv-2164 (SRU), 2005 U.S. Dist. LEXIS 769 (D. Conn. Jan. 20, 2005) ..................... 9

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
   149 F.R.D. 55 (S.D.N.Y. 1993) .................................................................................... 28

*Discon Inc. v. Nynex Corp.*,
   86 F. Supp. 2d 154 (W.D.N.Y. 2000) ........................................................................... 13

*Doe v. Duncanville Indep. Sch. Dist.*,
  994 F.2d 160 (5th Cir. 1993) ................................................................. 21

*Drankwater v. Miller*,
  830 F. Supp. 188 (S.D.N.Y. 1993) ....................................................... 8

*DSMC Inc. v. Convera Corp.*,
  273 F. Supp. 2d 14 (D.D.C. 2002) ................................................. 25, 32

*Field v. Volkswagenwerk AG*,
  626 F.2d 293 (3d Cir. 1980)................................................................. 16

*Floyd v. City of N.Y.*,
  770 F.3d 1051 (2d Cir. 2014).................................................... *passim*

*Freeman v. Nw. Acceptance Corp.*,
  754 F.2d 553 (5th Cir. 1985) ............................................................... 28

*Georgia v. Pa. R.R.*,
  324 U.S. 439 (1945)............................................................................. 12

*Gibbs Wire & Steel Co. v. Johnson*,
  255 F.R.D. 326 (D. Conn. 2009)............................................................ 9

*H.L. Hayden Co. v. Siemens Med. Sys., Inc.*,
  797 F.2d 85 (2d Cir. 1986)................................................................... 31

*Hefley v. Textron, Inc.*,
  713 F.2d 1487 (10th Cir. 1983) ..................................................... 10, 15

*Interoceanica Corp. v. Sound Pilots*,
  107 F.3d 86 (2d Cir. 1997)................................................................... 12

*Johnson v. Smithsonian Inst.*,
  189 F.3d 180 (2d Cir. 1999)................................................................. 10

*Jota v. Texaco Inc.*,
  157 F.3d 153 (2d Cir. 1998)................................................................... 9

*Kaliski v. Bacot*,
  320 F.3d 291 (2d Cir. 2003)................................................................. 17

*King v. Pine Plains Cent. Sch. Dist.*,
  918 F. Supp. 772 (S.D.N.Y. 1996) ........................................................ 7

iv

*Lawlor v. Nat'l Screen Serv. Corp.*,
  349 U.S. 322 (1955)........................................................................................... 12

*LifeScan Scotland, Ltd. v. Shasta Techs., LLC*,
  No. 11 Civ. 04494 (WHO), 2013 WL 4604746 (N.D. Cal. Aug. 28, 2013)............................ 11

*Liz Claiborne v. Mademoiselle Knitwear*,
  No. 96 Civ. 204 (RWS), 1996 U.S. Dist. LEXIS 8847
  (S.D.N.Y. June 25, 1996)................................................................................. *passim*

*MasterCard Int'l Inc. v. FIFA*,
  No. 06 Civ. 3036 (LAP), 2006 U.S. Dist. LEXIS 80663
  (S.D.N.Y. Sept. 25, 2006)................................................................................. 19, 21

*Mastercard Int'l, Inc. v. Visa Int'l Serv. Ass'n*,
  471 F.3d 377 (2d Cir. 2006)............................................................................. *passim*

*Messerchmitt-Boelkow-Blohm GmbH v. Hughes Aircraft Co.*,
  483 F. Supp. 49 (S.D.N.Y. 1979) ....................................................................... 28

*Midlantic Commer. Co. v. Prime Sportswear Corp.*,
  95 Civ. 10192 (SWK), 1996 U.S. Dist. LEXIS 9065
  (S.D.N.Y. June 26, 1996)................................................................................. 16

*Mosca v. Doctors Assocs., Inc. v. Stuart*,
  852 F. Supp. 152 (E.D.N.Y. 1993) ..................................................................... 26

*NAACP v. N.Y.*,
  413 U.S. 345, 365 (1973)................................................................................. 18, 24, 31

*Nat'l Resources Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n*,
  578 F.2d 1341 (10th Cir. 1978) ......................................................................... 28

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Konvalinka*,
  No. 10-9355, 2011 WL 13070859 (S.D.N.Y. Mar. 17, 2011)................................... 26

*Nixon v. Guzzetta*,
  272 F.R.D. 260 (D.D.C. 2011)........................................................................... 16

*Oi Kwan Lai v. Eastpoint Int'l, Inc.*,
  No. 99 Civ. 2095 (DLC), 1999 U.S. Dist. LEXIS 13458
  (S.D.N.Y. Sept. 1, 1999)................................................................................. 16

*Orange Peach Line, Inc. v. Country Explosion, LLC,*
   No. 3:14-cv-1608, 2015 U.S. Dist. LEXIS 4365
   (M.D. Tenn. Jan. 14, 2015) ........................................................................... 16

*Pace v. Timmermann's Ranch & Saddle Shop, Inc.,*
   795 F.3d 748 (7th Cir. 2015) .................................................................... 15-16

*Parklane Hosiery Co. v. Shore,*
   439 U.S. 322 (1979) ...................................................................................... 13

*"R" Best Produce, Inc. v. Shulman-Rabin Mktg., Corp.,*
   467 F.3d 238 (2d Cir. 2006) .......................................................................... 17

*Reliance Ins. Co. v. Mast Constr. Co.,*
   84 F. 3d 372 (10th Cir. 1996) ....................................................................... 11

*Salt River Project Agric. Improvement & Power Dist. v. Lee,*
   672 F.3d 1176 (9th Cir. 2012) ......................................................................... 9

*Spirt v. Teachers Ins. & Annuity Assoc. of Am.,*
   416 F. Supp. 1019 (S.D.N.Y. 1976) .............................................................. 28

*Takeda v. Nw. Nat'l Life Ins. Co.,*
   765 F.2d 815 (9th Cir. 1985) ............................................................... 13-14, 28

*Taylor v. Sturgell,*
   553 U.S. 880 (2008) ...................................................................................... 12

*Tech & Intellectual Prop. Strategies Group PC v. Insperity, Inc.,*
   No. 12-CV-03163-LHK, 2012 U.S. Dist. LEXIS 10714 (N.D. Cal. Nov. 29, 2012) .............. 26

*Temple v. Synthes Corp.,*
   498 U.S. 5 (1990) .......................................................................................... 12

*Tex. Indus. v. Radcliff Materials, Inc.,*
   451 U.S. 630 (1981) ........................................................................................ 8

*Tex. Utilities Co. v. Santa Fe Indus., Inc.,*
   553 F. Supp. 106 (N.D. Tex. 1982) ............................................................... 11

*Twist v. Arbusto,*
   No. 05-cv-0187-JDT-WGH, 2007 U.S. Dist. LEXIS 702
   (S.D. Ind. Jan. 3, 2007) ................................................................................ 26

*United States v. Visa U.S.A., Inc.*,
   No. 98 Civ. 7076 (BSJ), 2000 U.S. Dist. LEXIS 11872 (S.D.N.Y. Aug. 17, 2000) ............... 17

*United States ex rel. Hall v. Tribal Dev. Corp.*,
   100 F.3d 476 (7th Cir. 1996) ........................................................................................... 28

*Universal Furniture Int'l, Inc. v. Frankel*,
   538 F. App'x 267 (4th Cir. 2013) .................................................................................... 29

*Ward v. Apple Inc.*,
   791 F.3d 1041 (9th Cir. Cal. 2015) ............................................................................. 12-13

*Weizmann Inst. of Sci. v. Neschis*,
   229 F. Supp. 2d 234 (S.D.N.Y. 2002) ................................................................................. 9

*Z&B Enter., Inc. v. Tastee-Freeze International, Inc.*,
   162 Fed App's 16 (1st Cir. 2006) .................................................................................... 28

## Statutes

Fed. R. Civ. P. 19 .................................................................................................... *passim*

Fed. R. Civ. P. 20 ...................................................................................................... 15-16

Fed. R. Civ. P. 24 .................................................................................................... *passim*

## Other Authorities

18A Charles Alan Wright & Arthur R. Miller,
   Federal Practice and Procedure § 4460 (2d ed. 2002) ......................................................... 28

4 Moore's Federal Practice §§ 19.03 [3][c], [d], 20.02[2][a][i], [1][b]
   (Matthew Bender 3d Ed.) .......................................................................................... 13, 15

6 Moore's Federal Practice §§ 24.03, 24.10[1], 24.23 (Matthew Bender 3d Ed.) ............ 17, 24, 30

Plaintiff Spencer Meyer respectfully submits this memorandum of law in opposition to (1) Defendant Travis Kalanick's Expedited Motion for Joinder of Uber Technologies, Inc. as a Necessary Party, and (2) Proposed Intervenor Uber Technologies, Inc.'s Motion to Intervene for the Limited Purpose of Compelling Arbitration.

## PRELIMINARY STATEMENT

Defendant and Uber move to join Uber as a defendant under Federal Rules of Civil Procedure 19, 20 and 24, erroneously claiming that Uber is a necessary party here.  They seek Uber's joinder for the sole purpose of compelling Plaintiff and the hundreds of thousands of consumers that he seeks to represent to arbitrate their claims in serial, individual proceedings.

Specifically, these motions – filed nearly six months since the initiation of this case and only approximately five months prior to the trial ready date scheduled by the Court – constitute a third, meritless "bite at the apple" to preclude Plaintiff from pursuing his well-pleaded antitrust claims against Defendant on a putative class action basis.  They seek for Uber be added as a party now, after Defendant twice failed to dismiss this case by invoking a class action waiver clause that was buried in the click-through "contract of adhesion" that Uber forced Plaintiff to sign, and notwithstanding that Uber and Defendant have coordinated with respect to Defendant's litigation response to date.  *See* 3/31/16 Order, ECF No. 37; 5/7/16 Order, ECF No. 44.  This tactical ploy is devoid of any merit, in addition to being procedurally defective. It should be denied for three overarching reasons.

*First*, Uber's participation in this case is not "necessary" in any sense.  All of the relief requested by Plaintiff on behalf of the putative Class can be satisfied by Defendant without any participation by Uber.  Defendant, reportedly a multi-billionaire, can fully satisfy the treble damages sought.  Further, the injunctive relief that Plaintiff seeks would only apply to

1

Defendant, not Uber.  Contrary to the movants' statements otherwise, Plaintiff only seeks an order enjoining Defendant from participating in the conspiracy.  He does not seek an order that would set aside Uber's contracts with its independent contractor-drivers.  Moreover, Uber is not a necessary party, as the movants claim, merely because it purports to have an interest in pushing this matter into arbitration or because Uber wants to limit any discovery requested of it to resolve this dispute.  Even if genuine, these are *not* legally cognizable, protectable concerns that warrant intervention.  *See Liz Claiborne v. Mademoiselle Knitwear*, No. 96 Civ. 2064 (RWS), 1996 U.S. Dist. LEXIS 8847 (S.D.N.Y. June 23, 1996).  Neither Defendant nor Uber has identified *any* protectable interest of Uber's that would be impaired absent Uber's participation in this case.

The movants also claim that Uber is a necessary party because, they say, Uber's rights could be impaired by virtue of the application of offensive collateral estoppel in later proceedings.  That argument is without merit.  Offensive collateral estoppel can only be applied where the defendant sued in a subsequent proceeding had a full and fair opportunity to be heard in a prior action, and fundamental issues of fairness would permit it.  It is therefore not surprising that movants fail to cite a single case where offensive collateral estoppel was applied against a corporate defendant based on a claim or issue that had been adjudicated against that defendant's co-conspirator or corporate officer.  The prospect of offensive collateral estoppel being applied to any subsequent proceeding regarding Uber is a fantasy.

*Second,* these motions should be denied because Defendant and Uber sat on their hands for months without making any assertion that Uber's participation in this case as a party was somehow necessary.  Uber concedes that it has known about this case since it was filed on December 16, 2015.  But rather than seek to join at the outset or at any time over the intervening five-plus months, Uber responded to this case by first scheming with Defendant to "investigate"

2

and intimidate Plaintiff, and then participating in Defendant's substantive response to the complaint.  Uber's initial investigative efforts – launched the same day the case was filed – involved contacting Plaintiff's associates under false pretenses.  *See* 5/27/16 Hr'g Tr.[1]  Its later involvement in legal strategy included, at a minimum, one of its in-house counsel attending the January 6, 2016 initial court conference, and another of its in-house counsel entering her appearance on behalf of Defendant at the March 9, 2016 oral argument on Defendant's motion to dismiss.  Now, as the November 1, 2016 trial ready date is nearing, the movants, for the first time, collectively claim that this case cannot be fully and fairly adjudicated without Uber joined as a party.  The movants' months-long response to Plaintiff's claims illustrates the lack of merit in this assertion.  These motions, if granted, would derail this case after the discovery process has begun, causing prejudice to Plaintiff by forcing him to defend yet another attempt to move this case to arbitration.  The motions are not remotely timely and should be denied for that reason alone.[2]

*Third,* the result sought by the movants would cause massive inefficiencies related to the prosecution of the subject antitrust claims, found already to have met plausibility thresholds.  Indeed, the movants are only seeking Uber's participation for a single purpose: to preclude consumers from availing themselves of the efficiencies of the class action device.  That device would allow consumers to achieve remediation in a single proceeding for common injuries caused to them by Defendant – a person that not only participated in the subject price-fixing conspiracy as an Uber driver, but as the one who conceived of it.  The movants' suggestion that

---

[1]     The knowledge that Defendant and Uber had of the pretextual means used to investigate Plaintiff remains the subject of ongoing discovery.

[2]     Defendant's motion for permissive joinder under Federal Rule of Civil Procedure 20 fails because permissive joinder is not a procedural device available to parties that have not asserted a claim.

it would be more efficient for them – and for hundreds of thousands of consumers that have used

the Uber service – to resolve this dispute through repeated, serial arbitrations turns the notion of

judicial economy on its head.  It also belies their claim that they seek to add Uber in order to

prevent the prospect of inconsistent adjudications.  While Plaintiff will certainly challenge any

attempt to compel arbitration in this case, the likelihood of inconsistent rulings regarding the

price-fixing conspiracy increases exponentially if each consumer is forced to arbitrate his or her

claims individually against Defendant, rather than on a class basis.

    The motions for joinder and intervention should be denied for these reasons and those

more fully set forth below.

## RELEVANT FACTS

### A.    Plaintiff's Claims Against Defendant Kalanick

    Plaintiff commenced this action on December 16, 2015 (*see* ECF No. 1), against the

Defendant, Travis Kalanick, the co-founder of Uber, its CEO, and an Uber driver.  *See* First

Amended Complaint ("FAC"), ECF No. 26, ¶¶ 1, 3.  Plaintiff has not asserted any claims against

Uber.

    As this Court has articulated, Plaintiff's claims are "in essence, that Mr. Kalanick, while

disclaiming that he was running a transportation company, had conspired with Uber drivers to

use Uber's pricing algorithm to set the prices charged to Uber riders, thereby restricting price

competition among drivers to the detriment of Uber riders, such as plaintiff Meyer."  3/31/16

Order, ECF No. 37, at 1-2; *see also* FAC ¶¶ 120-40; 5/20/16 Hr'g Tr. at 24 (The "gist" of

Plaintiff's claim is that "Mr. Kalanick through Uber has created a price-fixing mechanism . . . .").

    Uber's driver-partners are not employees of Uber; rather, they are direct competitors who

have agreed to Defendant's price-fixing scheme.  FAC ¶¶ 37-39, 68-79.  In addition to

4

orchestrating the scheme, Defendant also participated in the conspiracy as an Uber driver who competes directly with other Uber driver-partners.  FAC ¶¶ 3, 80-85.

This lawsuit is brought on behalf of a putative class of Uber riders.  FAC at 25. Plaintiff's User Agreement with Uber contains an arbitration clause, but that clause applies to Uber only.  Defendant is not a party to the User Agreement and is not named in the arbitration clause.  *See* ECF No. 29-1 at 8-10.

Plaintiff seeks treble damages from Defendant for all of the monetary injuries caused by the conspiracy.  Plaintiff also seeks declaratory relief and an injunction that would cause Defendant to cease his role in the conspiracy.  FAC ¶ 6.  Plaintiff seeks no relief from Uber.  He seeks no injunction, for example, that would require Uber to change its business model.

### B.      Uber's Response to This Lawsuit

Uber has been aware of this lawsuit since the day it was filed.  On December 16, 2015, Uber's General Counsel, Salle Yoo, sent an email to Joe Sullivan, Uber's Head of Security.  *See* 5/27/16 Hr'g Tr. 9:16-23.  That email led to Uber retaining Ergo to conduct an "investigation" of Plaintiff and one of his attorneys.  *See* 5/27/16 Hr'g Tr. 10:5-10.  The full purpose of the investigation remains obscured; however, during the May 27 hearing, Uber took the position that the investigation was performed "for the purpose of gathering intelligence for the party about the motivations of this particular plaintiff and why he was bringing this particular litigation." 5/27/16 Hr'g Tr. 26:4-8.  What Uber discussed internally, learned about Ergo's investigation, and communicated to Ergo and/or Defendant is the subject of ongoing discovery.  It is known, however, that, in January 2016, Ergo contacted professional colleagues of Plaintiff and his attorney under false pretenses and asked for information about them, including anything "scandalous."  *See* 5/20/16 Hr'g Tr. 2:13-3:3.  On January 20, 2016, Ergo's report was presented

5

to Ms. Yoo.  5/27/16 Hr'g Tr. 10:11-16.

Uber's response to this action has not been limited to its retention of Ergo.  An in-house attorney from Uber attended the status conference held by the Court on January 6, 2016, and another Uber in-house counsel appeared at the March 9, 2016 oral argument concerning Defendant's motion to dismiss.  *See* 3/9/16 Hr'g Tr. at 2:10-12.

### C.  Defendant's Motion to Dismiss and Motion for Reconsideration

From the very beginning of this case, Defendant decided to take on the allegations on their merits.  On January 15, 2016, Defendant filed a motion to dismiss the original Complaint for failure to state a claim.  *See* ECF Nos. 22-24.  On February 8, 2016, Defendant filed a substantially similar motion to dismiss the First Amended Complaint.  *See* ECF Nos. 27-30. Although Defendant moved to enforce the class action waiver contained in Plaintiff's User Agreement with Uber, Defendant chose not to move to compel arbitration.  Rather, Defendant explicitly stated that he "does not seek to compel arbitration here," while "not waiv[ing] and expressly reserv[ing] his right to move to compel arbitration *in other cases* arising out of the User Agreement."  ECF No. 28 at 22 n.10 (emphasis added); *see also* ECF No. 23 at 21 n.9 (Defendant "does not seek to enforce the arbitration agreement here").

On March 31, 2016, the Court denied Defendant's motion to dismiss.  *See* ECF No. 37. In rejecting Defendant's argument that Plaintiff was equitably estopped from pursuing a class action against Defendant, the Court noted that "defendant is not seeking to compel arbitration." ECF No. 37 at 23 n.8.

On April 14, 2016, Defendant filed a motion for reconsideration of the Court's holding regarding the non-applicability of the class action waiver contained in the Uber User Agreement's arbitration provision.  ECF No. 40.  Defendant's motion again confirmed that

6

"defendant is not seeking to compel arbitration." ECF No. 41 at 5 (quoting 3/31/16 Order at 23 n.8). On May 7, 2016, the Court denied Defendant's motion for reconsideration, noting yet again that "Defendant has not made any motion to compel arbitration" and that Defendant has represented that he "'does not seek to compel arbitration here.'" ECF No. 44 at 7 n.3 (quoting ECF No. 22 n.10).

### D.    The Motions for Joinder and Intervention

Defendant filed its motion to join Uber, pursuant to Federal Rules of Civil Procedure 19(a) and 20, on May 20, 2016. Uber filed its motion to intervene, under Federal Rule of Civil Procedure 24, on May 24, 2016. Both of these motions were filed nearly six months after the filing of this case.

Pursuant to the Court's Civil Case Management Plan, entered on April 11, 2016, this action must be ready for trial by November 1, 2016 – in less than five months. *See* ECF No. 39.

## ARGUMENT

### I.    THE COURT SHOULD DENY DEFENDANT'S MOTION TO JOIN UBER AS A NECESSARY PARTY

### A.    Relevant Standards

In determining whether to join a non-party pursuant to Rule 19(a), "[t]he burden is on [the movant] to establish that [a person] is a necessary party." *King v. Pine Plains Cent. Sch. Dist.*, 918 F. Supp. 772, 782 (S.D.N.Y. 1996). The movant must make "an extraordinary showing of need." *Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, No. 14-cv-9687 (VEC), 2016 U.S. Dist. LEXIS 18330, at *13 (S.D.N.Y. Feb. 11, 2016) (quotation omitted).

A person will be deemed a necessary party under Rule 19(a) only if: (1) without joinder, "the court cannot accord complete relief among existing parties," *see* Fed. R. Civ. P. 19(a)(1)(A); or (2) the person has a "legally protected interest relating to the subject matter of the action,"

*ConnTech Dev. Co. v. Univ. of Conn. Educ. Props.*, 102 F.3d 677, 682 (2d Cir. 1996), and the absence of joinder will "impair or impede the person's ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(i)-(ii).

### B.   The Court Can Afford Complete Relief Among Plaintiff and Defendant Without Joining Uber

Plaintiff can obtain complete relief against Defendant without joining Uber to this action. "Complete relief" under Rule 19(a)(1)(A) refers only to "relief as between the persons already parties, and not as between a party and the absent person whose joinder is sought." *Arkwright-Bos. Mfrs. Mut. Ins. Co. v. N.Y.*, 762 F.2d 205, 209 (2d Cir. 1985) (internal quotation marks omitted). In deciding whether the court can afford complete relief among the parties, the Court need only consider the remedies "requested in the complaint and need not concern itself with other remedies . . . if [absentee] were joined." *Drankwater v. Miller*, 830 F. Supp. 188, 192 (S.D.N.Y. 1993).

Plaintiff's Complaint seeks monetary, declaratory, and injunctive relief *solely against Mr. Kalanick*. See FAC ¶ 141. Plaintiff seeks no relief whatsoever against Uber.

With respect to damages, Plaintiff, on behalf of the class, can recover damages in full from Defendant himself – who has a personal net worth of $6.2 billion.[3] Co-conspirators, such as Defendant, are jointly and severally liable for damages in an antitrust case and need not bring suit against all members of the conspiracy to recover damages in full. *See Tex. Indus. v. Radcliff Materials, Inc.*, 451 U.S. 630, 645-46 (1981) (plaintiffs can seek damages from co-conspirators of their choice). Should Plaintiff prevail, Plaintiff and the putative Class will be able to recover every nickel of damages caused by the conspiracy from Defendant without joining Uber.

---

[3]      *See* http://www.forbes.com/profile/travis-kalanick/.

Defendant makes no attempt to argue otherwise.

Plaintiff can also receive complete declaratory and injunctive relief from Defendant without joining Uber. The Complaint explicitly seeks an injunction and declaration against Defendant, not Uber. *See* FAC ¶ 141 ("Plaintiff demands judgment against *Kalanick* as follows") (emphasis added). Plaintiff seeks a declaration that Defendant violated the law and an injunction that prevents him from continuing to participate in the price-fixing conspiracy. As Defendant is the architect of the conspiracy at issue here, enjoining his participation in furtherance of the conspiracy would be substantial, meaningful relief for Plaintiff and the putative class. Contrary to Defendant's suggestion, Uber need not be enjoined for the injunctive and declaratory relief to have full force and effect. *See Jota v. Texaco Inc*., 157 F.3d 153,162 (2d Cir. 1998) (injunctive relief can be structured so as to only require the named party to act and not envelop a nonparty actor); *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1180 (9th Cir. 2012) (joinder of non-party Navajo tribe unnecessary because court could enjoin party tribal officials); *Gibbs Wire & Steel Co. v. Johnson*, 255 F.R.D. 326, 329 n.1 (D. Conn. 2009) (finding no basis for joinder under Rule 19(a)(1)(A) where relief would not require "any affirmative obligation" from non-party or "prohibit" non-party from taking action).[4]

Defendant also erroneously asserts that, because Plaintiff seeks "information that is specific to Uber" in document requests propounded on Defendant, Uber is a necessary party

---

[4] Defendant cites several inapposite cases in support of his argument that Uber is a necessary party to afford complete relief against Kalanick, including *Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 240 (S.D.N.Y. 2002), *Bartfield v. Murphy*, 578 F. Supp. 2d 638, 651 (S.D.N.Y. 2008), and *D'Amico v. Doe*, No. 3:03-cv-2164 (SRU), 2005 U.S. Dist. LEXIS 769, at *10 (D. Conn. Jan. 20, 2005). In those cases, the plaintiffs explicitly sought adjudication of a non-party's legal rights to possess certain assets; accordingly, joinder was necessary in those cases, as the non-party's rights to possess those assets could have been impaired as a result of the subject litigation. Here, unlike in those cases, Plaintiff does not challenge Uber's right to possess any property (real or intellectual) or assets. Nor does Plaintiff seek for Uber to have to take any action as a result of this case.

9

under Rule 19.  Def. Mem. at 7-8.  Defendant appears to claim that these discovery requests

show that "complete relief" cannot be granted without joining Uber.  Defendant is wrong as a

matter of law: Plaintiff's document requests are immaterial to the Court's Rule 19 analysis.  "The

question of whether or not an entity or individual should be a party to an action is something

quite different from the questions and problems associated with obtaining evidence from such an

entity or individual.  Rule 19 . . . does not list the need to obtain evidence from an entity or

individual as a factor bearing upon whether or not a party is necessary or indispensable to a just

adjudication."  *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 188 (2d Cir. 1999) (quoting *Costello*

*Publ'g Co. v. Rotelle*, 670 F.2d 1035, 1044 (D.C. Cir. 1981); *see also Brown v. United States*, 42

Fed. Cl. 538, 564 (Fed. Cl. 1998) (a party is not "necessary" for Rule 19 purposes merely

because plaintiff needs to obtain evidence from it and defendant would have to defend absent

party's actions at trial); *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1498 (10th Cir. 1983) ("We have

found no cases which approve of the use of rule 19 simply to allow greater discovery, and we

can discern no policy which such an expansion of the rule would promote."). Plaintiff's requests

for productions of documents on Defendant are immaterial to the Court's determination under

Rule 19.

### C.      Disposing of This Action Will Not Impair or Impede Uber's Ability to Protect Its Interests

Uber has no legally protected interest that is threatened by this action.  Defendant

wrongly argues otherwise, claiming that (1) Uber may be bound by the terms of an injunction

entered against Defendant; (2) there is a risk that Uber will be collaterally estopped, in potential

subsequent proceedings against Uber, from contesting rulings made in this case against

Defendant; and (3) Plaintiff seeks to enjoin Uber's contracts with its driver partners.  *See* Def.

Mem. at 8-11.  None of these contentions has merit.

1.      **Uber Will Not Be Bound by the Terms of an Injunction Entered Against Defendant**

Defendant's argument that Uber has a legally protected interest in this case rests upon the tenuous and speculative assertion that Uber could be held liable if, at some time in the future, Kalanick violates an injunction, and Uber aids and abets Kalanick's conduct.  Defendant fails to cite any authority holding that the possibility that a non-party, at some undetermined point in the future, may aid and abet a Defendant in violating the terms of an injunction constitutes a legally protected interest that warrants Rule 19 joinder.[5]  And with respect to the only (arguably) pertinent issue—whether Uber would be bound by an injunction against Defendant in this case— Defendant agrees that Uber has no legally protected interest.  Defendant himself "in no way concedes that an injunction against [Defendant] could or would be binding against Uber," and asserts that "the controlling authority is to the contrary."  Def. Mem. at 8 n.3.  *See also* Uber Mem. at 16 ("Uber does not concede that it would be bound by any relief granted to Plaintiff . . .").

2.      **Uber Cannot Be Bound By Offensive Collateral Estoppel To Rulings In This Case.**

Defendant's claim that the "mere possibility of [Uber] being bound in future litigation by decisions reached in this case" (Def. Mem. at 10) requires joinder of Uber is meritless. Offensive collateral estoppel cannot bind Uber to rulings made in this matter.

---

[5]      The cases that Defendant cites on this point are inapposite.  In *LifeScan Scotland, Ltd. v. Shasta Techs., LLC,* No. 11 Civ. 04494 (WHO), 2013 WL 4604746 (N.D. Cal. Aug. 28, 2013) (cited at Def. Mem. at 9), the issue was whether the plaintiff should be held in contempt for violating a confidentiality order.  *Id.* at **3-4.  There was no Rule 19 motion before the court, nor any adjudication about a non-party aiding and abetting the violation of an injunction. Similarly, in *Reliance Insurance Co. v. Mast Construction Co.*, 84 F.3d 372 (10th Cir. 1996), there was no Rule 19 joinder issue before the court.  And *Texas Utilities Co. v. Santa Fe Industries, Inc.*, 553 F. Supp. 106 (N.D. Tex. 1982), concerned, unlike the case here, the "altering [of] existing contractual relations between" defendant and a non-party.  *Id.* at 110.

11

"A party is collaterally estopped from raising an issue in a proceeding if: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) *the party had a full and fair opportunity to litigate the issue*; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Interoceanica Corp. v. Sound Pilots*, 107 F.3d 86, 91 (2d Cir. 1997) (internal quotations omitted) (emphasis added). The "often repeated . . . general rule" is that "'one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.'" *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)); *see also* 4 Moore's Federal Practice § 19.03[3][d] (Matthew Bender 3d Ed.) ("[A]n absentee's interest can rarely be affected *as a legal matter* – that is, in a res judicata or collateral estoppel sense – by a judgment in a case to which the absentee is not joined.").

Uber cannot be bound by the doctrine of offensive collateral estoppel to rulings made against Defendant in this case. Defendant wrongly asserts that, as his co-conspirator, Uber can be held in privity with Defendant for purposes of collateral estoppel. As a practical matter, Defendant's theory is at odds with the well-established rule that "[i]n a suit to enjoin a conspiracy not all the conspirators are necessary parties . . . ." *Georgia v. Pa. R.R.*, 324 U.S. 439, 463 (1945); *see also Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." ); *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 330 (1955) (holding that joinder of alleged antitrust co-conspirators was not mandatory "since as joint tort-feasors they were not indispensable parties"); *Ward v. Apple Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015) ("[A] plaintiff is not required to sue all of the alleged conspirators inasmuch as antitrust co-conspirators are

12

jointly and severally liable for all damages caused by the conspiracy.") (internal quotations omitted); 4 Moore's Federal Practice § 19.03 [3][c] (Matthew Bender 3d Ed.) ("[I]t is clearly established that joint tortfeasor absentees are not necessary.").  If Defendant's theory had merit, it would eviscerate this well established rule and courts would be *required* to join *all* non-party co-conspirators in antitrust cases.[6]

Moreover, Defendant cites no case where non-mutual *offensive* collateral estoppel was applied to a defendant arising out of a judgment against an alleged co-conspirator in a prior action where the defendant was not a party, on the basis that the co-conspirators were in privity. The cases cited by Defendant involve *defensive* claim preclusion: both *Discon Inc. v. Nynex Corp.*, 86 F. Supp. 2d 154 (W.D.N.Y. 2000) and *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, 13 Civ. 981(PGG), 2015 U.S. Dist. LEXIS 44031 (S.D.N.Y. Mar. 31, 2015) (*see* Def. Br. at 10) were cases where *defendants* invoked res judicata *defensively* to preclude claims against them that were adjudicated in favor of defendants' co-conspirators in prior actions where defendants were not parties.  *See Discon, Inc.*, 86 F. Supp. 2d at 165-67; *7 W. 57th St. Realty*, 2015 U.S. Dist. LEXIS 44031, at *83-89.[7]  Absent joinder, there is no reasonable risk that Uber will be subject to non-mutual offensive collateral estoppel based on rulings adverse to Mr. Kalanick in this action.[8]

---

[6]     In addition, while Defendant has not made the argument, offensive collateral estoppel also would not apply against Uber merely because Defendant is an officer of Uber.  *See infra* part II.D.3.

[7]     The Supreme Court has explained that offensive and defensive preclusion "should be treated differently" and that offensive collateral estoppel "may be unfair to a defendant." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329-30 (1979).

[8]     *Takeda v. Northwestern National Life Insurance Co.,* 765 F.2d 815 (9th Cir. 1985) has no bearing on this case for two reasons.  First, that case did not concern co-conspirators at all. Rather, it concerned whether an employer that paid medical insurance claims to employees as a "self-funded group medical plan" was required to be joined as a defendant in a lawsuit brought by an employee and his chiropractor over medical expense that were incurred.  In that case, a co-

### 3.    Plaintiff Does Not Seek to Enjoin Uber's Contracts with Its Driver-Partners

Defendant wrongly asserts that Plaintiff seeks to enjoin performance of Uber's contracts with its driver-partners.  Def. Mem. at 11.  The only conduct Plaintiff seeks to enjoin (and, indeed, can enjoin) is Defendant's.  Defendant is not a party to Uber's contracts with its driver-partners, and therefore those contracts will not be subject to an injunction in this case.  Defendant fails to cite any authority supporting his argument that contracts between Uber (a non-party) and its driver-partners (also non-parties) are threatened by this lawsuit and provide a basis for Rule 19 joinder.[9]

### D.    Defendant Is Not Subject to Substantial Risk of Incurring Double, Multiple, or Otherwise Inconsistent Obligations Absent Uber's Joinder

Defendant does not claim that he would be subject to a risk of incurring double, multiple, or otherwise inconsistent obligations absent joinder of Uber in this action.  Rather, Defendant claims that, due to the filing of a case against Uber in the Southern District of Texas, *Uber* "may be subject to inconsistent obligations . . . ."  Def. Mem. at 4 n.1.  However, whether a non-party will be subject to inconsistent obligations absent joinder of that non-party is not the test; the question is whether, absent joinder, an "existing party" would be subject to inconsistent obligations.  *See* Fed. R. Civ. P. 19(a)(1)(B)(ii).  Thus, Defendant must show that Uber's

---

defendant out-of-state insurance company that only provided certain "administrative responsibilities," argued that the in-state employer/self-funded plan was not necessary to the adjudication of the lawsuit in order to preserve federal court, diversity jurisdiction.  *Id.* at 817. The Ninth Circuit held that the in-state employer's participation in the case was necessary, finding that "complete relief may be unavailable if [the employer] is not joined" (inasmuch as the employer was responsible for paying claims), and remanded the case back to state court.  *Id.* at 820.  Second, the court, in that case, considered how the doctrine of collateral estoppel would apply to subsequent suits under California law, not federal law.

[9]    *Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690 (2d Cir. 1980), cited by Defendant (*see* Def. Mem. at 11), is inapposite because the claim in that case was to enjoin a *party's* performance of a contract with a non-party to the lawsuit.  *Id.* at 701.  On that basis, the court held that the non-party was necessary.

absence from the lawsuit may subject *Defendant* to inconsistent obligations.  Defendant has not even attempted to make such a showing.

Further, any purported concern by Uber of facing inconsistent obligations is not credible. Uber forces its users to agree to arbitration/class action waiver clauses through Uber's User Agreement, which "bears all the earmarks of a classic contract of adhesion."  5/7/16 Order (ECF No. 44) at 3 n.2.  Thus, Uber has tried to force its millions of users to assert antitrust claims against it only via piecemeal, bilateral arbitration, thereby voluntarily putting itself at risk of multitudes of inconsistent judgments.

### E.    Defendant May Not Seek Permissive Joinder of Uber Under Rule 20

Defendant's alternative request to join Uber permissively, pursuant to Federal Rule of Civil Procedure 20, can be disposed of quickly.  Rule 20 joinder is unavailable to a defendant that has not asserted a counterclaim or cross-claim.  Rule 20(a)(2) allows for permissive joinder of defendants only where a "right to relief is asserted against them . . . ."  Fed. R. Civ. P. 20(a)(2)(A).  Defendant ignores the well-settled law that, while a plaintiff may join defendants under Rule 20, a defendant may only join parties under Rule 20 when the defendant has asserted a counterclaim or crossclaim.  *See* 4 Moore's Federal Practice §§ 20.02[2][a][i], [1][b] (Matthew Bender 3d Ed.) ("The defendant has no right to insist that the plaintiff join all persons who could be joined under the permissive joinder rule," and permissive joinder is allowed for a defendant only if "the defendant has asserted a counterclaim or crossclaim in the action.").  Courts have consistently held that this is the proper interpretation of Rule 20.  *See, e.g., Hefley v. Textron, Inc.*, 713 F.2d 1487, 1499 (10th Cir. 1983) ("[A] defendant can not [sic] use rule 20 to join a person as an additional defendant."); *Pace v. Timmermann's Ranch & Saddle Shop, Inc.*, 795 F.3d 748, 756 n.13 (7th Cir. 2015) ("'[J]oinder of defendants under rule 20 is a right belonging

15

to plaintiffs.'") (quoting *Hefley*, 713 F.2d at 1499); *Nixon v. Guzzetta*, 272 F.R.D. 260, 262

(D.D.C. 2011); *Orange Peach Line, Inc. v. Country Explosion, LLC,* No. 3:14-cv-1608, 2015

U.S. Dist. LEXIS 4365, at *31 (M.D. Tenn. Jan. 14, 2015); *see also Field v. Volkswagenwerk*

*AG*, 626 F.2d 293, 299 (3d Cir. 1980) (Rule 20 joinder "is at the option of the plaintiffs" and

"cannot be demanded as a matter of right by the defendant") (internal quotation marks omitted).

Tellingly, Defendant has failed to cite (nor is Plaintiff aware of) any authority holding

that a defendant may invoke Rule 20 to permissively join an additional defendant absent a

counterclaim or crossclaim.[10]  As Defendant has brought neither a counterclaim nor crossclaim

in this action, he is thus foreclosed from seeking permissive joinder under Rule 20.

## II.     THE COURT SHOULD DENY UBER'S MOTION TO INTERVENE

### A.     Relevant Standards

A party moving to intervene as of right under Rule 24(a)(2) must satisfy four elements:

"On [1] timely motion, the court must permit anyone to intervene who . . . [2] claims an interest

relating to the property or transaction that is the subject of the action, and [3] is so situated that

disposing of the action may as a practical matter impair or impede the movant's ability to protect

its interest, [4] unless existing parties adequately represent that interest."  Fed. R. Civ. P.

24(a)(2); *Floyd v. City of N.Y.*, 770 F.3d 1051, 1057 (2d Cir. 2014) (per curiam).  Rule 24(a)(2)

mirrors Rule 19(a): "[I]f a party is not 'necessary' under Rule 19(a), then it cannot satisfy the test

---

[10]     The cases relied upon by Defendant are all cases where Rule 20 joinder was sought either
by a plaintiff or a counterclaim defendant. *See Oi Kwan Lai v. Eastpoint Int'l, Inc.*, No. 99 Civ.
2095 (DLC), 1999 U.S. Dist. LEXIS 13458, at *7 (S.D.N.Y. Sept. 1, 1999) (denying plaintiff's
attempt to add additional plaintiffs and defendants under Rule 20); *Corchado v. Prod. Design &
Dev., Inc.*, No. 99 Civ. 9032 (JSR), 2000 U.S. Dist. LEXIS 1179, at *6 (S.D.N.Y. Feb. 4, 2000)
(plaintiff granted permissive joinder of an additional defendant); *Midlantic Commer. Co. v.
Prime Sportswear Corp.*, 95 Civ. 10192 (SWK), 1996 U.S. Dist. LEXIS 9065, at *14 (S.D.N.Y.
June 26, 1996) (court granted permissive joinder by defendant of additional cross-claim
defendants).

for intervention as of right under Rule 24(a)(2)." *Mastercard Int'l, Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 389 (2d Cir. 2006).

The Court may permit intervention under Rule 24(b) where the movant (1) makes a "timely motion," and (2) "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). In exercising its discretion to grant permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). When analyzing permissive intervention under Rule 24(b), courts in this circuit consider the same four elements articulated in Rule 24(a)(2). *See Kaliski v. Bacot*, 320 F.3d 291, 300 n.5 (2d Cir. 2003) ("[s]ubstantially the same factors are considered" under Rule 24(a) and Rule 24(b)); *see also Floyd*, 770 F.3d at 1057.[11]

Uber bears the burden to establish all required elements of intervention. A failure to satisfy "*any one* of these four requirements is a sufficient ground to deny the application." *"R" Best Produce, Inc. v. Shulman-Rabin Mktg., Corp.*, 467 F.3d 238, 241 (2d Cir. 2006) (emphasis in original). District courts are given broad discretion in denying motions to intervene. *Floyd*, 770 F.3d at 1057.

---

[11]    Contrary to Uber's suggestion, intervention is not necessary to allow non-parties to "air their views" (Uber Mem. at 5). The streamlined amicus curiae process is used for precisely that purpose. *See, e.g.*, *Liz Claiborne*, 1996 U.S. Dist. LEXIS 8847, at *12-13 (denying intervention, but noting movant may "be called as a witness by [defendant]" or "file an *amicus curiae* brief"); *United States v. Visa U.S.A., Inc.*, No. 98 Civ. 7076 (BSJ), 2000 U.S. Dist. LEXIS 11872, at *5 (S.D.N.Y. Aug. 17, 2000) (denying motion to intervene but permitting movant to make an amicus submission); *see also* 6 Moore's Federal Practice § 24.23[2] (Matthew Bender 3d Ed.) ("Participation as an amicus curiae, rather than as a party, is appropriate if a person cares about the legal principles that apply to a dispute but has no personal, legally protectable interest in the litigation.").

### B.    Uber Is Not a Necessary Party Under Rule 19 and Is Therefore Not Entitled to Intervention as of Right Under Rule 24

As explained above (*see supra* part I), Uber is not a necessary party to the adjudication of this case under Rule 19(a).  Thus, Uber is not entitled to intervention by right under Rule 24(a)(2).  *See Mastercard*, 471 F.3d at 390 ("Visa does not satisfy the definition of necessary party under Rule 19(a)(2)(i) because its absence from this litigation is not the cause of any harm to its interests.  Nor will Visa's presence allow it to protect those interests.  This finding also forecloses Visa's ability to intervene under Rule 24(a)(2).").

Regardless, as explained below, Uber does not meet any (much less all) of the four factors required for intervention under Rule 24.

### C.    Uber's Motion to Intervene Is Untimely

Uber's motion to intervene is untimely, and should be denied on that basis alone. *NAACP v. New York*, 413 U.S. 345, 365 (1973) ("Whether intervention be claimed of right or as permissive, it is at once apparent, from the initial words of both Rule 24(a) and Rule 24(b), that the application must be 'timely.'  ***If it is untimely, intervention must be denied***.") (emphasis added).  "Timeliness is to be determined from all the circumstances," and the court has discretion to decide whether a motion to intervene is timely.  *Id.* at 366.

Courts in the Second Circuit consider four factors to assess timeliness: "[1] the length of time the applicant knew or should have known of its interest before making the motion; [2] prejudice to existing parties resulting from the applicant's delay; [3] prejudice to the applicant if the motion is denied; and [4] the presence of unusual circumstances militating for or against a finding of timeliness."  *Floyd*, 770 F.3d at 1058.  The first factor is "[a]mong the most important factors in a timeliness decision."  *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996) (affirming denial of intervention where movants "were well aware long before they filed

18

their motions for intervention that they stood to be forced to provide aid . . . .”).

**1.      Uber's Motion Is Untimely in Light of the Length of Time That Uber Knew of its Purported Interest in this Case Before Seeking Intervention**

The length of Uber's delay warrants denial of Uber's motion to intervene as untimely.

*MasterCard*, 471 F.3d 377, is instructive.  There, MasterCard sued FIFA for breach of a contract that gave MasterCard the first right to an exclusive sponsorship, after FIFA allegedly gave Visa the sponsorship.  *Id.* at 381.  MasterCard sought an injunction ordering FIFA to perform with MasterCard and enjoining FIFA from performing with Visa.  *Id.*  Approximately five months after the complaint was filed, Visa moved to intervene under Rule 24.  *Id.*  Visa argued that its motion was timely because "Visa did not learn until . . . one month prior to its efforts to intervene, that FIFA's motion to dismiss was denied and that a hearing was set for September on the motion for a preliminary injunction.  At that point, Visa grew concerned that FIFA could not represent Visa's interests in this obligation."  *MasterCard Int'l Inc. v. FIFA*, No. 06 Civ. 3036 (LAP), 2006 U.S. Dist. LEXIS 80663, at *4 (S.D.N.Y. Sept. 25, 2006).  Judge Preska denied Visa's motion as untimely.  *MasterCard*, 471 F.3d at 390.

The Second Circuit affirmed, finding (1) "Visa has known of MasterCard's position that it has prior claim to the sponsorship rights since the time this litigation began," (2) "Visa has been in contact with FIFA throughout the course of this litigation," and (3) "MasterCard's complaint and other filings . . . are publicly available"; however, Visa delayed filing its motion to intervene for five months.  *Id.*  "Considering that Visa argued in support of its Rule 19 motion that it has a significant interest in this litigation that will be gravely prejudiced if the matter proceeds in its absence, the district court could properly find Visa's delay unjustified."  *Id.* at 390-91.

19

Uber has known of this case – in which Uber claims to have a "profound legal interest" (Uber Mem. at 8) – since the very day it was filed almost six months ago.  *See* Uber Mem. at 7 n.1; 5/27/16 H'rg Tr. 9:16-23.  Nonetheless, Uber chose not to seek intervention, waiting until May 24, 2016 to file its motion, as the following events occurred, many of which ***concern overt acts taken by Uber in response to this litigation***:

| | |
|---|---|
| **December 16, 2015** | Plaintiff commenced this action, and Uber's general counsel sent an email that resulted in Uber retaining Ergo. |
| **December 24, 2015** | Uber retained Ergo to investigate Plaintiff and his counsel. |
| **January 6, 2016** | Uber's in-house counsel attended the first status conference, at which Defendant advised the Court of his intention to file a Rule 12(b)(6) motion to dismiss. |
| **January 15, 2016** | Defendant moved to dismiss the Complaint, asserting he did not seek to compel arbitration in this action. |
| **January 20, 2016** | Uber's General Counsel received a copy of Ergo's report. |
| **January 29, 2016** | Plaintiff filed the Amended Complaint. |
| **February 8, 2016** | Defendant moved to dismiss the Amended Complaint, again asserting he did not seek to compel arbitration in this action. |
| **March 9, 2016** | Oral argument held on Defendant's motion to dismiss, at which Uber's in-house Senior Counsel appeared on behalf of defendant. |
| **March 31, 2016** | Court denied Defendant's motion to dismiss, and held that the Uber User Agreement's class action waiver provision did not mandate arbitration of this action. |
| **April 11, 2016** | Court issued its Case Management Plan, which required this action to be trial ready by November 1, 2016. |
| **April 14, 2016** | Defendant moved for reconsideration of the Court's denial of Defendant's motion to dismiss, and again confirmed he would not seek to arbitrate this dispute.  Defendant filed his answer. |
| **May 7, 2016** | Court denied Defendant's motion for reconsideration, noting again that Defendant does not seek to compel arbitration in this action. |

Rather than intervening, or claiming that it was a necessary party to this case, Uber sought to protect its purported "profound legal interest" by retaining Ergo – *a process that began the same day this lawsuit was filed* – for what Ergo now claims was for the purpose of obtaining information about the motivations of Plaintiff and his counsel.  Instead of intervening at the outset, Uber chose to use its legal and other resources to correspond with Ergo about this

investigation and to help coordinate Defendant's legal strategy.  *See supra* Relevant Facts part B.

It was only after Defendant twice failed to have this action dismissed, and after Ergo's

questionable investigation was exposed to the Court, that Uber claimed to be a necessary party

and sought to intervene.  Uber's heretofore unexpressed claim that it has a protectable legal

interest does not excuse Uber's delay.  *See MasterCard*, 471 F.3d at 390-91 (finding delay in

filing motion to intervene five months after action commenced unjustifiable. . . ");  *Doe v.*

*Duncanville Indep. Sch. Dist.*, 994 F.2d 160, 168 (5th Cir. 1993) (affirming denial of

intervention motion filed approximately four months after action commenced).

Uber offers three half-hearted justifications for its delay: "First, the Court only recently

concluded that the User Terms do not contain a class action waiver that is effective in the

absence of a motion to compel arbitration.  Second, Plaintiff propounded extensive discovery on

Uber . . . . Third, the filing of the *Swink* complaint . . . created a possibility of a decision in this

case collaterally estopping Uber in the Southern District of Texas."  Uber Mem. at 7 n.1.  None

of these justifications have any merit.

First, the Court's denials of Defendant's dismissal and reconsideration motions do not

justify Uber's delay.  Notably, a virtually identical argument was rejected by Judge Preska in

*MasterCard* when she denied Visa's motion to intervene.  *See MasterCard*, 2006 U.S. Dist.

LEXIS 80663, at *5 ("VISA seems to be saying that it [d]id not decide it needed to intervene

until it learned 'that FIFA's motion to dismiss was denied and that a hearing was set for

September,' that is, until, in VISA's estimation, things were going poorly for FIFA.").  Further,

Defendant repeatedly confirmed in his motion papers that he would not seek to compel

arbitration of this dispute.  Thus, it was apparent that this action would not be sent to arbitration

as early as January 15, 2016 – the date Defendant filed his first motion to dismiss – and more

than four months before Uber decided to move for intervention.

Second, Plaintiff's subpoena to Uber does not provide a basis for Uber to intervene. Indeed, for the same reasons that Plaintiff's subpoena is irrelevant to the Rule 19 inquiry, it is equally irrelevant to the Rule 24 inquiry.  *See supra* part I.B.  Tellingly, Uber cites no authority supporting the proposition that discovery requests warrant Rule 24 joinder.  Moreover, the notion that a set of document requests are what suddenly spurred Uber to action to seek intervention and arbitration is just not credible.

Finally, the filing of the *Swink* complaint does not justify Uber's delay.  *Swink* was filed more than a month ago, involves only a Texas class, and Uber has already represented that it intends "to exercise its arbitration rights" there.  Uber Mem. at 2.  As the rulings adjudicated against Defendant in this action cannot be used as offensive collateral estoppel against Uber in *Swink,* the filing of the *Swink* action is irrelevant to the Rule 24 analysis.  *See supra* part I.C.2. and *infra* Section II.D.3.

## 2.    Uber's Delay Will Prejudice Plaintiff

Plaintiff and the putative Class will be prejudiced as a result of Uber's failure to seek timely intervention.  Uber seeks intervention "for the limited purpose" of "mov[ing] the Court for an order dismissing these proceedings in favor of arbitration" or, in the alternative, "stay[ing] this action pending completion of arbitration proceedings . . . ."  Uber Mem. at 1.  The parties and the Court have already expended significant resources briefing and arguing the issue of whether the class-action waiver embedded in the Uber User Agreement's arbitration provision bars Plaintiff's class action claims against Defendant.  The Court twice held it does not.  This belated "third bite at the apple" would require the parties to litigate the applicability of the very arbitration provision that Defendant repeatedly stated he would not seek to invoke here, and

22

would require the Court to make yet another ruling concerning its class action waiver provision, all with less than five months left before this action must be trial-ready.  This would unfairly prejudice Plaintiff and the proposed class.  *See Floyd*, 770 F.3d at 1054 ("allowing [proposed intervenor] to revive a now-settled dispute by intervening at this late juncture would substantially prejudice the existing parties . . . .").

> **3.**      **Denial of the Motion to Intervene Will Not Prejudice Uber**

Uber will not suffer prejudice if its motion to intervene is denied.  As explained above and below (*see supra* part I.B. and *infra* part II.D.2.), Plaintiff seeks relief from Defendant, not Uber.  Any declaratory or injunctive relief fashioned by the Court and issued against Defendant will not bind Uber.  Absent intervention here, Uber would remain fully capable of defending itself in subsequent litigation brought against it, including by moving to compel any such future plaintiffs to arbitrate their claims against Uber.  In fact, Uber has already stated that it "intends to exercise its arbitration rights" to move to compel arbitration in *Swink*, where Uber was named as a defendant.  Uber Mem. at 2.

> **4.**      **The Presence of Unusual Circumstances Warrants Denial of Uber's Motion as Untimely**

Uber's motion to intervene is untimely.  Despite knowing of this case on the first day that it was filed, Uber chose not to move to intervene at that time.  It also chose not to intervene when subsequent events occurred in this case, such as when Defendant filed his motions to dismiss, motion for reconsideration, and Answer.  Moreover, Uber's delay in moving to intervene should be seen in the context of its hiring of Ergo, which attempted to obtain "scandalous" information under false pretenses from business contacts of Plaintiff and his attorney.  Such conduct belies any argument that Uber did not realize from the outset how this litigation may implicate its interests.  Uber chose to hire Ergo, rather than intervene in this action, and Uber should bear the

consequences of that choice.

Uber's motion to intervene, whether by right or by permission, is untimely.  Thus, the

Court must deny Uber's motion.  *See NAACP*, 413 U.S. at 365 ("Whether intervention be

claimed of right or as permissive . . . [i]f it is untimely, intervention *must be denied*.") (emphasis

added).

> ### D.      Uber Has No Legally Protectable Interest in this Action

In addition to being untimely, Uber's motion fails to satisfy the remaining elements of

Rule 24(a)(2).  Under Rule 24(a)(2), Uber must "claim[] an interest relating to the property or

transaction that is the subject of the action . . . ."  Fed. R. Civ. P. 24(a)(2).  "[F]or an interest to

be 'cognizable' under Rule 24, it must be 'direct, substantial, and legally protectable.'"  *Floyd*,

770 F.3d at 1060.  "In other words, an interest that is remote from the subject matter of the

proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes

colorable, will not satisfy the rule."  *Id.* (internal quotation and alteration omitted).  As *Moore's*

*Federal Practice* explains:

> [N]on-property interests usually are not sufficient to support intervention as of
> right. Even if an interest is arguably economic in nature, it may not be sufficient.
> A claim based only on an indirect economic effect of some action is rarely
> considered the same as a protectable right or interest sufficient to justify
> intervention.

6 Moore's Federal Practice § 24.03[2][b] (Matthew Bender 3d Ed.).  Uber's purported interests

are both too indirect and too contingent to support intervention at this late juncture.

> ### 1.      Uber Does Not Have a Legally Protectable Interest in Compelling
> ### Plaintiff to Arbitrate His Claims Against Defendant

Uber has no legally protectable interest in compelling Plaintiff to arbitrate his claims

against Defendant.  As an initial matter, Defendant has repeatedly stated that he does not seek to

compel arbitration in this action, despite his coordination of legal strategy with Uber.  *See supra*

Relevant Facts part C.  Nevertheless, Uber claims that it has a "profound legal interest" in enforcing the arbitration provision contained in its User Agreement.  Uber Mem. at 8.  Courts have held, however, that a non-party's desire to intervene solely for the purposes of staying the proceedings and compelling arbitration does <u>not</u> constitute a protectable legal interest under Rule 24.

*Liz Claiborne* is instructive.  There, plaintiff, which employed union workers, sued a garment manufacturer for, among other relief, a declaration that plaintiff "is no longer obligated to business with" the Defendant, which was also a union shop.  1996 U.S. Dist. LEXIS 8847, at **2-5.  A labor union sought to intervene.  *Id.* at **3-4.  The union had entered into a collective bargaining agreement to which plaintiff was bound, and that agreement "require[d] arbitration of any and all disputes."  *Id.* at *3.  Faced with the possibility of plaintiff transferring "the job to a non-Union shop" (*Id.* at *8), the union sought "a stay of proceedings on the issue of [plaintiff's] requested relief pending the arbitration of that issue," in order to "protect its members and preserve the integrity of the CBA" (*Id* at *5-7).  The court denied intervention, finding that the union failed to claim a protectable interest for purposes of Rule 24:

> The Union claims that it has an interest in arbitration which [defendant] cannot represent, since it is not a party to the CBA.  Notwithstanding judicial deference toward arbitration . . . the ***Union does not have an 'interest' in arbitration for the purpose of Rule 24***.  Although there is no clear consensus as to what constitutes an 'interest' under Rule 24(a)(2), . . . the plain language of the rule indicates that the 'interest' must pertain to 'the property or transaction' that comprises 'the subject of the action.'  Thus, ***absent an ongoing or pending arbitration, the Union does not have an ['][i]nterest' in compelling arbitration***.

*Id.* at *9 (emphasis added) (internal citations omitted).

Similarly, in *DSMC Inc. v. Convera Corp.*, 273 F. Supp. 2d 14 (D.D.C. 2002), the court found that a non-party's interest solely in moving to stay the plaintiff's litigation against the defendant pending arbitration between the plaintiff and that non-party did not constitute "a

legally cognizable interest" sufficient under Rule 24(a).  The court explained that where the non-party is "asserting no claim or defense in this case, but only moving to request a stay [pending arbitration]," that non-party fails "to satisfy the requirement that 'an applicant's claim or defense and the main action have a question of law or fact in common.'"  *Id.* at 27; *see also Twist v. Arbusto*, No. 4:05-cv-0187-JDT-WGH, 2007 U.S. Dist. LEXIS 702, at *12 (S.D. Ind. Jan. 3, 2007) (denying motion to intervene where non-parties asserted Rule 24 protectable interest because they were "entitled to arbitration by the terms of the arbitration agreements").[12]

Here, as in *Liz Claiborne* and *DSMC*, Uber's purported interest in enforcing the arbitration provision embedded in Uber's User Agreements does not "pertain to the property or transaction that comprises the subject of [this] action." *Liz Claiborne*, 1996 U.S. Dist. LEXIS 8847, at *9 (internal quotation marks omitted).  This is not an action against Uber relating to the performance of the User Agreement; rather, this is an antitrust action against Defendant.  Uber's supposed interest is not even to compel arbitration of claims brought against the company – it is to compel arbitration of Plaintiff's claims against Defendant, despite the fact that he is not a signatory to the User Agreement, Plaintiff's claims do not arise under the User Agreement, Defendant is not named in the arbitration clause, and Defendant has stated that he would not seek

---

[12]    The cases Uber cites in support of its argument are inapposite.  Uber cites only one case suggesting that an arbitration agreement can constitute a protectable interest for purposes of Rule 24, and that case is meaningfully distinguishable from the present case.  In *Tech & Intellectual Prop. Strategies Group PC v. Insperity, Inc.*, No. 12-CV-03163-LHK, 2012 U.S. Dist. LEXIS 170714 (N.D. Cal. Nov. 29, 2012) (cited at Uber Mem. 9-10), plaintiff brought a breach of contract action against a non-signatory.  The court allowed the signatory to intervene and to enforce its arbitration rights under the contract, which constituted "the transaction that [was] the subject of [the] action." *Id.* at *18-19.  Here, Plaintiff is not seeking to enforce any terms of the User Agreement and therefore the User Agreement is not the "subject of the action."  Neither *Mosca v. Doctors Assocs., Inc. v. Stuart*, 852 F. Supp. 152 (E.D.N.Y. 1993), nor *National Union Fire Insurance Co. of Pittsburgh, PA v. Konvalinka*, No. 10-9355, 2011 WL 13070859 (S.D.N.Y. Mar. 17, 2011), are Rule 24 intervention cases.  In both *Mosca* and *Konvalinka*, named parties moved to dismiss or, in the alternative, to stay the case pending arbitration.

arbitration.  Simply put, Uber's desire to force the parties into arbitration does not constitute a distinct legally protectable interest that warrants intervention.

### 2.   Plaintiff Does Not Seek to Enjoin Uber's Driver-Partner Agreements

Uber's argument that intervention is warranted due to Uber's purported interest in defending its driver-partner agreements in arbitration is premised on Uber's mischaracterization of the relief that Plaintiff seeks in this action. Contrary to Uber's suggestion (*see* Uber Mem. at 12-13), as explained above, Plaintiff is not seeking to enjoin Uber's driver-partner agreements. *See supra* part I.C.3.

Moreover, any purported potential impact from this litigation on Uber's driver-partner agreements is too indirect and contingent to justify intervention under Rule 24.  Intervention as of right under Rule 24 is not appropriate where the claimed contractual interest would be affected "only indirectly" by the litigation.  *Liz Claiborne*, 1996 U.S. Dist. LEXIS 8847, at *10; *Mastercard*, 471 F.3d at 386 (finding no protectable interest to justify intervention or joinder where non-party's contract "may be affected by this litigation, [but] is not the contract at issue in [the instant] lawsuit.")  In this regard, *Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690 (2d Cir. 1980), cited by Uber, *see* Uber Mem. at 12-13, is inapposite for precisely the reason that the Second Circuit previously distinguished it in *Mastercard*: "In *Crouse-Hinds*, the actual contract involving the absent third party was the basis of the claim." *MasterCard*, 471 F.3d at 386. *Crouse-Hinds* was decided based on the principle that "in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." *Crouse-Hinds*, 634 F.2d at 701 (quoting *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975)). That case, as well as the other cases that Uber cites, do not compel the same result

here, where Uber's driver-partner agreements will not be set aside as a result of this case.[13]

### 3.   Uber Will Not Be Collaterally Estopped by Rulings Against Defendant in This Case

Uber's assertion that intervention is warranted because, absent intervention, Uber may be bound in future cases by rulings against Defendant in this case, is meritless for the same reasons as Defendant's parallel argument for joinder.  *See supra* part I.C.2.  Like Defendant, Uber fails to cite a single case holding that intervention by a co-conspirator was required in an antitrust case due to offensive collateral estoppel concerns.[14]  Nor will Uber be collaterally estopped by rulings against Defendant merely because he is one of Uber's officers, directors, and shareholders.  *See* 18A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4460 (2d ed. 2002) ("Corporations are treated as entities separate from their officers, directors, and shareholders for purposes of preclusion just as for other purposes.  Without more, a judgment entered in an action against any one of them is not binding on any other.").  Uber does not cite any authority applying offensive collateral estoppel to a corporation based on rulings against a

---

[13]    *See* Uber Mem. at 13 (citing *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 545 (1st Cir. 2006) ("appellees' proposed remedy [was] an injunction requiring specific performance of the agreements" to which putative intervenor was a party); *United States ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 479 (7th Cir. 1996) (complaint sought "[a] judicial declaration as to the validity of a contract" to which non-party was a signatory)).  Unlike those cases, this is not an action to set aside any agreements to which Uber is a party, and any asserted potential effect is too indirect to justify intervention.

[14]    The cases cited by Uber are all inapposite.  Neither *Diduck v. Kaszycki & Sons Contractors, Inc.*, 149 F.R.D. 55 (S.D.N.Y. 1993), *Takeda v. Northwest National Life Insurance Co.*, 765 F.2d 815 (9th Cir. 1985), *National Resources Defense Council, Inc. v. U.S. Nuclear Regulatory Commission*, 578 F.2d 1341 (10th Cir. 1978) (cited at Uber Mem. 13-14), nor *Messerchmitt-Boelkow-Blohm GmbH v. Hughes Aircraft Co.*, 483 F. Supp. 49 (S.D.N.Y. 1979) (cited at Uber Mem. 18) involved the application of collateral estoppel to a co-conspirator.  And, neither *Z&B Enterprises, Inc. v. Tastee-Freez International, Inc.*, 162 F. App'x 16 (1st Cir. 2006), *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 559 (5th Cir. 1985), nor *Spirt v. Teachers Insurance & Annuity Association of America*, 416 F. Supp. 1019 (S.D.N.Y. 1976) (cited at Uber Mem. at 14-15), involved collateral estoppel at all.

corporate officer, director, or shareholder in a prior action.[15]

### E.     This Action Will Not Impair or Impede Uber's Ability to Protect Its Interest

Uber posits four ways in which this action would impair or impede its ability to protect its putative interests.  First, although "Uber does not concede that it would be bound by any relief granted to Plaintiff in the unlikely event he prevails in Uber's absence," Uber believes "the fact that it is even remotely possible suffices to show that Uber's interests would be impaired if it is not allowed to intervene."  Uber Mem. at 16.  As explained above, relief obtained in this case will be against Mr. Kalanick, not Uber, and Uber will not be bound by it.  *See supra* part I.B.

Second, Uber asserts that "permitting this case to proceed to a merits determination without allowing Uber to invoke arbitration would impair Uber's interest in enforcing the [arbitration] provisions of the User Terms."  Uber Mem. at 16.  As explained above, Uber's purported interest in compelling arbitration of Plaintiff's claims against Mr. Kalanick is not a legally protectable interest.  *See supra* part II.D.1.

Third, Uber argues its interests will be impaired if it "will potentially be forced to undergo repetitive litigation to defend its business model."  Uber Mem. at 16.  Uber's purported concern of "repetitive litigation" is belied by the very fact that Uber, through a contract of adhesion, forces its users to agree to resolve disputes with Uber through serial, bilateral arbitration.  *See supra* part I.D.  Regardless, Uber cites no authority holding that avoiding

---

[15]     In *Universal Furniture International, Inc. v. Frankel*, 538 F. App'x 267 (4th Cir. 2013) (cited at Uber Mem. at 17), the situation was reversed: offensive collateral estoppel was applied to the defendant owner/officer based on rulings against the corporation in a prior action.  Further, the court held that collateral estoppel would only apply if the defendant was in privity with the corporation *and* if he had a "full and fair opportunity" to litigate the prior action.  *Id.* at 270.  In finding that the defendant had a "full and fair opportunity" to litigate his claims, the court noted that defendant was the corporation's designated Rule 30(b)(6) deposition witness, its "sole in-court corporate representative" at trial, and was the only "employee to submit any sworn statements on its behalf."  *Id.* at 269.  This case is inapposite.

potential repetitive litigation is a proper basis to require intervention under Rule 24.

Finally, Uber argues that "if this case is resolved on the merits in a judicial proceeding, future plaintiffs will argue that Uber and Mr. Kalanick are in privity and thus that a finding of antitrust liability against Uber's CEO estops Uber from contesting its own liability as a co-conspirator in a future action naming the Company."  Uber Mem. at 17-18.  As explained above, there is no reasonable basis to conclude that Uber would be subject to offensive collateral estoppel on rulings made against Mr. Kalanick in this case absent intervention.  *See supra* part I.C.2; II.D.3.

### F.     Defendant Adequately Represents Uber's Interests

Uber claims that it satisfies the final prong of Rule 24(a) because its "interest in enforcing the arbitration provisions is not adequately represented by the parties to this action." Uber Mem. at 18.  Uber's argument is meritless – the company's ability to enforce its arbitration provisions is not at issue in this case.  And, as explained above, Uber has no legally protectable interest in compelling Plaintiff to arbitrate his claims against Defendant.  *See supra* II.D.1.

### G.     The Court Should Deny Permissive Intervention Because Uber Does Not Have a Defense That Shares a Common Question of Law or Fact with the Main Action and Intervention Would Unduly Delay Adjudication

The Court should also deny permissive intervention under Rule 24(b).  The Court may permit intervention where the movant (1) makes a "timely motion," and (2) "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1).  In exercising its discretion, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).  "[C]onsiderations of trial convenience dominate the question of whether to allow permissive intervention." 6 Moore's Federal Practice § 24.10[1].  Courts also consider "whether

parties seeking intervention will *significantly contribute* to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal question presented." *H.L. Hayden Co. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986) (emphasis added and internal quotation omitted).

As explained above (*see supra* part II.C.), Uber's Motion to Intervene is untimely; therefore, the Court *must* deny permissive intervention. *See NAACP*, 413 U.S. at 365 ("Whether intervention be claimed of right or as permissive . . . [i]f it is untimely, intervention *must be denied*.") (emphasis added).

Moreover, Uber's intervention will not result in efficiencies; on the contrary, it will unduly prejudice the parties and interfere with the Court's schedule, which requires that the case be ready for trial by November 1, 2016 – less than five months from now.  Assuming, *arguendo*, that Uber is successful in its motion to intervene as well as its motion to dismiss or stay the case and to compel arbitration, this could very well delay Plaintiff's right to a timely adjudication of its antitrust class action claims against Defendant Kalanick.  *See Liz Claiborne*, 1996 U.S. Dist. LEXIS 8847 (denying permissive intervention where "[a]t least some delay could result from the Union's intervention, given its commitment to move this dispute to arbitration").  Further, the User Agreement's arbitration provision ensures that disputes brought by users against Uber will be adjudicated on a piecemeal, bilateral basis.  There could be no less efficient way for Uber to resolve its disputes.[16]

---

[16]     Uber's motion is also procedurally defective.  Under Rule 24(c), Uber was required to file a pleading that identified the defenses for which intervention is sought, and, in the context of permissive intervention, "shares with the main action a common question of law or fact."  *See* Fed. R. Civ. P. 24(b)(1)).  But Uber's motion to compel arbitration does not identify any.  Uber seeks intervention only "for the limited purpose" of "mov[ing] the Court for an order dismissing these proceedings in favor of arbitration" or, in the alternative, "stay[ing] this action pending completion of arbitration proceedings . . . ."  Uber Mem. at 1.  This defense does not share a

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny

Defendant's motion for joinder of Uber, and Uber's motion to intervene.

Dated: New York, New York
      June 6, 2016

HARTER SECREST & EMERY LLP
Brian Marc Feldman
Jeffrey A. Wadsworth
Edwin M. Larkin
1600 Bausch & Lomb Place
Rochester, New York 14604
Tel: (585) 232-6500
Fax: (585) 232-2152
bfeldman@hselaw.com
jwadsworth@hselaw.com
elarkin@hselaw.com


MCKOOL SMITH
John Briody
James H. Smith
One Bryant Park, 47th Floor
New York, New York 10036
Tel: (212) 402-9400
Fax: (212) 402-9444
jbriody@mckoolsmith.com
jsmith@mckoolsmith.com

CONSTANTINE CANNON LLP

    /s/ Matthew L. Cantor
Matthew L. Cantor
David A. Scupp
335 Madison Avenue
New York, New York 10017
Tel: (212) 350-2700
Fax: (212) 350-2701
mcantor@constantinecannon.com
dscupp@constantinecannon.com


ANDREW SCHMIDT LAW PLLC
Andrew Arthur Schmidt
97 India Street
Portland, Maine 04101
Tel: (207) 619-0320
Fax: (207) 221-1029
andy@maineworkjustice.com

CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP
Bryan L. Clobes
Ellen Meriwether
1101 Market Street, Suite 2650
Philadelphia, Pennsylvania 19107
Tel: (215) 864-2800
Fax: (215) 864-2800
bclobes@caffertyclobes.com

---

common question of law or fact with Plaintiff's antitrust claims against Defendant because Plaintiff is not seeking to enforce the User Agreement in this case, and Defendant has repeatedly confirmed that he does not seek to compel arbitration here.  *See supra* Relevant Facts part C; *see also DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14 (D.D.C. 2002) (quoting Fed. R. Civ. P. 24(b)) ("Because [non-party] was asserting no claim or defense in this case, but only moving to request a stay [pending arbitration], [non-party] failed to satisfy the requirement that 'an applicant's claim or defense and the main action have a question of law or fact in common.'").

emeriwether@caffertyclobes.com

*Counsel for Plaintiff Spencer Meyer*