USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/7/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SPENCER MEYER, individually and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>-v-<br><br>TRAVIS KALANICK,<br><br>Defendant. | 15 Civ. 9796<br><br>MEMORANDUM ORDER |

JED S. RAKOFF, U.S.D.J.

The Court is currently presiding over a putative class action antitrust suit brought by plaintiff Spencer Meyer against defendant Travis Kalanick, CEO of Uber Technologies, Inc. ("Uber"). On June 2, 2016, Uber, which is not at present a party to the case (though it has recently moved to intervene), made a motion for reconsideration of the Court's order directing Uber to produce certain documents for the Court's _in camera_ review. Plaintiff Meyer opposed Uber's motion on June 3, 2016, and the Court denied the motion by email dated June 3, 2016.[1] This Memorandum Order confirms the denial of Uber's motion for reconsideration and explains the Court's reasons for its decision.

[1] Uber's letter seeking reconsideration ("Uber June 2 Letter") and plaintiff's letter opposing reconsideration ("Pl. June 3 Letter") will be docketed along with this Memorandum Order.

By way of background, on May 20, 2016 and May 27, 2016, the Court held in-court hearings addressing, in large part, plaintiff's claim that defendant Kalanick and/or other Uber personnel had hired a company called Global Precision Research, LLC d/b/a Ergo ("Ergo") to conduct an investigation of plaintiff and of plaintiff's counsel Andrew Schmidt, and that an Ergo investigator, in order to obtain information about plaintiff and plaintiff's counsel, lied to third parties, for example, by misrepresenting why he was making inquiries. See Transcript dated May 20, 2016 ("May 20 Tr.") at 4:4-8; 8:1-8; Transcript dated May 27, 2016 ("May 27 Tr.") at 18:15-19:14. Plaintiff contended, for instance, that an individual from Ergo contacted professional colleagues of plaintiff's counsel Mr. Schmidt and, in order to gain access to information about Mr. Schmidt, falsely stated that he was compiling a profile of up-and-coming labor lawyers in the United States. See May 20 Tr. at 2:16-3:7, 8:1-9. Plaintiff's counsel further claimed that when he raised the matter with defense counsel in January 2016, defense counsel inaccurately stated "whoever is behind these calls, it is not us," and that only in mid-February, when plaintiff's counsel was about to make an application to the Court concerning the matter,

did defense counsel acknowledge that Uber had hired Ergo to conduct the investigation. Id. at 8:13-10:5.[2]

In response, defendant Kalanick's counsel acknowledged that Uber had hired Ergo to conduct an investigation concerning plaintiff. See id. at 3:19-21, 4:4-8; see also Def. May 20 Letter.[3] However, defense counsel stated that her co-counsel had conveyed this information to plaintiff's counsel as soon as he became aware of it. See May 20 Tr. at 3:18-23. Subsequently, however, both Uber and Ergo, while confirming the investigation, represented that Uber did not direct Ergo to make any misrepresentations in the course of the investigation and that any such misrepresentations were the fault, if any, of a misguided Ergo employee. See May 27 Tr. at 25:24-26:3, 27:15-25; Uber June 2 Letter at 5.

As is obvious from the above brief summary, there is a strong suggestion that, at a minimum, an Ergo investigator hired by Uber in connection with this case made false representations in order to gain access to information about plaintiff and his counsel, thus raising a serious risk of perverting the processes

[2] Plaintiff's counsel stated that it was his understanding from the mid-February conversation with defense counsel that defendant Kalanick had hired Ergo. See May 20 Tr. at 9:22-10:1. Defense counsel denied that they had represented to plaintiff that Mr. Kalanick himself was involved. See id. at 14:18-22.

[3] This letter from defense counsel was sent, at the Court's instruction, on May 20, 2016, identifying several individuals at Uber and Ergo who had been involved in arranging and conducting the investigation. The letter ("Def. May 20 Letter") will be docketed along with this Memorandum Order.

of justice before this Court. See May 20 Tr. at 13:5-8. In order to aid in determining the truth of the matter, the Court therefore approved plaintiff's request to take the depositions of individuals at Uber and Ergo who arranged or conducted the investigation. See id. at 12:1-8. The Court further permitted plaintiff to serve subpoenas for relevant documents on Uber and Ergo prior to taking these depositions. See id. at 15:2-9.

After plaintiff's document and deposition subpoenas were served, both Uber and Ergo, each via their own counsel, objected to several of the items in these subpoenas in a telephone conference on May 26, 2016. The Court therefore held an in-court hearing on May 27, 2016 to address the objections, which were made largely on grounds of privilege and scope. See May 27 Tr. at 4:6-5:12. As to the deposition subpoenas, the Court authorized plaintiff to depose the following individuals: Craig Clark, Legal Director, Security and Enforcement at Uber; Mat Henley, a security official at Uber; Miguel Santos-Neves, the individual at Ergo who, according to defense counsel, conducted the investigation concerning plaintiff; Todd Egeland of Ergo, who, according to Ergo's counsel, tasked Mr. Santos-Neves with conducting the investigation; and Joe Sullivan, Chief Security Officer at Uber. See id. at 6:24-7:5, 9:5-8; 12:10-25; see also Def. May 20 Letter. Plaintiff also sought to depose Uber's General Counsel, Sally Yoo, but the Court indicated that it

would need to review certain communications in camera before ruling on this application. See May 27 Tr. at 9:10-11:24. As to the document subpoenas, the Court narrowed the scope of plaintiff's requests, as reflected in an Order dated May 27, 2016. See Order dated May 27, 2016, Dkt. 63.[4]

Most relevant to the instant controversy is that the Court, at the May 27 hearing, ordered Uber to produce to the Court for in camera review those documents that were responsive to plaintiff's subpoena (as narrowed by the Court), as to which Uber claimed privilege. See May 27 Tr. at 4:11-21. The purpose of this review, the Court indicated, would be to determine whether the attorney-client privilege or other privilege-like doctrines (especially work-product) were correctly asserted, and, if so, whether the crime-fraud exception to the assertions of privilege applied. See id. Plaintiff would then have access to such documents, if any, to which, according to the Court's determinations, privilege did not attach.

By letter dated June 2, 2016, Uber sought reconsideration of the Court's ruling on in camera review. Uber instead proposed that plaintiff first review Ergo's non-privileged documents and

[4] After the Court's order accompanying the subpoenas was docketed on May 27, 2016, the Court conveyed to the parties two further changes to the scope of plaintiff's document subpoenas. Specifically, by telephone conference on May 27, 2016, the Court indicated that the beginning of the time frame for the document requests would be December 15, 2015. By telephone conference on June 2, 2016, the Court struck all mentions of "background research" from document request 7 of plaintiff's document subpoena served on Uber.

depose Ergo personnel. See Uber June 2 Letter at 2. Only if plaintiff then made a showing that Uber was involved in any alleged crime or fraud, Uber argued, should Uber be required to produce documents for the Court's in camera review or to produce its personnel for depositions. See Uber Letter at 2, 8. Plaintiff Meyer opposed Uber's motion by letter dated June 3, 2016. By email dated June 3, 2016, the Court informed the parties that the Court was denying Uber's motion for reconsideration. This Memorandum Order confirms that denial and explains the reasons for it.

At the outset, the Court finds that Uber's motion for reconsideration fails to meet the "strict" standard for such a motion. Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995). But even on the merits, Uber has raised no persuasive reason to avoid the Court's in camera review.[5]

As a general matter, it is commonplace for a court to review in camera the subpoenaed documents as to which an assertion of privilege has been raised in order to see whether

[5] Even as an initial matter, it is far from obvious that the Uber documents at issue are, in fact, privileged. For example, it appears likely that at least some of the Uber communications at issue may not have been "made for the purpose of obtaining or providing legal advice." In re Cty. of Erie, 473 F.3d 413, 418 (2d Cir. 2007). Plaintiff notes that defense counsel wrote plaintiff's counsel on March 29, 2016 indicating that "[p]laintiff's strategic decision to sue Mr. Kalanick in his personal capacity triggered a series of events that resulted in an investigation to determine whether this lawsuit posed a safety issue for Mr. Kalanick." See Pl. June 3 Letter, Exhibit A. Plaintiff argues that Uber communications regarding defendant Kalanick's safety do not involve legal advice and so are not shielded by the attorney-client privilege. See Pl. June 3 Letter at 2.

the privilege has been properly asserted. Indeed, the Supreme Court has expressly endorsed such a practice. See United States v. Zolin, 491 U.S. 554, 569 (1989). Such a practice applies not just to documents withheld on the basis of attorney-client privilege but also, inter alia, work product protection under Fed. R. Civ. P. 26(b)(3)(A). See In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 184 (2d Cir. 2007).

In the instant situation, moreover, the Court views in camera review as essential to determine the application vel non of the crime-fraud exception. It is, of course, necessary for the party asserting such an exception to "present evidence sufficient to support a reasonable belief that in camera review may yield evidence that establishes the exception's applicability." Zolin, 491 U.S. 574-75. More specifically, as the Second Circuit has explained, "the proposed factual basis" proffered by the party opposing the privilege "must strike a prudent person as constituting a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." United States v. Jacobs, 117 F.3d 82, 87 (2d Cir. 1997), abrogated on other grounds by Loughrin v. United States, 134 S. Ct. 2384 (2014) (internal quotation marks omitted). Then, "[o]nce there is a showing of a factual basis, the decision whether to engage

in an in camera review of the evidence lies in the discretion of the district court." Id.

Here, the Court finds that plaintiff has provided an entirely "reasonable basis" to suspect the perpetration of a fraud and to suspect that Uber communications furthered such a fraud. Defendant has stated - and Uber has effectively confirmed - that employees of Uber "initiated an investigation concerning the plaintiff in this case," and that Ergo was retained by Uber's Legal Director of Security and Enforcement, Craig Clark. See Def. May 20 Letter. Plaintiff has also provided ample grounds to believe that Ergo conducted an investigation of plaintiff and his counsel. See Pl. June 3 Letter; May 20 Tr. at 3:18-23, 8:3-10; May 27 Tr. at 25:19-26:8. Indeed, Ergo's counsel represented in court that the investigation, as he understood it, was "for the purpose of gathering intelligence for the party about the motivations of this particular plaintiff and why he was bringing this particular litigation," May 27 Tr. at 26:5-8. Moreover, plaintiff has offered substantial grounds to believe that the Ergo investigator made material misrepresentations in the course of conducting his investigation. See, e.g., May 20 Tr. at 8:1-8; see also May 27 Tr. at 26:1-3. Uber, for its part, acknowledges that Uber personnel gave "instructions or assignments" to Ergo and "were involved in engaging and instructing Ergo." Uber June 2 Letter

at 3-4. All this provides a reasonable factual basis to suspect that a fraud occurred and that Uber's communications may have been in furtherance of it. See Jacobs, 117 F.3d at 87.

Additionally, another relevant area of inquiry, as the Court has previously indicated, is whether Uber or defendant Kalanick, or their counsel, made misrepresentations in response to plaintiff's initial inquiries about the investigation. See May 27 Tr. at 8:18-22. Uber now acknowledges that it "mistakenly represented to Plaintiff that it had not hired Ergo," Uber June 2 Letter at 7, and plaintiff's counsel has produced a letter from defense counsel dated January 20, 2016 stating "I followed up. Whoever is behind these calls, it is not us." Pl. June 3 Letter, Exhibit C. While Uber and defense counsel may be correct that these misrepresentations were inadvertent mistakes, neither plaintiff nor the Court can be expected simply to rely on their statements to this effect. These previous denials about Uber's involvement in hiring Ergo also underscore why the fact-finding process cannot merely be replaced by Uber's representation, in its motion for reconsideration, that Uber "is certain that Plaintiff's depositions of Ergo personnel and their review of Ergo documents will disclose that Uber neither directed nor had notice of any misrepresentations by the Ergo investigator." Uber June 2 Letter at 5.

In sum, plaintiff has provided sufficient evidence to provide a "prudent person" with "a reasonable basis to suspect" that a fraud took place and that Uber communications "were in furtherance thereof." Jacobs, 117 F.3d at 87. Put differently, plaintiff has presented "evidence sufficient to support a reasonable belief that in camera review may yield evidence that establishes the exception's applicability." Zolin, 491 U.S. at 574. Of course, the Court has no way to know prior to reviewing the documents in question whether or not the crime-fraud exception does in fact apply to some or all of the documents. But plaintiff has made its threshold showing, and the determination whether privilege has been correctly asserted must now be made through in camera review, after which any materials judged not to be privileged will be disclosed to plaintiff. Such an incremental approach "strikes the correct balance," id. at 572, between the important values supporting the attorney-client privilege, see id. at 562, and the need to ensure that the privilege does not extend so far that it shields communications made in furtherance of a fraud or a crime, see id. at 563.

For all these reasons, the Court confirms its denial of Uber's motion for reconsideration of the Court's order requiring Uber to produce documents for in camera review.

SO ORDERED.

Dated: New York, NY
June 7, 2016

JED S. RAKOFF, U.S.D.J.