# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Daniel G. Swanson
Direct: +1 213.229.7430
Fax: +1 213.229.6430
DSwanson@gibsondunn.com



June 2, 2016

VIA ELECTRONIC MAIL

The Honorable Jed. S. Rakoff
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:   *Spencer Meyer v. Travis Kalanick, No. 15-CV-09796 (JSR)*

Judge Rakoff:

Even with the limitations imposed by the Court, Plaintiff's subpoena remains vastly overbroad and seeks to parlay a discrete issue into a gross invasion of Uber's privileged communications and work product. Having now had the opportunity to collect and review documents responsive to the modified subpoena, Uber respectfully requests that the Court reconsider its May 27 Order requiring Uber to produce privileged documents for *in camera* review. Uber does not make this request lightly. However, given Uber's compelling interest in vigorously defending the sanctity of its privileged communications, Uber submits that Plaintiff must be required to comply with his obligation to demonstrate a factual basis for invoking the crime-fraud exception before the Court undertakes an *in camera* review of all privileged materials responsive to Plaintiff's subpoena to Uber. *See United States v. Zolin*, 491 U.S. 554, 572 (1989); *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997), *abrogated on other grounds by Loughrin v. United States*, 134 S.Ct. 2384 (2014).

The Court's Order of *in camera* review of all privileged documents responsive to even the pared-down Uber subpoena "place[s] the policy of protecting open and legitimate disclosure between attorneys and clients at undue risk," *Zolin*, 491 U.S. at 571, and does not cure the prejudice to Uber. That risk is particularly acute—and unnecessarily so—where there is no "factual basis adequate to support a good faith belief by a reasonable person . . . that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Id.* at 572 (internal quotation marks and citation omitted). Indeed, counsel for Ergo has already represented to the Court that there "was no direction by Uber to engage in any kind of fraud or deception or misrepresentation." May 27, 2016, Reporter's Transcript ("RT (May 27, 2016)") at 25-26. Examination of Ergo documents and depositions of Ergo employees will provide ample evidence of the truth of

# GIBSON DUNN

The Honorable Jed. S. Rakoff
June 2, 2016
Page 2

Ergo's representations, and will show conclusively that Uber had no involvement in any crime or fraud, obviating the need for further discovery.

Thus, Uber submits that the Court should defer any *in camera* review of documents responsive to the Uber subpoena. Plaintiff should first seek to obtain documents from and depositions of Ergo personnel, subject to the assertion of any attorney-client privilege. If those depositions show that the Ergo investigator acted without the instruction, knowledge and/or consent of Uber, then there is no basis for application of the crime-fraud exception to pierce the attorney-client and work product privileges and no basis for *in camera* review of Uber's privileged documents. After all, Uber's privileged communications cannot be in furtherance of any alleged crime or fraud by the investigator if Uber never approved of or knew about the alleged crime or fraud.

If, however, Plaintiff can show (based on Ergo documents and depositions) that there is probable cause that Uber knew about or approved of any use of false pretenses, then Uber will not object to an *in camera* inspection of its privileged documents. Uber respectfully submits that this procedure complies with the law and promotes the Court and the parties' interest in fairly and efficiently evaluating the merits of Plaintiff's invocation of the crime-fraud exception, while avoiding an unnecessary and expansive *in camera* review of Uber's documents.

Uber's proposed revised procedure will not result in any meaningful delay. Ergo depositions are scheduled for June 14 and 15. Should Plaintiff meet its burden, the Court can conduct *in camera* inspection of Uber's privileged documents before June 20, and the depositions of Uber employees can proceed during the week of June 20.

## FACTUAL AND PROCEDURAL BACKGROUND

This Court held a hearing on May 20, 2016 to address Plaintiff's assertions that either Defendant Travis Kalanick and/or Uber hired an investigator from Global Precision Research, LLC, or "Ergo," who had contacted associates of Plaintiff and one of his attorneys. Plaintiff claims that the investigator assigned to this matter asked background questions about Plaintiff and his attorney and concealed the true purpose of his inquiry. May 20, 2016, Reporter's Transcript ("RT (May 20, 2016)") at 2-3. At the hearing, Plaintiff identified two concerns arising from this alleged misconduct: (1) the potential for "professional/reputational harm to [Plaintiff]" from the inquiries; and (2) the need to have "assurances that this won't

# GIBSON DUNN

The Honorable Jed. S. Rakoff
June 2, 2016
Page 3

happen again in this litigation." *Id.* at 7. Plaintiff did not identify any specific harm or prejudice arising from the contacts.[1]

During the hearing, the Court noted that there is nothing inherently unlawful about performing a background check on an adversary or an adversary's counsel. *Id.* The Court framed the issue as follows: "My concern is whether a party, directly or indirectly, to this litigation is making use of false pretenses to obtain information for the purpose of enhancing their position in this litigation." *Id.* at 13-14 (emphasis added). The Court suggested an efficient approach to answer this question: "[T]he sensible thing would be to take the depositions of . . . the person at Uber who first arranged this; and second, the person or persons at Ergo who conducted and were involved in the investigation." *Id.* at 12. Plaintiff's counsel responded that the Court's proposal "sounds like a very efficient way to discover the important information," but asked for leave to subpoena "relevant documents" prior to the depositions. *Id.* at 15. The Court granted Plaintiff the requested leave. *Id.* at 16. Following the hearing, on May 24 and 25, Plaintiff served two document subpoenas and five deposition subpoenas on Uber and Ergo.

On May 25, in an effort to compromise and expeditiously resolve this dispute, Uber proposed a limited waiver of privilege and offered the following:

- Produce documents (including emails) reflecting the instructions or assignments given to Ergo in regard to this case by Uber personnel;

- Produce the email from Uber General Counsel Salle Yoo to Joe Sullivan dated December 16, 2015, constituting the request that precipitated the investigation. Neither Ms. Yoo nor Mr. Sullivan had communication with Ergo on this matter and their depositions are unnecessary (and, in the case of Ms. Yoo, improper) because they have no relevant information.

---

[1] Prior to the hearing, Mr. Kalanick's counsel provided Plaintiff with: (1) accurate assurances that Ergo had ceased its investigative activities; (2) a list of the names and contact information for any individual contacted by Ergo; and (3) the date and method of communication for each contact. Following the hearing, Defendant's counsel provided the names and titles of three Uber employees who were involved in the retention of Ergo, and provided the name of the sole investigator at Ergo assigned to the investigation. The name of a fourth individual, discovered during the factual inquiry, was promptly provided to Plaintiff.

# GIBSON DUNN

The Honorable Jed. S. Rakoff
June 2, 2016
Page 4

- Produce two Uber witnesses for deposition (Craig Clark and Mat Henley) who were involved in engaging and instructing Ergo.

- Not object to the deposition of the Ergo investigator, Miguel Santos-Neves.

- Not assert privilege (subject to the agreement discussed above) to deposition questions seeking the instructions or assignments given to Ergo or the investigator's communications with third parties in this case (i.e., the alleged misrepresentations).

Plaintiff rejected this offer without any counter-offer.

On May 27, the Court convened a hearing regarding Plaintiff's subpoenas. The Court emphasized that there had been a "misunderstanding" on the part of Plaintiff's counsel, resulting in overbroad and burdensome requests. RT (May 27, 2016) at 5. Furthermore, the Court stated that Uber's offer was a "very sensible and professional thing," *id.* at 24, and questioned why Plaintiff had refused the offer, particularly considering the Court's concern that the parties "not ... get bogged down, as apparently we now are, on fights over documents" because depositions would be "the most fruitful kind of discovery for this situation," *id.* at 5. The Court then provided counsel copies of the marked-up subpoena, indicating what Uber and Ergo must produce. *Id.*

At the hearing, the Court explained it was concerned with, first, whether "fraudulent misrepresentations were made by Ergo to persons who were being contacted to dig up negative information about the plaintiff and the plaintiff's counsel[.]" *Id.* at 8. Second, the Court noted its concern over "whether that was being done at the behest of [or] with the knowledge of Uber and/or Mr. Kalanick or both." *Id.* Finally, the Court posed the question whether "false representations were made by Uber or by Mr. Kalanick or their counsel to plaintiff's counsel about what was actually transpiring." *Id.*

With regard to the first two concerns, counsel for Ergo made "clear" that "there was no direction by Uber to engage in any kind of fraud or deception or misrepresentation, and to the extent that the investigator misrepresented any fact, it wasn't about who he was, rather it was about the purpose of his questions." *Id.* at 25-26. Counsel for Ergo further described his understanding was "there's been only one other project between [Ergo and Uber], that these practices were not used, that the investigator who said what he said in this circumstance did that without anybody else's knowledge, and did that for reasons that only he will, I guess, be able to explain, and so plaintiffs' counsel will have an opportunity to ask him why he did that." *Id.* at 27.

In response, the Court acknowledged that "it's obviously a plausible possibility that any misconduct here may simply have been of a renegade employee who went beyond

# GIBSON DUNN

The Honorable Jed. S. Rakoff
June 2, 2016
Page 5


reasonable bounds" and cautioned against "the need not to lightly presuppose conspiracies." *Id.* at 28. Nonetheless, the Court did not waver from its initial view that it was "tentatively willing to entertain the possibility that even if there is attorney-client privilege that much of this material may fall within the crime-fraud exception." *Id.* at 4. Over objections by Uber's counsel, the Court stated that there was a *prima facie* showing of "fraudulent representation," *id.* at 17, and that all privileged documents would be submitted to the Court for *in camera* review, after which the Court would "make a determination whether the privilege was correctly asserted or not." *Id.* at 4.

## ARGUMENT

Uber respectfully requests that the Court reconsider its Order of May 27, 2016 and require Plaintiff to comply with the clear procedures the Supreme Court and Second Circuit have established. Having now reviewed documents and interviewed key individuals, and consistent with the representations of Ergo's counsel, Uber is certain that Plaintiff's depositions of Ergo personnel and their review of Ergo documents will disclose that Uber neither directed nor had notice of any misrepresentations by the Ergo investigator. Thus, *in camera* review, and the associated chilling of the attorney-client privilege, is not warranted.

### I. Plaintiff Has Not Made the Required Evidentiary Showing

Invoking the crime-fraud exception in order to vitiate the attorney-client privilege and attorney work-product doctrine requires a two step-process. First, "[a] party wishing to invoke the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime." *Jacobs*, 117 F.3d at 87. A district court may not conduct *in camera* review of privileged material unless the party opposing the assertion of privilege comes forward with *evidence* establishing the factual basis underlying the invocation of the exception. *Zolin*, 491 U.S. at 574-75 ("[B]efore a district court may engage in *in camera* review at the request of the party opposing the privilege, that party must present *evidence* sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability." (emphasis added)).

This first step is imperative. A "blanket rule" allowing *in camera* review to supplant the threshold showing "would place the policy of protecting open and legitimate disclosure between attorneys and clients at undue risk." *Id.* at 571. *Any* invasion of the attorney-client privilege "should be based on an adequate record and bear some semblance of reliability." *In re Omnicom Gp., Inc. Securities Litig.*, 233 F.R.D. 400, 405 (S.D.N.Y. 2006); *see also In re In-Store Advert. Sec. Litig.*, 163 F.R.D. 452, 459 (S.D.N.Y. 1995) ("'[R]eview [of disputed documents to determine whether they are discoverable] is not . . . to be routinely undertaken

# GIBSON DUNN

The Honorable Jed. S. Rakoff
June 2, 2016
Page 6

. . . as a substitute for a party's submission of an adequate record' in support or in opposition to privilege claims." (quoting *Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 475 (S.D.N.Y. 1993)).

Plaintiff seeks to bypass the first step based solely on speculation and unsupported conclusions.[2] *United States v. Zolin* forecloses him from doing so.

## II.     Bypassing the Required Evidentiary Showing Prejudices Uber

There are sound reasons for requiring Plaintiff to meet the threshold evidentiary showing before *in camera* review of privileged documents. By "encourag[ing] full and frank communication between attorneys and their clients," the privilege "promote[s] broader public interests in the observance of law and administration of justice." *Zolin*, 491 U.S. at 562 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

As the Supreme Court has recognized, "'examination of the evidence, even by the judge alone, in chambers' might in some cases 'jeopardize the security which the privilege is meant to protect.'" *Id.* at 570-71 (quoting *United States v. Reynolds*, 345 U.S. 1, 10 (1953)); *cf. In re Taylor*, 567 F.2d 1183, 1187-88 (2d Cir. 1977) ("In camera proceedings are extraordinary events in the constitutional framework because they deprive the parties against whom they are directed of the root requirements of due process, i.e. notice setting forth the alleged misconduct with particularity and an opportunity for a hearing.").

---

[2] Even if Plaintiff's bare assertions could rise to the level of a threshold showing, they do not show any unlawful behavior that amounts to a crime or fraud. During the May 20, 2016 hearing, the Court noted that there is nothing unlawful about performing a background check on an adversary or an adversary's counsel. RT (May 20, 2016) at 7. The Court was correct in that assessment. *See Apple Corps v. Int'l Collectors Soc'y*, 15 F. Supp. 2d 456, 474 (D.N.J. 1998) (finding no ethics violation when investigators' "only misrepresentations made were as to the callers' purpose in calling and their identities"); *Gidatex, S.r.L v. Campaniello Imps., Ltd.*, 82 F. Supp. 2d 119, 122 (S.D.N.Y. 1999) (explaining that New York ethical rules' "prohibition against attorney 'misrepresentations'" does not prohibit "an accepted investigative technique" such as "hiring investigators to pose as consumers" because "[t]he policy interests behind forbidding misrepresentations by attorneys [include] to protect *parties* from being tricked into making statements in the absence of their counsel" (emphasis added)).

# GIBSON DUNN

The Honorable Jed. S. Rakoff
June 2, 2016
Page 7

The concerns are heightened where, as here, the discovery requests are burdensome and invasive. Two of Plaintiff's requests, in particular, are deeply intrusive, and directly implicate the strategy and mental processes of Uber and its counsel. Category 10 seeks "[a]ll documents reflecting proposed statements or representations by Uber, Defendant, or Defendant's counsel to Plaintiff or his counsel relating to Ergo." Dkt. No. 63 at 12. And Category 11 seeks "[a]ll documents reflecting proposed statements or representations by Uber, Defendant, or Defendant's counsel to Judge Rakoff or his clerk relating to Ergo." *Id.*

The contemplated invasion of Uber's privilege is particularly troubling in light of Uber's current status as a third party in this case. Having reviewed its documents, and interviewed relevant witnesses, Uber can now attest that Defendant Travis Kalanick was not involved in hiring Ergo. Uber, a third party not then before the Court, was responsible for hiring the investigator.

### III. Reviewing and Deposing Ergo Documents and Employees Should Be the First Step Prior to Any *In Camera* Review of Uber's Documents or Depositions of Its Employees

Considering the pending significant invasion of Uber's privilege and privacy, the substantial risk of chilling attorney-client communications, and the resulting detriment to the company, Uber respectfully requests that the Court reconsider its prior Order. Strict application of the Second Circuit's two-step process would both (1) guard against unnecessary damage to the attorney-client privilege and attorney work product doctrine, and (2) satisfy the Court and Plaintiff that Uber neither directed Ergo to make misrepresentations nor had notice that Ergo would take such actions. Additionally, following a two-step process reduces the risk of a "groundless fishing expedition[]." *Zolin*, 491 U.S. at 571 ("There is no reason to permit opponents of the privilege to engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents."). "Given that the attorney-client privilege and work product immunity play a critical role in our judicial system, the limited exceptions to them should not be framed so broadly as to vitiate much of the protection they afford." *In re Richard Roe, Inc.*, 168 F.3d 69, 71 (2d Cir. 1999) (citations omitted).

Uber did not instruct Ergo to employ deceptive methods or use misrepresentations to gather information. Nor did Uber have knowledge that Ergo would use such tactics; in fact, Uber believes the depositions and review of Ergo's documents will reveal that Uber had not retained Ergo prior to November 2015. Uber acknowledges that it mistakenly represented to Plaintiff that it had not hired Ergo. There is no evidence this was done to cover up any of Ergo's actions taken without knowledge or approval of Uber. The mistake was corrected, the investigation was terminated, and Plaintiff was not prejudiced by the error.

# GIBSON DUNN

The Honorable Jed. S. Rakoff
June 2, 2016
Page 8

Accordingly, Uber proposes a more narrowly tailored two-step approach, in line with the Second Circuit's required procedures, in order to assure the Court that neither Mr. Kalanick nor anyone at Uber was involved in directing or furthering the Ergo investigator's alleged misrepresentations.

First, Plaintiff will receive Ergo documents as scheduled on June 6; the Court will review any assertions of privilege to Ergo documents *in camera* on June 6; and Plaintiff will have an opportunity to depose Ergo personnel on June 14 and 15. If the result of this discovery provides probable cause that Uber knew about or approved the investigator's use of false pretenses, then the Court would have the discretion to review Uber's privileged communications and work product *in camera*. *See Jacobs*, 117 F.3d at 87. If the Plaintiff met the probable cause standard for *in camera* review of Uber's documents, the Court will be able to receive and review them by June 20, and any depositions of Uber employees will proceed expeditiously. This two-step process will not result in any significant delay.

If, however, the depositions of the Ergo employees, and the review of their related communications, provide no "reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, that the communications were in furtherance thereof," *id.* (quoting *Zolin*, 491 U.S. at 572), then the process should end without piercing the "oldest of the privileges . . . known to the common law," *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). When discovery involving Ergo's employees and documents demonstrates that the Ergo investigator acted alone, without the knowledge and consent of Uber, then it will become clear that any alleged crime or fraud is wholly distinct from Uber, and Uber's privileges should remain intact. Uber's communications about Ergo could not have furthered the alleged fraud of Ergo's Investigator's use of false pretenses that Uber knew nothing about and did not approve.

For the reasons described, Uber Technologies, Inc. respectfully requests that this Court reconsider its prior decision and require an evidentiary showing prior to invoking *in camera* review of Uber's documents.

Sincerely,

Daniel Swanson/djp

Daniel G. Swanson

cc: Counsel of Record