

## Harter Secrest & Emery LLP
ATTORNEYS AND COUNSELORS

WWW.HSELAW.COM

June 3, 2016



**BY ELECTRONIC MAIL**
The Honorable Jed S. Rakoff
United States District Judge
U.S. District Court for the
 Southern District of New York
500 Pearl Street, Room 1340
New York, New York 10007

    Re:    *Spencer Meyer v. Travis Kalanick*, 1:15-cv-9796 (JSR)

Dear Judge Rakoff:

    We represent Plaintiff Spencer Meyer ("Plaintiff") in the above-referenced matter. We submit this letter in response to non-party Uber Technologies, Inc.'s ("Uber") request for reconsideration of the Court's Order concerning Ergo-related discovery that was issued in connection with hearings held on May 27, 2016 (the "May 27 Order").

    Uber presents no basis for the Court to reconsider or modify the May 27 Order. Uber does not point to "dispositive facts or controlling authority that were plainly presented in the prior proceedings but were somehow overlooked in the Court's decision: in other words, an obvious and glaring mistake." *M.K.B. v. Eggleston*, 05 Civ. 10446 (JSR), 2006 U.S. Dist. LEXIS 81704, at *3 (S.D.N.Y. Nov. 7, 2006); *see also* Dkt. No. 44 at 4 (May 7, 2016 Order denying Defendant Kalanick's Motion for Partial Reconsideration).[1] To the contrary, Uber presents the same legal arguments that it made at the May 27 hearing and makes (inconsequential) attorney assertions that Uber could have presented to the Court at the May 27 hearing, if Uber wanted them to be considered at all. *See Jiangsu S.S. Co. v. Success Superior Ltd.*, No. 14 Civ. 9997, 2015 U.S. Dist. LEXIS 13387, at *2-3 (S.D.N.Y. Jan. 30, 2015) (denying motion for reconsideration because "Jiangsu does not point to any newly available evidence justifying reconsideration. Although Jiangsu has provided a few more details about the attachment proceedings it intends to pursue, that is information that Jiangsu could have provided to the Court originally. There is nothing 'new' about it.").

---

[1] Without rehashing the standard of review for a motion for reconsideration, Plaintiff respectfully refers the Court to its Memorandum of Law filed in Opposition to Defendant Kalanick's earlier filed Motion for Reconsideration. *See* Dkt. No. 42.

Harter Secrest & Emery LLP
ATTORNEYS AND COUNSELORS

June 3, 2016
Page 2

The very argument that Uber's multi-phase discovery proposal revolves around—whether Plaintiff has made a *prima facie* crime-fraud showing to warrant *in camera* review—was argued and rejected during the May 27 hearing. (5/27/16 Hearing Tr. 16:9-17:18). And Uber's attorney assertions (which are not facts) about a recent investigation of Uber's files and discussions with Uber employees—*i.e.*, Uber looking at its own documents and talking to the people involved in the Ergo matter after being aware of the issue for months—should have been presented at the May 27 Hearing and, in any case, are inconsequential to the Court's Order: Uber's motion fails out of the gate because it does not satisfy the threshold standards for a motion for reconsideration.

Should the Court find for any reason that Uber has presented grounds for the Court to reconsider its order, Plaintiff respectfully makes the following points, each one of which merits denial of Uber's motion.

***First***, irrespective of the application of the crime-fraud exception, *in camera* review is necessary because there is a serious question as to whether the Ergo materials are privileged at all. Defendant Kalanick has represented that Ergo was retained "to determine whether this lawsuit posed a safety issue for Mr. Kalanick." (For the Court's convenience, attached hereto as **Exhibit A** is a copy of the March 29, 2016 letter from Peter Skinner to Brian Feldman). But by invoking attorney-client privilege, Uber is now suggesting that Ergo was retained in connection with legal matters. Plaintiff submits that communications regarding Defendant's security concerns, even if involving attorneys, do not implicate legal advice. For that reason, *in camera* review is appropriate so that the Court can determine as a threshold matter whether any privilege at all applies to the communications at issue. Indeed, Uber has made no effort to meet its initial burden that the documents in question are privileged in the first instance, and the Court is not required to assume that they are. *United States v. Zolin*, 491 U.S. 554, 567 (1989) (the Court need not treat contested attorney-client communications as "presumptively privileged").

***Second***, Plaintiff has made a sufficient *prima facie* showing for *in camera* review under the very authority Uber cites.[2] According to *Zolin*,

> Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, the judge should require a showing of ***a factual basis adequate***

---

[2] Uber's implication that there were no activities that fall within the crime-fraud exception is baseless. The Court has already stated that "if a party or a party's affiliate has made use wittingly or perhaps unwittingly of a third party to gather information through the use of false statements, that seems to me to be very likely a perversion of the processes of this case." (5/20/16 Hearing Tr. 13:8-12.) District courts within the Second Circuit have recognized that the crime-fraud exception applies beyond patently criminal or fraudulent activity to non-fraud intentional torts, as well as "misconduct fundamentally inconsistent with the basic premises of the adversary system," such as "bad faith litigation conduct." *See Madanes v. Madanes*, 199 F.R.D. 135, 148-49 (S.D.N.Y. 2001).

Harter Secrest & Emery LLP
ATTORNEYS AND COUNSELORS

June 3, 2016
Page 3

> ***to support a good faith belief by a reasonable person, that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.*** Once that showing is made, the decision whether to engage in *in camera* review rests in the sound discretion of the district court.

491 U.S. at 572 (emphasis added) (internal quotations, citations omitted).

As the Court recognized at the May 27 Hearing, Plaintiff has made a prima facie showing warranting *in camera* review. (5/27/16 Hearing Tr. 7:23-8:22, 17:15-16, 20:20-24). There is no dispute that Uber retained Ergo (*see* May 20, 2016 letter from Alanna Rutherford to the Court, attached as **Exhibit B** hereto), and that Ergo made fraudulent representations to acquaintances of Plaintiff and Plaintiff's counsel in an effort to gain information. (5/20/16 Hearing Tr. 8:1-10). As the Court explained, one of the questions to get to the bottom of "is whether that was being done at the behest of, or failing that, with the knowledge of Uber and/or Mr. Kalanick or both." (5/27/16 Hearing Tr. 8:15-17).

It also is undisputed that, on January 20, 2016, after having been directly questioned about Ergo's tactics and involvement, Defendant's counsel (who was in contact with Uber's in-house counsel) asserted "it is not us." (For the Court's convenience, attached hereto as **Exhibit C** is a copy of a January 20, 2016 email from Peter Skinner to Brian Feldman). That too was a misrepresentation, and Uber's counsel has since represented that on January 19 or 20, 2016, Ergo's investigative report was being circulated at Uber and Uber's general counsel, Salle Yoo, received a copy—*i.e.*, at the exact time that Mr. Skinner was representing that Uber and Defendant had nothing to do with the Ergo investigation. (5/27/16 Hearing Tr. 10:11-16). As this Court noted during the May 27 Hearing, "[a]nd the third question is whether, when plaintiff's counsel attempted to find out what was going on, whether false representations were made by Uber or Mr. Kalanick or their counsel to plaintiff's counsel about what was actually transpiring." (5/27/16 Hearing Tr. 8:18-22).

Thereafter, and leading up to the hearings on May 20 and May 27, Uber and Defendant continued to try to limit access to the facts concerning the Ergo investigation. The long history of delay and obfuscation was presented at hearings held on May 20 and May 27. (5/20/16 Hearing Tr. 8:1-10, 8:13-11:17; 5/27/16 Hearing Tr. 18:15-19:24). Plaintiff will not rehash that history again here, but notes one recent example of the improper way discovery concerning Ergo has been handled. At the May 20 Hearing, Defendant's counsel represented that Defendant had provided to Plaintiff "the names of the people contacted, the dates they were contacted and the way they were contacted. We've provided all that information to plaintiffs." (5/20/16 Hearing Tr. 5:25-6:1). Defendant's counsel later reiterated that "we did not provide just the initial contacts. We provided all the contacts that Ergo made by going -- to Ergo by going and soliciting that information from them." (5/20/16 Hearing Tr. 14:21-24). But that was not accurate. Defendant only sent Plaintiff a very narrow set of information concerning "initial contact" only. (*See* May 18, 2016 letter from Alanna Rutherford to Brian Feldman attached hereto as **Exhibit D**).

Harter Secrest & Emery LLP
ATTORNEYS AND COUNSELORS

June 3, 2016
Page 4

Uber's present motion thus represents merely another installment in its five-month campaign to control, conceal, and limit information concerning the details of the Ergo investigation. The fact that Uber protests so much over *in camera* review, in itself, reinforces the Court's ruling that *in camera* review is imperative.

Far from "bare assertions," all these undisputed facts make out a well-grounded *prima facie* case for *in camera* review of the Uber Ergo documents. Uber's assertion that *in camera* review is not proper is wrong as a matter of law because it collapses the *Zolin* two-step process into one. *See Zolin*, 491 U.S. at 572.[3] Uber effectively ignores the first prong of *Zolin* when it argues that, at this stage—without the benefit of the documents or testimony from any percipient Uber witness, and relegated to the hand-picked class of discovery from Ergo that Uber approves of—Plaintiff must *prove* that the crime-fraud exception applies before the Court may even undertake *in camera* review. Nothing in *Zolin* supports that conclusion. The standard for *in camera* review is merely whether a party has shown a factual basis "adequate to support a good faith belief by a reasonable person . . . that *in camera* review of materials may reveal evidence to establish that the crime-fraud exception applies." *Id.* at 572 (internal quotation marks and citation omitted). "Once that showing is made, the decision whether to engage in *in camera* review rests in the sound discretion of the district court." *Id.* Uber has identified no reason why the order it asks the Court to reconsider would constitute an abuse of discretion.

**Third**, Uber's professed ignorance of the actions undertaken by Ergo's investigator does not negate Plaintiff's *prima facie* case or the need for *in camera* review. At best, this is a (misplaced) argument about why the crime-fraud exception may not apply—not a reason to deny *in camera* review. The argument is misplaced because an attorney's specific awareness of a fraud has no bearing on the discoverability of crime-fraud communications or the applicability of the crime-fraud exception. *See United States v. Chervin*, No. 10 CR 918 (RPP), 2011 U.S. Dist. LEXIS 106929, at *8 (S.D.N.Y. Sep. 21, 2011) ("[T]he attorney-client privilege will not attach to any communications in furtherance of a crime or fraud *regardless* of the attorney's lack of knowledge that he is being consulted in furtherance of that crime or fraud.") (emphasis in original). Moreover, regardless of Uber's supposed ignorance of the tactics employed in the pretextual investigation, Uber's documents must be reviewed by the Court to determine, at a minimum, the extent to which Ergo's fraudulent representations bore fruit and were utilized by Uber or Defendant—and appropriately address such use.

---

[3] *See also United States v. Christensen*, 801 F.3d 970, 1005 (9th Cir. Cal. 2015) ("*Zolin's* first step requires a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies. The government must make only a minimal showing that the crime-fraud exception could apply. Some speculation is required under the *Zolin* threshold. The threshold is not a stringent one because *in camera* review of documents is a much smaller intrusion on the attorney-client privilege than full disclosure. The first step is meant only to prevent groundless fishing expeditions.") (internal quotations, citations omitted).

Harter Secrest & Emery LLP
ATTORNEYS AND COUNSELORS

June 3, 2016
Page 5

*Fourth*, to the extent that Uber is claiming that documents are protected by the attorney work product or common interest doctrines, it is important to note that those are qualified privileges. *E.g., In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007) (the attorney-work product doctrine provides "qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial"); *Jean v. City of New York*, No. CV-09-801, 2010 U.S. Dist. LEXIS 2282 at *2 (E.D.N.Y. Jan. 12, 2010) ("Of course even where work product protection applies, the protection is not absolute. Disclosure of work product may be ordered if the party seeking it can demonstrate substantial need for the information and an inability to obtain the information, or a substantial equivalent of it, by other means without undue hardship."); *Obeid v. La Mack*, 2015 U.S. Dist. LEXIS 127327, at *8-9 (S.D.N.Y. 2015) (the work-product rule offers a "qualified immunity"; even documents that come within the rule's scope are not necessarily immune from discovery). Here, there is no better way to obtain access to the information at issue than from Uber's documents about the matter. And because these documents are only being provided for *in camera* review, at least initially (with a detailed privilege log provided to Plaintiff), there is still significant protection provided.

*Finally*, neither Plaintiff nor the Court should be forced to rely on counsel representations as an effective substitute for discovery. The need for facts (rather than statements by an attorney) is *especially* acute here given the subject matter and the inconsistent representations and delay received from Defendant's and Uber's counsel to date. Indeed, after this Court ordered Defendant to provide "the name of the person who hired Ergo ... And the position of that person and when he or she hired Ergo and what he told, he or she, told them they should do," (5/20/16 Hearing Tr. 5:11-19), Defendant submitted a letter that failed to identify the person who is now claimed to have contacted Ergo with the assignment (Mat Henley). And Plaintiff is still in the dark as to what Ergo's instructions were, other than that Ergo is purported to have understood that it was to look into Plaintiff's and Plaintiff's counsel's "motivations." (5/27/16 Hearing Tr. 26:4-8). The deliberate provision of specifically tailored facts by counsel should not be allowed to continue. The only way to "get to the bottom" of the pretextual investigation is through discovery from the actual individuals and entities involved, which this Court has already ordered.

For these reasons, Plaintiff respectfully requests that the Court deny Uber's motion for reconsideration.

Respectfully submitted,

Harter Secrest & Emery LLP

/s/ Jeffrey A. Wadsworth

Jeffrey A. Wadsworth
DIRECT DIAL: 585.231.1113
EMAIL: JWADSWORTH@HSELAW.COM

Harter Secrest & Emery LLP
ATTORNEYS AND COUNSELORS

June 3, 2016
Page 6

cc:     *Counsel of Record*

# EXHIBIT A

# BOIES, SCHILLER & FLEXNER LLP

575 LEXINGTON AVENUE • 7th FLOOR • NEW YORK, NY 10022 • PH. 212-446-2300 • FAX 212-446-2350

PETER M. SKINNER
Tel.: (212) 303-3654
E-mail: pskinner@bsfllp.com

March 29, 2016

VIA ELECTRONIC MAIL

Mr. Brian Feldman
Harter Seacrest & Emery, LLP
1600 Bausch & Lomb Place
Rochester, NY 14604-2711
bfeldman@hselaw.com

      Re:    *Meyer v. Kalanick*, No. 15 Civ. 9796 (S.D.N.Y.)

Dear Brian:

      We were surprised and disappointed to receive your letter of March 23, 2016. In addition to its overblown and unfair rhetoric, the letter contains numerous mischaracterizations and inaccuracies. Further, your claim that this is a "sordid affair" is in dramatic contradiction to the collegiality and reasonableness of our phone conversations thus far in this case. We see no benefit in continuing a heated exchange of correspondence at this time but wish to state for the record that we strongly disagree with your account.

      Although we were under no obligation to do so, we paid you the courtesy of responding to your previous informal queries as quickly as possible. We updated you, virtually in real time (including late on a Friday night), when we learned information about Ergo's investigation. We further explained that Plaintiff's strategic decision to sue Mr. Kalanick in his personal capacity triggered a series of events that resulted in an investigation to determine whether this lawsuit posed a safety issue for Mr. Kalanick. This was a prudent and unfortunately necessary step to protect a man who faces real threats to his safety. Finally, we informed you that our client has asked Ergo not to conduct any further inquiry into Plaintiff or Plaintiff's counsel.

      In the interests of proceeding in a professional and respectful manner going forward, we now confirm for you, once again, that Ergo will conduct no further inquiries in this matter. We will consider how to respond to your remaining requests after Judge Rakoff rules on the pending motion to dismiss.

Very truly yours,

/s/ Peter M. Skinner

Peter M. Skinner

# EXHIBIT B

# BOIES, SCHILLER & FLEXNER LLP

575 LEXINGTON AVENUE • 7th FLOOR • NEW YORK, NY 10022 • PH. 212-446-2300 • FAX 212-446-2350

May 20, 2016

**Via Electronic Mail**

The Honorable Jed. S. Rakoff
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

                Re:    *Meyer v. Kalanick*, No. 15-CV-09796 (JSR)

Judge Rakoff:

     Per the Court's request, below please find the names of the people at Uber Technologies, Inc. who initiated an investigation concerning the plaintiff in this case at the request of Salle Yoo, Esq., General Counsel of Uber Technologies, Inc.:

     Joe Sullivan, Esq., Chief Security Officer
     Craig Clark, Esq., Legal Director, Security and Enforcement

Mr. Clark retained Ergo. The person at Ergo who conducted the entirety of the investigation was Miguel Santos-Neves.

                                                          Sincerely,

                                                          Alanna C. Rutherford

Cc:    Counsel of Record

# EXHIBIT C

# John Briody

| | |
|---|---|
| **From:** | Peter Skinner <PSkinner@BSFLLP.com> |
| **Sent:** | Wednesday, January 20, 2016 11:13 AM |
| **To:** | Feldman, Brian M. |
| **Subject:** | RE: Follow up |

Brian,

As we discussed, I followed up. Whoever is behind these calls, it is not us.

For whatever it's worth, we went to ergo.net, and they purport to do "business intelligence." At the conference before Judge Rakoff, a guy in the gallery identified himself to me as a reporter from Policy and Regulatory Report (http://www.parr-global.com/about-us/what-we-do/). It looks like they purport to do the same thing.

Best,
Pete


-----Original Message-----
**From:** Feldman, Brian M. [bfeldman@hselaw.com]
**Sent:** Tuesday, January 19, 2016 07:48 PM Eastern Standard Time
**To:** Peter Skinner
**Subject:** Follow up


Pete -

Here is the person we discussed:

> Miguel E.H. Santos-Neves
> Ergo
> 122 East 55th St.
> New York, NY 10022
> +1 212 421 4035
> www.ergo.net

Best,
Brian



**Brian M. Feldman**, Partner
**Harter Secrest & Emery LLP**, Attorneys and Counselors
1600 Bausch & Lomb Place, Rochester, NY 14604-2711
Firm 585.232.6500 Direct 585.231.1201 Fax 585.232.2152
BFeldman@hselaw.com vCard

1

www.hselaw.com

This e-mail message is from a law firm and may contain information that is privileged or confidential. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, do not read it. Please delete it from your system without copying it, and notify the sender by reply e-mail at BFeldman@hselaw.com or by calling 585.231.1201, so that our address record can be corrected.

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]

# EXHIBIT D

# BOIES, SCHILLER & FLEXNER LLP

575 LEXINGTON AVENUE • 7th FLOOR • NEW YORK, NY 10022 • PH. 212-446-2300 • FAX 212-446-2350

May 18, 2016

**Via Electronic Mail**
Brian M. Feldman
Harter, Secrest & Emery LLP
1600 Bausch & Lomb Place
Rochester, NY 14604

Re:   *Meyer v. Kalanick*, No. 1:15-CV-09796 (JSR)

Dear Brian:

I write as a follow-up to today's meet and confer regarding the Ergo Matter.

In an attempt to be cooperative and assuage any additional concerns you may have concerning the Ergo matter, Mr. Kalanick and our firm represent to you yet again that Ergo has ceased any inquiries in this matter and that no further inquiries will be made. We also attach a list containing: (1) the name and contact information of any individual or entity contacted by Ergo and (2) the date and method of communication for each contact.

It is our hope that this resolves the matter.

Sincerely,

Alanna Rutherford

## LIST OF PEOPLE WHO COMMUNICATED WITH ERGO

| Name | Contact Info | Form and Date of Initial Contact |
|---|---|---|
| Andrew Whitman | email: awhitman@manomet.org / phone: 207-721-9040 ext. 101 | email on 1/7 |
| Robert Scheller | email: rmschell@pdx.edu / phone: 978-756-6123 | email on 1/7 |
| Sandra Goff | email: sgoff@skidmore.edu; phone 518-580-5095. | email on 1/7 |
| Ivan Fernandez | email: ivanjf@maine.edu / phone: 207-581-2932 | email on 1/7 |
| Matthew Duveneck | email: mduveneck@gmail.com / phone: 207-272-5794 or 978-756-6167 | email on 1/7 |
| Kevin D Doran | LI: https://www.linkedin.com/in/kevin-doran-ed-d-29a57527/ email: kevin.doran@maine.gov / phone: o. 207-287-4988 and c. 207-837-9565 | LinkedIn on 1/8 |
| Andrew S Neuman | (719) 651 8805 | Phone on 1/11 |
| Malia Carpio | LI: https://www.linkedin.com/in/maliacarpio / phone: 757-353-2226 | LinkedIn on 1/11 |
| Alex Hood | Phone: (720) 441-2236 or 720 239-2606 / email: alex@towardsjustice.org | Phone, initial call on 1/11 or 1/12 |
| Erin Kinney | email: ekinney@HARCresearch.org / phone: 281-364-6040 | Initial contact by email on 1/7 |
| Michael Thompson | michael.e.thompson@maine.edu | email on 1/7 |