**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

SPENCER MEYER,

                Plaintiff,

    v.

TRAVIS KALANICK,

                Defendant.

Case No. 1:15-cv-9796 (JSR)

---

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT TRAVIS KALANICK'S MOTION TO COMPEL ARBITRATION**

BOIES, SCHILLER & FLEXNER LLP

Karen L. Dunn
William A. Isaacson
Ryan Y. Park
5301 Wisconsin Ave, NW
Washington, DC 20015
Tel:  (202) 237-2727
Fax: (202) 237-6131
kdunn@bsfllp.com
wisaacson@bsfllp.com
rpark@bsfllp.com

Alanna C. Rutherford
Peter M. Skinner
Joanna C. Wright
575 Lexington Ave, 7th Floor
New York, NY 10022
Tel:  (212) 446-2300
Fax: (212) 446-2350
arutherford@bsfllp.com
pskinner@bsfllp.com
jwright@bsfllp.com

*Counsel for Defendant Travis Kalanick*

June 7, 2016

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................1

FACTUAL AND PROCEDURAL BACKGROUND...................................................3

    A.   The Uber Registration Process ...........................................3

    B.   The Arbitration Agreement ...............................................4

    C.   Procedural History ..........................................................5

ARGUMENT.........................................................................................6

    A.   Where the FAA Governs the Parties' Agreement and This Dispute, the Arbitrator Should Decide All Questions of Arbitrability................................7

    B.   Even if the Court Were to Address Questions of Arbitrability, Mr. Kalanick Is Entitled to Invoke the Valid and Enforceable Arbitration Agreement .........................9

        1.   The Dispute Falls within the Scope of the Arbitration Agreement .....................10

        2.   Mr. Kalanick Has Not Waived His Right to Arbitration .....................................17

        3.   New York Law Governs Other Arbitration Agreement Enforceability Issues ..................................................................15

        4.   Mr. Kalanick Has a Right to Enforce the Arbitration Agreement .......................17

            a.   The Agreement Between Plaintiff and Uber Covers Mr. Kalanick, an Employee of Uber.................................18

            b.   Plaintiff Should Be Estopped from Avoiding Arbitration of His Claims Against Mr. Kalanick............................19

        5.   Plaintiff Assented to the Arbitration Agreement ................................21

        6.   The Arbitration Agreement Is Not Unconscionable ...........................23

CONCLUSION..................................................................................25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*5381 Partners LLC v. Shareasale.com, Inc*.,
   2013 WL 5328324 (E.D.N.Y. Sept. 23, 2013) ....................................................................22

*In re A2p SMS Antitrust Litig*.,
   972 F. Supp. 2d 465 (S.D.N.Y. 2013) ...............................................................................19

*Allied-Bruce Terminix Cos. v. Dobson*,
   513 U.S. 265 (1995) ............................................................................................................7

*Anonymous v. JP Morgan Chase & Co.*,
   2005 WL 2861589 (S.D.N.Y. Oct. 31, 2005) ...................................................................23

*Application of ABN Int'l Capital Markets Corp.*,
   812 F. 418 (S.D.N.Y.) *aff'd* 996 F.2d 1478 (2d Cir. 1993) ...............................................12

*Arrigo v. Blue Fish Commodities*,
   704 F. Supp. 2d 299 (S.D.N.Y. 2010) ..............................................................................18

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 340 (2011) ..........................................................................................................25

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ............................................................................................................6

*Bar-Ayal v. Time Warner Cable Inc.*,
   2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006) ...................................................................21

*Becker v. DPC Acquisition Corp.*,
   2002 WL 1144066 (S.D.N.Y. May 30, 2002) ...................................................................15

*Brener v. Becker Paribas, Inc.*,
   628 F. Supp. 442 (S.D.N.Y. 1985) ...................................................................................18

*Brennan v. Bally Total Fitness*,
   198 F. Supp. 2d 377 (S.D.N.Y. 2002) ..............................................................................23

*Bruster v. Uber Techs., Inc.*,
   No. 15-CV-2653, DE 19 (N.D. Ohio May 23, 2016)........................................................12

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006) ............................................................................................................7

*Bynum v. Maplebear Inc.*,
    2016 WL 552058 (E.D.N.Y. Feb. 12, 2016) ...................................................................23

*Carr v. Credit One Bank*,
    2015 WL 9077314 (S.D.N.Y. Dec. 16, 2015) ................................................................24

*Coleman v. Nat. Movie-Dine, Inc.*,
    449 F.Supp. 945 (E.D.P.A. 1978) .................................................................................17

*Cont'l Ins.M/V NIKOS N*,
    2002 WL 530987 (S.D.N.Y. Apr. 9, 2002) ...................................................................13

*Contec Corp. v. Remote Solution Co.*,
    398 F.3d 205 (2d Cir. 2005) .....................................................................................8, 9

*Crewe v. Rich Dad Educ., LLC*,
    884 F. Supp. 2d 60 (S.D.N.Y. 2012) ............................................................................20

*In re Currency Conversion Fee Antitrust Litig.*,
    265 F. Supp. 2d 385 (S.D.N.Y. 2003) ....................................................................10, 20

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
    352 F.3d 775 (2d Cir. 2003) .......................................................................................24

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) ......................................................................................................9

*Dean Witter Reynolds, Inc. v. Super. Ct.*,
    211 Cal. App. 3d 758 (1989) .......................................................................................25

*Desiderio v. Nat'l Assoc. of Sec. Dealers, Inc.*,
    191 F.3d 198 (2d Cir. 1999) ...................................................................................23, 24

*Doctor's Associates, Inc.. v. Distajo*,
    107 F.3d 126, 134 (2d Cir. 1997) ................................................................................17

*Doctor's Associates, Inc. v. Stuart*,
    85 F.3d 975 (2d Cir. 1996) ..........................................................................................15

*Dryer v. L.A. Rams*,
    40 Cal. 3d 406 (1985) ..............................................................................................2, 18

*Fieger v. Pitney Bowes Credit Corp.*,
    251 F.3d 386 (2d Cir. 2001) ........................................................................................15

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) ..........................................................................22

*Gillman v. Chase Manhattan Bank, N.A.*,
    534 N.E.2d 824 (N.Y. 1988) ...................................................................23

*Green Tree Fin. Corp. v. Randolph*,
    531 U.S. 79 (2000) .................................................................................6

*Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*,
    246 F.3d 219 (2d Cir. 2001) ...................................................................9

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) .................................................................................8

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
    387 F.3d 163 (2d Cir. 2004) ...................................................... 2, 10, 11

*Jock v. Sterling Jewelers, Inc.*,
    564 F. Supp. 2d 307 (S.D.N.Y. 2008) (Rakoff, J.) ............................13

*JSM Tuscany, LLC v. Super. Ct.*,
    193 Cal. App. 4th 1222 (2011) ...................................................2, 18, 19

*Jung v. Skadden, Arps, Slate, Meagher & Flom, LLP*,
    434 F. Supp. 2d 211 (S.D.N.Y. 2006.) ...............................................14

*Khanna v. Am. Express Co.*,
    2011 WL 6382603 (S.D.N.Y. Dec. 14, 2011) .......................................6

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941) ..............................................................................15

*Kulukundis Shipping Co. v. Amtorg Trading Corp.*,
    126 F.2d 978 (2d Cir. 1942) ................................................................15

*La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    626 F.3d 156 (2d Cir. 2010) ................................................................11

*Lanier v. Uber Techs., Inc.*,
    No. 15-cv-09925-BRO, DE 25 (C.D. Cal. May 11, 2016) ...............2, 22

*Laumann v. N.H.L.*,
    989 F. Supp. 2d 329 (S.D.N.Y. 2013) ..................................................9

*Loreley Fin. No. 3 Ltd. v. Wells Fargo Sec.*,
    797 F.3d 160 (2d Cir. 2015) ................................................................16

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*,
    252 F.3d 218 (2d Cir. 2001) ................................................................11

iv

*Mahmoud Shaban & Sons Co. v. Mediterranean Shipping Co., S.A.*,
  2013 WL 5303761 (S.D.N.Y. Sept. 20, 2013) ................................................................. 13, 15

*Marcus v. Frome*,
  275 F. Supp. 2d 496 (S.D.N.Y. 2003) ........................................................................... 2, 17

*McCabe v. Dell, Inc.*,
  2007 WL 1434972 (C.D. Cal. Apr. 12, 2007) ...................................................................25

*Metalclad Corp. v. Ventana Envtl. Organizational P'ship*,
  109 Cal. App. 4th 1705 (2003) ..........................................................................................21

*Mosca v. Doctors Assocs.*,
  852 F. Supp. 152 (E.D.N.Y. 1993) ............................................................................. 17, 18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ......................................................................................................... 6, 11

*Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38*,
  351 F.3d 43 (2d Cir. 2003) ..................................................................................................8

*Murray v. UBS Securities, LLC*,
  2014 WL 285093 (S.D.N.Y Jan. 27, 2014) ................................................................. 14, 15

*Nayal v. HIP Network Servs. IPA, Inc.*,
  620 F. Supp. 2d 566 (S.D.N.Y. 2009) ...............................................................................24

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) .................................................................................... 21, 22

*Novak v. Overture Servs., Inc.*,
  309 F. Supp. 2d 446 (E.D.N.Y. 2004) ...............................................................................24

*Parisi v. Goldman, Sachs & Co.*,
  710 F.3d 483 (2d Cir. 2013) ................................................................................................6

*Peng v. First Republic Bank*,
  219 Cal. App. 4th 1462 (2013) ..........................................................................................24

*Philips Credit Corp. v. Regent Health Grp., Inc.*,
  953 F. Supp. 482 (S.D.N.Y. 1997) ....................................................................................16

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev.*,
  55 Cal. 4th 223 (2012) ................................................................................................. 6, 23

*Queens Boulevard 40th Owners Corp. v. Figueroa*,
  2015 WL 1938185 (S.D.N.Y. Apr. 22, 2015) ......................................................................8

v

*Ragone v. Atl. Video at Manhattan Ctr.*,
   595 F.3d 115 (2d Cir. 2010) .......................................................................24

*Ranieri v. Bell Atl. Mobile*,
   759 N.Y.S.2d 448 (N.Y. App. Div. 2003) ...................................................24

*Rent-A-Center West v. Jackson*,
   561 U.S. 63 (2010) ...............................................................................7, 23

*Roby v. Corp. of Lloyd's*,
   996 F.2d 1353 (2d Cir. 1993)...............................................................17, 18

*Roman v. Super. Ct.*,
   172 Cal. App. 4th 1462 (2009) ...................................................................24

*Rush v. Oppenheimer & Co.*,
   779 F.2d 885 (2d Cir. 1985) .................................................................14, 15

*Sanchez v. Valencia Holding Co.*,
   61 Cal. 4th 899 (2015)................................................................................23

*Scher v. Bear Stearns & Co.*,
   723 F. Supp. 211 (S.D.N.Y. 1989) .............................................................17

*Scott v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   1992 WL 245506 (S.D.N.Y. Sept. 14, 1992)..............................................14

*Smith v. Bayer Corp.*,
   131 S. Ct. 2368 (2011) ...............................................................................15

*Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*,
   198 F.3d 88 (2d Cir. 1999) .........................................................................20

*Sonic-Calabasas A, Inc. v. Moreno*,
   311 P.3d 184 (Cal. 2013)............................................................................25

*Sonic-Calabasas A, Inc. v. Moreno*,
   57 Cal. 4th 1109 (2013)..............................................................................25

*Specht v. Netscape Commc'ns Corp.*,
   306 F.3d 17 (2d Cir. 2002) ......................................................................7, 21

*Staehr v. Hartford Fin. Servs. Grp.*,
   547 F.3d 406 (2d Cir. 2008) .......................................................................16

*Suarez v. Uber Techs., Inc.*,
   2016 WL 2348706 (M.D. Fla. May 4, 2016)..............................................16

*Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*,
    754 F.2d 457 (2d Cir. 1985) ........................................................................ 11, 14

*Swink v. Uber Techs., Inc.*,
    No. 16 Civ.-1092 (KPE), Dkt. No. 2 (S.D. Tex. Apr. 22, 2016) .............................. 6

*Thomas v. A.R. Baron & Co.*,
    967 F. Supp. 785 (S.D.N.Y. 1997) ............................................................................ 15

*Thyssen, Inc. v. Calypso Shipping Corp.*,
    310 F.3d 102 (2d Cir. 2002) ...................................................................................... 14

*Turtle Ridge Media Grp. v. Pac. Bell Directory*,
    140 Cal. App. 4th 828 (2006) .................................................................................... 20

*U1it4Less v. FedEx Corp.*,
    No. 11 Civ. 1713(KBF), 2015 WL 3916247 (S.D.N.Y. June 25, 2015) ................... 24

*Varon v. Uber Techs., Inc.*,
    2016 WL 1752835 (D. Md. May 3, 2016) ................................................................ 16

*Walsh v. WOR Radio*,
    531 F. Supp. 2d 623 (S.D.N.Y. 2008) ...................................................................... 16

*Wayne v. Staples, Inc.*,
    135 Cal. App. 4th 466 (2006) .................................................................................... 24

*Whitt v. Prosper Funding LLC*,
    2015 WL 4254062 (S.D.N.Y. July 14, 2015) ........................................................... 22

**Statutes**

15 U.S.C. § 1 ....................................................................................................................... 3

Cal. Civ. Code § 1670.5 ................................................................................................... 24

N.Y. Gen. Bus. Law § 340 ................................................................................................. 3

## PRELIMINARY STATEMENT

Defendant Travis Kalanick respectfully asks this Court to compel arbitration of Plaintiff's claims. The Court has already found, and Plaintiff has never disputed, that Plaintiff agreed to Uber's Terms and Conditions (the "Terms" or "Rider Terms") as a condition of using Uber's services. DE 44 at 9. Those Terms include a clear and conspicuous agreement to arbitrate disputes (the "Arbitration Agreement"), which mandates dismissing this action in favor of arbitration. Because the Arbitration Agreement delegates arbitrability issues to the arbitrator, the Court should allow the arbitrator to address any arbitrability issues in the first instance, including whether Mr. Kalanick can avail himself of the Arbitration Agreement.

Even if the Court decides to address arbitrability issues itself, however, it should grant Mr. Kalanick's motion to compel. In a transparent attempt to avoid the Arbitration Agreement, Plaintiff filed this lawsuit challenging *Uber's* business model as a purported price-fixing scheme, but named *Uber's CEO* Mr. Kalanick, a non-signatory to the Arbitration Agreement, as the sole defendant, while omitting Uber, a signatory, from the proceedings. This procedural sleight of hand does not relieve Plaintiff of his contractual obligation to arbitrate.

*First*, Mr. Kalanick has not waived his right to compel arbitration. Mr. Kalanick has consistently asserted his right to arbitration, including—most recently—in the form of affirmative defenses based on the Arbitration Agreement. *See* DE 42 ¶¶ 143, 147. Any statements that he was not seeking to compel arbitration were limited specifically to his motion to dismiss—predicated on a class waiver that he believed could be enforced separate and apart from the Arbitration Agreement, *e.g.*, DE 23 at 21 & n.9; DE 28 at 28 & n.10; DE 34 at 10; DE 41 at 2—and did not relinquish Mr. Kalanick's right to compel arbitration *separate from* that motion.

*Second,* the law is well settled that a non-signatory employee is covered by his signatory-employer's arbitration agreement where the employee acted as the signatory's agent. *See Marcus v. Frome*, 275 F. Supp. 2d 496, 505 (S.D.N.Y. 2003); *Dryer v. L.A. Rams*, 40 Cal. 3d 406, 418 (1985). Because Plaintiff alleges that Mr. Kalanick was involved in Uber's purported price-fixing scheme in his capacity as Uber's CEO and manager of operations (*see* Am. Compl. ¶¶ 1, 3, 9, 86), Mr. Kalanick is protected by Uber's Arbitration Agreement.

*Third,* Plaintiff should be estopped from avoiding arbitration of his claims against Mr. Kalanick because those claims are intertwined with the Terms that include the Arbitration Agreement, and because Plaintiff consistently treats Mr. Kalanick and Uber as interchangeable in his pleadings and in nearly identical discovery requests served on Mr. Kalanick and Uber. *See JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004); *JSM Tuscany, LLC v. Super. Ct.*, 193 Cal. App. 4th 1222, 1238 (2011).

*Fourth,* the Arbitration Agreement is valid and enforceable (*see, e.g.*, *Lanier v. Uber Techs., Inc.*, No. 15-cv-09925 (BRO), DE 25 at 4-7 (C.D. Cal. May 11, 2016) (confirming the validity of a similar Uber rider agreement and compelling arbitration)), and encompasses Plaintiff's claims. The terms of the Arbitration Agreement are fair—indeed generous—to the rider, as demonstrated below. These terms require that "any" claim "arising out of or relating to this Agreement or the use of [Uber's] Service or Application" must be "settled by binding arbitration." DE 29-1 at 8-9. Plaintiff's claims that Uber's business model amounts to price-fixing and that his alleged injuries arise from his use of the application and service fall squarely within the broad scope of the Arbitration Agreement.

For all of these reasons and those discussed further below, the Court should dismiss this action and compel arbitration of Plaintiff's claims.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed a Complaint against Travis Kalanick, CEO of Uber, alleging violations of the Sherman Act, 15 U.S.C. § 1, and the Donnelly Act, N.Y. Gen. Bus. Law § 340, based on allegations that he "paid higher prices for car service" requested through Uber's "application for smartphone devices."  Am. Compl. ¶¶ 8, 24.  But when Plaintiff registered for an Uber account, he agreed that "any dispute, claim or controversy arising out of or relating to" the Rider Terms or Uber's services "will be settled by binding arbitration."  DE 29-1 at 9; Am. Compl. ¶ 29.

### A.    The Uber Registration Process

Uber is a technology company that enables riders to request transportation services from third-party transportation providers.  Am. Compl. ¶ 2.  Mr. Kalanick is the co-founder and CEO of Uber, and an Uber employee.  Id. ¶¶ 1, 9.  Riders can request transportation services by using the Uber App on their smartphones, and these requests are then transmitted to independent transportation providers who are available to receive transportation requests.  Id. ¶ 24.

Before riders can request transportation services via the Uber App, they must first register by creating an Uber account.  Id. ¶ 28.  Riders can create an account either through the company's website, at https://get.uber.com/sign-up/, or within the Uber App itself.  Plaintiff registered with Uber in order to create his user account.  Id. ¶¶ 7, 29.  Uber's records show that Plaintiff registered using the Uber App on his Samsung Galaxy S5 phone with an Android operating system on October 18, 2014.  Declaration of Vincent Mi, DE 59-3 (filed May 24, 2016) ("Mi Decl.") ¶ 3.  Registration using the Uber App is straightforward.  During late 2014, when Plaintiff registered for Uber, this process involved two basic steps, each of which was confined to a single screen on the user's smartphone with no scrolling required:  (1) Register; and (2) Payment.  Id.

After successfully downloading the Uber App and clicking the "Register" button, the user was prompted on the first screen, titled "Register," to enter his name, email address, mobile phone number, and a password, or to sign up with the user's Google+ or Facebook account. *Id.* ¶ 5a. According to Uber's records, Plaintiff did not sign up using Google+ or Facebook. *Id.* For users who do not sign up using Google+ or Facebook, after filling in the above fields, the user can then advance to the next screen by clicking "Next." *Id.*

On the second and final screen, the user is prompted to enter his credit card information, or to opt to make payments using PayPal or Google Wallet. *Id.* ¶ 5b. Plaintiff entered his credit card information in the text box provided. *Id.* The second screen includes the following notice: "By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY." *Id.* The phrase "TERMS OF SERVICE & PRIVACY POLICY" is in all-caps, underlined, and in bright blue text, all of which set the text apart from other text on the screen and indicate a hyperlink. *Id.* The hyperlink is immediately visible when the user arrives on this second screen. If the hyperlink is clicked, the user is taken to a screen that contains a button that accesses the "Terms and Conditions" and "Privacy Policy" then in effect. *Id.* The user must then click the "Register" button, which appears directly above the link to the terms on the final screen, to complete the registration process. *Id.* ¶ 5c. Plaintiff could not have completed the registration process and requested a ride without completing these steps. *Id.*

**B.     The Arbitration Agreement**

The Uber Rider Terms to which Plaintiff agreed contain several sections, separated by bolded subheadings. The first section provides that the Terms "constitute a legal agreement" between the rider and Uber, and "[i]n order to use the Service … and the associated Application … [the rider] must agree to the terms and conditions that are set out below." DE 29-1 at 2.

Another section, entitled "Dispute Resolution" (DE 29-1 at 8-9), states:

4

You and Company agree that any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof or the use of the Service or Application (collectively, **"Disputes"**) will be settled by binding arbitration, except that each party retains the right to bring an individual action in small claims court and the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights. **You acknowledge and agree that you and Company are each waiving the right to a trial by jury or to participate as a plaintiff or class User in any purported class action or representative proceeding**….

. . . .

Arbitration Rules and Governing Law.  The arbitration will be administered by the American Arbitration Association ("AAA") in accordance with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the "AAA Rules") then in effect, except as modified by this "Dispute Resolution" section.  (The AAA Rules are available at www.adr.org/arb_med or by calling the AAA at 1-800-778-7879.)  The Federal Arbitration Act will govern the interpretation and enforcement of this Section.

*Id.* at 9.

The terms of the Arbitration Agreement favor the rider:  (1) They permit the rider to arbitrate a dispute in the county where he or she resides. (2) They allow for recovery of attorneys' fees only by the rider, not Uber. (3) They require Uber to cover arbitrator fees for non-frivolous claims.  *Id.*

### C.    Procedural History

On December 16, 2015, notwithstanding his agreement to arbitrate "any dispute, claim or controversy arising out of or relating to" Uber's services or application (DE 29-1 at 9), Plaintiff filed his Complaint in this Court (DE 1), which he then amended on January 29, 2016 (DE 26).

Although all of Plaintiff's claims arise out of or relate to Uber's Rider Terms, application, and services, Plaintiff brought his claims against Mr. Kalanick individually, as co-founder and CEO of Uber.  Mr. Kalanick moved to dismiss on February 8, 2016 (DE 28), asserting that this dispute is subject to arbitration under the Rider Terms (*id.* at 28 n.10).  The Court denied the motion on March 31, 2016, concluding that, because Mr. Kalanick had not yet sought to compel

5

arbitration, Plaintiff could continue pursuing his class action.  DE 37 at 23 n.8.  Mr. Kalanick moved for reconsideration of the class waiver ruling, which the Court denied.  DE 44 at 1-2, 7.

On April 22, 2016, Uber and Mr. Kalanick were both named as defendants in a copycat litigation asserting the same claims set forth in Plaintiff's Amended Complaint.  *Swink v. Uber Techs., Inc.*, No. 16-cv-1092 (KPE), DE 2 (S.D. Tex. Apr. 22, 2016).  Based in part on this lawsuit, and the risk that Uber may be collaterally estopped from disputing antitrust liability in the *Swink* case if this Court were to rule in favor of Plaintiff on the merits, Uber moved to intervene, and Mr. Kalanick moved to join Uber, in this case.  DE 47 at 10; DE 59 at 11.

## ARGUMENT

Congress's "clear intent" in enacting the Federal Arbitration Act (the "FAA") was "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). The Second Circuit recognizes this "preference for enforcing arbitration agreements applies even when the claims at issue are federal statutory claims …."  *Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 486 (2d Cir. 2013).  Accordingly, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  "The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  *Khanna v. Am. Express Co.*, No. 11-cv-6245 (JSR), 2011 WL 6382603, at *2 (S.D.N.Y. Dec. 14, 2011) (quoting *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000)); *accord Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev.*, 55 Cal. 4th 223, 247 (Cal. 2012).

A.     **Where the FAA Governs the Parties' Agreement and This Dispute, the Arbitrator Should Decide All Questions of Arbitrability**

There is no dispute that Plaintiff agreed to be bound by the Arbitration Agreement. Plaintiff created an Uber account on October 18, 2014 (Mi Decl. ¶ 3) and concedes that, "[t]o become an Uber account holder, an individual first must agree to Uber's terms and conditions and privacy policy" (Am. Compl. ¶ 29).   Because the Arbitration Agreement in the Terms is governed by the FAA, and because Plaintiff's claims fall within the scope of the Arbitration Agreement, Plaintiff is bound by the agreement's provisions requiring the resolution of disputes by binding arbitration, delegating threshold arbitrability issues to the arbitrator, and waiving any right to representative or class proceedings.   Accordingly, the Court should refer the entire proceeding to arbitration.

Both the express terms of the Arbitration Agreement and the nature of the transactions at issue confirm that the FAA governs.   First, the Arbitration Agreement's statement that "[t]he Federal Arbitration Act will govern the interpretation and enforcement" of the Agreement (DE 29-1 at 9) mandates application of the FAA.   *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 442-43, 447 (2006).  In addition, the FAA applies when the transactions at issue affect interstate commerce (*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274-77 (1995); *see, e.g.*, Am. Compl. ¶¶ 13, 19 (alleging conduct affecting "interstate trade and commerce")), including transactions where Internet technologies transmit user requests across the country (*Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 26 n.11 (2d Cir. 2002)).

Because "arbitration is a matter of contract, parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."   *Rent-A-Center West v. Jackson*, 561 U.S. 63, 68-69 (2010). Gateway arbitrability questions that are properly delegated to the arbitrator include

7

whether the arbitration right has been waived and whether a non-signatory may compel arbitration under principles of equitable estoppel. *Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38*, 351 F.3d 43, 45 (2d Cir. 2003) ("disputes about such defenses to arbitrability as waiver [and] estoppel … are presumptively reserved for the arbitrator's resolution"). As this Court recently recognized, "the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability." *Queens Boulevard 40th Owners Corp. v. Figueroa*, No. 15-cv-1433 (JSR), 2015 WL 1938185, at *3 (S.D.N.Y. Apr. 22, 2015) (quoting *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84 (2002)). Similarly, the Second Circuit has expressly held that the question whether a signatory to an arbitration agreement is estopped from avoiding arbitration with the non-signatory is properly delegated to an arbitrator to resolve in the first instance. *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 209 (2d Cir. 2005) ("a non-signatory can compel a signatory to arbitrate under an agreement where the question of arbitrability is itself subject to arbitration").[1]

The Arbitration Agreement in this case delegates gateway questions of arbitrability to the arbitrator by incorporating the AAA Commercial Arbitration Rules. DE 29-1 at 9. Specifically, Rule 7(a) of the AAA Rules provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Commercial Arbitration Rules at R-7(a) (https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG _004103) (effective October 1, 2013; last accessed May 31, 2016). The Second Circuit has held that an arbitration agreement incorporating this very AAA rule "serves as clear and unmistakable

---

[1] For issues that turn on application of state law, such as whether an arbitration agreement is unconscionable, the choice of law analysis is also properly delegated to the arbitrator. *See Zurich Ins. Co. v. Ennia Gen. Ins. Co.*, 882 F. Supp. 1438, 1440 (S.D.N.Y. 1995) ("the issue of the law to be applied in the arbitration proceeding . . . is for the arbitration panel").

evidence of the parties' intent to delegate such issues to an arbitrator." *Contec*, 398 F.3d at 208; *see id.* ("whether the arbitration rights under [an agreement] were validly assigned [to a non-signatory defendant] is an issue …. within the jurisdiction of the arbitrator pursuant to AAA Rule R-7(a) as incorporated into the [agreement]"); *accord Laumann v. N.H.L.*, 989 F. Supp. 2d 329, 334 & n.18, 338 (S.D.N.Y. 2013) (applying AAA Rule R-7, where "there is a legitimate dispute about the scope and applicability of the [arbitration] clause, the threshold question of arbitrability must be referred to the arbitration").

Because "[t]here can be no doubt that the parties' Arbitration Agreement delegates issues of arbitrability to an arbitrator, not a court" under the AAA rules incorporated into Meyer's User Agreement with Uber (*Contec*, 398 F.3d at 208), the Court must leave any arbitrability questions, including questions about Mr. Kalanick's right to invoke the Arbitration Agreement and any claim that he has waived that right, for the arbitrator to decide in the first instance.

**B.     Even if the Court Were to Address Questions of Arbitrability, Mr. Kalanick Is Entitled to Invoke the Valid and Enforceable Arbitration Agreement**

Given the foregoing, this Court need not proceed any further to determine that this dispute rightfully belongs in arbitration.  However, if this Court rules on arbitrability, the Court's role under the FAA is to determine "(1) whether there exists a valid agreement to arbitrate at all under the contract in question ... and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement."  *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp*., 246 F.3d 219, 226 (2d Cir. 2001) (citation omitted).  "[T]he [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

### 1.      The Dispute Falls Within the Scope of the Arbitration Agreement

Under the FAA, a court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc.*, 475 U.S. at 650.  Here, the Arbitration Agreement provides that "any dispute, claim or controversy arising out of or relating to this Agreement … or the use of the Service or Application (collectively, 'Disputes') will be settled by binding arbitration [or] in small claims court."  DE 29-1 at 9.  Courts are especially deferential to "broad" arbitration agreements, such as this one, which are "presumptively applicable to disputes involving matters going beyond the interpretation or enforcement of particular provisions of the contract." *JLM Indus.,* 387 F.3d at 172 (quotations and alterations omitted).

Plaintiff's self-described "Nature of the Suit" demonstrates that this case arises out of and relates to Uber's services and application, both of which are at the heart of the Rider Terms.  Plaintiff challenges the very lawfulness of Uber's service and application:  "Uber has a simple but illegal business plan" (Am. Compl. ¶ 1); Uber was "designed … to be a price fixer" (*id.* ¶ 2); "Uber's essential role … [is] to fix prices among competing drivers" (*id.* ¶ 4).  All of Plaintiff's allegations, in one way or another, "arise out of or relate" to Uber's services and application. *See, e.g.*, Am. Compl. ¶¶ 8-9, 21-37, 77, 89.  Indeed, Plaintiff claims that his injuries flow from overpaying for car service by virtue of the allegedly "price-fixed fares" "set by the Uber algorithm," and that the Uber algorithm is a core function of the Uber App.  *See id.* ¶¶ 2, 8, 54.

Moreover, "[i]f the allegations underlying the claims touch matters covered by the parties' contracts, then those claims must be arbitrated." *JLM Indus.*, 387 F.3d at 172; *see also In re Currency Conversion Fee Antitrust Litig.(Currency Conversion I)*, 265 F. Supp. 2d 385, 406 (S.D.N.Y. 2003).  Plaintiff's price-fixing claims are "collateral matters" and "touch matters" within the Rider Terms.  *Currency Conversion I*, 265 F. Supp.2d at 410 (plaintiffs' price-fixing

10

claims "touch matters" covered by cardholder agreements containing arbitration clause); *JLM Indus.*, 387 F.3d at 176 (the term "collateral matters," however defined, encompassed plaintiff's Sherman Act claims).  Moreover, broad arbitration clauses cover price-fixing claims even where the plaintiff alleges "a conspiracy which was formed *independently* of the specific contractual relations between the parties." *JLM Indus.*, 387 F.3d at 173, 175.

### 2.      Mr. Kalanick Has Not Waived His Right to Arbitration

Mr. Kalanick has timely filed this motion, which seeks to vindicate his right to arbitration while avoiding any unnecessary expenditure of judicial resources or unfair prejudice to Plaintiff. *See La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 160 (2d Cir. 2010) (linking timeliness with "concern for judicial economy").  "In determining whether a party has waived its right to arbitration by expressing its intent to litigate the dispute in question, we consider the following three factors: (1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *Id.* at 159.

"In view of the 'overriding federal policy favoring arbitration,'" federal courts apply a strong presumption *against* waiver of a party's right to arbitration, such that "any doubts concerning whether there has been a waiver are resolved in favor of arbitration." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 229 (2d Cir. 2001); *see Moses H. Cone,* 460 U.S. at 24-25 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").  Accordingly, "waiver is not to be lightly inferred." *Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 461 (2d Cir. 1985); *see Doctor's Associates, Inc. v. Stuart*, 85 F.3d 975, 981 (2d Cir. 1996) ("The waiver

determination must be [made] . . . with a healthy regard for the policy of promoting arbitration"). "The party seeking to establish a waiver of arbitration carries a heavy burden." *Application of ABN Int'l Capital Markets Corp.*, 812 F. 418, 420 (S.D.N.Y.) *aff'd* 996 F.2d 1478 (2d Cir. 1993).

Mr. Kalanick has consistently asserted that Plaintiff signed a valid and enforceable arbitration agreement, and that he has the right to compel arbitration of Plaintiff's claims. Specifically, Mr. Kalanick has repeatedly indicated:

> Although Mr. Kalanick does not seek to compel arbitration here, arbitration would be mandated for the reasons explained below if Mr. Kalanick sought to enforce the arbitration provision of the User Agreement. Mr. Kalanick does not waive and expressly reserves his right to move to compel arbitration in other cases arising out of the User Agreement.

DE 23 at 21 & n.9; DE 28 at 28 & n.10 (same). As a result, Mr. Kalanick has not "relinquished" his right to arbitration. DE 44 at 9. Mr. Kalanick repeatedly underscored that although he did not seek to enforce the arbitration agreement in the motion to dismiss, but "arbitration would be mandated if [he] sought to enforce the arbitration provision of the User Agreement." *Id.* (emphasis added). These statements were limited specifically to the motion to dismiss, which was predicated on a class waiver that Mr. Kalanick believed could be enforced separate from the Arbitration Agreement, and was without prejudice to Mr. Kalanick's right to seek arbitration at a later date.[2]

---

[2] Mr. Kalanick argued in the motion to dismiss, and in his subsequent motion for reconsideration, that he did "not need to compel arbitration to enforce the class waiver" in the User Terms, which he contended was a stand-alone provision, separate from the Arbitration Agreement. DE 41 at 2; *see id.* at 5-9; DE 34 at 10 ("the class action waiver is not dependent on the arbitration clause"); DE 23 at 21. He never stated that he was voluntarily relinquishing his right to seek to compel arbitration pursuant to the terms of the Arbitration Agreement in a subsequent motion.

Moreover, Mr. Kalanick's statement that he "reserves his right to move to compel arbitration in other cases" cannot constitute an express waiver of his right to enforce arbitration *in this case*. *Id.* To hold otherwise would be to lightly infer an express waiver of Mr. Kalanick's arbitration rights based on mere negative implication—in direct contravention of the well-established rule that any ambiguity is to be resolved *against* a finding of waiver. *See, e.g.*, *Cont'l Ins. M/V NIKOS N*, No. 00-cv-7985 (RLC), 2002 WL 530987, at *6 (S.D.N.Y. Apr. 9, 2002) ("Resolving all ambiguities in favor of arbitration, … the court cannot say that these particular actions by [defendant] constitute a waiver of its right to compel arbitration."); *Bechtel do Brasil Construcoes Ltda. UEG Araucaria Ltda.*, 638 F.3d 150, 158 (2d Cir. 2011) (all "ambiguities must be resolved in favor of arbitration"); *LG Elecs., Inc. Wi-Lan USA, Inc.*, 623 F. App'x 568, 569 (2d Cir. 2015) (doubts must be resolved against waiver of arbitration right). Considered in their full context, these statements do not clearly and unambiguously convey any intent to relinquish Mr. Kalanick's right to arbitration. Indeed, in his Answer to the Complaint, Mr. Kalanick expressly asserted affirmative defenses based on the Arbitration Agreement. *See* DE 42 ¶¶ 143, 147.

In any event, Mr. Kalanick has not engaged in conduct demonstrating any intent to waive his right to arbitrate. Mere participation in a lawsuit through preliminary motion practice is wholly consistent with a party retaining its right to invoke arbitration rights at a later point in the litigation. *See Jock v. Sterling Jewelers, Inc.*, 564 F. Supp. 2d 307, 311 (S.D.N.Y. 2008) (Rakoff, J.) (holding that initiating a lawsuit did not constitute waiver, as "[t]he Second Circuit … has held that courts should find such a waiver only if a party engages in protracted litigation that results in prejudice") (quotations omitted); *Mahmoud Shaban & Sons Co. v. Mediterranean Shipping Co., S.A.*, 2013 WL 5303761, at *1-2 (S.D.N.Y. Sept. 20, 2013) ("it is well established

13

that [filing] a motion to dismiss before moving to compel arbitration does not in itself waive [the] right to enforce the arbitration clause after the motion to dismiss is resolved.").

Moreover, preliminary motion practice does not, by itself, constitute unfair prejudice. *See Thyssen, Inc. v. Calypso Shipping Corp.*, 310 F.3d 102, 105 (2d Cir. 2002) ("The key to a waiver analysis is prejudice").  Prejudice can come in two forms:  (1) "substantive prejudice," which may occur where a party loses a legal issue on the merits and attempts to relitigate it through arbitration; and (2) "prejudice due to excessive cost and time delay."  *Id.*  Neither form is present here.

*First*, Plaintiff has not been substantively prejudiced because the "mere filing" and litigation of a motion to dismiss does not constitute substantive prejudice.  *Murray v. UBS Securities, LLC*, 2014 WL 285093, at *5 (S.D.N.Y Jan. 27, 2014).  Courts have consistently declined to find prejudice where parties have done little more than litigate a pleadings challenge. *See Rush v. Oppenheimer & Co.*, 779 F.2d 885, 888 (2d Cir. 1985) ("a motion [to dismiss], however, does not waive the right to arbitrate"); *Scott v. Merrill Lynch*, No. 89-cv-3479 (MJL), 1992 WL 245506, at *3 (S.D.N.Y. Sept. 14, 1992) (no waiver despite motion to dismiss, document productions, interrogatory responses, document demands, and answer to complaint). The filing of a motion to dismiss does not constitute "the litigation of substantial issues" such that arbitration assumes the form of relitigation.  *Sweater Bee by Banff*, 754 F.2d at 461-66 (citing cases illustrating litigation of substantial issues, which involved a full judicial trial on the merits or a motion for summary judgment).  Rather than inflict prejudice, a motion to dismiss may actually *improve* the other party's position in arbitration by "alert[ing] [him] to glaring deficiencies in his complaint and present[ing] an opportunity for their rectification."  *Jung v. Skadden, Arps, Slate, Meagher & Flom LLP*, 434 F. Supp. 2d 211, 217 (S.D.N.Y. 2006);

14

*Murray*, 2014 WL 285093, at *5 ("Plaintiff has been provided with a preview of what to expect during arbitration").

*Second*, the short duration of the litigation so far—just two months after the Court's motion to dismiss opinion and five months after the case has been filed—has not created unduly prejudicial cost or delay. *See, e.g.*, *Becker v. DPC Acquisition Corp.*, 2002 WL 1144066, at *12 (S.D.N.Y. May 30, 2002) (no prejudice after 14 months of litigation); *Thomas v. A.R. Baron & Co.*, 967 F. Supp. 785, 789 (S.D.N.Y. 1997) (no waiver after 18 months of litigation); *Kulukundis Shipping Co. v. Amtorg Trading Corp.*, 126 F.2d 978, 980 (2d Cir. 1942) (no waiver despite waiting nine months to invoke arbitration, two months before trial).[3]  Moreover, "legal expenses inherent in litigation, without more, do not constitute prejudice requiring a finding of waiver." *Doctor's Assocs. v. Distajo*, 107 F.3d 126, 134 (2d Cir. 1997) (quotations omitted).[4]

### 3.    New York Law Governs Other Arbitration Agreement Enforceability Issues

With respect to other enforceability issues, this Court should apply New York substantive law.  The Arbitration Agreement contains no choice-of-law provision, and in diversity cases, federal courts must follow the prevailing rules in the state where they sit.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386,

---

[3]  *See also, e.g.*, *Rush*, 779 F.2d at 887 (no waiver where party waited eight months before invoking arbitration, during which time it participated in "extensive discovery, [and brought] a motion to dismiss"); *Mahmoud Shaban*, 2013 WL 5303761, at *1-2 (no waiver despite motion to dismiss and expense and delay of seven depositions).

[4]  Mr. Kalanick has not waived his right to compel arbitration as to putative class members, who are not parties until class certification.  *See, e.g.*, *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379 (2011) (it is "surely erro[r]" to conclude unnamed class member is a party "before the class is certified").  Mr. Kalanick expressly reserves his right to file a motion to compel arbitration of claims asserted by putative class members if and when a class is certified.

393 (2d Cir. 2001).[5]  New York law therefore governs any contract enforceability issues that are not governed by the FAA.

Although Mr. Kalanick previously observed that either New York or California law could apply based on the pleadings alone (DE 41 at 7 n.3), material facts now available to the Court confirm that Plaintiff has no relevant contacts with California.  *See* Mi Decl. ¶ 4 (explaining that Plaintiff has taken as many rides in New York as he has in any other location, and has not taken any rides in California).[6]  Further, Plaintiff has admitted that all of his "claims in this case arise out of activities that relate to New York State."  Am. Compl. ¶ 16; *see also id*. ¶ 7 (alleging that the "place of performance" and the "subject matter of the contract" included New York); ¶¶ 12-16, 18, 87-89 (alleging that Mr. Kalanick and Uber conduct significant business in New York, and that those activities give rise to his claims); *id*. ¶¶ 134-40 (asserting claim under New York law).  Thus, New York law applies given that New York's "choice-of-law rules require application of the law of the state having the most significant contacts with the matter in dispute."  *Philips Credit Corp. v. Regent Health Grp., Inc*., 953 F. Supp. 482, 501 (S.D.N.Y. 1997).  In light of the evidence now available, no factor favors application of California law

---

[5]  *See, e.g.*, *Loreley Fin. No. 3 Ltd. v. Wells Fargo Sec.*, 797 F.3d 160, 170 & n.5 (2d Cir. 2015) (concluding that because "Defendants transacted business within New York giving rise to Plaintiffs' causes of action," the choice-of-law result is "the same, regardless of whether we analyze choice of law under federal or New York law"); *see, e.g., Bruster v. Uber Techs., Inc.*, No. 15-CV-2653, DE 19 at 7-8 (N.D. Ohio May 23, 2016) (same; applying Ohio law); *Suarez v. Uber Techs., Inc.*, 2016 WL 2348706, at *4 (M.D. Fla. May 4, 2016) (same; applying Florida law); *Varon v. Uber Techs., Inc.*, 2016 WL 1752835, at *3 (D. Md. May 3, 2016) (same; applying Maryland law).

[6]  On the motion to dismiss, Mr. Kalanick did not—and could not—introduce evidence regarding the place of performance, as those facts were not alleged in Plaintiff's pleading. *See Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008) ("a district court must confine itself to the four corners of the complaint when deciding a motion to dismiss"). However, this evidence may be considered on a motion to compel arbitration.  *See Walsh v. WOR Radio*, 531 F. Supp. 2d 623, 626 n.3 (S.D.N.Y. 2008).

16

other than the location of Uber's headquarters.  But even if California law applied, this Court should resolve this motion in the same way—compel arbitration.  *See* Sections B.4-B.6.

### 4.      Mr. Kalanick Has a Right to Enforce the Arbitration Agreement

Plaintiff has deliberately attempted to skirt his agreement to arbitrate disputes with Uber by filing suit against Mr. Kalanick individually.  *See* DE 59 at 9-14.  The Court should not allow Plaintiff to evade his contractual obligations so easily.  *See Marcus v. Frome*, 275 F. Supp. 2d 496, 505 (S.D.N.Y. 2003) ("were claims against employees or disclosed agents not also subject to arbitration, it would be too easy to circumvent the agreements by naming individuals as defendants instead of the entity Agents themselves") (quotations omitted); *Coleman v. Nat. Movie-Dine, Inc.*, 449 F.Supp. 945, 948 (E.D. Pa. 1978) ("Arbitration should not be foreclosed simply by adding persons to a civil action who are not parties to the arbitration agreement because such an inclusion would thwart the federal policy in favor of arbitration.").[7]

As **CEO of Uber**, Mr. Kalanick is covered by the protections of the Arbitration Agreement in Plaintiff's Rider Terms **with Uber**.  *See Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993) ("employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement"); *Scher v. Bear Stearns & Co.*, 723 F. Supp. 211, 216 (S.D.N.Y. 1989) ("Acts by employees of one of the parties to a customer agreement are equally arbitrable as acts of the principals as long as the challenged acts fall within the scope of the customer agreement."); *Mosca v. Doctors Assocs.*, 852 F. Supp. 152, 155 (E.D.N.Y. 1993) ("This court will not permit Plaintiffs to avoid arbitration simply by naming individual agents of the party to the arbitration clause and suing them in their individual capacity.").  Additionally, Plaintiff should be estopped from avoiding arbitration of his claims against Mr. Kalanick,

---

[7]  The Court has not yet addressed whether "Mr. Kalanick, as a non-signatory to the User Agreement, may enforce th[e Arbitration Agreement] against plaintiff Meyer."  DE 44 at 7.

because his claims against Mr. Kalanick are intimately entwined with the Rider Terms, and he consistently treats Mr. Kalanick and Uber as interchangeable, both in the Complaint and the nearly identical discovery served on Mr. Kalanick and Uber.  *See JLM Indus.*, 387 F.3d at 177; *accord JSM Tuscany*, 193 Cal. App. 4th at 1238.

### a.      The Agreement Between Plaintiff and Uber Covers Mr. Kalanick, an Employee of Uber

The law is well settled that a non-signatory employee is covered by his employer's contract.  *See Roby*, 996 F.2d at 1360; *see also Mosca*, 852 F. Supp. at 155 ("all of the named defendants are bound by the arbitration clause" given that "[e]ach Defendant employee is an agent of [the employer] and is bound by the arbitration agreement since the acts ascribed to them occurred during and as a result of their employment and agency").  Mr. Kalanick is entitled to invoke the Arbitration Agreement because, as described above, Plaintiff alleges that Mr. Kalanick is the co-founder, CEO, board member, and manager of operations of Uber, and, ***in those capacities***, was personally involved in the alleged antitrust violations.  Am. Compl. ¶¶ 1, 2, 9, 86; *see Arrigo v. Blue Fish Commodities*, 704 F. Supp. 2d 299, 303, 305 (S.D.N.Y. 2010) (even if the CEO "is not a party to the [arbitration agreement], it nevertheless protects him from the instant suit"); *Roby*, 996 F.2d at 1360 (directors of defendant's insurance syndicates, though non-signatories, were entitled to rely on arbitration provisions incorporated into their employers' agreements); *Brener v. Becker Paribas, Inc.*, 628 F. Supp. 442, 451 (S.D.N.Y. 1985) (same); *accord Dryer v. L.A. Rams*, 40 Cal. 3d 406, 418 (Cal. 1985) ("If . . . the individual defendants, though not signatories, were acting as agents for [their principal], then they are entitled to the benefit of the arbitration provisions.").

### b.   Plaintiff Should Be Estopped from Avoiding Arbitration of His Claims Against Mr. Kalanick

Plaintiff must also arbitrate his claims against Mr. Kalanick under principles of equitable estoppel, which "estop a signatory from avoiding arbitration with a non-signatory when the issues the non-signatory is seeking to arbitrate are intertwined with the contract." *Currency Conversion I*, 265 F. Supp. 2d at 402.   In evaluating whether the claims are sufficiently "intertwined" to apply estoppel, "the court must determine:  (1) whether the signatory's claims arise under the subject matter of the underlying agreement; and (2) whether there is a close relationship between the signatory and the non-signatory." *Id.* (quotations omitted); *accord JSM Tuscany*, 193 Cal. App. 4th at 1238.  Both factors are satisfied here.[8]

*First*, Plaintiff's claims are intertwined with the Rider Terms.   Specifically, Plaintiff alleges that "[r]iders using the Uber App have suffered by paying artificially increased fares resulting from this price-fixing conspiracy."   Am. Compl. ¶ 89; *In re A2p SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 478 (S.D.N.Y. 2013) (applying estoppel in an antitrust suit where "the scheme, the harm, and the damages alleged . . . directly relate to and arise from the subject matter" of an agreement containing an arbitration clause).   The Uber App is a primary subject matter of the Rider Terms.  DE 29-1 at 2 ("In order to use the Service (defined below) and the associated Application (defined below) you must agree to the terms and conditions that are set out below.").  Because Plaintiff's claims revolve around allegedly increased fares charged by the

---

[8]  In its ruling on Mr. Kalanick's motion to dismiss, this Court held that Plaintiff "is not equitably estopped from *pursuing a class action suit* against Mr. Kalanick" on the ground that Mr. Kalanick was "not seeking to compel arbitration" at that time.  DE 37 at 23 n.8 (emphasis added).  In ruling on Mr. Kalanick's motion for reconsideration, however, the Court expressly declined to again reach this issue, observing that it "has no occasion to reach" the issue of equitable estoppel.  DE 44 at 6-7.  Now that Mr. Kalanick has moved to compel arbitration, the factual basis for the Court's earlier rulings on this issue has fundamentally changed such that those rulings are no longer operative.

Uber App, which is "at the heart of the underlying contract containing the arbitration agreement," Plaintiff's claims arise under the "subject matter" of the underlying agreement.  *See Currency Conversion I*, 265 F. Supp. 2d at 403 (holding that plaintiffs' price-fixing claims arise under the "subject matter" of the cardholder agreement where plaintiffs alleged that their credit cards were unlawfully charged fixed-currency conversion fees); *accord Turtle Ridge Media Grp. v. Pac. Bell Directory*, 140 Cal. App. 4th 828, 833 (Cal. Ct. App. 2006) (concluding that plaintiff's claims were intertwined with the contract where "its claims against [defendant] arose from its business dealings with [defendants], which the contract and subcontract governed").

*Second*, Plaintiff has undeniably alleged a "close relationship" between Mr. Kalanick and Uber.  The Amended Complaint alleges collusion and interdependent conduct by Mr. Kalanick and Uber:  "Kalanick, Uber, and Uber's driver-partners have entered into an unlawful agreement, combination or conspiracy in restraint of trade."  Am. Compl. ¶ 123; *see Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 75 n.6 (S.D.N.Y. 2012) (holding that estoppel would apply, in the alternative, "given the Amended Complaint's pervasive allegations of interdependent and coordinated misconduct between the nonsignatories and signatory").  Further, Plaintiff consistently treats Mr. Kalanick and Uber as a single unit, alleging that Mr. Kalanick is the "primary facilitator" of Uber's "illegal business plan," and "ultimately controlled" the prices charged through the Uber App.  Am. Compl. ¶¶ 1, 3.  He alleges, for instance, that "Kalanick and Uber are authorized by drivers to control the fares charged to riders," and "Kalanick and Uber artificially set the fares for its driver-partners to charge to riders."  *Id*. ¶ 54.  Although Mr. Kalanick denies that he and Uber are interchangeable or that any basis exists to disregard Uber's corporate form (*see* DE 42 ¶ 2), it is *Plaintiff's* treatment of Mr. Kalanick and Uber that determines whether it may be estopped from avoiding arbitration.  *See Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97-98 (2d Cir. 1999)

(applying estoppel principles where plaintiff treated non-signatory companies and their signatory assignees as though they were "interchangeable" and "as a single unit"); *accord Metalclad Corp. v. Ventana Envtl. Organizational P'ship*, 109 Cal. App. 4th 1705, 1718 (Cal. Ct. App. 2003) (plaintiff estopped from avoiding arbitration where it alleged an "integral relationship between" signatory and non-signatory defendant).  Indeed, the expansive document requests Plaintiff served on Mr. Kalanick seek information regarding all aspects of ***Uber's*** business operations.

### 5.     Plaintiff Assented to the Arbitration Agreement

Plaintiff agreed to be bound by the Rider Terms, including the Arbitration Agreement, because he had adequate notice of the Terms when he registered for an Uber account. *See Specht*, 306 F.3d at 31.  Well-settled contract principles instruct that "[m]utual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract."  *Id.* at 29.  When determining whether parties assented to contract terms, "courts eschew the subjective and look to objective manifestations of intent as established by words and deeds."  *Bar-Ayal v. Time Warner Cable Inc.*, 2006 WL 2990032, at *8 (S.D.N.Y. Oct. 16, 2006).  "[A]n individual who signs or otherwise assents to a contract without reading it (despite having an opportunity to do so) is bound by that contract, including its arbitration provision."  *Id.*

When terms and conditions are made available by hyperlink to a separate screen, "the validity of the ... agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract."  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014).  Applying New York law, the Ninth Circuit recently identified several factors affecting whether a plaintiff would be bound by hyperlinked terms and conditions, including:  "the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design all contribute to whether a reasonably prudent user would have inquiry notice" of the terms and conditions.  *Id.*; *see Whitt v.*

21

*Prosper Funding LLC*, No. 15-cv-136 (GHW), 2015 WL 4254062, at *5 (S.D.N.Y. July 14, 2015) (same).

Plaintiff admits that "[t]o become an Uber account holder, an individual first must agree to Uber's terms and conditions and privacy policy" (Am. Compl. ¶ 29), and he was put on inquiry notice of those terms, including the Arbitration Agreement, when he completed the clear, simple, two-step account registration process.  The second screen of the registration process expressly informed potential registrants:  "By creating an Uber account, you agree to the 'Terms of Service & Privacy Policy,'" with the "Terms of Service & Privacy Policy" distinguished in all-caps, underlined text, and a bright blue color, indicating a hyperlink.  Mi Decl. ¶ 5b. The registration process ends with a push of a button just above this notice.  *Id.*  The registration process thus provides "immediately visible notice of the existence of license terms" (*Specht*, 306 F.3d at 31), and "explicit textual notice that" creating an Uber account "will act as a manifestation of the user's intent to be bound" by those terms (*Nguyen*, 763 F.3d at 1177; *see also, e.g., Lanier v. Uber Techs., Inc.*, No. 15-cv-09925-BRO, DE 25 at 4-7 (C.D. Cal. May 11, 2016) (confirming the validity of a similar Uber rider agreement and compelling arbitration); *Whitt v. Prosper Funding LLC*, No. 15-cv-136-GHW, 2015 WL 4254062, at *5 (S.D.N.Y. July 14, 2015) (plaintiff bound by terms, including arbitration clause, accessible by "conspicuous hyperlink" immediately above a "continue" button, citing an "abundance of persuasive authority")).[9]

---

[9]  *Accord 5381 Partners LLC v. Shareasale.com, Inc*., 2013 WL 5328324, at *4 (E.D.N.Y. Sept. 23, 2013); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837-38 (S.D.N.Y. 2012).

6.      **The Arbitration Agreement Is Not Unconscionable**

Plaintiff cannot establish any basis for avoiding his agreement to arbitrate disputes under New York's law of unconscionability.[10]   On this question, the Court's analysis is limited to whether the Arbitration Agreement—standing alone—is unconscionable.  *See Rent-A-Center*, 561 U.S. at 70-71.  A contract is unconscionable only when it is "so grossly unreasonable … in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms."  *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988).  "[U]nconscionability generally requires both procedural and substantive elements." *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002).  The party opposing arbitration bears the burden of proving unconscionability.  *Bynum v. Maplebear Inc.*, No. 15-cv-6263, 2016 WL 552058, at *6 (E.D.N.Y. Feb. 12, 2016).  Thus, Plaintiff must show a complete "absence of meaningful choice on … [his] part … together with contract terms which are unreasonably favorable to [Uber]."  *Desiderio v. Nat'l Assoc. of Sec. Dealers, Inc.*, 191 F.3d 198, 207 (2d Cir. 1999); *accord Gillman*, 534 N.E.2d at 828.  Plaintiff cannot meet this heavy burden.

Far from being "unreasonably favorable" to either party, the Arbitration Agreement is bilateral and contains rider safeguards.  The agreement:  (1) permits riders (but not Uber) to collect attorneys' fees and expenses if they prevail in arbitration; (2) eliminates potentially prohibitive travel expenses by providing that arbitration proceedings "will be conducted in the county" where the rider resides; and (3) if a rider's claim for damages does not exceed $75,000,

---

[10]   Although New York law applies to unconscionability issues, the standards under California law are the same.  *See Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 914 (Cal. 2015); *Pinnacle Museum Towers*, 55 Cal. 4th at 246 (requiring proof that an arbitration provision is "so one-sided as to 'shock the conscience'").

Uber will pay **all** of the rider's "filing, administrative and arbitrator fees." DE 29-1 at 9. These provisions comprehensively safeguard the rider's access to the arbitral forum.[11]

Plaintiff has characterized the Rider Terms as a contract of adhesion, but this is both incorrect and insufficient to render the Arbitration Agreement invalid. Indeed, *even if* the Arbitration Agreement had been offered "on a 'take it or leave it' basis .... [that] is not sufficient under New York law to render the [arbitration] provision procedurally unconscionable." *Ragone*, 595 F.3d at 122; *accord Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1470 (Cal. Ct. App. 2013) ("Assuming the Agreement here is adhesive in character, this adhesive aspect of an agreement is not dispositive") (internal quotations omitted).[12] This is particularly true where Plaintiff simply "could ... have chosen another service" rather than consent to the Arbitration Agreement. *Ranieri*, 759 N.Y.S.2d at 449; *Desiderio*, 191 F.3d at 207 (requiring proof of complete "absence of meaningful choice").[13] The same is true under California law. *See Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 482 (Cal. Ct. App. 2006) ("There can be no

---

[11] Even if the Court determines that any provision is unconscionable, "the appropriate remedy ... is to sever the improper provision of the arbitration agreement, rather than void the entire agreement." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 124-25 (2d Cir. 2010) (internal citations omitted); *accord Roman v. Super. Ct.*, 172 Cal. App. 4th 1462, 1477 (Cal. Ct. App. 2009) ("the strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement"); Cal. Civ. Code § 1670.5 (authorizing severance).

[12] *See also Carr v. Credit One Bank*, No. 15-cv-6663, 2015 WL 9077314, at *3 (S.D.N.Y. Dec. 16, 2015) ("If acceptance of unwanted vendor terms rendered a contract unconscionable, then *any* contract containing a provision that a counterparty insisted upon would be unconscionable"); *U1it4Less v. FedEx Corp.*, No. 11 Civ. 1713(KBF), 2015 WL 3916247, *4 (S.D.N.Y. June 25, 2015) (standard form contract not unconscionable where there were no "high pressure tactics or deceptive language," and plaintiff acknowledged that other firms provided the same services); *see also Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 787 (2d Cir. 2003); *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009).

[13] *See also U1it4Less, Inc. v. FedEx Corp.*, 2015 WL 3916247, at *4 (S.D.N.Y. June 25, 2015) (no unconscionability where "FedEx was not the only provider of shipping services available to plaintiff"); *Anonymous v. JP Morgan Chase & Co.*, 2005 WL 2861589, at *6 (S.D.N.Y. Oct. 31, 2005); *Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446, 452 (E.D.N.Y. 2004).

oppression establishing procedural unconscionability … when the customer has meaningful choices."); *Dean Witter Reynolds, Inc. v. Super. Ct.*, 211 Cal. App. 3d 758, 771 (Cal. Ct. App. 1989) (same); *see also McCabe v. Dell, Inc.*, 2007 WL 1434972, at *3 (C.D. Cal. Apr. 12, 2007) (distinguishing between employment agreements and agreements concerning a "consumer *non-essential* good," such as Uber's service).  If Plaintiff did not like Uber's Terms, he was free to choose from *any number* of alternative methods for locating transportation services in New York—e.g., similar peer-to-peer ridesharing apps, like Lyft, Gett, or Curb, or traditional providers, like taxi, black car, or other private car services.  Indeed, Plaintiff identified such alternatives in his Complaint. Am. Compl. ¶¶ 96, 100.

Finally, to the extent Plaintiff contends that the class waiver in the Arbitration Agreement is unconscionable, the Supreme Court has squarely foreclosed this argument in the context of arbitration.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 340, 344 (2011); *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1137 (Cal. 2013) ("[T]he FAA preempts the unconscionability of class arbitration waivers in consumer contracts.").[14]

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action and compel arbitration of Plaintiff's claims.

Dated:  June 7, 2016

Respectfully submitted,

/s/ Karen L. Dunn

BOIES, SCHILLER & FLEXNER LLP

---

[14]  Indeed, although this Court held that the class waiver as a *stand-alone provision* could be unconscionable under California's *Discover Bank* rule, both Plaintiff and the Court recognized that such state rules are no longer valid with respect to class waivers in arbitration agreements.  *See* DE 44 at 17-19; DE 43 at 11 (same); *see also Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184, 201 (Cal. 2013).

Karen L. Dunn
William A. Isaacson
Ryan Y. Park
5301 Wisconsin Ave., NW
Washington, DC 20015
Tel: (202) 237-2727
Fax: (202) 237-6131
kdunn@bsfllp.com
wisaacson@bsfllp.com
rpark@bsfllp.com

Alanna C. Rutherford
Peter M. Skinner
Joanna C. Wright
575 Lexington Ave., 7th Floor
New York, NY 10022
Tel: (212) 446-2300
Fax: (212) 446-2350
pskinner@bsfllp.com
arutherford@bsfllp.com
jwright@bsfllp.com

*Attorneys for Defendant Travis Kalanick*

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2016, I filed and therefore caused the foregoing document to be served via the CM/ECF system in the United States District Court for the Southern District of New York on all parties registered for CM/ECF in the above-captioned matter.

/s/ Ryan Y. Park
Ryan Y. Park
