UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                                         :

SPENCER MEYER, individually and on
behalf of those similarly situated,

                         Plaintiffs,         :   Case No. 1:15-cv-9796 (JSR)

           -against-             :

                                        :   **ORAL ARGUMENT REQUESTED**

TRAVIS KALANICK and UBER
TECHNOLOGIES, INC.

                        Defendants.    :
--------------------------------------------------------x

# UBER TECHNOLOGIES, INC.'S MEMORANDUM
# OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION

GIBSON, DUNN & CRUTCHER LLP

Reed Brodsky
200 Park Avenue
New York, NY  10166-0193
Tel: (212) 351-4000
Fax:  (212) 351-4035
RBrodsky@gibsondunn.com

Theodore J. Boutrous, Jr.
Daniel G. Swanson
Nicola T. Hanna
Joshua S. Lipshutz
333 South Grand Avenue
Los Angeles, CA  90071
Tel:  (213) 229-7000
Fax:  (213) 229-7520
TBoutrous@gibsondunn.com
DSwanson@gibsondunn.com
NHanna@gibsondunn.com
JLipshutz@gibsondunn.com

Cynthia E. Richman
1050 Connecticut Avenue, N.W.
Washington, DC  20036

Tel:  (202) 955-8500
Fax:  (202) 467-0539
CRichman@gibsondunn.com

*Attorneys for Defendant Uber Technologies, Inc.*

June 21, 2016

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.............................................................. 2

    A.   The Uber Registration Process.................................................................. 3

    B.   The Arbitration Agreement ........................................................................ 5

    C.   Procedural History ...................................................................................... 6

ARGUMENT ......................................................................................................................... 8

    A.   Plaintiff's Agreement with Uber Requires Arbitration on an Individual Basis of Plaintiff's Claims ................................................................................................. 8

        1.   The FAA Governs the Parties' Agreement and This Dispute................................. 9

        2.   Pursuant to the Arbitration Agreement, the Arbitrator Should Decide Questions of Arbitrability ......................................................................................... 9

    B.   Even If the Court Were to Address Questions of Arbitrability, a Valid and Enforceable Arbitration Agreement Exists Between Plaintiff and Uber ..................... 11

        1.   New York Law Applies to Any Question Regarding the Validity of the Arbitration Agreement ............................................................................................. 11

        2.   Plaintiff Assented to the Arbitration Agreement ................................................. 13

        3.   The Dispute Falls Within the Scope of the Arbitration Agreement...................... 15

        4.   The Arbitration Agreement Is Not Unconscionable ........................................... 17

        5.   Uber Has the Right to Enforce the Arbitration Agreement as to All Claims in the Case, Including Claims Against Mr. Kalanick ........................................... 20

            a.   The Agreement Between Plaintiff and Uber Covers Mr. Kalanick, an Employee of Uber ...................................................................................... 22

            b.   Plaintiff Should Be Estopped from Avoiding Arbitration of His Claims Against Mr. Kalanick........................................................................ 23

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*5381 Partners LLC v. Shareasale.com, Inc.*,
   2013 WL 5328324 (E.D.N.Y. Sept. 23, 2013) ....................................................................15

*Allied-Bruce Terminix Cos. v. Dobson*,
   513 U.S. 265 (1995)..................................................................................................................9

*Am. Express Co. v. Italian Colors Rest.*,
   133 S. Ct. 2304 (2013).............................................................................................................22

*In re Am. Express Merch. Lit.*,
   2006 WL 662341 (S.D.N.Y. Mar. 16, 2006) ..........................................................................17

*Anonymous v. JP Morgan Chase & Co.*,
   2005 WL 2861589 (S.D.N.Y. Oct. 31, 2005) .........................................................................19

*Apollo Comput., Inc. v. Berg*,
   886 F.2d 469 (1st Cir. 1989)...................................................................................................10

*Arrigo v. Blue Fish Commodities, Inc.*,
   704 F. Supp. 2d 299 (S.D.N.Y. 2010).....................................................................................22

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 340 (2011)...........................................................................................................18, 19

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986)............................................................................................................8, 15

*Auten v. Auten*,
   308 N.Y. 155 (1954) ...............................................................................................................12

*Bar-Ayal v. Time Warner Cable Inc.*,
   2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006) ........................................................................14

*Brener v. Becker Paribas, Inc.*,
   628 F. Supp. 442 (S.D.N.Y. 1985) .........................................................................................22

*Brennan v. Bally Total Fitness*,
   198 F. Supp. 2d 377 (S.D.N.Y. 2002).....................................................................................17

*Bruster v. Uber Techs., Inc.*,
   No. 15-CV-2653, DE 19 (N.D. Ohio May 23, 2016) .............................................................12

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006) ...................................................................................9

*Bynum v. Maplebear Inc.*,
    2016 WL 552058 (E.D.N.Y. Feb. 12, 2016) ...........................................17

*Carr v. Credit One Bank*,
    2015 WL 9077314 (S.D.N.Y. Dec. 16, 2015) .........................................19

*Clinton v. Oppenheimer & Co., Inc.*,
    824 F. Supp. 2d 476 (2011) ......................................................................8

*Contec Corp. v. Remote Solution Co.*,
    398 F.3d 205 (2d Cir. 2005) ....................................................................10

*In re Currency Conversion Fee Antitrust Litig.*,
    265 F. Supp. 2d 385 (S.D.N.Y. 2003) ...............................16, 17, 23, 24

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) .................................................................................11

*Dean Witter Reynolds, Inc. v. Super. Ct.*,
    211 Cal. App. 3d 758 (1989) ...................................................................20

*Desiderio v. Nat'l Assoc. of Sec. Dealers, Inc.*,
    191 F.3d 198 (2d Cir. 1999) ...............................................................18, 19

*Dryer v. L.A. Rams*,
    40 Cal. 3d 406 (1985) ..............................................................................22

*Fallo v. High-Tech Inst.*,
    559 F.3d 874 (8th Cir. 2009) ..................................................................10

*Fieger v. Pitney Bowes Credit Corp.*,
    251 F.3d 386 (2d Cir. 2001) ....................................................................12

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) ....................................................15

*Gillman v. Chase Manhattan Bank, N.A.*,
    534 N.E.2d 824 (N.Y. 1988) ..............................................................17, 18

*Green Tree Fin. Corp. v. Randolph*,
    531 U.S. 79 (2000) ....................................................................................8

*Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*,
    246 F.3d 219 (2d Cir. 2001) ....................................................................11

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002)..................................................................................9

*Hubbert v. Dell Corp.*,
    835 N.E.2d 113 (Ill. App. Ct. 2005) ...................................................15

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
    387 F.3d 163 (2d Cir. 2004)..................................................16, 17, 21

*JSM Tuscany, LLC v. Super. Ct.*,
    193 Cal. App. 4th 1222 (2011) ...........................................................23

*Khanna v. Am. Express Co.*,
    2011 WL 6382603 (S.D.N.Y. Dec. 14, 2011) .....................................8

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941)............................................................................11

*Lanier v. Uber Techs., Inc.*,
    No. 15-cv-09925-BRO, DE 25 (C.D. Cal. May 11, 2016) .............2, 15

*Laumann v. Nat'l Hockey League*,
    989 F. Supp. 2d 329 (S.D.N.Y. 2013).................................................10

*Leadertex v. Morganton Dyeing & Finishing Corp.*,
    67 F.3d 20 (2d Cir. 1995)....................................................................20

*Loreley Fin. No. 3 Ltd. v. Wells Fargo Sec.*,
    797 F.3d 160 (2d Cir. 2015)................................................................11

*Marcus v. Frome*,
    275 F. Supp. 2d 496 (S.D.N.Y. 2003).................................................21

*McCabe v. Dell, Inc.*,
    2007 WL 1434972 (C.D. Cal. Apr. 12, 2007) .....................................20

*Metalclad Corp. v. Ventana Envtl. Organizational P'ship*,
    109 Cal. App. 4th 1705 (2003) ...........................................................25

*Mosca v. Doctors Assocs.*,
    852 F. Supp. 152 (E.D.N.Y. 1993) .................................................21, 22

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)............................................................................7, 11

*Nayal v. HIP Network Servs. IPA, Inc.*,
    620 F. Supp. 2d 566 (S.D.N.Y. 2009).................................................19

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ...............................................................................13, 14, 15

*Nicosia v. Amazon.com, Inc.*,
  84 F. Supp. 3d 142, 150 (E.D.N.Y. 2015) ...........................................................................15

*Nitro-Lift Techs., L.L.C. v. Howard*,
  133 S. Ct. 500 (2012).........................................................................................................11

*Novak v. Overture Servs., Inc.*,
  309 F. Supp. 2d 446 (E.D.N.Y. 2004) .................................................................................19

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys.*,
  369 F.3d 645 (2d Cir. 2004)................................................................................................16

*Parisi v. Goldman, Sachs & Co.*,
  710 F.3d 483 (2d Cir. 2013)..................................................................................................8

*Peng v. First Republic Bank*,
  219 Cal. App. 4th 1462 (2013) ...........................................................................................19

*Philips Credit Corp. v. Regent Health Grp., Inc.*,
  953 F. Supp. 482 (S.D.N.Y. 1997) ......................................................................................12

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev.*,
  55 Cal. 4th 223 (2012) ..................................................................................................8, 18

*Qualcomm Inc. v. Nokia Corp.*,
  466 F.3d 1366 (Fed. Cir. 2006)...........................................................................................10

*Ragone v. Atl. Video at Manhattan Ctr.*,
  595 F.3d 115 (2d Cir. 2010)...........................................................................................18, 19

*Ranieri v. Bell Atl. Mobile*,
  759 N.Y.S.2d 448 (N.Y. App. Div. 2003) ...........................................................................19

*Rent-A-Center West v. Jackson*,
  561 U.S. 63 (2010)........................................................................................................9, 17

*Richard BB v. Louis B (In re Estate of Rose B.B.)*,
  752 N.Y.S.2d 142 (N.Y. App. Div. 2002) ...........................................................................14

*Roby v. Corp. of Lloyd's*,
  996 F.2d 1353 (2d. Cir. 1993)........................................................................................21, 22

*Roman v. Super. Ct.*,
  172 Cal. App. 4th 1462 (2009) ...........................................................................................18

*Sanchez v. Valencia Holding Co.*,
    61 Cal. 4th 899 (2015) ..................................................................18

*Scher v. Bear Stearns & Co.*,
    723 F. Supp. 211 (S.D.N.Y. 1989) ...............................................21

*Sena v. Uber Techs., Inc.*,
    2016 WL 1376445 (D. Ariz. Apr. 7, 2016) ..................................12

*Shaw Grp. v. Triplefine Int'l Corp.*,
    322 F.3d 115 (2d Cir. 2003).........................................................10

*Smith v. Bayer Corp.*,
    131 S. Ct. 2368 (2011)..................................................................20

*Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*,
    198 F.3d 88 (2d Cir. 1999)........................................................9, 25

*Specht v. Netscape Commc'ns Corp.*,
    306 F.3d 17 (2d Cir. 2002)..........................................9, 13, 14, 15

*Staehr v. Hartford Fin. Servs. Grp.*,
    547 F.3d 406 (2d Cir. 2008).........................................................13

*Suarez v. Uber Techs., Inc.*,
    2016 WL 2348706 (M.D. Fla. May 4, 2016) ...............................12

*Turtle Ridge Media Grp. v. Pac. Bell Directory*,
    140 Cal. App. 4th 828 (2006) ......................................................24

*U1it4Less, Inc. v. FedEx Corp.*,
    2015 WL 3916247 (S.D.N.Y. June 25, 2015) .............................19

*Varon v. Uber Techs., Inc.*,
    2016 WL 1752835 (D. Md. May 3, 2016) ...................................12

*Vera v. Saks & Co.*,
    335 F.3d 109 (2d Cir. 2003).........................................................16

*Wayne v. Staples, Inc.*,
    135 Cal. App. 4th 466 (2006) ......................................................19

*Whitt v. Prosper Funding LLC*,
    2015 WL 4254062 (S.D.N.Y. July 14, 2015) .............................15

**Statutes**

15 U.S.C. § 1 ..................................................................................................2, 7

Cal. Civ. Code § 1670.5 ........................................................................................18

N.Y. Gen. Bus. Law § 340 ..................................................................................2, 7

**Rules**

Fed. R. Civ. P. 11(b) .............................................................................................6

Defendant Uber Technologies, Inc. ("Uber") respectfully requests an order compelling arbitration of all of Plaintiff Spencer Meyer's claims against all parties in this action.

## PRELIMINARY STATEMENT

The Court has already found (DE 44 at 9), and Plaintiff has never disputed, that Plaintiff agreed to Uber's Terms and Conditions (the "Terms" or "Rider Terms") as a condition of using Uber's services. Those Terms include a clear and conspicuous agreement to arbitrate (the "Arbitration Agreement"), which mandates dismissing this action in favor of arbitration.

Plaintiff admits that to become an Uber rider, "an individual first must agree to Uber's terms and conditions and privacy policy." Am. Compl. ¶ 29. He further admits that he is an Uber rider and that his claims are based on his use of Uber's services in New York. *Id.* ¶¶ 7-8, 16, 131-33, 138-40. In the process of registering to use Uber, Plaintiff was directed to the Rider Terms, including the Arbitration Agreement, via a bright blue "Terms & Conditions" hyperlink, and by registering for Uber he agreed to those Terms. Under binding Second Circuit authority, this constitutes Plaintiff's assent to the Arbitration Agreement.

Having assented to the Arbitration Agreement, Plaintiff is bound by its terms, which are fair—indeed generous—to the rider, as demonstrated below. These terms include the requirement that "any" claim "arising out of or relating to this Agreement … or the use of [Uber's] Service or Application" must be "settled by binding arbitration." DE 29-1 at 8-9. Uber's "Service" includes "any services supplied" by Uber, and its "Application" includes "any associated application supplied to [a rider] by [Uber] which purpose is to enable [a rider] to use the Service." *Id.* at 2. Here, Plaintiff's claims that Uber's business model amounts to price-fixing and that his alleged injuries arise from his use of the application and service fall squarely within the scope of the Arbitration Agreement.

Because the Arbitration Agreement delegates arbitrability issues to the arbitrator, the Court should dismiss this action as to all parties in favor of arbitration and allow the arbitrator to address any such issues in the first instance.  Even if the Court addresses arbitrability issues, the agreement is valid and enforceable (*see, e.g.*, *Lanier v. Uber Techs., Inc.*, No. 15-cv-09925-BRO, DE 25 at 4-7 (C.D. Cal. May 11, 2016) (confirming the validity of a similar Uber rider agreement and compelling arbitration)), and encompasses Plaintiff's claims, both as to Uber and as to Uber's CEO, Travis Kalanick.  The law is well-settled that a non-signatory employee is covered by his employer's contract providing for arbitration, and Plaintiff should be precluded in any event from avoiding his agreement to arbitrate disputes under principles of equitable estoppel, because his claims are intertwined with the Terms that include his agreement to arbitrate disputes.

For all of these reasons and those discussed further below, the Court should dismiss this action and compel arbitration of Plaintiff's claims.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed a Complaint against Travis Kalanick, CEO of Uber, for violations of the Sherman Act, 15 U.S.C. § 1, and the Donnelly Act, N.Y. Gen. Bus. Law § 340, based on allegations that he "paid higher prices for car service" requested through Uber's "application for smartphone devices (the 'Uber App')."  Am. Compl. ¶¶ 8, 24.  When Plaintiff registered for an Uber account, however—a required step in order to use Uber's app or services—he agreed that "any dispute, claim or controversy arising out of or relating to" the agreement governing his use of Uber's services or application "will be settled by binding arbitration."  DE 29-1 at 9; Am. Compl. ¶ 29.

## A.      The Uber Registration Process

Uber is a technology company that enables riders to request transportation services from third-party transportation providers.  Am. Compl. ¶ 2.  Mr. Kalanick is the co-founder and CEO of Uber, and an Uber employee.  *Id.* ¶¶ 1, 9.  Riders can request transportation services by using the Uber App on their smartphones, and these requests are then transmitted to independent transportation providers who are available to receive transportation requests.  *Id.* ¶ 24.

Before riders can request transportation services via the Uber App, they must first register by creating an Uber account.  *Id.* ¶ 28.  Riders can create an account either through the company's website, at https://get.uber.com/sign-up/, or within the Uber App itself.  Plaintiff registered with Uber in order to create his user account.  *Id.* ¶¶ 7, 29.  Uber's records show that Plaintiff registered using the Uber App on his Samsung Galaxy S5 phone with an Android operating system on October 18, 2014. Mi Decl. ¶ 3.  Registration using the Uber App is straightforward. During late 2014, when Plaintiff registered for Uber, this process involved two basic steps, each of which was confined to a single screen on the user's smartphone with no scrolling required: (1) Register; and (2) Payment.  *Id.*



After successfully downloading the Uber App and clicking the "Register" button, the user was prompted on the first screen, titled "Register," to enter his name, email address, mobile phone number, and a password, or to sign up with the user's Google+ or Facebook account.  Mi Decl. ¶ 5a.  According to Uber's records, Plaintiff did not sign up using Google+ or Facebook.  *Id.*  For users who do not sign up using Google+ or Facebook, after filling in the above fields, the user can then advance to the next screen by clicking "Next."  *Id.*

On the second and final screen, the user is prompted to enter his credit card information, or to opt to make payments using PayPal or Google Wallet.  Mi Decl. ¶ 5b.  According to Uber's records, Plaintiff entered his credit card information in the text box provided.  *Id.*  The second screen includes the following notice: "By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY."  *Id.*  The phrase "TERMS OF SERVICE & PRIVACY POLICY" is in all-caps, underlined, and in bright blue text, all of which set the text apart from other text on the screen and indicate a hyperlink.  *Id.*  As demonstrated by the screenshot to the right, the hyperlink is immediately visible when the user



4

arrives on this second screen.  If the hyperlink is clicked, the user is taken to a screen that contains a button that accesses the "Terms and Conditions" and "Privacy Policy" then in effect. *Id*.  The user must then click the "Register" button, which appears directly above the link to the terms on the final screen, to complete the registration process.  *Id.* ¶ 5c.  Plaintiff could not have completed the registration process and requested a ride without completing these steps.  *Id.*  The Uber App registration process is short and simple, and the screens are easy to read and understand.

### B.     The Arbitration Agreement

The Uber Rider Terms to which Plaintiff agreed contain several sections, separated by bolded subheadings.  The first section provides that the Rider Terms "constitute a legal agreement" between the rider and Uber, and "[i]n order to use the Service … and the associated Application … [the rider] must agree to the terms and conditions that are set out below." DE 29-1 at 2.

Another section, entitled "Dispute Resolution" (DE 29-1 at 8-9), states:

You and Company agree that any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof or the use of the Service or Application (collectively, **"Disputes"**) will be settled by binding arbitration, except that each party retains the right to bring an individual action in small claims court and the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights. **You acknowledge and agree that you and Company are each waiving the right to a trial by jury or to participate as a plaintiff or class User in any purported class action or representative proceeding.**  Further, unless both you and Company otherwise agree in writing, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of any class or representative proceeding….

The Rider Terms also specify that the American Arbitration Association ("AAA") will oversee any dispute and then identify the particular arbitration rules that will govern:

> Arbitration Rules and Governing Law. The arbitration will be administered by the American Arbitration Association ("AAA") in accordance with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the "AAA Rules") then in effect, except as modified by this "Dispute Resolution" section.  (The AAA Rules are available at www.adr.org/arb_med or by calling the AAA at 1-800-778-7879.)  The Federal Arbitration Act will govern the interpretation and enforcement of this Section.

*Id.* at 9.

The terms of the Arbitration Agreement favor the rider; they permit the rider to arbitrate a dispute in the county where he or she resides, and they allow for recovery of attorneys' fees only by the rider, not Uber:

> Arbitration Location and Procedure. Unless you and Company otherwise agree, the arbitration will be conducted in the county where you reside....  If you prevail in arbitration you will be entitled to an award of attorneys' fees and expenses, to the extent provided under applicable law.  Company will not seek, and hereby waives all rights it may have under applicable law to recover, attorneys' fees and expenses if it prevails in arbitration.

*Id*. at 9.

Further safeguarding riders' access to the arbitral forum is Uber's agreement to bear the burden of filing, administrative, and arbitrator fees for certain nonfrivolous claims:

> Fees.  Your responsibility to pay any AAA filing, administrative and arbitrator fees will be solely as set forth in the AAA Rules.  However, if your claim for damages does not exceed $75,000, Company will pay all such fees unless the arbitrator finds that either the substance of your claim or the relief sought in your Demand for Arbitration was frivolous or was brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)).

*Id*.

### C.  Procedural History

On December 16, 2015, notwithstanding his agreement to arbitrate "any dispute, claim or controversy arising out of or relating to" Uber's services or application (DE 29-1 at 9), Plaintiff filed his Complaint (DE 1), which he then amended on January 29, 2016 (DE 26).

Although all of Plaintiff's claims arise out of or relate to Uber's Rider Terms, application, and services, Plaintiff brought his claims against Mr. Kalanick individually, as co-founder and CEO of Uber.   Plaintiff alleges that Mr. Kalanick, in his personal capacity, violated antitrust laws, namely the Sherman Act, 15 U.S.C. § 1, and the Donnelly Act, N.Y. Gen. Bus. Law § 340. Am. Compl. ¶ 1.   Plaintiff alleges that "Uber's price-fixed fares" are accomplished by means of the "Uber pricing algorithm," which causes fares charged by "[d]rivers using the Uber app" to surge during times of peak demand, resulting in "Uber-controlled pricing" that allegedly "injure[s]" "Uber riders."   *Id.* ¶¶ 2, 5-6, 26, 47, 77-78.   Plaintiff purports to bring these claims on behalf of a class comprised of "all persons in the United States who, on one or more occasions, have used the Uber App to obtain rides from Uber driver-partners and paid fares for their rides set by the Uber pricing algorithm."   *Id.* ¶ 113.

Mr. Kalanick moved to dismiss the Amended Complaint on February 8, 2016.   DE 28. In his motion, Mr. Kalanick asserted that this dispute would be subject to arbitration under the Rider Terms, and he expressly reserved his right to move to compel arbitration.   DE 28 at 28 n.10.   The Court denied the motion to dismiss on March 31, 2016, concluding that, because Mr. Kalanick had not yet sought to compel arbitration, Plaintiff could continue pursuing his class action.   DE 37 at 23 n.8.   Mr. Kalanick moved for reconsideration of the class waiver ruling, which the Court denied.   DE 44 at 1-2, 7.

On May 20, 2016, Mr. Kalanick filed a Motion for Joinder, requesting that Uber be joined as a necessary party in this action.   DE 47.   On May 24, 2016, Uber filed a motion requesting that the Court permit it to intervene.   DE 58.   The Court granted Mr. Kalanick's motion on June 19, 2016, and ordered that Uber be joined as a defendant.   DE 90.   It denied Uber's motion as moot.   *Id.*

## ARGUMENT

Congress's "clear intent" in enacting the Federal Arbitration Act (the "FAA") was "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22-25 (1983). The Second Circuit recognizes this "preference for enforcing arbitration agreements applies even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 486 (2d Cir. 2013); *Clinton v. Oppenheimer & Co., Inc.*, 824 F. Supp. 2d 476, 482 (Mar. 17, 2011) *report and recommendation adopted by* 824 F. Supp. 2d 476 (Apr. 14, 2011) (Rakoff, J.).

Accordingly, "[an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). "The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Khanna v. Am. Express Co.*, 2011 WL 6382603, at *2 (S.D.N.Y. Dec. 14, 2011) (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000)); *see also Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev.*, 55 Cal. 4th 223, 247 (2012) ("The party resisting arbitration bears the burden of proving unconscionability.").

### A.   Plaintiff's Agreement with Uber Requires Arbitration on an Individual Basis of Plaintiff's Claims

There can be no serious dispute that Plaintiff agreed to be bound by the Arbitration Agreement.  Plaintiff created an Uber account on October 18, 2014 (Mi Decl. ¶ 3) and as Plaintiff concedes, "[t]o become an Uber account holder, an individual first must agree to Uber's terms and conditions and privacy policy" (Am. Compl. ¶ 29).  Plaintiff is thus bound by the Rider Terms.  *See infra* Part B.2.  Because the Arbitration Agreement is governed by the FAA,

8

and because Plaintiff's claims fall within the scope of the Arbitration Agreement, Plaintiff is bound by the agreement's provisions requiring the resolution of disputes by binding arbitration, delegating threshold arbitrability issues to the arbitrator, and waiving any right to representative or class action proceedings.

### 1.  The FAA Governs the Parties' Agreement and This Dispute

Both the express terms of the Arbitration Agreement and the nature of the relationship between Uber and Plaintiff confirm that the FAA governs.  First, the Arbitration Agreement's statement that "[t]he Federal Arbitration Act will govern the interpretation and enforcement" of the Agreement (DE 29-1 at 9) mandates that the FAA applies to the Arbitration Agreement. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 442-43, 447 (2006); *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 96 (2d Cir. 1999). In addition, the FAA applies upon a finding that the transactions at issue affect interstate commerce.  *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274-77 (1995) (FAA should be applied coincident with the full reach of Congress's Commerce Clause powers). Where, as here, the transactions involve the use of Internet technologies to transmit user requests across a network of drivers in hundreds of cities across the country, the "affecting commerce" requirement has been met.  *See Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 26 n.11 (2d Cir. 2002); Am. Compl. ¶¶ 13, 19 (alleging conduct affecting "interstate trade and commerce").

### 2.  Pursuant to the Arbitration Agreement, the Arbitrator Should Decide Questions of Arbitrability

The Court should honor the parties' agreement to permit the arbitrator to decide the threshold question of arbitrability.  Because "arbitration is a matter of contract," "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  *Rent-A-Center West v.*

*Jackson*, 561 U.S. 63, 68-69 (2010); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002).  Indeed, "[a]n agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the federal court to enforce."  *Rent-A-Center*, 561 U.S. at 70.

The Arbitration Agreement in this case delegates gateway questions of arbitrability to the arbitrator by incorporating the AAA Commercial Arbitration Rules.  DE 29-1 at 9.  Specifically, Rule 7(a) of the AAA Rules provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  AAA Commercial Arbitration Rules and Mediation Procedures at R-7(a) (https://www.adr.org/aaa/ShowProperty? nodeId=/UCM/ADRSTG_004103) (effective October 1, 2013; last accessed May 23, 2016). And the Second Circuit has squarely held, in a case involving this very AAA rule, that when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."  *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *accord Shaw Grp. v. Triplefine Int'l Corp.*, 322 F.3d 115, 122 (2d Cir. 2003) (same).[1] This Court too has repeatedly acknowledged this well-established principle.  *See, e.g.*, *Laumann v. Nat'l Hockey League*, 989 F. Supp. 2d 329, 336 & n.33 (S.D.N.Y. 2013).

Because "[t]here can be no doubt that the parties' Arbitration Agreement delegates issues of arbitrability to an arbitrator, not a court" (*Contec*, 398 F.3d at 208), the Court should leave any arbitrability questions for the arbitrator to decide in the first instance.

---

[1]  The Second Circuit's approach is consistent with the holdings of other circuits.  *See Fallo v. High-Tech Inst.*, 559 F.3d 874, 877-78 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Apollo Comput., Inc. v. Berg*, 886 F.2d 469, 472-74 (1st Cir. 1989).

## B.   Even If the Court Were to Address Questions of Arbitrability, a Valid and Enforceable Arbitration Agreement Exists Between Plaintiff and Uber

Given the foregoing, this Court need not proceed any further to determine that disputes between the parties rightfully belong in arbitration.  However, if this Court rules on issues of arbitrability, the Court's role under the FAA is to determine "(1) whether there exists a valid agreement to arbitrate at all under the contract in question ... and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (citation omitted).  "[T]he [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

### 1.   New York Law Applies to Any Question Regarding the Validity of the Arbitration Agreement

Two considerations require that New York law apply to the Court's analysis of any issues relating to the validity of the Arbitration Agreement, including the issue of unconscionability. *First*, in diversity cases,[2] federal courts must follow the prevailing rules in the state where they sit. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  *Second*, the Court must consider the Arbitration Agreement as a stand-alone agreement, without reference to the other

---

[2]  Plaintiff invokes both federal diversity and subject-matter jurisdiction in his Complaint.  Am. Compl. ¶ 10.  Even if the Court applied federal choice-of-law principles, the result would be the same. *See, e.g.*, *Loreley Fin. No. 3 Ltd. v. Wells Fargo Sec.*, 797 F.3d 160, 170 & n.5 (2d Cir. 2015) (concluding that because "Defendants transacted business within New York giving rise to Plaintiffs' causes of action," the choice-of-law result is "the same, regardless of whether we analyze choice of law under federal or New York law").

Rider Terms in the broader agreement in which the arbitration provision is contained. *Nitro-Lift Techs., L.L.C. v. Howard*, 133 S. Ct. 500, 503 (2012) (per curiam) ("[as a matter of substantive federal arbitration law,] an arbitration provision is severable from the remainder of the contract" (internal quotation marks omitted)).[3]

Because the Arbitration Agreement contains no choice-of-law provision, the forum state's choice of law rules control. *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001). New York's "choice-of-law rules require application of the law of the state having the most significant contacts with the matter in dispute." *Philips Credit Corp. v. Regent Health Grp., Inc.*, 953 F. Supp. 482, 501 (S.D.N.Y. 1997) (citing *Auten v. Auten*, 308 N.Y. 155, 160 (1954)). The relevant contacts include: "(1) the place of contracting, (2) the place of the contract negotiations, (3) the place of the performance of the contract, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id.* at 502.

These factors overwhelmingly favor application of New York law to the Arbitration Agreement. Plaintiff emphasized that the "place of performance" and the "subject matter of the contract"—i.e., his use of the Uber App—included New York. Am. Compl. ¶ 7; *see also* Mi Decl. ¶ 4 (explaining that Plaintiff has taken as many rides in New York as he has in any other location, and has not taken any rides in California). Moreover, by his own admission, all of his "claims in this case arise out of activities that relate to New York State." *Id.* ¶ 16.

---

[3] *See, e.g.*, *Sena v. Uber Techs., Inc.*, 2016 WL 1376445, at *4 (D. Ariz. Apr. 7, 2016) (holding that Arizona law applies to the arbitration provision in a similar agreement, even though the larger agreement contained a California choice-of-law provision, because "the Court must confine its analysis to the Arbitration Provision, which contains no choice of law provision"); *Bruster v. Uber Techs., Inc.*, No. 15-CV-2653, DE 19 at 7-8 (N.D. Ohio May 23, 2016) (same; applying Ohio law); *Suarez v. Uber Techs., Inc.*, 2016 WL 2348706, at *4 (M.D. Fla. May 4, 2016) (same; applying Florida law); *Varon v. Uber Techs., Inc.*, 2016 WL 1752835, at *3 (D. Md. May 3, 2016) (same; applying Maryland law).

He alleges that Uber and Travis Kalanick conduct a significant amount of business in New York (*id.* ¶¶ 7, 12-15, 18 ("New York City is reportedly Uber's biggest market in the United States and its most profitable."), 24-27, 41, 52, 87), claims that *those specific* business activities give rise to his claims (*id.* ¶¶ 16, 87-89, 100-104, 120-27, 134-36), and asserts a claim under New York law (*id.* ¶¶ 134-140). Because New York has the most significant contacts with Plaintiff's case, New York law should apply to the Arbitration Agreement.[4]

## 2.     Plaintiff Assented to the Arbitration Agreement

Plaintiff agreed to the Rider Terms, including the Arbitration Agreement, because he had adequate notice of the Terms when he registered for an Uber account. The Uber App registration process provided "immediately visible notice of the existence of [the] terms" (*Specht*, 306 F.3d at 31), through an all-caps, underlined, bright blue "Terms & Conditions" hyperlink (Mi Decl. ¶ 5b), and its statement that "[b]y creating an Uber account, you agree to the 'Terms of Service & Privacy Policy'" (*id.*) provided "explicit textual notice that" creating an Uber account "will act as a manifestation of the user's intent to be bound" by those terms (*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) (citing *Specht*, 306 F.3d at 31)). Plaintiff thus agreed

---

[4] The Court applied California law in its order on the motion for reconsideration. DE 44 at 5-6 (citing DE 41 at 12 n.3 ("Plaintiff['s Amended Complaint] does not specify . . . where in particular he has used the Uber App . . .")). On the motion to dismiss, Mr. Kalanick did not—and could not—introduce evidence regarding the place of performance, as those facts were not alleged in Plaintiff's Complaint. *See Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008) ("a district court must confine itself to the four corners of the complaint when deciding a motion to dismiss"). With the benefit of that evidence, however, it is clear that California law should not apply to the Arbitration Agreement. Indeed, the *only* factor favoring application of California law is that Uber is headquartered in California (and even that factor is diminished by the fact that Uber is incorporated in Delaware). Plaintiff has no relevant contacts with California, and all other relevant factors weigh heavily in favor of applying New York law. But even under California law, this Court should resolve this motion in the same way—compel arbitration. *See infra* Sections B.2-B.5.

to the Arbitration Agreement.  *See* Am. Compl. ¶ 29 ("[t]o become an Uber account holder, an individual first must agree to Uber's terms and conditions").

Well-settled principles of contract instruct that "[m]utual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." *Specht*, 306 F.3d at 29. When determining whether parties assented to contract terms, "courts eschew the subjective and look to objective manifestations of intent as established by words and deeds." *Bar-Ayal v. Time Warner Cable Inc.*, 2006 WL 2990032, at *8 (S.D.N.Y. Oct. 16, 2006) (quoting *Richard BB v. Louis B (In re Estate of Rose B.B.)*, 752 N.Y.S.2d 142, 144 (N.Y. App. Div. 2002)).  "[A]n individual who signs or otherwise assents to a contract without reading it (despite having an opportunity to do so) is bound by that contract, including its arbitration provision." *Id*.

When terms and conditions are made available by hyperlink to a separate screen, "the validity of the ... agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract." *Nguyen*, 763 F.3d at 1177 (citing *Specht*, 306 F.3d at 31).  Applying New York law, the Ninth Circuit recently identified several factors affecting whether a plaintiff would be bound by hyperlinked terms and conditions, including: "the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design all contribute to whether a reasonably prudent user would have inquiry notice" of the terms and conditions.  *Id*.

Plaintiff admits that "[t]o become an Uber account holder, an individual first must agree to Uber's terms and conditions and privacy policy" (Am. Compl. ¶ 29), and he was put on inquiry notice of those terms, including the Arbitration Agreement, when he completed the clear, simple, two-step account registration process.  The second screen of the registration process expressly informed potential registrants: "By creating an Uber account, you agree to the 'Terms of Service & Privacy Policy,'" with the "Terms of Service & Privacy Policy" distinguished in

all-caps, underlined text, and a bright blue color, indicating a hyperlink.  Mi Decl. ¶ 5b.  The simple registration process ends with a push of a button just above this notice.  *Id.*  The registration process thus provides "immediately visible notice of the existence of license terms" (*Specht*, 306 F.3d at 31), and "explicit textual notice that" creating an Uber account "will act as a manifestation of the user's intent to be bound" by those terms (*Nguyen*, 763 F.3d at 1177).

Courts in this district, and others throughout the nation, have repeatedly held that users were bound by terms and conditions in similar circumstances.  *See, e.g.*, *Lanier v. Uber Techs., Inc.*, No. 15-cv-09925-BRO, DE 25 at 4-7 (C.D. Cal. May 11, 2016) (confirming the validity of a similar Uber rider agreement and compelling arbitration); *Whitt v. Prosper Funding LLC*, 2015 WL 4254062, at *5 (S.D.N.Y. July 14, 2015) (compelling arbitration where a "conspicuous hyperlink" immediately above a "continue" button provided access to agreement terms, including the arbitration provision, citing an "abundance of persuasive authority" on point); *Nicosia v. Amazon.com, Inc.*, 84 F. Supp. 3d 142, 150 (E.D.N.Y. 2015) (same).[5]

Plaintiff admits that he completed the Uber registration process, with its explicit, visible notice of the Rider Terms; accordingly, he must abide by the Arbitration Agreement.

### 3.    The Dispute Falls Within the Scope of the Arbitration Agreement

Under the FAA, a court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T Techs., Inc.*, 475 U.S. at 650.

Here, the Arbitration Agreement provides that "any dispute, claim or controversy arising out of or relating to this Agreement … or the use of the Service or Application (collectively,

---

[5]    *Accord 5381 Partners LLC v. Shareasale.com, Inc.*, 2013 WL 5328324, at *4 (E.D.N.Y. Sept. 23, 2013); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837-38 (S.D.N.Y. 2012); *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 122 (Ill. App. Ct. 2005).

'Disputes') will be settled by binding arbitration [or] in small claims court." DE 29-1 at 9.  The
Court need look no further than Plaintiff's own description of the alleged "Nature of the Suit" to
see that this case arises out of and relates to Uber's services and application, both of which are at
the heart of the Rider Terms.  Plaintiff challenges the very lawfulness of Uber's service and
application: "Uber has a simple but illegal business plan" (Am. Compl. ¶ 1); Uber was "designed
… to be a price fixer" (*id.* ¶ 2); "Uber's essential role … [is] to fix prices among competing
drivers" (*id.* ¶ 4).  In fact, all of Plaintiff's allegations, in one way or another, "aris[e] out of or
relat[e]" to Uber's services and application.  *See, e.g.*, Am. Compl. ¶¶ 8-9, 21-37, 77, 89.
Indeed, Plaintiff claims that his injuries flow from overpaying for car service by virtue of the
allegedly "price-fixed fares" "set by the Uber algorithm," and that the Uber algorithm is a core
function of the Uber App.  *See* Am. Compl. ¶ 2 (alleging that Uber's "chief product is a
smartphone app" with two functions: to "match[] riders with drivers," and to "provide[] a
standard fare formula, the Uber pricing algorithm"); *see also id.* ¶¶ 8, 54 ("[t]hrough the pricing
algorithm …. Plaintiff has paid higher prices").

Further, the Arbitration Agreement is consistent with other clauses that courts in this
Circuit have characterized as "broad" for purposes of the FAA.  *See, e.g.*, *Paramedics
Electromedicina Comercial, Ltda. v. GE Med. Sys.*, 369 F.3d 645, 649, 654 (2d Cir. 2004) ("any
controversy, claim or dispute between the Parties arising out of or relating in any way to this
Agreement"); *Vera v. Saks & Co.*, 335 F.3d 109, 117 (2d Cir. 2003) (same).  Courts are
especially deferential to "broad" arbitration agreements, holding such clauses are "presumptively
applicable to disputes involving matters going beyond the interpret[ation] or enforce[ment of]
particular provisions of the contract that contains the arbitration clause."  *JLM Indus., Inc. v.
Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004).  Put differently, "[i]f the allegations
underlying the claims touch matters covered by the parties' contracts, then those claims must be

16

arbitrated, whatever the legal labels attached to them." *Id.* (citation omitted); *see also In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 406 (S.D.N.Y. 2003).

Accordingly, at a minimum, Plaintiff's claims are covered by the broad Arbitration Agreement because they "touch matters" within the Rider Terms.  Courts in this Circuit have found that price-fixing claims are "collateral matters" and "touch matters" covered by the underlying agreement between the parties.  *See In re Am. Express Merch. Lit.*, 2006 WL 662341 *4-5 (S.D.N.Y. Mar. 16, 2006) (antitrust claim was arbitrable under broad arbitration clause that "covers 'any claim, dispute or controversy between you and us arising from or relating to this Agreement'"), *rev'd on other grounds by In re Am. Express Merch. Lit.*, 667 F.3d 204, 219-20 (2d Cir. 2012); *see also Currency Conversion I*, 265 F. Supp. at 410 (plaintiffs' price-fixing claims "touch matters" covered by cardholder agreements containing arbitration clause); *JLM Indus.*, 387 F.3d at 176 (the term "collateral matters," however defined, encompassed plaintiff's Sherman Act claims).  Broad arbitration clauses cover price-fixing claims even where the plaintiff alleges "a conspiracy which was formed *independently* of the specific contractual relations between the parties." *JLM Indus.*, 387 F.3d at 173, 175.

### 4.  The Arbitration Agreement Is Not Unconscionable

Plaintiff cannot establish any basis for avoiding his agreement to arbitrate disputes under New York's law of unconscionability.  On the question of unconscionability, the Court's analysis is limited to whether the Arbitration Agreement—standing alone—is unconscionable. *See Rent-A-Center*, 561 U.S. at 70-71.  A contract is unconscionable only when it is "so grossly unreasonable … in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988).  "[U]nconscionability generally requires *both* procedural and substantive elements." *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 382 (S.D.N.Y.

2002) (emphasis added).  Moreover, the party opposing arbitration bears the burden of proving

any defense, such as unconscionability.  *Bynum v. Maplebear Inc.*, 2016 WL 552058, at *6

(E.D.N.Y. Feb. 12, 2016).  Thus, Plaintiff must show a complete "absence of meaningful choice

on … [his] part … together with contract terms which are unreasonably favorable to [Uber]."

*Desiderio v. Nat'l Assoc. of Sec. Dealers, Inc.*, 191 F.3d 198, 207 (2d Cir. 1999); *accord*

*Gillman*, 534 N.E.2d at 828.  Plaintiff cannot meet this heavy burden.[6]

Far from being "unreasonably favorable" to either party, the Arbitration Agreement is

bilateral and contains rider safeguards.  For example, it permits riders (but not Uber) to collect

attorneys' fees and expenses if they prevail in arbitration.  DE 29-1 at 9.  The Arbitration

Agreement also provides that arbitration proceedings "will be conducted in the county" where

the rider resides, thus eliminating the threat of prohibitive travel expenses.  *Id*.  Further, if a

rider's claim for damages does not exceed $75,000, Uber will pay ***all*** of the rider's "filing,

administrative and arbitrator fees."  *Id*.  These provisions comprehensively safeguard the rider's

access to the arbitral forum on an individual basis and go well beyond what is required to survive

an unconscionability challenge.[7]

To the extent Plaintiff contends that the class waiver in the Arbitration Agreement is

unconscionable, this claim is squarely foreclosed by the Supreme Court's decision in *AT&T*

---

[6]  New York law should apply to any arbitrability questions, including unconscionability.
*See supra* Part B.1.  Even if the Court applied California law, the standards are the same.
*See Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 914 (2015); *Pinnacle Museum
Towers*, 55 Cal. 4th at 246 (explaining that California's unconscionability doctrine requires
proof that an arbitration provision is "so one-sided as to 'shock the conscience'").

[7]  Even if the Court determines that any provision is unconscionable, "the appropriate remedy
… is to sever the improper provision of the arbitration agreement, rather than void the entire
agreement."  *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 124-25 (2d Cir. 2010);
*accord Roman v. Super. Ct.*, 172 Cal. App. 4th 1462, 1477 (2009) ("[T]he strong legislative
and judicial preference is to sever the offending term and enforce the balance of the
agreement."); *see also* Cal. Civ. Code § 1670.5 (authorizing severance).

18

*Mobility LLC v. Concepcion*, 563 U.S. 340, 344 (2011).  Indeed, although this Court held that the class waiver as a *stand-alone provision* could be unconscionable under California's *Discover Bank* rule, both Plaintiff and the Court recognized that such state rules are no longer valid with respect to class waivers in arbitration agreements.  *See* DE 44 at 17-19 (citing *Concepcion*, 563 U.S. at 352); DE 43 at 11 (same).  In any event, under New York law, a "contractual proscription against class actions … is neither unconscionable nor violative of public policy."  *Ranieri v. Bell Atl. Mobile*, 759 N.Y.S.2d 448, 449 (N.Y. App. Div. 2003) (citations omitted).

Plaintiff has characterized the Rider Terms as a contract of adhesion, but this is both incorrect and insufficient to render the Arbitration Agreement invalid.[8]  Indeed, *even if* the Arbitration Agreement had been offered "on a 'take it or leave it' basis …. [that] is not sufficient under New York law to render the [arbitration] provision procedurally unconscionable."  *Ragone*, 595 F.3d at 122; *accord Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1470 (2013) ("[even a]ssuming the Agreement here is adhesive in character, this adhesive aspect of an agreement is not dispositive").[9]  This is particularly true where Plaintiff simply "could … have chosen another service" rather than consent to the Arbitration Agreement.  *Ranieri*, 759 N.Y.S.2d at 449; *accord Desiderio*, 191 F.3d at 207 (requiring proof of complete

---

[8]   The Court suggested—without formally ruling (see DE 44 at 7)—that the Rider Terms might be a contract of adhesion for purposes of the *Discover Bank* analysis, but it did not hold that the Rider Terms constitute a contract of adhesion for purposes of any state's unconscionability doctrine as applied to arbitration agreements (*id.* at 17-19 (noting that the *Discover Bank* rule is preempted by the FAA)).

[9]   *Accord Carr v. Credit One Bank*, 2015 WL 9077314, at *3 (S.D.N.Y. Dec. 16, 2015) ("If acceptance of unwanted vendor terms rendered a contract unconscionable, then *any* contract containing a provision that a counterparty insisted upon would be unconscionable"); *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009).

"absence of meaningful choice").[10]   The same is true under California law.   *See Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 482 (2006) ("there can be no oppression establishing procedural unconscionability, even assuming unequal bargaining power and an adhesion contract, when the customer has meaningful choices"); *Dean Witter Reynolds, Inc. v. Super. Ct.*, 211 Cal. App. 3d 758, 771 (1989) (same); *see also McCabe v. Dell, Inc.*, 2007 WL 1434972, at *3 (C.D. Cal. Apr. 12, 2007) (recognizing a distinction between employment agreements and agreements concerning a "consumer *non-essential* good," such as Uber's service).   If Plaintiff did not like Uber's Terms, he was free not to use the Uber App or to choose from *any number* of alternative methods for locating transportation services in New York, a city with an unusually diverse array of transportation options—e.g., similar peer-to-peer ridesharing apps, like Lyft, Gett, or Curb, or traditional providers, like taxi, black car, or other private car services.   Indeed, Plaintiff identified such alternatives in his Complaint.   Am. Compl. ¶¶ 96, 100.

### 5.   Uber Has the Right to Enforce the Arbitration Agreement as to All Claims in the Case, Including Claims Against Mr. Kalanick

Plaintiff has deliberately attempted to skirt his arbitration obligation by filing suit against Mr. Kalanick individually.   *See* Mot. to Intervene at 9-14.[11]   The Court should not allow Plaintiff

---

[10]   *Accord U1it4Less, Inc. v. FedEx Corp.*, 2015 WL 3916247, at *4 (S.D.N.Y. June 25, 2015) (no unconscionability where "FedEx was not the only provider of shipping services available to plaintiff"); *Anonymous v. JP Morgan Chase & Co.*, 2005 WL 2861589, at *6 (S.D.N.Y. Oct. 31, 2005) (no unconscionability "where plaintiff had the ability to go to other sources of credit"); *Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446, 452 (E.D.N.Y. 2004) (same).

[11]   Mr. Kalanick has repeatedly asserted that Plaintiff signed a valid arbitration agreement, that this case belongs in an arbitral forum, and that Mr. Kalanick has the right to compel arbitration of Plaintiff's claims.   *See, e.g.*, DE 23 at 21 n.9 (reserving right to compel arbitration); DE 28 at 28 n.10 (same); DE 42 ¶¶ 143, 147 (asserting affirmative defenses based on the Arbitration Agreement).   Strong federal policy favoring arbitration gives rise to a presumption *against* waiver of a contractual right to arbitrate.   *Louis Dreyfus*, 252 F.3d at 229 ("The rule preferring arbitration … has led to its corollary that any doubts concerning whether there has been a waiver are resolved in favor of arbitration."); *Leadertex v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995) ("Given [the] *(Cont'd on next page)*

20

to evade his contractual obligations so easily.  *See Marcus v. Frome*, 275 F. Supp. 2d 496, 505 (S.D.N.Y. 2003) ("[W]ere claims against employees or disclosed agents not also subject to arbitration, 'it would be too easy to circumvent the agreements by naming individuals as defendants instead of the entity Agents themselves[.]'") (quoting *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d. Cir. 1993)); *Mosca v. Doctors Assocs.*, 852 F. Supp. 152, 155 (E.D.N.Y. 1993) ("This court will not permit Plaintiffs to avoid arbitration simply by naming individual agents of the party to the arbitration clause and suing them in their individual capacity.").

In the first place, **as CEO of Uber**, Mr. Kalanick is covered by the protections of the Arbitration Agreement in Plaintiff's Rider Terms **with Uber**.  *See Mosca*, 852 F. Supp. at 155 ("Courts have consistently held that the acts of employees of a party to an arbitration agreement are arbitrable 'as long as the challenged acts fall within the scope of the customer agreement.'") (quoting *Scher v. Bear Stearns & Co.*, 723 F. Supp. 211, 211 (S.D.N.Y. 1989)).  Additionally, Plaintiff should be estopped from avoiding arbitration of his claims against Mr. Kalanick, because his claims against Mr. Kalanick are intimately entwined with the Rider Terms, and he consistently treats Mr. Kalanick and Uber as interchangeable, both in the Complaint and the nearly identical discovery served on Mr. Kalanick and Uber.  *See JLM Indus.*, 387 F.3d at 177 (equitable estoppel applies where a "review of the 'relationship among the parties, the contracts

---

*(Cont'd from previous page)*

presumption of arbitrability, waiver of arbitration is not to be lightly inferred.").  In any event, Mr. Kalanick certainly has not waived his right to compel arbitration of any claims asserted by putative class members, who are not parties to this litigation unless and until a class is certified.  *See, e.g., Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379 (2011) (rejecting as "sure[] erro[r]" the notion that an unnamed class member "is a party to the class-action litigation before the class is certified").  Uber expressly reserves its right to file a motion to compel arbitration of claims asserted by putative class members if and when a class is certified.

they signed … and the issues that have arisen' among them discloses that the issues … are intertwined with the agreement that the estopped party has signed").

a.   *The Agreement Between Plaintiff and Uber Covers Mr. Kalanick, an Employee of Uber*

The law is well-settled that a non-signatory employee is covered by his employer's contract.  *See Roby*, 996 F.2d at 1360 ("Courts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement."); *see also Mosca*, 852 F. Supp. at  155 (ruling that "all of the named defendants are bound by the arbitration clause" given that "[e]ach Defendant employee is an agent of [the employer] and is bound by the arbitration agreement since the acts ascribed to them occurred during and as a result of their employment and agency").

As described, Plaintiff alleges that Mr. Kalanick is the co-founder, CEO, board member, and manager of operations of Uber, and, in those capacities, is personally responsible for the alleged antitrust violations.  Am. Compl. ¶¶ 1, 3, 9, 86.  Accordingly, Mr. Kalanick is covered and protected by the Arbitration Agreement, and Uber—Mr. Kalanick's employer—may compel arbitration of Plaintiff's claims against Mr. Kalanick pursuant to the terms of that agreement. *See Arrigo v. Blue Fish Commodities, Inc.*, 704 F. Supp. 2d 299, 303, 305 (S.D.N.Y. 2010) (compelling plaintiff to arbitrate its claims against corporate defendant's CEO and holding that, while CEO defendant "is not a party to the [arbitration agreement], it nevertheless protects him from the instant suit"); *Roby*, 996 F.2d at 1360 (holding that individual chairs of the governing bodies of defendant's insurance syndicates were entitled to rely on arbitration provisions incorporated into their employers' agreements, though non-signatories); *Brener v. Becker Paribas, Inc.*, 628 F. Supp. 442, 451 (S.D.N.Y. 1985) (same); *see also Dryer v. L.A. Rams*,

40 Cal. 3d 406, 418 (1985) ("If … the individual defendants, though not signatories, were acting as agents for [their principal], then they are entitled to the benefit of the arbitration provisions.").

As a practical matter, if Plaintiff's claims against Mr. Kalanick are not sent to arbitration, Uber will potentially be forced to undergo repetitive litigation to defend its business model in light of any judgment entered or relief granted in this case. *See Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2312 (2013) (bilateral arbitration agreements are intended to result in "the prospect of speedy resolution"); *see* Mot. to Intervene at 9-12.

**b.      *Plaintiff Should Be Estopped from Avoiding Arbitration of His Claims Against Mr. Kalanick***

Plaintiff must also arbitrate his claims against Mr. Kalanick under principles of equitable estoppel, which "estop a signatory from avoiding arbitration with a non-signatory when the issues the non-signatory is seeking to arbitrate are intertwined with the contract." *Currency Conversion I*, 265 F. Supp. 2d at 402; *see also JSM Tuscany, LLC v. Super. Ct.*, 193 Cal. App. 4th 1222, 1237 (2011) ("Under th[e] doctrine [of equitable estoppel] . . . a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are intimately founded in and intertwined with the underlying contract obligations.") (internal quotations omitted).   In evaluating "[w]hether the claims are intertwined such that a signatory is estopped from avoiding arbitration with a non-signatory, the court must determine: (1) whether the signatory's claims arise under the 'subject matter' of the underlying agreement; and (2) whether there is a 'close relationship' between the signatory and the non-signatory." *Currency Conversion I*, 265 F. Supp. 2d at 402; *accord JSM Tuscany*, 193 Cal. App. 4th at 1238 ("Courts applying equitable estoppel against a signatory have looked to the relationships of persons, wrongs and issues, in particular whether

23

the claims that the nonsignatory sought to arbitrate were intimately founded in and intertwined with the underlying contract obligations.").  Both factors are satisfied here.

*First*, Plaintiff's claims are intertwined with the Rider Terms.  Specifically, Plaintiff alleges that "[r]iders using the Uber App have suffered by paying artificially increased fares resulting from this price-fixing conspiracy."  Am. Compl. ¶ 89.  The Uber App is a primary subject matter of the Rider Terms.  DE 29-1 at 2 ("In order to use the Service (defined below) and the associated Application (defined below) you must agree to the terms and conditions that are set out below.").  Because Plaintiff's claims revolve around allegedly increased fares charged by the Uber App, which is "at the heart of the underlying contract containing the arbitration agreement," Plaintiff's claims arise under the "subject matter" of the underlying agreement.  *See Currency Conversion I*, 265 F. Supp. 2d at 403 (holding that plaintiffs' price-fixing claims arise under the "subject matter" of the cardholder agreement where plaintiffs alleged that their credit cards were unlawfully charged fixed-currency conversion fees); *accord Turtle Ridge Media Grp. v. Pac. Bell Directory*, 140 Cal. App. 4th 828, 833 (2006) (concluding that plaintiff's claims were intertwined with the contract where "its claims against [defendant] arose from its business dealings with [defendants], which the contract and subcontract governed").

*Second*, Plaintiff has undeniably alleged a "close relationship" between Uber and Mr. Kalanick.  The Amended Complaint alleges collusion and interdependent conduct by Uber and Mr. Kalanick: "Kalanick, Uber, and Uber's driver-partners have entered into an unlawful agreement, combination or conspiracy in restraint of trade."  Am. Compl. ¶ 123.  Further, Plaintiff consistently treats Mr. Kalanick and Uber as a single unit.  In addition to alleging Mr. Kalanick's various roles at Uber, Plaintiff also alleges that Mr. Kalanick is the "primary facilitator" of Uber's "illegal business plan," and "ultimately controlled" the prices charged through the Uber App.  *Id*. ¶¶ 1, 3.  Plaintiff's allegations do not differentiate between Uber and

24

Mr. Kalanick, and treat them as interchangeable.  He alleges, for instance, that "Kalanick and Uber are authorized by drivers to control the fares charged to riders.  Through the pricing algorithm and its surge pricing component, Kalanick and Uber artificially set the fares for its driver-partners to charge to riders."  *Id*. ¶ 54.  Although Uber and Mr. Kalanick both deny that they are interchangeable or that any basis exists to disregard Uber's corporate form,[12] it is *Plaintiff's* treatment of Uber and Mr. Kalanick that determines whether it may be estopped from avoiding arbitration.  Indeed, the expansive document requests Plaintiff served on Mr. Kalanick make no distinction between Mr. Kalanick and Uber, instead seeking information regarding all aspects of Uber's business operations.  Based on his own allegations, Plaintiff should be estopped from avoiding arbitration of his claims against Mr. Kalanick.  *See Smith/Enron Cogeneration Ltd. P'ship*, 198 F.3d at 97-98 (applying estoppel principles where plaintiff treated non-signatory companies and their signatory assignees as though they were "interchangeable" and "as a single unit"); *see also Metalclad Corp. v. Ventana Envtl. Organizational P'ship*, 109 Cal. App. 4th 1705, 1718 (2003) (estopping plaintiff from avoiding arbitration where plaintiff alleged an "integral relationship between" the signatory and non-signatory defendant).

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action and compel arbitration of Plaintiff's claims.[13]

---

[12]   *See, e.g.*, DE 42 (Answer) ¶ 2 ("Defendant denies this allegation to the extent it seeks an implied admission that Defendant and Uber are one in the same, or requires Defendant to answer on Uber's behalf.").

[13]   If the Court determines that Uber has the right to compel arbitration of Plaintiff's claims but Mr. Kalanick does not, then Uber requests that the Court stay this action pending completion of arbitration proceedings between Uber and Plaintiff.  *See* 9 U.S.C. § 3 ("the court … shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"); *Katz v. Cellco P'ship*, 794 F.3d 341,

*(Cont'd on next page)*

Dated:  June 21, 2016                    Respectfully submitted,

                                         /s/  Reed Brodsky
                                             Reed Brodsky

                                         GIBSON, DUNN & CRUTCHER LLP
                                         Reed Brodsky
                                         200 Park Avenue
                                         New York, NY  10166-0193
                                         Tel: (212) 351-4000
                                         Fax:  (212) 351-4035
                                         RBrodsky@gibsondunn.com

                                         Theodore J. Boutrous, Jr.
                                         Daniel G. Swanson
                                         Nicola T. Hanna
                                         Joshua S. Lipshutz
                                         333 South Grand Avenue
                                         Los Angeles, CA  90071
                                         Tel:  (213) 229-7000
                                         Fax:  (213) 229-7520
                                         TBoutrous@gibsondunn.com
                                         DSwanson@gibsondunn.com
                                         NHanna@gibsondunn.com
                                         JLipshutz@gibsondunn.com

                                         Cynthia E. Richman
                                         1050 Connecticut Avenue, N.W.
                                         Washington, DC  20036
                                         Tel:  (202) 955-8500
                                         Fax:  (202) 467-0539
                                         CRichman@gibsondunn.com

                                         *Attorneys for Defendant Uber Technologies, Inc.*

---

*(Cont'd from previous page)*

345-47 (2d Cir. 2015) ("the FAA mandate[s] a stay of proceedings when … a stay [is] requested").

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 21, 2016, I filed and therefore caused the foregoing

document to be served via the CM/ECF system in the United States District Court for the

Southern District of New York on all parties registered for CM/ECF in the above-captioned

matter.

<u>/s/ Reed Brodsky</u>
Reed Brodsky
