UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SPENCER MEYER, individually and on behalf of
those similarly situated,

                              Plaintiffs,

        -against-

TRAVIS KALANICK,  and UBER
TECHNOLOGIES, INC.,

                              Defendants.

1:15 Civ. 9796 (JSR)

ECF Case

# MEMORANDUM OF LAW IN OPPOSITION TO
# DEFENDANTS' MOTIONS TO COMPEL ARBITRATION

**CONSTANTINE CANNON LLP**
Matthew  L. Cantor
David A. Scupp
335 Madison Avenue
New York, New York 10017

**MCKOOL SMITH**
John Briody
James H. Smith
One Bryant Park, 47th Floor
New York, New York 10036

**CAFFERTY CLOBES**
**MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes
Ellen Meriwether
1101 Market Street, Suite 2650
Philadelphia, PA  19107

**ANDREW SCHMIDT LAW PLLC**
Andrew Arthur Schmidt
97 India Street
Portland, Maine 04101

**HARTER SECREST & EMERY LLP**
Brian Marc Feldman
Jeffrey A. Wadsworth
Edwin M. Larkin
A. Paul Britton
1600 Bausch & Lomb Place
Rochester, New York 14604

*Attorneys for Plaintiff*
*Spencer Meyer*

June 29, 2016

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ........................................................................................................3

ARGUMENT ..............................................................................................................8

  I.    NO BINDING ARBITRATION AGREEMENT EXISTS.................................8

       A. This Court, Not An Arbitrator, Decides The Existence Of A Binding
          Arbitration Agreement. .......................................................................9

       B. Plaintiff And Uber Never Formed A Binding Arbitration Contract. ....................10

  II.   DEFENDANTS HAVE WAIVED ARBITRATION IN THIS LITIGATION.................15

       A. The Court, Not An Arbitrator, Decides Waiver Through Litigation
          Conduct........................................................................................15

       B. Defendants Expressly Waived Arbitration With Kalanick In
          This Case....................................................................................16

       C. Defendants Impliedly Waived Arbitration In This Case. ....................18

  III.  THE ARBITRATION AGREEMENT, IF IT DID EXIST, WOULD NOT
       APPLY TO ARBITRATION WITH KALANICK. ..........................................23

       A. Because The Claims Against Kalanick, A Non-Party, Are Not Based
          On The User Agreement, This Court Must Decide Their Arbitrability................24

       B. California Law Governs Whether Plaintiff Must Arbitrate Claims
          Against Kalanick Under The User Agreement. ....................................25

       C. The User Agreement Limits Plaintiff's Arbitration Obligations To
          Claims With Uber And Does Not Extend To Kalanick........................................29

       D. Agency Principles Do Not Trump The Plain Text.................................31

       E. The Doctrine Of Equitable Estoppel Does Not Apply..........................34

i

IV.     BECAUSE THE COMPLAINT ASSERTS NO CLAIMS AGAINST UBER,
        THERE IS NO BASIS FOR COMPELLING ARBITRATION WITH UBER. ...............37

CONCLUSION...........................................................................................................................40

# TABLE OF AUTHORITIES

**Cases**:                                                                                      **Page(s)**

*Abella v. Seven Seven Corporate Group*
   No. 2:13-05263, 2014 U.S. Dist. LEXIS 7354 (D.N.J. Jan. 21, 2014)..............................38

*AmeriSteel Corp. v. Int'l Bhd. of Teamsters*
   267 F.3d 264 (3d Cir. 2001)........................................................................................40

*Amisel Holdings Limited v. Clarion Capital Management*
    622 F. Supp. 2d 825 (N.D. Cal. 2007) ......................................................................31

*Apollo Theater Found., Inc. v. W. Int'l Syndication*
   No. 02 Civ. 10037,
   2004 U.S. Dist. WESTLAW 1375557 (S.D.N.Y. Jun. 21, 2004) ..............................16, 18

*Arrigo v. Bluefish Commodities, Inc.*
   704 F. Supp. 2d 299 (S.D.N.Y. 2010)..........................................................................33

*Arthur Andersen LLP v. Carlisle*
   556 U.S. 624 (2009)......................................................................................................25

*Berkson v. Gogo*
   97 F. Supp. 3d 359 (E.D.N.Y. 2015) ..............................................................10, 11, 12, 13

*Brener v. Becker Paribas, Inc.*
   628 F. Supp. 442 (S.D.N.Y. 1985).................................................................................33

*Britton v. Co-op Banking Group*
   4 F.3d 472 (9th Cir. 1993) ......................................................................................31, 32

*Bruster v. Uber Techs., Inc.*
   No. 15-CV-2653 (N.D. Ohio May 23, 2016).................................................................28

*Buckeye Check Cashing, Inc. v. Cardegna*
   546 U.S. 440 (2006).........................................................................................................9

*Cabinetree of Wisc., Inc. v. Kraftmaid Cabinetry, Inc.*
   50 F.3d 388 (7th Cir. 1995) ..........................................................................................23

*Celltrace Commn'cs Ltd. v. Acacia Research Corp.*
   No. 15cv4746 (AJN), 2016 U.S. Dist. LEXIS 78620 (S.D.N.Y. June 16, 2016)...............9

*Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*
    271 F.3d 403 (2d Cir. 2001)..........................................................................................25

*Com-Tech Assocs. v. Computer Assocs. Int'l, Inc.*
   938 F.2d 1574 (2d Cir. 1991).................................................................20

*Contec Corp. v. Remote Solutions Co., Ltd.*
   398 F.3d 205 (2d Cir. 2005)..........................................................23, 24, 25

*Cotton v. Slone*
    4 F.3d 176 (2d Cir. 1993)...............................................................20, 21

*Crewe v. Rich Dad Educ., LLC*
   884 F. Supp. 2d 60 (S.D.N.Y. 2012)..........................................................36

*Demsey & Assocs., Inc. v. S.S. Sea Star*
   461 F.2d 1009 (2d Cir. 1972)...............................................................16

*DeRosa v. Nat'l Envelope Corp.*
   595 F.3d 99 (2d Cir. 2010)................................................................26

*Dillard v. Cooper*
   No. 88-999, 1989 WL 110302 (W.D. Okla. Aug. 15, 1989) ...........................................29

*Doctor's Assocs., Inc. v. Distajo*
   66 F.3d 438 (2d Cir. 1995)................................................................15

*Dryer v. L.A. Rams*
   40 Cal. 3d 406 (Cal. 1985)................................................................32

*EEOC v. MacMillian Bloedel Containers, Inc.*
   503 F.2d 1086 (6th Cir. 1974) .............................................................39

*EEOC v. Peabody Western Coal Co.*
   400 F.3d 774 (9th Cir. 2005) .............................................................39

*Ehleiter v. Grapetree Shores, Inc.*
   482 F.3d 207 (3d Cir. 2007)...............................................................15

*Gerszberg v. Li & Fund (Trading) Ltd.*
   16 Civ. 1182 (PAE), 2016 U.S. Dist. LEXIS 76188 (E.D.N.Y. June 10, 2016) ..............24

*Gilmore v. Shearson/Am. Express, Inc.*
   811 F.2d 108 (2d Cir. 1987)........................................................15, 16, 18

*Goldman v. KPMG, LLP*
   92 Cal. Rptr. 3d 534 (Cal. Ct. App. 2009).........................................................25, 34

*Grigsby & Assocs., Inc. v. M. Secs. Inv.*
   664 F.3d 1350 (11th Cir. 2011) ............................................... 15

*Hess v. Ford Motor Co.*
   27 Cal. App. 4th 516 (2002) .................................................. 29

*Huber v. D'Esterre*
   180 A.D. 220 (App. Div. 1917) .............................................. 27

*Humane Soc'y of the United States v. Merriam*
   No. 06-2922, 2007 U.S. Dist. LEXIS 7581 (D. Minn. Feb. 1, 2007) .............................. 38

*In re A2P SMS Antitrust Litigation*
   972 F. Supp. 2d 465 (S.D.N.Y. 2013) ...................................... 36

*In re Adelphia Recovery Trust*
   634 F.3d 678 (2d Cir. 2011) .................................................. 26

*In re Apple iPhone Antitrust Litig.*
   874 F. Supp. 2d 889 (M.D. Cal. 2012) ..................................... 36

*In re Currency Conversion Fee Litig.*
   265 F. Supp. 2d 385 (S.D.N.Y. 2003) ...................................... 35

*In re Humana Managed Care Litig.*,
   285 F.3d 971 (11th Cir. 2002) ............................................... 35

*In re Pharm. Benefit Mgrs. Antitrust Litig.*
   700 F.3d 109 (3d Cir. 2012) .................................................. 22

*In re Prudential Secs. Inc.*
   92 C 3137, 1993 U.S. Dist. LEXIS 1362 (N.D. Ill. Feb. 4, 1993) .................................... 40

*In re S&R Co. of Kingston v. Latona Trucking, Inc.*
   159 F.3d 80 (2d Cir. 1998) .................................................. 15, 19, 20, 21, 23

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales, & Products Liab. Litig.*,
   838 F. Supp. 2d 967 (C.D. Cal. 2012) ..................................... 25

*In re Tobacco Cases I, JCCP 4041*
   124 Cal. App. 4th 1095 (2004) .............................................. 29

*In re Wholesale Grocery Products Antitrust Litig.*
   707 F.3d 917 (8th Cir. 2013) ................................................ 35, 37

*Int'l Bhd. of Teamsters v. United States*
    431 U.S. 324 (1977)....................................................................................39

*JLM Indus., Inc. v. Stolt-Nielsen SA*
    387 F.3d 163 (2d Cir. 2004)..................................................................33, 35

*JPD, Inc. v. Chronimed Holdings, Inc.*
    539 F.3d 388 (6th Cir. 2008) ...............................................................15

*JSM Tuscany, LLC v. Superior Court*
    123 Cal. Rptr. 3d 429 (2011) ...............................................................33

*JSM Tuscany, LLC v. Superior Court*
    193 Cal. App. 4th 1239 (2011) ............................................................36

*Kramer v. Hammond*
    943 F.2d 1122 (2d Cir. 1991)...............................................................22

*Kramer v. Toyota Motor Corp.*
    705 F.3d 1122 (9th Cir. 2013) .............................................................34

*Lanier v. Uber Techs., Inc.*
    No. 15cv09925 (C.D. Cal. May 11, 2016)...........................................14

*Larson v. Life of the South Insurance Co.*
    648 F.3d 1166 (11th Cir. 2011) ...........................................................26

*La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*
    626 F.3d 136 (2d Cir. 2010).................................................15, 19, 20, 22

*Laumann v. Nat'l Hockey League*
    989 F. Supp. 2d 329 (S.D.N.Y. 2013).................................................24

*Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*
    67 F.3d 20 (2d Cir. 1995) ....................................................................19, 23

*Lennox Maclaren Surgical Corp. v. Medtronic, Inc.*
    449 Fed. Appx. 704 (10th Cir. Nov. 15, 2011)...................................36

*Long v. Provide Commerce, Inc.*
    245 Cal. App. 4th 855 (2016) ..............................................................11, 13

*Marcus v. Frome*
    275 F. Supp. 2d 496 (S.D.N.Y. 2003).................................................33

*Marie v. Allied Home Mortgage Corp.*
    402 F.3d 1 (1st Cir. 2005) ...................................................................15

*Marshall v. Snyder*
    572 F.2d 894 (2d Cir. 1978) ...............................................................39

*Metalclad Corp. v. Ventana Envtl. Org. Partnership,.*
    109 Cal. App. 4th 1705 (2003) ..........................................................37

*MidAtl. Int'l Inc. v. AGC Flat Glass N. Am., Inc.*
    No. 2:12cv169, 2014 U.S. Dist. LEXIS 15779 (E.D.Va. Feb. 7, 2014) .........................16

*Mosca v. Doctors Associates, Inc.*
    852 F. Supp. 152 (E.D.N.Y. 1993) .....................................................33

*Motorola Credit Corp. v. Uzan*
    388 F.3d 39 (2d Cir. 2004)............................................................9, 31

*Nguyen v. Barnes & Noble Inc.*
    763 F.3d 1171 (9th Cir. 2014) ........................................................11, 13

*Nicosia v. Amazon.com, Inc.*
    84 F. Supp. 3d 142 (E.D.N.Y. 2015) ................................................13

*Nitro-Lift Techs., L.L.C. v. Howard*
    133 S.Ct. 500 (2012) ..........................................................................28

*Noonan v. Wonderland Greyhound Park Realty LLC*
    723 F. Supp. 2d 298 (D. Mass. 2010) ...............................................31

*Opals on Ice Lingerie v. Bodylines Inc.*
    320 F.3d 362 (2d Cir. 2003)..............................................................28

*PPG Indus., Inc. v. Webster Auto Parts*
    128 F.3d 103 (2d Cir. 1997)...................................................9, 20, 21

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*
    388 U.S. 395 (1967).........................................................................28

*Register.com, Inc. v. Verio, Inc.*
    356 F.3d 393 (2d Cir. 2004).............................................................11

*Rent-A-Center, West, Inc. v. Jackson*
    561 U.S. 63 (2010)..............................................................................9

*Republic of Ecuador v. Chevron Corp.*
    638 F.3d 384 (2d Cir. 2011)................................................................9

*Republic of Iraq v. ABB AG*
    769 F. Supp. 2d 605 (S.D.N.Y. 2011)........................................24, 30

*Republic of Iraq v. BNP Paribas USA*
    472 Fed. Appx. 11 (2d Cir. Mar. 28, 2011) ..............................24, 30

*Roby v. Corp. of Lloyd's*
    996 F.2d 1353 (2d Cir. 1993)...............................................................33

*Rosenthal v. Emanuel, Deetjen & Co.*
    516 F.2d 325 (2d Cir. 1975)................................................................40

*SATCOM Int'l Group PLC v. ORBCOMM*
    1999 U.S. App. LEXIS 38271 (2d Cir. Dec. 15, 1999)....................19

*Scher v. Bear Stearns & Co., Inc.*
    723 F. Supp. 211 (S.D.N.Y. 1989)......................................................33

*Schnabel v. Trilegiant Corp.*
    697 F.3d 110 (2d Cir. 2012)..........................................................10, 11

*Sena v. Uber Techs., Inc.*
    No. 15cv2418, WESTLAW 1376445 (D. Ariz. April 7, 2016).........28

*Sgouros v. Transunion Corp.*
    817 F.3d 1029 (7th Cir. 2016) .............................................9, 11, 12, 13

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*
    198 F.3d 99 (2d Cir. 1999).................................................................36

*Smith v. Petrou*
    705 F. Supp. 183 (S.D.N.Y. 1989)......................................................18

*Specht v. Netscape Commc'ns Corp.*
    306 F.3d 17 (2d Cir. 2002) ..................................................9, 10-12, 29

*Suarez v. Uber Techs., Inc.*
    No. 16cv0166, 2016 WESTLAW 2348706 (M.D. Fla. May 4, 2016) ............28

*Tehama-Colusa Canal Auth. v. U.S. Dep't of Interior*
    819 F. Supp. 2d 956 (E.D. Cal. 2011)................................................31

*Tehama-Colusa Canal Auth. v. U.S. Dep't of the Interior*
    721 F.3d 1086 (9th Cir. 2013) ........................................31

*Thyssen v. Calypso Shipping Corp.*
    310 F.3d 102 (2d Cir. 2002).........................................21

*Turtle Ridge Media Group, Inc. v. Pac. Bell Directory*
    140 Cal. App. 4th 828 (2006) ....................................

*UFCW & Employers Benefit Trust v. Sutter Health*
    194 Cal. Rptr. 3d 190 (Cal. Ct. App. 2015) .....................35

*United States v. Quintieri*
    306 F.3d 1217 (2d Cir. 2002)......................................27

*United States v. Williams*
    475 F.3d 471 (2d Cir. 2007)........................................26

*Varon v. Uber Techs., Inc.*
    No. 15-3650, 2016 WESTLAW 1752835 (D. Md. May 3, 2016)....................38

*Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*
    489 U.S. 468 (1989)...................................................33

*Whitt v. Prosper Funding LLC*
    1:15-cv-136, 2015 WL 4254062 (S.D.N.Y. July 14, 2015)...............14

*Windsor Mills, Inc. v. Collins & Aikman Corp.*
    25 Cal. App. 3d 987 (1972) ........................................10

*Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l Capital Mkt. Co.*
    996 F.2d 1478 (2d Cir. 1993) .......................................21

## Rules and Regulations

Fed. R. Civ. P. 15(a)(2) ..............................................14

Fed. R. Civ. P. 15(b)(2).................................................14

Fed. R. Civ. P. 18(a) ..................................................38

Fed. R. Civ. P. 19(a)(2)................................................37

## Other Authorities

2007 AAA Arbitration Roadmap, https://www.adr.org/aaa/ShowPDF?doc=ADRSTG_003838
(last visited June 26, 2016) .................................................................................23

Mark A. Lemley, *Terms of Use*, 91 Minn. L. Rev. 459 (2006) ...................................................11

Restatement 3d Agency, § 601 ...............................................................................29

Gov't Br., *Peabody Western Coal Co. v. EEOC*,
        No. 05-353 (Dec. 2005) ...............................................................................38

Plaintiff Spencer Meyer ("Plaintiff") respectfully submits this Memorandum of Law in Opposition to the motions by Defendants Travis Kalanick ("Kalanick") and Uber Technologies Inc., ("Uber") (collectively "Defendants") to compel arbitration.

## PRELIMINARY STATEMENT

This case began with litigation on the merits.  Kalanick, formally accompanied by Uber as part of his legal team in Court, decided to litigate this putative class action antitrust case in the Southern District of New York.  He made a strategic decision not to attempt to dodge the case through private arbitration.  Twice, he informed the Court that he would "not seek to enforce the arbitration agreement here."  The only caveat was an express reservation "to move to compel arbitration in other cases."  Even when he lost the motion to dismiss and this Court concluded that he could not seek to enforce any class action waiver outside of the arbitration context, Kalanick and his legal team stood firm.  In seeking reconsideration of the class waiver issue, they did not revise their position.  Instead, they doubled down, confirming to the Court that he had "deci[ded] not to invoke his right to arbitration."

Now, halfway to a trial-ready date and facing exposure, Kalanick seeks to abort his old strategy and replace it with a new one.  He and Uber have both moved to dismiss this action—in the middle of discovery and in the midst of a judicial inquiry into Defendants' conduct—on the theory that all the claims must be arbitrated.  They are wrong.

*First*, these motions fail at the outset because Plaintiff never formed an arbitration agreement with either Defendant.  *See infra* I.  This Court must decide this question because it goes to the very existence of any arbitration contract.  *See infra* I.A.  The evidence submitted on these motions reveals that, in fact, Plaintiff registered for Uber without ever having sufficient notice of the terms of the User Agreement.  Uber cannot rely on a fine print hyperlink, well below the "register" button that Uber instructed Plaintiff to click to sign up for the Uber App, to

1

form a valid contract.  A reasonably prudent user would have been unlikely to discover the arbitration agreement in such circumstances; and Plaintiff never did.  Courts have rejected arbitration motions based on purported "contracts" designed in similar fashion.  Absent an arbitration agreement, there is no basis to compel arbitration.  *See infra* I.B.

*Second*, and in any event, Defendants are bound by the waiver of any right to seek to arbitrate the claims in this case.  *See infra* II.  Kalanick took the unusual step in this litigation of expressly waiving any right to move for arbitration in this case.  Neither he nor Uber—whose in-house chief litigator stood in Court to enter an appearance alongside the rest of Kalanick's legal team on the very motion where Kalanick made this waiver—can retract the representations to the Court that Kalanick would not move to arbitrate.  *See infra* II.A.  The doctrine of implied waiver also forecloses arbitration.  *See infra* II.B.  The motions thus fail at the outset.

*Third*, even if an arbitration agreement existed and even if Defendants had not waived their arbitration arguments, none of the claims against Kalanick would be subject to arbitration. Kalanick is not a party to the User Agreement, and while that agreement extends certain provisions to Kalanick and other third parties, the arbitration provisions are not among them. Uber could have included Kalanick within its arbitration provisions, but did not.  The plain text of the agreement thus excludes claims against Kalanick.  That text cannot be trumped by the doctrines of agency or equitable estoppel because this is not a case in which Plaintiff is relying on the User Agreement to prosecute his claims.  On the contrary, this case alleges price-fixing between Kalanick and driver-partners; and the operative written agreement between them is an entirely separate driver-partner agreement.  The claims against Kalanick therefore are not subject to arbitration, even if the User Agreement applied.  *See infra* III.

*Fourth*, contrary to Defendants' suggestion, there are no claims against Uber in this case. Uber has been joined as a necessary party in order to have a seat at the table to defend its interests.  No rule requires a plaintiff to assert any claim against a necessary party, and here, Plaintiff has not amended his complaint to assert any claim against Uber.  Nor will he, unless he can be assured that doing so would not derail his opportunity to have a trial on the merits of the issues in this case.  Because there are no claims against Uber, there are no claims subject to arbitration.  Uber's efforts to remove this litigation from this Court thus fail.  *See infra* IV.

For these reasons, this Court should deny Defendants' motions to compel arbitration.

## BACKGROUND

**A.     Plaintiff Never Formed An Arbitration Agreement With Uber.**

Defendants' papers have revealed the process that Plaintiff went through in registering for the Uber App.  That process never included any prompt requiring Plaintiff to review any arbitration agreement.  Nor was it designed to ensure that Plaintiff, or any other user, understood that, in Uber's view, downloading the Uber App bound the Plaintiff to an arbitration agreement.

Defendants describe the process as involving "two basic steps."  First, Plaintiff would have entered his personal contact information on the first screen titled "Register."  After then clicking "NEXT" and entering credit card information on a second "Payment" screen, he would have clicked a "REGISTER" button immediately below his credit card information in the middle of that second screen.  Uber Mem. 3-5; Kalanick Mem. 3-4; Mi Decl. ¶ 5 and Ex. A.

Only at the bottom of the second screen, in a significantly smaller font and tucked below large, prominent buttons allowing for payment via PayPal or Google Wallet, were the words "By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY."  Mi Decl. Ex. A.  The words "terms of service & privacy policy" were in blue font with a hyperlink. *Id.*

3

Plaintiff does not recall noticing or clicking on the hyperlink, did not read the terms of service, and never indicated that he agreed to the terms of service.  *See* Meyer Decl. ¶¶ 3-4.  Nor was he aware of any arbitration provision contained in the terms and conditions, and he did nothing to suggest his assent thereto.  *Id.* ¶ 5.

**B.    The User Agreement, In Its Various Iterations, Defines The Arbitration Obligation To Include Uber, But Not Kalanick.**

Defendants assert (and Plaintiff has had no opportunity to test) that Plaintiff registered with the Uber App on October 18, 2014, and purportedly agreed to a User Agreement dated May 17, 2013.  *See* Memorandum of Law in Support of the Defendant Travis Kalanick's Motion to Compel Arbitration ("Kalanick Mem.") at 3-4; Colman  Decl. Dkt. 29-1 ("2013 User Agreement") at 1.  *See also* Uber Technology Inc.'s Memorandum of Law in Support of Motion to Compel Arbitration ("Uber Mem.") at 3-5.  That agreement provides for its own automatic updating with a user's continued use of the Uber App.  In particular, according to Defendants' records, that version of the User Agreement states that "you expressly acknowledge and agree to be bound by . . . any future amendments and additions to this Agreement as published from time to time at https//www.uber.com/terms or through the Service." Dkt. 29-1 at 2.

Plaintiff last used Uber within the United States on October 22, 2015.  *See* Wadsworth Decl., ¶ 12.  The User Agreement in effect at that time appears to have been an agreement dated April 8, 2015 (the "2015 User Agreement").  *See* Wadsworth Decl., ¶ 10.  That 2015 agreement does not differ in any manner material to this motion from the User Agreement in effect today, which is dated January 2, 2016 (the "2016 User Agreement").  *See* Wadsworth Decl., Exs. 1 & 2.

The arbitration section within these agreements is clearly limited to arbitration between Uber and the user (here, Plaintiff).  Both the 2015 User Agreement and the current 2016 User

4

Agreement expressly provide for binding arbitration between "[the user] and Uber."  In

particular, the arbitration section states:

> You agree that any dispute, claim or controversy arising out of or relating to these
> Terms or the breach, termination, enforcement, interpretation or validity thereof
> or the use of the Services (collectively, "*Disputes*") will be settled by **binding
> arbitration between you and Uber** . . .. You acknowledge and agree that you
> and Uber are each waiving the right to a trial by jury or to participate as a plaintiff
> or class in any purported class action or representative proceeding. Further, unless
> both you and Uber otherwise agree in writing, the arbitrator may not consolidate
> more than one person's claims, and may not otherwise preside over any form of
> any class or representative proceeding. . . . .

*See* Wadsworth Decl., Ex. 1 ("2015 User Agreement") at UBER 0219-220 (emphasis added);

Wadsworth Decl., Ex. 2 ("2016 User Agreement") at UBER 0231 (emphasis added).  The 2013

Agreement cited by Defendants, by contrast, did not specify—presumably because the meaning

was obvious—that any binding arbitration would be between "you [the User] and Uber," but did

similarly state that only "You and Company" agreed to arbitrate.  *See* 2013 Agreement at 9.

The phrases "You and Company" and "you and Uber" do not extend to Kalanick under

the terms of the User Agreements.  In each iteration, the term "Uber" or "Company" is defined to

refer to corporate entities only and does not extend to individual constituents, such as officers.

*See* 2015 User Agreement at UBER 0212 (defining "Uber" to mean "Uber USA, LLC, and its

subsidiaries and affiliates"); *see also* 2016 User Agreement at UBER 0223 (same); Dkt. 29-1 at 2

(defining "Company" as the corporate entity only).  Where the User Agreement applies to

officers, directors, and employees, in addition to the corporate entities, it specifically says so.

Thus, the User Agreement specifies that indemnification reaches "Uber and its officers,

directors, employees, and agents."  *See* 2015 User Agreement at UBER 0219; *see also* 2016 User

Agreement at UBER 0231 (same); Dkt. 29-1 at 6 (similar).  By contrast, Uber limits the

arbitration agreement to "arbitration between [a user] and Uber," without including officers,

directors, or employees.  *See* 2015 User Agreement at UBER 0219; 2016 User Agreement at UBER 0231 (same); Dkt. 29-1 at 9 ("You and Company agree").

**C.    The User Agreement, The Parties, And This Court Have Identified California Law As Governing Construction Of The User Agreement.**

The 2015 and 2016 User Agreements have a California choice of law provision.  The choice of law provisions in the 2015 and 2016 versions state:  "These Terms are governed by and construed in accordance with the laws of the State of California, U.S.A., without giving effect to any conflict of law principles."  *See* 2015 User Agreement at UBER 0233; 2016 User Agreement at UBER 0221.  The older 2013 version cited by Defendants does not have an explicit choice of law provision but, consistent with the choice of law provision in the later versions, requires—as the others do—that the arbitrator to be California licensed, either a retired judge or an attorney. *See* 2015 User Agreement at UBER 0220; 2016 User Agreement at UBER 232; Dkt. 29-1 at 9.

Consistent with these provisions, Kalanick previously argued that California law governed the User Agreement.  *See* Dkt. 28 at 23 ("In this case, the relevant contract law is the law of California."); *see also id.* at 25 (phrasing arguments "[u]nder California law"); *see also* Dkt. 34 at 10 (continuing to cite California law to interpret User Agreement).  The Court agreed, as made explicit in its opinion on Kalanick's motion to reconsider:  "[T]he Court hereby clarifies that it will apply California law to interpret the User Agreements."  Dkt. 44 at 5-6.

Defendants' new proposal of New York law, *see* Uber Mem. at 11-12; Kalanick Mem. at 15-17, is not based on Plaintiff's residence or where Plaintiff registered with Uber.  Plaintiff resides in Connecticut.  *See* Dkt. 26 ¶ 7.  On October 18, 2014, when Defendants claim Plaintiff registered with Uber, Plaintiff was most likely in Vermont.  *See* Meyer Decl., ¶ 2.

**D.      Kalanick Informed The Court He Would Not Arbitrate.**

Kalanick twice informed the Court, in both versions of his motions to dismiss, that he "does not seek to enforce the arbitration agreement here."  Dkt. 23 at 21 n.9; Dkt. 28 at 22 n.10. Instead, he asserted that he "expressly reserves his right to move to compel arbitration in other cases arising out of the User Agreement."  *Id.*  In opposing Kalanick's motion, Plaintiff expressed his understanding that Kalanick's papers effected a "waiver of arbitration."  Dkt. 33 at 24; *see also* Dkt. 43 at 6 (noting understanding that Kalanick's brief contained an "express waiver" of "any right to arbitration in the present case, with a purported reservation of the right 'in other cases'").  Kalanick never objected to this characterization, either in reply, oral argument, or by any other means.  Instead, in his motion to reconsider, Kalanick confirmed that he had chosen to waive any right he might have to compel arbitration, informing the Court that he had made the "decision not to invoke his [purported] right to arbitration."  Dkt. 41 at 9.

The Court agreed that Kalanick had waived any right to arbitrate.  The opinion denying reconsideration notes that Kalanick had not only declined to seek arbitration, but that he had also affirmatively "represented in its briefing on the motion to dismiss" that he would "'not seek to compel arbitration here'" but might do so "'in <u>other cases</u>'" (emphasis by the Court).  *See* Dkt. 44 at 7 n.3 (¶ Dkt. 28 at 22 n.10).  The Court concluded that any right Kalanick might have had "to compel arbitration" was thus "effectively relinquished."  Dkt. 44 at 9.

**E.      Uber Represented Kalanick When He Waived Any Right To Arbitrate.**

Uber formally appeared as counsel for Kalanick on the motion to dismiss.  At that argument, Lindsey Haswell, an Uber in-house attorney, appeared on the record and informed the Court that she was appearing on Kalanick's behalf from Uber Technologies, Inc.  *See* Dkt. 35 at 1-2.  At an earlier conference, a different Uber lawyer attended, but did not enter an appearance.

*See* Wadsworth Decl. ¶ 2.  In any event, Uber was involved with the case from the outset.  On the day the case was filed, Uber's general counsel initiated an investigation of Plaintiff, as noted in the sanctions papers being submitted simultaneously with this motion.

**F.    Defendants Actively Litigated This Case Following The Waiver.**

Defendants waited more than five months before moving to compel arbitration.  In January, they said they would not move to arbitrate in this case, and they made their motions to compel in late May and June.  In the interim, Plaintiff dedicated substantial resources to this case.  Counsel has participated in at least ten telephonic conferences with the Court (*see* minute entries of Jan. 19, Jan. 28, Apr. 8, Apr. 11, May 19, May 23, May 26, May 27, June 7, June 14, 2016) and four in-person appearances (*see* minute entries of Mar. 9, May 20, May 27, and June 16, 2016).  Plaintiff has briefed Kalanick's motion to dismiss, his motion to reconsider, a Rule 34 motion, and motions under Rules 19 and 24.  Discovery has commenced; and the parties have served subpoenas, served and responded to interrogatories and document requests, and participated in meet and confers.  *See* Wadsworth Decl. ¶¶ 3-6.  Plaintiff has retained an expert and incurred substantial costs in connection with his class certification motion, which is due in less than 60 days.  And Plaintiff has conducted court-ordered discovery relating to Defendants' alleged misconduct in this case.  This extensive work required Plaintiff to expand his legal team to include five law firms.  *Id.*, ¶ 7.  That team has completed work equaling hundreds of thousands of dollars of attorney time.  *Id.*

## ARGUMENT

**I.    NO BINDING ARBITRATION AGREEMENT EXISTS.**

Defendants' motions fail at the threshold because the documents they have submitted in support of their motion reveal that Plaintiff and Uber never formed an agreement to arbitrate.

A.     **The Court, Not An Arbitrator, Decides The Existence Of A Binding Arbitration Agreement.**

As then-Judge Sotomayor explained, "[i]t is well settled that a court may not compel arbitration until it has resolved 'the question of the very existence' of the contract embodying the arbitration clause."  *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 26 (2d Cir. 2002).  This question is for the court, even if the purported arbitration agreement clearly reserves questions of arbitrability for the arbitrator.  *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 392 (2d Cir. 2011) (holding court "must first 'resolve[] the question of the very existence of the contract embodying the arbitration clause,'" before turning to "questions of arbitrability") (quoting *Specht*, 306 F.3d at 26); *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006) (distinguishing question of whether any agreement between the parties was "ever concluded"); *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 n.2 (2010) (same); *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 53 n.11 (2d Cir. 2004) ("a court is required to determine, before compelling arbitration . . . that the parties have an agreement to arbitrate"); *Celltrace Commn'cs Ltd. v. Acacia Research Corp.*, 15-CV-4746 (AJN), 2016 U.S. Dist. LEXIS 78620, *6 (S.D.N.Y. June 16, 2016) ("[W]here one party argues that there is no valid arbitration agreement, courts have decided the question of arbitrability.").

Here, this Court must review whether any agreement to arbitrate would arise as a result of a customer signing up for Uber in the manner Defendants describe.  *Specht*, 306 F.3d at 26; *see also Sgouros v. Transunion Corp.*, 817 F.3d 1029, 1033 (7th Cir. 2016) (holding court must decide "whether an agreement to arbitrate arose" through the "act of clicking on [a] button"). "Inasmuch as the arbitrator has no authority of any kind with respect to a matter at issue absent

an agreement to arbitrate, the question of whether such an agreement exists . . . is necessarily for the court and not the arbitrator." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012).

### B.     Plaintiff And Uber Never Formed A Binding Arbitration Contract.

The threshold question here, as in any arbitration motion, is whether the parties have contractually bound themselves to an arbitration agreement. *See*, *e.g.*, *Schnabel*, 697 F.3d at 118; *Specht*, 306 F.3d at 26; *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 388 (E.D.N.Y. 2015) (Weinstein, J.). "'Mutual manifestation of assent' is the 'touchstone' of a binding contract." *Berkson*, 97 F. Supp. 3d at 388 (quoting *Specht*, 306 F.3d at 29). "Arbitration agreements are no exception to the requirement of manifestation of assent." *Specht*, 306 F.3d at 30.

Not every form of agreement will suffice to create an arbitration contract. "[A]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he is unaware, contained in a document whose contractual nature is not obvious." *Schnabel*, 697 F.3d at 123 (quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993, 101 Cal. Rptr. 347, 351 (1972)). "Clarity and conspicuousness of arbitration terms are important in securing informed assent." *Specht*, 306 F.3d at 30. Under California law, which applies here, *see infra* at III.B, "'[i]f a party wishes to bind in writing another to an agreement to arbitrate future disputes, such purpose should be accomplished in a way that each party to the arrangement will fully and clearly comprehend that the agreement to arbitrate exists and binds the parties thereto.'" *Id.* (applying California law).

In the web context, courts have found "clickwrap" arrangements more likely to be effective than "browsewrap" arrangements. "Essentially, under a clickwrap arrangement, potential licensees are presented with the proposed license terms and forced to expressly and unambiguously manifest either assent or rejection prior to being given access to the product."

*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 429 (2d Cir. 2004).  By contrast, "'browsewrap'

agreements . . . disclose terms on a webpage that offers a product or service to an Internet user;

the user then assents to the provision merely by visiting the webpage to purchase the product or

enroll in the service."  *Schnabel*, 697 F.3d at 130 n.18.  "The defining feature of browsewrap

agreements is that the user can continue to use the website or services without visiting the page

hosting the browsewrap agreement or even knowing that such a webpage exists."  *Long v.*

*Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 862 (Mar. 17, 2016).  In browsewrap

arrangements, "proximity or conspicuousness of [a] hyperlink alone is not enough to give rise to

constructive notice."  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178 (9th Cir. 2014).[1]

Here, the browsewrap arrangement of Uber's registration process did not put Plaintiff on

sufficient notice to form a binding arbitration agreement.  Defendants contend that Plaintiff

completed a "basic two-step" process consisting of "register" and "payment."  Uber Mem. at 3-4;

Kalanick Mem. at 3.  On the first screen, Plaintiff "registered" by entering his name, email

address, mobile phone number, and a password, and then clicking "next."  On the second screen,

Plaintiff rendered "payment" by entering his credit card information "in the text box provided."

Uber Mem. at 4; Kalanick Mem. at 4.  Immediately below the text box for the credit card

information, is a shaded button that reads "REGISTER."  Defendants note that Plaintiff must

have clicked that button.  *Id.*

Below the "Register" button are additional large buttons for "Paypal" and "Google

Wallet."  Below those buttons, at the bottom of the second screen, in much smaller font, is the

statement "By creating an Uber account, you agree to the <u>TERMS OF SERVICE & PRIVACY</u>

---

[1] In those relatively rare circumstances in which courts have enforced browsewrap agreements,
they have tended to do so against businesses, not consumers like Plaintiff.  *See Berkson*, 97 F.
Supp. 3d at 396; Mark A. Lemley, *Terms of Use*, 91 Minn. L. Rev. 459, 472 (2006).

POLICY." Uber Mem. at 4; Kalanick Mem. at 4. Defendants note that the terms of service language is in blue and contains a hyperlink. But there is no prompt or instruction to read the terms of service, nor is there any "I Agree" box to click next to the terms of service.[2] Defendants explain that "*[i]f* the hyperlink is clicked, the user is taken to a screen that contains a button that accesses the 'Terms and Conditions' and 'Privacy Policy' then in effect." Uber Mem. at 5 (emphasis added); Kalanick Mem. at 4 (same). Yet Defendants do not contend that Plaintiff ever clicked on the terms and conditions hyperlink, or otherwise saw these terms and conditions. All they say is that he entered his personal contact information on the first screen, clicked "next," entered his payment information, and clicked "register."[3]

These facts—introduced by Defendants through the Vincent Mi declaration—now make clear that Plaintiff and Uber never formed an arbitration agreement. *See Specht*, 306 F.3d at 23 (finding plaintiffs had not assented to arbitration clause in a license agreement located below the download button on a website offering free software); *Sgouros v. Transunion Corp.*, 817 F.3d 1029, 1036 (7th Cir. 2016) (Wood, J.) (holding that "Illinois contract law requires that a website provide a user reasonable notice that his use of the site or click on a button constitutes assent to an agreement" and explaining that this could be accomplished "by placing the agreement, or a scroll box containing the agreement, or a clearly labeled hyperlink to the agreement, next to an 'I

---

[2] Significantly, Plaintiff never had to click an "I agree" button or scroll through the terms of service. The Uber terms of service agreement is thus not a "clickwrap" or "scrollwrap" agreement, as the courts have defined those terms. *See, e.g.*, *Berkson*, 97 F. Supp. 3d at 397-399.

[3] Defendants try to create the misimpression that one would have to click on the terms and conditions before clicking the "register" button. Uber Mem. at 5 (first describing hyperlink before stating: "The user must *then* click the "Register" button, which appears directly above the link to the terms on the final screen, to complete the registration process." (emphasis added)); Kalanick Mem. at 4 (same). But a close reading of their argument, and a review of the second screenshot, makes clear that is not the case. One can "register" without ever clicking on the terms of service, and in fact one would come to the register button in the middle of the screen before ever getting to the terms of service hyperlink at the bottom of the screen.

Accept' button that unambiguously pertains to that agreement").  Plaintiff never read the terms and conditions, *see* Meyer Decl. ¶ 4; Uber never prompted him to do so; and he never had to confirm that he had agreed to them.  *See Sgouros*, 817 F.3d at 1035 (noting that "[w]here the terms are not displayed but must be brought up by using a hyperlink, courts . . . have looked for a clear prompt directing the user to read them").

       "Where, as here, there is no evidence that [Plaintiff] had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract."  *Nguyen*, 763 F.3d at 1177.  Defendants did not design the registration process in such a manner as would put a prudent person on notice of the arbitration agreement.  *See id.* at 1178-1179 (holding that where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice); *Long*, 245 Cal. App. 4th at 866 (finding insufficient notice, where user would, as here, have to "(1) remove his attention from the fields in which he is asked to enter his information; (2) look below the buttons he must click to proceed with the order; (3) look even further below [another] logo . . .; and . . . finally find the 'TERMS OF USE' hyperlink.").  Having failed to demonstrate that Plaintiff did anything other than click the "Register" button in the middle of the second screen, Defendants have not made the threshold showing that there was any "mutual manifestation of assent" to arbitration.  *Berkson*, 97 F. Supp. 3d at 388, 393, 404.

       Defendants' citations do not support their claim that courts "have repeatedly held that users were bound" by Uber in these or similar circumstances.  Uber Mem. at 15; Kalanick Mem.

at 22.  In the single Uber case they cite, *Lanier v. Uber Techs., Inc.*, No 15-cv-09925, Dkt. 25 at 4-7 (C.D. Cal. May 11, 2016), this issue was not raised.  *See id.* (noting plaintiff did not object to existence of agreement).  Moreover, in *Whitt v. Prosper Funding LLC*, No. 1:15cv136, 2015 WL 4254062, at *1 (S.D.N.Y. July 14, 2015), unlike here, "[a]n applicant could not complete [the service] without clicking the box indicating his or her acceptance of the Agreement."  And in *Nicosia v. Amazon.com, Inc.*, 84 F. Supp. 3d 142, 145 (E.D.N.Y. 2015), the "Plaintiff checked a box indicating that he agreed with Amazon's 'Conditions of Use.'" *Id.* at 145.  By contrast, here, Uber simply asked Plaintiff to "REGISTER."  Mi Decl. Ex. A.  A user would have had to have looked further down the page to find, in much smaller fine print, the phrase "By creating an Uber account, you agree to the terms of service & privacy policy," and would have had to click on the small hyperlink to find the actual terms.  *Id.*  Defendants' precedents thus offer no support.

Nor, contrary to Defendants' suggestions, has Plaintiff conceded that he formed an arbitration agreement with Uber.  Defendants cite paragraph 29 of the First Amended Complaint, which states that "[t]o become an Uber account holder, an individual first must agree to Uber's terms and conditions and privacy policy."  As a matter of fact, that is what Uber's App and its User Agreements say.  Plaintiff has not conceded, as a matter of law, that Uber's stated requirements for a user to register sufficed to create a binding arbitration contract.[4]  It did not.

In the absence of an arbitration agreement, the motion to compel should be denied.

---

[4] Nor has Plaintiff pled any facts about his own registration with Uber, or even the process or requirements at that time.  Nevertheless, if necessary, Plaintiff will seek leave to amend the complaint to conform this allegation to the evidence as stipulated by both Kalanick and Uber. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); Fed. R. Civ. P. 15(b)(2) (permitting amendment of pleadings to conform to evidence).

## II.   DEFENDANTS HAVE WAIVED ARBITRATION IN THIS LITIGATION.

Even if there were a binding arbitration agreement, Defendants have waived any

arguments under that agreement, both expressly and impliedly.

### A.   This Court, Not An Arbitrator, Decides Waiver Through Litigation Conduct.

The question of whether a party, through its litigation conduct, waived any right to

arbitrate is for the Court, not an arbitrator, to decide.  *See In re S&R Co. of Kingston v. Latona*

*Trucking, Inc.*, 159 F.3d 80, 82-83 (2d Cir. 1998) (holding waiver for court, not arbitrator, to

decide, when based on "participating in the litigation"); *Doctor's Assocs., Inc. v. Distajo,* 66 F.3d

438, 456 (2d Cir. 1995) (distinguishing "cases where the waiver defense was based on prior

litigation" activity, where court decides waiver, from cases "when the defense was based on

other actions").  Defendants nowhere address this controlling precedent.  They rely, instead, on

cases involving conduct outside of litigation to insist that an arbitrator must decide this issue.

*See* Kalanick Mem. at 8-9; Uber Mem. at 10 & 20-21 n.11.

Defendants are wrong; this question is for the Court to decide.  *See, e.g.*, *La. Stadium &*

*Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010)

(considering "whether a party has a waived its right to arbitration"); *In re S&R Co. of Kingston v.*

*Latona Trucking, Inc.*, 159 F.3d at 82-83; *Doctor's Assocs.*, 66 F.3d at 454-56; *Gilmore v.*

*Shearson/Am. Express, Inc.*, 811 F.2d 108, 112-14 (2d Cir. 1987).[5]

---

[5]  *Accord Grigsby & Assocs., Inc. v. M. Secs. Inv.*, 664 F.3d 1350, 1353 (11th Cir. 2011) ("it is
presumptively for the courts to adjudicate disputes about whether a party, by earlier litigating in
court, has waived the right to arbitrate"); *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388,
394 (6th Cir. 2008) (reaffirming the "traditional rule that the courts presumptively resolve
waiver-through-inconsistent-conduct claims"); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207,
221 (3d Cir. 2007) ("[W]aiver of the right to arbitrate based on litigation conduct remains
presumptively an issue for the court to decide"); *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1,
14 (1st Cir. 2005) ("waiver by conduct, at least where due to litigation-related activity, is
presumptively an issue for the court").

**B.     Defendants Expressly Waived Arbitration With Kalanick In This Case.**

Defendants expressly waived any right to arbitrate Plaintiff's claims against Kalanick.  It has long been the case that "the right to arbitrate may be waived."  *Demsey & Assocs., Inc. v. S.S. Sea Star*, 461 F.2d 1009, 1017 (2d Cir. 1972).  Waivers may be express.  *Apollo Theater Found., Inc. v. W. Int'l Syndication*, 02 CIV. 10037, 2004 WL 1375557, at *3 (S.D.N.Y. Jun. 21, 2004). Express waivers run the gamut from the "fairly unique situation" (like this one) where a party informs a court that it does not "want[] to utilize arbitration," *MidAtl. Int'l Inc. v. AGC Flat Glass N. Am., Inc.*, 2:12cv169, 2014 U.S. Dist. LEXIS 15779, at *15-16 (E.D.Va. Feb. 7, 2014), to less explicit situations where, for instance, a party withdraws a motion to compel arbitration, *see, e.g.*, *Gilmore*, 811 F.2d at 110.  A party expressly waiving arbitration cannot later "take inconsistent positions in a lawsuit and simply ignore the effect of a prior filed document." *Gilmore*, 811 F.2d at 113.  Otherwise, litigants could "play 'fast and loose' with the courts."  *Id*.

Here, Kalanick "effectively relinquished" any right to invoke arbitration in this case, as this Court has previously noted.  Dkt. 44 at 9.  He twice informed the Court that he "does not seek to enforce the arbitration agreement here."  Dkt. 23 at 21 n.9; Dkt. 28 at 22 n.10.  He qualified his waiver with the limited reservation that he "does not waive and expressly reserves his right to move to compel arbitration in other cases."  Dkt. 23 at 21 n.9; Dkt. 28 at 22 n.10 (emphasis added and noted by Court (*see* Dkt. 44 at 7 n.3)).[6]  Kalanick's arbitration position was material to the motion accompanying his waiver.  In particular, Kalanick disclaimed his interest

---

[6] Significantly, even though this has always been a putative class action, Kalanick now claims he never "waived his right to compel arbitration as to putative class members."  Kalanick Mem. at 15 n.4; *see also* Uber Mem. at 21 n.11.  That is not true.  Kalanick cabined his waiver only by reserving the right to move to arbitrate "in other cases."  He did not reserve the right to arbitrate against class members in a certified class or other named plaintiffs, all of which are *de rigueur* in class action litigation.  Plaintiff anticipates joining additional class representatives and moving for class certification in this case.  Defendants' waiver is effective for all of those plaintiffs.

in moving to arbitrate in a motion in which he was seeking to enforce a purported class waiver

provision within the arbitration agreement.  The Court rejected Kalanick's argument, in part,

because "defendant is not seeking to compel arbitration."  Dkt. 37 at 23 n.8.  In response,

Kalanick did not change his position on arbitration.  Instead, he moved for reconsideration but

confirmed that he had made the "decision not to invoke his [purported] right to arbitration."

Dkt. 44 at 9.  His waiver was explicit and firm.

Plaintiff and the Court properly understood these statements as an express waiver.  *See*

Dkt. 33 at 24 (noting "waiver of arbitration"); Dkt. 43 at 6 (noting "express waiver" of "any right

to arbitrate in the present case, with a purported reservation of the right 'in other cases'"); Dkt.

44 at 9 (the Court noting Kalanick had "effectively relinquished" any arbitration right).  Kalanick

never took any action—in his papers, at oral argument, or otherwise—to suggest Plaintiff's or

the Court's readings of Kalanick's three separate submissions were wrong.  By making such

statements, Kalanick expressly waived any arbitration rights he had.

Uber cannot evade Kalanick's waiver and articulates no theory for doing so.  Uber was

both aware of and involved in making the waiver.  Uber held itself out as part of Kalanick's legal

team on the motion to dismiss, where he made (and never sought to retract) these waivers.[7]  In

particular, Uber entered an in-court appearance at defense counsel's table for Kalanick at the

hearing on the motion to dismiss with Uber's in-house litigator, Lindsey Haswell, informing the

Court that she was appearing "from Uber Technologies, Inc., on behalf of Mr. Kalanick."  Dkt.

35 at 1-2 (noting appearance of "Uber Technologies, Inc." "for Defendant").  Uber cannot

distance itself from Kalanick's litigation strategy and express waiver in these circumstances.

---

[7] Uber admits that, "of course, [it has] had knowledge of this suit from shortly after the time it was filed."  Dkt. 59 at 7 n.1.  Indeed, Uber and its lawyers began an investigation of Plaintiff and his counsel on the very day suit was filed.

17

Uber makes no effort to deny the waiver; it does not even address it. *See* Uber Mem. at 20-21 n.11. Kalanick, however, misleadingly suggests his waiver was qualified with imagined caveats, which in fact never accompanied his submissions. Kalanick thus claims—without any possible language to quote—that his waiver had been "limited specifically to his motion to dismiss," *see* Kalanick Mem. at 1, 12, or was "without prejudice to [a] right to seek arbitration at a later date," *id.* at 12. Nothing in his motion papers, however, suggested that his statement that he would "not seek to enforce the arbitration agreement" was limited to the motion to dismiss stage. Dkt. 28, at 22 n.10. Rather, he delineated his waiver only by reserving his right to move to compel arbitration "in other cases." *Id.* Kalanick could have easily sought to reserve a right to arbitrate in this case. Yet, as this Court recognized, he did not do so. *See* Dkt. 44 at 7 n.3. Instead, he twice informed the Court that he "does not seek to enforce the arbitration agreement here." Dkt. 23, at 21 n.9; Dkt. 28, at 22 n.10. [8]

This express waiver is binding, regardless of the amount of prejudice Plaintiff suffered (though here Plaintiff was prejudiced, *see infra* I.C). *See Apollo Theater Found., Inc.*, 2004 WL 1375557, at *3 ("No showing of prejudice to the opposing party is necessary if a litigant has expressly waived its right to arbitration."); *see also Gilmore*, 811 F.2d at 112-13; *see also Smith v. Petrou*, 705 F. Supp. 183, 185 (S.D.N.Y. 1989). Their arguments cannot be resurrected.

## C.    Defendants Impliedly Waived Arbitration In This Case.

More broadly, Defendants' joint conduct impliedly waived arbitration in this case.[9] The Second Circuit requires courts to examine the following factors in assessing implied waiver:

---

[8] By contrast, Kalanick's counsel sought to reserve a right to a bench trial (based on the same section of the arbitration agreement he was not attempting to enforce). *See, e.g.*, Dkt. 19 at 7. He knew how to reserve his rights; he chose not to reserve any rights to arbitrate.

[9] Plaintiff does not need to show implied waiver of the claims in this case against Kalanick; express waiver suffices. There are no other claims in this case. *See infra* IV. However, even if

"(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *La. Stadium & Exposition Dist.*, 626 F.3d at 159.  In addition, (4) "[t]he proximity of a trial date when arbitration is sought is also relevant." *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995); *see In re S&R Co. of Kingston*, 159 F.3d at 84 (same).   These factors establish an implied waiver here.

<u>First</u>, Uber first announced its intention to compel arbitration in late May, *see* Dkt. 59 (dated May 24, 2016), more than five months after it learned that Plaintiff filed his antitrust claims in this case, *see* Dkt. 1 (dated Dec. 16, 2015), as Uber concedes, *see* Dkt. 94 at 35 ("Regrettably, we are five months and seven days since the filing of the first complaint which we knew about and we recognize that.").  Kalanick did not move to compel arbitration until June.  *See* Dkt. 80 (dated June 7, 2016).  As discussed above, Uber knew of the case immediately*, see supra* at II.B & n.16, and appeared as counsel for Kalanick, *see id.*  Five months' delay supports a finding of implied waiver in the Second Circuit.  *See, e.g.*, *PPG Indus., Inc. v. Webster Auto Parts*, 128 F.3d 103, 108-110 (2d Cir. 1997) (five months' delay); *SATCOM Int'l Group PLC v. ORBCOMM*, 1999 U.S. App. LEXIS 38271, at *1 (2d Cir. Dec. 15, 1999) (summary order), *aff'g substantially for reasons stated*, 49 F. Supp. 2d 331, 339-41 (S.D.N.Y. 1999) (four months' delay).  Defendants' delay is consistent with implied waiver.

<u>Second</u>, there has been substantial litigation, including both motion practice and discovery, to date.  Since this case was filed—and prior to moving to compel arbitration— Kalanick has offensively filed at least three substantive motions:  losing his motion to dismiss (twice filed), losing his motion for reconsideration regarding a purported class-action waiver,

the Court were to determine that the case included claims against Uber, Uber would have impliedly waived any right to arbitrate those claims, as described in this section.

and succeeding in his motion to join Uber as a necessary party.  The parties have served and

responded to interrogatories and document requests; Uber has served a non-party subpoena; the

parties have litigated possession, custody and control issues; and the parties have participated in

numerous attorney conferences.  Moreover, Defendants' conduct in investigating Plaintiff and

his counsel has also triggered a series of depositions, court conferences, discovery, and

discovery disputes, well known to this Court.  In addition, Plaintiff has retained an expert at

significant cost to prepare expert reports, which are due in less than two months, on August 19.

To date, the parties have participated in at least ten telephonic conferences with the Court and

appeared in Court on at least five occasions.

This intense litigation warrants a finding of implied waiver.  As the Second Circuit has

found elsewhere, "[b]y engaging in discovery and filing substantive motions[, a party]

evidence[s] a preference for litigation that supports a finding of waiver."  *PPG Indus.*, 128 F.3d

at 109.  The discovery that has taken place to date is equal to, or greater than, the discovery in

other cases in which the Second Circuit has found waiver.  *See, e.g.*, *La. Stadium & Exposition*

*Dist.*, 626 F.3d at 159 (no discovery); *PPG Indus.*, 128 F.3d at 109 (relevant interrogatories and

one relevant subpoena).  Moreover, the substantial motions practice in this case—with at least

three substantive motions filed by Kalanick (*i.e.*, for dismissal (Dkt. 22 & 28), reconsideration

(Dkt. 40), and joinder (Dkt. 46))—equals or exceeds the level of motions practice in other

implied waiver cases.  *See, e.g.*, *La. Stadium & Exposition Dist.*, 626 F.3d at 159 (motion to

remove; motion to stay pending MDL decision); *In re S&R Co. of Kingston*, 159 F.3d at 84

(motion to dismiss and stay); *Cotton v. Slone*, 4 F.3d 176, 180 (2d Cir. 1993) ("several

motions"); *Com-Tech Assocs. v. Computer Assocs. Int'l, Inc.*, 938 F.2d 1574, 1577-78 (2d Cir.

1991) (motions for judgment on the pleadings and partial summary judgment).  This level of activity weighs strongly in favor of implied waiver.

Third, and most importantly, Plaintiff has been prejudiced by Defendants' decision to seek to compel arbitration.  *See Thyssen v. Calypso Shipping Corp.,* 310 F.3d 102, 105 (2d. Cir. 2002) ("The key to a waiver analysis is prejudice").  Prejudice may be based on the use of discovery procedures not available in arbitration, unnecessary expense, or litigation of motions on the merits.  *Cotton*, 4 F.3d at 179.  Plaintiff has been prejudiced in each respect.

Here, Defendants' discovery efforts alone would suffice to establish prejudice.  Both Kalanick and Uber have taken advantage of discovery tools that would not be available in arbitration.  Kalanick has received responses to interrogatories and extensive document requests; and Uber has provided notice of its intention to serve two non-party subpoenas for extensive records, which would not be available in arbitration.  *See* Wadsworth Decl. ¶ 6.  Defendants cannot move for arbitration after taking advantage of these tools.  *See, e.g.*, *In re S&R Co. of Kingston*, 159 F.3d at 83-84 (finding prejudice where movants "benefitted by obtaining discovery . . . that would not have been available in arbitration"); *PPG Indus., Inc.*, 128 F.3d at 109; *Cotton*, 4 F.3d at 180; *Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l Capital Mkt. Corp.*, 996 F.2d 1478, 1480 (2d Cir. 1993).  Because they have "take[n] advantage of pre-trial discovery not available in arbitration," Defendants' discovery is "sufficient prejudice to sustain a finding of waiver."  *PPG Indus., Inc.*, 128 F.3d at 109.  The Court need not look further.

Yet, prejudice is further supported by the great expense already sustained in this case, including considerable resources in terms of attorneys' time and effort—with five firms retained to handle the vast amount of work at issue—as well as expert fees, and the costs of pursuing

21

discovery over the last several months.  These costs would translate, in billable hours, to hundreds of thousands of dollars.  *See* Wadsworth Decl. ¶ 7.  If Defendants had moved for individual arbitration at the outset and succeeded, Plaintiff's pursuit of his claims on an individual basis in arbitration would not have required (or justified) anywhere near the same level of expense.  Plaintiff has thus been prejudiced by the expenditure of these great resources.

Additionally, and significantly, Plaintiff would be procedurally and substantively prejudiced by having this case moved into arbitration after this Court's decision on significant motions.  Restarting this case in arbitration would be prejudicial, from a procedural standpoint, because the parties would need to start all over in arbitration, after Plaintiff has won a key victory on class waiver, which Kalanick previously re-litigated, without success.  *See La. Stadium & Exposition Dist.*, 626 F.3d at 160 (finding procedural prejudice if party "were compelled to arbitrate" "after winning several key procedural victories").

Restarting this case through arbitration following substantial motion practice would also substantively prejudice Plaintiff.  "Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration." *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991).  Here, Plaintiff persuaded this Court, against Kalanick's full-throated defense, that the complaint states a violation of the antitrust laws.  Because the complaint simply describes Defendants' business plan and actions, with allegations Defendants would be hard-pressed to dispute at trial, Defendants obviously now hope for a different legal conclusion through arbitration.  Second Circuit precedent prevents exactly that strategy: "a litigant is not entitled to use arbitration as a means of aborting a suit that did not proceed as planned." *La. Stadium & Exposition Dist.*, 626 F.3d at 161.  Stated otherwise, litigants cannot "delay [their] demand for arbitration and use federal court proceedings to test the

water before taking a swim." *In re Pharmacy Benefit Managers Antitrust Litig.*, 700 F.3d 109, 122 (3d Cir. 2012); *In re S&R Co. of Kingston*, 159 F.3d at 86 (parties may not use courts to "test the water before taking a swim").  The waiver doctrine thus thwarts Defendants' attempt to "play heads I win, tails you lose." *Cabinetree of Wisc., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995).[10]

Fourth, there are only five months remaining before trial.  That period is not only short, but it is also much shorter than the typical timeline in an AAA arbitration.  The AAA Arbitration Roadmap states that the median timeline to a hearing is 217 days, or more than seven months, and 297 days until an award, or nearly ten months.  *See* AAA Arbitration Roadmap, at 3 (2007), *available at* https://www.adr.org/aaa/ShowPDF?doc=ADRSTG_003838 (last visited June 26, 2016).  Thus, arbitration would not only belatedly derail this litigation; it would also almost certainly delay the resolution of this case by many months.  This factor likewise supports waiver in this case.  *See Leadertex*, 67 F.3d at 25.

For these reasons, Defendants have waived whatever rights they had to arbitrate this case. This proceeding is well along the path to resolution in this Court.  Defendants should not be able to obtain a do-over.  Instead, the Court should deny the motions to compel arbitration.

## III.   THE ARBITRATION AGREEMENT, IF IT DID EXIST, WOULD NOT APPLY TO ARBITRATION WITH KALANICK.

The purported arbitration agreement does not apply to Kalanick in any event.

---

[10]  Contrary to Kalanick's suggestion, the implied waiver is not solely based on the filing of, and decision on, the motions to dismiss.  *See* Kalanick Memo. 1 at 14.  Rather, the prejudice comes in lockstep with each of the other factors—discovery, delay, and a short window until trial—and following Plaintiff's understanding (and the Court's) that Kalanick would not pursue arbitration.

## A.  Because The Claims Against Kalanick, A Non-Party, Are Not Based On The User Agreement, This Court Must Decide Their Arbitrability.

The Second Circuit has recognized that "just because a signatory has agreed to arbitrate issues of arbitrability does not mean that it must arbitrate with any non-signatory." *Contec Corp. v. Remote Solutions Co., Ltd.*, 398 F.3d 205, 209 (2d Cir. 2005); *see also Republic of Iraq v. BNP Paribas USA*, 472 Fed. Appx. 11, 13 (2d Cir. Mar. 28, 2012) ("[E]vidence of intent to have an arbitrator determine its jurisdiction with regard to disputes 'referred by either Party' . . . does not clearly and unmistakably demonstrate their intent to have the arbitrator determine its jurisdiction with respect to any dispute raised by a non-party.")  "Rather, to determine who decides the issue of arbitrability, 'a court must first determine whether the parties have a sufficient relationship to each other and to the rights under the [arbitration] agreement.'" *Gerszberg v. Li & Fund (Trading) Ltd.*, 16 Civ. 1182 (PAE), 2016 U.S. Dist. LEXIS 76188, *10 (E.D.N.Y. June 10, 2016) (quoting *Contec*, 398 F.3d at 209)).  This threshold "question of 'relational sufficiency' is for the Court, not the arbitrator, to resolve." *Id.* (quoting *Contec*, 398 F.3d at 209)).[11]

Kalanick does not have "relational sufficiency" to any arbitration agreement because this dispute arises out of Kalanick's violations of antitrust laws, not any obligations owed to Plaintiff under the User Agreement.  Relational sufficiency depends on "the relationship among the parties, the contracts they signed (or did not), and the issues that ha[ve] arisen." *Contec*, 398 F.3d at 209 (requiring relationship "to the rights created under the agreement").  The benchmark

---

[11] *Laumann v. Nat'l Hockey League*, 989 F. Supp. 2d 329 (S.D.N.Y. 2013), which Defendants cite (Uber Mem. at 10), actually supports Plaintiff's position, not Defendants'.  That case involved two sets of plaintiffs: those who signed an arbitration agreement with the defendant, and those who signed an arbitration agreement to which the defendant was a non-signatory.  The court held that when the defendant, as a *non-signatory*, sought to compel arbitration, "f[ell] to the court to decide whether the . . . arbitration agreement applies." *Id.* at 338.

for assessing sufficiency is whether "'issues the non-signatory is seeking to resolve in arbitration are intertwined with the [signed] agreement.'"  *Id.* (quoting *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 404 (2d Cir. 2001)).

The relational sufficiency test—whether the claims are "intertwined" with the underlying contract—mirrors the test for the application of equitable estoppel.  *Compare id. with Goldman v. KPMG, LLP*, 92 Cal. Rptr. 3d 534, 543 (Cal. Ct. App. 2009) ("the 'sine qua non' for equitable estoppel 'is that the claims plaintiff asserts against the nonsignatory must be dependent upon, or founded in and inextricably intertwined with, the underlying contractual obligations of the agreement containing the arbitration clause").  Indeed, the Second Circuit explicitly adopted estoppel case law to develop this test.  *See Contec Corp.*, 398 F.3d at 209 (relying on "estoppel decision").  As this Court has previously held, and as discussed below, *see infra* III.E, Plaintiff's claims are not intertwined with the User Agreement (and equitable estoppel does not apply) because "Plaintiff is not seeking to enforce the User Agreement."  Dkt. 37 at 23 n.8 ("plaintiff is not equitably estopped").[12]

Accordingly, this Court, not an arbitrator, must decide whether Plaintiff must arbitrate claims against Kalanick, a non-signatory to the User Agreement.

### B.   California Law Governs Whether Plaintiff Must Arbitrate Claims Against Kalanick Under The User Agreement.

Whether Plaintiff must arbitrate his claims against non-signatory Kalanick is a question of state law.  Nothing in the FAA "purports to alter background principles of state contract law

---

[12] Contrary to Defendants' contention, *Contec,* while perhaps "purporting to allocate the issue of equitable estoppel to the arbitrator," "actually applied factors meant to determine it."  *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 838 F. Supp. 2d 967, 986 (C.D. Cal. 2012).  "*Contec* does not support the broad proposition that in the face of a delegation provision, the Court should defer to the arbitrator entirely and make no inquiry into whether a non-signatory may pursuant to equitable estoppel enforce an agreement to arbitrate against a signatory."  *Id.* at 985-86.

regarding the scope of agreements (including the question of who is bound by them)."  *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 630 (2009); *see also Larson v. Life of the South Insurance Co.*, 648 F.3d 1166, 1170-71 (11th Cir. 2011) ("*Carlisle* . . . clarifies that state law governs th[e] question" of "whether a non-party can enforce an arbitration clause against a party").  Here, California law governs this determination.

      This Court has already held that California law governs the User Agreement, including the very paragraph containing the arbitration agreement in dispute, which was at issue in Kalanick's motions to dismiss and reconsider:  "[T]he Court . . . will apply California law to interpret the User Agreement."  Dkt 44 at 5; *see also id.* at 5-19 (applying California law to paragraph of User Agreement containing arbitration agreement). This Court reached that conclusion at Kalanick's urging, when he previously argued that California law governed the relevant provisions of the User Agreement.  *See* Dkt. 28 at 23 ("the relevant contract law is the law of California"); *see also id.* at 25 (phrasing arguments "[u]nder California law"); *see also* Dkt. 34 at 10 (continuing to cite California law to interpret User Agreement).  Kalanick cannot now ask the Court to reach a different conclusion, when his interests have changed.  The doctrine of judicial estoppel prevents exactly such gamesmanship.[13]

      The law of the case doctrine also precludes Kalanick's flip-flop.  "The law of the case doctrine forecloses reconsideration of issues that were decided—or that could have been decided—during prior proceedings" in the same case.  *United States v. Williams*, 475 F.3d 468, 471 (2d Cir. 2007).  Under the doctrine, "when a court has ruled on an issue, that decision should

---

[13] *See, e.g.*, *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (judicial estoppel applies if "a party has successfully maintained a position in one proceeding and assumed a contrary position in another proceeding"); *In re Adelphia Recovery Trust*, 634 F.3d 678, 695-99 (2d Cir. 2011) ("judicial estoppel . . . prohibit[s] parties from deliberately changing positions according to the exigencies of the moment.").

generally be adhered to by that court in subsequent stages in the same case, unless cogent and

compelling reasons militate otherwise." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir.

2002) (quotation marks omitted).  Such reasons include "an intervening change of controlling

law, the availability of new evidence, or the need to correct a clear error or prevent manifest

injustice."  *Id*. at 1230.  Here, there is no cognizable basis for re-litigating this issue.

In any event, this Court's conclusion—and Kalanick's prior position—was correct.  Most

versions of the User Agreement, including the current version, include an express California

choice-of-law provision.  That provision states:  "These Terms are governed by and construed in

accordance with the laws of the State of California, U.S.A., without giving effect to any conflict

of law principles."  While the version that Defendants claims applies here—the 2013 User

Agreement—does not contain this express choice of law provision, it requires that an arbitrator

be "a retired judge or an attorney licensed to practice law in the state of California."  Dkt. 29-1 at

9.[14]  This manifests an intention of the signatories to have California law apply.

Even if the parties had not designated California law and California lawyers, California

law would apply under an interest analysis, as this Court previously found.  Dkt. 44 at 6.  The

User Agreement was drafted, approved, and executed by a company based in California, most

likely at its California headquarters.  By contrast, Defendants' proposed alternative of New York

has little connection to the User Agreement.  *See* Kalanick Mem. at 15-16; Uber Mem. at 11-13.

Plaintiff did not contract with Uber in New York,[15] is not a New York resident, and has taken as

---

[14] Plaintiff lacks sufficient facts to assess whether these later agreements were ever effective.

[15] The place of contracting is likely Vermont since Plaintiff recalls he was in Vermont when he
accepted the User Agreement.  *See* Meyer Decl. ¶ 2; s*ee also Huber v. D'Esterre,* 180 A.D. 220,
222, 167 N.Y.S. 835, 836 (App. Div. 1917) ("The place where the last act is done which is
necessary to give the contract validity is the place of the execution of the contract.").

many rides in other locations as he has in New York.  *See* Wadsworth Decl. Ex 3; Dkt. 26 ¶ 7.

Interest analysis thus continues to point to California law.

      This conclusion is unaffected by Defendants' argument that "the Court must consider the

Arbitration Agreement as a stand-alone agreement, without reference to the other Rider Terms in

the broader agreement in which the arbitration provision is contained."  Uber Mem. at 12.  This

argument does nothing to advance Defendants' position.  The Court previously decided that the

*arbitration agreement* of the User Agreement—in particular, the same "dispute resolution"

paragraph at issue here—was governed by California law.  Dkt. 44 at 5-7.  Severing other

portions of the User Agreement would not affect that conclusion.  Likewise, the requirement in

all versions of the User Agreement that the arbitrator be a California licensed retired judge or

attorney is found, obviously, within the arbitration provision.  Dkt. 29-1 at 9.  Again, severing

non-arbitration agreements would not change the analysis.  Finally, with or without severance,

the interest analysis would remain the same, and it would continue to point to California law, as

this Court previously held.  Dkt. 44 at 5. [16]

      California law thus governs whether Plaintiff must arbitrate claims against Kalanick.

---

[16] Defendants' severance argument, in any event, has no basis in law.  While arbitration provisions must be severed to preserve their validity, *see, e.g.*, *Buckeye*, 546 U.S. at 445; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 (1967), divorcing those provisions from the parties' choice-of-law provision would elevate arbitration provisions over choice-of-law provisions—a result that would be contrary to the purpose of the FAA.  *See Opals on Ice Lingerie v. Bodylines Inc*., 320 F.3d 362, 369 (2d Cir. 2003) (purpose of the FAA is "to make arbitration agreements as enforceable as other contracts, but not more so").  Defendants' Uber-related cases cited lack any meaningful analysis. *See Bruster v. Uber Techs., Inc.,* No. 15-CV-2653, Dkt. 19 at 7-8 (N.D. Ohio May 23, 2016) (providing no analysis of severability); *Varon v. Uber Techs., Inc*., No. 15-3650, 2016 WL 1752835, at *3 (D. Md. May 3, 2016) (repeating severability language from *Buckeye*, but citing no authority that the *Prima Paint* should be extended to choice of law analysis); *Suarez v. Uber Techs., Inc.*, No. 16-CV-0166, 2016 WL 2348706 (M.D. Fla. May 4, 2016) (citing two cases, *Nitro-Lift Techs., L.L.C. v. Howard*, 133 S. Ct. 500, 503 (2012), which did not involve choice of law, and *Sena v. Uber Techs., Inc.,* No. 15-CV-2418, WL 1376445 (D. Ariz. April 7, 2016), which cites no authority for applying *Prima Paint* severability to choice of law)).

**C.** **The User Agreement Limits Plaintiff's Arbitration Obligations To Claims With Uber And Does Not Extend To Kalanick.**

Under California law, "[a]rbitration agreements are to be construed like other contracts to give effect to the intention of the parties." *In re Tobacco Cases I, JCCP 4041*, 124 Cal. App. 4th 1095, 1104, 21 Cal. Rptr. 3d 875, 881 (2004); *Hess v. Ford Motor Co.,* 27 Cal. App. 4th 516, 524, 41 P.3d 46, 51 (2002) ("Under long standing contract law, a contract must be so interpreted as to give effect to the mutual intention of the parties") (quotation marks omitted). "Typically, whether a contract benefits or accords rights to a third party (most often, the right to enforce the contract) depends significantly on the intention of the original contracting parties."[17] *Specht*, 306 F.3d at 39. Here, the User Agreement manifests the signatories' decision to limit the arbitration provision to disputes between Plaintiff and Uber, and not to extend arbitration to Uber's agents.

*First*, the User Agreement carefully defines "Company" or "Uber" as limited to the corporate entity, and uses only that term in setting out the arbitration obligation. The version of the User Agreement cited by Defendants requires "You and Company" to agree to arbitrate (Dkt. 29-1 at 9), while the more current versions likewise require arbitration of disputes "between you and Uber." *See* 2015 User Agreement at Uber 0219; 2016 User Agreement at UBER 0231. As the User Agreements' definitions make clear, neither phrase extends to agents or officers. In the current version, "Uber" is defined as "Uber USA, LLC and its subsidiaries and affiliates," *see id.* at UBER 0212, 0223; and in the version cited by Defendants, "Company" is defined as "Uber Technologies, Inc., a Delaware corporation," *see* Dkt. 29-1 at 2. Neither definition includes Kalanick. The plain language of this agreement thus excludes claims against him. *See Dillard v. Cooper,* No. 88-999, 1989 WL 110302 (W.D. Okl. August 15, 1989) (holding that arbitration

---

[17] As a general matter, an agent who is not a party to a contract between his principal and another is not bound by the contract and may not enforce it, unless the parties to the contract so intended. *See e.g.,* Restatement (3d) Agency § 6.01, cmt. d(1).

agreement that provided for arbitration of disputes between "you and me" could not extend beyond the signatories to a joint account holder).

*Second*, the arbitration procedure set out in the User Agreement is incompatible with arbitration with, or by, Kalanick.  In specifying how arbitration may be invoked, the User Agreement requires "[a] party who desires to initiate arbitration . . . [t]o provide the other party with a written Demand."  Dkt. 29-1 at 9.  As the Second Circuit agreed in upholding a decision refusing to extend a similar arbitration agreement to a non-party, "[t]his provision authorizes only 'either party' . . . to refer disputes to arbitration" and indicates that the signatories "intended the right to compel arbitration to be exclusive to them."  *Republic of Iraq v. ABB AG*, 769 F. Supp. 2d 605, 613-614 (S.D.N.Y. 2011), *aff'd* 472 Fed. Appx. at 14.  The plain text of the User Agreement thus manifests the parties' intention to limit arbitration obligations to themselves, not any non-signatories, *see* Dkt. 29-1 at 9, just as in *Republic of Iraq*.

*Third*, in stark contrast to the limited scope of the arbitration provisions, other clauses within the User Agreement explicitly cover agents, employees, and other parties.  For example, the indemnification provisions specifically cover not only Uber but also its officers, directors, employees, and agents.  *See* 2015 User Agreement at UBER 0212; 2016 User Agreement at UBER 0223; Dkt. 29-1 at 6.  Uber chose not to use this expansive language in the arbitration provision.  Moreover, another section of the User Agreement specifically designates third party beneficiaries to the contract, such as Apple, Google, Microsoft, or Blackberry.  *See* Dkt. 29-1 at 4; 2015 User Agreement at UBER 0214; 2016 User Agreement at UBER 0225.  But it excludes Kalanick from this section.  The fact that Uber, in an agreement it drafted, broadened the coverage of certain terms to persons and entities—choosing sometimes to include agents, like Kalanick, and other times not to include them—is fundamentally inconsistent with Defendants'

argument that Uber intended Kalanick to be covered by the arbitration provisions.  *See Tehama-Colusa Canal Auth. v. U.S. Dep't of Interior*, 819 F. Supp. 2d 956, 999 (E.D. Cal. 2011), *aff'd sub nom. Tehama-Colusa Canal Auth. v. U.S. Dep't of the Interior*, 721 F.3d 1086 (9th Cir. 2013) (construing narrower language against the drafter because it had demonstrated its ability to employ broader language when intended; the plaintiff "knew how to reserve a disputed issue in their Renewal Contracts, but did not do so for the area of origin dispute");  *Noonan v. Wonderland Greyhound Park Realty LLC*, 723 F. Supp. 2d 298, 334 (D. Mass. 2010) (construing narrower language against the drafter because it "knew how to use the broader term 'amendments' but neglected to use it in section 9.3").

The terms of the User Agreement thus manifest the parties' intentions not to require arbitration of claims against Kalanick.  "However much some courts may prefer arbitration, private parties are still entitled to have straightforward contractual agreements that are couched in simple English words enforced accordance with their terms."  *Motorola Credit Corp. v. Uzan*, 274 F. Supp. 2d 481,508 (S.D.N.Y. 2003), *aff'd in relevant part* 388 F.3d 39, 65 (2d Cir. 2004). Here, the User Agreement does not cover claims against Kalanick.

### D.   Common Law Agency Principles Do Not Require Plaintiff To Arbitrate These Claims Against Kalanick.

Ignoring the text of the User Agreement, Defendants contend that common law agency principles require Plaintiff to arbitrate his claims against Kalanick because of Kalanick's mere status as the CEO of Uber.  *See* Kalanick Mem. at 18; Uber Mem. at 20-22.  They are wrong. Under California law, "the key question" is whether the "alleged wrongdoing [of an] agent, officer, or employee" of a signatory "relate[d] to or ar[o]se out of the contract containing the arbitration clause."  *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 747 (9th Cir. 1993) (applying California law); *see also Amisel Holdings Ltd. v. Clarion Capital Mgmt.*, 622 F. Supp. 2d 825,

835 (N.D. Cal. 2007) (requiring that "claims against the agents arise out of or relate to the contract containing the arbitration clause").  Here, the answer to that question is no.  Kalanick cannot rely on such agency law, not only because the plain language of the arbitration agreement does not extend to agents, but also because Kalanick's alleged antitrust violations—*i.e.*, organizing a price-fixing conspiracy among *drivers*—do not arise out of the User Agreement, which provides terms of service for the Uber App.

This is not a new issue.  The parties previously litigated this issue, and this Court properly concluded that Plaintiff is "not seeking to enforce the User Agreement against defendant."  Dkt. 37 at 23 n.8.  Rather, Plaintiff's antitrust claims allege that Defendant fixed prices among competing driver-partners.  *See* Dkt. 26, ¶ 1.  The complaint does not cite the User Agreement as the mechanism for that price-fixing.  It could not, because the price-fixing agreements are with driver-partners, not users like Plaintiff.  *See id.*  In fact, the User Agreement disclaims any control over driver-partners' sales, specifying that Uber does not sell or offer transportation services, *see* Dkt. 29-1 at 2, and that the purchase of any ride is "solely between you and the applicable third-party," Dkt. 29-1 at 6.  Under California law, there is therefore no basis for agency.  *See Britton*, 4 F.3d at 747.

Defendants counter with a single California authority, *Dryer v. L.A. Rams*, 40 Cal. 3d 406 (Cal. 1985), but *Dryer* is completely consistent with *Britton*.  *See* Dkt. 81 at 18; Dkt. 92 at 20-22.  *Dryer* was a breach of contract case, in which the "claims all ar[o]se from the contract," which contained an arbitration clause.  *Dryer*, 40 Cal. 3d at 413.  In that context, the court held that the counterparty's agents were entitled to the protections of the arbitration agreement.  *Id.* at 417.  The agent's purported wrongdoing in *Dryer*, unlike Kalanick's wrongdoing here, arose out of the agreement containing the arbitration clause.  *See id.*

32

Defendants' remaining cases are distinguishable for the same reason.  In each, the

contract containing an arbitration clause was an essential part of the alleged wrongdoing in the

case.  *See JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 167, 176 (2d Cir. 2004) (antitrust

claims concerning the "price terms set forth in those contracts"; arbitration provision in that

contract); *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993) (fraud in sale of

securities; arbitration clauses within agreements "necessarily 'relate[d] to' those sales"); *Arrigo

v. Bluefish Commodities, Inc*., 704 F. Supp. 2d 299, 301 (S.D.N.Y. 2010) (employment

agreement violation; arbitration provision in that agreement); *Marcus v. Frome*, 275 F. Supp. 2d

496, 505 (S.D.N.Y. 2003) (fraudulent sale claim; arbitration provision in purchase agreement);

*Mosca v. Doctors Associates, Inc.*, 852 F. Supp. 152 (E.D.N.Y. 1993) (violations of franchise

agreement containing arbitration clause); *Scher v. Bear Stearns & Co*., Inc., 723 F. Supp. 211,

211-12, 216 (S.D.N.Y. 1989) (mishandling of customer's trading; customer agreement contained

arbitration agreement); *Brener v. Becker Paribas, Inc*., 628 F. Supp. 442, 445, 451 (S.D.N.Y.

1985) (claimed wrongdoing in sales of securities to brokerage customers; arbitration clause

within customer brokerage agreements).  Here, by contrast, none of the alleged antitrust

violations depend on the terms or existence of the User Agreement.

Ultimately then, Defendants' agency arguments fail for two reasons. *First*, the User

Agreement draws a line between those rights extended to agents (*i.e.*, indemnification) and those

limited to Uber as a corporate entity (*i.e.*, the arbitration provision), and expressly designates

certain third-party beneficiaries (*e.g.*, Apple) to the exclusion of Kalanick.  The User Agreement

should not be construed to confer rights on agents that are contrary to these explicit terms.  *See

Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468 476 (1989)

("There is no federal  policy favoring arbitration under a certain set of . . . rules; the federal

33

policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate."). *Second*, even if there were some basis for overriding the parties' intentions, the agency cases cited by Defendants are inapplicable. Plaintiff's price-fixing claims exist irrespective of any User Agreement, and the claims against Kalanick do not arise from any breach or violation of that agreement. For these reasons, Kalanick may not force arbitration of Plaintiff's claims under common law agency principles.

### E.    The Doctrine Of Equitable Estoppel Does Not Apply.

The doctrine of equitable estoppel, which Defendants press, fails here as well. As this Court has properly held, because "Plaintiff is not seeking to enforce the User Agreement" he "is not equitably estopped" by any terms in that agreement with respect to Kalanick. Dkt. 37 at 23 n.8 (addressing class waiver clause within arbitration agreement).

Equitable estoppel cannot apply here because, as already described, Plaintiff is not relying on any rights under the User Agreement to allege antitrust violations. The "sine qua non" for equitable estoppel "is that the claims plaintiff asserts against the nonsignatory must be dependent upon, or founded in and inextricably intertwined with, the underlying contractual obligations of the agreement containing the arbitration clause." *Goldman v. KPMG, LLP*, 92 Cal. Rptr. 3d 534, 540 (Cal. Ct. App. 2009); *JSM Tuscany, LLC v. Superior Court*, 123 Cal. Rptr. 3d 429, 441 (Cal. Ct. App. 2011) (same); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128–29 (9th Cir. 2013) (same). The theory prevents a contracting party from, "on the one hand, seek[ing] to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny[ing the] arbitration's applicability because the defendant is a non-signatory." *Goldman*, 92 Cal. Rptr. 3d at 543 (Cal. Ct. App. 2009). "The purpose of the doctrine is to prevent a plaintiff from, in effect, trying to have his

34

cake and eat it too; that is, from relying on the contract when it works to his advantage by establishing the claim, and repudiating it when it works to his disadvantage by requiring arbitration." *In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002) (quotation marks omitted), *abrogated in part on other grounds*, 538 U.S. 401 (2003).

Thus, when a plaintiff's claims are founded on an agreement with an arbitration provision, estoppel may apply; but where a plaintiff's claims, like the claims here, are independent of such an agreement, estoppel cannot apply. *See, e.g.*, *In re Wholesale Grocery Prods. Antitrust Litig.*, 707 F.3d 917, 923-24 (8th Cir. 2013) (explaining equitable estoppel applied in cases where "plaintiffs' claims arose directly from violations of the terms of a contract containing an arbitration clause" and "[w]ithout the contracts in those cases, the plaintiffs would not have had a cause of action"). Thus, in *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004), an antitrust case cited by Defendants, plaintiff purchasers were estopped from avoiding the arbitration provisions within purchase contracts because the purchasers had alleged "that the price terms *set forth in those contracts* ha[d] been artificially inflated as result of the price-fixing conspiracy." *Id.* at 176 (emphasis added); *see also In re Currency Conversion Fee Litig.*, 265 F. Supp. 2d 385, 402-03 (S.D.N.Y. 2003) (applying estoppel, where plaintiff claimed excessive fees under cardholder agreement containing arbitration clause). There, unlike here, the contract setting out the arbitration agreement also set out the anticompetitive restraint.

By contrast, courts do not apply estoppel in antitrust cases like this one, where the contract containing an arbitration provision does not govern the conduct alleged to create an anticompetitive restraint. *See, e.g.*, *In re Wholesale Grocery Products Antitrust Litig.*, 707 F.3d at 923-24 (rejecting estoppel where plaintiffs were "bringing antitrust conspiracy claims . . . [that] exist independent of the supply and arbitration agreements"); *UFCW & Employers Benefit*

35

*Trust v. Sutter Health*, 194 Cal. Rptr. 3d 190, 206 (Cal. Ct. App. 2015) ("[t]he doctrine of equitable estoppel has no application" where the complaint alleged an "unlawful scheme to prevent price competition" because the plaintiff was "only seeking to enforce [California antitrust laws;] it [was] clearly not seeking to enforce or otherwise take advantage of any portion of the [underlying agreement]"); *In Re Apple iPhone Antitrust Litig.*, 874 F. Supp. 2d 889, 898-99 (N.D. Cal. 2012) (rejecting estoppel because alleged antitrust acts in application aftermarket did not arise out of iPhone service agreements).  As one court explained, "[f]or a plaintiff's claims to rely on the contract containing the arbitration provision, the contract must form the legal basis of those claims; it is not enough that the contract is factually significant to the plaintiff's claims or has a 'but-for' relationship with them."  *Lennox Maclaren Surgical Corp. v. Medtronic, Inc.*, 449 Fed. Appx. 704, 709 (10th Cir. Nov. 15, 2011) (unpublished).[18]

Defendants' cases reflect this principle.  In each, just as in Defendants' cited agency case law, a contract containing an arbitration agreement provided the legal basis for the estopped plaintiffs' claims.  *See, e.g.*, *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 99, 91, 98-99 (2d Cir. 1999) (applying estoppel to suit seeking rescission of various agreements with arbitration clauses, finding "the lawsuit arises under all of those Agreements"); *Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 64, 66, 76 n.6 (S.D.N.Y. 2012) (applying estoppel to claims of breach of contract, fraud, and unfair trade practices in sale of "stock success training program," where enrollment agreement contained arbitration clause); *JSM Tuscany, LLC*, 193 Cal. App. 4th at 1239-40 (applying estoppel where "plaintiff [wa]s suing on a contract" with arbitration provision) (emphasis in original); *Turtle Ridge Media Group, Inc.*

_____

[18] One case cited by Defendants, *In Re A2P SMS Antitrust Litigation*, 972 F. Supp. 2d 465, 477 (S.D.N.Y. 2013), applies Virginia law, and finds estoppel, in large part, because the underlying agreement vested the non-party with "rights and responsibilities."  Kalanick cites no such rights or responsibilities within the User Agreement.

*v. Pac. Bell Directory*, 140 Cal. App. 4th 828, 831, 834 (2006) (applying estoppel to subcontractor's claims that prime contract containing arbitration clause had materially false information to detriment of subcontractor); *Metalclad Corp. v. Ventanta Envtl. Org. P'ship*, 109 Cal. App. 4th 1705, 1717 (2003) (applying estoppel to claim based on breach of underlying contract containing arbitration provision).

By contrast here, as this Court has already acknowledged, Plaintiff's claims against Kalanick are not intertwined with the contract containing the arbitration provision because that contract—the User Agreement—nowhere sets out driver-partner pricing. The fixing of those prices is the basis for this suit; the User Agreement is not. Estoppel therefore does not apply. *See In re Wholesale Grocery Prods. Antitrust Litig.*, 707 F.3d at 924 ("the Retailers' antitrust claims are premised on paying artificially inflated prices, but since none of the Retailers' contracts with the Wholesalers *specify price terms*, the Retailers' claims do not involve alleged violation of any terms of those contracts") (emphasis added).

Thus, no claims against Kalanick, a non-party, could be subject to arbitration.

## IV.   BECAUSE THE COMPLAINT ASSERTS NO CLAIMS AGAINST UBER, THERE IS NO BASIS FOR COMPELLING ARBITRATION WITH UBER.

Uber erroneously suggests that this Court may order Plaintiff to arbitrate unidentified claims against Uber. *See, e.g.*, Uber Mem. at 25 n.13. Yet Plaintiff has pled claims only against Kalanick, not against Uber. *See* First Amended Complaint Dkt. 26 at ¶¶ 120-141. It is true that Uber has been joined as a defendant under Rule 19(a), *see* Dkt. 90, and has the rights of a party in the proceeding, *see* Fed. R. Civ. P. 19(a)(2). But Uber's ability to defend its *interests* as a Rule 19 defendant does not mean that Plaintiff has asserted any *claims* against Uber that this Court could order arbitrated. Uber nowhere identifies any such claims. None has been asserted.

Uber appears to misconstrue Rule 19.  That Rule mandates party joinder.  Claims joinder, by contrast, is governed by Rule 18.  The two "rules operat[e] independently."  Fed. R. Civ. P. 18, Advisory committee's note (1966).  Under the Federal Rules of Civil Procedure, claims joinder is wholly permissive; and parties can always choose what claims to bring or refrain from bringing.  *See* Fed. R. Civ. P. 18(a).  Rule 19 does not, *sub silentio*, reverse that rule to compel the assertion of claims against a joined party.  As the Solicitor General has explained:  "Nothing in the text of Rule 19(a) imposes the additional requirement . . . that the [plaintiff] have an independent cause of action against" a joined necessary party.  Gov't Br. at 11, *Peabody Western Coal Co. v. EEOC*, No. 05-353 (Dec. 2005), *available at* https://www.justice.gov/osg.  Nor do any of the policies underlying Rule 19.  The Rule is designed (i) to ensure against the "partial or 'hollow' rather than complete relief" that could result from the absence of a required party, (ii) to protect a required party from "the practical prejudice . . . of a disposition of the action in his absence," and (iii) to trigger preclusion to avoid "double or otherwise inconsistent liability." Fed. R. Civ. P. 19, Advisory committee's note (1966).  While a necessary party must have "a seat at the table to defend itself" and protect these interests, *Abella v. Seven Seven Corporate Group*, 2:13-05263, 2014 U.S. Dist. LEXIS 7354, at *13 (D.N.J. Jan. 21, 2014), none of these policies would require a plaintiff to pursue a claim against a necessary party.

Consequently, plaintiffs often add parties required by Rule 19(a) without asserting any claims against them.  *See, e.g.*, Dkt. 26 at ¶¶ 9, 21-25, *United States v. The John Buck Company, LLC*, 14 Civ. 4174 (S.D.N.Y. Apr. 23, 2014) (including defendant as "necessary party for the purposes of equitable relief," but asserting no claim against it); Dkt. 26, ¶¶ 37-40, *United States v. City of Somerville*, 16-10223 (D. Mass. Feb. 10, 2016) (similar); *accord Humane Soc'y of the United States v. Merriam*, 06-2922, 2007 U.S. Dist. LEXIS 7581, at *5 (D. Minn. Feb. 1, 2007)

("Here, plaintiff's complaint includes no claims against the intervenor-defendants").  Indeed,

Rule 19 sometimes requires joinder of a defendant against whom a plaintiff is unable to assert

any claim.  *See, e.g.*, *EEOC v. Peabody Western Coal Co.*, 400 F.3d 774, 781 (9th Cir. 2005)

(holding "a plaintiff's inability to state a direct cause of action against an absentee does not

prevent the absentee's joinder under Rule 19," and discussing cases), *cert. denied*, 546 U.S. 1150

(2006).  And courts, including the Supreme Court, have repeatedly joined or retained Rule 19(a)

parties in actions where there are no claims against those parties.  *See, e.g.*, *Int'l Bhd. of*

*Teamsters v. United States*, 431 U.S. 324, 356 & n.43 (1977) (dismissing claims against union,

but requiring union to remain a Rule 19(a) defendant) (citing *EEOC v. MacMillian Bloedel*

*Containers, Inc.*, 503 F.2d 1086, 1095 (6th Cir. 1974) (same)); *Marshall v. Snyder*, 572 F.2d

894, 896-897, 902 (2d Cir. 1978) (ordering Rule 19(a) joinder of employee benefit plans, where

sole claims asserted were against plan fiduciaries, not the plans themselves).  Accordingly, under

Rule 19, it is unexceptional for a plaintiff to join a necessary party without asserting any claim

against that party.

That is exactly the posture here.  The Court has, of course, concluded that Uber is a

necessary party to Plaintiff's suit against Kalanick, both because Plaintiff could not obtain

"complete relief" absent Uber, *see* Dkt. 90 at 4, and because of "Uber's interest in maintaining

its pricing algorithm and its contracts with drivers," *id.* at 7.  The Court has, consistent with Rule

19(a)(2), therefore ordered the Clerk to join Uber as a defendant.  *Id.* at 7.  But Plaintiff has not

amended his complaint to include any claim against Uber.  There is thus no claim against Uber in

this proceeding.

Absent such a claim, this aspect of Uber's motion is a non-starter:  the Court cannot order Plaintiff to arbitrate claims against Uber that Plaintiff has never raised.[19]  "The mere assertion that there is a dispute that is arbitrable does not make one exist."  *Rosenthal v. Emanuel, Deetjen & Co.*, 516 F.2d 325, 327 (2d Cir. 1975) (per curiam).  "Rather, there must be some claim asserted by one party and denied by the other for an arbitrable controversy to exist."  *In re Prudential Secs. Inc.*, 92 C 3137, 1993 U.S. Dist. LEXIS 1362, at *6 (N.D. Ill. Feb. 4, 1993); *accord AmeriSteel Corp. v. Int'l Bhd. of Teamsters*, 267 F.3d 264, 276 (3d Cir. 2001) ("we think it goes without saying that courts should not compel parties to submit to arbitration when there is nothing to arbitrate").  The only claims in this proceeding are against Kalanick, not Uber. Accordingly, there is no merit to Uber's suggestion that this Court could compel arbitration between Plaintiff and Uber.  If the Court properly declines to order Plaintiff to arbitrate its claims against Kalanick, there would thus be nothing more for this Court to consider.

## CONCLUSION

For all of these reasons, Plaintiff respectfully requests that Defendants' motions to compel be **DENIED**.[20]

Dated:  June 29, 2016

---

[19] Notably, the User Agreement would not permit any claims raised against Uber to be arbitrated alongside claims against Kalanick.  See Dkt. 29-1 at 9 ("unless both you and Company otherwise agree in writing, the arbitrator may not consolidate more than one person's claims").

[20] In a footnote, Uber requests a stay if the Court compels arbitration of some, but not all, claims in the case.  Uber Mem. at  25-26 n.13.  Plaintiff opposes but would seek to brief the question, if it arose.

CONSTANTINE CANNON LLP
Matthew  L. Cantor
David A. Scupp
335 Madison Avenue
New York, New York 10017
Tel: (212) 350-2700
Fax: (212) 350-2701
mcantor@constantinecannon.com
dscupp@constantinecannon.com

McKOOL SMITH
John Briody
James H. Smith
One Bryant Park, 47th Floor
New York, New York 10036
Tel: (212) 402-9400
Fax: (212) 402-9444
jbriody@mckoolsmith.com
jsmith@mckoolsmith.com

CAFFERTY CLOBES MERIWETHER &
SPRENGEL, LLP
Bryan L. Clobes
Ellen Meriwether
1101 Market Street, Suite 2650
Philadelphia, PA  19107
Tel: (215) 864-2800
Fax: (215) 864-2810
bclobes@caffertyclobes.com
emeriwether@caffertyclobes.com

HARTER SECREST & EMERY LLP

By:    /s/ Brian M. Feldman
       Brian Marc Feldman
       Jeffrey A. Wadsworth
       Edwin M. Larkin
       A. Paul Britton
       1600 Bausch & Lomb Place
       Rochester, New York 14604
       Telephone No. (585) 232-6500
       Facsimile No. (585) 232-2152
       bfeldman@hselaw.com
       jwadsworth@hselaw.com
       elarkin@hselaw.com
       pbritton@hselaw.com

ANDREW SCHMIDT LAW PLLC
Andrew Arthur Schmidt
97 India Street
Portland, Maine 04101
Telephone No. (207) 619-0320
Facsimile No. (207) 221-1029
andy@maineworkerjustice.com

*Attorneys for Plaintiff Spencer Meyer*