# EXHIBIT W



Harter Secrest & Emery LLP

ATTORNEYS AND COUNSELORS

WWW.HSELAW.COM

March 23, 2016

**BY ELECTRONIC MAIL**
Peter M. Skinner
Boies, Schiller & Flexner LLP
575 Lexington Avenue, 7th Floor
New York, NY 10022
PSkinner@BSFLLP.com

     Re:    *Meyer v. Kalanick*, 1:15-cv-09796 (S.D.N.Y.)

Dear Mr. Skinner:

    I write in an effort to mitigate the harm arising out of the deceptive "investigation" commissioned by Defendant Travis Kalanick, through which Ergo, a "business intelligence firm," used tricks and lies in attempts to dig up dirt on and intimidate Plaintiff and Plaintiff's counsel. Our understanding of those activities is described in Part A below.

    This has been a sordid affair. When Plaintiff confronted Defendant about Ergo's scheme, Defendant vehemently and unequivocally denied any ties to Ergo. Likewise, when Plaintiff proposed seeking the Court's assistance in determining who was responsible for hiring Ergo, Defendant objected. Defendant only confessed when faced with the prospect of a subpoena to Ergo for testimony, which would have revealed the truth. Defendant finally admitted that— contrary to multiple prior misrepresentations—Defendant was in fact responsible all along for retaining Ergo's services. These facts are described further in Part B below.

    Defendant's misconduct has no place in litigation before the U.S. District Court for the Southern District of New York. Plaintiff appreciates Defendant's promise that Ergo will now permanently cease its activities but seeks written assurances that neither Defendant nor those acting in concert with him will use similar deceitful practices in this litigation. Moreover, the full extent of Ergo's conduct remains unknown. Accordingly, and in an attempt to mitigate the harm arising out of the Ergo deception, Plaintiff requests that Defendant provide the information identified in Part C below.

**A.**    **Background: The Scheme**

    As Defendant knows, and as we have communicated to you on various occasions, Ergo relied on lies to trick Plaintiff's professional associates and colleagues into providing information about Plaintiff and his counsel under false pretenses. For example, Ergo lied to several of

Harter Secrest & Emery LLP

ATTORNEYS AND COUNSELORS

March 23, 2016
Page 2

Plaintiff's colleagues and associates through a bogus claim that a science directory of up-and-coming professionals in the environmental conservation field was being assembled and that Plaintiff was being considered for inclusion.  Others were left with the impression that Plaintiff was in the running for an award or for a new job.  The Ergo caller then asked these colleagues and associates to detail the nature of their relationship with Plaintiff, to describe their opinion of him, to judge his abilities, qualifications, and management style, and to identify others who could be contacted to discuss him further.  Some individuals were also asked to identify Plaintiff's political motivations.  And at least one associate was asked point blank if he was aware of "anything scandalous" about Plaintiff.

The deceptive scheme also targeted Plaintiff's counsel.  For instance, as Defendant knows and as we communicated to you back in mid-January, a professional colleague of Plaintiff's counsel Andrew Schmidt received a similar call from Ergo.  Ergo used the false pretense of a "project profiling top up-and-coming labor lawyers in the US" in an attempt to dupe the colleague into providing information about Mr. Schmidt.  The Ergo caller put pressure on the colleague to respond swiftly, claiming he was "working on deadline," and needed input by the next day.  Of course, there was no such project.  Ergo was simply digging up dirt for Defendant or seeking to intimidate Plaintiff and Plaintiff's counsel.

Neither Plaintiff nor Plaintiff's counsel can know how many people were contacted and deceived by Ergo or the full extent of questioning by Ergo.  Our information is limited to what individuals who happened to contact Plaintiff or Plaintiff's counsel remembered and were willing to share.  We have serious concerns about potential confusion and damage to Plaintiff's professional reputation in the wake of Ergo's deceits, which we now understand were commissioned by Defendant, either as deceptive scheme to gather information, a plan to harass Plaintiff or his lawyers, an attempt to intimidate Plaintiff, or, quite likely, some combination of the above.

## B.    Defendant's Cover Up

For weeks, Defendant vehemently disavowed any connection to Ergo.  These unequivocal denials were issued even after Defendant claimed to have investigated whether anyone at Uber or at his outside counsel, Boies Schiller & Flexner LLP, might be responsible for commissioning Ergo.  While Defendant repeatedly denied responsibility, Ergo's scheme appears to have continued.

Defendant's misrepresentations include erroneous statements made following a January 19, 2016 telephone call.  On that call, defense counsel represented that outside counsel had spoken with Uber in-house counsel about Ergo, that in-house counsel had responded that no one affiliated with Uber was believed to be responsible for hiring Ergo, and that in-house counsel had promised to investigate to confirm that neither Defendant nor Uber had retained Ergo's services.  By email the following day, Defendant confirmed that "[w]hoever is behind these calls, it is not

Harter Secrest & Emery LLP

ATTORNEYS AND COUNSELORS

March 23, 2016
Page 3

us," meaning neither Defendant nor Uber.  As defense counsel later acknowledged, that was a misrepresentation.

Defendant's misrepresentations continued when Plaintiff sought Defendant's consent to a subpoena to Ergo.  Plaintiff requested such consent on a February 9, 2016 telephone call.  On that call, defense counsel again stated that neither Defendant nor Uber was responsible for Ergo's scam.  This misrepresentation was repeated the following day, on a February 10, 2016 telephone call, during which Defendant refused to consent to the subpoena.  In refusing, Defendant reiterated that neither he, Uber, nor his counsel was responsible for hiring Ergo and that this was a fact that Defendant had already repeatedly confirmed.  Defendant took the position that the subpoena was unnecessary precisely because Defendant had already confirmed that he was not responsible for what Ergo was doing.  Of course, that was untrue.

Defendant finally confessed, about a week later, after Plaintiff informed Defendant that he planned to seek the Court's approval to issue a subpoena, even over Defendant's objection. Specifically, on a February 19, 2016 telephone call, defense counsel informed Plaintiff that, in fact, Defendant had commissioned Ergo.  It appears that, up until that point, Defendant may have been deceiving his own lawyers, as well.  On the call, defense counsel promised that Ergo had now ceased its probe of Plaintiff and of Plaintiff's counsel, and defense counsel apologized for Defendant's prior misrepresentations.

## C.      Mitigating the Harm

As an initial matter, Plaintiff seeks written confirmation from Defendant that Ergo will not conduct any further inquiry into Plaintiff or Plaintiff's counsel and that neither Defendant nor those acting in concert with him have made, or will make, any effort to gather information about litigants or counsel in this suit through deceptive means, such as those employed by Ergo, or to harass or intimidate Plaintiff.

Moreover, Plaintiff seeks specific information to mitigate any harm caused by Defendant's actions.  As noted, Plaintiff cannot and does not know the full reach the Ergo scheme.  To mitigate any professional or reputational harm to Plaintiff, we must know who was contacted and what they were told.  To that end, Plaintiff requests that Defendant detail the full extent of Ergo's services as it relates to this litigation.  Please provide a complete and accurate disclosure of the following information:

1.  **Retention of Ergo.**

    a.  The date on which Defendant hired Ergo;

    b.  The duration of Ergo's services for Defendant;

    c.  The scope of services for which Defendant retained or paid Ergo, the aim of these services, and any instructions, requests, or guidance that Defendant issued to Ergo;

Harter Secrest & Emery LLP

ATTORNEYS AND COUNSELORS

March 23, 2016
Page 4

    d.  The date on which Defendant terminated Ergo's services, the exact Ergo services that he terminated, and the nature of that termination (*e.g.*, permanent, temporary, etc.).

2. **Ergo's Communications with Deceived Persons.**  For each person that Ergo contacted or attempted to contact relating to Plaintiff or Plaintiff's counsel, please identify:

    a.  The name and contact information of the individual or entity;

    b.  The date, time, and method of communication for each contact or attempted contact;

    c.  All recorded information regarding the communication, including any audio recordings, notes, or memoranda;

    d.  All information provided by Ergo to the individual or entity;

    e.  All information provided by the individual or entity to Ergo.

3. **Ergo's Communications with Defendant.**  The content of all communications between Ergo and Defendant related to Plaintiff and Plaintiff's counsel, as well as the date and method of such communications.

We look forward to Defendant's cooperation in addressing this ugly episode.  If we cannot secure Defendant's cooperation voluntarily, we may apply to the Court for assistance. Plaintiff seeks a complete response to this letter no later than March 29, 2016.  If you have any questions, please do not hesitate to contact me at (585) 231-1201 or via email at bfeldman@hselaw.com.

Very truly yours,

Harter Secrest & Emery LLP

/s/ Brian M. Feldman

Brian M. Feldman
DIRECT DIAL:  585.231.1201
EMAIL: BFELDMAN@HSELAW.COM