# EXHIBIT B

# CONFIDENTIAL



## SERVICES AGREEMENT

This Services Agreement ("**Agreement**") is entered into and made effective as of November 5, 2015 ("**Effective Date**") by and between **Uber Technologies, Inc.**, a Delaware corporation, located at 1455 Market St., Suite 400, San Francisco, CA 94103 ("**Uber**") and Ergo, a Delaware limited liability company, located at 122 E 55th St., New York, New York, 10022("**Consultant**").

**Section 1.**    **DEFINITIONS.** The following terms shall have the meanings set forth below:

   **1.1**    "**Intellectual Property**" shall mean all worldwide rights in and to intellectual property, including without limitation rights to inventions, trade secrets, know-how, technology, research tools, data, software, improvements and rights of authorship and attribution, whether or not protected by patents or copyrights, and including, without limitation, patent applications, patents, trade secret rights, copyrights, trademarks, and other exclusive or non-exclusive rights pertaining to intellectual property owned or controlled by a party.

   **1.2**    "**Payment Schedule**" means the schedule of payment(s) relating to the performance of the Services set forth in the applicable SOW.

   **1.3**    "**Project Schedule**" means the timetable relating to the performance of the Services set forth in the applicable SOW.

   **1.4**    "**Services**" means the services described in the applicable SOW.

   **1.5**    "**Statement of Work**" or "**SOW**" means the description of the Services, including but not limited to, the Project Schedule, Payment Schedule, acceptance criteria, and other information set forth in the applicable SOW, in a form substantially similar in form to Exhibit A, attached hereto and incorporated herein by reference.

**Section 2.**    **SUPPLY OF SERVICES.**

   **2.1**    Description of Services. Consultant shall use commercially reasonable efforts to perform the Services as described herein and as set forth in each SOW attached hereto and as agreed upon by the parties. During the Term of this Agreement, the parties may agree on additional SOWs (which may be prepared using the template provided at Exhibit A), and Consultant shall provide Uber with the Services as set forth in such SOW. Each party hereby agrees that by referencing this Agreement each SOW will be understood as implicitly incorporating by reference the terms herein even if the SOW does not expressly do so. Each SOW and any amendment thereto may not be made except by a writing signed by both Uber and Consultant. In the event of any inconsistencies between the terms of a SOW and the terms herein, this Agreement shall govern, except for instances where the SOW specifically references a deviation from the Agreement, in which case the terms set forth in the SOW will prevail for that SOW only. Each SOW (as may be amended) taken together with the incorporated terms of this Agreement shall be a separately enforceable agreement.

   **2.2**    Change Orders. Uber may, at any time, by written notice to Consultant, issue additional instructions, require additional Services or reduce or waive Services covered by the applicable SOW. In such event, a mutually agreed upon adjustment in price and time of performance will be made. Any claim by Consultant for increased compensation must be made within thirty (30) days after receipt of written notice regarding the change in Services or delivery of adjusted or new Services.



2.3 _Performance_. The manner and means by which Consultant chooses to complete the Services are in the Consultant's sole discretion and control. Consultant represents and warrants that Consultant and its employees are skilled, experienced and fully qualified to perform and deliver the Services consistent with the highest standards of Consultant's profession, business or industry. Unless otherwise specified in the applicable SOW, Consultant shall provide all necessary equipment, tools and other material, at Consultant's own expense, necessary to complete the Services.

2.4 _Personnel_. Consultant shall at all times provide a sufficient number of qualified and skilled personnel ("**Personnel**") to perform and complete the Services, and Consultant shall take reasonable measures to ensure that all of its Personnel who perform any Services hereunder will comply with the duties and obligations applicable thereto under this Agreement. Subject to Section 2.5 below, all Personnel shall be employees of Consultant. Uber reserves the right to reject for any lawful and reasonable reason whatsoever any of the Personnel assigned by Consultant in connection with any SOW, and Consultant shall as soon as possible thereafter provide a replacement satisfactory to Uber. Upon the request of Uber from time to time, Consultant agrees to conduct background checks of proposed or current Personnel, subject to legal regulations and limitations. In no event shall performance of the Services be delayed or shall Uber be charged for any time required for the recruitment of any Personnel needed under an SOW or for any replacement Personnel to be trained to provide Services, whether the replacement is requested by Uber or not. Consultant shall be solely responsible for assuring the safety of its Personnel performing any Services. Consultant shall comply with all applicable health and safety laws and regulations. Consultant shall take reasonable measures to ensure that its Personnel performing Services are properly trained in performing their duties.

2.5 _Subcontractors_. Consultant may engage subcontractors to assist with the performance of the Services, provided that Consultant obtains prior written approval of subcontractors in each instance. Consultant shall be solely responsible for the acts and omissions of all subcontractors engaged by Consultant and authorized to perform Services hereunder. If approved by Uber, subcontractors performing Services shall be deemed Personnel for the purposes of this Agreement.

**Section 3.   COMPENSATION.**

3.1 _Payment_. Uber will pay Consultant for the Services rendered in accordance with the Payment Schedule as provided in the applicable SOW. Unless expressly provided for in the applicable SOW, Consultant assumes the risk for all other costs and expenses. In no event shall Uber be required to directly compensate any Personnel with respect to the Services under this Agreement. Payment shall not be due until all Services have been performed to the satisfaction of Uber as set forth in an SOW.

3.2 _Invoices_. Each invoice for Services or approved reimbursable expenses shall be supported by (a) an itemized description of the Services or expense(s) claimed and (b) attached receipts, when such receipts are reasonably available. Invoices shall reference this Agreement. Invoices will fairly and accurately report the use of any funds in connection with performing this Agreement and will not disguise, mislabel or fail to disclose any payments to third parties. Unless otherwise set forth in the applicable SOW, the associated payment shall be made within thirty (30) days after Uber's receipt of an undisputed invoice accompanied by all required documentation. Invoices and support documentation shall be remitted to the address set forth in the applicable SOW.

3.3 _Records_. Consultant shall keep accurate records of the time spent, work performed, and all charges and expenses, associated with the Services. Uber shall have access to and the right to

PRIVILEGED & CONFIDENTIAL                                                                                                          UBER-PRIV0000044



examine any pertinent books, documents, papers and records of Consultant relating to the Services, upon reasonable notice to Consultant and during Consultant's regular business hours, for a period of two (2) years after final payment under the applicable SOW.

**Section 4.  RELATIONSHIP BETWEEN THE PARTIES.**

4.1  Status. Consultant's relationship with Uber shall be that of a non-exclusive independent contractor and nothing in this Agreement shall be construed to create a partnership, joint venture, or employer-employee relationship. Consultant is not an agent of Uber and is not authorized to make any representation, contract, or commitment on behalf of Uber. Consultant and its employees shall not be entitled to any of the benefits that Uber may make available to its employees. Consultant shall be solely responsible for all tax returns and payments required to be filed with or made to any federal, state or local tax authority with respect to Consultant's performance of Services and receipt of payments under this Agreement.

4.2  No Withholding. Uber will not withhold or make payments for social security, make unemployment insurance or disability insurance contributions, or obtain worker's compensation insurance on behalf of Consultant or its agents or employees. Consultant hereby agrees to indemnify, defend, and hold Uber harmless against any and all such taxes or contributions, including penalties and interest.

4.3  Gratuities. Consultant represents and warrants that neither it nor any of its employees, agents or representatives has offered or shall offer any gratuity to Uber's employees, agents or representatives with a view toward securing a contract or securing favorable treatment related to the Services contemplated under this Agreement.

4.4  Foreign Corrupt Practices Act. Consultant represents that it is aware that it is illegal under the United States Foreign Corrupt Practices Act ("**FCPA**") to give, offer, promise or authorize giving anything of value to any government official or political party in an effort to win or retain business or secure any improper advantage. Consultant will not take any action that, if done by an American citizen, would be a violation of the FCPA, and Consultant will ensure that any individual that performs work under this Agreement will not take such action.

4.5  Conflict of Interest. Consultant further represents that it currently has no relationship with an employee of Uber that would constitute a conflict of interest and that Consultant shall not engage in any activity during the Term of this Agreement that may present such a conflict of interest.

**Section 5.  CONFIDENTIAL INFORMATION.**

5.1  Definition. "**Confidential Information**" means any information disclosed by Uber to Consultant, whether disclosed verbally, in writing, or by inspection of tangible objects. Confidential Information includes, but is not limited to, all Uber product designs, capabilities, specifications, drawings, program code, mask work designs, models, documentation, components, software (in various stages of development), test and development boards, hardware reference code and platforms, architectures, agreement terms, financial and pricing information, business and marketing plans, actual and potential customers and suppliers, information regarding the skills and compensation of employees of Uber, the Services, Statements of Work, and other similar information that is proprietary to Uber. Confidential Information shall not include any information that: (a) was in Consultant's lawful possession prior to the disclosure, as clearly and convincingly corroborated by written records, and had not been



obtained by Consultant either directly or indirectly from Uber; (b) is lawfully disclosed to Consultant by a third party without actual, implied or intended restriction on disclosure through the chain of possession, or (c) is independently developed by Consultant without use of or access to the Confidential Information, as clearly and convincingly corroborated by written records

5.2   Requirements. Consultant agrees that it shall not disclose or use in any way, other than in the course of performance of the Services under this Agreement, Uber's Confidential Information to any third parties. Consultant will disclose Confidential Information only to Consultant's Personnel having a need-to-know for the performance of the Services under this Agreement, provided Consultant shall have entered into confidentiality agreements with any such Personnel having obligations of confidentiality as strict as those herein prior to the disclosure to such Personnel and shall cause all such Personnel to adhere to said confidentiality obligations. Consultant shall not, and shall not authorize others to, remove, overprint or deface any notice of copyright, trademark, logo, legend, or other notices of ownership from any originals or copies of the Confidential Information. Consultant will promptly upon discovery of any loss or unauthorized use or disclosure of Confidential Information notify Uber in writing and take all necessary steps to mitigate the loss or unauthorized use or disclosure of Confidential Information. The foregoing prohibition on disclosure of Confidential Information shall not apply to the extent certain Confidential Information is required to be disclosed by Consultant as a matter of law or by order of a court, provided that Consultant provides Uber with prior written notice of such obligation to disclose and reasonably assists in obtaining a protective order. Upon termination of this Agreement or earlier as requested by Uber, Consultant shall deliver to Uber any and all materials, documents or other media (whether maintained electronically or otherwise) containing Confidential Information, together with all copies thereof in whatever form.

**Section 6.   INTELLECTUAL PROPERTY.**

6.1   No Development. THE PARTIES ACKNOWLEDGE AND AGREE THAT THERE SHALL BE NO DEVELOPMENT OF SOFTWARE, TECHNOLOGY OR OTHER INTELLECTUAL PROPERTY BY CONSULTANT UNDER THIS AGREEMENT. Intellectual Property development activities, if any, must be the subject of a separate written agreement between Company and Consultant prior to the commencement of any such Intellectual Property development activities by Consultant.

6.2   No License. Each party owns and shall retain all rights, title and interest in and to its Intellectual Property, and nothing in this Agreement shall be deemed to grant any license or right under a party's Intellectual Property to the other party.

**Section 7.   REPRESENTATIONS AND WARRANTIES.**

7.1   Consultant hereby represents and warrants that:

(a)   the Services will be performed in a competent and professional manner by Personnel skilled in the relevant areas of expertise, and the Services will meet the specifications in the applicable SOW;

(b)   the provision of the Services do not and will not infringe, misappropriate or otherwise violate the Intellectual Property of any third party; and

PRIVILEGED & CONFIDENTIAL                                                                                                                          UBER-PRIV0000046



(c) Consultant shall comply with all applicable state, federal and local laws and regulations in the performance of Services and provision of the Deliverables under this Agreement, and shall notify Uber immediately if Consultant becomes the subject of a government audit or investigation.

**Section 8.   INSURANCE.**

8.1   Insurance. Consultant shall carry commercial general liability and automobile liability insurance and, if applicable, worker's compensation insurance as required by law, together with employer's liability insurance coverage and professional errors and omissions liability insurance coverage. Consultant shall furnish a certificate of insurance evidencing the commercial general liability insurance policy limits, including premises liability, completed operations/products, if applicable, and contractual liability, and automobile liability limits not less than One Million Dollars ($1,000,000) combined single limit per occurrence for bodily injury, death and property damage liability and Two Million Dollars ($2,000,000) in the aggregate. Consultant shall also furnish a certificate of insurance evidencing professional errors and omissions liability insurance limits of not less than (i) One Million Dollars ($1,000,000) per claim and (ii) Two Million Dollars ($2,000,000) in the aggregate. All policies shall be written by reputable insurance companies authorized to do business in California and a Best's policyholder rating of not less than A VII and except for the workers compensation and professional liability insurance shall list Uber as an additional insured. Such insurance (except automobile liability) shall be primary and non-contributing to any insurance maintained or obtained by Uber and all such insurance shall not be cancelled or materially reduced without thirty (30) days prior written notice to Uber. In no event shall the limits of any policy be considered as limiting the liability of Consultant under this Agreement.

**Section 9.   INDEMNITY; LIMITATION OF LIABILITY.**

9.1   Indemnification. Consultant shall fully indemnify, defend and hold harmless Uber, its affiliates, and their officers, directors, employees, agents, successors and assigns ("**Uber Indemnitees**") from and against any and all claims, damages, liabilities, losses, and expenses (including any and all attorney fees, expenses and costs) incurred by or asserted against any Uber Indemnitee of whatever kind or nature due to (a) a breach or alleged breach by Consultant of any obligation, representation or warranty in this Agreement, or (b) negligent or willful acts of Consultant or Personnel. Uber shall promptly notify Consultant of any such claims, suits and actions, and upon request, provide reasonable assistance to Consultant. Consultant shall not enter into any settlement or compromise related thereto that contains an admission on the part of or otherwise negatively impacts Uber in any manner without the prior written consent of Uber.

9.2   LIMITS OF LIABILITY. IN NO EVENT SHALL UBER BE LIABLE FOR ANY CLAIM FOR ANY INDIRECT, WILLFUL, PUNITIVE, INCIDENTAL, EXEMPLARY, SPECIAL OR CONSEQUENTIAL DAMAGES, FOR LOSS OF BUSINESS PROFITS, OR DAMAGES FOR LOSS OF BUSINESS OF CONSULTANT OR ANY THIRD PARTY ARISING OUT OF THIS AGREEMENT, OR LOSS OR INACCURACY OF DATA OF ANY KIND, WHETHER BASED ON CONTRACT, TORT OR ANY OTHER LEGAL THEORY, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. BECAUSE SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF LIABIITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, THE ABOVE LIMITATION MAY NOT APPLY. IN NO EVENT SHALL UBER'S TOTAL CUMULATIVE LIABILITY OF EACH AND EVERY KIND UNDER THIS AGREEMENT EXCEED THE TOTAL AMOUNT PAID TO CONSULTANT FOR SERVICES PERFORMED IN ACCORDANCE WITH THE APPLICABLE SOW. THE FOREGOING LIMITATION OF LIABILITY