

AND EXCLUSION OF CERTAIN DAMAGES SHALL APPLY REGARDLESS OF THE SUCCESS OR EFFECTIVENESS OF OTHER REMEDIES.

Section 10.     TERM AND TERMINATION.

10.1     Term. This Agreement shall commence on the Effective Date and shall continue until the earlier of the completion of the Services under all SOWs or one (1) year from the Effective Date ("**Term**") unless earlier terminated as provided below, provided that, unless otherwise indicated by Uber, SOWs still in effect as of the termination of the Agreement shall remain in effect after such termination, subject to the terms and conditions of this Agreement, until termination of each such SOW as provided therein. This Agreement may be extended for successive one (1) year periods upon the mutual written agreement of the parties.

10.2     Termination. Uber may at its sole discretion terminate all or any part of this Agreement or SOW hereunder at any time. Uber will provide written notice and Consultant shall be entitled to its costs already incurred in the performance of the Services. Any termination claim by Consultant must be submitted within thirty (30) days after the effective date of termination. Uber may also terminate this Agreement immediately at its sole discretion upon written notification to Consultant of Consultant's material breach of any other provision of this Agreement or if Consultant makes an assignment for the benefit of its creditors, is declared insolvent, or has a receiver or trustee in bankruptcy appointed to take charge of all or part of Consultant's property.

10.3     Consequences of Termination. Upon termination of this Agreement, Consultant shall (a) return all Uber property and Confidential Information in Consultant's possession, and (b) submit a final invoice to Uber. Outstanding payment obligations and Sections 1, 3-9, 10.3, and 11 of this Agreement shall survive any termination of this Agreement.

Section 11.     GENERAL.

11.1     Law and Venue. This Agreement shall be governed by and construed in accordance with the laws of the State of California without regard to its choice or conflict of laws provisions. Consultant hereby consents to exclusive jurisdiction and venue in the state and federal courts sitting in San Francisco County, California.

11.2     Entire Agreement. This Agreement and the Exhibits attached hereto contain the full and complete understanding and agreement between the parties relating to the subject matter hereof and supersede all prior and contemporary understandings and agreements, whether oral or written, relating such subject matter hereof. Any modification or amendment to this Agreement shall be effective only if in writing and signed by both parties.

11.3     Notice. Any and all notices permitted or required to be given hereunder shall be deemed duly given: (i) upon actual delivery, if delivery is by hand; or (ii) one (1) day after being sent by overnight courier, charges prepaid. Notices to Uber shall be sent to the address first written above, or at such other address for which Uber gives notice hereunder. Notices to Consultant shall be sent to the address first written above, or at such other address for which Consultant gives notice hereunder. The parties may agree in an SOW to provide notice by email related to such SOW.

11.4     Assignment. This Agreement may not be assigned, in whole or in part, by Consultant without the prior written consent of Uber. Any attempted assignment or delegation by Consultant



without such consent, except as expressly set forth herein, will be void. Subject to the foregoing, this Agreement shall be binding upon and shall inure to the benefit of each party hereto and its respective successors and assigns.

   11.5   Export. Consultant shall comply with all United States, foreign and local laws and regulations including, without limitation, export control laws and regulations.

   11.6   Waiver, Modification.   The failure of either party to enforce, at any time or for any period of time, the provisions hereof, or the failure of either party to exercise any option herein, shall not be construed as a waiver of such provision or option and shall in no way affect that party's right to enforce such provisions or exercise such option.

   11.7   Severability. In the event any provision of this Agreement is determined to be invalid or unenforceable by ruling of an arbitrator or court of competent jurisdiction, the remainder of this Agreement (and each of the remaining terms and conditions contained herein) shall remain in full force and effect.

   11.8   Captions. Paragraph titles or captions contained herein are inserted only as a matter of convenience and for reference.

   11.9   Drafter. No party will be deemed the drafter of this Agreement, and both parties acknowledge that they had sufficient time to have this Agreement reviewed by counsel and that this Agreement will be deemed to have been jointly prepared by the Parties. If this Agreement is ever construed, whether by a court or arbitrator, such court or arbitrator will not construe this Agreement, or any provision hereof, against any party as drafter.

   11.10   Counterparts. This Agreement may be executed in one or more counterparts and by exchange of signed counterparts transmitted by facsimile, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same original instrument.

   IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

**UBER TECHNOLOGIES, INC.**

By: _____

Printed Name: Mat Henley

Title: Head of Investigations

ERGO

By: _____

Printed Name: Matthew Moneyhon

Title: Managing Partner



**EXHIBIT A**

**STATEMENT OF WORK**

*No.*

This Statement of Work ("**SOW**") is entered into and made effective as of December 1, 2015 ("**Effective Date**") by and between **Uber Technologies, Inc.**, a Delaware corporation, located at 1455 Market St., Suite 400, San Francisco, CA 94103 ("**Uber**") and Global Precision Research dba "**Ergo**", a Delaware limited liability company, located at 122 E 55th St., New York, New York, 10022 ("**Consultant**").

This SOW is governed by the terms and conditions of the Services Agreement between Uber and Ergo with an Effective Date of November 5, 2015.

1. **Term:**

Unless terminated earlier as provided herein, the term of this SOW shall commence on 5 November, 2015 and will remain in effect for an initial term of one year ("Initial Term"). Thereafter, this Agreement will automatically renew on the same terms for additional terms of twelve (12) months each (each a "Renewal Term"), unless either party notifies the other in writing of its intention not to renew at least fifteen (15) days prior to the expiration of the Initial Term or ninety (90) days prior to the expiration of any Renewal Term.

2. **Summary Description of Services:**

Ergo will provide Uber with primary research and intelligence services customized to meet Uber's specific needs.

3. **Detailed Description of Services:**

These services and products can include, but are not limited to:

1

PRIVILEGED & CONFIDENTIAL                                                                                      UBER-PRIV0000050



- Country Risk Assessments
- Market Landscaping and Entry Strategies
- Intelligence Support for Meetings and Negotiations
- Sector Deep Dives
- Competitive Intelligence
- Risk Monitoring
- Corruption and Compliance Support

- Stakeholders, Decision Making, and Influence Mapping
- Partner and M&A Due Diligence
- Scenario Outcomes
- Technology Assessments
- Executive Intelligence Support
- Tailored Briefings and Talking Points
- Ad Hoc Information Needs

4. **Specifications**:

The specifications will be relayed to Ergo by Uber as required. All of Ergo's deliverables will be customized and structured to meet the Uber's specific needs.

- Each deliverable will be produced to Uber's specifications, including content, presentation, and technical requirements. Uber will select the topics, geographies, and issues each project will cover.

5. **Project Schedule**:

Project schedule will be determined and agreed to at the initiation of each task.

6. **Deliverables**:

Ergo shall deliver to Uber an agreed-to written or verbal report directly addressing the specifications for each deliverable

7. **Acceptance Criteria and Procedures**:

Uber will verify acceptance of work performed by Ergo prior to invoice approval.

8. **Location of Performance**:

Services shall be primarily performed at Ergo's facilities located at 122 E 55th St., New York, New York, 10022.

9. **Project Managers**:

Uber:

    Name: Mat Henley
    Email: mat@uber.com
    Address: 1455 Market St, Floor 4, San Francisco, CA 94103

Consultant:

    Name: Matthew Moneyhon or Todd Egeland
    Telephone No: 212.421.4035

PRIVILEGED & CONFIDENTIAL                                          UBER-PRIV0000051



Email: moneyhon@ergo.net or tegeland@ergo.net
Address: 122 E 55th St., New York, NY 10022

**10.   Reporting:**

Ergo shall prepare written reports for Uber on an as requested basis during the course of this SOW. Such reports shall be sent to the Uber Project Manager via facsimile, email, or hardcopy sent to the address in listed in Section 9 of this SOW.

**11.   Fees and Payment Schedule:**

In consideration of Services to be furnished by Ergo, Uber will pay to Ergo the amount detailed in a specific agreed-to Project Schedule. Ergo will provide detailed pricing for each discrete research project Uber would like undertaken. Ergo's pricing of each project request will vary depending upon the specific geography/country or region, the size, depth, and difficulty of the questions to be addressed, the utilization of in-country experts and teams, and the time for our analysts and managers to synthesize and present the information. Ergo will provide Uber transparency on how prices are determined.

Uber will pay to Ergo any agreed-to fees subject to receipt of undisputed invoices. In no event shall the amount paid to Ergo exceed the agreed to project fee, unless agreed to by Uber. Incomplete invoices will not be paid until all requested information has been received by Uber. Unless otherwise expressly stated herein or in the Agreement, Ergo assumes all risks associated with any cost overruns.

Ergo shall obtain approval from Uber prior to incurring travel expenses. If approved, Uber shall reimburse Ergo for such travel expenses provided that Ergo provide Uber with an itemized description of expenses claimed and receipts for such expenses.

--page ends here--

IN WITNESS WHEREOF, the parties have executed this SOW as of the date first above written.

**UBER TECHNOLOGIES, INC.**

By: _____

Printed Name: Mat Henley

Title: Head of Investigations

**ERGO**

By: _____

Printed Name: Matthew Moneyhon

Title: Managing Partner

PRIVILEGED & CONFIDENTIAL                                                                                                UBER-PRIV0000052



**EXHIBIT B**

**Project Schedule 1**

THIS PROJECT SCHEDULE █████

1. **OBJECTIVE:** █████

2. **METHODOLOGY:** █████

3. **TIMETABLE:** █████

4. **DELIVERABLES:** █████

5. **ACCEPTANCE CRITERIA:** █████

6. **PROJECT FEES:** █████

1



IN WITNESS WHEREOF, Uber and Ergo cause this Project Schedule 1 to be duly executed below.

| Global Precision Research LLC (d/b/a Ergo) | Uber |
|---|---|
| ("Ergo") | ("Client") |
| By: *M.D.M[signature]* | By: *[signature]* |
| Name: Matthew Moneyhon | Name: Mat Henley |
| Title: Managing Partner | Title: Head of Investigations |
| Date: | Date: 12/28/15 |

1

PRIVILEGED & CONFIDENTIAL                                    UBER-PRIV0000054