**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

SPENCER MEYER,

                Plaintiff,

   v.

TRAVIS KALANICK and UBER
TECHNOLOGIES, INC.

              Defendants.

Case No. 1:15-cv-9796 (JSR)

<u>**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT TRAVIS KALANICK'S MOTION TO COMPEL ARBITRATION**</u>

BOIES, SCHILLER & FLEXNER LLP

Karen L. Dunn
William A. Isaacson
Ryan Y. Park
5301 Wisconsin Ave, NW
Washington, DC 20015
Tel:  (202) 237-2727
Fax: (202) 237-6131
kdunn@bsfllp.com
wisaacson@bsfllp.com
rpark@bsfllp.com

Peter M. Skinner
Alanna C. Rutherford
Joanna C. Wright
575 Lexington Ave, 7th Floor
New York, NY 10022
Tel:  (212) 446-2300
Fax: (212) 446-2350
pskinner@bsfllp.com
arutherford@bsfllp.com
jwright@bsfllp.com

*Counsel for Defendant Travis Kalanick*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ......................................................................................1

   I.    Mr. Kalanick May Enforce The Arbitration Agreement..................................................1

       A.   Arbitrability Issues Must Be Decided By the Arbitrator.......................................1

       B.   As an Uber Employee, Mr. Kalanick Is Protected by the Arbitration Agreement .........................................................................................................2

       C.   Plaintiff Should Be Estopped from Evading His Agreement to Arbitrate .............4

       D.   The Text of the Rider Terms Does Not Preclude Mr. Kalanick From Enforcing the Arbitration Agreement ..................................................................5

   II.   Mr. Kalanick Did Not Waive His Right to Compel Arbitration in this Lawsuit............6

       A.   The Arbitrator Should Decide the Question of Waiver .........................................6

       B.   Mr. Kalanick Did Not Expressly Waive His Right to Compel Arbitration ...........7

       C.   Mr. Kalanick Did Not Impliedly Waive His Right to Arbitrate ............................8

CONCLUSION.....................................................................................................................10

# TABLE OF AUTHORITIES

Page

**Cases**

*Amisil Holdings Ltd. v. Clarium Capital Mgmt.*,
  622 F. Supp. 2d 825 (N.D. Cal. 2007) .................................................................2, 4

*Apollo Theater v. Western Int'l*,
  2004 WL 1375557 (S.D.N.Y. June 21, 2004) ....................................................7

*BG Grp., PLC v. Republic of Argentina*,
  134 S. Ct. 1198 (2014) .......................................................................................6

*Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*,
  117 F.3d 655 (2d Cir. 1997) ..............................................................................2

*Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*,
  346 F.3d 360 (2d Cir. 2003) ..............................................................................3

*Currency Conversion Fee Antitrust Litig.*,
  265 F. Supp. 2d 385 (S.D.N.Y. 2003) ...............................................................4

*Doctor's Assocs. v. Distajo*,
  107 F.3d 126 (2d Cir. 1997) ..............................................................................9

*Gilmore v. Shearson/American Exp. Inc.*,
  811 F.2d 108 (2d Cir. 1987) ..............................................................................7

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) ............................................................................................6

*In re A2P SMS Antitrust Litig.*,
  972 F. Supp. 2d 465 (S.D.N.Y. 2013) ...............................................................5

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
  672 F.3d 113 (2d Cir. 2011) ..............................................................................6

*JSM Tuscany, LLC v. Superior Court*,
  193 Cal. App. 4th 1222 (2011) .........................................................................5

*La. Stadium & Exposition Dist. v. Merrill Lynch Pierce Fenner & Smith*,
  626 F.3d 156 (2d Cir. 2010) ...........................................................................6, 10

*Mahmoud Shaban & Sons Co. v. Mediterranean Shipping Co., S.A.*,
  2013 WL 5303761 (S.D.N.Y. Sept. 20, 2013) ..................................................9

*Marcus v. Frome*,
  275 F. Supp. 2d 496 (S.D.N.Y. 2003) ...............................................................5

*Midatlantic Int'l v. AGC Flat Glass N. Am.*,
  2014 WL 504701 (E.D. Va. 2014) ....................................................................7

*Moses H. Cone v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ............................................................................................6, 8

*Nolde Bros., Inc. v. Local No. 358*,
    430 U.S. 243 (1977)..........................................................................................................6

*PPG v. Webster Auto Parts, Inc.*,
    128 F.3d 103 (2d Cir. 1997) ..................................................................................7, 8, 9

*SATCOM Int'l Grp. v. Orbcomm Int'l Partners*,
    49 F. Supp. 2d 331 (S.D.N.Y. 1999)....................................................................9

*Staehr v. Hartford Fin. Servs. Grp.*,
    547 F.3d 406 (2d Cir. 2008) ...............................................................................3

*United Steelworkers v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960)..........................................................................................4

## PRELIMINARY STATEMENT

Plaintiff began this lawsuit by suing only Mr. Kalanick, hoping to avoid his agreement to arbitrate disputes with Uber.  *See* DE 90 at 1.  He cannot.  Because Plaintiff is bound by the terms to which he agreed, because his claim that Mr. Kalanick orchestrated a price-fixing conspiracy is effectively a suit against Uber, and because the law recognizes a weighty presumption in favor of arbitration that Plaintiff is unable to circumvent on the facts of this case, this Court should grant Mr. Kalanick's motion to compel arbitration.

## I.     Mr. Kalanick May Enforce The Arbitration Agreement

### A.  Arbitrability Issues Must Be Decided By the Arbitrator

Plaintiff acknowledges that his use of the Uber App was explicitly conditioned on his agreement to Uber's Rider Terms, which contained an agreement to arbitrate all disputes concerning the Uber App (the "Arbitration Agreement").[1]  Am. Compl. ¶ 29; DE 29-1 at 2. Plaintiff does not dispute the Arbitration Agreement "clear[ly] and unmistakab[ly]" delegates issues of arbitrability to the arbitrator through its incorporation of the AAA Commercial Arbitration Rules.  *Contec Corp. v. Remote Sol.*, 398 F.3d 205, 208, 211 (2d Cir. 2005); *see* DE 102 at 24-25.  There is thus no credible dispute that the Arbitration Agreement delegated questions regarding "defenses to arbitrability [such] as waiver [and] estoppel" to the arbitrator. *Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38*, 351 F.3d 43, 45 (2d Cir. 2003); *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 394 (2d Cir. 2011) ("defenses to arbitrability such as waiver, estoppel, or delay are questions properly decided by arbitrators").

Courts "determine whether the parties have a sufficient relationship to each other and to the rights created under the agreement" before compelling arbitration with a non-signatory.

---

[1] Mr. Kalanick adopts Uber's arguments in its Opening and Reply Briefs to its Motion to Compel Arbitration that Plaintiff's agreement to arbitrate disputes with Uber is legally enforceable.

*Contec*, 398 F.3d at 209.   This "relational sufficiency" test, however, is a minimal inquiry intended to prevent abuses, lest "*any* non-signatory" force a signatory into arbitration, regardless of the non-signatory's relationship to the signatories or the contract.  *Id.* (emphasis added).[2]

That low hurdle is easily met here.  Mr. Kalanick is being sued in his capacity as the CEO of Uber.  As this Court observed, "[a]ny antitrust violation that defendant Kalanick is claimed to have committed could only have resulted from his orchestration of, and participation in, an alleged conspiracy facilitated by . . . Uber's contracts with drivers."  DE 90 at 5.  Moreover, the Complaint makes clear that Plaintiff's alleged injuries flow entirely from the Uber App. Am. Compl. ¶¶ 2, 8-9, 21-37, 77, 89.   Plaintiff's claims against Mr. Kalanick plainly have "a sufficient relationship" to Plaintiff's Arbitration Agreement with Uber that passes the relational sufficiency test.  *See Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.,* 117 F.3d 655, 669 (2d Cir. 1997) ("Since appellants' claims against [the non-signatory company executive] arise out of his relationship with [the signatory company], they are also subject to mandatory arbitration.").

**B.  As an Uber Employee, Mr. Kalanick Is Protected by the Arbitration Agreement**

The Second Circuit has squarely held that "employees … of an entity that is a party to an arbitration agreement are protected by that agreement" and thereby "entitled to rely on the contract clauses incorporated into their employers' agreements."  *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993); *see also, e.g., Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 833 (N.D. Cal. 2007) (because an entity "can only act through its

---

[2] Plaintiff is incorrect that *Contec*'s "relational sufficiency" test requires a full equitable estoppel analysis.  Collapsing the two inquiries would be self-defeating where—as here, and in *Contec*— the question whether equitable estoppel permits the non-signatory to enforce the arbitration agreement is itself the question being delegated to the arbitrator.  *See Contec*, 298 F.3d at 209 (holding that "neither we nor the district court must reach the question whether [the signatory] is estopped from avoiding arbitration with [the non-signatory] because" there is a sufficient relationship between them such that the arbitrator must decide the equitable estoppel dispute).

employees, an arbitration agreement would be of little value if it did not extend" to them).  By definition, this includes employees and officers who "are neither signatories to nor third-party beneficiaries of any agreement" containing an arbitration clause.  *Roby*, 996 F.2d at 1360.  That the employee is not named in the contract does not suggest the contracting parties intended to preclude enforcement by a non-signatory employee.  *Id.*

Plaintiff attempts to evade the plain application of *Roby* and its progeny by erroneously asserting that Mr. Kalanick may only compel arbitration of claims that directly "arise out of the User Agreement."  DE 102 at 32.  No such limitation can be found in any case binding on this Court.[3]  Rather, the only limitation set forth by the Second Circuit in *Roby* is that the non-signatory employee's alleged liability must "aris[e] out of *the same misconduct* charged against"

---

[3] New York law applies to questions relating to the enforceability of Plaintiff's Arbitration Agreement not governed by the Federal Arbitration Act.  The record shows that a plurality of Plaintiff's uses of the Uber App were in New York, and he never used the App in California.  Declaration of Peter M. Skinner ("Skinner Decl."), Ex. A.  Plaintiff's Complaint further asserts claims arising under New York law and alleges that all "claims in this case arise out of activities that relate to New York."  Am. Compl. ¶ 16.  Indeed, the only connection California has to this case is that it is the location of Uber's headquarters.  *See Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 366 (2d Cir. 2003) (mere location of entity's headquarters is insufficient to control choice-of-law analysis).  For these reasons, and the reasons explained in Mr. Kalanick's opening brief, New York law governs any state law contract issues.
   The law of the case does not require a different result.  As Plaintiff notes, courts may disregard earlier rulings on an issue where the "availability of new evidence" requires a different result.  *See* DE 102 at 26-27.  The key facts here—that Plaintiff used the Uber App primarily in New York and never used it in California—were not revealed (and, indeed, on a pleading challenge could not have been introduced) until *after* the Court held California law governed.  *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008).  Nor does the fact that *other* versions of the Rider Terms that Plaintiff concededly did not execute select California law bear on the parties' intent with respect to the Rider Terms that are applicable here.
   Regardless, under California law the analysis is no different.  An employee of a signatory to a contract may enforce the arbitration agreement where, as here, the dispute falls within the bounds of the arbitration clause.  *E.g.*, *Berman v. Dean Witter & Co., Inc.*, 44 Cal. App. 3d 999, 1004 (1975).  That is all the more true where, as here, the non-signatory is alleged to be an agent of the signatory.  *Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co., Inc.*, 129 Cal. App. 4th 759, 767 (2005) (mere allegation non-signatory defendant was an agent of signatory was sufficient to permit non-signatories to compel arbitration).

the entity that is party to the arbitration agreement.  *Id.* (emphasis added); *see Amisil*, 622 F.

Supp. 2d at 833 (same).  As this Court recognized, any "fair[] reading" of the Complaint includes

allegations that Mr. Kalanick participated in "*Uber's* scheme for setting prices."  DE 90 at 5.

Plaintiff alleges that Mr. Kalanick and Uber have engaged in the same misconduct—namely,

designing and deploying the Uber App to unlawfully fix prices.  Am. Compl. ¶ 1.  Mr. Kalanick

therefore has the right to compel arbitration in his capacity as an officer and employee of Uber.[4]

### C.  Plaintiff Should Be Estopped from Evading His Agreement to Arbitrate

Because his claims are "intertwined" with the Rider Terms, equitable estoppel provides a

second, separate basis for compelling Plaintiff to arbitrate.  While Plaintiff asserts that equitable

estoppel does not apply because he does not specifically seek to "enforce" the Rider Terms, this

is not the legal test.  Instead, a plaintiff is equitably estopped from avoiding an agreement to

arbitrate where "the signatory's claims arise under the 'subject matter' of the underlying

agreement."  *Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 402 (S.D.N.Y.

2003).  It is undisputed that the "subject matter" of the Rider Terms is the Uber App.  DE 29-1 at

2.  Moreover, the Rider Terms—in a section entitled "Payment Terms"—contain specific

provisions governing prices.  *Id.* at 4 (granting Uber "the right to determine final prevailing

pricing").  Plaintiff's claims that Uber's prices are supracompetitive relate to "the subject matter"

of the Rider Terms.  *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574,

582-83 (1960) (motion to compel arbitration "should not be denied unless it may be said with

positive assurance that the arbitration clause is not susceptible of an interpretation that covers the

---

[4] Plaintiff misleadingly relies on language from a different part of the *Roby* opinion, addressing the distinct issue of whether the claims fell within "the scope of the [arbitration] clauses," to suggest that a claim must arise out of a contract for employees to enforce it.  *Id.* at 1361; *see* DE 102 at 33.  That a claim must "relate to" a contract with an arbitration clause to be within the scope of the clause says nothing about whether a non-signatory may enforce the agreement.

asserted dispute").[5]

### D. The Text of the Rider Terms Does Not Preclude Mr. Kalanick From Enforcing the Arbitration Agreement

Finally, Plaintiff's contention that the Arbitration Agreement does not extend to Mr. Kalanick because he is not mentioned in the text of the Rider Terms (DE 102 at 29-31) is foreclosed by well-established law. By definition, the doctrines of non-party enforcement and equitable estoppel apply only where a contract's plain terms do not expressly permit a non-signatory to enforce a signatory's right to arbitrate. *E.g.*, *Marcus v. Frome*, 275 F. Supp. 2d 496, 504 (S.D.N.Y. 2003). Courts uniformly reject Plaintiff's position that an arbitration clause's silence as to a non-signatory precludes the application of equitable doctrines permitting non-party enforcement. In *Roby*, for example, notwithstanding the arbitration clause's limitation to "each party," the Second Circuit stated: "[W]e believe that the parties fully intended to protect the [employees of the signatory]" because "otherwise, it would be too easy to circumvent the agreements by naming individuals as defendants instead of the entity" itself. *Roby*, 996 F.2d at 1359-60; *see also, e.g.*, *Marcus*, 275 F. Supp. 2d at 505 (compelling arbitration where arbitration clause expressly limited to the "parties" to the contract); *JSM Tuscany, LLC v. Superior Court*, 193 Cal. App. 4th 1222, 1233 (2011) (same).[6] This, of course, is precisely what Plaintiff seeks to do. Such maneuvering is expressly foreclosed by the Second Circuit's opinion.

---

[5] Plaintiff's strategic attempt to avoid arbitration by not naming Uber as a party to this case also indicates that the claims here "relate to" the Arbitration Agreement. *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 478 (S.D.N.Y. 2013).

[6] Plaintiff is also mistaken that other provisions of the Rider Terms indicate the parties' intent to displace traditional equitable doctrines permitting non-signatories to enforce arbitration clauses. It is well settled that an arbitration clause must be evaluated as a stand-alone agreement even when situated within a broader contract. *Nitro-Lift Techs., L.L.C. v. Howard*, 133 S. Ct. 500, 503 (2012) (per curiam); *Amisil*, 622 F. Supp. 2d at 837 (holding that employees are entitled to compel arbitration even though the contract's "indemnification clause does not protect [them]" because "the scope of an indemnification clause is irrelevant to the question of arbitrability").

## II.    Mr. Kalanick Did Not Waive His Right to Compel Arbitration in this Lawsuit

Mr. Kalanick did not waive his right to compel arbitration in this lawsuit.  The Supreme Court has repeatedly ruled that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  Thus, an allegation of waiver that is based on purportedly ambiguous language contained in a footnote of a motion to dismiss brief must be construed in favor of arbitration, particularly where such language was accompanied an express reservation of rights.  To hold otherwise would flout the Supreme Court's "strong presumption favoring arbitrability." *Nolde Bros., Inc. v. Local No. 358*, 430 U.S. 243, 254 (1977).

### A.  The Arbitrator Should Decide the Question of Waiver

As an initial matter, the question of whether Mr. Kalanick waived his right to compel arbitration must be decided by the arbitrator.  As the Supreme Court held in *Howsam v. Dean Witter Reynolds, Inc.*, procedural questions, including waiver, are "presumptively *not* for the judge, but for an arbitrator to decide."  537 U.S. 79, 84 (2002) (emphasis in original); *see also BG Grp., PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1207 (2014) ("courts presume that the parties intend arbitrators, not courts, to decide disputes about . . . arbitrability" including waiver); *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 131, n.14 (2d Cir. 2011) (same). Plaintiff's arguments to the contrary rely on Second Circuit precedents that predate—and therefore are invalidated by—the Supreme Court's decisions in *Howsam* and *BG Group*.[7]  *See* DE 100 at 15.

---

[7] In *La. Stadium & Exposition Dist. v. Merrill Lynch Pierce Fenner & Smith*, the only Second Circuit case cited by Plaintiff that post-dates *Howsam*, the court was not faced with the argument that an arbitrator and not the court should decide waiver.  626 F.3d 156 (2d Cir. 2010).

**B.     Mr. Kalanick Did Not Expressly Waive His Right to Compel Arbitration**

In any event, even if the issue were properly before this Court and not the arbitrator, no waiver has occurred here.  The footnote upon which Plaintiff relies did not contain an express waiver.  DE 81 at 12-13.  An express waiver must be just that—express.  Rather than expressly state that he was waiving his right to arbitrate, Mr. Kalanick was simply setting out his intentions "here"—that is, at the time of the motion to dismiss.  Mr. Kalanick asked this Court to reconsider its ruling that he could not enforce the class waiver outside of the arbitration context, stating only (in present tense) that he "does not need to compel arbitration" to "enforce the class waiver"— hardly stating that he would not move to compel arbitration.  DE 41 at 5.  Aware that the Court could deny that motion and that he would then need to invoke arbitration to enforce the class waiver, Mr. Kalanick—in a document filed that same day—asserted arbitration as a defense in his Answer.  DE 42 ¶¶ 143, 147.  Such assertions serve as explicit indications of a defendant's intent to arbitrate.  *PPG v. Webster Auto Parts, Inc.*, 128 F.3d 103 (2d Cir. 1997).

Plaintiff has cited no case where language intended as a reservation of a party's right to seek arbitration is construed as an explicit *waiver* of that right.  Importantly, in *Gilmore v. Shearson/American Exp. Inc.*, the only Second Circuit case cited by Plaintiff to support its express waiver theory, defendant "conceded" the issue of express waiver and it was not decided by the court.  811 F.2d 108, 112-13 (2d Cir. 1987).  The remaining cases cited by Plaintiff involve instances where, unlike here, a party explicitly represented to the court that it did not intend or want to arbitrate the instant dispute.  DE 102 at 16.[8]

In a last-ditch attempt to find an express waiver, Plaintiff implausibly argues that Mr.

---

[8] *See Midatlantic Int'l v. AGC Flat Glass N. Am.*, 2014 WL 504701, at *5 (E.D. Va. 2014) ("early in the proceedings the parties, through counsel, agreed that neither side wanted to utilize arbitration"); *Apollo Theater v. Western Int'l*, 2004 WL 1375557, at *1 (S.D.N.Y. June 21, 2004) (defendant informed court it "would gladly keep the parties' disputes before this Court").

Kalanick's purported silence in the face of *Plaintiff's* assertions that he waived arbitration is an express waiver. DE 102 at 17. This gets the express waiver analysis backward—express waiver cannot be inferentially gleaned through a purportedly implied omission. The case law makes clear that a party may litigate a motion to dismiss without expressly (or impliedly) waiving its right to arbitrate. DE 81 at 14-15. Moreover, Plaintiff is wrong that Mr. Kalanick was silent on the issue of arbitration: Mr. Kalanick invoked his right to arbitration as an affirmative defense in his Answer and in his Motion for Reconsideration. DE 41 at 5; DE 42 ¶¶ 143, 147.

In any event, given the strong presumption against waiver of arbitration, "any doubt" must be resolved in favor of arbitration. *Moses H. Cone*, 460 U.S. at 24-25. Plaintiff cannot meet his "heavy burden" by arguing that Mr. Kalanick silently waived his right to arbitrate in the footnote of his motion to dismiss brief, especially where he asserted arbitration as an affirmative defense in his Answer. DE 42 ¶ 143 ("Plaintiff is precluded from proceeding in this action under the terms of his binding User Agreement. Plaintiff expressly agreed to resolve 'any dispute, claim, or controversy arising out of or relating to' the Agreement via binding arbitration. . . ."); *id.* ¶ 147 ("Plaintiff's claims are subject to arbitration by virtue of Plaintiff's agreement to an arbitration clause."). Indeed, the assertion of arbitration as an affirmative defense is a "clear indication" of a defendant's "intention to invoke its arbitration rights." *PPG*, 128 F.3d at 109. Mr. Kalanick did not waive his right to compel arbitration in this lawsuit. The Supreme Court mandates construing ambiguity in favor of arbitration, including the language in the contract itself; this mandate must also extend to an allegedly ambiguous footnote in a motion to dismiss brief. *Moses H. Cone*, 460 U.S. at 24-25.

### C. Mr. Kalanick Did Not Impliedly Waive His Right to Arbitrate

In order to find an implied waiver of the right to arbitrate, the party resisting arbitration must have been prejudiced. Plaintiff's argument that the service of discovery constitutes

prejudice misstates the law.  A party is only prejudiced by discovery if it has produced meaningful information.  Where extensive discovery is served but "no significant information" is discovered, no prejudice attaches.  *Leadertex, Inc. v. Morgantown Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995); *PPG*, 128 F.3d at 109.  Here, Plaintiff has produced a grand total of five pages of documents, all of which are redacted credit card receipts showing payments to Uber.  Skinner Decl., Exs. B and C.  Such meager production of information cannot possibly create the prejudice necessary for a finding of implied waiver.

Plaintiff's argument that motions practice constitutes prejudice is likewise wholly without support.[9]  Litigating a pleadings challenge does not constitute waiver.  *E.g., Mahmoud Shaban & Sons Co. v. Mediterranean Shipping Co., S.A.*, 2013 WL 5303761, at *1-2 (S.D.N.Y. Sept. 20, 2013) ("it is well established that [filing] a motion to dismiss before moving to compel arbitration does not in itself waive [the] right to enforce the arbitration clause after the motion to dismiss is resolved."); *see also id.* (no waiver despite seven depositions).  In response, Plaintiff relies on cases involving circumstances far more prejudicial than mere motions practice.  For example, in both *PPG* and *Leadertex*, which Plaintiff relies on heavily (DE 100 at 19-23), the party seeking arbitration had also previously obtained replevin, or prejudgment attachment, thereby seriously damaging the businesses of the parties opposing arbitration.  *PPG*, 128 F.3d at 105; *Leadertex*, 67 F.3d at 27.  Plaintiff cannot credibly contend he has faced anything approaching such prejudice here.

Plaintiff also misleadingly relies upon cases in which the *plaintiff* moved to compel arbitration.  In *SATCOM Int'l Grp. v. Orbcomm Int'l Partners*, plaintiff sought to compel

---

[9] The argument that Plaintiff has been prejudiced from attorneys' fees or expert costs his counsel have incurred is incorrect as a matter of law.  Mere "pretrial expense and delay . . . without more do not constitute prejudice sufficient to support a finding of waiver."  *Leadertex*, 67 F.3d at 26; *Doctor's Assocs. v. Distajo*, 107 F.3d 126, 134 (2d Cir. 1997).

arbitration after losing a preliminary injunction hearing. 49 F. Supp. 2d 331, 335, 341 (S.D.N.Y. 1999). The fact that the same party that initiated the lawsuit sought arbitration, and only after losing a "mini-trial" on the merits, motivated the court's finding of implied waiver: "Rarely does a plaintiff begin a litigation on the merits and then alter course and attempt to compel arbitration." *Id.* at 340, 342. Similarly, in *La. Stadium and Exposition Dist*, the court found implied waiver largely because the "plaintiff, rather than defendant, mov[ed] for arbitration." 626 F.3d at 161. When a plaintiff moves to compel arbitration, the Second Circuit is more concerned with forum shopping and thus more likely to find an implied waiver. *Id.*

Plaintiff's last argument—his self-serving declaration that he has won a "key victory" regarding class waiver—is built on a faulty premise. Plaintiff did not secure the right to proceed as a class nor did he even win the right to proceed as a class in the context of arbitration; the Court explicitly limited its holding to whether Plaintiff had made a "waiver of the right to pursue a class action *outside the arbitration context*."[10]   DE 44 at 9 (emphasis added). Whether Plaintiff's sprawling nationwide class of every Uber rider since the inception of the company can be certified remains a question to be resolved by the Court. *Id.* Plaintiff's complaint survived a motion to dismiss and motion to reconsider that dismissal, no more.

## CONCLUSION

For these reasons, this Court should grant Mr. Kalanick's motion to compel arbitration.

---

[10] It is for this very reason that Plaintiff's argument that Mr. Kalanick's purported waiver also waives his ability to compel arbitration against any class, if one is later certified (DE 102 at 16 n.6), misses the point. Mr. Kalanick has not waived his right to compel arbitration as to putative class members, (DE 81 at 15 n.4) and expressly reserves his right to file a motion to compel arbitration of claims asserted by putative class members if a class is ever certified.

Dated:  July 7, 2016

Respectfully submitted,

/s/ Karen L. Dunn

BOIES, SCHILLER & FLEXNER LLP

Karen L. Dunn
William A. Isaacson
Ryan Y. Park
5301 Wisconsin Ave., NW
Washington, DC 20015
Tel: (202) 237-2727
Fax: (202) 237-6131
kdunn@bsfllp.com
wisaacson@bsfllp.com
rpark@bsfllp.com

Peter M. Skinner
Alanna C. Rutherford
Joanna C. Wright
575 Lexington Ave., 7th Floor
New York, NY 10022
Tel: (212) 446-2300
Fax: (212) 446-2350
pskinner@bsfllp.com
arutherford@bsfllp.com
jwright@bsfllp.com

*Attorneys for Defendant Travis Kalanick*

11

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2016, I filed and therefore caused the foregoing document to be served via the CM/ECF system in the United States District Court for the Southern District of New York on all parties registered for CM/ECF in the above-captioned matter.

/s/ Ryan Y. Park

Ryan Y. Park
