UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SPENCER MEYER, individually and on behalf
of those similarly situated,

                              Plaintiffs,

         -against-

TRAVIS KALANICK and UBER
TECHNOLOGIES, INC.

                              Defendants.

---

1:15 Civ. 9796 (JSR)

ECF Case

### PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR RELIEF RELATED TO THE ERGO INVESTIGATION

**CONSTANTINE CANNON LLP**
Matthew  L. Cantor
David A. Scupp
335 Madison Avenue
New York, New York 10017

**CAFFERTY CLOBES**
**MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes
Ellen Meriwether
1101 Market Street, Suite 2650
Philadelphia, PA  19107

**ANDREW SCHMIDT LAW PLLC**
Andrew Arthur Schmidt
97 India Street
Portland, Maine 04101

**MCKOOL SMITH, P.C.**
John Briody
James H. Smith
One Bryant Park, 47th Floor
New York, New York 10036

Lewis T. LeClair
300 Crescent Court, Suite 1500
Dallas, Texas 75201

**HARTER SECREST & EMERY LLP**
Brian Marc Feldman
Jeffrey A. Wadsworth
Edwin M. Larkin
A. Paul Britton
1600 Bausch & Lomb Place
Rochester, New York 14604

*Counsel for Plaintiff Spencer Meyer*

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adkins v. GMAC,*
479 Fed. Appx. 386 (2d Cir. 2012)...................................................................2

*Broadrock Gas Servs., LLC v. AIG Specialty Ins. Co.,*
2015 U.S. Dist. LEXIS 26462 (S.D.N.Y. Mar. 2, 2015) ................................6

*Chambers v. NASCO, Inc.,*
501 U.S. 32, 45 (1991).....................................................................................2

*Harley v. Nesby,*
2012 U.S. Dist. LEXIS 61576 (S.D.N.Y. May 2, 2012) .................................5

*In re Futterman,*
99-CV-8793, 2001 U.S. Dist. LEXIS 3177 (S.D.N.Y. Mar. 21 2001)...........5

*Midwest Motor Sports v. Arctic Sales, Inc.,*
347 F.3d 693 (8th Cir. 2003) ...........................................................................3

*SunTrust Mortg., Inc. v. AIG United Guar. Corp.,*
2011 U.S. Dist. LEXIS 33118 (E.D. Va. Mar. 29, 2011) ...............................2

*Upjohn Co. v. Aetna Cas. & Sur. Co.,*
768 F. Supp. 1186 (W.D. Mich. 1990) ............................................................3

*Wilder v. GL Bus Lines,*
258 F.3d 126 (2d Cir. 2001).............................................................................2

STATUTES

Fed. R. Civ. P. 37..................................................................................................2

28 U.S.C. § 1651(a) ..............................................................................................2

i

Defendants' Opposition [1] confirms that Plaintiff's requested relief is appropriate. Defendants cannot deny that, in response to this litigation: (i) Uber's General Counsel ordered an investigation of Plaintiff; (ii) the Uber employee carrying out the investigation, who was never told to commission a security investigation, retained Ergo for a "very under the radar" reputational investigation that involved contacting sources familiar with Plaintiff and preparing a report that "highlight[ed] all derogatories" about Plaintiff; (iii) Uber did not exercise any control or oversight over the investigation; (iv) the investigation was carried out through the use of lies and deception in order to obtain information from Plaintiff's personal connections; and (v) after the investigation was uncovered, Defendants made misrepresentations, withheld information, made *quid pro quo* demands in exchange for information, and unjustifiably withheld discovery. This willfully blind and wanton conduct constitutes bad faith and warrants appropriate sanctions.

None of Defendants' various arguments and excuses warrants denial of Plaintiff's narrowly tailored requests for relief.  Defendants apparently agree, as Ergo expressly accepts (Ergo Opp. at 1), that they will not conduct any similar illegal investigations in this case, and they concede that they cannot and will not use the Ergo Report (including its data, findings and recommendations in this case).  At bottom, the only relief that Defendants contest is an award of fees and costs associated with Plaintiff's uncovering the truth and seeking relief concerning the Ergo investigation.  But, on that point, Defendants' claimed ignorance and finger-pointing falls well short.  Defendants' refusal to take the Ergo matter seriously and come clean about it was a conscious decision, and they should be held accountable.

---

[1] Dkt. No. 108.  Capitalized terms not defined herein shall have the same meaning ascribed to them in Plaintiff's Memorandum of Law in Support of His Motion For Relief Related to the Ergo Investigation, Dkt. No. 103 ("Motion").  Unless otherwise noted, all references to Exhibits refer to documents attached to the Declaration of James H. Smith in Support of this Reply Memorandum.  We refer to Dkt. No. 112 as the "Ergo Opp."

*First*, Defendants argue that sanctions are not warranted because Plaintiff has not made a particularized showing of "bad faith." Opp. at 12-16. This is wrong, and the five undisputed facts set forth above make that clear. The investigation was set in motion by an attorney with knowledge that litigation was pending; indeed, Uber asserted privilege and work product immunity over virtually every communication concerning the investigation. Whatever Uber's General Counsel's purported concerns were, Uber had an obligation to oversee how the Ergo investigation was conducted—particularly given the Uber-approved investigation parameters to "highlight[] all derogatories" by contacting seven "primary source[s]" while keeping the investigation "very under the radar." Dkt. No. 104-05 at 3, 17-19.

Uber's willful blindness to Ergo's tactics constitutes bad faith conduct and warrants sanctions. As Defendants acknowledge, the Court has the inherent authority[2] to sanction actions taken in "bad faith, vexatiously, wantonly, or for oppressive reasons." Opp. at 17 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991)); *Adkins v. GMAC*, 479 Fed. Appx. 386, 387 (2d Cir. 2012). Sanctionable conduct extends to "where the attorney has negligently or recklessly failed to perform his responsibilities as an officer of the court." *Wilder v. GL Bus Lines*, 258 F.3d 126, 130 (2d Cir. 2001). Willful blindness of improper acts can also constitute bad faith conduct. *See SunTrust Mortg., Inc. v. AIG United Guar. Corp.*, 2011 U.S. Dist. LEXIS 33118, 63-66 (E.D. Va. Mar. 29, 2011) ("Issuing sanctions upon a finding of willful blindness is squarely in line with the sanctions standards articulated by the Supreme Court in *Chambers*[.]").

Those standards are easily satisfied here. After an Uber attorney set the Ergo investigation in motion, Uber approved parameters that were far afield from the claimed "security" purpose (which was never stated or shared with Ergo). Uber's failure to supervise the

---

[2] The Court's inherent authority, Fed. R. Civ. P. 37, and the All Writs Act empower the Court to award appropriate relief against both Defendants and non-party Ergo. *See* Motion at 11.

"reputational" investigation it recklessly commissioned does not absolve it from resulting responsibility and liability. *See Upjohn Co. v. Aetna Cas. & Sur. Co.*, 768 F. Supp. 1186, 1212 (W.D. Mich. 1990) ("When a lawyer hires a nonlawyer to do his work, the lawyer must make reasonable efforts to ensure that the nonlawyer accomplishes his task in compliance with the standards governing the conduct of lawyers."); New York Rules of Professional Conduct (22 NYCRR 1200.0) Rule 5.3(b). Plaintiff's proposed sanctions are well within the Court's discretion, regardless of whether Defendants specifically directed Ergo to conduct its investigation through fraudulent means. *Midwest Motor Sports v. Arctic Sales, Inc.*, 347 F.3d 693, 698 (8th Cir. 2003) ("lawyers cannot escape responsibility for the wrongdoing they supervise by asserting that it was their agents, not themselves, who committed the wrong.").

*Second,* Defendants argue that a general, boilerplate provision in the Ergo Master Services Agreement (assuring Ergo would act legally) excuses them for failing to exercise any oversight or control over the specific investigation that was authorized. Opp. at 15. A generalized provision does not grant Defendants *carte blanche* to turn a blind eye to any wrongful conduct. To the contrary, Uber's lawyers were required to undertake "reasonable efforts" to ensure that Ergo's conduct was legal and ethical. *Upjohn*, 768 F. Supp. at 1212. Indeed, reliance on the boilerplate provision was rendered meaningless in light of the investigation that Uber fully authorized.

Defendants' assertion they had no "reason to think" that Ergo would obtain information through the use of false pretenses is untenable in light of the specific investigation parameters that they demanded ("very under the radar") and approved (contact seven primary sources, "highlight[] all derogatories"). Dkt. No. 104-05 at 3, 17-19. Tellingly, no Uber's witness could explain how they expected Ergo could collect "under the radar" information from sources

3

without lying to them; they testified that they did not give it any thought at all.  Ex. A, Clark Tr. at 66:22-67:5; Ex. B, Sullivan Tr. at 14:19-25; Ex. C, Henley Tr. at 95:1-15; 99:20-100:18.

*Third*, Defendants' claim that Ergo's use of pretext was "beyond the scope" of the investigation, (Opp. at 5), is false.  It is contrary to the testimony of every single witness who testified regarding the investigation.  Both Ergo employees testified that the use of pretext is common in conducting investigations, *see* Motion at 5, as Ergo itself admits, *see* Ergo Opp. at 6 ("Ergo employees sometimes use false pretenses").  No one from Uber or Ergo ever reprimanded the Investigator for the use of false statements; in fact, Ergo defends that tactic in its Opposition. *Id*. at 10; Ergo Opp. at 2, 6.  Mr. Egeland testified that the only actions "beyond the scope" of the assignment referred to "going out and doing primary research on Mr. Schmidt" and sending Ergo-identified questions in writing (both of which led to the investigation being traced back to Uber)—not to the use of false statements to obtain information.  Ex. D, Egeland Tr. 143:18-144:14 179:10-182:17.  Mr. Clark (Uber) testified that, despite having an in-person meeting with Ergo, he had no idea how precisely the Ergo investigation ostensibly went beyond its scope; he understood going "beyond the scope" to refer to operating outside of Ergo's internal protocol, of which he was completely ignorant.  Ex. A at 83:19-88:3.  Defendants' attempt to manipulate an email and re-inject the completely debunked proposition that it was "rogue" for Ergo to use falsehoods to gather information reflects the type of willful blindness that underscores why Plaintiff's requested relief is required.

*Fourth,* Plaintiff has suffered substantial prejudice.  Opp. at 16.  As detailed in the Motion, Plaintiff has spent considerable time and expense over the past six months extracting

details related to the investigation.[3]  This time and expense was necessary to uncover the facts about the Ergo investigation and could have been largely avoided had Defendants simply come clean regarding the investigation.  Instead, Defendants provided misrepresentations and piecemeal information and demanded concessions that only confirmed Plaintiff's suspicions and underscored the need for details.  Motion at 7-10; Feldman Dec. at ¶¶3-11.  The considerable time and expense it has taken to uncover the details concerning the investigation is sufficient to show prejudice.[4]  *In re Futterman*, 99-CV-8793, 2001 U.S. Dist. LEXIS 3177, at *12 (S.D.N.Y. Mar. 21 2001) (delays combined with increased litigation costs can constitute prejudice).

**Fifth**, Plaintiffs are entitled to an order precluding Defendants from (i) using the fruits of the Ergo investigation (which Defendants have not opposed), and (ii) seeking discovery concerning Plaintiff's personal background.  Defendants' only opposition to this relief is a straw man.  Plaintiff does not seek an order preventing Defendants from seeking discovery regarding whether Plaintiff "possess[es] the same interest and suffer[ed] the same injury as the class members" Opp. at 20 (internal quotations omitted).  That sort of information is far afield from information concerning Plaintiff's personal background, his reputation, personal life or relationships—all of which have no place in this case.

**Finally**, Plaintiff briefly responds to certain separate issues raised by Ergo.  Dkt. No. 112. *First,* Plaintiff respectfully refers to his June 21 Letter to the Court, which refutes Ergo's arguments that its use of pretext was an acceptable investigation technique.  *Second*, Ergo's

---

[3] Plaintiff is not required to submit billing records with the Motion, Opp at n. 10, and will do so at an appropriate time.  *See Harley v. Nesby*, 2012 U.S. Dist. LEXIS 61576, at *17 (S.D.N.Y. May 2, 2012) ("there is no requirement . . . that a party moving for sanctions must attach billing records and invoices for costs to their initial motion. Such a submission would have been premature because liability for fees had not been decided when the motion was initially made.").

[4]  That the report was "laudatory" of Mr. Meyer is a testament to Mr. Meyer's sterling character and qualifications, not a reason to deny him an appropriate award of fees and costs.

suggestion that it did not condone the Investigator's use of false statements is contradicted by the clear testimony on this point.  Ergo Opp. at 6; Ex. D at 97:17-98:9 ("was [the Investigator's misrepresenting the purpose of the Meyer investigation to primary sources] a problem for you in any way?  A. … at the time, no."); 203:24-205:5; 32:21-33:3 ("Q. Do you know if [*sic*] whether or not an analyst will mislead a potential target about the reason that they're reaching out to them to collect information?  A. Yes.  Q. So Ergo analysts do do that?  A. Yes.").  *Third,* Ergo's use of false statements was "material" because it encouraged interviewees to provide information about Mr. Meyer.  *Id*. at 36:12-20.  *Fourth*, Ergo nowhere contests that it violated the criminal laws of New York State (by undertaking an unlicensed reputational investigation, *see* Motion at 5 n.3) and New Hampshire (by recording calls without consent, *see id.* at 13 n.5).  *Lastly*, Ergo wrongly asserts that it did not obstruct the discovery process.  In the face of a Court Order directing discovery, Ergo made sweeping objections to Plaintiff's document requests and resisted depositions.  Then, after the Court ordered Ergo to produce documents to Plaintiffs, Ergo withheld virtually every document related to the Meyer investigation—including emails to Mr. Meyer's acquaintances—under a claim of attorney work product.  The sweeping refusal to produce documents was obviously improper.  Moreover, Ergo's purported work product basis for withholding documents is belied by the position it asserts to excuse its conduct—that Ergo "never had any contact with an Uber lawyer until after the project was complete" and "never sought to affect [the litigation] in any way."  Ergo Opp. at 1-2.  Adherence to these contradictory positions itself reflects obstruction.  *See Broadrock Gas Servs., LLC v. AIG Specialty Ins. Co.*, 2015 U.S. Dist. LEXIS 26462, at *21 (S.D.N.Y. Mar. 2, 2015) ("The availability of work-product protection for a document turns on whether the document in question was created because of pending or anticipated litigation.").

Dated:  New York, New York
       July 8, 2016

CONSTANTINE CANNON LLP
Matthew  L. Cantor
David A. Scupp
335 Madison Avenue
New York, New York 10017
Tel: (212) 350-2700
Fax: (212) 350-2701
mcantor@constantinecannon.com
dscupp@constantinecannon.com


CAFFERTY CLOBES
MERIWETHER & SPRENGEL LLP
Bryan L. Clobes
Ellen Meriwether
1101 Market Street, Suite 2650
Philadelphia, PA  19107
Tel: (215) 864-2800
Fax: (215) 864-2800
bclobes@caffertyclobes.com
emeriwether@caffertyclobes.com

ANDREW SCHMIDT LAW PLLC
Andrew Arthur Schmidt
97 India Street
Portland, Maine 04101
Tel: (207) 619-0320
Fax: (207) 221-1029
andy@maineworkjustice.com

MCKOOL SMITH, P.C.

John C. Briody
James H. Smith
One Bryant Park, 47th Floor
New York, New York 10036
Tel: (212) 402-9400
Fax: (212) 402-9444
jbriody@mckoolsmith.com
jsmith@mckoolsmith.com

Lewis T. LeClair
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Tel: (214) 978-4984
Fax: (214) 978-4044
lleclair@mckoolsmith.com

HARTER SECREST & EMERY LLP
Brian Marc Feldman
Jeffrey A. Wadsworth
Edwin M. Larkin
A. Paul Britton
1600 Bausch & Lomb Place
Rochester, New York 14604
Tel: (585) 232-6500
Fax: (585) 232-2152
bfeldman@hselaw.com
jwadsworth@hselaw.com
elarkin@hselaw.com


*Counsel for Plaintiff Spencer Meyer*

### CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2016, I filed and therefore caused the foregoing document to be served via e-mail and the CM/ECF system in the United States District Court for the Southern District of New York on all parties registered for CM/ECF in the above-captioned matter:

*/s/ James H. Smith*
James H. Smith