# EXHIBIT C

```
              IN THE UNITED STATES DISTRICT COURT

                 SOUTHERN DISTRICT OF NEW YORK


SPENCER MEYER, individually
and on behalf of those
similarly situated,

          Plaintiffs,
vs.                                  No. 1:15 Civ. 9796 (JSR)

TRAVIS KALANICK,

          Defendant.
_____/




      CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

              DEPOSITION OF MATHEW G. HENLEY

                  SAN FRANCISCO, CALIFORNIA

                  WEDNESDAY, JUNE 22, 2016









BY:  ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR

     CSR LICENSE NO. 9830

     JOB NO. 504144
```

```
1            IN THE UNITED STATES DISTRICT COURT

2               SOUTHERN DISTRICT OF NEW YORK

3

4   SPENCER MEYER, individually
    and on behalf of those
5   similarly situated,

6            Plaintiffs,
    vs.                                  No. 1:15 Civ. 9796 (JSR)
7
    TRAVIS KALANICK,
8
             Defendant.
9   _____/

10

11

12

13        Deposition of Mathew G. Henley, taken on

14   behalf of the Plaintiff, at Gibson, Dunn &

15   Crutcher, LLP, 555 Mission Street, 30th Floor,

16   San Francisco, California, Pursuant to Notice,

17   before me, ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR,

18   CLR ~ CSR License No. 9830.

19

20

21

22

23

24

25
```

1  A P P E A R A N C E S:
2
3
4    ON BEHALF OF THE PLAINTIFF:
5        MCKOOL SMITH, P.C.
6        By:   JOHN C. BRIODY, Esq.
7        One Bryant Park, 47th Floor
8        New York, New York 10036
9        Phone: 212.402.9400
10       jbriody@mckoolsmith.com
11
12   ON BEHALF OF UBER TECHNOLOGIES:
13       GIBSON DUNN & CRUTCHER, LLP
14       By:   NICOLA T. HANNA, Esq.
15             LAURA J. PLACK, Esq.
16       3161 Michelson Drive
17       Irvine, California 92612-4412
18       Phone:  949.451.3800
19       nhanna@gibsondunn.com
20
21   ALSO PRESENT:  Martin White, Uber
22                  Angela Padilla, Uber
23
24               ---oOo---
25

1    Q   Now, were you aware of the manner in which
2   Ergo is going to reach out and contact the seven
3   primary sources in order to obtain interviews and
4   information?
5        MR. HANNA:  Objection to the form of the
6   question.
7        MR. BRIODY:  And let me be clear about this.
8    Q   Prior -- let's pick a date.  Jan- -- prior to
9   January 19th, prior to receiving Ergo's report, were
10  you aware of the manner in which Ergo was going to
11  reach out to the seven primary sources?
12   A   I still don't know how they reached out.
13   Q   Oh, so -- so the answer to that question is
14  "no"?
15   A   No.
16   Q   And after you received the report, did you
17  ever learn how Ergo was reaching out to the seven
18  primary sources?
19   A   No.
20       MR. HANNA:  Slow down.
21       MR. BRIODY:  Q.  Is that something that you
22  were ever concerned about, how Ergo might be reaching
23  out to the seven primary sources --
24       MR. HANNA:  Objection --
25       MR. BRIODY:  Q.  -- in the period between the

1  question.
2          THE WITNESS:  Did I want them -- I don't
3  think I thought it through enough at all on that side,
4  no.
5          MR. BRIODY:  Q.  So you expected that you --
6  did you expect -- let me ask it the other way -- did
7  you expect Ergo, in connection with the investigation
8  authorized in Exhibit 49, to go out and contact
9  primary sources and tell them that they were doing so
10 on behalf of Uber and in connection with an
11 investigation of the plaintiff, Spencer Meyer?
12         MR. HANNA:  Objection to the form of the
13 question; asked and answered.
14         He testified he didn't think about it.
15         THE WITNESS:  I expected --
16         MR. BRIODY:  Please let him answer the
17 question, Counsel.
18         THE WITNESS:  I expected them to be legal and
19 professional.
20         MR. BRIODY:  Q.  Did you expect them to tell
21 the people who they were contacting why they were
22 doing it?
23     A   I expected them to be legal and professional.
24     Q   And that's not my question, sir.
25         I'd like you to -- I want to know if you had

```
 1  an expectation that the personnel at Ergo and the
 2  seven primary sources they were going to collect
 3  information -- did you have an expectation that they
 4  were going to be telling the primary sources why?
 5          MR. HANNA:  Objection to the form of the
 6  question; asked and answered.
 7          MR. BRIODY:  Q.  You can answer.  I'm waiting
 8  for an answer.
 9      A   I didn't think about it.  There was no
10  expectation in either direction.
11      Q   So, when you wrote that the investigation was
12  to be under the radar, under the radar meant that the
13  Ergo investigator could just tell folks about what
14  they were doing and why?
15          MR. HANNA:  Objection to the form of the
16  question; asked and answered; misstates testimony.
17          THE WITNESS:  I don't know what I meant by
18  under the radar.
19          MR. BRIODY:  Well, Mr. Henley, you wrote the
20  phrase "under the radar."
21      Q   Sitting here today, what does the phrase
22  "under the radar" mean to you?
23      A   It's a sensitive matter and to treat it as
24  such.
25      Q   And is a sensitive matter something you go
```