

**WILMERHALE**

June 16, 2016

David W. Bowker

+1 202 663 6558 (t)
+1 202 663 6363 (f)
david.bowker@wilmerhale.com

BY E-MAIL TO JUDICIAL CLERK RACHEL BAYEFSKY

The Honorable Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street, Room 1340
New York, NY 10007

   Re: *Meyer v. Kalanick*, 15-cv-09796 (JSR)

Dear Judge Rakoff:

On behalf of third-party Global Precision Research, LLC d/b/a/ Ergo ("Ergo"), I respectfully submit this letter on the subject of the research and interviews that Ergo performed for Uber Technologies, Inc. ("Uber") in relation to Plaintiff Spencer Meyer ("Plaintiff") and his counsel Andrew Schmidt. The purpose of this letter is three-fold. First, it addresses the Court's concerns regarding the "serious risk of perverting the processes of justice before this Court." Dkt. 76 at 3-4. Second, it rebuts Plaintiff's suggestion that some unspecified "fraud" may have occurred and discusses the allegation that an Ergo investigator made "material misrepresentations in the course of conducting his investigation." Dkt. 76 at 8. Third, it addresses the law relating to the use of false pretenses in investigations, as such law may be relevant to the Court's forthcoming memorandum setting forth the reasons for its June 8 order directing the production of discovery otherwise protected from disclosure by the attorney-work-product doctrine.

To begin, Ergo takes very seriously the Court's concerns regarding the potential "perver[sion of] the processes of justice before this Court." Dkt. 76 at 3-4. Ergo is a law-abiding company that would never engage in any conduct intended to pervert or unlawfully influence the processes of justice in a court of law. In this particular case, it was never Ergo's intention to help Uber or Travis Kalanick or any other party pervert the process of justice or unlawfully affect the above-referenced litigation in this Court. (Nor does Ergo have any reason to believe that this was Uber's or Mr. Kalanick's intention.) To the contrary, it was Ergo's intention to perform a service for its client Uber by lawfully gathering information about an individual who filed a high-profile lawsuit against Uber's CEO, Mr. Kalanick. Ergo's investigative report demonstrates that this is in fact what Ergo did. *See* Reputational Investigation, dated January 19, 2016, Bates-Stamped ERGO-0000821-836.

Plaintiff suggests that Ergo's research analyst, Miguel Santos-Neves, made "material misrepresentations" potentially as part of a suspected "fraud," *see, e.g.*, Dkt. 76 at 8, but this is not a fair characterization of the facts. Mr. Santos-Neves disclosed to all those he interviewed his actual name, his actual employer, and the fact that he had questions to ask on behalf of a private client (whose identity he declined to disclose). For example, the stock email he sent to

Wilmer Cutler Pickering Hale and Dorr llp, 1875 Pennsylvania Avenue NW, Washington, DC 20006

Beijing  Berlin  Boston  Brussels  Denver  Frankfurt  London  Los Angeles  New York  Palo Alto  Washington

WILMERHALE

June 16, 2016
Page 2

interviewees began with the following statement:  "My name is Miguel Santos-Neves and I am
an analyst at Ergo, a leading primary research firm based in New York (http:www.ergo.net)."
*See, e.g.*, E-mail from Ergo Analyst to Third Party, dated Jan. 7, 2016, Bates-Stamped ERGO-
0000462.  Those were truthful statements.  In the same stock email, he also stated that "[t]his
study is for a private client and will not be published, and your identity also would remain
anonymous to the client."  *Id.*  Those statements were also truthful.

In the same stock email, Mr. Santos-Neves mischaracterized the precise reason for his
interviews, not to perpetrate a fraud or otherwise cause harm to third-party interviewees, but
rather to help solicit information while also protecting the identity of his client.  As Mr. Santos-
Neves explained in his deposition, "I have an obligation to maintain [the] confidentiality of my
client," Tr. 121:22-24, "[s]o if I had just sent an e-mail saying I'm doing a research project on
Spencer Meyer, then the natural follow-up question, I believe, would be for what purposes right?
And I obviously could not say for the purposes because he's leveling a lawsuit against the CEO
of Uber, right?  So here all I'm providing is a reason for the – my outreach.  And eventually, if
the source felt comfortable speaking about Spencer Meyer, then we would have a conversation,"
Tr. 123:2-13.

The law permits a researcher or investigator to do what Mr. Santos-Neves did in this case.  *See,
e.g., Gidatex, S.r.L. v. Campaniello Imports*, 82 F. Supp. 2d 119, 122 (S.D.N.Y. 1999)
(describing dissemblance by investigators as "an accepted investigative technique, not a
misrepresentation").  In *Gidatex*, for example, the court considered a motion to exclude evidence
of trademark infringement obtained by investigators working at the direction of counsel, where
the investigators had obtained evidence from an opposing party in an ongoing litigation by
falsely claiming to be customers of the opposing party and secretly taping conversations with the
opposing party's sales people.  The court treated the investigators' use of false pretenses as
lawful and declined to exclude the evidence on ethical grounds, reasoning that it was appropriate
for the attorneys to direct investigators to dissemble as part of an effort to uncover ongoing
violations of law.  *Id.* at 123-26; *see also Apple Corps v. Int 'l Collectors Soc 'y*, 15 F. Supp. 2d
456, 474 (D.N.J. 1998) (holding that it was lawful and appropriate for counsel to engage
investigators who, in turn, misrepresented their identities and the purposes of their questions in
investigating violations of a marketer's consent decree).

In other contexts, courts have discussed dissemblance in investigations without any apparent
contemplation that such activity is unlawful.  *See, e.g., Germain v. M & T Bank Corp.*, 111 F.
Supp. 3d 506, 539 (S.D.N.Y. 2015) (investigator posed as mortgage broker); *Dickson v. Slezak*,
902 N.Y.S.2d 206, 207 (2010) (investigator posed as real estate seller); *LeBreton v. Weiss*, 680
N.Y.S.2d 532, 532 (1998) (investigators posed as landlords).  As far as we have been able to
determine, no court in New York has ever found dissemblance for the purpose of information
gathering during an investigation to be illegal so long as the information is not sought from a
consumer reporting agency.  *Cf.* 15 U.S.C. § 1681q; N.Y. Gen. Bus. Law § 380-o.

WILMERHALE

June 16, 2016
Page 3

It is also not "fraud" for a researcher or investigator to ask questions in a manner that conceals the true purpose of the inquiry. "[F]raud requires proof of (1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." *Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC.*, 797 F.3d 160, 170 (2d Cir. 2015). Leaving aside whether the true purpose of the inquiry in this case was "material" to the interviewees, there is no suggestion that any of the interviewees suffered any actual damages, which are "an essential element" of any fraud claim. *See Meda AB v. 3M Co.*, 969 F. Supp. 2d 360, 388 (S.D.N.Y. 2013).

While Ergo respectfully submits that its conduct in this case was appropriate and lawful, it nonetheless also recognizes and appreciates the seriousness of the Court's concerns regarding the integrity of the adversarial process in a court of law. In this regard, it bears noting neither Ergo nor its research analyst was ever directed by anyone representing or speaking on behalf of Mr. Kalanick or Uber to use false or misleading statements in the conduct of the Meyer investigation. Moreover, neither Ergo nor its research analyst had any intention of perpetrating a fraud or otherwise undermining the judicial process. Rather, Ergo and its research analyst sought only to help Uber lawfully obtain information following the filing of a high-profile lawsuit against Uber's CEO.

We appreciate the Court's consideration of this submission as it prepares to issue a memorandum opinion explaining the reasons for its June 8 order.

Respectfully submitted,

David W. Bowker
Wilmer Cutler Pickering Hale and Dorr LLP
*Counsel for Global Precision Research, LLC d/b/a Ergo*

cc: Counsel of record in *Meyer v.* Kalanick, 15-cv-09796 (JSR)