## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
SPENCER MEYER, individually and on
behalf of those similarly situated,
:
Plaintiffs,
    Case No. 1:15-cv-9796 (JSR)
:
vs.
:
TRAVIS KALANICK and UBER
TECHNOLOGIES, INC.
:
Defendants.
:
------------------------------------------------------------x

## ANSWER OF UBER TECHNOLOGIES, INC. TO THE FIRST AMENDED COMPLAINT

Defendant Uber Technologies, Inc. ("Uber"), by and through its undersigned attorneys, and for its Answer to the First Amended Complaint ("Complaint") filed by Plaintiff Spencer Meyer ("Meyer") states and alleges as follows. To the extent not specifically admitted, each factual assertion by Plaintiff is denied. To the extent that the headings and non-numbered statements in the Complaint contain any averments, Uber denies each and every such averment.

## ANSWER TO ALLEGATIONS REGARDING NATURE OF THE SUIT

1. Uber admits this is a civil antitrust action against Mr. Kalanick and admits that the action is also against Uber. Uber also admits that Mr. Kalanick is the co-founder and CEO of Uber but denies all other allegations of Paragraph 1.

2. To the extent that the allegations in Paragraph 2 are legal conclusions, no responsive pleading is required. Subject to and notwithstanding the foregoing, Uber admits that it is not a transportation company, that it does not employ drivers, and that it offers a smartphone application that connects riders looking for transportation with independent transportation providers (the "Uber App"). Uber denies the remaining allegations of Paragraph 2.

3. Uber admits that Mr. Kalanick is the co-founder and CEO of Uber, and admits that he live tweeted about his experience when he drove a vehicle while using the Uber App to receive transportation requests in San Francisco, California, on one night—starting at 9:19 p.m. on February 21, 2014, and ending at 1:57 a.m. on February 22, 2014. Uber denies the remaining allegations in Paragraph 3.

4. To the extent that the allegations in Paragraph 4 are legal conclusions, no responsive pleading is required. To the extent an answer is required, Uber denies the allegations in Paragraph 4.

5. To the extent that the allegations in Paragraph 5 are legal conclusions, no responsive pleading is required. To the extent an answer is required, Uber admits that its

"business model [is] procompetitive" and admits that Mr. Kalanick has stated that Uber's business model is procompetitive. Uber admits it is not a transportation company and that it does not provide transportation services itself. Uber denies the remaining allegations in Paragraph 5 and specifically denies that "Uber's price fixing is classic anticompetitive behavior."

6. To the extent that the allegations in Paragraph 6 are legal conclusions no responsive pleading is required. To the extent an answer is required, Uber denies the allegations in Paragraph 6. Uber is without knowledge or information sufficient to form a belief as to the truth or falsity of the assertion that notice of commencement of this action was served upon the New York State Attorney General and therefore denies it.

## ANSWER TO ALLEGATIONS REGARDING PARTIES

7. Uber admits, on information and belief, that Plaintiff has used the Uber App on more than one occasion. Uber further admits that Plaintiff purports to be a resident of Connecticut. Uber is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 7, and therefore denies them.

8. Uber denies the allegations in Paragraph 8.

9. To the extent that the allegations in Paragraph 9 are legal conclusions, no responsive pleading is required. To the extent an answer is required, Uber admits that Mr. Kalanick is a resident of California, Uber's CEO, an Uber Board member, its co-founder, and has, in San Francisco, California, on one night—starting at 9:19 p.m. on February 21, 2014, and ending at 1:57 a.m. on February 22, 2014—driven a vehicle while using the Uber App to receive transportation requests. Uber denies the remaining allegations in Paragraph 9.

## ANSWER TO ALLEGATIONS REGARDING JURISDICTION AND VENUE

10. Paragraph 10 contains legal conclusions as to which no response is required. To the extent an answer is required, Uber admits that Plaintiff purports to base subject matter

jurisdiction on 28 U.S.C. §§ 1331, 1337 and 15 U.S.C. §§ 4 and 15.  To the extent a further answer is required, Uber denies any remaining allegations in Paragraph 10.

11.     The allegations in Paragraph 11 are legal conclusions and/or are directed to Mr. Kalanick, and no responsive pleading is required.

12.     To the extent that the allegations in Paragraph 12 are legal conclusions or are directed to Mr. Kalanick, no responsive pleading is required.

13.     The allegations in Paragraph 13 are legal conclusions and/or are directed to Mr. Kalanick, and no responsive pleading is required.

14.     To the extent that the allegations in Paragraph 14 are legal conclusions no responsive pleading is required.  To the extent an answer is required, Uber denies that Mr. Kalanick committed wrongful acts.

15.     To the extent that the allegations in Paragraph 9 are legal conclusions, no responsive pleading is required.  Subject to and notwithstanding the foregoing, Uber admits that Mr. Kalanick appeared as a guest on the Late Show with Stephen Colbert in September 2015, he has made public statements and provided interviews regarding Uber, and that Uber has engaged in "lobbying efforts" in the state of New York, but denies the remaining allegations in Paragraph 15.

16.     Paragraph 16 contains legal conclusions to which no response is required.  To the extent an answer is required, Uber denies the allegations in Paragraph 16.

17.     To the extent that the allegations in Paragraph 17 are legal conclusions or are directed at Mr. Kalanick, no responsive pleading is required.  To the extent an answer is required, Uber denies the allegations of Paragraph 17.

18.     Paragraph 18 asserts a legal conclusion, to which no response is required.  To the extent an answer is required, Uber admits that it does business in New York City.  Uber admits that Plaintiff purports to base venue in this district on 28 U.S.C. § 1391.  Uber denies any remaining allegations in Paragraph 18.

19.     To the extent that the allegations in Paragraph 19 are legal conclusions or are directed at Mr. Kalanick, no responsive pleading is required.  To the extent an answer is required, Uber denies the allegations in Paragraph 19.

**ANSWER TO ALLEGATIONS REGARDING CO-CONSPIRATORS**

20.     Uber denies the allegations in Paragraph 20.

**ANSWER TO ALLEGATIONS REGARDING BACKGROUND**

21.     Uber admits the allegations in Paragraph 21.

22.     Uber admits that it offers a smartphone application that connects riders looking for transportation with independent transportation providers.  Uber denies any remaining allegations in Paragraph 22.

23.     Uber admits the allegations in Paragraph 23.

24.     Uber admits that it offers a smartphone application that connects riders looking for transportation with independent transportation providers.  Uber denies the remaining allegations in Paragraph 24.

25.     Uber admits that it generally offers different transportation request products, and specifically offers uberX, UberBLACK, UberSUV, and UberLUX in the United States.  Uber understand the term "Uber car service" as used in the complaint to refer to these specific products.

26.     Uber denies the allegations in Paragraph 26.

27.     Uber denies the allegations in Paragraph 27.

28.     The terms "in exchange for Uber accounts" and "access to the Uber App" are, as used in this allegation, vague and ambiguous.  Based on Uber's understanding of those terms, Uber admits Uber riders must provide certain information before they can use the Uber App to request transportation services.  Uber denies the remaining allegations in Paragraph 28.

29.     Uber admits the allegations in Paragraph 29.

30.     Uber admits that a "Fare Quote" may be obtained by entering pickup location and destination in the Uber App but denies the remaining allegations in Paragraph 30.

31.     Uber admits that the Uber App facilitates payment between a rider and an independent transportation provider.  Uber denies the remaining allegations in Paragraph 31.

32.     Uber admits that Paragraph 32 describes one way that Uber facilitates the collection of a fare.

33.     Uber is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 33 and on that basis denies them.

34.     Uber denies the allegations in Paragraph 34.

35.     Uber admits that when agreed between the rider and the driver-partner, riders pay driver-partners through the Uber App.

36.     Uber is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 36 and on that basis denies them.

37.     The terms "actively recruit" and "partners" are, as used in this allegation, vague and ambiguous.  Based on Uber's understanding of those terms, Uber admits that it attracts drivers to sign up as driver-partners.

38.     Uber admits that a driver-partner is an independent transportation provider who has a written agreement with Uber or one of its affiliates.

39.     To the extent that the allegations in Paragraph 39 purport to recite from an alleged document, Uber admits that, if and to the extent the document is ever held to be admissible, it would speak for itself.  Uber denies any remaining allegations in Paragraph 39.

40.     Uber denies this allegation to the extent it seeks an implied admission that Uber and Mr. Kalanick are one in the same.  Uber further denies that Mr. Kalanick "and his subordinates decide to offer Uber App services" as it conflates Mr. Kalanick and Uber.  Subject to and notwithstanding the foregoing, Uber admits that when it decides to offer the Uber App in a new geographic location, Uber may use social media as one of several ways to attract new independent transportation providers to drive with Uber.  Uber denies any remaining allegations in Paragraph 40.

41.     Uber responds that the terms "events for its driver-partners to get together" and "'partner appreciation events,'" as used in this allegation, are vague and ambiguous.  Based on Uber's understanding of those terms, Uber admits that it has, on occasion, hosted driver-partner events.  Uber denies that the events alleged are representative examples and denies the remaining allegations in Paragraph 41.

42.     Uber admits that the language quoted in Paragraph 42 has appeared on Uber's website.

43.     Uber admits that independent transportation providers who use the Uber App have discretion to accept or decline an Uber rider request.

44.     Uber admits that on October 6, 2015, it published a report on the growth of the uberX transportation request product in New York City and further admits that the report, which is publicly available, speaks for itself.  Uber otherwise denies the allegations in Paragraph 44.

45.     Uber responds that the terms "mobilize" and "lobby" are, as used in this allegation, vague and ambiguous, and, for that reason, Uber is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 45 and on that basis denies them.

46.     Uber responds that the term "steadfastly maintained," as used in this allegation, is vague and ambiguous, and, for that reason, Uber lacks knowledge sufficient to admit or deny this allegation, and on that basis denies the allegation.  Subject to and notwithstanding the foregoing, Uber admits that it has maintained that the independent transportation providers who use the Uber App are not employees of Uber.  Uber denies the remaining allegations in Paragraph 46.

47.     Uber admits that, for the transportation request products defined as "Uber car service" in Am. Compl. ¶ 25, the Uber rider and driver Apps display fares for specific trips for riders and independent transportation providers based on the time and distance rates and other fees published on https://www.uber.com/cities/ for each U.S. city where Uber operates.  These fares are calculated by servers in Uber's data centers based on the published rates and Uber driver-partners may depart downward from these fares.  Uber further admits that the calculation of specific fares based on the applicable published rates is dynamic, and when demand outstrips supply in a specific neighborhood area, Uber's pricing algorithm temporarily increases the factor applied to the calculation of the fare based on the published rates in that area to encourage more independent transportation providers to become available to offer rides and therefore expand supply.  Except as so admitted, Uber denies the remaining allegations of Paragraph 47.

48.     Uber denies the allegations in Paragraph 48.

49.     Uber is without sufficient knowledge or information to form a belief as to the truth or falsity as to Mr. Kalanick's unidentified "comments."  Uber responds that the terms

"specifics" and "pricing algorithm," as used in this allegation, are vague and ambiguous. Based on Uber's understanding of those terms, Uber denies the allegations of Paragraph 49.

50.     Uber admits that Mr. Kalanick has described the procompetitive benefits of the "surge pricing" model. Except as so admitted, Uber denies the remaining allegations in Paragraph 50.

51.     Uber admits that the allegations in Paragraph 51 purport to recite from a Wired.com article, and that, if and to the extent the document is ever held to be admissible, it would speak for itself. Except as so admitted, Uber is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 51 and on that basis denies them.

52.     Uber admits that the allegations in Paragraph 52 purport to recite from a "website post" and that, if and to the extent the document is ever held to be admissible, it would speak for itself.

53.     Uber denies the allegations in Paragraph 53.

54.     Uber denies the allegations in Paragraph 54.

55.     Uber admits that the allegations in Paragraph 55 purport to recite from FAQs included in a "driver guide," and that, if and to the extent the document is ever held to be admissible, it would speak for itself. Uber denies any remaining allegations in Paragraph 55.

56.     Uber admits that driver-partners are independent transportation providers. Uber objects that the term "control," as used in this allegation, is vague and ambiguous. Based on Uber's understanding of the term, Uber denies the allegations in Paragraph 56.

57.     Uber admits that if and when demand outstrips supply in a given area, Uber's pricing algorithm temporarily increases the factor applied to the calculation of the fare in that

area to encourage more independent transportation providers to become available to offer rides and therefore expand supply. Uber further admits that the Uber App may notify independent service providers of these fares. Uber denies the remaining allegations in Paragraph 57.

58. Uber admits the allegations in Paragraph 58.

59. Uber objects that the term "manipulate," as used in this allegation, is vague and ambiguous, and, for that reason, Uber lacks knowledge sufficient to admit or deny this allegation, and on that basis denies the allegations in Paragraph 58.

60. Uber objects that the term "manipulate," as used in this allegation, is vague and ambiguous. Uber is without knowledge or information about the "reports" or specific driver-partners referenced sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 60. Based on Uber's understanding of these terms, Uber denies the allegations in Paragraph 60.

61. Uber admits that the allegations in Paragraph 61 appear to recite from a Vanity Fair magazine article, and that, if and to the extent the document is ever held to be admissible, it would speak for itself.

62. Uber admits that the allegations in Paragraph 62 appear to recite from remarks made by Mr. Kalanick during his appearance on the Late Show with Stephen Colbert and to the extent the video or transcript of the appearance is ever held to be admissible, it would speak for itself.

63. Uber denies this allegation to the extent it seeks an implied admission that Mr. Kalanick and Uber are one in the same, or requires Uber to answer on Mr. Kalanick's behalf. Uber admits that the allegations in Paragraph 63 appear to recite from remarks made by Mr.

Kalanick during his appearance on the Late Show with Stephen Colbert and to the extent the video or transcript of the appearance is ever held to be admissible, it would speak for itself.

64.     Uber denies this allegation to the extent it seeks an implied admission that Mr. Kalanick and Uber are one in the same, or requires Uber to answer on Mr. Kalanick's behalf. Uber denies the remaining allegations in Paragraph 64.

65.     Uber denies the allegations in Paragraph 65.

66.     Uber denies this allegation to the extent it seeks an implied admission that Mr. Kalanick and Uber are one in the same, or requires Uber to answer on Mr. Kalanick's behalf. Uber responds that the terms "in some U.S. cities" and "standard fare" are vague and ambiguous, and Uber is also without knowledge or information about the "reports" referenced; therefore Uber is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 66 and on that basis denies them.

67.     Uber responds that the terms "standard fare" and "reportedly" are vague and ambiguous and therefore Uber is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 67 and on that basis denies them.

68.     Uber denies the allegation in Paragraph 68.

69.     Uber objects that the term "depart downward," as used in this allegation, is vague and ambiguous.  Based on Uber's understanding of that term, Uber denies the allegations in Paragraph 69.

70.     To the extent that the allegations in Paragraph 70 are legal conclusions, no responsive pleading is required.  To the extent an answer is required, Uber denies the allegations in Paragraph 70.

71.     To the extent that the allegations in Paragraph 71 are legal conclusions, no responsive pleading is required.  To the extent an answer is required, Uber denies the allegations in Paragraph 71.

72.     Uber denies the allegations in Paragraph 72.

73.     Uber is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 73 and on that basis denies them.

74.     Uber admits that the allegations in Paragraph 74 appear to recite from a Facebook comment posted by Mr. Kalanick and to the extent a copy of the post is ever held to be admissible, it would speak for itself.

75.     Uber denies the allegations in Paragraph 75.

76.     To the extent that the allegations in Paragraph 76 contain legal conclusions, no responsive pleading is required.  To the extent that a response is required, Uber denies the allegations in Paragraph 76.

77.     Uber denies the allegations in Paragraph 77.

78.     Uber denies the allegations in Paragraph 78.

79.     Uber admits that the allegations in Paragraph 79 appear to quote blog posts and to the extent copies of these posts are ever held to be admissible, they would speak for themselves. Uber denies any remaining allegations in Paragraph 79.

80.     Uber admits that Mr. Kalanick is the CEO and co-founder of Uber and that in San Francisco, California, on one night—starting at 9:19 p.m. on February 21, 2014, and ending at 1:57 a.m. on February 22, 2014—Mr. Kalanick drove a vehicle while using the Uber App to receive transportation requests.  Uber denies any remaining allegations in Paragraph 80.

81.     Uber admits that the allegations in Paragraph 81 appear to quote "tweets" posted by Mr. Kalanick and to the extent copies of the tweets are ever held to be admissible, they would speak for themselves.  Uber further admits that Mr. Kalanick live tweeted about his experience when he drove a vehicle while using the Uber App to receive transportation requests in San Francisco, California, on one night—starting at 9:19 p.m. on February 21, 2014, and ending at 1:57 a.m. on February 22, 2014.  Uber denies any remaining allegations in Paragraph 81.

82.     Uber denies the allegations in Paragraph 82.

83.     Uber denies the allegations in Paragraph 83.

84.     Uber denies the allegations in Paragraph 84.

85.     Uber denies the allegations in Paragraph 85.

86.     To the extent that the allegations in Paragraph 86 are legal conclusions, no responsive pleading is required.  To the extent an answer is required, Uber denies the allegations in Paragraph 86.

87.     To the extent that the allegations in Paragraph 87 are legal conclusions, no responsive pleading is required.  To the extent an answer is required, Uber denies the allegations in Paragraph 87.

88.     To the extent that the allegations in Paragraph 88 are legal conclusions, no responsive pleading is required.  To the extent an answer is required, Uber denies the allegations in Paragraph 88.

89.     Uber denies the allegations in Paragraph 89.

90.     To the extent that the allegations in Paragraph 90 are legal conclusions, no responsive pleading is required.  To the extent an answer is required, Uber denies the allegations in Paragraph 90.

91.     Paragraph 91 contains legal conclusions and hypotheses to which no response is required. To the extent an answer is required, Uber denies the allegations in Paragraph 91.

92.     To the extent that the allegations in Paragraph 92 are legal conclusions, no responsive pleading is required. To the extent an answer is required, Uber denies the allegations in Paragraph 92.

93.     Paragraph 93 contains legal conclusions and hypotheses to which no response is required.

94.     The allegations in Paragraph 94 are legal conclusions to which no responsive pleading is required. Uber also responds that the term "mobile app-generated ride-share service market" is vague and ambiguous and therefore Uber is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 94. To the extent an answer is required, Uber denies the remaining allegations in Paragraph 94.

95.     To the extent that the allegations in Paragraph 95 are legal conclusions, no responsive pleading is required. To the extent an answer is required, Uber denies the allegations in Paragraph 95.

96.     To the extent that the allegations in Paragraph 96 are legal conclusions, no responsive pleading is required. To the extent an answer is required, Uber denies the allegations in Paragraph 96.

97.     To the extent that the allegations in Paragraph 97 are legal conclusions, no responsive pleading is required. To the extent an answer is required, Uber admits that Sidecar ceased business at some point in time. Uber denies any remaining allegations in Paragraph 97.

98.     Uber admits that the allegations in Paragraph 98 purport to recite from an article and that, if and to the extent the document is ever held to be admissible, it would speak for itself. Uber denies any remaining allegations in Paragraph 98.

99.     Uber admits that the allegations in Paragraph 99 purport to recite from an article and that, if and to the extent the document is ever held to be admissible, it would speak for itself. Uber denies any remaining allegations in Paragraph 99.

100.    Uber admits that the allegations in Paragraph 100 purport to recite from an article in Forbes magazine and that, if and to the extent the document is ever held to be admissible, it would speak for itself. Uber denies the remaining allegations in Paragraph 100.

101.    To the extent that the allegations in Paragraph 101 are legal conclusions, no responsive pleading is required. To the extent an answer is required, Uber denies the allegations in Paragraph 101.

102.    Uber denies the allegations in Paragraph 102.

103.    Uber denies the allegations in Paragraph 103.

104.    Uber admits that using a mobile app-generated ride-share request service like the Uber App means that riders can "arrange for rides at the push of a button," that the rider's smartphone displays an icon representing the driver's vehicle on a moving map and allows the rider to watch the driver approach, that they need not have cash or credit card on hand, that they can simply get out of the car when they reach their destination without further delay, and that the Uber App allows a rider to rate his or her driver and view their driver's name, headshot, the make and model of his car, and overall rating before entering the vehicle. Uber denies the remaining allegations in this paragraph.

105.    To the extent that the allegations in Paragraph 105 are legal conclusions, no responsive pleading is required.  Uber responds that the allegations in Paragraph 105 purport to recite from a document and that, if and to the extent the document is ever held to be admissible, it would speak for itself.  Uber objects that the term "market," as used in this allegation, is vague and ambiguous.  Based on Uber's understanding of that term in this context, Uber denies the allegations in Paragraph 105.

106.    To the extent that the allegations in Paragraph 106 are legal conclusions, no responsive pleading is required.  Uber objects that the term "substitutes," as used in this allegation, is vague and ambiguous.  Based on Uber's understanding of that term in this context, Uber denies the allegations in Paragraph 106.

107.    To the extent that the allegations in Paragraph 107 are legal conclusions, no responsive pleading is required.  Uber responds that the allegations in Paragraph 107 purport to recite from "Uber's own experts" and that, if and to the extent this document or testimony is ever held to be admissible, it would speak for itself.  Uber objects that the term "substitutes," as used in this allegation, is vague and ambiguous.  Based on Uber's understanding of that term in this context, Uber denies the allegations in Paragraph 107.

108.    To the extent that the allegations in Paragraph 108 are legal conclusions, no responsive pleading is required.  Uber objects that the term "substitutes," as used in this allegation, is vague and ambiguous.  To the extent an answer is required, Uber denies the allegations in Paragraph 108.

109.    To the extent that the allegations in Paragraph 109 are legal conclusions, no responsive pleading is required.  To the extent an answer is required, Uber denies the allegations in Paragraph 109.

110. To the extent that the allegations in Paragraph 110 are legal conclusions, no responsive pleading is required. To the extent an answer is required, Uber denies the allegations in Paragraph 110.

111. To the extent that the allegations in Paragraph 111 are directed at Mr. Kalanick and/or are legal conclusions, no responsive pleading is required. To the extent an answer is required, Uber denies the allegations in Paragraph 111.

112. To the extent that the allegations in Paragraph 112 are legal conclusions, no responsive pleading is required. To the extent an answer is required, Uber denies the allegations in Paragraph 112.

113. Uber admits that Plaintiff seeks to sue "on behalf of a class of persons pursuant to Federal Rule of Civil Procedure 23." Uber denies that this case can be maintained as a class action in part because Plaintiff agreed to be bound by Uber's Terms and Conditions, including the arbitration agreement and class waiver provisions contained therein. Plaintiff has thus agreed to arbitrate this dispute on an individual basis and has waived his right to bring a class action or participate as a class member in a class action. Uber further denies the remaining allegations set forth in Paragraph 113.

114. Uber admits that Plaintiff also seeks to "bring certain of the claims on behalf of himself and a portion of the Class described as the Surge Pricing Subclass." Uber denies that this case can be maintained as a class action, in part because Plaintiff agreed to be bound by Uber's Terms and Conditions, including the arbitration agreement and class waiver provisions contained therein. Plaintiff has thus agreed to arbitrate this dispute on an individual basis and has waived his right to bring a class action or participate as a class member in a class action. Uber further denies the remaining allegations set forth in Paragraph 114.

115.    To the extent that the allegations in Paragraph 115 are legal conclusions, no responsive pleading is required.  To the extent an answer is required, Uber is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 115 and on this basis denies them.

116.    To the extent that the allegations in Paragraph 116 are legal conclusions, no responsive pleading is required.  To the extent an answer is required, Uber denies the allegations in Paragraph 116.

117.    To the extent that the allegations in Paragraph 117 are legal conclusions, no responsive pleading is required.  To the extent that an answer is required, Uber denies the allegations in Paragraph 117.

118.    To the extent that the allegations in Paragraph 118 are legal conclusions, no responsive pleading is required.  To the extent an answer is required, Uber denies the allegations in Paragraph 118.

119.    To the extent that the allegations in Paragraph 119 are legal conclusions, no responsive pleading is required.  To the extent an answer is required, Uber denies the allegations in Paragraph 119.

**ANSWER TO ALLEGATIONS REGARDING FIRST CAUSE OF ACTION**
**(Violation of the Sherman Act, 15 U.S.C. § 1)**

120.    Uber incorporates its response to Paragraphs 1 through 119 as if fully set forth herein.

121.    The allegations in Paragraph 121 are legal conclusions and no responsive pleading is required.  To the extent an answer is required, Uber denies the allegations in Paragraph 121.

122. The allegations in Paragraph 122 are legal conclusions and no responsive pleading is required. To the extent an answer is required, Uber denies the allegations in Paragraph 122.

123. The allegations in Paragraph 123 are legal conclusions and no responsive pleading is required. To the extent an answer is required, Uber denies the allegations in Paragraph 123.

124. The allegations in Paragraph 124 are legal conclusions and no responsive pleading is required. To the extent an answer is required, Uber denies the allegations in Paragraph 124.

125. The allegations in Paragraph 125 are legal conclusions and no responsive pleading is required. To the extent an answer is required, Uber denies the allegations in Paragraph 125.

126. The allegations in Paragraph 126 are legal conclusions and no responsive pleading is required. To the extent an answer is required, Uber denies the allegations in Paragraph 126.

127. The allegations in Paragraph 127 are legal conclusions and no responsive pleading is required. To the extent an answer is required, Uber denies the allegations in Paragraph 127.

128. The allegations in Paragraph 128 are legal conclusions and no responsive pleading is required. To the extent an answer is required, Uber denies the allegations in Paragraph 128.

129.    The allegations in Paragraph 129 are legal conclusions and no responsive pleading is required.   To the extent an answer is required, Uber denies the allegations in Paragraph 129.

130.    The allegations in Paragraph 130 are legal conclusions and no responsive pleading is required.   To the extent an answer is required, Uber denies the allegations in Paragraph 130.

131.    To the extent that the allegations in Paragraph 131 are legal conclusions, no responsive pleading is required.  To the extent an answer is required, Uber denies the allegations in Paragraph 131.

132.    To the extent that the allegations in Paragraph 132 are legal conclusions, no responsive pleading is required.  To the extent an answer is required, Uber denies the allegations in Paragraph 132.

133.    The allegations in Paragraph 133 are legal conclusions and as such, no responsive pleading is required.  To the extent that an answer is required, Uber denies the allegations in Paragraph 133.

### ANSWER TO ALLEGATIONS REGARDING SECOND CAUSE OF ACTION
### (Violation of the Donnelly Act, N.Y. Gen. Bus. Law § 340)

134.    Uber incorporates its responses to Paragraphs 1 through 133 as if fully set forth herein.

135.    The allegations in Paragraph 135 are legal conclusions and no responsive pleading is required.   To the extent an answer is required, Uber denies the allegations in Paragraph 135.

136. The allegations in Paragraph 136 are legal conclusions and no responsive pleading is required. To the extent an answer is required, Uber denies the allegations in Paragraph 136.

137. The allegations in Paragraph 137 are legal conclusions and no responsive pleading is required. To the extent an answer is required, Uber denies the allegations in Paragraph 137.

138. To the extent that the allegations in Paragraph 138 are legal conclusions, no responsive pleading is required. Uber denies the allegations in Paragraph 138.

139. To the extent that the allegations in Paragraph 139 are legal conclusions, no responsive pleading is required. Uber denies the allegations in Paragraph 139.

140. The allegations in Paragraph 140 are legal conclusions and as such, no responsive pleading is required. To the extent that an answer is required, Uber denies the allegations in Paragraph 140.

## JURY DEMAND AND ANSWER TO PRAYER FOR RELIEF

141. Uber admits that "Plaintiff requests a jury trial of all issues triable of right to a jury" but in answer to Plaintiff's Petition for Relief (including paragraphs A through I inclusive), Uber responds that Plaintiff has expressly waived "the right to a trial by jury, to participate as a plaintiff or class User in any purported class action or representative proceeding." Moreover, Plaintiff also expressly agreed to resolve "any dispute, claim, or controversy arising out of or relating to" the Agreement via binding arbitration, on an individual basis and not as a class action. Accordingly, Uber believes that all of Plaintiff's claims in this case, must be arbitrated pursuant to the Arbitration Agreement between Uber and Plaintiff, as set forth in the motion to compel arbitration that Uber previously filed. Nonetheless, in the event this Court's denial of Uber's motion to compel arbitration is affirmed on appeal, Uber requests jury trial of all issues

raised by Plaintiff's claims that are so triable. Uber also denies specifically that Plaintiff is entitled to any relief. Accordingly, Uber denies generally and specifically each and every factual allegation contained in Plaintiff's Petition for Relief.

## SEPARATE AND ADDITIONAL DEFENSES

Without assuming any burden of proof that it would not otherwise bear, Uber also asserts the following additional defenses:

### FIRST SEPARATE AND ADDITIONAL DEFENSE

Plaintiff is precluded from proceeding in this action under the terms of his binding User Agreement. Plaintiff expressly agreed to resolve "any dispute, claim, or controversy arising out of or relating to" the Agreement via binding arbitration, on an individual basis and not as a class action. Plaintiff also agreed to waive "the right to a trial by jury, to participate as a plaintiff or class User in any purported class action or representative proceeding."

### SECOND SEPARATE AND ADDITIONAL DEFENSE

Plaintiff's proposed class definition is vague and overly broad, and otherwise fails to satisfy the requirements for maintaining a class action.

### THIRD SEPARATE AND ADDITIONAL DEFENSE

Plaintiff cannot satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure for a class action.

### FOURTH SEPARATE AND ADDITIONAL DEFENSE

This action is not a proper class action under Federal Rule of Civil Procedure 23 because, inter alia, Plaintiff's claims are futile, Plaintiff's claims are not typical or common of those of the putative class, Plaintiff is not an adequate representative of the putative class, common issues do not predominate over individual issues, damages cannot be proven on a class-wide basis, the

class is based on a faulty definition of the relevant market, a class action is not a superior method of adjudication of this case, and class-wide adjudication of Plaintiff's claims would violate both the Rules Enabling Act and Uber's due process rights.

## FIFTH SEPARATE AND ADDITIONAL DEFENSE

Plaintiff's claims are subject to arbitration by virtue of Plaintiff's agreement to an arbitration clause.

## SIXTH SEPARATE AND ADDITIONAL DEFENSE

Plaintiff has failed to state a cause of action for which relief may be granted in whole or in part.

## SEVENTH SEPARATE AND ADDITIONAL DEFENSE

The claims of Plaintiff are barred, in whole or in part, by the statute of limitations. *See* 15 U.S.C. § 15b; N.Y. Gen. Bus. Law § 340(5).

## EIGHTH SEPARATE AND ADDITIONAL DEFENSE

To the extent Plaintiff and the alleged class seek relief on behalf of purported class members who have not suffered any damages, the Complaint and each of its claims for relief therein violate Uber's rights to due process under the United States Constitution.

## NINTH SEPARATE AND ADDITIONAL DEFENSE

The claims of Plaintiff are barred, in whole or in part, by the state action doctrine, *see Parker v. Brown*, 317 U.S. 341 (1943).

## TENTH SEPARATE AND ADDITIONAL DEFENSE

The claims of Plaintiff are barred, in whole or in part, by the filed rate doctrine, *see Keogh v. Chicago & Northwestern Railway Co.*, 260 U.S. 156 (1922).

## ELEVENTH SEPARATE AND ADDITIONAL DEFENSE

The claims of Plaintiff are barred, in whole or in part, by the Local Government Antitrust Act of 1984, 15 U.S.C. §§ 34-36.

## TWELFTH SEPARATE AND ADDITIONAL DEFENSE

The claims of Plaintiff are barred, in whole or in part, to the extent that they seek double or duplicative recovery.

## THIRTEENTH SEPARATE AND ADDITIONAL DEFENSE

The claims of Plaintiff are barred, in whole or in part, by the doctrine of laches.

## FOURTEENTH SEPARATE AND ADDITIONAL DEFENSE

The claims of Plaintiff are barred, in whole or in part, by the doctrine of waiver and/or estoppel.

## FIFTEENTH SEPARATE AND ADDITIONAL DEFENSE

The claims of Plaintiff are barred, in whole or in part, by the doctrine of setoff.

## SIXTEENTH SEPARATE AND ADDITIONAL DEFENSE

To the extent that any actionable conduct occurred, Plaintiff's claims against Uber are barred to the extent that such conduct was committed by individuals acting *ultra vires*.

## SEVENTEENTH SEPARATE AND ADDITIONAL DEFENSE

The claims of the Plaintiff are barred, in whole or in part, insofar as they challenge the exercise of rights protected by the First Amendment of the United States Constitution and by the *Noerr-Pennington* doctrine.

## EIGHTEENTH SEPARATE AND ADDITIONAL DEFENSE

The claims of the Plaintiff are barred insofar as Plaintiff or putative class members lack standing to sue.

## NINETEENTH SEPARATE AND ADDITIONAL DEFENSE

Plaintiff is barred from recovery for any alleged damages because of and to the extent of his failure to mitigate damages.

## TWENTIETH SEPARATE AND ADDITIONAL DEFENSE

The application of the Donnelly Act to commerce that is not intra-state commerce or interstate commerce between New York and another State is preempted by the Sherman Act and the Supremacy Clause and, to the extent it imposes an excessive burden on interstate commerce, is preempted by the Commerce Clause.

## TWENTY-FIRST SEPARATE AND ADDITIONAL DEFENSE

The claims of Plaintiff are barred due to settlement, accord and satisfaction, and/or release.

## TWENTY-SECOND SEPARATE AND ADDITIONAL DEFENSE

Because Plaintiff's Amended Complaint is phrased in conclusory terms, Uber cannot fully anticipate all affirmative defenses that may be applicable to this action. Accordingly, Uber has done its best to anticipate the possible affirmative defenses consistent with the requirements of FRCP 8(c). Uber reserves the right to assert additional defenses, including any defense asserted by any co-defendant, to the extent such defenses are or become applicable, as well as to develop facts in support of its affirmative defenses. To the extent any affirmative defense is, ultimately, not applicable, in whole or in part, it will be, in good faith, amended or withdrawn.

## UBER'S COUNTER COMPLAINT

For its counterclaim against Plaintiff Spencer Meyer, Uber Technologies, Inc. ("Uber") avers as follows:

## SUMMARY OF THE ACTION

1.     This dispute is the subject of the purported class action lawsuit filed by Plaintiff on December 16, 2015.  *See* DE 1.  Plaintiff asserts that Uber's pricing algorithm is part of a "scheme to fix prices among direct competitors," and that "[t]hrough the pricing algorithm and its surge pricing component, Kalanick and Uber artificially set the fares for its driver-partners to charge to riders."  Am. Compl. at ¶¶ 5, 54.  Based on allegations that he "paid higher prices for car service" requested through the Uber App, *id*. at ¶ 8, Plaintiff brought an action for violation of the Sherman Act, 15 U.S.C. § 1.  Uber maintains that Plaintiff's claims are baseless and that, in fact, Uber has behaved pro-competitively.  Given this, an actual case or controversy exists between the parties.  However, Plaintiff stubbornly insists that "the Complaint asserts no claims against Uber," merely because he originally named only Uber's CEO, Travis Kalanick.  DE 102 at 37.  Plaintiff's position is incorrect given the Court recognized that "plaintiff's basic demand for relief is, to a significant extent, directed against Uber" and ordered Uber to be joined as a defendant.    DE  90  at  5  n.4,  7.    Plaintiff's  erroneous  contention  necessitates  Uber's counterclaim for declaratory relief; therefore, Uber brings this counterclaim pursuant to 28 U.S.C. §§ 2201-2202 to resolve the underlying dispute with Plaintiff.

## THE PARTIES

2.     Upon information and belief, Plaintiff Spencer Meyer is a resident of Connecticut.

3.     Uber is a technology company that connects independent transportation providers and riders through its smartphone application (the "Uber App").  Uber is a Delaware corporation and is headquartered in San Francisco, California.

## JURISDICTION AND VENUE

4.      This Counterclaim is filed pursuant to 28 U.S.C. § 2201(a) to resolve an actual controversy between the parties.  The parties' dispute arises under Section 1 of the Sherman Act, 15 U.S.C. § 1.

5.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6.      An actual and ripe case or controversy exists between Uber and Plaintiff as to all matters alleged herein.  Plaintiff's claims go to the heart of Uber's business, challenging the very lawfulness of Uber's services, the Uber App, and Uber's pricing algorithm (including "surge pricing") under the antitrust laws.  For example, Plaintiff asserts that Uber's pricing algorithm is part of a "scheme to fix prices among direct competitors," and that "[t]hrough the pricing algorithm and its surge pricing component, Kalanick and Uber artificially set the fares for its driver-partners to charge to riders."  Am. Compl. at ¶¶ 5, 54.  He contends that "the fares set by the Uber algorithm" and "which are uniformly charged by drivers using the Uber app" are therefore "price-fixed fares."  *Id*. at ¶ 2.  Uber maintains that it did not violate any antitrust laws and, in fact, behaved pro-competitively.  Given this, an actual case or controversy exists.  Uber's counterclaim for declaratory relief is necessitated by Plaintiff's erroneous contention that he "has pled claims only against Kalanick, not against Uber," and "[t]here is thus no claim against Uber in this proceeding"  (DE 102 at 38-39)—despite the fact that Uber has been joined as a defendant and the Court has recognized that Plaintiff's attempts to mischaracterize his claims are "hyper-technical" and "awfully artificial" (DE 94 at 23, 25-26).

7.      This Court has personal jurisdiction over Plaintiff.

8.      Plaintiff has purposely availed himself of the benefits of the State of New York and has brought claims in this district which are the subject of this counterclaim.

9.     Uber also is subject to personal jurisdiction in New York and it consents to that jurisdiction.

10.    The claims in this case arise out of transactions with Plaintiff that relate to New York State.  Plaintiff contends that, *inter alia*, he has been injured as a result of prices he has paid for transportation service requested through the Uber App while in New York City.

11.    Venue in the Southern District of New York is proper under 28 U.S.C. § 1391 in that a substantial part of the events giving rise to the claims occurred in this district.  Uber transacts business and is found in the Southern District of New York.  A substantial part of the interstate trade and commerce involved and affected by the alleged violations of the antitrust laws was and is carried on within the Southern District of New York.

## FACTUAL ALLEGATIONS

12.    Uber is an innovative technology company that enables riders to request transportation services from independent transportation providers.   Riders can request transportation services by using the Uber App on their smartphones, and these requests are then transmitted to independent transportation providers who are available to receive transportation requests.  As a new entrant, Uber has vastly increased options, reduced prices and improved service for millions of Americans.

13.    Before riders can request transportation services via the Uber App, they must first register by creating a rider account with Uber ("an Uber Account").  Plaintiff created such an Uber Account in late 2014 to become an Uber rider.  In the process of registering to use Uber, Plaintiff agreed to Uber's Rider Terms, which include an Arbitration Agreement mandating that "any" claim "arising out of or relating this Agreement … or the use of [Uber's] Service or Application" must be "settled by binding arbitration."  DE 29-1 at 8-9.  Uber's "Service"

includes "any services supplied" by Uber, and its "Application" includes "any associated application supplied to [a rider] by [Uber] which purpose is to enable [a rider] to use the Service." *Id*. at 2.

14.    Plaintiff brought suit on December 16, 2015 on behalf of himself and a purported class of persons consisting of "all persons in the United States who, on one or more occasions, have used the Uber App to obtain rides from Uber driver-partners and paid fares for their rides set by the Uber pricing algorithm." Am. Compl. ¶ 113. Plaintiff alleged that "Uber has a simple but illegal business plan: to fix prices among competitors and take a cut of the profits." *Id*. at ¶ 1. Plaintiff further alleged that "Uber [is] a price fixer," *id*. at ¶ 2, and that "Uber's essential role [is] to fix prices among competing drivers," *id*. at ¶ 4. According to Plaintiff, Uber's price-fixing is accomplished via the Uber app and Uber's pricing algorithm: "[E]ach time they accept a rider using the Uber App," "[d]river-partners . . . participate in a combination, conspiracy, or contract to fix prices" with Uber and Mr. Kalanick, *id*. at ¶ 71, and "[t]hrough the pricing algorithm and its surge pricing component, Kalanick and Uber artificially set the fares for its driver-partners to charge to riders," *id*. at ¶ 54. Based on allegations that he "paid higher prices for car service" requested through the Uber App, *id*. at ¶ 8, Plaintiff brought an action for violation of the Sherman Act, 15 U.S.C. § 1. Although styled as an action against Uber's CEO only in order to evade Plaintiff's arbitration obligation with Uber, as this Court has recognized, "fairly read, the Amended Complaint alleges that **Uber's scheme for setting prices, as well as the terms of Uber's contracts with drivers, constitute an antitrust violation**." DE 90 at 5 (emphasis added). Thus, Plaintiff's allegations are, in all but name, directed against Uber.

15.    The claims in Plaintiff's Amended Complaint are meritless.

16.     To prove its various claims against Uber, Plaintiff would need to show certain elements that are necessary for relief under the legal standards applicable to each count.  Plaintiff cannot prove the necessary elements of its claims.

17.     As an example, Plaintiff cannot show any concerted action that could have unreasonably restrained trade in any relevant market.  Additionally, Plaintiff has not alleged a plausible relevant market and, further, cannot show that trade has been restrained unreasonably in any legally cognizable relevant market.  Nor can Plaintiff show a restraint of trade on a *per se* basis or under a "quick look" analysis.  Plaintiff's factual allegations are also groundless; accordingly, Uber denies them.  *See* Uber's Answer to the First Amended Complaint.

18.     Uber maintains that Plaintiff's claims lack merit.  Uber did not violate any antitrust laws and, in fact, behaved pro-competitively.

19.     A declaratory judgment in Uber's favor and against Plaintiff is necessary to finally resolve the dispute between the parties.

20.     The dispute between the parties is ripe and justiciable, and conservation of judicial resources weighs strongly in favor of resolving it now.

21.     To resolve the parties' dispute, Uber seeks a declaration that, during the time period for which Plaintiff seeks damages in its Amended Complaint, Uber's conduct in, among other things, operating the Uber App and Uber's pricing algorithm, including the "surge pricing" element, did not violate Section 1 of the Sherman Act.

22.     Uber includes this counterclaim in its Answer as required under the Federal Rules of Civil Procedure, so as not to waive its right to assert this counterclaim in the event this litigation proceeds in court.  However, Uber believes that this counterclaim, like all of Plaintiff's claims in this case, must be arbitrated pursuant to the Arbitration Agreement between Uber and

Plaintiff, as set forth in the motion to compel arbitration that Uber previously filed. Uber expressly reserves all rights to arbitration pursuant to its Arbitration Agreement with Plaintiff and nothing contained herein should be deemed or construed as a waiver of those rights. In the event this Court's denial of Uber's motion to compel arbitration is reversed on appeal, Uber would not proceed with this counterclaim in litigation but would instead pursue this counterclaim as part of the arbitration.

## COUNT I

### (Declaratory Judgment – No Violation of Section 1 of the Sherman Act)

23.     Uber re-alleges and fully incorporates herein by reference each and every allegation contained in paragraphs 1 through 22 above.

24.     Plaintiff asserts that Uber's app and Uber's pricing algorithm, including the "surge pricing" element, violate Section 1 of the Sherman Act.

25.     By reason of the foregoing, there is an actual, substantial, and continuing justiciable controversy between Uber and Plaintiff regarding the lawfulness of Uber's app and Uber's pricing algorithm under Section 1 of the Sherman Act.

26.     Plaintiff is unable to establish that Uber is liable under Section 1 of the Sherman Act based upon Uber's App or Uber's pricing algorithm, including the "surge pricing" element.

27.     Uber seeks and is entitled to a declaration that Uber's App and Uber's pricing algorithm, including the "surge pricing" element, do not violate Section 1 of the Sherman Act.

28.     In addition to the aforesaid declaration, Uber seeks such additional and further relief as the Court deems appropriate.

## PRAYER FOR RELIEF

29.     WHEREFORE, Uber respectfully requests that this Honorable Court enter judgment in its favor and against the Plaintiff on Count I, granting:

(a)     A declaration pursuant to 28 U.S.C. § 2201 that Uber is not liable under Sherman Act Section 1; and

(b)     Any such other and further relief as justice and equity may require.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Uber hereby demands a trial by jury as to all issues so triable, whether raised by Plaintiff's claims or by Uber's Counter Complaint. Uber includes this demand in its Counter Complaint as required under the Federal Rules of Civil Procedure, so as not to waive its right to a trial by jury in the event this litigation proceeds in court. However, Uber believes that its counterclaim, like all of Plaintiff's claims in this case, must be arbitrated pursuant to the Arbitration Agreement between Uber and Plaintiff, as set forth in the motion to compel arbitration that Uber previously filed. Uber expressly reserves all rights to arbitration pursuant to its Arbitration Agreement with Plaintiff and nothing contained herein should be deemed or construed as a waiver of those rights. In the event this Court's denial of Uber's motion to compel arbitration is reversed on appeal, Uber would not proceed with this counterclaim or Plaintiff's claims in litigation, would relinquish its right to a trial by jury as to all issues raised by such claims and counterclaim, and would instead pursue its counterclaim as part of the arbitration.

Dated: July 29, 2016

Respectfully submitted,


/s/ Daniel G. Swanson
Daniel G. Swanson

GIBSON, DUNN & CRUTCHER LLP

Theodore J. Boutrous, Jr.
Daniel G. Swanson
Nicola T. Hanna
Joshua S. Lipshutz
333 South Grand Avenue
Los Angeles, CA  90071
Telephone:    213.229.7000
Facsimile:    213.229.7520
TBoutrous@gibsondunn.com
DSwanson@gibsondunn.com
NHanna@gibsondunn.com
JLipshutz@gibsondunn.com

Reed Brodsky
200 Park Avenue
New York, NY  10166-0193
Telephone:    212.351.4000
Facsimile:    212.351.4035
RBrodsky@gibsondunn.com

Cynthia E. Richman
1050 Connecticut Avenue, N.W.
Washington, DC  20036
Telephone:    202.955.8500
Facsimile:    202.467.0539
CRichman@gibsondunn.com

*Attorneys for Uber Technologies, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2016, I filed and therefore caused the foregoing

document to be served via the CM/ECF system in the United States District Court for the

Southern District of New York on all parties registered for CM/ECF in the above-

captioned matter:

/s/ Daniel G. Swanson
Daniel G. Swanson