UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x
                               :

SPENCER MEYER, individually and on     :
behalf of those similarly situated,         :
                               :

            Plaintiffs,           :    Case No. 1:15-cv-9796 (JSR)
                               :

     -against-                :
                               :

TRAVIS KALANICK and UBER       :
TECHNOLOGIES, INC.,           :
                               :

            Defendants.        :
----------------------------------------------------------x

## UBER TECHNOLOGIES, INC. AND TRAVIS KALANICK'S MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION TO STAY JUDICIAL PROCEEDINGS

GIBSON, DUNN & CRUTCHER LLP

Theodore J. Boutrous, Jr.
Daniel G. Swanson
Nicola T. Hanna
Joshua S. Lipshutz
333 South Grand Avenue
Los Angeles, CA  90071
Tel:  (213) 229-7000
Fax:  (213) 229-7520
TBoutrous@gibsondunn.com
DSwanson@gibsondunn.com
NHanna@gibsondunn.com
JLipshutz@gibsondunn.com

Reed Brodsky
200 Park Avenue
New York, NY  10166-0193
Tel: (212) 351-4000
Fax:  (212) 351-4035
RBrodsky@gibsondunn.com

Cynthia E. Richman
1050 Connecticut Avenue, N.W.
Washington, DC  20036
Tel:  (202) 955-8500
Fax:  (202) 467-0539
CRichman@gibsondunn.com

*Attorneys for Defendant Uber Technologies, Inc.*

BOIES, SCHILLER & FLEXNER LLP

Karen L. Dunn
William A. Isaacson
Ryan Y. Park
5301 Wisconsin Avenue, NW
Washington, DC 20015
Tel: (202) 237-2727
Fax: (202) 237-6131
kdunn@bsfllp.com
wisaacson@bsfllp.com
rpark@bsfllp.com

Alanna C. Rutherford
Peter M. Skinner
Joanna C. Wright
575 Lexington Avenue, 7th Floor
New York, NY 10022
Tel: (212) 446-2300
Fax: (212) 446-2350
arutherford@bsfllp.com
pskinner@bsfllp.com
jwright@bsfllp.com

*Attorneys for Defendant Travis Kalanick*

August 5, 2016

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

LEGAL STANDARD.............................................................................................. 4

ARGUMENT ....................................................................................................... 6

I.   DEFENDANTS' APPEALS PRESENT SERIOUS QUESTIONS THAT THE
     SECOND CIRCUIT IS LIKELY TO RESOLVE IN THEIR FAVOR ......................... 6

A.   Uber's Sign-Up Process Provided Adequate Notice Of The Rider Terms ..................... 7

B.   Plaintiff Affirmatively Assented By Clicking "Register"............................................. 13

C.   The FAA Preempts Any Purported Requirement That An Agreement Draw
     Special Attention To An Arbitration Provision ............................................................ 15

II.  DEFENDANTS WILL SUFFER IRREPARABLE HARM ABSENT A STAY......... 17

III. PLAINTIFF WILL SUFFER NO HARM SHOULD THE COURT STAY
     PROCEEDINGS ................................................................................................ 20

IV.  THE PUBLIC INTEREST FAVORS A STAY............................................................ 21

CONCLUSION.............................................................................................................. 23

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Aetna Ins. Co. v. Kennedy to Use of Bogash*,
    301 U.S. 389 (1937)....................................................................................2

*Alascom, Inc. v. ITT North Elec. Co.*,
    727 F.2d 1419 (9th Cir. 1984) ........................................................1, 16, 17

*Am. Exp. Co. v. Italian Colors Rest.*,
    133 S. Ct. 2304 (2013) .........................................................11, 14, 15, 17

*Arciniaga v. GMC*,
    460 F.3d 231 (2d Cir. 2006).............................................................20

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011).................................................1, 11, 14, 15, 17

*Brenntag Int'l Chems., Inc. v. Bank of India*,
    175 F.3d 245 (2d Cir. 1999)............................................................17

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006)....................................................................2

*Cendant Corp. v. Forbes*,
    72 F. Supp. 2d 341 (S.D.N.Y. 1999)........................................3, 17, 20

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
    598 F.3d 30 (2d Cir. 2010)..............................................................1, 5

*Crawford v. Beachbody, LLC*,
    No. 14-1583-GPC-KSC, 2014 WL 6606563 (S.D. Cal. Nov. 4, 2014)...........................10, 13

*Cullinane v. Uber Technologies, Inc.*,
    No. 14-14750, 2016 WL 3751652 (D. Mass. July 11, 2016) ...................3, 5, 10, 12

*DIRECTV, Inc. v. Imburgia*,
    136 S. Ct. 463 (2015).............................................................2, 11, 14

*Doctor's Associates, Inc. v. Casarotto*,
    517 U.S. 681 (1996)...................................................................2, 15

*Fagerstrom v. Amazon.com, Inc.*,
    141 F. Supp. 3d 1051 (S.D. Cal. 2015).........................................10, 13

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Fed. Commerce & Nav. Co. v. Kanematsu-Gosho, Ltd.*,
  457 F.2d 387 (2d Cir. 1972)..................................................................16

*Fteja v. Facebook, Inc.*,
  841 F. Supp. 2d 829 (S.D.N.Y. 2012)..............................3, 8, 12, 13, 14

*Estate of Heiser v. Deutsche Bank Trust Co.*,
  2012 WL 2865485 (S.D.N.Y. July 10, 2012) ........................................19

*Jock v. Sterling Jewelers, Inc.*,
  738 F. Supp. 2d 445 (S.D.N.Y. 2010).................................1, 3, 4, 5, 17

*Kansas Gas & Elec. Co. v. Westinghouse Elec. Corp.*,
  861 F.2d 420 (4th Cir. 1988) ................................................................17

*LaRouche v. Kezer*,
  20 F.3d 68 (2d Cir. 1994)........................................................................4

*Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*,
  67 F.3d 20 (2d Cir. 1995)......................................................................20

*Mohammed v. Reno*,
  309 F.3d 95 (2d Cir. 2002)......................................................................5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)..................................................................................15

*Mundi v. Union Security Life Ins. Co.*,
  2007 WL 2385069 (E.D. Cal. Aug. 17, 2007) ......................................18

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) .....................................................6, 12, 13

*Nicosia v. Amazon.com, Inc.*,
  84 F. Supp. 3d 142 (E.D.N.Y. 2014) .................................3, 9, 10, 13

*Nken v. Holder*,
  556 U.S. 418 (2009)................................................................................4

*Payne v. Jumeirah Hosp. & Leisure (USA) Inc.*,
  808 F. Supp. 2d 604 (S.D.N.Y. 2011)...................................................20

*Plummer v. Quinn*,
  No. 07-6154-WHP, 2008 WL 383507 (S.D.N.Y. Feb. 12, 2008) ...........4

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Roe v. SFBSC Management, LLC*
No. 14-03616-LB, 2015 WL 1798926 (N.D. Cal. Apr. 17, 2015) .........................................18

*Saint Agnes Med. Ctr. v. PacifiCare of Cal.*,
31 Cal. 4th 1187 (2003) .........................................16

*Salameno v. Gogo, Inc.*,
2016 WL 4005783 (E.D.N.Y. July 25, 2016) .........................................6

*Sanchez v. Valencia Holding Co.*,
61 Cal. 4th 899 (2015) .........................................2, 11, 14, 15

*Satcom Int'l Grp. PLC v. Orbcomm Int'l Partners, L.P.*,
55 F. Supp. 2d 231 (S.D.N.Y. 1999).........................................18, 20

*Savetsky v. Pre-Paid Legal Servs., Inc.*,
14-cv-03514, 2015 WL 604767 (N.D. Cal. Feb. 12, 2015).........................................12

*Schnabel v. Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2012).........................................6

*Shearson/American Exp., Inc. v. McMahon*,
482 U.S. 220 (1987).........................................20

*Specht v. Netscape Communications Corp.*,
306 F.3d 17 (2d Cir. 2002).........................................1, 11, 12

*Starke v. Gilt Grp., Inc.*,
No. 13-cv-05497-LLS, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014).........................................3, 9, 13

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010).........................................16

*Sutherland v. Ernst & Young LLP*,
856 F. Supp. 2d 638 (S.D.N.Y. 2012).........................................1, 4, 5, 18, 20

*In re United Health Care Org.*,
210 B.R. 228 (S.D.N.Y. 1997).........................................19

*Volt Info. Sci., Inc. v. Bd. of Trustee of Leland Stanford Junior Univ.*,
489 U.S. 468 (1989).........................................15

*In re World Trade Ctr. Disaster Site Litig.*,
2007 U.S. App. LEXIS 8728 (2d Cir. Mar. 9, 2007).........................................4

iv

Defendants Uber Technologies, Inc. ("Uber") and Travis Kalanick (collectively "Defendants") respectfully move this Court for a stay of all proceedings pending their appeals of the Court's July 29, 2016 order denying Defendants' motions to compel arbitration.  *See* Def. Uber's Notice of Appeal, DE 131; Def. Kalanick's Notice of Appeal, DE 132.

## PRELIMINARY STATEMENT

Defendants' appeals present extremely "serious questions" warranting a stay pending appeal.  *See Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 640–41 (S.D.N.Y. 2012) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34–38 (2d Cir. 2010)); *Jock v. Sterling Jewelers, Inc.*, 738 F. Supp. 2d 445, 447 (S.D.N.Y. 2010) (Rakoff, J.).  This Court's order denying Defendants' motions to compel arbitration touches on fundamental issues regarding assent to electronic agreements that implicate the very "'integrity and credibility' of 'electronic bargaining.'"  DE 126 at 28 (quoting *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 35 (2d Cir. 2002)).  The Second Circuit has yet to weigh in on the standards that courts should apply when evaluating so-called "hybrid" click wrap or "sign-in wrap" agreements like the one at issue here, nor has the Second Circuit had the opportunity to weigh in on the emerging frontier of contracts reached over a mobile phone or via a mobile application.  The standards this Court applied implicate an untold number of electronic agreements of Uber and countless other companies.

Moreover, a stay is warranted because Defendants have a high probability of succeeding on appeal.  This Court announced that it was "indulg[ing] every reasonable presumption against" the validity of the contract at issue, purely because the agreement contains an arbitration provision, which—like every other arbitration agreement—forces the parties to forego their right to a jury trial.  DE 126 at 1 (quoting *Aetna Ins. Co. v. Kennedy to Use of Bogash*, 301 U.S. 389, 393 (1937)).  The Court's holding, which expressly *disfavors* arbitration, is in direct conflict with

well-established law holding that federal courts must *favor* arbitration under the Federal Arbitration Act ("FAA"), and that the FAA preempts any rule that "does not place arbitration contracts 'on equal footing with all other contracts.'" *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 471 (2015) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). Applying this erroneous presumption against arbitration, the Court scrutinized the "placement of the arbitration clause in Uber's User Agreement" and criticized Uber's failure to draw special attention to the arbitration portion of the User Agreement.  DE 126 at 28.  As the Supreme Court has "several times said," however, the Federal Arbitration Act was enacted to prevent precisely this kind of "singling out [of] arbitration provisions for suspect status."  *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (holding that the FAA preempted a state statute requiring arbitration clauses to be prominently identified in underlined capital letters on the first page of a contract).  Indeed, even under California law, on which the Court relied against Defendants' objections, a company may not be "oblig[ed] to highlight the arbitration clause of its contract . . . [or] to specifically call that clause to [another party's] attention."  *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 914 (2015).  The direct conflict between the Court's order and the law both within and outside the Second Circuit means that Defendants have a strong likelihood of success on their appeals.

Defendants are also likely to prevail on their arguments regarding the validity of "hybrid clickwrap" electronic agreements.  *First*, this Court held that courts have "repeatedly" "declin[ed] to find that an electronic contract was formed" where the agreement did not require a user to click a button explicitly labeled "I agree."  DE 126 at 22–24.  Not so.  Courts in this Circuit have consistently held that users manifest assent by clicking "Sign Up" or "Place your order" buttons just like the "Register" button at issue here.  *See, e.g.*, *Starke v. Gilt Grp., Inc.*, No. 13-cv-5497-LLS, 2014 WL 1652225, at *2 (S.D.N.Y. Apr. 24, 2014) (plaintiff assented by

clicking "Sign Up" button); *Nicosia v. Amazon.com, Inc.*, 84 F. Supp. 3d 142, 150 (E.D.N.Y. 2014) (plaintiff assented by clicking "Place your order" button); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 834 (S.D.N.Y. 2012) (plaintiff assented by clicking "Sign Up" button).

*Second*, the Court found that "[t]he Uber registration screen . . . did not adequately call users' attention to the existence of Terms of Service." DE 126 at 25. But that holding is at odds with numerous district court decisions that have enforced electronic agreements with far *less* conspicuous hyperlinks to the terms of service. *See*, *e.g.*, *Fteja*, 841 F. Supp. 2d 829; *Nicosia*, 84 F. Supp. 3d 142; *Gilt Grp.*, 2014 WL 1652225.

*Third*, the Court's conclusion that the text of Uber's hyperlink was "ambiguous"—notwithstanding that it was accurately labeled "Terms of Service"—is inconsistent with numerous district court decisions enforcing electronic agreements accessed by hyperlinks bearing the exact same text. *See*, *e.g.*, *Cullinane v. Uber Techs., Inc.*, No. 14-14750, 2016 WL 3751652, at *2 (D. Mass. July 11, 2016) (enforcing Uber agreement with riders where riders were directed to hyperlink labeled "Terms of Service"); *Fteja*, 841 F. Supp. 2d at 835 (enforcing agreement with hyperlink labeled "Terms of Service").

Allowing these proceedings to continue while Defendants' appeals are pending would deprive the parties—perhaps permanently—of the "efficient, streamlined procedures" they agreed to when Meyer registered to use the Uber App, *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). Indeed, if a party "must undergo the expense and delay of a trial before being able to appeal, the advantages of arbitration—speed and economy—are lost forever." *Alascom, Inc. v. ITT North Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984).

Because the overwhelming weight of authority from courts nationwide supports Defendants' arguments that Plaintiff—as he alleged in his complaint and subsequently reaffirmed before disavowing—entered into a contract with Uber, this Court should stay this

action.  This is true even if the Court "remains confident in the soundness of" its reasoning. *Jock*, 738 F. Supp. 2d at 447; *see also Cendant Corp. v. Forbes*, 72 F. Supp. 2d 341, 343 (S.D.N.Y. 1999) (Rakoff, J.) (finding a stay appropriate although "the Court has previously found [defendant's] arguments for arbitration wholly unconvincing").

## LEGAL STANDARD

This Court has "judicial discretion" to stay the proceedings pending Defendants' appeals. *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal quotation marks omitted); *see also Kaltman v. Petroleo Brasileiro S.A. Petrobras*, No. 16-1914, DE 169 (2d Cir. Aug. 2, 2016) (granting motion to stay in interlocutory appeal where district court (Rakoff, J.) had previously denied a motion to stay); *In re World Trade Ctr. Disaster Site Litig.*, 2007 U.S. App. LEXIS 8728 (2d Cir. Mar. 9, 2007) (granting motion for a stay of trial as well as pre-trial proceedings pending appeal); *Plummer v. Quinn*, No. 07-6154-WHP, 2008 WL 383507, at *2 (S.D.N.Y. Feb. 12, 2008) (granting stay pending defendant's appeal); *Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 644 (S.D.N.Y. 2012) (staying discovery during pendency of appeal of order denying motion to compel arbitration); *Jock*, 738 F. Supp. 2d at 447 (granting stay where the "appeal presents issues of first impression" regarding Federal Arbitration Act).

A motion for a stay "is a motion, not to [the court's] inclination, but to its judgment; and its judgment is to be guided by sound legal principles."  *Nken*, 556 U.S. at 434 (internal quotation marks omitted).  Accordingly, in determining whether to issue a stay pending appeal, this Court examines four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 426 (internal quotation marks omitted).  "While stated in these terms, the test contemplates that a movant may be granted relief even if it demonstrates something less than a likelihood of success on the merits of its appeal." *Sutherland*, 856 F. Supp. 2d at 640.  To warrant a stay, Defendants must show only that they have "a substantial possibility, although *less than a likelihood*, of success on appeal." *LaRouche v. Kezer*, 20 F.3d 68, 72 (2d Cir. 1994) (emphasis added) (internal quotations omitted); *see also Citigroup Global Mkts.*, 598 F.3d at 37 (*Nken* "did not suggest that this factor requires a showing that the movant is 'more likely than not' to succeed on the merits"); *Jock*, 738 F. Supp. at 447 (reasoning that, while plaintiffs' appeal rested on "immaterial" distinctions with binding precedent, "the Court of Appeals may disagree, and for that reason alone the plaintiffs have sufficiently demonstrated a likelihood of success on the merits").  Alternatively, a party may obtain a stay "if it shows 'serious questions' going to the merits of its appeal as well as irreparable harm," and "the balance of hardships 'tips decidedly' in [its] favor." *Sutherland*, 856 F. Supp. 2d at 640 (quoting *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,* 598 F.3d 30, 36 (2d Cir. 2010)).

"The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff[] will suffer absent the stay." *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002).  Thus, "the stronger the showing that the movant makes as to its likelihood of success on the merits, the less compelling need be the movant's demonstration of harm." *Sutherland*, 856 F. Supp. 2d at 640.[1]

---

[1]  At least five Courts of Appeals have held that the filing of a notice of interlocutory appeal pursuant to § 16 of the FAA automatically stays any related proceedings before the district court.  *E.g.*, *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 263 (4th Cir. 2011) ("[A]n appeal regarding arbitrability of claims does divest the district court of jurisdiction over those claims, as long as the appeal is not frivolous."); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 215 n.6 (3d Cir. 2007) (same); *McCauley v. Halliburton Energy Servs., Inc.*, 413 F.3d 1158, 1162–63 (10th Cir. 2005) (same); *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249,
*(Cont'd on next page)*

## ARGUMENT

### I.   DEFENDANTS' APPEALS PRESENT SERIOUS QUESTIONS THAT THE SECOND CIRCUIT IS LIKELY TO RESOLVE IN THEIR FAVOR

As this Court has recognized, a stay may be warranted where a party's appeal "presents an issue of first impression," even if the Court "remains confident in the soundness of" its reasoning, so long as "the Court of Appeals *may* disagree." *Jock*, 738 F. Supp. 2d at 447 (emphasis added) (granting stay pending appeal to resolve open question regarding authority of arbitrator to permit class certification in arbitration). Although the overwhelming majority of courts nationwide, including numerous district courts both inside and outside this Circuit, have enforced electronic agreements nearly identical to the agreement at issue here, the Second Circuit has yet to weigh in on the validity of electronic contracts formed under these circumstances (where users are asked to assent to terms and conditions by registering for an account and/or clicking a button), or how electronic contract formation may be impacted by presentation over mobile phones or applications. Given the ample case law supporting Defendants' position, there is a strong likelihood that the Second Circuit will resolve these important issues of first impression in Defendants' favor and conclude that Plaintiff agreed to arbitrate his claims.

---

*(Cont'd from previous page)*

1253 (11th Cir. 2004) (same); *Bombadier Corp. v. Nat'l R.R. Passenger Corp.,* No. 02-7125, 2002 WL 31818924, at *1 (D.C. Cir. Dec. 12, 2002) (same); *Bradford-Scott Data Corp. v. Physician Computer Network*, 128 F.3d 504, 507 (7th Cir. 1997) (same). Defendants respectfully submit that the Second Circuit's adherence to a contrary rule, *Motorola v. Uzan*, 388 F.3d 39, 54 (2d Cir. 2004), is mistaken and reserve their rights to challenge that rule in the appropriate forum. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.").

A.      Uber's Sign-Up Process Provided Adequate Notice Of The Rider Terms

There is a strong probability that the Second Circuit will reach a decision at odds with the Court's conclusion that the hyperlink to the Rider Terms was not "readily and obviously available to the user."  DE 126 at 23.  Ample case law—indeed, the weight of authority—supports Uber's position that the hyperlink and accompanying text were sufficiently conspicuous to put a reasonable consumer on inquiry notice that he or she was agreeing to Uber's Terms of Service by creating an Uber account.

As an initial matter, any evaluation of the "conspicuousness and placement of the 'Terms of Use' hyperlink" (*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)) must account for the extensive experience of the average consumer of mobile applications with this form of electronic contracting.  "[C]onsumers are regularly and frequently confronted with non-negotiable contract terms, particularly when entering into transactions using the Internet . . . ." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 127 (2d Cir. 2012); *see also Salameno v. Gogo, Inc.*, No. 16-0487, 2016 WL 4005783, at *4 (E.D.N.Y. July 25, 2016) ("In today's electronic world, online retailers often offer their services pursuant to terms of use shown on the computer used to order a product or services.").  In particular, registering for electronic services, either by downloading an application or creating an account, is virtually always subject to terms and conditions of use, and users are generally asked to accept such terms and conditions at either the point of download or registration.  A reasonably prudent user would be aware of the significant likelihood that a link to the terms and conditions of use would be among the text displayed during the registration process.  *Cf. Schnabel*, 697 F.3d at 127 ("[I]nasmuch as consumers are regularly and frequently confronted with non-negotiable contract terms, particularly when entering into transactions using the Internet, the presentation of these terms at a place and time that the consumer will associate with the initial purchase or enrollment . . . indicates to the

consumer that he or she is . . . employing such services subject to additional terms and conditions that may one day affect him or her.").

At the very least, a reasonably prudent user would have read the very minimal amount of text featured on Uber's registration screen before entering his or her credit card information, if only to ascertain whether the credit card would be charged.  This screen contained only 32 words.  The admonition "By creating an Uber account, you agree to the <u>TERMS OF SERVICE & PRIVACY POLICY</u>" was the only complete sentence on the page and comprised nearly half of all the words on the screen.  It was visible without scrolling, centered on the screen, set off from the rest of the text and buttons by ample negative space, and contrasted sharply with the white background.  Moreover, the hyperlink "<u>TERMS OF SERVICE & PRIVACY POLICY</u>" was underlined and capitalized, and was the only bright blue text on the screen.

The Court's conclusion that the text and hyperlink were "barely legible" (DE 11) appears to have been based on a "scaled down," low resolution, black and white image *the Court itself* created.  DE 126 at 11; *compare id*. at 31, *with* Mi Decl., Ex. A, DE 92-2 at 1.  No party has authenticated this image as a representative example of how the text of Uber's app would have appeared.[2]  On its face, the image is at odds with how text appears on a high resolution, backlit, color screen, such as that of the Samsung Galaxy S5 smartphone Plaintiff used to register with Uber.  *See* Decl. of Vincent Mi in Support of Defs.' Motion to Stay.  The text and hyperlink Plaintiff encountered would have been—and were—perfectly legible on his smartphone, *see id*., and Plaintiff has never argued that he was unable to read the text on Uber's registration screen.  Indeed, that position would be difficult to square with his operation of a smartphone, since users

---

[2] Uber has submitted a higher resolution, color image of the confirmation screen, scaled to the same size as the Samsung Galaxy S5's screen.  Decl. of Vincent Mi in Support of Defs.' Motion to Stay, at 3 & Ex. A.

frequently must view small text in order to successfully operate the phone and its applications. The extraordinarily high resolution of modern smartphones means that even substantially smaller text would have been perfectly legible.  For this reason, courts' experience with paper contracting is inapt when applied to users' interactions with smartphones and the legibility of smartphone text.  *See* DE 126 at 12 (observing that the text in Uber's confirmation screen was rendered in "no greater than 6-point font").

### 1.     Uber's Hyperlink Was Sufficiently Conspicuous

The text and hyperlink on Uber's registration screen are much more conspicuous than others that district courts in this Circuit have held create valid electronic agreements.  The district court in *Fteja v. Facebook* enforced an electronic agreement containing an admonition and hyperlink that were far less conspicuous than the admonition and hyperlink in this case.  The court summarized Facebook's sign-up process as follows:

> A putative user is asked to fill out several fields containing personal and contact information.  *See* http://www.facebook.com.  The putative user is then asked to click a button that reads "Sign Up." After clicking this initial "Sign Up" button, the user proceeds to a page entitled "Security Check" that requires a user to reenter a series of letters and numbers displayed on the page.  Below the box where the putative user enters that letter-number combination, the page displays a second "Sign Up" button similar to the button the putative user clicked on the initial page.  The following sentence appears immediately below that button: "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service."  The phrase "Terms of Service" is underlined, an indication that the phrase is a hyperlink . . . .

*Id*. at 834–35.  The phrase "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service" was rendered in small text that does not appear to have been any larger than the text of Uber's analogous admonition in this case.  *See Fteja*, No. 11-cv-918 (RJH), DE 12 at 17; *Fteja*, 841 F. Supp. 2d at 834 (relying on screenshots submitted at Docket Entry 12).  Facebook's registration screen contained over 70 words and multiple complete sentences that did not pertain to the Terms of Service.  *See Fteja*, No. 11-918-RJH, DE 12 at 17 (S.D.N.Y. Apr. 18,

2011).  The hyperlink was not set off from the rest of the text, and there is no indication it was displayed in a different color than the rest of the text.  *See id*.  A court in this district nonetheless enforced a forum selection clause contained in Facebook's Terms of Use, noting that "[s]everal other courts have reached a similar conclusion on similar facts."  *Fteja*, 841 F. Supp. 2d at 840 (citing cases).

In addition, the placement of the hyperlink to the Rider Terms within the Uber App is virtually identical to the placement of the hyperlink in the electronic agreement in *Starke v. Gilt Groupe, Inc.  Compare Gilt Grp.*, No. 13-cv-5497-LLS, DE 14-1 at 2 (S.D.N.Y. Apr. 24, 2014) (Ex. A to Decl. in Support of Def.'s Motion to Dismiss), *with* Decl. of Vincent Mi in Support of Uber's Motion to Compel Arbitration, DE 92-1, ¶¶ 3–5 & Ex. A.  In *Gilt Groupe*, the plaintiff was prompted to "Sign up for a free, exclusive membership" by entering his email address in a field located directly above an orange button that read "Shop Now!"  *See* 2014 WL 1652225, at *1; *Gilt Grp.*, No. 13-cv-5497-LLS, DE 14-1 at 2 (Ex. A to Decl. in Support of Def.'s Motion to Dismiss).  At the bottom of the registration screen, below both the orange button and a blue button reading "Login with Facebook," and below text reading "We will never post on your behalf without first obtaining your permission," was a statement that "By joining Gilt through email or Facebook sign-up, you agree to the **Terms of Membership** for all Gilt Groupe sites."  *See id*.  The text reading "**Terms of Membership**" was a hyperlink that would bring up the "Gilt Terms and Conditions."  *Gilt Grp.,* 2014 WL 1652225, at *1.  The text was significantly smaller than the other text on the Gilt Groupe registration screen.  *See Gilt Grp.*, No. 13-cv-5497-LLS, DE 14-1 at 2 (Ex. A to Decl. in Support of Def.'s Motion to Dismiss).  The Court nonetheless enforced an arbitration agreement contained in the terms of membership, reasoning that "[r]egardless of whether he actually read the contract's terms, Starke was directed

exactly where to click in order to review those terms, and his decision to click the 'Shop Now' button represents his assent to them." *Gilt Grp.*, 2014 WL 1652225, at *3.

Similarly, in *Nicosia v. Amazon.com, Inc.*, 84 F. Supp. 3d 142, the placement of the hyperlink on Amazon's checkout page was much more obscure than the hyperlink in Uber's registration screen. *See Nicosia*, No. 14-4513-SLT, DE 53-3, ¶ 8 & Ex. C (E.D.N.Y. Dec. 24, 2014). Amazon's checkout page was cluttered with multiple promotional offers, buttons, and hyperlinks, all competing for the user's attention. It contained fields completely unrelated to any terms or conditions, allowing the user to change the shipping address and payment method; choose a delivery option and shipping preference; and asked whether the user wanted to "Use Chase Ultimate Rewards," or "try Amazon Locker," or sign up for "Amazon Prime." *See Nicosia*, No. 14-cv-4513 (SLT), DE 53-3, ¶ 8 & Ex. C. In all, the page contained well over 200 words of text. *See id*. A user had to sift through several admonitions and offers on the page to discover two sentences regarding Amazon's conditions of use. One read "By placing your order, you agree to Amazon.com's privacy notice and conditions of use." The other read, simply, "By placing your order, you agree to all terms found here," and included a hyperlink to Amazon's Conditions of Use. *See id*. Neither sentence was anywhere near the "Place your order" button. *See id*. The relative font size of this text compared to other text on Amazon's page is not meaningfully distinguishable from the relative font size of Uber's hyperlink. *Compare Nicosia*, No. 14-cv-4513 (SLT). DE 53-3, ¶ 8 & Ex. C, *with* Decl. of Vincent Mi in Support of Uber's Motion to Compel Arbitration, DE 92-1, ¶¶ 3–5 & Ex. A. The district court nonetheless described Amazon's hyperlink as "conspicuous," and held that the plaintiff "assented, each time he made a purchase on Amazon.com, to be bound to the terms of the then-current Conditions of Use," including an arbitration clause contained therein. *Nicosia*, 84 F. Supp. 3d at 152–53.

Because Uber's admonition and hyperlink were no less conspicuous than the admonitions and hyperlinks in these and several other cases, *see, e.g.*, *Cullinane*, 2016 WL 3751652; *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1069 (S.D. Cal. 2015); *Crawford v. Beachbody, LLC*, No. 14-1583-GPC-KSC, 2014 WL 6606563, at *2–3 (S.D. Cal. Nov. 4, 2014), it is likely that the Second Circuit will conclude that Plaintiff was on inquiry notice of the existence of the Rider Terms.

### 2.      The Wording of Uber's Hyperlink Was Not Ambiguous

There also was nothing "obscur[e]" about the wording of the hyperlink to the Terms, which was accurately labeled "Terms of Service."  DE 126 at 26.  The Court reasoned that it could not "simply assume that the reasonable (non-lawyer) smartphone user is aware of the likely contents of 'Terms of Service,'" and faulted Uber because its hyperlink did not inform users that the Terms contained an arbitration clause.  DE 126 at 26–27.  However, Defendants are aware of no cases holding that a hyperlink must disclose that the contract contains an arbitration clause.  Nor are Defendants aware of any cases requiring a separate admonishment that a company's terms of use contain an arbitration clause.  To the contrary, any such requirement would be preempted by the FAA, as both the U.S. and California Supreme Courts have held.  *See DIRECTV*, 136 S. Ct. at 471; *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2308–12 (2013); *Sanchez*, 61 Cal. 4th at 914–15.  As Defendants argued in their motions to compel arbitration, requiring special, more stringent disclosure rules for arbitration agreements runs afoul of the FAA's command that "courts must place arbitration agreements on an equal footing with other contracts."  *Concepcion*, 563 U.S. at 339.  The relevant inquiry is whether Uber's electronic agreement placed users on inquiry notice that by registering for an account they were assenting to the Rider Terms.  After receiving such notice, it was incumbent

on users to read those terms.[3]  *See Specht*, 306 F.3d at 30 ("A party cannot avoid the terms of a

contract on the ground that he or she failed to read it before signing.") (internal quotation marks

omitted).

Numerous cases arising in nearly identical contexts support Uber's position that it was

not required to include a reference to the arbitration clause in the text of its confirmation page, as

long as it both included a conspicuous link to the Rider Terms and provided constructive notice

that creating an Uber account conveyed assent to those terms.  *See, e.g.*, *Cullinane*, No. 14-

14750, 2016 WL 3751652 at *2 (enforcing agreement with hyperlink labeled "Terms of

Service"); *Fteja*, 841 F. Supp. 2d at 835 (enforcing agreement with hyperlink labeled "Terms of

Service").

### B.    Plaintiff Affirmatively Assented By Clicking "Register"

The Court focused on the fact that Uber users "need not click on any box stating 'I agree'

in order to proceed to use the Uber app," asserting that "courts have repeatedly made note of

[this feature] in declining to find that an electronic contract was formed."  DE 126 at 22–23

(citing *Nguyen*, 763 F.3d at 1176; *Specht*, 306 F.3d at 22–23; *Savetsky v. Pre-Paid Legal Servs.*,

*Inc.*, 14-cv-03514, 2015 WL 604767, at *4 (N.D. Cal. Feb. 12, 2015)).  However, none of the

cases the Court cited considered the kind of agreement at issue here, nor did those courts broadly

conclude that an "I Agree" checkbox is a necessary prerequisite to valid contract formation.  All

of the cases the Court cited in this passage involved agreements that "do[] not require the user to

---

[3]  The Court faulted Uber because the hyperlink labeled "<u>TERMS OF SERVICE & PRIVACY
POLICY</u>" took users to a page containing a link to the Rider Terms and a link to the Privacy
Policy, rather than directly to the Rider Terms.  The Second Circuit is unlikely to conclude
that this was a meaningful "hurdle[]" to a user's ability to access the terms, since a user who
clicked on the hyperlink would undoubtedly have constructive notice, and would likely have
actual notice, that registering for an account conveyed assent to the Rider Terms.
So informed, a user could not plausibly contend that being forced to click on an additional,
clearly labeled hyperlink vitiated her assent.

manifest assent to the terms and conditions"—classic browsewrap agreements.  *Nguyen*, 763 F.3d at 1176.  The agreements in the cases relied on by the Court are readily distinguishable from the agreement presented here, where, as the Court acknowledged, a user must click a "Register" button to complete the Uber registration process, and the button is accompanied by the admonition that "By creating an Uber account, you agree to the Terms of Service & Privacy Policy."  DE 126 at 12.

Moreover, in one case the Court cited, *Nguyen v. Barnes & Noble Inc.*, 763 F.3d at 1175–76, the Ninth Circuit explicitly *distinguished* cases like this one, "where the browsewrap agreement resembles a clickwrap agreement."  The Ninth Circuit observed that "[w]ere there any evidence in the record that [plaintiff] . . . was required to affirmatively acknowledge the Terms of Use before completing his online purchase, the outcome of this case might be different."  In support, it cited *Fteja v. Facebook, Inc.* as a case where "the user [was] required to affirmatively acknowledge the agreement before proceeding with use of the website."  *Nguyen*, 763 F.3d at 1176 (citing *Fteja*, 841 F. Supp. 2d. at 838–40).  The agreement in *Fteja* was a hybrid clickwrap agreement that closely resembles the agreement in this case.  The agreement there did not require that a user click "I agree," but instead featured a notice stating that "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service."  The court found that the user assented to a forum selection clause by clicking "Sign Up."  *Fteja*, 841 F. Supp. 2d. at 838–40.  Thus, the Second Circuit is likely to conclude that *Nguyen supports* Defendants' argument that Uber's electronic agreement *does not* include the features of browsewrap agreements that courts have viewed with skepticism.

Contrary to the Court's assertion that courts have "repeatedly" declined to enforce agreements where a user was not explicitly required to click "I agree," numerous district courts have enforced electronic agreements that closely mirror the electronic agreement in this case.

14

*See, e.g.*, *Fagerstrom*, 141 F. Supp. 3d at 1068 (plaintiff assented by clicking "Place your order" button); *Gilt Grp., Inc.*, No. 13-cv-05497-LLS, 2014 WL 1652225, at *2 (S.D.N.Y. Apr. 24, 2014) (plaintiff assented by clicking "Sign Up" button); *Crawford*, No. 14-1583-GPC-KSC, 2014 WL 6606563, at *2–3 (plaintiff assented by clicking "Place Order" button); *Nicosia*, 84 F. Supp. 3d at 150 (plaintiff assented by clicking "Place your order"); *Fteja*, 841 F. Supp. 2d at 834 (plaintiff assented by clicking "Sign Up" button).

The sheer number of district court decisions supporting Uber's position alone strongly suggests that the Second Circuit may resolve this issue of first impression in Uber's favor.

### C.     The FAA Preempts Any Purported Requirement That An Agreement Draw Special Attention To An Arbitration Provision

In addition, there is a substantial possibility that the Second Circuit will conclude—consistent with the overwhelming weight of authority, including the Supreme Court's statements on this point—that an agreement need not draw special attention to the fact that it contains an arbitration agreement to be deemed enforceable.   Indeed, such a requirement would be preempted by the Federal Arbitration Act, and would flatly contradict both federal and California law.  *See DIRECTV*, 136 S. Ct. at 471; *Italian Colors Rest.*, 133 S. Ct. at 2308–12; *Concepcion*, 563 U.S. at 339; *Sanchez*, 61 Cal. 4th at 914–15.[4]

The Court's order suggests repeatedly that Plaintiff did not assent to the Rider Terms, in part, because the admonition and hyperlink to the Terms on the registration screen did not draw special attention to that fact that Plaintiff was agreeing to arbitrate disputes.  *See, e.g.*,

---

[4]  Defendants dispute the Court's ruling that "California law applies to the User Agreement." DE 126 at 9.  However, given the Court's finding that it "does not view the choice between California law and New York law as dispositive with respect to the issue of whether an arbitration agreement was formed," and that the same result would be reached under New York law, DE 126 at 7, Defendants assume that California law applies for purposes of this motion.  Defendants expressly reserve their rights to assert that New York law applies for any other purpose.

DE 126 at 17 ("[Meyer] could sign up for Uber by clicking on the 'Register' button without explicitly indicating his assent to the terms and conditions that included the arbitration provision."), 26–27 ("The reasonable user might be forgiven for assuming that 'Terms of Service' refers to a description of the types of services that Uber intends to provide, not to the user's waiver of his constitutional right to a jury trial or his right to pursue legal redress in court.").  The order further states that the arbitration provision's placement "several pages" into the Terms without a special heading—other than "Dispute Resolution" in boldface—was not sufficiently "prominent" and constituted "a further barrier to reasonable notice." *Id.* at 27–28.

In *Concepcion*, however, the Supreme Court repudiated rules "that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue" as preempted by the FAA.  563 U.S. at 339.  This prohibition applies to any rule purporting to require *special placement* of an arbitration provision within a contract or *special formatting* to draw more attention to an arbitration provision than to other provisions of the contract.  *See, e.g.*, *Doctor's Assocs.*, 517 U.S. at 684, 687–88 (holding that the FAA preempted a state statute requiring arbitration clauses to be prominently identified in underlined capital letters on the first page of a contract).  The California Supreme Court also has rejected the notion that a company has any "obligation to highlight the arbitration clause of its contract . . . [or] to specifically call that clause to [another party's] attention," describing any such requirement as "preempted by the FAA." *Sanchez*, 61 Cal. 4th at 914–15.

This Court's ruling contravenes the FAA's purpose to place arbitration agreements on equal footing with other contracts and the requirement that federal courts resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).  This is because the FAA enacted "a liberal federal policy favoring arbitration agreements" (*id.* at 24), and rendered unlawful the

16

"widespread judicial hostility to arbitration," *Italian Colors Rest.*, 133 S. Ct. at 2308–09; *see also*

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76

(1989) ("[when] applying general state-law principles of contract interpretation to the

interpretation of an arbitration agreement within the scope of the Act . . . due regard must be

given to the federal policy favoring arbitration").   California law of arbitrability reflects an

equally "strong public policy in favor of arbitration as a speedy and relatively inexpensive means

of dispute resolution."   *Saint Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal. 4th 1187, 1204

(2003).

## II.   DEFENDANTS WILL SUFFER IRREPARABLE HARM ABSENT A STAY

If litigation proceeds in this Court while Defendants' appeals are pending, Defendants

will face serious and irreparable harm that far outweighs any inconvenience to Plaintiff.

The "basic purposes of arbitration" are "to resolve disputes speedily and to avoid the expense

and delay of extended court proceedings." *Fed. Com. & Nav. Co. v. Kanematsu-Gosho, Ltd.*,

457 F.2d 387, 389 (2d Cir. 1972).   Yet if this Court denies a stay, and the Second Circuit

reverses the Court's order and compels arbitration, the substantial time and resources that

Defendants and this Court will have devoted to litigating this dispute during the appeal can never

be recovered.

While monetary expenses incurred in litigation are generally not considered irreparable

harm, *see F.T.C. v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980), requiring parties to

proceed to trial on potentially arbitrable claims pending appeal imposes injuries on appellants

that are fundamentally different from the normal "expense and annoyance of litigation," *id*.   It is

precisely this "expense and annoyance" parties seek to *avoid* by agreeing to bilateral arbitration.

*See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010) ("In bilateral

arbitration, parties forego the procedural rigor and appellate review of the courts in order to

realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes.").  Therefore, it is not "[m]ere litigation expense" (*Standard Oil*, 449 U.S. at 244) that will injure Defendants if this litigation proceeds; Defendants will be injured by the loss of the opportunity to reap the advantages of arbitration their appeal seeks to secure—advantages that federal policy emphatically favors, *Moses H. Cone*, 460 U.S. at 24.  If a party "must undergo the expense and delay of a trial before being able to appeal, the advantages of arbitration—speed and economy—are lost forever."  *Alascom*, 727 F.2d at 1422.  For this reason, if this litigation proceeds while Defendants' appeals are pending, "there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied," *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999).[5]  If the Second Circuit concludes that Plaintiff agreed to arbitrate this dispute, Defendants will have lost irretrievably the benefits of arbitration to which they were entitled.

As this Court has suggested, Congress recognized that orders related to arbitration—which touch on the fundamental question of which forum has jurisdiction to hear the claims—differ in kind from ordinary interlocutory orders.

> [T]he fact that Congress made provision in section 16 for an interlocutory appeal from a denial of a stay pending arbitration will usually tilt the balance in favor of granting such a stay whenever doing otherwise would effectively deprive the appellant of the possibility of having the underlying controversy presented to an arbitrator in the first instance.  A district court must be careful not to undermine

---

[5]  *See also Kansas Gas & Elec. Co. v. Westinghouse Elec. Corp*., 861 F.2d 420, 422 (4th Cir. 1988) ("We hold that orders denying arbitration do have an injunctive effect and have 'serious, perhaps irreparable, consequence.'  The order is injunctive because it enjoins proceedings in another tribunal.  It has serious consequences because of the 'irreparable harm that exists when arbitration is denied ab initio'") (citation omitted); *Alascom*, 727 F.2d at 1422 (if a party "must undergo the expense and delay of a trial before being able to appeal, the advantages of arbitration—speed and economy—are lost forever.  We find this consequence serious, perhaps irreparable") (citations and internal quotation marks omitted).

this policy by pushing forward with a case in the face of a pending appeal from the denial of arbitration, except in more compelling circumstances than are here presented.

*Cendant Corp.*, 72 F. Supp. 2d at 343; *see also Jock*, 738 F. Supp. 2d at 447 ("[T]he likelihood of unnecessary, duplicative litigation can warrant a stay.").

The irreparable harm that Defendants will suffer in the absence of a stay is well illustrated by *Jock v. Sterling*, where this Court wisely stayed proceedings pending the Second Circuit's resolution of a significant arbitration-related legal issue. 738 F.Supp.2d at 447. Nine months later, a divided panel of the Second Circuit reversed the order that was the subject of the interlocutory appeal and remanded to this Court with instructions to confirm the arbitration award and thereby close the case. *Jock v. Sterling Jewelers, Inc.*, 646 F.3d 113, 115 (2d Cir. 2011). Had this Court not stayed proceedings pending appeal in *Jock*, the parties and the Court might have expended considerable time and expense litigating issues later rendered moot by the Second Circuit's intervening order. *See Sutherland*, 856 F. Supp. 2d at 644 ("[C]onsiderations of judicial economy counsel, as a general matter, against investment of court resources in proceedings that may prove to have been unnecessary.").

The potential harm to Defendants is even greater where, as here, Plaintiff intends to seek class certification. The arbitration clause at issue contains a waiver of class arbitration, which is valid and enforceable under Supreme Court precedent, *see Italian Colors Rest.*, 133 S. Ct. at 2309; *Concepcion*, 563 U.S. at 344. Therefore, the "failure to grant a stay may irrevocably deprive [Defendants] of at least a portion of that which [they] unquestionably bargained for, a proceeding designed (at least in theory if not always in practice) to avoid the far greater expenses and other burdens attendant on class litigation (or even class-wide arbitration)." *Sutherland*, 856 F. Supp. 2d at 643. Absent a stay, Uber and Mr. Kalanick face the enormous expense of class certification discovery, motion practice, and, regardless of whether a class is certified, likely

appellate review.  The delay and expense of such litigation is immeasurably more burdensome than the efficient and relatively inexpensive individual arbitration process that would follow a successful appeal.  This significant expenditure of judicial and party resources will be lost irrevocably if the Second Circuit concludes that Plaintiff agreed to arbitrate his claims.  *Satcom Int'l Grp. PLC v. Orbcomm Int'l Partners, L.P.*, 55 F. Supp. 2d 231, 236–37 (S.D.N.Y. 1999).

## III.   PLAINTIFF WILL SUFFER NO HARM SHOULD THE COURT STAY PROCEEDINGS

On the other hand, should the Court stay this case pending appeal, the only conceivable harm Plaintiff Spencer Meyer could suffer is delay in recovering his requested monetary relief in connection with the handful of trips he has booked through the Uber app.  As Meyer presumably no longer uses the Uber app, any delay in issuance of the declaratory and other relief claimed in his Complaint cannot possibly impair a concrete, identifiable, personal interest of Meyer's.  And any delay in Meyer recovering a small, monetary judgment "does not compare to the unjustifiable waste of time and money that would result from proceeding with this litigation before the [Second] Circuit decides whether this dispute is even subject to judicial resolution." *Mundi v. Union Security Life Ins. Co.*, No. F-06-1493-OWW-TAG, 2007 WL 2385069, at *6 (E.D. Cal. Aug. 17, 2007).  Moreover, such an argument presumes that Plaintiff will prevail on the merits of his claim—a presumption that, at this point, would operate with "extreme unfairness to the defendant," as courts have recognized.  *See, e.g.*, *Roe v. SFBSC Management, LLC*, No. 14-03616-LB, 2015 WL 1798926, at *4 (N.D. Cal. Apr. 17, 2015) (accepting defendant's argument that "without having received any merits evidence, the Court cannot reasonably predicate the denial of a stay on a prediction that Plaintiffs will prevail on the merits").  For this same reason, any claim by Plaintiff that the Court should weigh the supposed interests of unnamed, putative class members is without merit.  Plaintiff has not yet moved to

certify a class, and any presumption that Plaintiff will ultimately succeed in doing so would subvert the carefully constructed requirements of Rule 23.

## IV.    THE PUBLIC INTEREST FAVORS A STAY

Public policy interests also support a stay.  First, the public has an interest in the judicial economy and efficiency that would result from a stay.  *See Estate of Heiser v. Deutsche Bank Trust Co*., No. 11-1608-AJN MHD, 2012 WL 2865485, at \*5 (S.D.N.Y. July 10, 2012).   All parties and the judiciary risk wasting enormous amounts of time and resources preparing for trial while the determination regarding arbitration is under appellate review.  *See, e.g.*, *In re United Health Care Org.*, 210 B.R. 228, 234 (S.D.N.Y. 1997) (finding denial of exemption from injunction staying future claims to be in the public interest of "conserving judicial resources," particularly where the case involved a number of "thorny legal issues," meaning "there can be no guarantee that [the court's] decisions would be upheld on appeal").  Defendants acknowledge that there is also a "public interest in prompt resolution of litigation." *Jock*, 738 F. Supp. 2d at 449.  But that interest is far from dispositive where, as here, Defendants' appeal presents a serious question of first impression concerning important issues that the Second Circuit has yet to address.  *See id*.  If the Second Circuit ultimately determines that this dispute is subject to arbitration, any determination by this Court of the antitrust claims would be irrelevant, and the use of scarce judicial resources expended to reach that determination wasted.

Furthermore, proceeding with this lawsuit may ultimately involve additional motions to compel arbitration.  *See Estate of Heiser v. Deutsche Bank Trust Co. Ams.*, No. 11-1608-AJN-MHD, 2012 WL 2865485, at \*4–5 (S.D.N.Y. July 10, 2012) (granting stay pending resolution of two related appeals where they could provide "guidance as to the quality, nature, and validity of [plainitffs'] claims, effectively expediting the resolution of . . . this proceeding" and "avoid the need for unnecessary litigation").  Plaintiff has moved to join additional plaintiffs in this lawsuit,

some of whom may contend that they registered for accounts with Uber under similar circumstances (and some of whom may have registered under circumstances this Court has already suggested may be materially distinguishable).   The Court's resolution of any future motions to compel arbitration may benefit from the Second Circuit's guidance.   In addition, the question whether Plaintiff's proposed class may be certified will turn, in part, on the validity of absent class members' arbitration agreements.   And if a class were to be certified (which it should not be, particularly in light of the arbitration agreements), Defendants will move to compel arbitration of the absent class members' claims.   The parties will have to brief, and this Court would have to rule on, all such motions.   The significant effort, time, and expense this will entail will all be wasted if the Court decides these motions before the Second Circuit decides whether Mr. Meyer agreed to arbitrate with Uber.   Granting a stay pending appeal therefore would be "entirely in keeping with the principle of judicial economy." *Satcom Int'l Grp.*, 55 F. Supp. 2d at 236–37; *see also Sutherland*, 856 F. Supp. 2d at 644; *Payne v. Jumeirah Hosp. & Leisure (USA) Inc.*, 808 F. Supp. 2d 604, 604 (S.D.N.Y. 2011).

Second, the public interest in promoting arbitration, protected by Congress in the FAA after "centuries of judicial hostility to arbitration agreements," *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 225 (1987) (internal quotations omitted), favors a stay here.   *See Arciniaga v. GMC*, 460 F.3d 231, 234 (2d Cir. 2006) ("[I]t is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we 'have often and emphatically applied.'") (quoting *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995)).   Granting a stay pending appeal would promote the FAA's often-espoused, Congressionally mandated public policy of conserving resources.   Moreover, Congress' enactment of the immediate right of appeal of the denial of arbitration under the FAA speaks volumes as to its view that the public would best be served by having that issue decided before

the litigation itself proceeds apace. *See Cendant Corp.*, 72 F. Supp. 2d at 343 ("[T]he fact that Congress made provision in section 16 for an interlocutory appeal from a denial of a stay pending arbitration will usually tilt the balance in favor of granting such a stay whenever doing otherwise would effectively deprive the appellant of the possibility of having the underlying controversy presented to an arbitrator in the first instance.").

For these reasons, the public interest heavily favors a stay pending appeal.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion and stay all proceedings until the conclusion of the pending appeals.


Dated:  August 5, 2016                          Respectfully submitted,

                                                /s/  Theodore J. Boutrous, Jr.
                                                     Theodore J. Boutrous Jr.

                                                GIBSON, DUNN & CRUTCHER LLP

                                                Theodore J. Boutrous, Jr.
                                                Daniel G. Swanson
                                                Nicola T. Hanna
                                                Joshua S. Lipshutz
                                                333 South Grand Avenue
                                                Los Angeles, CA  90071
                                                Tel:  (213) 229-7000
                                                Fax:  (213) 229-7520
                                                TBoutrous@gibsondunn.com
                                                DSwanson@gibsondunn.com
                                                NHanna@gibsondunn.com
                                                JLipshutz@gibsondunn.com

                                                Reed Brodsky
                                                200 Park Avenue
                                                New York, NY  10166-0193
                                                Tel: (212) 351-4000
                                                Fax:  (212) 351-4035
                                                RBrodsky@gibsondunn.com

Cynthia E. Richman
1050 Connecticut Avenue, N.W.
Washington, DC  20036
Tel:  (202) 955-8500
Fax:  (202) 467-0539
CRichman@gibsondunn.com

*Attorneys for Defendant Uber Technologies, Inc.*

BOIES, SCHILLER & FLEXNER LLP

Karen L. Dunn
William A. Isaacson
Ryan Y. Park
5301 Wisconsin Avenue, NW
Washington, DC 20015
Tel: (202) 237-2727
Fax: (202) 237-6131
kdunn@bsfllp.com
wisaacson@bsfllp.com
rpark@bsfllp.com

Alanna C. Rutherford
Peter M. Skinner
Joanna C. Wright
575 Lexington Avenue, 7th Floor
New York, NY 10022
Tel: (212) 446-2300
Fax: (212) 446-2350
arutherford@bsfllp.com
pskinner@bsfllp.com
jwright@bsfllp.com

*Attorneys for Defendant Travis Kalanick*

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 5, 2016, I filed and therefore caused the foregoing document to be served via the CM/ECF system in the United States District Court for the Southern District of New York on all parties registered for CM/ECF in the above-captioned matter.

<u>/s/ Theodore J. Boutrous, Jr.</u>
Theodore J. Boutrous, Jr.