UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SPENCER MEYER, individually and on behalf of those similarly situated,

Plaintiffs,

-against-

TRAVIS KALANICK, and UBER TECHNOLOGIES, INC.,

Defendants.

---

1:15 Civ. 9796 (JSR)

ECF Case

---

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STAY JUDICIAL PROCEEDINGS

---

**CONSTANTINE CANNON LLP**
Matthew  L. Cantor
Ankur Kapoor
David A. Scupp
335 Madison Avenue
New York, New York 10017

**MCKOOL SMITH**
John Briody
James H. Smith
One Bryant Park, 47th Floor
New York, New York 10036

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes
Ellen Meriwether
1101 Market Street, Suite 2650
Philadelphia, PA  19107

**HARTER SECREST & EMERY LLP**
Brian Marc Feldman
Jeffrey A. Wadsworth
Edwin M. Larkin
A. Paul Britton
1600 Bausch & Lomb Place
Rochester, New York 14604

**ANDREW SCHMIDT LAW PLLC**
Andrew Arthur Schmidt
97 India Street
Portland, Maine 04101

*Attorneys for Plaintiff*
*Spencer Meyer*

August 19, 2016

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 3

    I.      LEGAL STANDARDS ................................................................. 3

    II.     DEFENDANTS HAVE NOT MADE THE REQUISITE STRONG SHOWING OF LIKELY SUCCESS ON THE MERITS OF THEIR APPEAL ...................... 4

          A.     The Order applies well-established standards of contract formation.......... 6

          B.     The Order's factual findings will be afforded substantial deference .......... 8

          C.     The Order does not put arbitration contracts on an "unequal footing" from other contracts. ................................................................... 9

    III.    DEFENDANTS WILL NOT SUFFER IRREPARABLE HARM ABSENT A STAY ....................................................................................... 10

    IV.    A STAY WILL HARM PLAINTIFF AND THE PROPOSED CLASS ............. 12

    V.    THE PUBLIC INTEREST FAVORS DENIAL OF A STAY ............................ 13

CONCLUSION ....................................................................................................... 15

i

## TABLE OF AUTHORITIES

*Adams v. Suozzi*
  393 F. Supp.2d 175, 177 (E.D.N.Y. 2005) ..............................................................11

*Berkson v. Gogo L.L.C.*,
  97 F. Supp. 3d 359, 398, 400, 404 (E.D.N.Y. 2015) ......................................... 6, 7

*Cendant Corp. v. Forbes*,
  72 F. Supp. 2d 341 (S.D.N.Y. 1999) ...................................................................... 3

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*,
  598 F.3d 30 (2d Cir. 2010) ................................................................................ 4, 5

*DIRECTV, Inc. v. Imburgia*,
  136 S. Ct. 463, 465-66 (2015) ......................................................................... 9, 10

*Doctor's Assocs. v. Casarotto*,
  517 U.S. 681, 683 (1996) ................................................................................... 10

*FTC v. Standard Oil Co.*,
  449 U.S. 232, 244 (1980).................................................................................2, 11

*Fteja v. Facebook, Inc.*,
  841 F. Supp. 2d 829 (S.D.N.Y. 2012) .............................................................. 7, 8

*In re Elec. Books Antitrust Litig.*,
  11 Md. 2293, 2014 U.S. Dist. LEXIS 57473, at *12 (S.D.N.Y. Apr. 24, 2014) ................... 13

*In re Republic Airways Holdings Inc.*,
  No. 16-cv-3315 (KBF), 2016 U.S. Dist. LEXIS 60316, at *21 (S.D.N.Y. May 6, 2016) ........ 3

*Jock v. Sterling Jewelers, Inc.*,
  738 F. Supp. 2d 445, 447 (S.D.N.Y. 2010) ...................................................... 3, 5

*Kobach v. U.S. Election Assistance Comm'n*,
  No. 13-cv-4095-EFM-TJJ, 2014 U.S. Dist. LEXIS 62957, at *12 (D. Kan. May 7, 2014) ... 14

*Long v. Provide Commerce, Inc.*,
  245 Cal. App. 4th 855, 866 (2016) ....................................................................... 7

*Motorola Credit Corp. v. Uzan*,
  388 F.3d 39, 53-55, 65 (2d Cir. 2004) ........................................................ 2, 3, 11

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171, 1175 (9th Cir. 2014) ................................................................... 6

*Nken v. Holder*,
  556 U.S. 418, 434 (2009) ......................................................................... 1, 3, 4

353355.1

*Owens-Corning Fiberglas Corp. v. Moran*,
    959 F.2d 634, 636 (7th Cir. 1992) ........................................................ 11

*PaineWebber, Inc. v. Farnam*,
    843 F.2d 1050, 1051-53 (7th Cir. 1988) ................................................ 11

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393, 403 (2d Cir. 2004) ........................................................... 6

*Renegotiation Bd. v. Bannercraft Clothing Co.*,
    415 U.S. 1, 24 (1974)............................................................................11

*SATCOM Int'l Group Public Ltd. v. ORBCOMM Int'l Partners, L.P.*,
    55 F. Supp. 2d 231, 234-36 (S.D.N.Y. 1999) ........................................ 3

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 (2d Cir. 2012) ............................................................. 5, 8

*Sgouros v. TransUnion Corp.*,
    817 F.3d 1029, 1034 (7th Cir. 2016) ................................................. 5, 7

*Specht v. Netscape Commc'ns. Corp.*,
    306 F.3d 17, 20-21, 26, 31 (2d Cir. 2002) .................................. *passim*

*Starke v. Gilt Groupe, Inc*,
    No. 13-cv-5497, 2014 U.D. Dist. LEXIS 58006 (S.D.N.Y. Apr. 24, 2014)........................7, 8

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)..............................................................................5

*Strougo v. Barclays Public Ltd.*,
    No. 14 Civ. 5797(VM), 2016 U.S. Dist. LEXIS 87071, at *6, 11 (S.D.N.Y. Jul. 5, 2016)  4, 13

*Sutherland v. Ernst & Young L.L.P.*,
    856 F. Supp. 2d 638, 641 (S.D.N.Y. 2012) ........................................... 5

*United States v. Stein*,
    452 F. Supp. 2d 281, 283 (S.D.N.Y. 2006)...........................................11

*Zenith Radio Corp. v. Hazeltine Research*,
    395 U.S. 100, 130-31 (1969) ......................................................... 13, 14

## Other Authorities

Jed S. Rakoff, "The Cure for Corporate Wrongdoing:  Class Actions vs. Individual
    Prosecutions," *The New York Review of Books* (Nov. 19, 2015)...............................................14

353355.1

Plaintiff Spencer Meyer respectfully submits this memorandum of law in opposition to Defendants' Joint Motion to Stay Judicial Proceedings pending the appeal of the Court's July 29, 2016 Order denying Defendants' motions to compel arbitration (the "Order").

<u>PRELIMINARY STATEMENT</u>

Defendants Uber Technologies, Inc. and Travis Kalanick have moved for a stay pending the interlocutory appeal of this Court's thorough 30-page Order denying their motions to compel arbitration.  Defendants' motion does not come close to satisfying any of the legal elements required for the issuance of a stay, and should be denied.

*First*, a stay should be denied because defendants have not made and cannot make a "'strong showing that [they are] likely to succeed on the merits'" of their appeal.  *Nken v. Holder*, 556 U.S. 418, 434 (2009).  Indeed, perhaps signaling their inability to make a "strong showing" of success on the merits, Defendants argue that a "serious questions" standard, applicable to preliminary-injunction cases, applies here.  That is not the law, as the Supreme Court's *Nken* decision demonstrates.  In any event, contrary to Defendants' contention, this case does not raise any novel, serious questions.  In the Order, the Court properly applied well-established principles of contract law—including those set forth in the Second Circuit's seminal decision regarding electronic contracting rendered 14 years ago—in holding that Plaintiff did not assent to the arbitration of disputes with Uber.  *See Specht v. Netscape Commc'ns*, 306 F.3d 17 (2d Cir. 2002) (Sotomayor, J.) (referenced in Order at 3, 10, 15, 16, 18, 19, 23, 25, 28 and 29).  Moreover, the Order is grounded in numerous and detailed factual findings that are subject to the deferential "clearly erroneous" standard on appeal.  Defendants' appeal will likely fail.

Defendants' also argue that they will succeed on the merits because the Order does not place "arbitration contracts on equal footing with all other contracts," Defs.' Mem. of Law in

1

Supp. of Joint Mot. to Stay Jud. Proceedings ("Defs.' Mem.") at 2.  But that simply misreads the Court's Order.  This is not a case where courts considered law that was aimed solely and discriminatorily at arbitration contracts, as was the issue in the cases upon which Defendants rely.  Here, the Court did not apply different contract-formation standards to any particular Uber Term of Service, let alone the Uber arbitration provision.  To the contrary, the Order simply concluded that no agreement had been reached on any of the Terms of Service.

*Second*, Defendants' motion should be denied because they cannot make the critical showing of irreparable harm.  Most of Defendants' arguments about irreparable harm simply protest the cost and burdens of litigation.  But even Defendants have acknowledged that black letter law holds that these legal costs do not equate to irreparable harm.  *See FTC v. Standard Oil of Cal.*, 449 U.S. 232, 244 (1980).

Defendants also argue that they will incur irreparable harm because they will be deprived of the opportunity to defend themselves in an arbitration forum, which they say offers a more efficient dispute resolution procedure.  But that amounts to nothing more than an argument for an automatic stay whenever a district court denies a motion to compel arbitration—an argument directly at odds with the law of this Circuit.  *See* Defs.' Mem. at 5-6 n.1; *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 54 (2d Cir. 2004).  Further, the Court's August 3, 2016 Order and August 10, 2016 Amended Civil Case Management Plan, which requires the case to be trial ready in less than six months, provide for a dispute resolution procedure that is likely more efficient than that which any newly-commenced arbitration would provide.  Simply put, Defendants do not need the extraordinary remedy of a stay to be shielded from irreparable harm:  all of their appellate arguments are preserved, without risk of mootness, and can be made in due course or even after entry of final judgment in this matter.

2

*Third*, a stay is unwarranted because it would substantially harm Plaintiff and putative class members.  Plaintiff seeks injunctive relief, on behalf of a class, to halt the continuing and illegal price-fixing scheme at issue.  Defendants will continue their illegal scheme, causing substantial injuries to future riders, until a resolution of this matter.  A stay will allow for Defendants' price-fixing to continue during any period of delay.

*Finally,* a stay would harm the public interest.  The public will benefit by the continued prosecution of this case, as it offers an efficient class-action mechanism to remedy the overcharge injuries that millions of consumers have incurred.

For these reasons and those discussed more fully below, Defendants' motion for a stay pending appeal should be denied.

### ARGUMENT

## I.    LEGAL STANDARDS

In deciding whether to grant a stay pending appeal, a court considers four factors:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken*, 556 U.S. at 434; *see also Jock v. Sterling Jewelers, Inc.*, 738 F. Supp. 2d 445, 447 (S.D.N.Y. 2010) (Rakoff, J.) ("In evaluating plaintiffs' motion to stay, the Court is guided by the traditional four-factor standard . . . .").[1]  "The burden is on the moving party to establish these elements."  *In re Republic Airways Holdings Inc.*, No. 16-cv-3315, 2016 U.S. Dist. LEXIS

---

[1]    Defendants improperly rely on *Cendant Corp. v. Forbes,* 72 F. Supp. 2d 341 (S.D.N.Y. 1999) (Rakoff, J.), suggesting that a court can issue a stay pending appeal even where it had "previously found [defendant's] arguments wholly unconvincing."  Defs.' Mem. at 4.  *Cendant* relied on *SATCOM Int'l Group PLC v. ORBCOMM Int'l Partners, L.P.*, 55 F. Supp. 2d 231 (S.D.N.Y. 1999), which held that a stay should be entered automatically, unless the appeal was "clearly" "frivolous or abusive," *id.* at 234-36.  But *Cendant* and *SATCOMM* were abrogated by the Second Circuit's decision in *Motorola*, 388 F.3d at 53-55.  *Motorola* held that the FAA does not require an automatic stay pending appeal and that stays are not to be granted merely because an appeal is non-frivolous.  *Id.* at 53 (holding district court properly denied stay where "defendants' appeal was not frivolous").

353355.1

60316, at *21 (S.D.N.Y. May 6, 2016).  "[T]he movant cannot prevail by showing a mere

possibility of success or of harm."  *Strougo v. Barclays PLC*, No. 14-cv-5797 (VM), 2016 U.S.

Dist. LEXIS 87071, at *6 (S.D.N.Y. Jul. 5, 2016) (quotation marks omitted).  As explained

below, Defendants do not come close to meeting their burden of satisfying the *Nken* test.

## II.     DEFENDANTS HAVE NOT MADE THE REQUISITE STRONG SHOWING OF LIKELY SUCCESS ON THE MERITS OF THEIR APPEAL.

Defendants' motion for a stay should be denied because they have not made a "strong

showing that [they are] likely to succeed on the merits."  *Nken,* 556 U.S. at 434.  Indeed, they do

not seriously contend that they can make such a showing at all, arguing instead that merely

presenting "serious questions going to the merits of [their] appeal" should warrant a stay here.

*See* Defs.' Mem. at 5 (internal quotation marks omitted).

Defendants' reliance on a "serious questions" standard is misplaced.  Specifically, they

rely on *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598

F.3d 30 (2d Cir. 2010), in support of their argument that the Court may apply the "serious

questions" standard here.  *Citigroup,* however, did not involve a motion for a stay pending

appeal.  Rather, *Citigroup* held that the district court properly applied the "serious questions"

standard in granting a preliminary injunction to preserve the status quo under the Second

Circuit's sliding-scale standard applicable to such injunctions.[2]

Notably, the Supreme Court made clear in *Nken* that although "[a] stay pending appeal

certainly has some functional overlap with an injunction," they are different forms of relief and

those differences require the application of different standards.  556 U.S. at 428-30 (a stay

"relating only to the conduct or progress of litigation before the court, ordinarily is not

---

[2]     Moreover, the "substantial question" standard additionally requires a showing that the balance of hardships tips decidedly in favor of the movant, as Defendants concede.  *See* Defs.' Mem. at 5.  Yet, the hardships weigh in favor of Plaintiff, not Defendants.  *See infra* 11-14.

353355.1

considered an injunction"). Consequently, neither *Citigroup* nor the "serious questions" standard applies here.[3]

Relying on *Jock*, 738 F. Supp. 2d 445, Defendants further suggest that they do not have to make a "strong showing" of likelihood of success on the merits because, they argue, this case offers an issue of first impression for the Second Circuit. *See* Defs.' Mem. at 6 ("the Second Circuit has yet to weigh in on the validity of electronic contracts formed under these circumstances."). That argument is meritless. Unlike the situation in *Jock*, which involved "the application of a newly minted rule by a sharply divided Supreme Court" overruling the Second Circuit, *see id.* at 447 (referencing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662 (2010)), there has been no recent or intervening decision from the Supreme Court that has modified the well-settled standards for determining contract formation. It was those standards that were central to the Court's holding in the Order.

To the contrary, the seminal decision on the subject of contract formation through Internet commerce, written by then Judge Sotamayor and relied upon by the Court throughout the Order, was issued *14 years ago*. *Specht v. Netscape Commc'ns Corp.,* 306 F.3d 17, 20-21 (2d Cir. 2002) (affirming denial of motion to compel arbitration and stay proceedings in e-commerce case governed by California law). That decision has been followed on numerous occasions. *See e.g., Schnabel v. Trilegiant Corp.,* 697 F.3d 110 (2d Cir. 2012) (affirming order denying motion to compel arbitration in e-commerce case, relied on in Order at 15, 16, 27-29); *Sgouros v. TransUnion Corp.,* 817 F.3d 1029 (7th Cir. 2016) (Wood, C.J.) (affirming denial of motion to compel arbitration, relied on in Order 23, 25, 27); *Nguyen v. Barnes & Noble, Inc.*, 763

---

[3]       The only case relied upon by Defendants that cites the "serious questions" standard in deciding a motion to stay proceedings pending appeal of a denial of a motion to compel arbitration is *Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638 (S.D.N.Y. 2012). There, Magistrate Judge Dolinger failed to follow the Supreme Court's holding in *Nken*, wrongly relying on *Citigroup*.   In any event, *Sutherland* reaffirmed that a movant for a stay pending appeal "cannot prevail by showing a mere possibility of success or of harm."  856 F. Supp. 2d at 641.

F.3d 1171 (9th Cir. 2014) (affirming denial of motion to compel arbitration and stay proceedings in e-commerce case); *Berkson v. Gogo, LLC,* 97 F. Supp. 3d 359 (E.D.N.Y. 2015) (Weinstein, J.) (offering scholarly discussion of relevant case-law concerning contracting over the Internet).

Moreover, *Specht* and its progeny have not created any new standards of contract formation, despite the fact that those cases concern e-commerce. Instead, those cases follow established contract-formation standards that have been applied throughout the history of American jurisprudence. *See Nguyen*, 763 F.3d at 1175 (quoting *Register.com, Inc. v. Verio, Inc.* 356 F.3d 393, 403 (2d Cir. 2004)) ("While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract."); *Sgouros*, 817 F.3d at 1034 (in case concerning e-commerce contracting under Illinois law, "there is no reason to think that Illinois's general contract principles do not apply"). Accordingly, to the extent that *Jock* could be read to warrant stays in cases of "first impression," it does not apply here.

### A.    The Order applies well-established standards of contract formation.

The Court faithfully applied the relevant law in the Order, contrary to Defendants' contentions that "the overwhelming majority of courts nationwide, including numerous district courts both inside and outside this Circuit have enforced electronic agreements nearly identical to the agreement at issue here." Defs.' Mem. at 6. In *Specht,* followed by the Court, the Second Circuit declined to enforce an arbitration provision where it found that the plaintiff did not assent to a software license based merely on the downloading of the software. That was particularly the case where the software license's terms, including its arbitration provision, were not "immediately visible" and the defendant's offer "did not . . . require unambiguous manifestation of assent to those terms." *Specht*, 306 F.3d at 31.

353355.1

Like in *Specht,* Uber's Terms of Use were not immediately visible here.  They would be seen, on the relevant Uber app screen, only after clicking a link entitled "Terms of Service & Privacy Policy," which appeared "in considerably smaller font."  Order at 12 & n.5.  Also like in *Specht,* Plaintiff did not provide his unambiguous assent to Uber's Terms of Service, i.e., the plaintiff "did not need to affirmatively click any box saying that he agreed to Uber's 'Terms of Service.'"  Order at 17.  The facts of this case thus fall squarely within *Specht* and its progeny.  *See Sgouros,* 817 F.3d at 1036 (declining to enforce arbitration provision and holding that "No court has suggested that the presence of a scrollable window containing buried terms and conditions of purchase or use is, in itself, sufficient for the creation of a binding contract . . . ."); *Berkson,* 97 F. Supp. 3d at 404 (declining to enforce arbitration provision when "[t]he design and content of the website, including the home page, did not make the 'terms of use' readily and obviously available" to the plaintiff); *Long v. Provide Commerce, Inc.,* 245 Cal. App. 4th 855, 866 (2016) (declining to enforce arbitration clause); *see also* Order at 21, n.9 (comparing cases where "an electronic agreement was formed" to "the Uber registration process [which] . . . involved a considerably more obscure presentation of the relevant contractual terms").

Defendants' brief merely rehashes arguments from their failed motions to compel, pointing for example to cases like *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y. 2012), which this Court previously considered and distinguished. *See* Order at 16-22; *see also Berkson*, 97 F. Supp. 3d at 398, 400 (criticizing *Fteja*).  Defendants also add some discussion related to *Starke v. Gilt Groupe, Inc.*, No. 13-cv-5497, 2014 U.D. Dist. LEXIS 58006 (S.D.N.Y. Apr. 24, 2014), a case that has no bearing here: it was governed by New York, not California, law, featured different language ("Terms of Membership" rather than "Terms of Service"), and did not juxtapose a large and small font as in this case, but instead used a single, uniform font type

7

and size less likely to obfuscate the linked contractual terms.  *See Gilt Groupe*, No. 13-cv-5497, DE 14-1 at 2 (Ex. A to Decl. in Supp. of Mot. to Dismiss referenced at Defs.' Mem. at 10).  In any event, the district court cases on which Defendants rely are inapposite for the reasons discussed in the Court's opinion, prior briefing, and at oral argument.  This Court has faithfully followed controlling case law, as the Second Circuit will recognize on appeal.

  **B. The Order's factual findings will be afforded substantial deference.**

  Defendants also are unlikely to succeed on the merits of their appeal because the Second Circuit will review the numerous findings of fact set forth in the Order under the deferential "clearly erroneous" standard.  *See, e.g.*, *Specht*, 306 F.3d at 26; *Schnabel*, 697 F.3d at 118-19 ("findings of fact, if any, bearing on [the] question [of whether the parties agreed to arbitrate] are reviewed under a 'clearly erroneous' standard").  As this Court explained, "courts must embark on a fact-intensive inquiry in order to make determinations about the existence of reasonably conspicuous notice in any given case."  Order at 25 (internal quotations omitted).

  This Court did precisely that, making numerous factual findings and ultimately concluding that "in light of all the relevant facts and circumstances," no agreement was formed here.  Order at 29.  Among those factual findings are the following undisputed facts which demonstrate that there was no agreement to arbitrate:

- "[I]t is only by clicking first the hyperlink and then [a] button – neither of which is remotely required to register with Uber and begin accessing its services – that a user can even access the Terms and Condition."  Order at 13.

- "Plaintiff Meyer states that he does not recall noticing the Terms of Service hyperlink when he registered to use Uber and does not believe that he clicked on the hyperlink.  Uber does not contest this statement and the Court finds no basis for a claim that plaintiff Meyer had actual knowledge of the agreement."  Order at 14 (quotations and citations omitted).

- "[T]he User Agreement to which plaintiff Meyer allegedly assented was clearly not a clickwrap agreement.  Mr. Meyer did not need to affirmatively click any box

353355.1

saying that he agreed to Uber's 'Terms of Service.' On the contrary, he could sign up for Uber by clicking on the 'Register' button without explicitly indicating his assent to the terms and conditions that included the arbitration provision." Order at 17.

The Court further found, for example, that "the Terms of Service hyperlink -- its placement, color, size, and other qualities relative to the Uber app registration's screen's overall design -- is simply too inconspicuous to meet the *Specht* standard" in the Second Circuit for finding that there was an agreement to arbitrate. Order at 25-26 (quotations and alterations omitted).

It is highly unlikely that those or any other of the Court's factual findings that underlie the Order will be set aside on appeal.

## C. The Order does not put arbitration contracts on an "unequal footing" from other contracts.

Defendants contend that this Court somehow deviated from the Federal Arbitration Act's protection for arbitral rights by placing arbitration agreements on "unequal footing" from other contracts. Defs.' Mem. at 16. That contention seriously misconstrues the Court's Order.

The FAA "states that a 'written provision' *in a contract* providing for 'settle[ment] by arbitration' of 'a controversy . . . *arising out of' that 'contract* . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 465-66 (2015) (quoting 9 U.S.C. § 2) (emphases added). This language shows that, in order for the FAA's presumption favoring enforcement of arbitration provisions to apply, there must first be a finding that the parties *agreed* to arbitrate disputes. Here, as the Court held, Plaintiff never assented to abide by any of Uber's Terms of Service, let alone Uber's arbitration provision. Thus, the FAA's presumption favoring arbitration is irrelevant.

9

Moreover, the case-law on which Defendants rely regarding discriminatory treatment of arbitration contracts is inapposite.  In *DIRECTV*, a California state court's finding that an arbitration clause was unenforceable was reversed because California jurisprudence and statutes expressly treated arbitration agreements differently from all other kinds of agreements.  In *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 683 (1996) a Montana statute that applied only to arbitration contracts, but not others, was invalidated.  Unlike with the laws at issue in those cases, the Court here did not discriminate against Uber's arbitration provision.  This Court did not differentiate between the absence of assent to any of Uber's "Terms of Service" and the absence of assent with respect to the arbitration provision at issue.  Rather, this Court held that the plaintiff did not assent to *any* of the Terms of Service, including, but not limited to, the arbitration provision.[4]

Defendants fail to make the requisite "strong showing" that they will likely succeed on the merits.  Their motion should be denied.

## III.     DEFENDANTS WILL NOT SUFFER IRREPARABLE HARM ABSENT A STAY.

Defendants will not suffer any irreparable harm by litigating this case pending their interlocutory appeal.  Indeed, despite repeatedly ignoring it in trying to muster arguments in support of their stay motion, Defendants themselves acknowledge the well-settled principle that costs incurred by the stay movant during the litigation process—whether characterized as

---

[4]     Defendants also argue that the Court erred by "criticiz[ing] Uber's failure to draw special attention" to the arbitration provision.  Defs.' Mem. 2 (citing Order at 28).  The Court did acknowledge that "the 'dispute resolution' heading" was bolded, "as is the waiver (in the arbitration context) of the right to a jury trial of class proceeding."  Order at 28.  But the salient problem that the Court identified was the placement of the arbitration provision and *all* of Uber's putative contractual terms in a part of the website which users simply did not need to access, and likely would not access.  *Id.* at 27 ("Additionally, the hurdle for Uber users were not at an end even if they did click on the initial hyperlink.").  As Defendants were moving to enforce the arbitration clause, the Court correctly pointed out that "the placement of the arbitration clause . . . constituted, as a practical matter, a further barrier to reasonable notice."  *Id.* at 28.  Nevertheless, the Court's holding did not focus solely on the arbitration clause:  it held that *none* of Uber's "Terms of Service & Privacy Policy" constituted an enforceable contract with Plaintiff.

10

attorney time, litigation expenses, or resource allocation—do not constitute irreparable harm. *See* Defs.' Mem. at 17; *see also FTC v. Standard Oil Co.*, 449 U.S. 232, 244 (1980) (quoting *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ("[M]ere litigation expenses, even substantial and unrecoupable cost, does not constitute irreparable injury.").[5] Accordingly, Defendants' stay motion cannot be granted simply because they may incur litigation burdens and costs while an interlocutory appeal of the Court's Order is pending. *See, e.g.*, *United States v. Stein*, 452 F. Supp. 2d 281, 283 (S.D.N.Y. 2006) (applying *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 65 (2d Cir. 2004)) (denying motion to stay pending appeal of denial of motion to compel arbitration; "It is doubtful that participation in discovery proceedings in this Court would injure KPMG, let alone irreparably, even if it ultimately prevailed on its claim that it is entitled to arbitration rather than litigate."); *Adams v. Suozzi*, 393 F. Supp. 2d 175, 177 (E.D.N.Y. 2005) (applying *Motorola*) (denying stay pending appeal of denial of motion to compel arbitration).

Aside from their arguments over litigation expenses, Defendants' only other argument for irreparable harm is the "loss of . . . the advantages of arbitration." *See* Defs.' Mem. at 18. But this argument equates to one that there should be an automatic stay whenever a motion to compel arbitration is denied. And as Defendants recognize, Defs.' Mem. at 5-6 n.1, such an argument is dead on arrival because—unlike some other courts of appeals—the Second Circuit has flatly rejected that approach. *See Motorola*, 388 F.3d at 54. Moreover, the only potential advantages of arbitration that Defendants reference aside from potentially (but not necessarily) reduced legal expenses, are those related to the speed and efficiency of the proceeding. *See* Defs.' Mem. at 18

---

[5]         "[T]his principle is so entrenched that sanctions are in order when a litigant seeks urgent relief (such as a stay pending appeal) on the theory that the cost and travail of litigation are irreparable injury." *Owens-Corning Fiberglass Corp. v. Moran*, 959 F.2d 634, 636 (7th Cir. 1992); *see also PaineWebber, Inc. v. Farnam*, 843 F.2d 1050, 1051-53 (7th Cir. 1988) (sanctioning litigant moving to stay pending appeal; "the ordinary incidents of litigating . . . a case are not 'irreparable injury'").

11

(extolling the "speed and economy" of arbitration); *id.* at 20 (referencing the "efficient and relatively inexpensive individual arbitration process"). Here, the purported relative speed of arbitration is not applicable, as it is doubtful that any newly-commenced arbitration will resolve this matter as quickly as this litigation. *See* Order (Aug. 3, 2016) (Dkt. 130) (scheduling final pretrial conference for February 10, 2017).[6]

Defendants' argument that they will suffer irreparable harm absent a stay is also belied by their delay in bringing motions to compel arbitration in the first place. *See* Pls.' Opp'n to Defs.' Mots. to Compel Arb., DE 102, at 1-2, 8, 16-23 (detailing Defendants' delay in bringing motion to compel arbitration). This case was filed in December 2015, and Defendants waited more than five months before moving to compel arbitration. Indeed, in his motion to dismiss, Kalanick stated that he would not bring an arbitration motion *at all* in this case. DE 23 at 21 n.9; DE 28 at 22 n.10. During that time, Defendants expended significant litigation expenses as a sword to try to get this Court to issue a merits decision in their favor (and Plaintiff expended significant litigation expenses to parry). Having lost that fight, Defendants should not now be able to hide behind a concern about litigation expenses to shield them from this Court's process.

**IV.     A STAY WILL HARM PLAINTIFF AND THE PROPOSED CLASS.**

Similar to the public-interest analysis, Plaintiff and the proposed class have a strong interest in resolving this matter and recovering their losses as soon as possible. Among other things, Plaintiff and the class seek injunctive relief to put an end to ongoing anticompetitive

---

[6]     This Court has noted that claims regarding the efficiency and speed of arbitration are often dubious. *See* Hr'g Tr. (Jul. 14, 2016) at 82:6-8 (THE COURT: "[A]lthough one of the main original benefits of arbitration was speed and efficiency, and the sad truth is many arbitrations now go on for years and years . . . .").

harm.  Every day that passes is another day that Plaintiff and the millions of other class members are harmed by Defendants' unlawful conduct.[7]

## V.        THE PUBLIC INTEREST FAVORS DENIAL OF A STAY.

There is a strong public interest in denying the stay and allowing Plaintiff to pursue a prompt resolution of this matter.  *See Strougo v. Barclays PLC*, No. 14-cv-5797, 2016 U.S. Dist. LEXIS 87071, at *11 (S.D.N.Y. Jul. 5, 2016) ("[T]here is a public interest in resolving matters quickly."); *In re Elec. Books Antitrust Litig.*, 11 MD 2293, 12-cv-3394, 2014 U.S. Dist. LEXIS 57473, at *12 (S.D.N.Y. Apr. 24, 2014) ("[C]lass members have a strong interest in being fully compensated for any losses they have suffered.  Likewise, the public interest favors a speedy trial and resolution of this matter.").

Defendants' requested stay would derail efforts to promptly resolve this matter, not to mention the Court's case schedule which calls for the case to be trial ready six months from now. Without the stay, the parties will proceed through fact and expert discovery and substantive motion practice, allowing for the matter to be more efficiently completed.

Moreover, Plaintiff does not bring this antitrust action solely to redress his own harm.  He brings these claims on behalf of millions of consumers who have overpaid, and continue to overpay, for transportation because of Defendants' unlawful price fixing.  The antitrust laws were enacted precisely to encourage the vindication of the public interest in remedying such anticompetitive practices.  *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130-31 (1969) ("[T]he purpose of giving private parties . . . injunctive remedies was not merely

---

[7]      With these substantial harms to Plaintiff and the class, and in the absence of any cognizable harm to Defendants, the balance of the harms tips decidedly in Plaintiff's favor, not Defendants'.  Defendants therefore could not sustain any plausible argument even under the "substantial question" standard, which requires the balance of hardships to tip decidedly in the movant's favor, as Defendants concede.  *See* Defs.' Mem. at 5.  In any event, Defendants cite no authority establishing that the "substantial question" standard applies to stays pending appeal. *See supra* 4-5.

353355.1

to provide private relief, but was to serve as well the high purpose of enforcing the antitrust laws."); *see also* Jed S. Rakoff, "The Cure for Corporate Wrongdoing:  Class Actions vs. Individual Prosecutions," *The New York Review of Books*, Nov. 19, 2015 ("The Sherman Antitrust Act, enacted in 1890, guaranteed that victims of antitrust violations who successfully sued the violators would receive mandatory treble damages, plus their attorneys' fees—the theory being that these rewards would both motivate antitrust victims to expose violations of which the government was not yet aware and enhance deterrence of violations even in those instances where the government had already discovered the misconduct.").  Here, the public interest is best served by allowing this case to proceed without delay, and by allowing Plaintiff to pursue this action to remedy anticompetitive conduct and promote open competition.[8]

---

[8]     Defendants invoke the familiar public interest of judicial economy.  *See* Defs.' Mem. at 21.  Judicial economy is a venerable public interest.  However, Defendants merely speculate about future uses of judicial resources in arguing for a stay.  For example, Defendants speculate that some of the individuals that seek to join this case as Plaintiffs "*may* contend that they registered for accounts with Uber under similar circumstances (and some of whom *may* have registered under circumstances this Court has already suggested *may* be materially distinguishable)," and that "proceeding with this lawsuit *may* ultimately involve additional motions to compel arbitration," including motions to "compel arbitration of the absent class members' claims."  *Id.* at 21-22 (all emphases added).  At this point, Defendants' concerns of *potentially* increased motion practice are nothing more than mere speculation and should therefore be entirely discounted.  *See Kobach v. United States Election Assistance Comm'n*, No. 13-cv-4095, 2014 U.S. Dist. LEXIS 62957, at *12 (D. Kan. May 7, 2014) (denying stay pending appeal, discounting "theoretical" or "speculati[ve]" arguments about public interest).

353355.1

## <u>CONCLUSION</u>

For all of these reasons, Plaintiff respectfully requests that Defendants' motion to stay

judicial proceedings be denied.

Dated:  August 19, 2016

353355.1

CONSTANTINE CANNON LLP

By:     /s/ Matthew  L. Cantor
Matthew L. Cantor
Ankur Kapoor
David A. Scupp
335 Madison Avenue
New York, New York 10017
Tel: (212) 350-2700
Fax: (212) 350-2701
mcantor@constantinecannon.com
akapoor@constantinecannon.com
dscupp@constantinecannon.com

McKOOL SMITH
John Briody
James H. Smith
One Bryant Park, 47th Floor
New York, New York 10036
Tel: (212) 402-9400
Fax: (212) 402-9444
jbriody@mckoolsmith.com
jsmith@mckoolsmith.com

CAFFERTY CLOBES MERIWETHER
& SPRENGEL, LLP
Bryan L. Clobes
Ellen Meriwether
1101 Market Street, Suite 2650
Philadelphia, PA  19107
Tel: (215) 864-2800
Fax: (215) 864-2810
bclobes@caffertyclobes.com
emeriwether@caffertyclobes.com

HARTER SECREST & EMERY LLP

Brian Marc Feldman
Jeffrey A. Wadsworth
Edwin M. Larkin
A. Paul Britton
1600 Bausch & Lomb Place
Rochester, New York 14604
Telephone No. (585) 232-6500
Facsimile No. (585) 232-2152
bfeldman@hselaw.com
jwadsworth@hselaw.com
elarkin@hselaw.com
pbritton@hselaw.com

ANDREW SCHMIDT LAW PLLC
Andrew Arthur Schmidt
97 India Street
Portland, Maine 04101
Telephone No. (207) 619-0320
Facsimile No. (207) 221-1029
andy@maineworkerjustice.com

*Attorneys for Plaintiff Spencer Meyer*

353355.1

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2016, I filed and therefore caused the foregoing document to be served via the CM/ECF system in the United States District Court for the Southern District of New York on all parties registered for CM/ECF in the above-captioned matter.

/s/ *Matthew L. Cantor*
Matthew L. Cantor

353360.1