UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SPENCER MEYER,<br><br>   individually and on behalf of those similarly situated,<br><br>                 Plaintiff,<br><br>v.<br><br>TRAVIS KALANICK and UBER TECHNOLOGIES, INC.,<br><br>                 Defendants. | Civil Action No. 1:15 Civ. 9796 (JSR)<br><br>**Declaration of John Briody in Support of Plaintiff's Memorandum of Law Concerning New Evidence of Keypad Obstruction** |

I, JOHN BRIODY, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1. I am a principal at McKool Smith, counsel for Plaintiff in this case. I make this declaration in support of Plaintiff's Memorandum of Law Concerning New Evidence of Keypad Obstruction.

2. Specifically, I submit this declaration to present: (1) certain discovery received from Uber; and (2) information that I learned from Uber's counsel, Joshua Lipshutz, a partner at Gibson Dunn, counsel for Uber, during an October 25, 2017 teleconference.

**UBER CORRESPONDENCE & DISCOVERY**

3. Attached hereto as Exhibit A is a true and correct copy of a letter that I received from Mr. Lipshutz via email on October 26, 2017. The letter attaches "a series of screenshots" depicting "how the Uber App may have appeared on Plaintiff's Samsung Galaxy S5 smartphone when he registered to use the Uber App in October 2014." Among other things, the letter

1

explains that a "native Android keypad engaged to enter credit card information" would have completely obscured the term-of-service hyperlink. Exhibit A at 2, Screenshot 11. In addition, the letter explains that "a user who entered all of his or her credit information into the 'Payment' screen" could have completed their Uber registration by "click[ing] the Register button without first clicking the 'Done' button . . . in which case Screenshot 13 [the screen showing the terms-of-service link] would not have appeared."

4. Attached hereto as Exhibit B is a true and correct copy of Defendant Uber Technologies, Inc.'s Responses and Objections to Plaintiff's Second Set of Requests for Admission, served on October 20, 2017.

5. Attached hereto as Exhibit C is a true and correct copy of an email that I received from Mr. Lipshutz on October 24, 2017. In that email, Mr. Lipshutz advises, among other things, that "Uber does not track users' . . . scrolling activity within the Uber App during the registration process."

6. Attached hereto as Exhibit D is a true and correct copy of a document bearing Bates range UBER00003434 (the "Document") that was produced by Uber on October 20, 2017. I have redacted certain portions of Exhibit D because they concern details specific to Plaintiff.

### DISCUSSION WITH UBER'S COUNSEL CONCERNING THE DOCUMENT

7. On Wednesday, October 25, 2017, I discussed the Document with Mr. Lipshutz (Uber's counsel). Uber's counsel explained that the Document was a spreadsheet created for this litigation from Uber records in response to Plaintiff's September 26, 2017 document requests. The Document reflects certain information pulled from broader Uber databases. According to Uber's counsel, the Document contains information specific to Plaintiff's registration with Uber.

8. Uber's counsel described the nine columns of the Document as reflecting the following information:

    a. (1) "event_name" refers to certain events associated with the use of the Uber app that Uber tracks.

    b. (2) "date_utc" is not standard information tracked by Uber. It translates Column 3 ("epoch_in_ms") to UTC date and time—the scientific term for Greenwich Mean Time, unadjusted for daylight savings time. The first row under "date_utc" translates to October 18, 2014 at approximately 4:06 PM.

    c. (3) "epoch_in_ms" is the standard manner in which time is tracked in computer programming. It is a measurement of the number of microseconds elapsed since January 1, 1970. The numerical values for "epoch_in_ms" are translated into UTC date and time in column 2.

    d. (4) "delta_epoch_in_second" refers to the change in time between rows of data. Accordingly, the Document reflects 21 milliseconds elapsing between the event identified in row 1 and the event identified in row 2.

    e. (5) "rider_uuid" refers to the user ID that Uber assigns a user.

    f. (6) and (7)—"latitude" and "longitude"— reflect Uber's records concerning the geographic location of the individual user. This is information that Uber regularly tracks.

    g. (8) "session_uuid" refers to the session number that Uber assigns to a particular interaction with the Uber application.

    h. (9) "device_model" refers to the type of device being used to interface with the Uber app. This is information that Uber regularly tracks.

9. Uber's counsel described each of the events that Uber tracks in column 1. According to Uber's counsel, some of the events reflected in Column 1 refer to internal, or "behind-the-scenes" processes that Uber tracks internally, but are not apparent to the user.

10. In the interest of brevity, I do not recite all of the events described by Uber's counsel in this declaration. I do, however, highlight several of the events below. All of the below is based upon information provided by Uber's counsel:

   a. "icon" refers to the event when an Uber user presses the Uber icon to open the app.

   b. "splash" is the screen the Uber user sees while the Uber app is loading into the memory of the device. According to Uber's counsel, the Document shows that the time elapsed between Plaintiff pressing the Uber icon, and Plaintiff viewing the "splash" screen was 21 milliseconds.

   c. "session start" is a behind-the-scenes event. It starts an internal measurement period that Uber tracks for performance analytics purposes.

   d. "magic" is the moment at which a user first sees the Uber opening screen. At this screen, the user has a choice to sign in (to an existing account) or register for a new account. According to the Document, the time elapsed between Plaintiff pressing the Uber icon and reaching the "magic" screen is approximately 1 second.

   e. "sign_up_1" refers to an Uber user viewing the first sign-up screen where, among other things, the user enters their first and last name and password. According to Uber's counsel, the first screen attached to the Mi Declaration correlates to what was displayed to Plaintiff at "sign_up_1."

f. "SignUpPageView' is a behind-the-scenes event that Uber uses for internal data tracking purposes. According to Uber's counsel, it occurs at virtually the same time as "sign-up-1". According to the Document, 3 milliseconds elapsed between the display of "sign-up-1" to Plaintiff and the "SignUpPageView" event.

g. "sign_up_next" refers to the event when an Uber user clicks on the Next button, to move on to the following screen in the account registration process. According to Uber's counsel, Plaintiff would have had to, among other things, created a password before successfully clicking the Next button and moving on to the following registration screen. According to the Document, Plaintiff spent approximately 12 seconds on the first sign-up screen before clicking the Next button.

h. "sign_up_2" refers to the user viewing the second Uber registration screen—the screen where payment information is to be entered. According to Uber's counsel, the second screenshot contained in Exhibit A of the Mi Declaration (Dkt 59-4) correlates to what was displayed to Plaintiff at "sign_up_2." According to Uber's counsel, during the eight tenths of a second between "sign_up_next" and "sign_up_2" an Uber user would be viewing some form of spinner.

i. "SignUpRequest" refers to the Uber user clicking the Register button. This is the next event tracked by Uber with respect to Plaintiff. According to Uber's counsel, Uber did not track anything that Plaintiff did on the screen displayed at "sign_up_2," except that he finally clicked the Register button. Uber does not know whether, when or how long a keypad is depressed on the "sign_up_2" screen. Uber also is not aware of whether there is any scrolling done on the

screen presented at "sign_up_2." Pursuant to Uber's counsel's October 26 correspondence, I understand that the "sign_up_2" screen, "with a native Android keypad engaged to enter credit card information," would present as set forth below. *See* Ex. A, Screenshot 11.



      j.    According to the Document, the time elapsed between Plaintiff viewing the screen displayed at "sign_up_2" and "SignUpRequest" was approximately 34.7 seconds.

11.    According to Uber's counsel, after clicking the Register button, an Uber user is next presented with a map and the ability to request a ride. There is no separate screen stating that a registration was successfully completed.

12.    According to Uber's counsel, Uber does not track key strokes or screen scrolling during any period of the Uber application registration process. As set forth above, the only user interactions that Uber tracks are when a user clicks the Uber icon, clicks the Next button, and clicks the Registration button.

13.    My understanding, based upon my October 25 discussion with Uber's counsel, and Uber's counsel's October 26 correspondence with accompanying screenshots, is that Uber is not aware of how long Plaintiff would have seen a "terms of service" link when registering for his account.

I declare that the foregoing is true and correct to the best of my knowledge under penalty of perjury.

Dated:    New York, New York
              November 1, 2017

                                            /s/ John Briody
                                            JOHN BRIODY