UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
SPENCER MEYER, individually and on    :
behalf of those similarly situated,    :
                                       :         15 Civ. 9796
        Plaintiff,                     :
                                       :         OPINION AND ORDER
        -v-                            :

TRAVIS KALANICK, and UBER
TECHNOLOGIES, INC.,

        Defendants.
------------------------------------

JED S. RAKOFF, U.S.D.J.



    The American law of contracts in its common law origins
presumed a promissory agreement freely negotiated between parties
who reached a "meeting of the minds."[1] That the agreement
eventually became enforceable in a court of law (through the common
law action known as "assumpsit") was an essential ingredient in
the development of the British and American economies.[2]

---

[1] See, e.g., Baltimore & O.R. Co. v. United States, 261 U.S. 592,
597 (1923) (stating that a contract is "founded upon a meeting of
minds" either expressly or, "inferred, as a fact, from conduct of
the parties showing, in the light of the surrounding circumstances,
their tacit understanding").

[2] See, e.g., Wood v. Lucy, 222 N.Y. 88 (1917) (enforcing an
agreement between two parties); see generally, A. W. B. Simpson,
A History of the Common Law of Contract: The Rise of the Action of
Assumpsit (1975); Michael Trebilcock and Jing Leng, The Role of
Formal Contract Law and Enforcement in Economic Development, 92
Va. L. Rev. 1517-1580 (examining the role of formal and informal
contract law enforcement in economic development).

But with the rise of giant corporations selling their products to masses of consumers, this contractual model became largely a figment of imagination, or nostalgia, at least so far as national retail markets were concerned. Increasingly, consumers purchasing a product were forced, as a condition of their purchase, to agree to a form contract drafted by the seller, replete with one-sided legalistically-worded provisions that the consumer had to accept if she wished to make the purchase. Such one-sided, take-it-or-leave-it form contracts were utilized by sellers in even otherwise competitive markets, because sellers saw no material competitive advantage in eliminating or negotiating any of these terms. Most consumers, for their part, did not even bother to read these small-print forms – not that most consumers would have been able to understand most of them if they had read them. These forms thus became the ubiquitous "contracts of adhesion."

In recent years, however, especially with the rise of internet merchandising, a new requirement has been imposed on consumers by these form contracts, to wit, a waiver of constitutional rights. In particular, consumers are now required, if they wish to purchase virtually any product or service via the internet, to waive their constitutional right to trial by jury – indeed, even their right to access to a court of law – and instead, submit to binding arbitration before a company-hired arbitrator.

2

One might have thought that such waivers were unenforceable on their face. The right to trial by jury, in civil as well as criminal cases, is a central feature, not only of the federal Constitution, but also of the constitutions of virtually every state.[3] The right reflects the deep-seated view of the American people that the community is the best judge of justice.

But this, it appears, is not the view of the judiciary. Thus, while appellate courts still pay lip service to the "precious right" of trial by jury,[4] and sometimes add that it is a right that cannot readily be waived,[5] in actuality federal district courts are now obliged to enforce what everyone recognizes is a totally

---

[3] In the three states where the right to a jury in a civil (as well as a criminal) case is not constitutionally guaranteed, it is guaranteed by statute. See, e.g., Colorado Rule of Civil Procedure 38.

[4] See, e.g., Tray-Wrap, Inc. v. Six L's Packing Co., 984 F.2d 65, 66 (2d Cir. 1993) (explaining that "[p]erhaps the principal contribution of the Common Law to the fact-finding process is the jury trial[,]" that the jury trial is a "precious right[,]" and that it "is a right not to be trifled with, witness the Declaration of Independence and its denunciation of King George III: 'For depriving us in many cases, of the benefits of Trial by jury'") (internal citations omitted).

[5] See, e.g., 3D Glob. Sols., Inc. v. MVM, Inc., 754 F.3d 1053, 1056 (D.C. Cir. 2014) (quoting Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393 (1937) for the proposition that courts must "indulge every reasonable presumption against waiver" of a jury trial); Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 188 (2d Cir. 2007) ("[a]lthough the right [to a jury trial] is fundamental and a presumption exists against its waiver, a contractual waiver is enforceable if it is made knowingly, intentionally, and voluntarily") (citing Nat'l Equip. Rental, Ltd. v. Hendrix, 565 F.2d 255, 258 (2d Cir. 1977)).

coerced waiver of both the right to a jury and the right of access to the courts - provided only that the consumer is notified in some passing way that in purchasing the product or service she is thereby "agreeing" to the accompanying voluminous set of "terms and conditions."

This being the law, this judge must enforce it – even if it is based on nothing but factual and legal fictions.

Which brings us to this case. Before the Court on remand are motions by Travis Kalanick and Uber Technologies, Inc. ("Uber") to compel arbitration. See Dkts. 80, 91. Also before the Court are motions by Kalanick for judgment on the pleadings and to dismiss as moot Spencer Meyer's claims for injunctive and declaratory relief. See Memorandum of Law in Support of Defendant Travis Kalanick's Renewed Motion to Compel Arbitration and For Judgment on the Pleadings ("Kalanick Mem."), Dkt. 152.

Meyer opposes defendants' motions arguing that, as a result of a pop-up keypad not in evidence prior to remand, Meyer did not have reasonably conspicuous notice that, by registering with Uber, he was agreeing to Uber's "Rider Terms" (otherwise referred to as the "User Agreement" or "Terms of Service") and therefore never entered into an agreement with defendants to arbitrate his claims. See Plaintiff's Memorandum of Law Concerning New Evidence of Keypad Obstruction ("Meyer Keypad Mem.") at 1-2, Dkt. 164. Meyer further argues that, even if an agreement to arbitrate was reached between

4

Meyer and defendants, Kalanick expressly waived his, and by extension, Uber's, right to compel arbitration in this case. See Supplemental Memorandum of Law in Further Opposition to Defendants' Motions to Compel Arbitration ("Meyer Mem.") at 8-14, Dkt. 156.

By bottom line Order dated November 22, 2017, the Court granted Uber's motion to compel arbitration and Kalanick's motion for judgment on the pleadings, and dismissed Meyer's case without prejudice to Meyer pursuing his claims against Kalanick before an arbitrator. See Dkt. 169. The Court also denied as moot Meyer's motion - made after the Court had denied defendants' initial motions to compel arbitration in 2016 but prior to the Second Circuit's review of the case - to join four additional plaintiffs. See id.; see also Dkt. 127.

This Opinion and Order provides the reasons for these rulings.

Overall familiarity with the prior proceedings in this case is here assumed. Of some relevance to the instant dispute, Meyer's First Amended Complaint, filed on January 29, 2016, alleges that Kalanick orchestrated and facilitated an illegal price-fixing conspiracy among Uber drivers in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and Section 340 of the Donnelly Act, New York General Business Law § 340. See First Amended Complaint ¶¶ 120-140, Dkt. 26. Meyer's basic claim is that Kalanick arranged for Uber drivers to use Uber's pricing algorithm

to determine the amounts to charge to Uber riders, thereby restricting competition among drivers who would otherwise compete on price to the benefit of riders such as Meyer. See id. ¶¶ 1-7.

Despite the obvious nexus between Meyer's claim and Uber, Meyer did not implead Uber. Nor did Uber initially move to intervene in the case. Instead, on January 15, 2016, Kalanick moved to dismiss Meyer's complaint on various grounds, see Dkt. 22, including, inter alia, that Meyer was barred from bringing a class action lawsuit because of a waiver provision in his User Agreement with Uber, the terms to which, Kalanick argued, Meyer acceded when he registered for the Uber application, see Memorandum of Law in Support of Defendant Travis Kalanick's Motion to Dismiss at 21-22, Dkt. 28. According to Kalanick, the class waiver term applied even though Kalanick was not (then) seeking to compel arbitration. See id. at 22, n. 10 ("Mr. Kalanick does not seek to enforce the arbitration agreement here. . . . [Though,] Mr. Kalanick does not waive and expressly reserves his right to move to compel arbitration in other cases arising out of the User Agreement.").

On March 31, 2016, the Court denied Kalanick's motion to dismiss, finding, inter alia, that "since defendant is not seeking to compel arbitration, and plaintiff is not seeking to enforce the User Agreement against defendant, plaintiff is not equitably estopped from pursuing a class action suit against Mr. Kalanick, nor has plaintiff waived the right to proceed through this

6

mechanism." Opinion and Order at 23, n.8, Dkt. 37. On April 14, 2016, Kalanick moved for reconsideration, see Dkt. 40, arguing that the User Agreement permits Kalanick to enforce the class waiver provision even where he chooses not to compel arbitration:

Beside the plain language of the User Agreement, the Court also erred in concluding that Defendant could not enforce the class waiver without also enforcing its right to arbitrate. . . . [A] party can choose not to enforce a contractual right without affecting the enforceability of other rights. . . . The User Agreement states: "The failure of the Company to enforce any right or provision in this Agreement shall not constitute a waiver of such right or provision unless acknowledged and agreed to by the Company in writing." . . . Accordingly . . . Defendant's decision not to invoke its right to arbitration has no bearing on its independent right to enforce Plaintiff's class action waiver.

Memorandum of Law In Support of Defendant Travis Kalanick's Motion For Reconsideration of the Court's Holding Regarding Plaintiff's Class Action Waiver at 7-9, Dkt. 41.

Upon due consideration, the Court denied Kalanick's motion, noting, inter alia, that "[s]ince no motion to compel arbitration has been made (and, as noted, appears to have been effectively relinquished), plaintiff Meyer has not, by agreeing to the Dispute Resolution paragraph, waived any right to proceed via a class action lawsuit outside the arbitration context." Opinion and Order dated May 9, 2016 at 9, Dkt. 44.

Meanwhile, however, Kalanick, on April 14, 2016, filed an Answer that, in paragraph 143, appeared for the first time to be asserting a demand for arbitration, stating: "Plaintiff is

7

precluded from proceeding in this action under the terms of his binding User Agreement. Plaintiff expressly agreed to resolve 'any dispute, claim, or controversy arising out of or relating to' the Agreement via binding arbitration. Plaintiff also agreed to waive 'the right to trial by jury, to participate as a plaintiff in any purported class action or representative proceeding.'" Answer of Defendant Travis Kalanick to the First Amended Complaint ¶ 143, Dkt. 42.

On May 20, 2016, having failed to secure dismissal of Meyer's claims, Kalanick moved to join Uber to the litigation, see Dkt. 46, arguing that Uber is a necessary party and that Meyer's suit is a "challenge to Uber's fundamental business model, not anything Mr. Kalanick did or did not do in his individual capacity," Memorandum of Law in Support of Defendant Travis Kalanick's Expedited Motion for Joinder of Uber Technologies, Inc. as a Necessary Party at 2, Dkt. 47. Four days later, Uber, by and through its own counsel, moved to intervene in the case, arguing that "Uber is entitled to intervene as a matter of right in this action so that it can move to compel Plaintiff to honor the arbitration process that he accepted as a condition of using the very pricing algorithm that he claims caused his injury." Proposed Intervenor Uber Technologies, Inc.'s Memorandum of Law in Support of Motion to Intervene for the Limited Purpose of Compelling Arbitration at 1, Dkt. 59.

After full briefing, the Court granted Kalanick's motion for joinder, joining Uber as a party, see Memorandum Order, Dkt. 90 (and thereby rendering Uber's motion to intervene moot). Uber then moved to compel arbitration, see Dkt. 91, which Kalanick, reversing his earlier position, had himself done two weeks earlier, see Dkt. 80. The Court subsequently denied defendants' motions to compel arbitration, finding that Meyer had not agreed to arbitrate his claims against Uber as he had not had "[r]easonably conspicuous notice of Uber's User Agreement . . . or evince[d] unambiguous manifestation of assent" to its terms. See Opinion and Order dated July 29, 2016 at 25, Dkt. 126 (internal quotations omitted).

On August 5, 2016, defendants appealed. See Dkt. 131, 132. On appeal, defendants argued that this Court erred in concluding that Uber's Rider Terms were not reasonably conspicuous. The Second Circuit Court of Appeals agreed, finding, inter alia, that:

Although Meyer purports to challenge the evidentiary foundation for the registration screens, defendants have submitted a declaration from an Uber engineer regarding Meyer's registration for and use of the Uber App, as well as the registration process and terms of use in effect at the time of his registration. Accordingly, we conclude on this record, as a matter of law, that Meyer agreed to arbitrate his claims with Uber.

Meyer v. Uber Techs., Inc., 868 F.3d 66, 80 (2d Cir. 2017). Accordingly, the Second Circuit vacated this Court's July 2016 Opinion and Order and remanded the case for this Court to consider,

9

in the first instance, "whether defendants have [nonetheless] waived their right to arbitrate." Id. at 81.

One week later, Meyer moved the Court of Appeals to amend its August 17 Opinion to address the possible effect of a pop-up keypad on Meyer's smart phone, which may have obscured Uber's "Terms of Service" hyperlink (which linked to Uber's User Agreement) during Meyer's registration process. On August 29, the Second Circuit denied Meyer's motion "without prejudice to Meyer raising the issue in the district court in the first instance but also without foreclosing defendants from arguing waiver [of the argument]." Order at 1, Dkt. 149. Thereafter, defendants timely renewed their motions to compel arbitration and the Court permitted Meyer additional discovery on the keypad issue. See Transcript dated October 5, 2017, Dkt. 157.

Against this background, the Court turns to defendants' renewed motions to compel arbitration. Meyer, argues that the Court should deny arbitration because (1) Meyer was not on inquiry notice of Uber's User Agreement because of a pop-up keypad that obscured any reference to Uber's User Agreement during his registration process, and (2) even if defendants had provided reasonably conspicuous notice of Uber's User Agreement, defendants expressly waived their right to compel arbitration in this case.

Defendants oppose Meyer's motion, arguing that Meyer forfeited the pop-up keypad argument by failing to raise it prior

10

to appeal and that defendants did not, in the form of statements made by Kalanick to the Court, expressly waive their right to compel arbitration of Meyer's claims. Kalanick also argues that, in any event, the Court need not decide whether he waived his right to compel arbitration since, assuming the Court finds Uber is entitled to proceed to arbitration, he is entitled to judgment on the pleadings as Uber is a necessary party without which Meyer's case against him cannot proceed.[6] See Kalanick Mem. at 2-3. Separately, Kalanick moves to dismiss Meyer's claims for injunctive and declaratory relief on the ground that Meyer can no longer demonstrate that such relief would redress his injury. See id. at 3.

The Court considers each of these arguments in turn:

## I.  **The Pop-Up Keypad**

Meyer raises for the first time on remand the issue of a pop-up keypad, which entirely obscured Uber's Terms of Service hyperlink while Meyer entered his payment information. As a result of additional discovery conducted in late 2017, it is now clear that Meyer spent a total of 34.7 seconds on the "payment page," which is the only page that includes Uber's Terms of Service hyperlink. See Declaration of John Briody in Support of Plaintiff's

---

[6] Barring such relief, Kalanick requests a stay pending the completion of Uber's arbitration with Meyer. See Kalanick Mem. at 18-20.

11

Memorandum of Law Concerning New Evidence of Keypad Obstruction ¶ 10(j), Dkt. 165. According to Meyer, since he likely spent most of these 34-odd seconds entering his payment information, the indication that he would shortly be accepting the terms of service would have been visible to him for such a short period of time that he could not have been on even inquiry notice of the requirement buried in those linked Terms that he submit the instant action to arbitration. See Meyer Keypad Mem. at 4.

The question, however, of whether Uber's Terms of Service hyperlink was reasonably conspicuous was the subject of extensive proceedings before this Court and the Second Circuit Court of Appeals, and, as mentioned earlier, the Second Circuit concluded last August that the notice provided by Uber was sufficient as a matter of law. See Meyer, 868 F.3d at 76-80. Generally speaking, "the so-called mandate rule bars re-litigation of issues already decided on direct appeal." Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010) (citations omitted). A party may introduce on remand new evidence relating to an issue already decided only for "compelling reasons" such as where the relevant evidence "was not[,] and in fairness[,] could not have been presented earlier." United States v. Banol-Ramos, 566 F. App'x 40, 43 (2d Cir. 2014) (summary order) (internal quotations omitted); see also Bronx Household of Faith v. Bd. of Educ. Of City of New York Cmty. Sch. Dist. No. 10, 855 F. Supp. 2d 44, 64 (S.D.N.Y. 2012) (noting that

12

the new evidence exception requires "significant new evidence that was not earlier obtainable through due diligence but has since come to light") (internal quotation omitted)).

It is true that, in response to Meyer's application to the Second Circuit, made after that court had rendered its decision, Meyer was permitted to raise this issue before this Court on remand, but with the caveat that this Court should also decide whether he had waived the issue. See Order at 1, Dkt. 149.

According to Meyer, he should be excused for failing to introduce evidence of the keypad issue earlier because his failure to do so was the result of defendants' "apparently misleading and false representations" to this Court. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Preclude Consideration of Keypad Obstruction at 6, Dkt. 159. Specifically, Meyer points to the statements made by a senior Uber engineer named Vincent Mi in an affidavit dated May 24, 2016. See id. at 13; Declaration of Vincent Mi in Support of Proposed Intervenor Uber Technologies, Inc.'s Motion to Compel Arbitration ("Mi Decl.") ¶ 2, Dkt. 59-3; id. ¶ 5 (stating that the "Terms of Service & Privacy Policy" hyperlink "is immediately visible when the user arrives on" the payment screen and that "[s]creenshots of the account registration process are attached"). According to Meyer, Mi's declaration gives the materially false impression that Uber's Terms of Service

hyperlink was visible even when Meyer entered his payment information.[7]

This Court finds, however, that Mi's statements in his affidavit are not false, see Mi Decl. ¶ 5, and that the fault in failing to raise this matter previously was Meyer's, not Kalanick's. Mi's affidavit accurately describes what the payment screen looked like when Meyer loaded it. Id. (the Terms of Service hyperlink is "immediately visible when the user arrives on the second screen"). And Mi's declaration does not purport to address what the screen looked like after Meyer engaged the keypad to enter his payment information. Nor is there any indication that Uber failed to turn over any relevant documents prior to defendants' appeal. The screenshot now in the record showing that a pop-up keypad obscured the Terms of Service hyperlink was constructed on remand especially for this litigation, pursuant to Meyer's request.[8]

---

[7] Meyer notes that the only other court to consider the keypad issue found that the obstruction was dispositive. See Metter v. Uber Techs., Inc., No. 16 Civ. 6652, 2017 WL 1374579, at *3 (N.D. Cal. Apr. 17, 2017) (finding that, because "the Uber app essentially prompts a user to enter his credit card information as soon as he reaches the payment and registration screen[,]" the "ordinary registrant will often be compelled to activate the pop-up keyboard and obscure the terms of service alert before having time or wherewithal to identify . . . the [terms of service] alert").

[8] Among other things, the keypad's appearance on Meyer's screen depends upon his phone's operating system and personal settings.

14

Meyer, of course, knew better than anyone how long he had to view the reference to the Terms of Service on the Uber webpage before he entered his payment information. If Meyer was of the view that the length of time he would have been able to see the Terms of Service hyperlink was relevant to the question of inquiry notice, he should have sought additional discovery in 2016 or otherwise raised the issue. There is no reason why Meyer could not have requested that Kalanick construct this screenshot prior to appeal. Nor is there any reason why Meyer could not have taken Mr. Mi's deposition or served written discovery requests regarding the process by which a user would enter credit card information on the payment screen.

It was apparent that the screenshot in the original Mi Declaration showed Meyer's screen only as it would have appeared before Meyer began to enter his payment information. It is obvious that Meyer's screen would have appeared differently after he had engaged the keypad – i.e., it would have included a keypad.

Thus, although Meyer refers to the recently constructed screenshot as "new" evidence, it is not "new" in the relevant sense that it could not have been obtained earlier. The facts regarding the pop-up keypad were readily discoverable in 2016 and fully known to Meyer himself. On this record, Meyer fails to excuse his failure

_____

See Defendants' Supplemental Memorandum of Law Regarding Meyer's Waiver of the Keypad Issue at 4, Dkt. 166.

15

to raise this issue prior to appeal, and, accordingly the Court concludes that the keypad issue has been waived.[9]

## II. **Waiver by Defendants**

The Court turns next to the question of whether defendants nonetheless waived their rights to invoke arbitration in this case.

As noted, Kalanick initially represented to this Court, in connection with his motion to dismiss, that he was not invoking his right to arbitrate. Whether he left himself any right to seek arbitration after his motion was decided is, however, no longer a question this Court need address at this stage of the case if Uber's right to compel arbitration remains intact and if, as a result, it can no longer be added to this litigation as a necessary party (see discussion of Kalanick's Rule 19(b) motion, infra).

Meyer argues, however, that, because Uber was "responsible" for Kalanick's initial waiver, if the Court were to conclude that Kalanick's waiver continues, Kalanick's waiver should be imputed to Uber for purposes of resolving Uber's motion to compel arbitration. But the case on which Kalanick relies for this

---

[9] The Court also notes that recent fact discovery has done nothing to disturb the evidentiary basis for the Second Circuit's holding in this case (i.e. that Meyer could see the entire screen, including the Terms of Service, at the time he loaded the page and prior to engaging the keypad to enter his credit card information). To wit, where "[t]he entire screen is visible at once, and the user does not need to scroll beyond what is immediately visible to find notice of the Terms of Service," the Second Circuit found that the user was on inquiry notice of the Terms as a matter of law. Meyer, 868 F.3d at 77-78 (emphasis added).

16

proposition, Doctor's Associates, Inc. v. Distajo, 66 F.3d 438, 454 (2d Cir. 1995), simply sets forth what is in effect an "alter ego" analysis.[10] See Doctor's Associates, Inc. v. Distajo, 944 F. Supp. 1010, 1014 (D. Conn. 1996), aff'd, 107 F.3d 126 (2d Cir. 1997) ("DAI has conceded that the leasing companies were its alter egos"). Here, by contrast, Meyer has expressly disclaimed reliance on alter ego doctrine. See Meyer Mem. at 12 ("Uber's responsibility is sufficient; Defendants need not be alter egos").

Moreover, Meyer's arguments are premised entirely on conduct undertaken by Kalanick before Uber was even a party to the case, and as soon as Uber was timely joined to the action, Uber moved to compel arbitration. Meyer protests that "[o]ur judicial system does not sanction the game Defendants seek to play." See id. at 13. But it is Meyer who started this "game" of which he now complains by bringing his suit against Kalanick only, instead of Uber, in the first place. The Court, therefore, finds that Uber did not waive its right to arbitrate and grants Uber's motion to compel arbitration.

**III. Rule 19(b)**

---

[10] Additionally, although Meyer suggests that Kalanick's waiver could also be imputed to Uber on the grounds that Kalanick was acting as Uber's agent, Kalanick cites no case where a company's officer waived the company's right to compel arbitration through his in-court representations. The case Meyer relies on regarding "agency," Rushaid v. National Oilwell Varco, Inc., 757 F.3d 416, 422 (5th Cir. 2014), finds no waiver and cites only, in relevant part, to two cases involving Doctor's Associates (i.e. alter egos).

17

The remaining question is, in effect, whether Kalanick should be joined to the arbitration. The question is posed here by Kalanick's motion under Rule 19(b), Fed. R. Civ. P., to dismiss the entire case against him without prejudice to Meyer's joining him as a party to Meyer's arbitration claim against Uber.

Under Rules 12(h)(2)(B) and 19(b), Fed. R. Civ. P., a court should enter judgment on the pleadings where a necessary party "cannot be joined" to a litigation. This Court previously recognized that Uber is a "required party" to Meyer's action under Rule 19(a), see Dkt. 90, and, according to Kalanick, Uber "cannot be joined" because any dispute with Uber is subject to mandatory arbitration. See, e.g., Corsi v. Eagle Publ'g, Inc., No. 07 Civ. 2004, 2008 WL 239581, at *5 (D.D.C. Jan. 20, 2008) (dismissing an action under Rule 12(b)(7) where defendant "is necessary under Rule 19(a) but cannot be joined because of the arbitration clause in the contracts"); LST Fin., Inc. v. Four Oaks Fincorp, Inc., No. 14 Civ. 435, 2014 WL 3672982, at *4 (W.D. Tex. July 24, 2014) (dismissing an action where "mandatory arbitration provisions" made joinder of necessary parties "unfeasible"); Infuturia Glob. Ltd. v. Sequus Pharm., Inc., 631 F.3d 1133, 1136 (9th Cir. 2011) (affirming district court decision dismissing defendant pursuant to Rule 12(b)(7) because of a binding arbitration clause).

Rule 19(b) sets forth four factors for the Court to consider here: (1) "the extent to which a judgment rendered in [Uber's]

18

absence might prejudice [Uber] or the existing parties"; (2) "the
extent to which any prejudice could be lessened or avoided by: (a)
protective provisions in the judgment, (b) shaping the relief; or
(c) other measures"; (3) "whether a judgment rendered in [Uber's]
absence would be adequate"; and, (4) "whether [Meyer] would have
an adequate remedy if the action were dismissed for nonjoinder."
Fed. R. Civ. P. 19(b).

Meyer argues that this entire analysis is inapposite as Uber
has already been joined to the litigation, see Meyer Mem. at 17-
18, distinguishing the cases cited by Kalanick where the necessary
party refused to join the relevant proceedings citing arbitration
agreements. This, however, is a distinction without a difference.
Uber joined this action solely for the purpose of enforcing the
User Agreement to compel arbitration. Moreover, as the Second
Circuit found that Meyer agreed to arbitrate his claims against
Uber as a matter of law, the Court has now granted Uber's motion
to compel, dismissing Uber from these proceedings.

Meyer's additional arguments - that Uber could participate as
an intervenor even though it has been dismissed as a necessary
party, that a monetary judgment against Kalanick could be awarded
even in Uber's absence, and that the Court could stay the case
pending the completion of arbitration with Uber – are not
persuasive.

The four factors set forth in Rule 19(b) weigh heavily in Kalanick's favor. As the Court already recognized, were this case to proceed without Uber, its interest in "defending the legality and continued use of [its] pricing algorithm and its contracts with drivers against the claim that these instruments violate the antitrust laws . . . could be impaired as a result of an adverse finding against Mr. Kalanick in this action." Memorandum Order at 6, Dkt. 90. For example, Uber could be "collaterally estopped from contesting antitrust liability in other suits against it." Id.

Indeed, because of the nature of the claim against Kalanick, it would almost be impossible to tailor relief in a way that would not impact Uber. The Court has already recognized this in its earlier rulings. Additionally, Meyer has an adequate remedy as a matter of law if the action were dismissed for nonjoinder: namely arbitration. See Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228 (2013) (upholding a contractual provision barring class arbitration even where the costs of individualized arbitration would exceed the potential recovery).

As any judgment entered against Kalanick in Uber's absence would severely prejudice Uber, the Court finds that Uber is a necessary party without which Meyer's case against Kalanick cannot proceed and therefore grants Kalanick's motion for judgment on the

pleadings, without prejudice to Meyer joining Kalanick to the arbitration of Meyer's claims against Uber.[11]

For the reasons stated above, the Court hereby reaffirms its bottom line Order of November 22, 2017 granting Uber's motion to compel arbitration and granting Kalanick's motion for judgment on the pleading without prejudice to Meyer's pursuing his claims against Kalanick in the Uber arbitration. Additionally, the Court denies as moot Kalanick's motion to compel arbitration, Kalanick's motion to dismiss Meyer's claims for declaratory and injunctive relief, and Meyer's motion to join four additional parties.

SO ORDERED.

Dated: New York, NY
       March _5_, 2018

JED S. RAKOFF, U.S.D.J.

---

[11] Also pending before the Court is Kalanick's motion to dismiss as moot Meyer's claims for declaratory and injunctive relief and Meyer's motion to join four additional parties. As the Court grants Uber's motion to compel and Kalanick's motion for judgment on the pleadings, the Court denies these other motions as moot.

21