UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SPENCER MEYER, individually and on behalf of those similarly situated,<br><br>                Plaintiffs,<br><br>    -against-<br><br>TRAVIS KALANICK, and UBER TECHNOLOGIES, INC.,<br><br>                Defendants. | 1:15 Civ. 9796 (JSR) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO VACATE AN ARBITRAL AWARD

**HARTER SECREST & EMERY LLP**
Brian Marc Feldman
1600 Bausch & Lomb Place
Rochester, New York 14604
Telephone No. (585) 231-1201
bfeldman@hselaw.com

*Attorneys for Plaintiff Spencer Meyer*

May 22, 2020

# TABLE OF CONTENTS

Preliminary Statement ................................................................................................ 1

Background ................................................................................................................. 2

    A.    This Court explicated the controlling antitrust law before compelling arbitration. ......................................................................... 2

        1.    This Court held that Meyer's horizontal price-fixing claims were governed by the doctrine of *Interstate Circuit*, not *Leegin*. ............................................................................. 2

        2.    This Court then sent Meyer's claims to arbitration. .................... 4

    B.    The Arbitrator announced he was afraid of public criticism and ruled for Uber. ................................................................................ 5

        1.    The arbitration put Uber's nationwide surge pricing at risk. ....... 5

        2.    The Arbitrator photographed Mr. Kalanick during the arbitration. ................................................................................... 6

        3.    The Arbitrator confessed that he was afraid to rule against Uber. ......................................................................................... 7

        4.    The Arbitrator then ruled in favor of Uber. ............................... 8

            a.    Contrary to the parties' agreement, the Arbitrator refused to render a reasoned opinion. ............................... 8

            b.    Without explanation, the Arbitrator refused to treat this Court's rulings as law of the case. ........................... 9

            c.    The Arbitrator then rejected this Court's construction of the law, finding *Leegin*, not *Interstate Circuit*, governed. ................................................................. 10

Argument—THE COURT SHOULD VACATE THE ARBITRAL AWARD ........................... 11

    A.    If an arbitrator is swayed by fear or public pressure, his award must be vacated. ............................................................................ 11

        1.    This Court must vacate an award where there is "evident partiality." ................................................................................ 11

        2.    "Partiality" means being swayed by fear, favor, or public opinion. ................................................................................... 12

3.      Partiality is "evident" when it is announced by the
        arbitrator.................................................................................................14

B.      The Award must be vacated on evident partiality grounds...................................15

Conclusion ...............................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aircraft Braking Sys. Corp. v. Local 856, Int'l Union*,
    97 F.3d 155 (6th Cir. 1996) ...................................................................................17

*Bradley v. Fisher*,
    80 U.S. 335 (1871)..................................................................................................14

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988) .................................................................................................9

*Commonwealth Coatings Corp. v. Cont'l Cas. Co.*,
    393 U.S. 145 (1968)...........................................................................................1, 11

*Hayman Cash Register Co. v. Sarokin*,
    669 F.2d 162 (3d Cir. 1982).....................................................................................9

*Holodnak v. Avco Corp.*,
    381 F. Supp. 191 (D. Conn. 1974)...................................................................11, 12

*Interstate Circuit, Inc. v. United States*,
    306 U.S. 208 (1939)........................................................................................ *passim*

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*,
    729 F.3d 99 (2d Cir. 2013).....................................................................................12

*Leegin v. Creative Leather Prods., Inc. v. PSKS, Inc.*,
    551 U.S. 877 (2007).....................................................................................2, 3, 4, 10

*Meyer v. Kalanick*,
    174 F. Supp. 3d 817 (S.D.N.Y. 2016)......................................................2, 3, 4, 10

*Meyer v. Kalanick*,
    185 F. Supp. 3d 448 (S.D.N.Y. 2016)..............................................................2, 3, 4

*Meyer v. Kalanick*,
    199 F. Supp. 3d 752 (S.D.N.Y. 2016)......................................................................4

*Meyer v. Kalanick*,
    212 F. Supp. 3d 437 (S.D.N.Y. 2016)....................................................................16

*Meyer v. Kalanick*,
    291 F. Supp. 3d 526 (S.D.N.Y. 2018)......................................................................4

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)........................................................................................4

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,*
    473 U.S. 614 (1985)....................................................................................6

*Morelite Constr. Corp. v. NYC Dist. Council Carpenters Benefit Funds,*
    748 F.2d 79 (2d Cir. 1984)................................................................ *passim*

*NFL Mgmt. Council v. NFL Players Ass'n,*
    820 F.3d 527 (2d Cir. 2016)......................................................................12

*Saxis S.S. Co. v. Multifacs Int'l Traders, Inc.,*
    375 F.2d 577 (2d Cir. 1967)......................................................................11

*Scandinavian Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.,*
    668 F.3d 60 (2d Cir. 2012)........................................................................11

*United States v. Bartsh,*
    69 F.3d 864 (8th Cir. 1995) ........................................................................9

*Wilkerson v. McCarthy,*
    336 U.S. 53 (1949)....................................................................................13

STATUTES

9 U.S.C. § 10.................................................................................... *passim*

Promissory Oaths Act, 1868 (U.K.)..................................................................13

RULES

Fed. R. Civ. P. 21 ..............................................................................................5

ETHICS CODES

Am. Bar Ass'n Model Code of Judicial Conduct (2016 ed.).........................................13

Am. Bar Ass'n, Code of Ethics for Arbitrators in Commercial Disputes (2004)...........1, 2, 12, 13

Code of Conduct for U.S. Judges (2019) .................................................................1

FORUM Code of Ethical Conduct for Arbitrators ......................................................12

Hong Kong Int'l Arbitration Centre, Code of Ethical Conduct...............................12, 13

Jamaica Int'l Arbitration Centre Ltd., Code of Conduct for Arbitrators ......................13

JAMS, Arbitrator Ethics Guidelines .......................................................................12

**JURY INSTRUCTIONS**

Hon. Miranda M. Du, Chief Judge, U.S. District Court for the District of Nevada,
     Preliminary Jury Instructions (Civil) ......................................................................14

Jury Charge, *United States v. Lumiere*, 16 Cr. 483 (JSR), Dkt. 82
     (S.D.N.Y. Jan. 19, 2017)....................................................................................14

Modern Fed. Jury Instructions-Civil (2020) ...............................................................13

N.Y. Pattern Jury Instructions-Civil (3d ed. 2020)..................................................2, 14

Pattern Crim. Jury Instructions of the Seventh Circuit (2012 ed.)............................1, 14

## PRELIMINARY STATEMENT

**"Arbitrators should conduct themselves in a way that is fair to all parties and should not be swayed by outside pressure, public clamor, and fear of criticism"**
Canon I, Code of Ethics for Arbitrators in Commercial Disputes

**"I must say I act out of fear.  My fear is if I ruled Uber illegal, I would need security.  I wouldn't be able to walk the streets at night.  People would be after me."**
AAA Arbitrator, Trans. of Oct. 25, 2019

Even the liberal federal policy towards arbitration has a limit.  That limit is "where there was evident partiality . . . in the arbitrator[]."  9 U.S.C. § 10(a)(2).  Courts may not enforce awards by arbitrators "biased against one litigant and favorable to another."  *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 150 (1968).  Otherwise, "the sense of fairness that society rightfully demands of its judiciary would be sadly diminished."  *Morelite Constr. Corp. v. NYC Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir. 1984).  Arbitration must be impartial.

The core of impartiality is acting without fear or favor.  The ethical canons for arbitrators and judges alike state that those deciding cases "should not be swayed by outside pressure, public clamor, and fear of criticism or self-interest."  Am. Bar Ass'n, Code of Ethics for Arbitrators in Commercial Disputes (2004) (Arbitration Ethics Code), Canon I(D)[1]; *accord* Code of Conduct for U.S. Judges (2019) (Judicial Code), Canon 3(a).  This is the first rule for many jurors, too:  "You must perform these duties fairly and impartially.  Do not let sympathy, prejudice, fear, or public opinion influence you."  Pattern Crim. Jury Instructions of the Seventh Circuit, Instruction 1.01 (2012 ed.).  To be impartial, a juror cannot consider "what the reaction of the parties or of the

---

[1]   *Available at* https://www.americanbar.org/content/dam/aba/migrated/2011_build/dispute_resolution/commercial_disputes.pdf (last visited May 19, 2020).

public to your verdict may be, whether it will please or displease anyone, be popular or unpopular." N.Y. Pattern Jury Instructions-Civil 1:27 (3d ed. 2020).

The February 22, 2020 award challenged here (the Award) was issued in Uber's favor in explicit violation of this core tenet of impartiality. The stakes in the arbitration were high—the survival of Uber's surge pricing. Indeed, Uber told the arbitrator that a loss would destroy Uber's product. Arbitrators in consumer arbitrations are not usually asked to decide such important questions. And, to be sure, a ruling against Uber could have unleashed a flood of criticism directed at the arbitrator. The arbitrator confessed that facing such criticism was too much for him to bear. At the close of the hearing, the arbitrator acknowledged that Uber was popular and expressed "fear" that he would engender public criticism if he "ruled Uber illegal." He then stated, on the record, that his anticipated ruling flowed from that fear: "I must say I act out of fear."

That is evident partiality—being "swayed by outside pressure, public clamor or fear of criticism." Arbitration Ethics Code, Canon I(D). Courts cannot lend their imprimatur to an award issued with such open bias. Spencer Meyer (Meyer) therefore respectfully asks this Court to vacate the Award.

## BACKGROUND

A.    **This Court explicated the controlling antitrust law before compelling arbitration.**

    1.    **This Court held that Meyer's horizontal price-fixing claims were governed by the doctrine of *Interstate Circuit*, not *Leegin*.**

This Court set out the antitrust doctrine governing this case at its very outset.[2] *See Meyer v. Kalanick*, 174 F. Supp. 3d 817 (S.D.N.Y. 2016). The Court held that Meyer's theory—"that

---

[2] Plaintiff originally filed suit against Uber's then-CEO, Travis Kalanick. *See* Complaint, Dkt. 1 (filed Dec. 16, 2015). Kalanick opted to litigate the legal sufficiency of Plaintiff's antitrust theory, rather than to compel arbitration; and Kalanick lost that motion. *See Meyer v. Kalanick*, 174 F. Supp. 3d 817 (S.D.N.Y. 2016) (denial of motion to dismiss), *denying partial reconsideration at* 185 F. Supp. 3d 448, 453-54 & n.3 (S.D.N.Y. 2016) ("no motion to compel arbitration has been

drivers agree with Uber to charge certain fares with the clear understanding that all other Uber drivers are agreeing to charge the same fares," allowing them to synchronously raise fares—stated a horizontal price-fixing claim. *Id.* at 824. Rejecting the argument that Uber could not orchestrate a conspiracy between thousands of shifting sets of drivers, this Court explained that "Uber's digitally decentralized nature does not prevent the App from constituting a 'marketplace' through which Mr. Kalanick organized a horizontal conspiracy among drivers." *Id.* at 825. Rather, "the capacity to orchestrate such an agreement is the 'genius' of Mr. Kalanick and his company, which, through the magic of smartphone technology, can invite hundreds of thousands of drivers in far-flung locations to agree to Uber's terms." *Id.* "The fact that Uber goes to such lengths to portray itself—one might even say disguise itself—as the mere purveyor of an 'app' cannot shield it from the consequences of its operating as much more." *Id.* at 826. As this Court observed: "The advancement of technological means for the orchestration of large-scale price-fixing conspiracies need not leave antitrust law behind." *Id.* at 825.

The Court ruled that Meyer's horizontal price-fixing claim was controlled by *Interstate Circuit, Inc. v. United States*, 306 U.S. 208 (1939), not by *Leegin v. Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007). *See* 174 F. Supp. 3d at 824-26 & n.5. As per this Court, *Interstate Circuit* "held" that competitors unlawfully conspire by agreeing to the same "terms, including price restrictions," "'knowing that concerted action was contemplated and invited.'" *Id.* (quoting *Interstate Circuit*, 306 U.S. at 226-27). And nothing in *Leegin* displaced that doctrine. *See* 174 F. Supp. 3d at 826. "Here, unlike in *Leegin*, Uber is not selling anything to drivers that is then resold to riders. Moreover, the justifications for rule of reason treatment of resale price

_____

made (and, as noted appears to have been effectively relinquished)"). Uber later joined as a necessary party. *See* Order, Dkt. 90 (filed June 20, 2016).

maintenance agreements offered in *Leegin* are not directly applicable to the instant case." *Id.*
"*Leegin* did not purport to overrule *Interstate Circuit*, which . . . permits a finding of a conspiracy among competitors in circumstances such as those of the instant case." *Id.*, n.5.

      **2.**      **This Court then sent Meyer's claims to arbitration.**

      Following the Court's decision on the governing doctrine, this matter did not move forward to class certification or trial.  Rather, even though this Court calendared a trial for February 2017, *see* Dkt. 139, the Second Circuit held that Uber's contract of adhesion required arbitration, *see Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017), *rev'g sub nom.*, *Meyer v. Kalanick*, 199 F. Supp. 3d 752, 755 (S.D.N.Y. 2016) ("[I]n this brave new world, consumers are routinely forced to waive their constitutional right to a jury and their very access to courts, and to submit instead to arbitration, on the theory that they have voluntarily agreed to do so in response to endless, turgid, often impenetrable sets of terms and conditions, to which, by pressing a button, they have indicated their agreement."); *see also Meyer v. Kalanick*, 291 F. Supp. 3d 526, 529 (S.D.N.Y. 2018) ("federal district courts are now obliged to enforce what everyone recognizes is a totally coerced waiver of both the right to a jury and the right of access to the courts").  On remand, the Court granted Uber's motion to compel arbitration.[3]  *See* Dkt. 169 (filed Nov. 22, 2017); *see also Meyer*, 291 F. Supp. 3d at 530, 536-37.

**B.**      **The Arbitrator announced he was afraid of public criticism and ruled for Uber.**

      **1.**      **The arbitration put Uber's nationwide surge pricing at risk.**

      Meyer continued to pursue this matter in arbitration.  Consistent with this Court's orders and Uber's arbitration terms, Meyer initiated arbitration by filing a written demand for arbitration

---

[3] As to Kalanick, the Court "dismisse[d] Meyer's case without prejudice to Meyer pursuing his claims against Kalanick before an arbitrator."  Dkt. 169; *see also Meyer*, 291 F. Supp. 3d at 530, 536-37.

on the form specified by the AAA Consumer Arbitration Rules.  *See* Demand for Arbitration, dated May 31, 2018 (AAA Demand) & Ex. 9 thereto (arbitration terms), attached to the Declaration of Brian M. Feldman, dated May 22, 2020 (Feldman Decl.) as Ex. A.  On September 18, 2018, the AAA appointed Les J. Weinstein as the arbitrator (the Arbitrator).  *See* AAA Ltr. dated Sept. 18, 2018, Feldman Decl., Ex. B.

The arbitration put Uber's surge pricing, nationwide, at risk.[4]  In the arbitration, as in the litigation, Meyer sought to declare Uber's surge pricing practices illegal and enjoin them *in toto*, not just as to himself.  *See* AAA Demand at 4 ("In this arbitration, Meyer seeks . . . [a]n injunction prohibiting Uber and Kalanick from continuing to use the Uber pricing algorithm for setting fares, including surge fares."); *see also* Joint Hearing Order, dated Oct. 11, 2019 (Jt. Hr'g Order), at 6-8 (proposed award), Feldman Decl. Ex. C.

Uber attempted, but failed, to take a potential nationwide injunction off the table in advance of the hearing.  Ten months before the hearing, Uber moved to preclude injunctive or declaratory relief affecting surge pricing.  *See* Uber Mtn. to Dismiss Claims for Injunctive and Declaratory Relief, dated Dec. 21, 2018, Feldman Decl., Ex. D.  And, in an unsuccessful attempt to moot the case, Uber proffered "an injunction that prohibits Uber from applying its surge pricing algorithm to Meyer's individual Uber account, trebled monetary relief . . ., and attorneys' fees."  Reply in Further Support of Uber's Mtn. to Dismiss, dated Feb. 5, 2019, at 1, Feldman Decl., Ex. E.

But Meyer rejected that offer and defeated Uber's motion to dismiss.  Meyer explained that, in the arbitration, he sought the same declaratory and injunctive relief available to private

---

[4]  Meyer limited the arbitration to a horizontal challenge to periods of surge pricing.  *See* Jt. Hr'g Order at 4.  And, over Meyer's objections, the Arbitrator dropped Mr. Kalanick as a defendant without prejudice.  *See* Order dated Apr. 16, 2019, Feldman Decl., Ex. H; *cf.* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, . . . drop a party.").

litigants in district court.  *See* Meyer Opp. to Uber Mtn. to Dismiss, dated Jan. 18, 2019 (Opp.), at 3-5, Feldman Decl., Ex. F; Suppl. Mem. in Opp. to Uber Mtn. to Dismiss, dated Mar. 11, 2019 (Suppl. Opp.), at 3-4, 6-7, Feldman Decl., Ex. G.  Uber, Meyer explained, was estopped from arguing that Meyer could not seek such relief after telling this Court, on a successful motion, that arbitration would provide Meyer the same remedies he sought in district court.  *See* Opp. at 8-12, Feldman Decl., Ex. F.  And, if the arbitration restricted Meyer's antitrust remedies as Uber contended, it would violate the rule of *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614 (1985), and be unenforceable.  *See* Opp. at 12-17, Feldman Decl., Ex. F; Suppl. Opp. at 3-6, Feldman Decl., Ex. G.  The Arbitrator denied Uber's motion (although he did not explain why).  *See* Order dated Apr. 16, 2019, Feldman Decl., Ex. H.

Thus, when the hearing opened in October 2019, Uber's nationwide practice of surge pricing was at stake.  As the Arbitrator put it, "[T]he purpose of our being here with all these people is, you think I have the power . . . to enjoin surge pricing nationwide."  Trans. of Oct. 25, 2019 (Day 3 Trans.), at 962:9-13, Feldman Decl., Ex. I; *see also* Trans. of Oct. 23, 2019 (Day 1 Trans.), at 56:9-12 (Arbitrator:  "[T]here are lots of issues in this case that are fascinating and it, obviously, involves more than [Meyer's damages]"), Feldman Decl., Ex. J.

### 2.       The Arbitrator photographed Mr. Kalanick during the arbitration.

Mr. Kalanick testified on the first day of the hearing.  *See, e.g.*, Day 1 Trans. at 116, Feldman Decl., Ex. J.  Mr. Kalanick founded Uber, *see id.* at 121:2-3, is the subject of at least two full-length books, *see, e.g.*, Mike Isaac, Super Pumped: The Battle for Uber (W. W. Norton & Company 2019); Adam Lashinsky, Wild Ride: Inside Uber's Quest for World Domination (Penguin 2017), and is listed on the Forbes 400 list of the wealthiest Americans, *see* "Travis Kalanick," Forbes, at https://www.forbes.com/profile/travis-kalanick/#442e7aa36199 (last visited May 20, 2020).  He is incontestably famous.

The Arbitrator photographed Mr. Kalanick in the hearing room.  As members of Meyer's litigation team and Meyer himself recount, the Arbitrator used his smartphone to photograph Mr. Kalanick following the conclusion of his testimony.   *See* Declaration of Spencer Meyer, dated May 20, 2020 (Meyer Decl.); Declaration of Kaleigh Wood, dated May 21, 2020 (Wood Decl.); Declaration of Lauren Mendolera, dated May 22, 2020 (Mendolera Decl.).

### 3.    The Arbitrator confessed that he was afraid to rule against Uber.

Meyer asked the Arbitrator to enjoin surge pricing and declare it illegal following the three-day hearing.  By then, Meyer had provided proof for each part of his horizontal legal theory.  Uber admitted it is a "marketplace of riders and drivers."  Trans. of Oct. 24, 2019 (Day 2 Trans.), at 310:16-20, Feldman Decl., Ex. K. Its drivers, not Uber, sell rides.  Joint Stipulation dated Oct. 18, 2019 (Jt. Stip.), ¶¶ 7-9, Feldman Decl., Ex. L.   Drivers are competitors, and they have been since Uber's origin.  *See, e.g.*, Day 1 Trans. at 143:23-144:18 (Kalanick testimony), Feldman Decl., Ex. J.  Uber uses surge pricing to lure those drivers to its marketplace.  With surge, as Uber's expert testified, drivers "make more money; that's the point of surge."  Day 3 Trans. at 811:24-25, Feldman Decl., Ex. I.  Drivers agree, by contract, to let Uber surge their fares synchronously.  *See* Meyer Ex. 25, § 4.1 (driver agreement), Feldman Decl., Ex. M; Day 2 Trans. at 553:10-21, Feldman Decl., Ex. K.  And drivers cannot undercut surge pricing on Uber.  *See* Day 2 Trans. at 512:9-15, 598:24-599:3, Feldman Decl., Ex. K.  In short, Meyer proved that, as in *Interstate Circuit*, Uber's platform-wide restraint—against price competition—was the only reason Uber could surge prices.  *See generally* Meyer Post-Hearing Br., dated Nov. 15, 2019, Feldman Decl., Ex. Q; Meyer Post-Hearing Reply Br., dated Jan. 6, 2020, Feldman Decl., Ex. P.

But the Arbitrator feared the public criticism he would face by ruling Uber's surge pricing illegal.  We know that because he said so on the record.  The Arbitrator announced his fear at the close of the hearing, after both sides rested, and after closing arguments.  He declared:

> I must say I act out of fear.  My fear is if I ruled Uber illegal, I would need security.
> I wouldn't be able to walk the streets at night.  People would be after me.

Day 3 Trans. at 1002:10-14, Feldman Decl., Ex. I.

The Arbitrator's admission was threefold.  First, he admitted what he feared to do—to "rule[] Uber illegal."  Second, the Arbitrator explained why he was afraid to do it—he feared public criticism arising from a ruling against a popular company.  And, third, he confessed that he would be swayed by that fear:  "I must say I act out fear."  The Arbitrator thus confessed on the record that, because of Uber's popularity, he was afraid of ruling for Meyer and that he would act on that fear.

### 4.    The Arbitrator then ruled in favor of Uber.

And so he did.  Consistent with his announcement that he would "act out of fear" of "rul[ing] Uber illegal," *see id*., the Arbitrator issued an award in Uber's favor.  *See* Award dated Feb. 22, 2020 (the Award), Feldman Decl., Ex. N.

### a.    Contrary to the parties' agreement, the Arbitrator refused to render a reasoned opinion.

In doing so, the Arbitrator refused to provide a fully reasoned opinion.  He recognized that the parties had stipulated that the award should be in the form of a reasoned opinion.  *See id.* at 4 ("the parties have requested a reasoned award").  But the Arbitrator declined to provide one, stating that "[t]he tribunal has chosen here in the interest of brevity and economy to offer more than a general explanation and less than what would be a fully reasoned Award complete with citations and reference to the hearing record."  *Id.*

   **b.**  **Without explanation, the Arbitrator refused to treat this Court's rulings as law of the case.**

  But the Arbitrator offered no explanation at all (not even a "general" one) as to why this Court's explication of governing antitrust doctrine did not merit law-of-the-case status.[5]

  The issue was briefed and argued.  Because arbitrators properly apply law-of-the-case doctrine to district court decision made prior to compulsory arbitration, Meyer urged the Arbitrator to apply the doctrine to "'prevent[] the relitigation of a settled issue in a case . . . to ensure uniformity of decisions, protect the expectations of the parties, and promote judicial economy.'" Meyer Pre-Hearing Br., dated Oct. 16, 2019, at 13 (quoting *United States v. Bartsh*, 69 F.3d 864, 866 (8th Cir. 1995)), Feldman Decl., Ex. O.  Meyer argued that "'[a]dherence to law of the case principles is even more important' here, in arbitration, because the transferring judge and the arbitrator 'are not members of the same court.  Here, principles of comity . . . provide a further reason why [this tribunal] should not independently re-examine an issue already decided by a court of equal authority.'"  *Id.* at 14 (quoting *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 169 (3d Cir. 1982), *cited by Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988)); *see also* Meyer Post-Hearing Reply Br. at 3-4, Feldman Decl., Ex. P.  As Meyer explained at both the hearing, *see* Day 3 Trans. at 921:2-12, 936:21-945:11, Feldman Decl., Ex. I, and in pre-hearing and post-hearing briefing, *see* Meyer Pre-Hearing Br. at 13-14, Feldman Decl., Ex. O; Meyer Post-Hearing Reply Br. at 3-4, Feldman Decl., Ex. P; Meyer Post-Hearing Br., at 5, 7, 11, 15-16, Feldman Decl., Ex. Q, law-of-the-case doctrine had particular force because the same

---

[5] Uber conceded, at the hearing, that Mr. Kalanick and Uber were in privity during Mr. Kalanick's litigation of the motion to dismiss before this Court.  *See* Day 1 Trans. at 191:2-192:19, Feldman Decl., Ex. J.

lawyers were making the same arguments to the Arbitrator that they had made to—and that had

already been decided by—this Court.[6]

c.   The Arbitrator then rejected this Court's construction of the law, finding *Leegin*, not *Interstate Circuit*, governed.

The Arbitrator then upended Meyer's expectations, on which he had prosecuted his case,

by construing antitrust doctrine in contradiction to this Court's earlier holding.   Indeed, the

Arbitrator disagreed with this Court on almost every point argued:

- **Holding of *Interstate Circuit***.  This Court held that the Supreme Court's test as spelled out in *Interstate Circuit*—permitting a finding of conspiracy with a common invitation, accepted by vertical actors only because they knew their competitors were accepting it too—was a controlling holding, see *Meyer*, 174 F. Supp. 3d at 824, but the Arbitrator concluded that the same passage quoted by this Court was mere "dictum," *see* Award at 12.

- **Impact of *Leegin***.  This Court held that "*Leegin* did not purport to overrule *Interstate Circuit*, which . . . permits a finding of a conspiracy among competitors in circumstances such as those of the instant case," *Meyer*, 174 F. Supp. 3d at 826 n.5, but the Arbitrator agreed with Uber that *Leegin* "precluded a 'per se' analysis" as in *Interstate Circuit*, Award at 5-6, 10.

- **Conspiracy among innumerable drivers**.  This Court held that "Uber's digitally decentralized nature does not prevent the App from constituting a 'marketplace' through which Mr. Kalanick orchestrated a horizontal conspiracy among drivers," *Meyer*, 174 F. Supp. 3d at 825, but the Arbitrator concluded that no conspiracy was possible because "[t]here are from time to time an ever varying number of individual driver[s]," Award at 9.

- **Applicability to modern technology**.  Further, this Court held that "[t]he advancement of technological means for the orchestration of large-scale price-fixing conspiracies need not leave antitrust law behind," *Meyer*, 174 F. Supp. 3d at 825, but the Arbitrator found the doctrine "ill suited to 21st Century technology," Award at 6.

---

[6] In the arbitration, Uber was represented by lead counsel William Isaacson of Boies Schiller Flexner LLP, who had earlier served as lead counsel for Mr. Kalanick in this litigation.   The hearing was thus déjà vu, with the undersigned and Mr. Isaacson making the same arguments they had made three-and-a-half years earlier to this Court.

The Arbitrator reached these conclusions only by refusing to apply law-of-the-case doctrine, a decision that the Arbitrator refused to justify, contrary to the parties' stipulation that any award be fully reasoned.

## A R G U M E N T

## THE COURT SHOULD VACATE THE ARBITRAL AWARD.

This Court should vacate the arbitral award on the ground of "evident partiality."  The Arbitrator did not approach this matter impartially, without fear or favor.  Rather, the Arbitrator announced his "fear" that, if he "ruled Uber illegal," he would be subject to public backlash; and the Arbitrator stated that he would therefore "act out of fear."  This Court should vacate the award, rather than add its imprimatur to an award issued by an expressly partial arbitrator.

**A.     If an arbitrator is swayed by fear or public pressure, his award must be vacated.**

**1.     This Court must vacate an award where there is "evident partiality."**

This Court must vacate an arbitral award "where there was evident partiality" by an arbitrator.  9 U.S.C. § 10(a)(2).  "[I]t was '[not] the purpose of Congress to authorize litigants to submit their cases and controversies' to arbitrators who are 'biased against one litigant and favorable to another.'"  *Scandinavian Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 73 (2d Cir. 2012) (quoting *Commonwealth Coatings Corp.*, 393 U.S. at 150).  If courts "lend [their] imprimatur to an award grounded in . . . bias, the sense of fairness that society rightfully demands of its judiciary would be sadly diminished."  *Morelite Constr.*, 748 F.2d at 84.

To assess bias, this Court may review the arbitration hearing transcript.  "[When] a claim of partiality is made, the court is under an obligation to scan the record to see if it demonstrates 'evident partiality' on the part of the arbitrators."  *Saxis S.S. Co. v. Multifacs Int'l Traders, Inc.*, 375 F.2d 577, 582 (2d Cir. 1967).  And where "[t]he transcript of the arbitration . . . discloses substantial evidence of partiality," the award should be vacated.  *Holodnak v. Avco Corp.*, 381 F.

Supp. 191, 198-99 (D. Conn. 1974) (finding "evident partiality" where arbitrator "badgered the plaintiff"), *aff'd in relevant part by* 514 F.2d 285, 287 (2d Cir. 1975).

Evident partiality includes actual bias, as well as, at times, the appearance of bias. "'[E]vident partiality' within the meaning of 9 U.S.C. § 10 will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Morelite Constr.*, 748 F.2d at 84; *see NFL Mgmt. Council v. NFL Players Ass'n*, 820 F.3d 527, 548 (2d Cir. 2016). "Although a party seeking vacatur must prove evident partiality by showing something more than the mere appearance of bias, proof of actual bias is not required." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (quotation marks and citations omitted). But actual bias suffices.

### 2.    "Partiality" means being swayed by fear, favor, or public opinion.

An arbitrator is partial if he or she acts based on fear, favor, or public pressure.

This is the first rule of arbitrator ethics. Canon I of the Code of Ethics for Arbitrators provides that "Arbitrators should conduct themselves in a way that is fair to all parties and should not be swayed by outside pressure, public clamor or fear of criticism or self-interest." Arbitration Ethics Code, Canon I(D). This basic tenet of impartiality—that decisions be reached on the law and the facts, not out of fear or favor—is repeated in the fifth canon of the Arbitration Ethics Code, too: "An arbitrator should decide all matters justly, exercising independent judgment, and should not permit outside pressure to affect the decision." [7] *Id.*, Canon V(B).

---

[7] This rule appears throughout arbitration ethics codes. *See, e.g.*, JAMS, Arbitrator Ethics Guidelines, Guideline VIII(A) ("An Arbitrator's Award should not be influenced by fear or criticism . . ., nor should an Arbitrator issue an Award that reflects a compromise position in order to achieve such acceptability."), *at* https://www.jamsadr.com/arbitrators-ethics/; FORUM Code of Ethical Conduct for Arbitrators (Jan. 2015) (FORUM Arbitration Ethics Code), Canon I(C), *at* https://www.adrforum.com/assets/resources/Neutrals/FORUM%20Code%20of%20Ethical%20C onduct%20for%20Arbitrators%201.27.2015.pdf; Hong Kong Int'l Arbitration Centre, Code of Ethical Conduct, R. 2 ("An arbitrator shall not permit outside pressure, fear of criticism or any

This basic demand of impartiality is not unique to arbitrators; it is likewise a cornerstone of judicial ethics.  The first canon of judicial conduct requires judges to "maintain and enforce high standards," "so that the integrity and independence of the judiciary may be preserved." Judicial Code, Canon 1.  That means, as the Judicial Code's commentary explains, "acting without fear or favor."  *Id.*, Commentary to Canon 1.  And, where the Judicial Code specifies what it means to perform duties "impartially," it too begins with the primary rule that a judge "should not be swayed by partisan interests, public clamor, of fear of criticism."  *Id.*, Canon 3(A)(1); *see also* Am. Bar Ass'n Model Code of Judicial Conduct (2016 ed.) (Model Code), R. 2.4(A) ("A judge shall not be swayed by public clamor or fear of criticism."); *cf. Wilkerson v. McCarthy*, 336 U.S. 53, 65 (1949) (Frankfurter, J.) ("A timid judge, like a biased judge, is intrinsically a lawless judge.").[8] Impartiality requires adjudication "according to the law and facts, without regard to whether particular laws or litigants are popular or unpopular with the public."  Model Code, Comment to R. 2.4.

Jurors must similarly abide by this foundational principle.  The juror oath "to render judgment impartially and fairly" means to decide cases "without fear."  4 Modern Fed. Jury Instructions-Civil, Instruction 71-4 (2020).  The first jury instruction to jurors in the Seventh

---

form of self-interest to affect his or her decisions.  An arbitrator shall decide all the issues submitted for determination after careful deliberation and the exercise of his or her own impartial judgment."), *at* https://www.hkiac.org/arbitration/arbitrators/code-of-ethical-conduct;  Jamaica Int'l Arbitration Centre Ltd., Code of Conduct for Arbitrators, R. 6.3 ("An arbitrator shall decide all the issues submitted for determination after careful deliberation and exercise his own impartial judgment and shall not permit outside pressures, fear of criticisms or any form of self-interest to affect his decisions."), *at* https://jaiac.org/code-of-conduct-for-arbitrator-fasttrack/.

[8] In the United Kingdom, the judicial oath is centered around this tenet:  "I will do right to all manner of people after the laws and usages of this realm, without fear or favour, affection, or ill will."  Promissory Oaths Act, 1868, ch.72, sec.4.

Circuit is thus:  "You must perform these duties fairly and impartially.  Do not let sympathy, prejudice, fear, or public opinion influence you."  Pattern Crim. Jury Instructions of the Seventh Circuit, Instruction 1.01.  As the New York courts tell jurors:  "It is basic to the administration of any system of justice that the decision on both the law and the facts be made fairly and honestly."  N.Y. Pattern Jury Instructions-Civil 1:36.  To be impartial, a juror cannot consider "what the reaction of the parties or of the public to your verdict may be, whether it will please or displease anyone, be popular or unpopular."  *Id.*, 1:27.  This Court has similarly instructed jurors:  "[I]f you were to let bias, or prejudice, or fear, or sympathy, or any other irrelevant consideration interfere with your thinking, there would be a risk that you would not arrive at a true and just verdict."  Jury Charge, *United States v. Lumiere*, 16 Cr. 483 (JSR), Dkt. 82, 1076:12-17 (S.D.N.Y. Jan. 19, 2017).[9]  Impartiality without fear of favor is a constant requirement for any fair adjudication.

Thus, at a minimum, impartial adjudication requires that cases be decided without fear or favor.  The Supreme Court said so long ago.  It is "essential" that all those who "administer the law should be permitted to administer it under the protection of the law, independently and freely, without favor and without fear."  *Bradley v. Fisher*, 80 U.S. 335, 349 n.16 (1871).  Where an adjudicator acts based on actual fear or favor, he or she fails to act impartially.

### 3.     Partiality is "evident" when it is announced by an arbitrator.

Actual bias most clearly exists where an arbitrator directly states his or her partiality on the record.  *Morelite Constr.*, 748 F.2d at 84.  Because that rarely happens, actual bias is typically

---

[9] Some courts additionally instruct jurors that, to be impartial, they may "not be influenced by any person's . . . celebrity, economic circumstances, or position in life or in the community."  *See, e.g.*, Hon. Miranda M. Du, Chief Judge, U.S. District Court for the District of Nevada, Preliminary Jury Instructions (Civil) (Judge Du Jury Instructions) at 1, *at* https://www.nvd.uscourts.gov/wp-content/uploads/2019/09/Preliminary-Jury-Instructions-Civil.pdf (last visited May 17, 2020).

"difficult, and indeed often impossible, to 'prove.'" *Id.* But, as the Second Circuit has recognized, the best proof of actual bias is if an "arbitrator publicly announces his partiality." *Id.*

**B.     The Award must be vacated on evident partiality grounds.**

Here, "the arbitrator publicly announce[d] his partiality." *Morelite Constr.*, 748 F.2d at 84. Indeed, he did so in the starkest terms. Before entering an award for Uber, the arbitrator announced that he was afraid to "rule[] Uber illegal." Day 3 Trans. at 1002:10-14, Feldman Decl., Ex. I. Meyer, as noted, had asked the Arbitrator to enjoin Uber's platform as illegal. But the Arbitrator was afraid to do so because of Uber's popularity. As he put it, "People would be after me." *Id.* The Arbitrator confessed, on the record, that he was swayed by that fear: "I must say I act out of fear." *Id.*

To be fair, that fear is understandable. The arbitration placed a weighty issue before the Arbitrator—the legality of Uber's surge pricing. Uber told the Arbitrator that an adverse ruling could destroy its chief product. Uber is popular, and ruling against a popular business can unleash public criticism. Moreover, arbitrators lack the independence of Article III judges. The New York Times has reported that oftentimes "arbitrators . . . [feel] beholden to companies." *See* Jessica Silver-Greenberg & Michael Corkery, "In Arbitration, a 'Privatization of the Justice System,'" N.Y. Times (Nov. 1, 2015), https://www.nytimes.com/2015/11/02/business/dealbook/in-arbitration-a-privatization-of-the-justice-system.html ("[I]n interviews with The Times, more than three dozen arbitrators described how they felt beholden to companies."). "Beneath every decision [is] the threat of losing business." *Id.* ("Fearful of losing business, some arbitrators pass around the story of Stefan M. Mason as a cautionary tale. They say Mr. Mason ruled in favor of an employee in an age discrimination suit, . . . and was never hired to hear another employment case. . . . [M]ore than 30 arbitrators said in interviews that the pressure to rule for the companies that

15

give them business was real.").  Further, the Arbitrator had heard disturbing evidence of Uber's retaliation against Meyer in this dispute, which provided ample fodder for fear, too.[10]  But, understandable or not, the law requires arbitrators to adjudicate cases without fear or favor.  9 U.S.C. § 10(a)(2).

The Award that followed the Arbitrator's statement that he was acting on fear must be vacated.  The Arbitrator admitted that he was actually biased and explained why:  he feared ruling against Uber because of its popularity.  And the Arbitrator admitted that he would "act of out of fear" in making his decision.  Day 3 Trans. at 1002:10-14, Feldman Decl., Ex. I.  The Arbitrator's bias was evident; he stated it on the record.  Because the arbitrator announced his inability to be impartial, he displayed "evident partiality," 9 U.S.C. § 10(a)(2), and the Award must be vacated, *see Morelite Constr.*, 748 F.2d at 84.

Meyer need not show anything further to vacate the Award.  But there was more evidence of partiality at the hearing.  The Arbitrator photographed the famous Mr. Kalanick—a central figure in the dispute between the parties—in the middle of the hearing, near the conclusion of Mr. Kalanick's testimony.  *See* Meyer Decl.; Wood Decl.; Mendolera Decl.  In doing so, the Arbitrator showed that he was starstruck by Uber's witness.  *See* "Starstruck." Merriam-Webster.com, at https://www.merriam-webster.com/dictionary/starstruck (last visited May 19, 2020) ("particularly

---

[10] The Arbitrator attributed his fear to potential public criticism, but Uber's record of using intimidation against its enemies in this case could have also contributed to the Arbitrator's acknowledged fear to rule against Uber.  The Arbitrator learned that, "in response to the filing of [Meyer's antitrust] lawsuit" in this case, Uber had decided "to hire unlicensed private investigators to conduct secret personal background investigations of both the plaintiff and his counsel." *Meyer v. Kalanick*, 212 F. Supp. 3d 437, 439 (S.D.N.Y. 2016).  Those "investigators flagrantly lie[d] to friends and acquaintances of the plaintiff and his counsel in an (ultimately unsuccessful) attempt to obtain derogatory information about them." *Id.*  "[T]he purpose of the investigation was to try and unearth derogatory personal information about Mr. Meyer and his counsel that could then be used to try to intimidate them or to prejudice the Court against them." *Id.* at 443.

taken with celebrities"). That overt display of favor compounded the Arbitrator's partiality towards Uber. *See* Judge Du Jury Instructions at 1 ("You . . . must not be influenced by any person's . . . celebrity, economic circumstances, or position in life or in the community.").

It is impossible to know how the Arbitrator would have resolved the arbitration had he proceeded without fear or favor. But one possible manifestation of this fear was the Arbitrator's refusal to treat this Court's decisions as law of the case. *Cf. Aircraft Braking Sys. Corp. v. Local 856, Int'l Union*, 97 F.3d 155, 162-63 (6th Cir. 1996) ("The arbitrator obviously did not believe himself bound by prior judicial resolution of the same issue in a lawsuit involving the same parties, nor did the arbitrator even discuss collateral estoppel in coming to a conclusion in direct conflict with a prior federal court holding. On these facts, the district court's decision to remand the case to a new arbitrator was correct."). That was a highly consequential decision. Once the Arbitrator pushed this Court's rulings aside and construed antitrust doctrine on the terms Uber had unsuccessfully urged to this Court, Meyer's case was lost. Yet the Arbitrator offered no explanation—in open defiance of the parties' stipulation for a reasoned Award—for his outcome-determinative decision not to apply the law-of-the-case doctrine. We cannot know for certain the reason for this glaring omission. But it put a heavy thumb on the scale for Uber. And the Arbitrator himself offered a possible explanation: "I must say I act out of fear."

Because the Arbitrator announced that he was swayed by fear of public criticism, the Award was issued "where there was evident partiality." 9 U.S.C. § 10(a)(2). The Award must therefore be vacated. *See id.*

**CONCLUSION**

Meyer respectfully requests that this Court vacate the Award.


Dated: March 22, 2020
      Pittsford, New York

/s/ Brian M. Feldman
Brian Marc Feldman
HARTER SECREST & EMERY LLP
1600 Bausch & Lomb Place
Rochester, New York 14604
Telephone No. (585) 231-1201
bfeldman@hselaw.com


*Attorneys for Spencer Meyer*
