# EXHIBIT 6

**Archived:** Tuesday, April 24, 2018 11:07:18 AM
**From:** Feldman, Brian M.
**Sent:** Monday, April 16, 2018 8:12:55 PM
**To:** Lev_Menand@nysd.uscourts.gov
**Cc:** jbriody@mckoolsmith.com; pskinner@bsfllp.com; kdunn@bsfllp.com; tboutrous@gibsondunn.com; rbrodsky@gibsondunn.com
**Subject:** Re: Meyer v. Kalanick, 15-cv-9796
**Sensitivity:** Normal

---

Now that the appeal has been discontinued, Plaintiff will be proceeding with arbitration.

Respectfully,
Brian Feldman

On Apr 16, 2018, at 6:56 PM, "Lev_Menand@nysd.uscourts.gov" <Lev_Menand@nysd.uscourts.gov> wrote:

> Counsel,
>
> The Court is in receipt of the mandate issued in the above-captioned case on April 13, 2018 by the Second Circuit Court of Appeals. Are the parties now proceeding with arbitration or have the parties settled the case?
>
> Thanks,
> Lev
>
> Lev Menand
>
> Law Clerk to the Hon. Jed S. Rakoff
> U.S. District Court for the Southern District of New York
> Daniel Patrick Moynihan United States Courthouse
> 500 Pearl Street, Room 1340
> New York, NY 10007
> Office: (212) 805-0401

# EXHIBIT 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SPENCER MEYER, individually and on behalf of
those similarly situated,

                    Plaintiffs,

            vs.

TRAVIS KALANICK and
UBER TECHNOLOGIES, INC.,

                    Defendants.

1:15 Civ. 9796 (JSR)

ECF Case

**PLAINTIFF'S FIRST SET OF
REQUESTS FOR ADMISSION TO
UBER TECHNOLOGIES, INC.**

Pursuant to Federal Rules of Civil Procedure 26 and 36, Plaintiff Spencer Meyer, by his

attorneys, hereby requests that Defendant Uber Technologies, Inc. respond to the following

requests for admission, separately and fully in writing, within 30 days of the date of service of

these Requests for Admission.

## INSTRUCTIONS

1.      Read and interpret these Requests in accordance with the definitions and

instructions herein, the Federal Rules of Civil Procedure, the Local Rules of Civil Procedure for

the Southern District of New York, and any other controlling authority.

2.      Unless the context clearly indicates that the opposite is intended, for purposes of

construing these Requests, give all terms their most expansive and inclusive interpretations to

bring within their scope all responses that might otherwise be construed to be outside their scope,

including, consistent with Local Civil Rule 26.3:

    a.      the terms "all," "any," and "each" shall each be construed as encompassing
any and all;

    b.      the connectives "and" and "or" shall be construed either disjunctively or
conjunctively as necessary to bring within the scope of the discovery request
all responses that might otherwise be construed to be outside of its scope; and

    c.      the use of the singular form of any word includes the plural and vice versa.

3.  Pursuant to Federal Rule of Civil Procedure 36(a)(4), if a Request is not admitted, the answer must specifically deny it or state in detail why it cannot truthfully be admitted or denied.  Any denial must fairly respond to the substance of the Request; and when good faith requires qualification of an answer or denial only of a part of a Request, the answer must specify the part admitted and qualify or deny the rest.

4.  These Requests are continuing.  Please make prompt further and supplemental responses between the time of the initial response and the trial in this matter.

### DEFINITIONS

1.  "Kalanick" refers to Travis Kalanick, the chief executive officer of Uber.

2.  "Uber" means and includes Uber Technologies, Inc. and each person or entity acting on its behalf, including but not limited to its parent and subsidiary companies, predecessors-in-interest, successors-in-interest, affiliated entities, officers, directors, partners, associates, shareholders, agents, consultants, employees, servants, representatives, accountants, investigators, attorneys, or Kalanick.

3.  The "Uber App" means the application for smartphone devices through which Users of the Uber App can request drivers to pick them up and take them to their desired destination, and which utilizes dispatch software to send the nearest independent drivers to the requesting parties' locations.

4.  "Users" or "Uber Users" means individuals who have sought and received transportation through the Uber App within the United States.

5.  "Driver-Partner" means a driver who has provided transportation services through the Uber App.

6.  "Surge Pricing" means the mechanism or the component of the Uber algorithm by

which the standard fares calculated by Uber may be multiplied by factors of up to ten times during periods of high user demand or low driver supply.

## REQUESTS FOR ADMISSION

REQUEST NO. 1: Admit that at one or more times between January 1, 2010 and the present, Kalanick has been an Uber Driver-Partner.

REQUEST NO. 2: Admit that when Kalanick acted as an Uber Driver-Partner, Kalanick provided transportation services to Uber Users.

REQUEST NO. 3: Admit that when Kalanick acted as an Uber Driver-Partner, Kalanick sold transportation services to Uber Users.

REQUEST NO. 4: Admit that when Kalanick acted as an Uber Driver-Partner, Kalanick did not bid or compete with other Uber Driver-Partners based on price.

REQUEST NO. 5: Admit that when Kalanick acted as an Uber Driver-Partner, Kalanick did not negotiate fares with Uber Users.

REQUEST NO. 6: Admit that when Kalanick acted as an Uber Driver-Partner, Kalanick did not negotiate fares with Uber.

REQUEST NO. 7: Admit that when Kalanick acted as an Uber Driver-Partner, Kalanick did not request that Uber reduce any fare calculated by the Uber App.

REQUEST NO. 8: Admit that when Kalanick acted as an Uber Driver-Partner, Kalanick did not reduce any fare calculated by the Uber App.

REQUEST NO. 9: Admit that from January 1, 2010 to the present, Uber has offered in the United States a smartphone application that connects Uber Users with independent transportation providers.

REQUEST NO. 10: Admit that from January 1, 2010 to the present, Uber has not been

a transportation company in the United States.

REQUEST NO. 11:    Admit that from January 1, 2010 to the present, Uber has not been a transportation carrier in the United States.

REQUEST NO. 12:    Admit that from January 1, 2010 to the present, Uber has not sold transportation services to Uber Users in the United States.

REQUEST NO. 13:    Admit that from January 1, 2010 to the present, Uber Driver-Partners have been independent companies or individuals in the business of providing transportation services.

REQUEST NO. 14:    Admit that from January 1, 2010 to the present, Uber Driver-Partners have sold transportation services to Uber Users.

REQUEST NO. 15:    Admit that from January 1, 2010 to the present, the legal relationship between Uber and Uber Driver-Partners, other than corporate employees of Uber, has been solely that of independent contracting parties.

REQUEST NO. 16:    Admit that from January 1, 2010 to the present, Uber has not employed Uber Driver-Partners, other than corporate employees of Uber, like Kalanick.

REQUEST NO. 17:    Admit that from January 1, 2010 to the present, no Uber Driver-Partner, other than corporate employees of Uber, has had any employment agreement with Uber.

REQUEST NO. 18:    Admit that from January 1, 2010 to the present, no Uber Driver-Partner, other than corporate employees of Uber, has had any employment relationship with Uber.

REQUEST NO. 19:    Admit that from January 1, 2010 to the present, all Uber Driver-Partners entered into agreements with Uber before providing transportation services through the Uber App.

REQUEST NO. 20:    Admit that from January 1, 2010 to the present, Uber has not had a joint venture relationship with Uber Driver-Partners (other than corporate employees of Uber) as a result of their agreements with Uber or their use of the Uber App.

REQUEST NO. 21:    Admit that from January 1, 2010 to the present, Uber has not had a partnership relationship with Uber Driver-Partners (other than corporate employees of Uber) as a result of their agreements with Uber or their use of the Uber App.

REQUEST NO. 22:    Admit that from January 1, 2010 to the present, Uber has not had an employment relationship with Uber Driver-Partners (other than corporate employees of Uber) as a result of their agreements with Uber or their use of the Uber App.

REQUEST NO. 23:    Admit that from January 1, 2010 to the present, Uber has not had an agency relationship with Uber Driver-Partners (other than corporate employees of Uber) as a result of their agreements with Uber or their use of the Uber App.

REQUEST NO. 24:    Admit that Uber Driver-Partners are not required to drive exclusively for Uber.

REQUEST NO. 25:    Admit that from January 1, 2010 to the present, Uber has facilitated Uber Users' payment of fares by charging Uber Users' credit cards or other payment methods on file.

REQUEST NO. 26:    Admit that from January 1, 2010 to the present, Uber has sent receipts for transportation services to Uber Users via email.

REQUEST NO. 27:    Admit that from January 1, 2010 to the present, each receipt for transportation service sent by Uber to an Uber User identified the fare charged to that Uber User.

REQUEST NO. 28:    Admit that from January 1, 2010 to the present, Uber Users have not been required to have any method of payment on hand at the time of the trip in order to

receive transportation services through the Uber App.

REQUEST NO. 29:   Admit that the document attached hereto as Exhibit 1 is a true, correct, genuine, and authentic copy of Uber Technologies, Inc.'s December 11, 2015 filing with the Public Utilities Commission of the State of California entitled "RESPONSE OF UBER TECHNOLOGIES, INC. TO ASSIGNED COMMISSIONER AND ADMINISTRATIVE LAW JUDGE'S RULING ORDERING UBER TECHNOLOGIES, INC. TO ANSWER QUESTIONS, FOLLOW-UP QUESTIONS, AND TO PRODUCE DOCUMENTS."

REQUEST NO. 30:   Admit that from January 1, 2010 to the present, Uber has required Uber Driver-Partners to notify Uber in order to adjust any fare charged to Uber Users.

REQUEST NO. 31:   Admit that from January 1, 2010 to the present, Uber has required Uber Driver-Partners to provide confirmation to Uber for all reductions in fares charged to Uber Users.

REQUEST NO. 32:   Admit that between January 1, 2015 and November 30, 2015, Uber received only 344 confirmed requests by Uber Driver-Partners in the United States to charge a fare that was lower than the fare calculated by Uber.

REQUEST NO. 33:   Admit that between January 1, 2015 and November 30, 2015, Uber received only 344 confirmed requests by Uber Driver-Partners in California to charge a fare that was lower than the fare calculated by Uber.

REQUEST NO. 34:   Admit that between January 1, 2015 and November 30, 2015, Uber received only 13 unconfirmed requests by Uber Driver-Partners in the United States to charge a fare that was lower than the fare calculated by Uber.

REQUEST NO. 35:   Admit that between January 1, 2015 and November 30, 2015, Uber received only 13 unconfirmed requests by Uber Driver-Partners in California to charge a fare

that was lower than the fare calculated by Uber.

REQUEST NO. 36:    Admit that Uber has never received a request from an Uber Driver-Partner, before the Uber User entered the Uber Driver-Partner's vehicle, to reduce the fare to be charged to the Uber User.

REQUEST NO. 37:    Admit that in September of 2014, one or more Uber Driver-Partners requested that Uber increase base fares.

REQUEST NO. 38:    Admit that from January 1, 2010 to the present, Uber has had the technological capability to enable Surge Pricing.

REQUEST NO. 39:    Admit that from January 1, 2010 to the present, Uber has had the technological capability to disable Surge Pricing.

REQUEST NO. 40:    Admit that from January 1, 2010 to the present, the Uber App has notified Uber Driver-Partners of instances of Surge Pricing.

July 1, 2016

**HARTER SECREST & EMERY LLP**
Brian Marc Feldman
Jeffrey A. Wadsworth
Edwin M. Larkin
1600 Bausch & Lomb Place
Rochester, New York 14604
Tel: (585) 232-6500
Fax: (585) 232-2152
bfeldman@hselaw.com
jwadsworth@hselaw.com
elarkin@hselaw.com

**MCKOOL SMITH**
John Briody
James H. Smith
One Bryant Park, 47th Floor

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**

_s/ Bryan L. Clobes_
Bryan L. Clobes
Ellen Meriwether
1101 Market Street, Suite 2650
Philadelphia, Pennsylvania 19107
Tel: (215) 864-2800
Fax: (215) 864-2800
bclobes@caffertyclobes.com
emeriwether@caffertyclobes.com

**CONSTANTINE CANNON LLP**
Matthew L. Cantor
David A. Scupp
335 Madison Avenue
New York, New York 10017

New York, New York 10036
Tel: (212) 402-9400
Fax: (212) 402-9444
jbriody@mckoolsmith.com
jsmith@mckoolsmith.com

Tel: (212) 350-2700
Fax: (212) 350-2701
mcantor@constantinecannon.com
dscupp@constantinecannon.com

**ANDREW SCHMIDT LAW PLLC**
Andrew Arthur Schmidt
97 India Street
Portland, Maine 04101
Tel: (207) 619-0320
Fax: (207) 221-1029
andy@maineworkjustice.com

*Counsel for Plaintiff Spencer Meyer*

# EXHIBIT 1



**FILED**
12-11-15
04:59 PM

BEFORE THE PUBLIC UTILITIES COMMISSION
OF THE STATE OF CALIFORNIA

| | |
|---|---|
| Order Instituting Rulemaking on Regulations Relating to Passenger Carriers, Ridesharing, and New Online-Enabled Transportation Services | Rulemaking 12-12-011 (Filed December 20, 2012) |

# RESPONSE OF UBER TECHNOLOGIES, INC. TO ASSIGNED COMMISSIONER AND ADMINISTRATIVE LAW JUDGE'S RULING ORDERING UBER TECHNOLOGIES, INC. TO ANSWER QUESTIONS, FOLLOW-UP QUESTIONS, AND TO PRODUCE DOCUMENTS

KRISHNA K. JUVVADI
NANCY CHUNG ALLRED
LISA P. TSE
1455 Market Street, 4th Floor
San Francisco, California 94103
Email: ltse@uber.com

Attorneys for Uber Technologies, Inc.

December 11, 2015

| | |
|---|---|
| Order Instituting Rulemaking on Regulations Relating to Passenger Carriers, Ridesharing, and New Online-Enabled Transportation Services | Rulemaking 12-12-011 (Filed December 20, 2012) |

## RESPONSE OF UBER TECHNOLOGIES, INC. TO ASSIGNED COMMISSIONER AND ADMINISTRATIVE LAW JUDGE'S RULING ORDERING UBER TECHNOLOGIES, INC. TO ANSWER QUESTIONS, FOLLOW-UP QUESTIONS, AND TO PRODUCE DOCUMENTS

Uber Technologies, Inc. ("UTI") submits its Response to the Assigned Commissioner and Administrative Law Judge's Ruling Ordering Uber Technologies, Inc. to Answer Questions, Follow-Up Questions, and to Produce Documents ("Order"), issued November 19, 2015.

UTI's Response includes a narrative response to the questions posed in the Order and seven attachments:

1. Attachment A: Uber Technologies, Inc. - Officers and Directors (2013-2015)

2. Attachment B: Rasier, LLC - Members and Managers (2013-2015)

3. Attachment C: Rasier-CA, LLC - Members and Managers (2013-2015)

4. Attachment D: Uber USA, LLC - Members and Managers (2015)

5. Attachment E: Requests for Fare Reductions

6. Attachment F: Ad Hoc Promotions

7. Attachment G: Operations Chart

## A.    DEFINITIONS

In these responses, UTI uses the definitions provided in the CPUC's Order:

1. Uber: Uber Technologies, Inc.

2. Uber App: Uber's smartphone application that allows an individual to send a request to independent providers of transportation services for transportation service.

3. TCP: A transportation charter party carrier of passengers as that term is defined by Pub. Util. Code § 5360.

4. TCP Holder or TCP Holders: Commission-licensed charter party carrier or carriers who have entered into a contract with Uber to provide transportation service through the Uber App.

5. TCP Holder Driver: A driver affiliated with a TCP Holder.

## B.    RESPONSES

1.   *Identify all officers and directors of Uber for the years 2013, 2014, and 2015.*
2.   *Identify all officers and directors of Rasier for the years 2013, 2014, and 2015.*
3.   *Identify all officers and directors of Rasier-CA for the years 2013, 2014, and 2015.*
4.   *Identify all officers and directors of Uber USA for the year 2015.*

**Response to Question Nos. 1, 2, 3 and 4:** Rasier, Rasier-CA, and Uber USA are subsidiaries of Uber. Uber and its subsidiaries are legally distinct entities. Uber is an incorporated entity with five board-appointed officers and six shareholder-elected directors. Its subsidiaries, Rasier, Rasier-CA, and Uber USA are organized as limited liability companies with two appointed managers. See Attachment A for Uber's officers and directors, Attachment B for Rasier's managers and members, Attachment C for Rasier-CA's managers and members, and Attachment D for Uber USA's managers and members.

5.  *As a follow up to Uber's Response to Question 4, what is the percent of the "fixed percentage of each fare paid by a rider to the TCP Holder for transportation services provided by TCP Holder Drivers" that Uber USA retains? If your response includes various percentages as the retained amounts, fully explain when each different percent is retained.*

**Response to Question No. 5:** TCP Holder Drivers generally accept trip requests from the UberBLACK and UberSUV products. TCP Holders, who provide transportation services pursuant to those trip requests, pay a service fee to Uber USA. The service fee paid to Uber USA for an UberBLACK trip is calculated as 25% of the fare received by the TCP Holder Driver from the rider. The service fee paid to Uber USA for an UberSUV trip is calculated as 28% of the fare received by the TCP Holder Driver from the rider.

6.  *As a follow up to Uber's Response to Question 16, how often have TCP Holder/TCP Drivers charged a fare lower than Uber's recommended fare? Produce all documents (either electronically or hard copies) that support your answer. To the extent that you are aware of any patterns regarding the charging of a fare lower than Uber's recommended fare, explain all such patterns.*

7.  *As a follow up to Uber's Response to Question 16, does the Uber Service alert Uber when a TCP Holder/TCP Driver charges a fare lower than Uber's recommended fare? If not, how is Uber alerted when a TCP Holder/TCP Driver charges a fare lower than Uber's recommended fare?*

8.  *As a follow up to Uber's Response to Question 16, does charging a fare lower than the recommended fare affect the TCP Holder/Holder Driver's status with respect to the Services Agreement or any other driver rating or evaluation system managed by Uber? If so, identify or state the specific relevant provisions of the Services Agreement or other driver rating or evaluation system. Identify all documents that contain and/or evidence your policy or policies that relate to how charging a fare lower than the recommended fare affect the TCP Holder/Holder Driver's status.*

**Response to Questions Nos. 6, 7, and 8:** TCP Holder Drivers on behalf of TCP Holders have full discretion to charge the rider[1] a fare that is less than the recommended fare. The process for requesting a fare reduction is described in the Uber USA driver terms:

> [t]he Fare is a recommended amount, and the primary purpose of the pre-arranged Fare is to act as the default amount in the event Customer does not negotiate a different amount. Customer shall always have the right to: (i) charge a fare that is less than the pre-arranged Fare; or (ii) negotiate, at Customer's request, a Fare that is lower than the pre-arranged Fare (each of (i) and (ii) herein, a 'Negotiated Fare'). Uber shall consider all such requests from Customer in good faith.

A TCP Holder Driver who wishes to charge a lower fare must notify Uber USA in order to adjust the fare charged to the rider. Notification is necessary because trips taken on the Uber platform involve cashless transactions and a TCP Holder Driver does not have access to the rider's contact information and credit card information following the completion of a trip. These critical features ensure safe rides and ensure that the rider's privacy is not compromised. TCP Holder Drivers on behalf of TCP Holders must also provide confirmation for all fare reductions. If a TCP Holder Driver does not affirm her requested fare reduction, an adjustment will not be made. Uber USA has reviewed its records through November for the 2015 calendar year and has identified approximately 350 requests, which are listed in Attachment E, by TCP Holder Drivers to charge a fare that was lower than the recommended fare. After reviewing these tickets, we were able to discern two common types of fare reduction requests by TCP Holder Drivers: (1) when a TCP Holder Driver accidentally forgot to end a trip on the Uber app after the actual trip ended (*i.e.,* ended the trip after the rider was dropped off); and (2) when the TCP Holder Driver felt that he or she took an inefficient route that resulted in a longer trip than necessary.

---

[1] The rider is the TCP Holder Driver's customer, and the Uber USA driver terms refer to the rider as the "Customer."

A request by a TCP Holder Driver to charge a fare that is less than the recommended fare does not in any way affect the TCP Holder Driver's rating, nor does it affect his or her status with Uber USA.

9.    *As a follow up to Uber's Response to Question 25, have any ad hoc promotions been run in California? If so, identify who decided to run each ad hoc promotion in California, how many times the ad hoc promotions have been run in California, and which cities in California where the ad hoc promotions were run. Describe each ad hoc promotion.*

**Response to Question No. 9:**  Ad hoc promotions are run in California to promote community awareness, to generate rider interest, and to increase brand recognition.  During special events or holidays, Uber may partner with local non-profit or other organizations in community building events or to raise awareness for causes such as animal abuse, homelessness, and hunger issues.  Uber has reviewed its records in an effort to identify these ad hoc promotions in California, which are listed in Attachment F.

10.   *As a follow up to Uber's Response to Question 27, does Uber keep records of complaints received by riders? If so, how are the records maintained or stored (i.e. electronically, hard copies, and/or in some other mode of retention)? Provide an organizational chart of Uber with an indication of the division or section that is responsible for retaining these complaints.*

11.   *As a follow up to Uber's Response to Question 27, does Uber USA keep a record of complaints received by riders? If so, how is the record maintained or stored (i.e. electronically, hard copy, and/or in some other mode of retention)? Provide an organizational chart of Uber USA with an indication of the division or section that is responsible for retaining these complaints.*

**Response to Questions Nos. 10 and 11:**  Rider complaints may be submitted through the Uber app or through https://help.uber.com/.  These complaints are stored electronically as metadata.  Uber USA does not separately retain a repository of these complaints but has access to the metadata.  These complaints are reviewed and responded to by a team of customer service

representatives. The representatives responsible for responding to the complaints are part of the Internal Operations team. A chart showing this operational structure is provided in Attachment G.

Respectfully submitted on this 11th day of December, 2015 in San Francisco, California.

KRISHNA JUVVADI
NANCY CHUNG ALLRED
LISA P. TSE

/s/
By: Lisa P. Tse

1455 Market Street, 4th Floor
San Francisco, California 94103
Email: ltse@uber.com

Attorneys for Uber Technologies, Inc.

# ATTACHMENT A

Uber Technologies, Inc.
Officers and Directors (2013-2015)

<u>**ATTACHMENT A**</u>
**Uber Technologies, Inc.**
**Officers and Directors (2013-2015)**

*2013*

Officers:
- Travis Kalanick - Chief Executive Officer, President and Secretary
- Ryan Graves - Vice President, Operations
- Brent Callinicos - Chief Financial Officer
- Thuan Pham - Chief Technology Officer

Directors:
- David Bonderman
- Garrett Camp
- David C. Drummond
- Ryan Graves
- J. William Gurley
- Travis Kalanick

*2014*

Officers:
- No change

Directors:
- No change

*2015*

Officers:
- Travis Kalanick - Chief Executive Officer, President and Secretary
- Ryan Graves - Vice President, Operations
- Brent Callinicos - Chief Financial Officer  **[Resigned March 19, 2015]**
- Gautam Gupta - Acting Chief Financial Officer **[Appointed March 19, 2015]**
- Thuan Pham - Chief Technology Officer
- Rachel Whetstone - Senior Vice President, Policy and Communications **[Appointed June 25, 2015]**

Directors:
- No change

# ATTACHMENT B

**Rasier, LLC**
**Managers and Members (2013-2015)**

## ATTACHMENT B
### Rasier, LLC
### Managers and Members (2013-2015)

*2013*

Managers:
- Karen Walker
- Axel Martinez

Member:
- Uber Technologies, Inc.

*2014*

Managers:
- No change

Member:
- No change

*2015*

Managers:
- Karen Walker
- Axel Martinez **[Resigned September 4, 2015]**
- Gautam Gupta **[Appointed September 4, 2015]**

Member:
- No change

# ATTACHMENT C

**Rasier-CA, LLC**
**Managers and Members (2013-2015)**

**Rasier-CA, LLC**
**Managers and Members (2013-2015)**

*2013*

Managers:
- Karen Walker
- Axel Martinez

Member:
- Rasier, LLC

*2014*

Managers:
- No change

Member:
- No change

*2015*

Managers:
- Karen Walker
- Axel Martinez **[Resigned September 4, 2015; was not replaced]**

Member:
- No change

# ATTACHMENT D

Uber USA, LLC
Managers and Members (2015)

**Uber USA, LLC**
**Managers and Members (2015)**

**Uber USA, LLC**

Managers:

- Karen Walker
- Axel Martinez **[Resigned September 4, 2015]**
- Gautam Gupta **[Appointed September 4, 2015]**

Member:

- Uber Technologies, Inc.

# ATTACHMENT E

Requests for Fare Reductions

**A. TCP Driver Requests for Fare Reduction That Were Confirmed by the TCP Driver**

| | Ticket Number | Date of Trip | Date of Ticket | Fare | Adjusted Fare | Reason |
|---|---|---|---|---|---|---|
| 1 | 17286949 | 1/1/15 22:37 | 1/1/15 22:53 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 2 | 17601741 | 1/3/15 22:11 | 1/7/15 1:00 | $77.20 | $61.09 | TCP driver requested to charge a lower fare because the driver did not end the trip on the Uber app when the trip actually ended. |
| 3 | 18114422 | 1/14/15 1:23 | 1/14/15 2:01 | $54.54 | $23.32 | TCP driver requested to charge the rider UberSUV rates. |
| 4 | 18126935 | 1/14/15 6:55 | 1/14/15 7:18 | $26.88 | $19.18 | TCP driver requested to charge a lower fare because the driver did not end the trip on the Uber app when the trip actually ended. |
| 5 | 18857056 | 1/23/15 10:20 | 1/23/15 11:30 | $15.00 | $0.00 | TCP driver requested to refund the rider's the cancellation charge to the rider because the driver ended the trip on the Uber app before the trip actually ended by mistake. |
| 6 | 18968314 | 1/24/15 12:24 | 1/24/15 13:47 | $27.65 | $16.56 | TCP driver requested to charge a lower fare because the driver did not end the trip on the Uber app when the trip actually ended. |
| 7 | 19098568 | 1/25/15 23:19 | 1/25/15 23:58 | $47.77 | $10.89 | TCP driver requested to charge a lower fare because the driver did not end the trip on the Uber app when the trip actually ended. |
| 8 | 19638977 | 1/31/15 22:08 | 1/31/15 22:18 | $25.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 9 | 19643750 | 1/30/15 22:05 | 1/31/15 23:03 | $25.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 10 | 19905542 | 2/3/15 18:14 | 2/3/15 19:22 | $142.06 | $125.61 | TCP driver requested to charge a lower fare because the driver did not end the trip on the Uber app when the trip actually ended. |
| 11 | 19910456 | 2/3/15 20:19 | 2/3/15 20:29 | $4.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 12 | 20078996 | 2/5/15 18:02 | 2/5/15 18:12 | $10.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 13 | 20095168 | 2/5/15 20:34 | 2/5/15 21:57 | $20.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 14 | 20207818 | 2/6/15 7:11 | 2/6/15 22:28 | $10 | $0 | TCP driver requested a refund of the fare charged to the rider. |
| 15 | 20477949 | 2/9/15 16:09 | 2/9/15 16:27 | $7.50 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 16 | 20569587 | 2/10/15 17:08 | 2/10/15 17:34 | $29.46 | $15.51 | TCP driver requested to charge the rider a lower fare. |
| 17 | 20770335 | 2/12/15 20:20 | 2/12/15 20:30 | $5.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 18 | 20876328 | 2/13/15 18:19 | 2/13/15 18:58 | $50.43 | $39.00 | TCP driver requested to charge the rider a lower fare. |
| 19 | 20962058 | 2/14/15 10:49 | 2/14/15 12:29 | $28.05 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 20 | 21204370 | 2/16/15 18:10 | 2/16/15 18:27 | $10.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 21 | 21298570 | 2/17/15 19:17 | 2/17/15 19:55 | $15.97 | $11.82 | TCP driver requested to charge the rider a lower fare. |
| 22 | 21662767 | 2/21/15 18:34 | 2/21/15 18:46 | $5.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 23 | 21705527 | 2/20/15 22:02 | 2/22/15 1:23 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 24 | 21868442 | 2/23/15 17:52 | 2/23/15 18:13 | $10.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 25 | 21885001 | 2/23/15 21:35 | 2/23/15 22:57 | $81.86 | $68.85 | TCP driver requested to charge the rider a lower fare. |
| 26 | 21887140 | 2/23/15 23:25 | 2/23/15 23:59 | $29.64 | $19.54 | TCP driver requested to charge a lower fare because the driver was unable to end trip on Uber app when the trip ended. |
| 27 | 22039022 | 2/25/15 12:37 | 2/25/15 13:33 | $25.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 28 | 22057045 | 2/25/15 16:00 | 2/25/15 17:02 | $120.52 | $93.99 | TCP driver requested to charge the rider a lower fare. |
| 29 | 22297553 | 2/27/15 20:30 | 2/27/15 21:08 | $15.00 | $0.00 | TCP driver requested to charge the rider a lower fare. |
| 30 | 22304929 | 2/27/15 17:22 | 2/27/15 22:14 | $0.00 | $0.00 | TCP driver requested confirmation that the rider was not charged. |
| 31 | 22320127 | 2/28/15 0:31 | 2/28/15 0:53 | $30.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 32 | 22448921 | 2/28/15 22:39 | 2/28/15 23:44 | $53.76 | $24.99 | TCP driver requested to charge the rider a lower fare because the driver spent part of the trip driving to the wrong location. |
| 33 | 22514619 | 3/1/15 14:11 | 3/1/15 22:38 | $34.43 | $21.31 | TCP driver requested to charge a lower fare because the driver did not end trip on the Uber app when the trip actually ended. |
| 34 | 22643963 | 3/2/15 21:04 | 3/2/15 21:27 | $8.15 | $0.00 | TCP driver requested to refund the rider's cancellation fee because the TCP driver went to the wrong location. |
| 35 | 22754072 | 3/3/15 20:16 | 3/4/15 9:10 | $25.88 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 36 | 22946612 | 3/5/15 18:01 | 3/5/15 19:10 | $24.20 | $11.16 | TCP driver requested to charge a lower fare because the driver did not end trip on the Uber app when the trip actually ended. |
| 37 | 22959830 | 3/5/15 12:07 | 3/5/15 22:06 | $93.52 | $69.00 | TCP driver requested to charge a lower fare because the driver did not end trip on the Uber app when the trip actually ended. |
| 38 | 22922357 | 3/5/15 12:27 | 3/5/15 22:42 | $60.91 | $19.09 | TCP driver requested to charge a lower fare because the driver did not end trip on the Uber app when the trip actually ended. |
| 39 | 22963725 | 3/5/15 12:16 | 3/5/15 22:49 | $45.87 | $25.59 | TCP driver requested to charge the rider a lower fare. |

| Ticket Number | Date of Trip | Date of Ticket | Fare | Adjusted Fare | Reason |
|---|---|---|---|---|---|
| 40 | 22966190 | 3/5/15 22:00 | 3/5/15 23:19 | $25.66 | $6.00 | TCP driver requested to charge the rider a lower fare. |
| 41 | 22944657 | 3/6/15 4:32 | 3/6/15 2:46 | $99.77 | $59 | TCP driver requested to charge a lower fare because the driver did not end trip on the Uber app when the trip actually ended. |
| 42 | 23000891 | 3/6/15 7:30 | 3/6/15 7:48 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 43 | 23045905 | 3/6/15 14:59 | 3/6/15 15:18 | $25.74 | $16.99 | TCP driver requested to charge a lower fare because the driver did not end trip on the Uber app when the trip actually ended. |
| 44 | 23063877 | 3/6/15 6:09 | 3/6/15 18:52 | $40.97 | $22.53 | TCP driver requested to charge a lower fare because the driver did not end trip on the Uber app when the trip actually ended. |
| 45 | 23284776 | 3/8/15 12:00 | 3/8/15 12:05 | $5.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 46 | 23311923 | 3/7/15 9:31 | 3/8/15 18:35 | $21.12 | $13.12 | TCP driver requested a fare adjustment for the rider. |
| 47 | 23567960 | 3/7/15 1:49 | 3/9/15 10:26 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 48 | 23388238 | 3/9/15 13:56 | 3/9/15 14:28 | $35.04 | $27.00 | TCP driver requested a refund to charge the rider a lower fare. |
| 49 | 23524898 | 3/10/15 17:52 | 3/10/15 22:16 | $66.23 | $10.24 | TCP driver requested to charge the rider a lower fare. |
| 50 | 23609378 | 3/11/15 17:49 | 3/11/15 18:41 | $109.34 | $68.85 | TCP driver requested to charge the rider a lower fare because fare seemed unfair or too high. |
| 51 | 23690391 | 3/12/15 13:23 | 3/12/15 14:50 | $22.35 | $7.81 | TCP driver requested to charge a lower fare because the driver did not end trip on the Uber app when the trip actually ended. |
| 52 | 23690405 | 3/12/15 13:34 | 3/12/15 14:50 | $168.00 | $162.53 | TCP driver requested a refund of the fare charged to the rider. |
| 53 | 23930559 | 3/14/15 12:33 | 3/14/15 14:12 | $75.63 | $53.51 | TCP driver requested to charge the rider a lower fare. |
| 54 | 23963995 | 3/14/15 17:54 | 3/14/15 18:54 | $134.45 | $116.81 | TCP driver requested to charge the rider a lower fare. |
| 55 | 23981667 | 3/14/15 19:05 | 3/14/15 21:05 | $25.00 | $0.00 | TCP driver requested to charge the rider a lower fare for driver error. |
| 56 | 24011099 | 3/14/15 23:04 | 3/15/15 1:20 | $76.00 | $62.00 | TCP driver requested to charge the rider a lower fare. |
| 57 | 24013708 | 3/15/15 1:34 | 3/15/15 1:53 | $15.00 | $0.00 | TCP driver requested to charge the rider a lower fare. |
| 58 | 24016298 | 3/14/15 21:11 | 3/15/15 2:28 | $101.00 | $92.00 | TCP driver requested to charge the rider a lower fare for taking a longer route. |
| 59 | 24187218 | 3/16/15 18:03 | 3/16/15 18:06 | $10.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 60 | 24301780 | 3/17/15 19:52 | 3/17/15 20:09 | $27.93 | $25.40 | TCP driver requested to charge the rider a lower fare. |
| 61 | 24400219 | 3/18/15 15:43 | 3/18/15 17:07 | $18.92 | $5.94 | TCP driver requested a refund of the cancellation fee to the rider. |
| 62 | 24426487 | 3/18/15 22:51 | 3/18/15 23:17 | $27.65 | $15.54 | TCP driver requested to charge the rider a lower fare. |
| 63 | 24489797 | 3/19/15 14:03 | 3/19/15 14:12 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 64 | 24548686 | 3/20/15 2:26 | 3/20/15 2:45 | $28.88 | $16.74 | TCP driver requested a refund of the fare charged to the rider. |
| 65 | 24765453 | 3/21/15 18:27 | 3/21/15 19:33 | $118.45 | $26.40 | TCP driver requested to charge the rider a lower fare. |
| 66 | 24785715 | 3/21/15 21:19 | 3/21/15 21:53 | $5.00 | $0.00 | TCP driver requested a refund of the cancellation fee to the rider. |
| 67 | 25100092 | 3/24/15 16:21 | 3/24/15 17:24 | $84.85 | $80.00 | TCP driver requested to charge the rider a lower fare. |
| 68 | 25151482 | 3/25/15 5:33 | 3/25/15 5:57 | $38.88 | $15.00 | TCP driver requested to charge a lower fare because the driver did not end trip on the Uber app when the trip actually ended. |
| 69 | 25316473 | 3/26/15 14:07 | 3/26/15 14:30 | $19.49 | $14.38 | TCP driver requested to charge a lower fare because the driver did not end trip on the Uber app when the trip actually ended. |
| 70 | 25340102 | 3/26/15 16:47 | 3/26/15 18:20 | $26.89 | $0.00 | TCP driver requested to refund the rider's fare because the driver had to cancel the trip due to car trouble. |
| 71 | 25359692 | 3/26/15 20:27 | 3/26/15 21:37 | $24.37 | $23.77 | TCP driver requested a refund of the fare charged to the rider. |
| 72 | 25468100 | 3/27/15 17:12 | 3/27/15 17:48 | $16.31 | $9.65 | TCP driver requested to charge a lower fare because the driver did not end trip on the Uber app when the trip actually ended. |
| 73 | 25469198 | 3/27/15 17:29 | 3/27/15 17:59 | $33.10 | $15.00 | TCP driver requested to charge a lower fare because the driver did not end trip on the Uber app when the trip actually ended. |
| 74 | 25503298 | 3/27/15 22:51 | 3/27/15 23:19 | $36.77 | $22.22 | TCP driver requested to charge the rider a lower fare. |
| 75 | 25555645 | 3/28/15 8:58 | 3/28/15 9:44 | $37.57 | $32.05 | TCP driver requested to charge a lower fare because the driver did not end trip on the Uber app when the trip actually ended. |
| 76 | 25643779 | 3/28/15 21:08 | 3/28/15 22:40 | $114.51 | $75.00 | TCP driver requested to charge the rider a lower fare. |
| 77 | 25644201 | 3/28/15 21:04 | 3/28/15 22:43 | $114.00 | $40.00 | TCP driver requested to charge a lower fare because the driver did not end trip on the Uber app when the trip actually ended. |
| 78 | 25668951 | 3/29/15 1:45 | 3/29/15 2:33 | $65.16 | $18.91 | TCP driver requested to charge the rider a lower fare. |
| 79 | 25749992 | 3/29/15 19:23 | 3/29/15 19:43 | $25.75 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 80 | 25856601 | 3/30/15 16:43 | 3/30/15 18:04 | $39.38 | $34.38 | TCP driver requested to charge the rider $5 less for a wrong turn that extended trip by Uber approximately one mile. |
| 81 | 26036247 | 3/31/15 6:58 | 4/1/15 8:35 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 82 | 26245307 | 4/2/15 21:29 | 4/2/15 23:18 | $60.39 | $49.31 | TCP driver requested to charge a lower fare because the driver was unable to end trip on Uber app when the trip actually ended. |

| | Ticket Number | Date of Trip | Date of Ticket | Fare | Adjusted Fare | Reason |
|---|---|---|---|---|---|---|
| 83 | 26264208 | 4/2/15 18:05 | 4/3/15 4:09 | $48.10 | $35.38 | TCP driver requested to charge the rider a lower fare because the driver took a longer route. |
| 84 | 26455564 | 4/4/15 6:31 | 4/4/15 14:36 | $52.84 | $36.00 | TCP driver requested to charge the rider a lower fare. |
| 85 | 26612153 | 4/5/15 22:20 | 4/5/15 23:04 | $10.00 | $0.00 | TCP driver requested a refund of the cancellation fee charged to the rider. |
| 86 | 26826791 | 4/7/15 19:05 | 4/7/15 19:32 | $29.00 | $20.82 | TCP driver requested to charge the rider a lower fare because the TCP driver made a mistake. |
| 87 | 26923997 | 4/8/15 15:25 | 4/8/15 16:08 | $50.11 | $21.75 | TCP driver requested to charge the rider a lower fare. |
| 88 | 26935624 | 4/8/15 16:40 | 4/8/15 18:15 | $18.17 | $10.55 | TCP driver requested to charge the rider a lower fare. |
| 89 | 26946297 | 4/8/15 19:07 | 4/8/15 20:07 | $15.00 | $0.00 | TCP driver requested a fare adjustment for the rider. |
| 90 | 26979828 | 4/9/15 3:22 | 4/9/15 4:46 | $122.17 | $76.09 | TCP driver requested to charge the rider a lower fare. |
| 91 | 27148943 | 4/10/15 8:49 | 4/10/15 9:16 | $9.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 92 | 27339336 | 4/11/15 14:26 | 4/11/15 14:41 | $4.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 93 | 27863713 | 4/15/15 13:07 | 4/15/15 14:11 | $101.30 | $75.00 | TCP driver requested to charge the rider a lower fare. |
| 94 | 28052507 | 4/16/15 21:46 | 4/16/15 22:09 | $51.33 | $27.08 | TCP driver requested to charge the rider a lower fare. |
| 95 | 28170076 | 4/17/15 4:51 | 4/17/15 16:00 | $373.29 | $203.71 | TCP driver requested to charge a lower fare because the driver was did not end trip on Uber app when the trip actually ended. |
| 96 | 28400959 | 4/18/15 22:04 | 4/18/15 23:23 | $15.00 | $0.00 | TCP driver requested to refund the rider's fare. |
| 97 | 29086027 | 4/23/15 18:36 | 4/23/15 19:32 | $76.01 | $40.00 | TCP driver requested to charge the rider a lower fare. |
| 98 | 29383354 | 4/25/15 14:17 | 4/25/15 14:24 | $4.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 99 | 29449639 | 4/25/15 21:16 | 4/25/15 21:40 | $24.34 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 100 | 29399675 | 4/25/15 14:27 | 4/25/15 23:35 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 101 | 29734166 | 4/27/15 19:41 | 4/27/15 20:39 | $81.00 | $25.00 | TCP driver requested to charge the rider a lower fare. |
| 102 | 29992915 | 4/29/15 15:08 | 4/29/15 17:20 | $236.00 | $218.46 | TCP driver requested to charge the rider a lower fare. |
| 103 | 30207371 | 5/1/15 2:34 | 5/1/15 3:20 | $18.26 | $5.24 | TCP driver requested to charge a lower fare because the driver was did not end trip on Uber app when the trip actually ended. |
| 104 | 30488597 | 5/2/15 18:18 | 5/2/15 18:45 | $27.79 | $15.00 | TCP driver requested to charge the rider a lower fare. |
| 105 | 30527684 | 5/2/15 22:10 | 5/2/15 22:41 | $89.00 | $66.00 | TCP driver requested to charge the rider a lower fare. |
| 106 | 30551809 | 5/3/15 0:58 | 5/3/15 1:33 | $14.26 | $11.15 | TCP driver requested to charge the rider a lower fare. |
| 107 | 30928982 | 5/5/15 13:55 | 5/5/15 14:42 | $122.64 | $75.00 | TCP driver requested to charge the rider a lower fare because he felt the fare was too high. |
| 108 | 31245265 | 5/7/15 16:53 | 5/7/15 16:56 | $15.00 | $0.00 | TCP driver requested to refund the rider's fare to the rider. |
| 109 | 31457525 | 5/8/15 22:40 | 5/8/15 22:53 | $4.00 | $0.00 | TCP driver requested to charge the rider a lower fare. |
| 110 | 31543333 | 5/9/15 10:22 | 5/9/15 10:33 | $25.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 111 | 31669144 | 5/10/15 0:31 | 5/10/15 2:03 | $59.88 | $0.00 | TCP driver requested to charge the rider a lower fare. |
| 112 | 31827757 | 5/11/15 5:26 | 5/11/15 6:03 | $127.17 | $68.85 | TCP driver requested to charge the rider a lower fare. |
| 113 | 32447868 | 5/14/15 18:03 | 5/14/15 18:27 | $24.49 | $16.71 | TCP driver requested to charge a lower fare because the driver was did not end trip on Uber app when the trip actually ended. |
| 114 | 32463484 | 5/14/15 20:39 | 5/14/15 21:23 | $50.60 | $25.00 | TCP driver requested to charge the rider a lower fare because the trip took longer due to heavy traffic. |
| 115 | 32540071 | 5/15/15 7:09 | 5/15/15 7:51 | $125.31 | $65.00 | TCP driver requested to charge the rider a lower fare. |
| 116 | 32634420 | 5/15/15 17:11 | 5/15/15 18:28 | $65.35 | $15.40 | TCP driver requested to charge a lower fare because the driver was did not end trip on Uber app when the trip actually ended. |
| 117 | 32638297 | 5/15/15 17:10 | 5/15/15 18:50 | $72.71 | $15.00 | TCP driver requested to charge the rider a lower fare. |
| 118 | 32847845 | 5/16/15 19:32 | 5/16/15 20:19 | $91.20 | $78.19 | TCP driver requested to charge the rider a lower fare because the rider missed the turnoff on the freeway and resulted in some excess mileage. |
| 119 | 33032478 | 5/17/15 20:45 | 5/17/15 21:04 | $29.00 | $25.00 | TCP driver requested to charge the rider a lower fare because the TCP driver missed a turn. |
| 120 | 33152792 | 5/16/15 16:38 | 5/18/15 14:22 | $64.85 | $62.11 | TCP driver requested to charge the rider a lower fare. |
| 121 | 33175795 | 5/18/15 8:59 | 5/18/15 17:32 | $25.00 | $0.00 | TCP driver requested to charge a lower fare because the driver was did not end trip on Uber app when the trip actually ended. |
| 122 | 33292372 | 5/19/15 7:36 | 5/19/15 9:41 | $7.86 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 123 | 33309976 | 5/19/15 11:09 | 5/19/15 11:49 | $104.96 | $68.85 | TCP driver requested to charge the rider a lower fare. |
| 124 | 33350457 | 5/19/15 16:55 | 5/19/15 17:10 | $10.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider because the driver had an extenuating circumstance. |

| | Ticket Number | Date of Trip | Date of Ticket | Fare | Adjusted Fare | Reason |
|---|---|---|---|---|---|---|
| 125 | 33486292 | 5/20/15 10:45 | 5/20/15 11:19 | $90.74 | $68.85 | TCP driver requested to charge the rider a lower fare. |
| 126 | 33556934 | 5/20/15 19:10 | 5/20/15 19:52 | $15.00 | $0.00 | TCP driver requested to charge the rider a lower fare. |
| 127 | 33572922 | 5/20/15 21:25 | 5/20/15 21:54 | $53.06 | $50.57 | TCP driver requested to charge the rider a lower fare. |
| 128 | 34064474 | 5/23/15 10:04 | 5/23/15 10:13 | $8.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 129 | 34068842 | 5/22/15 20:18 | 5/23/15 10:45 | $41.46 | $27.54 | TCP driver requested to charge the rider a lower fare. |
| 130 | 34702167 | 5/26/15 16:12 | 5/26/15 19:03 | $143.94 | $95.17 | TCP driver requested to charge the rider a lower fare for taking the wrong route. |
| 131 | 34858447 | 5/27/15 15:08 | 5/27/15 15:19 | $5.80 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 132 | 34933387 | 5/27/15 22:10 | 5/28/15 0:40 | $25.00 | $10.00 | TCP driver requested to charge the rider a lower fare. |
| 133 | 35320048 | 5/29/15 18:34 | 5/29/15 18:57 | $34.00 | $27.00 | TCP driver requested to charge a lower fare because the driver was did not end trip on Uber app when the trip actually ended. |
| 134 | 35441137 | 5/26/15 19:19 | 5/30/15 7:38 | $43.82 | $34.71 | TCP driver requested to charge the rider a lower fare. |
| 135 | 35530905 | 5/30/15 16:34 | 5/30/15 17:39 | $25.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 136 | 35725868 | 5/31/15 14:18 | 5/31/15 14:50 | $57.00 | $45.00 | TCP driver requested to charge the rider a lower fare because river took an inefficient route. |
| 137 | 35872038 | 6/1/15 8:21 | 6/1/15 9:53 | $59.81 | $23.56 | TCP driver requested to charge the rider a lower fare. |
| 138 | 36060317 | 6/2/15 10:38 | 6/2/15 11:39 | $84.27 | $55.71 | TCP driver requested to charge the rider a lower fare. |
| 139 | 36276864 | 6/3/15 12:53 | 6/3/15 13:00 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 140 | 36303584 | 6/3/15 14:12 | 6/3/15 16:34 | $4.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 141 | 36486244 | 6/4/15 5:00 | 6/4/15 13:49 | $421.00 | $160.00 | TCP driver requested a refund of the fare charged to the rider. |
| 142 | 36578949 | 6/4/15 22:36 | 6/5/15 0:00 | $42.19 | $79.35 | TCP driver requested a refund of the fare charged to the rider. |
| 143 | 36870912 | 6/6/15 7:21 | 6/6/15 7:41 | $10.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 144 | 36938809 | 6/6/15 15:16 | 6/6/15 15:32 | $8.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 145 | 37145119 | 6/7/15 12:19 | 6/7/15 13:32 | $59.15 | $57.55 | TCP driver requested to charge the rider a lower fare. |
| 146 | 37195866 | 6/7/15 19:41 | 6/7/15 20:27 | $63.35 | $61.35 | TCP driver requested to charge the rider a lower fare because the driver did not make the correct turn. |
| 147 | 37278523 | 6/8/15 6:21 | 6/8/15 7:35 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 148 | 37353527 | 6/8/15 15:53 | 6/8/15 16:18 | $5.00 | $0.00 | TCP driver requested a refund of the cancellation fee charged to the rider. |
| 149 | 37564144 | 6/9/15 16:52 | 6/9/15 17:46 | $80.96 | $59.00 | TCP driver requested to charge the rider a lower fare. |
| 150 | 37606836 | 6/9/15 21:54 | 6/9/15 22:42 | $76.74 | $51.79 | TCP driver requested to charge the rider a lower fare. |
| 151 | 37610275 | 6/9/15 22:32 | 6/9/15 23:11 | $48.93 | $44.61 | TCP driver requested to charge the rider a lower fare. |
| 152 | 37691964 | 6/10/15 8:29 | 6/10/15 9:24 | $133.00 | $104.00 | TCP driver requested to charge the rider a lower fare. |
| 153 | 37795079 | 6/10/15 20:33 | 6/10/15 20:58 | $15.00 | $10.00 | TCP driver requested to charge the rider a lower fare. |
| 154 | 37804129 | 6/10/15 21:41 | 6/10/15 22:03 | $7.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 155 | 38033199 | 6/11/15 23:50 | 6/12/15 0:32 | $83.02 | $74.14 | TCP driver requested to charge the rider a lower fare. |
| 156 | 38465470 | 6/13/15 20:49 | 6/13/15 21:22 | $37.13 | $19.27 | TCP driver requested to charge the rider a lower fare because phone died before trip ended. |
| 157 | 38470179 | 6/13/15 20:38 | 6/13/15 21:47 | $109.00 | $72.00 | TCP driver requested to charge the rider a lower fare due to tech problems. |
| 158 | 38675099 | 6/14/15 20:32 | 6/14/15 21:22 | $15.00 | $0.00 | TCP driver requested to charge the rider a lower fare. |
| 159 | 38691472 | 6/14/15 23:15 | 6/14/15 23:23 | $25.00 | $0.00 | TCP driver requested the cancellation fee charged to the rider to be refunded. |
| 160 | 38951186 | 6/16/15 5:51 | 6/16/15 6:33 | $95.67 | $68.85 | TCP driver requested to charge the rider a lower fare. |
| 161 | 39052683 | 6/16/15 17:26 | 6/16/15 17:43 | $18.08 | $15.00 | TCP driver requested to charge the rider a lower fare. |
| 162 | 39058702 | 6/16/15 18:14 | 6/16/15 18:19 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 163 | 39242534 | 6/17/15 14:43 | 6/17/15 15:06 | $16.43 | $0.00 | TCP driver requested to charge the rider a lower fare. |
| 164 | 39503438 | 6/18/15 19:28 | 6/18/15 19:56 | $29.89 | $27.92 | TCP driver requested to charge the rider a lower fare. |
| 165 | 39684872 | 6/19/15 13:36 | 6/19/15 15:09 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 166 | 39705981 | 6/19/15 17:08 | 6/19/15 17:14 | $5.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 167 | 39807510 | 6/20/15 1:22 | 6/20/15 2:50 | $145.84 | $128.25 | TCP driver requested to charge the rider a lower fare. |

| | Ticket Number | Date of Trip | Date of Ticket | Fare | Adjusted Fare | Reason |
|---|---|---|---|---|---|---|
| 168 | 39885394 | 6/20/15 10:33 | 6/20/15 11:25 | $46.30 | $43.61 | TCP driver requested to charge the rider a lower fare. |
| 169 | 40140296 | 6/21/15 16:03 | 6/21/15 16:19 | $25.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 170 | 40153689 | 6/21/15 17:37 | 6/21/15 18:09 | $43.59 | $32.61 | TCP driver requested to charge the rider a lower fare because the driver took the wrong route. |
| 171 | 40198354 | 6/21/15 1:02 | 6/21/15 23:36 | $96.82 | $96.82 | TCP driver requested to charge the rider a lower fare. |
| 172 | 40383459 | 6/22/15 20:51 | 6/22/15 20:57 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 173 | 40478056 | 6/23/15 7:29 | 6/23/15 8:42 | $158.59 | $68.85 | TCP driver requested to charge the rider a lower fare. |
| 174 | 40644299 | 6/24/15 4:04 | 6/24/15 4:39 | $25.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 175 | 40753078 | 6/24/15 14:24 | 6/24/15 16:40 | $177.74 | $127.90 | TCP driver requested to charge the rider a lower fare by removing 60 minutes from the trip. |
| 176 | 40823776 | 6/24/15 23:36 | 6/25/15 0:21 | $44.94 | $41.58 | TCP driver requested to charge the rider a lower fare because the driver did not end the trip on the Uber app when the trip actually ended. |
| 177 | 41087226 | 6/25/15 11:48 | 6/26/15 4:35 | $104.84 | $65.00 | TCP driver requested a refund of the fare charged to the rider. |
| 178 | 41290538 | 6/26/15 22:27 | 6/26/15 23:07 | $48.06 | $45.56 | TCP driver requested to charge the rider a lower fare because the driver took the wrong exit. |
| 179 | 41472354 | 6/27/15 16:12 | 6/27/15 17:48 | $80.32 | $41.62 | TCP driver requested to charge the rider a lower fare because the driver did not end the trip on the Uber app when the trip actually ended. |
| 180 | 41537476 | 6/27/15 22:36 | 6/27/15 22:50 | $15.00 | $0.00 | TCP driver requested that rider not be charged and refunded. |
| 181 | 41675965 | 6/28/15 12:10 | 6/28/15 13:50 | $158.00 | $128.00 | TCP driver requested to charge the rider a lower fare by $30.00 because the driver used the freeway, which cost more. |
| 182 | 41758106 | 6/28/15 22:47 | 6/28/15 23:25 | $10.00 | $0.00 | TCP driver requested to refund the rider's the cancellation fee assessed on the rider. |
| 183 | 41774633 | 6/29/15 1:28 | 6/29/15 1:38 | $15.88 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 184 | 42046962 | 6/30/15 7:25 | 6/30/15 8:19 | $103.97 | $65.00 | TCP driver requested to charge the rider a lower fare. |
| 185 | 42068757 | 6/30/15 0:48 | 6/30/15 10:21 | $55.07 | $48.10 | TCP driver requested to charge the rider a lower fare because the driver took the wrong exit, resulting in substantial extra distance. |
| 186 | 42099935 | 6/30/15 8:34 | 6/30/15 13:48 | $285.64 | $20.15 | TCP driver requested to charge the rider a lower fare because the driver did not end the trip on the Uber app when the trip actually ended. |
| 187 | 42148198 | 6/30/15 18:00 | 6/30/15 18:58 | $102.98 | $96.59 | TCP driver requested to charge the rider a lower fare because the driver did not end the trip on the Uber app when the trip actually ended. |
| 188 | 42278004 | 7/1/15 8:44 | 7/1/15 9:15 | $34.47 | $23.65 | TCP driver requested a fare reduction for taking the wrong road. |
| 189 | 42426380 | 7/2/15 0:06 | 7/2/15 0:47 | $25.50 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 190 | 42682050 | 7/3/15 0:31 | 7/3/15 2:13 | $68.15 | $36.39 | TCP driver requested to charge the rider a lower fare because the driver mistake. |
| 191 | 42926053 | 7/4/15 1:42 | 7/4/15 1:50 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 192 | 43158088 | 7/5/15 0:08 | 7/5/15 0:18 | $30.00 | $0.00 | TCP driver requested a refund of the cancellation fee charged to the rider because the rider intended to request a different product. |
| 193 | 43782852 | 7/7/15 22:21 | 7/7/15 22:54 | $15.00 | $0.00 | TCP driver requested to refund the cancellation fee charged to the rider. |
| 194 | 44165824 | 7/9/15 15:16 | 7/9/15 16:26 | $61.20 | $44.75 | TCP driver requested to charge the rider a lower fare. |
| 195 | 44438905 | 7/10/15 14:08 | 7/10/15 19:06 | $13.77 | $10.00 | TCP driver requested to charge the rider a lower fare because the driver mistake. |
| 196 | 44499968 | 7/10/15 22:20 | 7/10/15 22:51 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 197 | 44914741 | 7/12/15 11:43 | 7/12/15 12:05 | $382.99 | $8.60 | TCP driver requested a refund of the fare charged to the rider. |
| 198 | 44917299 | 7/12/15 11:46 | 7/12/15 12:25 | $5.00 | $0.00 | TCP driver requested to refund the fare charged to the rider because no trip was taken. |
| 199 | 45221143 | 7/13/15 19:46 | 7/13/15 20:23 | $59.69 | $40.84 | TCP driver requested to charge the rider a lower fare. |
| 200 | 45481422 | 7/14/15 21:59 | 7/14/15 22:10 | $15.00 | $0.00 | TCP driver requested to refund the rider's fare because the driver charged his mind about the trip and did not want a ride anymore. |
| 201 | 45526932 | 7/14/15 23:02 | 7/15/15 4:17 | $98.86 | $79.92 | TCP driver requested to charge the rider a lower fare because of traffic on the bridge and must of the cost was due to immobility. |
| 202 | 46132889 | 7/17/15 19:47 | 7/17/15 19:55 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 203 | 46269934 | 7/18/15 9:20 | 7/18/15 9:41 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 204 | 47542117 | 7/24/15 1:51 | 7/24/15 2:12 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |

| | Ticket Number | Date of Trip | Date of Ticket | Fare | Adjusted Fare | Reason |
|---|---|---|---|---|---|---|
| 205 | 48163731 | 7/25/15 16:10 | 7/26/15 8:48 | $10.00 | $0.00 | TCP driver requested to refund the cancellation fee charged to the rider. |
| 206 | 48481684 | 7/27/15 18:13 | 7/27/15 18:50 | $15.71 | $8.49 | TCP driver requested to charge the rider a lower fare because the destination directions on the Uber app was incorrect. |
| 207 | 48776886 | 7/27/15 7:29 | 7/28/15 23:29 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider because the rider was not picked up. |
| 208 | 49729081 | 8/1/15 16:09 | 8/1/15 16:42 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 209 | 50118400 | 8/3/15 6:46 | 8/3/15 8:13 | $213.93 | $104.64 | TCP driver requested to charge the rider a lower fare because the fare was too high due to a network error. |
| 210 | 50745030 | 8/5/15 20:33 | 8/5/15 21:57 | $10.00 | $0.00 | TCP driver requested a refund of the cancellation fee charged to the rider. |
| 211 | 50792989 | 8/6/15 3:07 | 8/6/15 3:41 | $5.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 212 | 50831166 | 8/6/15 6:00 | 8/6/15 7:29 | $5.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 213 | 51145095 | 8/7/15 12:17 | 8/7/15 12:38 | $24.67 | $21.85 | TCP driver requested to charge the rider a lower fare because of network signal problems. |
| 214 | 51260919 | 8/7/15 20:58 | 8/7/15 21:58 | $73.00 | $38.00 | TCP driver requested to charge the rider a lower fare because the trip for the trip was so high. |
| 215 | 51266120 | 8/7/15 20:41 | 8/7/15 22:10 | $13.48 | $79.39 | TCP driver requested to charge the rider a lower fare. |
| 216 | 51307664 | 8/8/15 0:31 | 8/8/15 1:14 | $12.55 | $6.01 | TCP driver requested to charge the rider a lower fare. |
| 217 | 51372810 | 8/8/15 6:50 | 8/8/15 7:56 | $74.78 | $35.65 | TCP driver requested to charge the rider a lower fare. |
| 218 | 51658082 | 8/9/15 9:29 | 8/9/15 10:06 | $85.46 | $62.41 | TCP driver requested to charge the driver a lower fare because the driver did not end the trip on the Uber app when the trip actually ended. |
| 219 | 51755650 | 8/9/15 19:50 | 8/9/15 20:52 | $116.81 | $90.00 | TCP driver requested to charge the rider a lower fare. |
| 220 | 52259258 | 8/11/15 21:03 | 8/11/15 22:01 | $149.07 | $139.00 | TCP driver requested to charge the rider a lower fare because trip included a brief side trip to return phone of previous rider. |
| 221 | 52817394 | 8/13/15 22:41 | 8/14/15 3:33 | $15.00 | $0.00 | TCP driver requested to refund the fare charged to the rider. |
| 222 | 52928692 | 8/14/15 12:11 | 8/14/15 12:41 | $25.00 | $0.00 | TCP driver requested to refund the fare charged to the rider because the TCP driver accidentally started the trip instead of cancelling the trip. |
| 223 | 52997846 | 8/14/15 18:14 | 8/14/15 18:38 | $4.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 224 | 52999043 | 8/14/15 18:14 | 8/14/15 18:43 | $4.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 225 | 53232769 | 8/15/15 15:14 | 8/15/15 15:17 | $4.00 | $0.00 | TCP driver requested to refund the fare charged to the rider. |
| 226 | 53301067 | 8/15/15 14:35 | 8/15/15 20:40 | $32.14 | $25.40 | TCP driver requested to charge the rider a lower fare. |
| 227 | 53518660 | 8/16/15 16:03 | 8/16/15 17:46 | $254.36 | $234.36 | TCP driver requested to charge the rider a lower fare by $20 because the GPS caused an inefficient route. |
| 228 | 53569167 | 8/16/15 21:30 | 8/16/15 22:15 | $79.00 | $59.75 | TCP driver requested to charge the rider a lower fare. |
| 229 | 53807708 | 8/17/15 20:26 | 8/17/15 21:03 | $15.00 | $0.00 | TCP driver requested to refund the rider's fare because the driver accidentally ended the trip at the beginning of the trip. |
| 230 | 54334032 | 8/17/15 22:59 | 8/20/15 0:10 | $53.01 | $26.13 | TCP driver requested to charge the rider a different rate because rider did not intend to order an UberSUV. |
| 231 | 54424187 | 8/20/15 6:44 | 8/20/15 8:44 | $170.41 | $153.58 | TCP driver requested to charge the rider a lower fare. |
| 232 | 54558243 | 8/20/15 19:18 | 8/20/15 19:38 | $7.80 | $0.00 | TCP driver requested to refund the rider's fare because the driver inadvertently ended the trip at the beginning of the trip. |
| 233 | 54597162 | 8/20/15 22:07 | 8/20/15 22:45 | $55.57 | $36.70 | TCP driver requested to charge the rider a lower fare. |
| 234 | 54723813 | 8/21/15 8:32 | 8/21/15 10:06 | $80.28 | $47.75 | TCP driver requested to charge the rider a lower fare. |
| 235 | 55204546 | 8/21/15 15:10 | 8/22/15 20:45 | $272.75 | $0.00 | TCP driver asked that the fare be refunded because no trip occurred. |
| 236 | 55949653 | 8/25/15 16:15 | 8/25/15 16:18 | $15.00 | $0.00 | TCP driver requested to refund the fare charged to the rider because the ride was for commercial training. |
| 237 | 56034104 | 8/25/15 22:57 | 8/25/15 23:38 | $133.00 | $133.00 | TCP driver requested to charge the rider a lower fare because the driver did not take the fastest route. |
| 238 | 56140290 | 8/26/15 9:16 | 8/26/15 9:39 | $23.26 | $15.22 | TCP driver requested to charge the rider a lower fare because the TCP driver did not end the trip on the Uber app when the trip actually ended. |
| 239 | 56153324 | 8/26/15 10:04 | 8/26/15 10:44 | $45.85 | $15.34 | TCP driver requested to charge the rider a lower fare of $15. |
| 240 | 56545276 | 8/27/15 13:16 | 8/27/15 20:19 | $7.00 | $0.00 | TCP driver requested to refund the fare charged to the rider. |
| 241 | 56577863 | 8/27/15 20:10 | 8/28/15 5:37 | 92.64 | 79.03 | TCP driver requested to charge the rider a lower fare because the TCP driver took wrong exit and trip took longer than it should have. |
| 242 | 56776700 | 8/28/15 15:02 | 8/28/15 15:49 | $132.63 | $65.00 | TCP driver requested to charge the rider a lower fare because the driver did not end the trip on the Uber app when the trip actually ended. |

| | Ticket Number | Date of Trip | Date of Ticket | Fare | Adjusted Fare | Reason |
|---|---|---|---|---|---|---|
| 243 | 56789596 | 8/28/15 16:12 | 8/28/15 16:53 | $46.07 | $15.23 | TCP driver requested to charge the rider a lower fare by $15. |
| 244 | 57038963 | 8/29/15 13:44 | 8/29/15 14:37 | $58.00 | $50.03 | TCP driver requested to charge the rider a lower fare by 1 mile and five minutes. |
| 245 | 57233470 | 8/30/15 15:51 | 8/30/15 16:41 | $100.34 | $68.85 | TCP driver requested to charge the rider a lower fare because the driver did not end the trip on the Uber app when the trip actually ended. |
| 246 | 57335839 | 8/30/15 17:15 | 8/30/15 17:56 | $10.00 | $0.00 | TCP driver requested to refund the cancellation fee charged to the rider. |
| 247 | 57380014 | 8/30/15 21:42 | 8/30/15 21:49 | $20.00 | $0.00 | TCP driver requested to refund the fare to the rider because no trip took place. |
| 248 | 57569876 | 8/31/15 14:53 | 8/31/15 16:14 | $25.00 | $0.00 | TCP driver requested to refund the fare charged to the rider because the driver inadvertently ended the trip. |
| 249 | 57679378 | 8/31/15 17:23 | 9/1/15 2:22 | $62.00 | $53.34 | TCP driver requested to charge the rider a lower fare. |
| 250 | 59197584 | 9/6/15 16:52 | 9/6/15 17:25 | $47.00 | $25.17 | TCP driver requested to charge the rider a lower fare because the TCP driver ended the trip on the Uber app after the actual trip ended. |
| 251 | 59198091 | 9/6/15 16:53 | 9/6/15 17:27 | $33.64 | $16.13 | TCP driver requested to charge the rider a lower fare because the TCP driver ended the trip on the Uber app after the actual trip ended. |
| 252 | 59205811 | 9/6/15 17:07 | 9/6/15 18:05 | $83.00 | $57.10 | TCP driver requested to charge the rider a lower fare because the TCP driver did not end the trip on the Uber app at the right location by mistake. |
| 253 | 59254017 | 9/6/15 21:11 | 9/6/15 21:30 | $7.61 | $6.35 | TCP driver requested to charge the rider a lower fare. |
| 254 | 60686619 | 9/11/15 23:05 | 9/11/15 23:24 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 255 | 61103243 | 9/13/15 4:06 | 9/13/15 8:44 | $36.95 | $30.41 | TCP driver requested to charge the rider a lower fare because the driver took a route that added a few miles to the trip. |
| 256 | 61596233 | 9/15/15 4:47 | 9/15/15 5:30 | $64.62 | $59.00 | TCP driver requested to charge the rider a lower fare. |
| 257 | 61930642 | 9/16/15 8:15 | 9/16/15 9:29 | $142.74 | $68.85 | TCP driver requested to charge the rider a lower fare. |
| 258 | 61973447 | 9/15/15 22:41 | 9/16/15 12:58 | $108.38 | $104.71 | TCP driver requested to charge the rider a lower fare because the TCP driver ended the trip on the Uber app after the actual trip ended. |
| 259 | 62213693 | 9/17/15 9:07 | 9/17/15 10:10 | $68.26 | $58.53 | TCP driver requested to charge the rider a lower fare. |
| 260 | 62477796 | 9/17/15 14:07 | 9/18/15 7:40 | $4.00 | $0.00 | TCP driver requested to refund the fare charged to the rider. |
| 261 | 63036973 | 9/19/15 22:23 | 9/19/15 22:43 | $7.00 | $0.00 | TCP driver requested to refund the fare charged to the rider. |
| 262 | 63244525 | 9/20/15 16:55 | 9/20/15 17:20 | $15.00 | $0.00 | TCP driver requested to refund the fare charged to the rider. |
| 263 | 63973029 | 9/22/15 11:46 | 9/22/15 12:32 | $50.72 | $33.15 | TCP driver requested to charge the rider a lower fare. |
| 264 | 64120422 | 9/22/15 18:42 | 9/22/15 22:42 | $15.00 | $0.00 | TCP driver requested to refund the fare charged to the rider. |
| 265 | 64327597 | 9/23/15 14:39 | 9/23/15 15:09 | $51.23 | $40.23 | TCP driver requested to charge the rider based on UberBLACK rates instead of UberSUV rates. |
| 266 | 64411680 | 9/23/15 20:56 | 9/23/15 21:33 | $45.11 | $39.73 | TCP driver requested to charge the rider a lower fare because the driver took the wrong exit resulting in a longer trip. |
| 267 | 64533581 | 9/24/15 7:35 | 9/24/15 7:59 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider because the driver's Uber app malfunctioned. |
| 268 | 64772938 | 9/24/15 21:45 | 9/24/15 22:35 | $81.18 | $75.58 | TCP driver requested to charge tis rider a lower fare because the driver missed an exit on the freeway, which increased the distance by about five miles. |
| 269 | 64833991 | 9/24/15 16:55 | 9/25/15 3:44 | $10.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 270 | 64859859 | 9/25/15 5:16 | 9/25/15 5:50 | $101.17 | $68.85 | TCP driver requested to charge the rider a lower fare. |
| 271 | 65131286 | 9/25/15 21:06 | 9/25/15 22:33 | $62.10 | $32.99 | TCP driver requested to charge the rider a lower fare because the GPS caused the driver to take a long route to the wrong area. |
| 272 | 65162309 | 9/26/15 0:32 | 9/26/15 0:41 | $4.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider because the driver cancelled trip. |
| 273 | 65258245 | 9/26/15 4:58 | 9/26/15 15:24 | $41.88 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 274 | 65507797 | 9/27/15 0:00 | 9/27/15 0:14 | $25.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider because of the driver cancelled the trip. |
| 275 | 65739235 | 9/27/15 18:21 | 9/27/15 19:05 | $10.00 | $0.00 | TCP driver requested a refund of the cancellation fee charged to rider. |
| 276 | 65786624 | 9/26/15 23:51 | 9/27/15 22:46 | $10.00 | $0.00 | TCP driver requested a refund of the cancellation fee charged to rider. |
| 277 | 65900473 | 9/28/15 7:30 | 9/28/15 8:44 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 278 | 66048143 | 9/28/15 19:41 | 9/28/15 20:27 | $42.37 | $21.32 | TCP driver requested to charge the rider a lower fare. |
| 279 | 67001881 | 10/2/15 7:17 | 10/2/15 7:42 | $25.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider because of a TCP driver mistake. |

| | Ticket Number | Date of Trip | Date of Ticket | Fare | Adjusted Fare | Reason |
|---|---|---|---|---|---|---|
| 280 | 67384371 | 10/3/15 12:50 | 10/3/15 13:23 | $34.58 | $28.85 | TCP driver requested to charge the rider a lower fare. |
| 281 | 67415362 | 10/3/15 15:43 | 10/3/15 16:47 | $90.33 | $75.00 | TCP driver requested to charge the rider a lower fare. |
| 282 | 67855920 | 10/5/15 5:40 | 10/5/15 7:03 | $87.12 | $46.00 | TCP driver requested to charge the rider a lower fare. |
| 283 | 67884267 | 10/5/15 8:21 | 10/5/15 8:59 | $24.89 | $23.61 | TCP driver requested to charge the rider a lower fare. |
| 284 | 68186549 | 10/6/15 10:04 | 10/6/15 10:47 | $91.03 | $79.85 | TCP driver requested to charge the rider a lower fare because the driver took the wrong exit that made the trip longer. |
| 285 | 68338578 | 10/6/15 23:59 | 10/7/15 0:13 | $10.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 286 | 68403748 | 10/6/15 10:22 | 10/7/15 6:42 | $10.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 287 | 68756712 | 10/8/15 10:12 | 10/8/15 10:51 | $93.53 | $65.00 | TCP driver requested to charge the rider a lower fare. |
| 288 | 68938364 | 10/9/15 0:54 | 10/9/15 1:12 | $26.71 | $18.28 | TCP driver requested to charge the rider a lower fare. |
| 289 | 69086181 | 10/9/15 11:39 | 10/9/15 12:36 | $115.29 | $71.12 | TCP driver requested to charge the rider a lower fare. |
| 290 | 69138180 | 10/9/15 15:21 | 10/9/15 16:25 | $66.70 | $33.45 | TCP driver requested to charge the rider a lower fare. |
| 291 | 69935372 | 10/12/15 1:08 | 10/12/15 1:57 | $98.93 | $42.19 | TCP driver requested to charge the rider a lower fare. |
| 292 | 70031727 | 10/10/15 20:59 | 10/12/15 10:04 | $33.08 | $31.00 | TCP driver requested to charge the rider a lower fare to reflect a half mile difference. |
| 293 | 70691027 | 10/14/15 18:04 | 10/14/15 18:14 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 294 | 71174984 | 10/16/15 7:07 | 10/16/15 7:20 | $25.00 | $0.00 | TCP driver requested a refund of the cancellation fee charged to rider. |
| 295 | 71182427 | 10/16/15 7:32 | 10/16/15 7:45 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 296 | 71431966 | 10/16/15 22:15 | 10/16/15 22:25 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 297 | 71776792 | 10/17/15 20:13 | 10/17/15 21:45 | $125.31 | $83.62 | TCP driver requested to charge the rider a lower fare because the TCP driver ended the trip on the Uber app after the actual trip ended. |
| 298 | 72513646 | 10/20/15 8:35 | 10/20/15 8:46 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 299 | 72523507 | 10/20/15 7:58 | 10/20/15 9:28 | $20.12 | $16.27 | TCP driver requested to charge the rider a lower fare because the ride took longer than it should have. |
| 300 | 73235949 | 10/22/15 16:38 | 10/22/15 17:37 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 301 | 73277465 | 10/22/15 20:01 | 10/22/15 20:23 | $36.31 | $15.26 | TCP driver requested to charge the rider a lower fare. |
| 302 | 73280436 | 10/22/15 17:27 | 10/22/15 20:35 | $42.42 | $34.58 | TCP driver requested to charge the rider a lower fare because the TCP driver ended the trip on the Uber app after the actual trip ended. |
| 303 | 74209824 | 10/25/15 16:07 | 10/25/15 16:37 | $36.05 | $25.31 | TCP driver requested a refund of the fare charged to the rider. |
| 304 | 74300145 | 10/25/15 23:00 | 10/25/15 23:48 | $118.62 | $89.49 | TCP driver requested to charge the rider a lower fare using UberBLACK rates. |
| 305 | 74476317 | 10/26/15 12:38 | 10/26/15 13:59 | $144.90 | $84.00 | TCP driver requested to charge the rider a lower fare because the TCP driver ended the trip on the Uber app after the actual trip ended. |
| 306 | 74838917 | 10/27/15 18:00 | 10/27/15 18:10 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 307 | 74973996 | 10/28/15 1:49 | 10/28/15 2:03 | $10.65 | $0.00 | TCP driver requested to charge the rider a lower fare. |
| 308 | 75146030 | 10/28/15 16:24 | 10/28/15 17:06 | $35.32 | $32.51 | TCP driver requested to charge the rider a lower fare. |
| 309 | 75670074 | 10/30/15 5:55 | 10/30/15 8:01 | $123.42 | $61.99 | TCP driver requested to charge the rider a lower fare because the TCP driver ended the trip on the Uber app after the actual trip ended. |
| 310 | 75895699 | 10/30/15 21:07 | 10/30/15 21:50 | $56.59 | $40.98 | TCP driver requested a refund of the fare charged to the rider because the TCP driver hit the wrong button. |
| 311 | 76413522 | 11/1/15 1:34 | 11/1/15 1:54 | $18.00 | $0.00 | TCP driver requested to charge the rider a lower fare because the TCP driver ended the trip on the Uber app after the actual trip ended. |
| 312 | 76701573 | 11/1/15 22:55 | 11/1/15 23:27 | $27.14 | $22.10 | TCP driver requested to charge the rider a lower fare. |
| 313 | 76729369 | 11/1/15 1:02 | 11/2/15 2:04 | $69.95 | $51.07 | TCP driver requested to charge the rider a lower fare. |
| 314 | 77958942 | 11/5/15 17:25 | 11/5/15 19:16 | $90.98 | $69.76 | TCP driver requested to charge the rider a lower fare. |
| 315 | 78283674 | 11/6/15 15:29 | 11/6/15 17:07 | $228.70 | $204.39 | TCP driver requested to charge the rider a lower fare. |
| 316 | 78462489 | 11/7/15 1:08 | 11/7/15 2:58 | $116.51 | $106.00 | TCP driver requested to charge the rider a lower fare because the driver took a non-toll road that was 3 miles longer. |
| 317 | 78763954 | 11/7/15 21:28 | 11/7/15 22:00 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |

| | Ticket Number | Date of Trip | Date of Ticket | Fare | Adjusted Fare | Reason |
|---|---|---|---|---|---|---|
| 318 | 78934573 | 11/8/15 8:34 | 11/8/15 9:16 | $105.10 | $75.00 | TCP driver requested to charge the rider a lower fare. |
| 319 | 78957872 | 11/7/15 23:04 | 11/8/15 11:13 | $40.94 | $25.94 | TCP driver requested to charge the rider $15 less for the fare. |
| 320 | 79013962 | 11/8/15 15:56 | 11/8/15 16:20 | $15.41 | $11.25 | TCP driver requested to charge the rider a lower fare because the driver took a wrong exit on the trip. |
| 321 | 79046248 | 11/8/15 17:10 | 11/8/15 18:23 | $74.60 | $55.45 | TCP driver requested to charge the rider a lower fare because the GPS took the TCP driver on the wrong route, resulting in a longer trip for the rider. |
| 322 | 79219201 | 11/9/15 5:53 | 11/9/15 6:58 | $111.60 | $96.60 | TCP driver requested to charge the rider $15 less because the driver did not take the most efficient route. |
| 323 | 79421733 | 11/9/15 20:05 | 11/9/15 20:51 | $41.74 | $38.16 | TCP driver requested to charge the rider a lower fare. |
| 324 | 80697534 | 11/13/15 12:14 | 11/13/15 13:11 | $116.84 | $68.85 | TCP driver requested to charge the rider a lower fare. |
| 325 | 81202262 | 11/14/15 18:25 | 11/14/15 19:33 | $36.94 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 326 | 81274221 | 11/14/15 22:47 | 11/14/15 23:01 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 327 | 81500002 | 11/15/15 14:51 | 11/15/15 15:39 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 328 | 81753129 | 11/16/157:45 | 11/16/15 9:05 | $153.21 | $134.29 | TCP driver requested to charge the rider a lower fare. |
| 329 | 84480013 | 11/20/15 18:02 | 11/20/15 20:21 | $101.41 | $60.06 | TCP driver requested to charge the rider a lower fare because the driver ended trip on the Uber app after the actual trip ended. |
| 330 | 84480674 | 11/20/15 18:35 | 11/20/15 20:23 | $73.15 | $28.37 | TCP driver requested to charge the rider a lower fare. |
| 331 | 84481848 | 11/20/15 18:47 | 11/20/15 20:26 | $75.95 | $48.52 | TCP driver requested to charge the rider a lower fare. |
| 332 | 84711233 | 11/21/15 9:01 | 11/21/15 10:13 | $13.59 | $9.04 | TCP driver requested to charge the rider a lower fare because the driver went to the wrong hotel. |
| 333 | 84933908 | 11/21/15 22:39 | 11/21/15 23:13 | $25.00 | $45.06 | TCP driver requested to charge the rider a lower fare. |
| 334 | 84066341 | 11/22/15 7:11 | 11/22/15 8:01 | $167.08 | $100.59 | TCP driver requested to charge the rider a lower fare. |
| 335 | 84511209 | 11/23/15 16:07 | 11/23/15 16:52 | $120.79 | $84.85 | TCP driver requested to charge the rider a lower fare. |
| 336 | 84684565 | 11/24/15 2:07 | 11/24/15 12:37 | $171.29 | $68.85 | TCP driver requested to charge the rider a lower fare. |
| 337 | 84932240 | 11/24/15 20:40 | 11/24/15 21:03 | $32.90 | $29.71 | TCP driver requested to charge the rider a lower fare. |
| 338 | 85285062 | 11/25/15 19:46 | 11/25/15 20:26 | $15.00 | $65.46 | TCP driver requested to charge the rider a lower fare. |
| 339 | 85335813 | 11/25/15 20:47 | 11/26/15 7:14 | $14.37 | $10.46 | TCP driver requested to charge the rider a lower fare. |
| 340 | 85711416 | 11/27/15 0:34 | 11/27/15 1:17 | $25.00 | $10.00 | TCP driver requested a refund of the fare charged to the rider because the trip was cancelled and not completed. |
| 341 | 85990768 | 11/27/15 19:20 | 11/27/15 20:28 | $25.91 | $21.53 | TCP driver requested to charge the rider a lower fare. |
| 342 | 86028635 | 11/27/15 22:10 | 11/27/15 22:33 | $15.00 | $0.00 | TCP driver requested a refund of the fare charged to the rider. |
| 343 | 86418699 | 11/28/15 23:54 | 11/29/15 0:14 | $57.72 | $43.20 | TCP driver requested to charge the rider using UberBLACK rates instead of UberSUV rates. |
| 344 | 86839389 | 11/30/15 6:31 | 11/30/15 15:29 | $109.20 | $65.00 | TCP driver requested to charge the rider a lower fare. |

| B. TCP Driver Requests for Fare Reduction That Were Not Confirmed by the TCP Driver | | | | | |
|---|---|---|---|---|---|
| | Ticket Number | Date of Trip | Date of Ticket | Fare | Adjusted Fare | Reason |
| 1 | 19031024 | 1/25/15 1:32 | 1/25/15 1:49 | $61.34 | $61.34 | TCP driver wrote in about a fare reduction. |
| 2 | 25109759 | 3/24/15 17:27 | 3/24/15 18:48 | $153.28 | $153.28 | TCP driver wrote in about a fare reduction. |
| 3 | 26707479 | 4/6/15 18:02 | 4/6/15 18:43 | $62.16 | $62.16 | TCP driver wrote in about a fare reduction. |
| 4 | 36458099 | 6/4/15 9:41 | 6/4/15 10:25 | $117.10 | $117.10 | TCP driver wrote in about a fare reduction. |
| 5 | 41831383 | 6/29/15 7:22 | 6/29/15 8:06 | $113.83 | $113.83 | TCP driver wrote in about a fare reduction. |
| 6 | 42111387 | 6/30/15 14:31 | 6/30/15 15:09 | $18.53 | $18.53 | TCP driver wrote in about a fare reduction. |
| 7 | 55239103 | 8/22/15 21:57 | 8/22/15 22:58 | $63.00 | $63.00 | TCP driver wrote in about a fare reduction. |
| 8 | 59049805 | 9/5/15 23:43 | 9/6/15 8:56 | $70.00 | $70.00 | TCP driver wrote in about Uber applying an UberBLACK rate. |
| 9 | 57926598 | 42249.03958 | 9/2/15 1:43 | $15.00 | $15.00 | TCP driver wrote in about a fare reduction. |
| 10 | 66015506 | 9/28/15 17:28 | 9/28/15 18:09 | $82.55 | $82.55 | TCP driver wrote in about a fare reduction. |
| 11 | 68565555 | 10/7/15 18:46 | 10/7/15 19:23 | $19.80 | $19.80 | TCP driver wrote in about a fare reduction. |
| 12 | 82593213 | 11/18/15 15:02 | 11/18/15 16:30 | $134.01 | $134.01 | TCP driver wrote in about a fare reduction. |
| 13 | 85192559 | 11/25/15 14:09 | 11/25/15 23:21 | $133.25 | $133.25 | TCP driver wrote in about a fare reduction. |

# ATTACHMENT F

Ad Hoc Promotions

ATTACHMENT F

| | Promotion | Date/Timeframe | Description | Location | Organizer |
|---|---|---|---|---|---|
| 1 | Valentine's Day | 2/14/11 | http://newsroom.uber.com/2011/02/valentines-day-on-demand-be-mine/ | San Francisco | San Francisco City Team |
| 2 | Flat rates in Palo Alto | 3/4/11 | http://newsroom.uber.com/2011/03/palo-alto/ | San Francisco | San Francisco City Team |
| 3 | July 4 discounts | 7/4/11 | http://newsroom.uber.com/2011/06/uber-independence-day-ikoff/ | San Francisco | San Francisco City Team |
| 4 | Rider Zero - Tony Hawk | 5/10/12 | http://newsroom.uber.com/2012/05/tony-hawk-is-our-first-san-diego-rider-zero/ | San Diego | San Diego City Team |
| 5 | Del Mar Opening Day | 7/15/12 | http://newsroom.uber.com/2012/07/where-the-surf-meets-the-turf/ | San Diego | San Diego City Team |
| 6 | Street Beat Block Party | 9/29/12 | http://newsroom.uber.com/2012/09/get-a-free-ride-to-street-beat/ | San Diego | San Diego City Team |
| 7 | Valentines Day - Barbershop Quartet | 2/14/13 | http://newsroom.uber.com/2013/02/valentines-day-san-diego/ | San Diego | San Diego City Team |
| 8 | Tamale Lady | 9/12/13 | http://newsroom.uber.com/2013/09/tamale-lady-will-bail-out-the-mission-be-strong/ | San Diego | San Diego City Team |
| 9 | Pacific Beach Neighborhood Love | 9/17/13 | http://newsroom.uber.com/2013/09/pacific-beach-neighborhood-love/ | San Diego | San Diego City Team |
| 10 | Stub Hub Partnership | 9/30/13 | http://newsroom.uber.com/2013/09/get-your-tickets-your-experience-with-uber-stubhub-2/ | San Diego | San Diego City Team |
| 11 | Zedd | 10/11/13 | http://newsroom.uber.com/2013/10/stay-beautiful-with-zedd/ | Los Angeles | Los Angeles City Team |
| 12 | Kittens | 10/29/13 | http://newsroom.uber.com/2013/10/uberkittens/ | San Francisco | San Francisco City Team |
| 13 | Holiday Party Promo | 11/19/13-11/25/13 | http://newsroom.uber.com/2013/11/tis-the-gift-of-uber-with-a-holiday-boost/ | San Diego | San Diego City Team |
| 14 | UberBLACK Friday | 11/27/13 | http://newsroom.uber.com/2013/11/uberblack-friday/ | San Diego | San Diego City Team |
| 15 | UberSLEIGH | 12/9/13 - 12/17/13 | http://newsroom.uber.com/2013/12/san-diego-ubersleigh-is-coming-to-town/ | San Diego | San Diego City Team |
| 16 | UberSTRETCH | Dec-13 | http://newsroom.uber.com/2013/12/stretch-on-demand-this-holiday-season/ | San Diego | San Diego City Team |
| 17 | Vegas on demand | 1/29/14-3/1/14 | http://newsroom.uber.com/2014/01/vegas-on-demand/ | Los Angeles | Los Angeles City Team |
| 18 | The Royals | 3/1/5/14 | http://newsroom.uber.com/2014/03/uber-the-royals/ | Los Angeles | Los Angeles City Team |
| 19 | Snapsie / Coachella | 4/1/14 | http://www.snapsie.com/blog/SnapSie-Uber-Uber-VIP-Festival-Contest-37234498 | San Francisco | San Francisco City Team |
| 20 | Pitch | 4/8/14 | http://newsroom.uber.com/2014/04/invest-in-an-uber-for-your-chance/ | San Diego | San Diego City Team |
| 21 | UberCHOPPER | 4/10/14-4/12/14 & 4/17/14-4/19/14 | http://newsroom.uber.com/2014/04/take-off-with-uberchopper-to-coachella-valley/ | Palm Springs | Los Angeles City Team |
| 22 | All Access - Coachella | 4/11/14-4/13/14 | https://newsroom.uber.com/coachella-access-2014/were-arriving-in-the-desert-for-festival-season/ | PS (Palm Springs) | Los Angeles City Team |
| 23 | UberSTRETCH - Coachella | 4/15/14 | http://newsroom.uber.com/2014/04/uber-long-and-cool-for-coachella/ | Palm Springs | Los Angeles City Team |
| 24 | UberCOD | 6/1/14 | http://newsroom.uber.com/2014/06/anywhere-call-of-duty-on-demand/ | San Diego | San Diego City Team |
| 25 | Neighborhood Love | 6/20/14 | http://newsroom.uber.com/2014/06/explore-san-diego-neighborhood-love/ | Los Angeles | Los Angeles City Team |
| 26 | UberSTRETCH | 7/1/14 | http://newsroom.uber.com/2014/07/celebrate-americas-birthday-in-style-with-uberstretch/ | Los Angeles | Los Angeles City Team |
| 27 | All Access - US Open of Surf | 7/31/14 | http://newsroom.uber.com/2014/07/an-all-access-pass-to-the-us-open-of-surf/ | Orange County | San Francisco City Team |
| 28 | Kittens | 10/1/14 | http://newsroom.uber.com/2014/10/uberkittens-silly/ | San Francisco | San Francisco City Team |
| 29 | UberTHRILL | 10/31/14 | http://newsroom.uber.com/2014/10/uberthrill-powered-by-xcaret/ | Los Angeles | Los Angeles City Team |
| 30 | UberSPOTIFY | 11/21/14 | http://newsroom.uber.com/2014/11/ride-in-style-with-uber-spotify/ | San Diego | San Diego City Team |
| 31 | Black Friday Promo | 11/26/14 | http://newsroom.uber.com/2014/11/beat-the-black-friday-crowds/ | Los Angeles, Orange County | Los Angeles City Team |
| 32 | Puppies | 2/6/15 | On demand delivery of adorable puppies | San Francisco | San Francisco City Team |
| 33 | SPG | 2/24/15 | http://newsroom.uber.com/2015/02/jumpstart-your-collection-this-weekend/ | San Diego | San Diego City Team |
| 34 | UberCHOPPER | 4/9/15-4/10/15 & 4/16/15-4/17/15 | http://newsroom.uber.com/2015/04/ride-in-style-to-coachella-valley-with-uberchopper-2/ | Los Angeles, Orange County | Los Angeles City Team |
| 35 | Goodwill | 5/21/15 | http://newsroom.uber.com/2015/04/clear-the-clutter-and-clean-out-your-closet-with-goodwill-spring-cleaning-day/ | Los Angeles | Los Angeles City Team |
| 36 | Brittany | 5/3/15 | http://newsroom.uber.com/2015/05/we-got-the-scoop-on-new-hire-brittany/ | Los Angeles | Los Angeles City Team |
| 37 | USA Network / Comic-Con Promo | 7/8/15 | http://newsroom.uber.com/2015/07/enter-to-win-vip-access-to-the-con/ | San Diego | San Diego City Team |
| 38 | Madden NFL | 8/24/15 | http://newsroom.uber.com/2015/08/madden-this-kick-off-weekend/ | San Francisco | San Francisco City Team |
| 39 | UberCHOPPER | 9/4/15 | http://newsroom.uber.com/2015/09/uberchopper-this-labor-day-weekend/ | Los Angeles | Los Angeles City Team |
| 40 | Jay Leno | 9/15/15 | http://newsroom.uber.com/2015/09/jay-leno/ | San Francisco | San Francisco City Team |
| 41 | Kittens | 10/29/15 | https://newsroom.uber.com/2015/10/uberkittens-are-back/ | Los Angeles, Orange County | Los Angeles City Team |
| 42 | Kittens | 10/29/15 | http://newsroom.uber.com/2015/10/uberkittens-are-back/ | San Francisco | San Francisco City Team |
| 43 | Health | 11/1/15 | https://newsroom.uber.com/2015/11/uberhealth/ | Los Angeles | Los Angeles City Team |
| 44 | UberPLANE (LUXLIFE) | 11/5/15 | http://newsroom.uber.com/2015/11/uber-and-the-fly-with-uberplane/ | San Francisco | San Francisco City Team |
| 45 | UberHEALTH | 11/19/15 | http://newsroom.uber.com/2015/11/uberhealth-the-flu-with-uberhealth/ | Los Angeles | Los Angeles City Team |

# ATTACHMENT G

Operations Chart

## <u>Attachment G</u>
## Operations Chart



<u>CERTIFICATE OF SERVICE</u>

I, Nyran Rose Rasche, an attorney at Cafferty Clobes Meriwether & Sprengel LLP, hereby

certify that on July 1, 2016, I caused a copy of the foregoing Requests for Admission to be served

by email upon the following:

> Reed Brodsky
> Gibson, Dunn & Crutcher LLP
> 200 Park Avenue
> New York, New York 10166

By:   <u>*s/ Nyran Rose Rasche*</u>
          Nyran Rose Rasche

# EXHIBIT 8

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
                :

SPENCER MEYER, individually and on
behalf of those similarly situated,      :

                :
           Plaintiffs,     :

                :
        vs.         :    Case No. 1:15-cv-9796 (JSR)

                :

TRAVIS KALANICK and UBER
TECHNOLOGIES, INC.,         :

                :
           Defendant.    :
-----------------------------------------------------------x

## DEFENDANT UBER TECHNOLOGIES, INC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSIONS

Defendant Uber Technologies, Inc. ("Uber") hereby responds and objects to Plaintiff's First Set of Requests for Admissions ("Requests") as follows. Uber specifically reserves all of its rights under the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

## GENERAL OBJECTIONS

The general objections, including those related to the Definitions ("General Objections") listed below apply to and are incorporated into each response by Uber to the Requests. Each response is made without waiving the General Objections. Uber is willing to meet and confer with Plaintiff, as necessary, in order to resolve disputes regarding the Requests or any of Uber's objections and response thereto.

1. Uber's responses herein are based on facts presently known to it and represent the results of a diligent and good-faith effort, after a reasonable inquiry, to respond to the Requests. Accordingly, Uber reserves its right to amend, supplement, correct, clarify, or change its

responses and objections to the Requests at any time as a result of additional information that may come to its attention.

2.  Uber's objections and responses to the Requests are made without waiving Uber's right to object on any ground at any time to other discovery requests or other discovery procedures involving or relating to the subject matter of the Requests or these responses.

3.  Uber objects to the Requests, including the Definitions and Instructions, to the extent that they purport to impose requirements or obligations in addition to or different from those imposed by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Southern District of New York, any applicable order of the Court, or any relevant jurisdiction. Uber will construe the language of the Requests by their plain and accepted meaning through general use where possible or practicable.

4.  Uber objects to the Requests, including the Definitions and Instructions, to the extent that they seek information outside the scope of Rule 36 of the Federal Rules of Civil Procedure.

5.  Uber objects to the Requests, including the Definitions and Instructions, to the extent that they seek information that is not relevant to specific claims or defenses in this litigation, not proportional to the needs of this case and/or exceeds the scope of discovery permitted under Federal Rules of Civil Procedure.  By providing these responses, Uber does not concede that any matter that is the subject of any of the Requests is in any way relevant or admissible. Uber expressly reserves (i) all objections as to competence, relevance, materiality, and/or admissibility of any of the information identified or produced in response to the Requests; (ii) all rights to object on any ground to use any of these objections, response, and/or information produced in response to the Requests in any subsequent proceedings in this case or any other

case, action, or proceeding; (iii) all rights to object on any ground to any request for further responses to these Requests or any other requests for admission.

6. Uber objects to the Requests, including the Definitions and Instructions, to the extent that they are unreasonably cumulative or duplicative, or seek information obtainable or deducible (or already obtained in whole or in part) from some other available means of discovery that is more efficient, more convenient, more complete, less burdensome, less oppressive, or less expensive.

7. Uber objects to the Requests, including the Definitions and Instructions, to the extent that they seek disclosure of information protected from discovery by the attorney-client privilege, the joint defense privilege, the work product doctrine or any other applicable privilege, immunity or exemption, including materials prepared in anticipation of litigation. No such privileged or protected information will be disclosed in response to these Requests, and any inadvertent disclosure shall not be deemed a waiver of any privilege with respect to such information. Uber reserves its rights to reclaim inadvertently disclosed privileged or protected information in accordance with the terms of the protective order entered in this litigation.

8. Uber objects to the Requests, including the Definitions and Instructions, to the extent that they are ambiguous, irrelevant, overly broad, or unreasonably burdensome.

9. Uber objects to the Requests, including the Definitions and Instructions, to the extent that they are vague and ambiguous and fail to differentiate between Uber's transportation-related products and Uber's other product offerings. Uber construes these Requests as only addressing Uber's transportation-related products, such as UberX and UberBlack.

10. Uber objects to the Requests, including the Definitions and Instructions, to the extent that they seek disclosure of confidential or proprietary business information, intellectual property, or trade secrets.

11. Uber objects to the Requests, including the Definitions and Instructions, to the extent that they seek information not in its custody, possession or control, or seek admissions regarding matters that are not within its knowledge and cannot be ascertained upon reasonable inquiry.

12. Uber objects to the Requests, including the Definitions and Instructions, to the extent that they imply the existence of facts or circumstances which do not and/or did not exist, and to the extent they state or assume legal conclusions. In providing these Responses and Objections, Uber does not admit the factual or legal premise of any of these Requests. In responding to the Requests, Uber does not waive or intend to waive, but rather reserves, the right to object on all appropriate grounds to the introduction of any evidence covered or referred to in these Requests.

13. Uber objects to the Requests, including the Definitions and Instructions, to the extent that they seek information relating to confidential and proprietary business or financial information, the disclosure of which might violate the confidentiality and privacy rights of individuals under California, New York, or federal law, or any jurisdiction in which any individual may lay claim. Uber will not disclose such information, and any inadvertent disclosure shall not be deemed a waiver of any privilege, immunity, or other protection. Uber does not concede by making these responses that it is in possession of any information responsive to any particular Request or that any response given is relevant to the above captioned action.

14. Uber objects to the Requests, including the Definitions and Instructions, to the extent that they improperly seek information and personal identifying information of potential class members prior to the class certification stage. Uber also objects to the extent the information sought would only be granted in a class action case and Plaintiff has not adequately defined the class to obtain the information.

15. Uber objects to the Requests, including the Definitions and Instructions, to the extent that they seek information that is located beyond the geographic borders of the United States or concerning any entities or individuals located outside of the United States, contrary to the market definition alleged in the First Amended Complaint. In responding to these Requests, Uber construes them as only applying to the United States.

## OBJECTIONS TO DEFINITIONS

1. Uber objects to the definition of "Uber," as overbroad and unduly burdensome. The definition effectively includes over 400 separate organizations, many with employees and operations located outside the United States that have no relevance to this action. Accordingly, the term "Uber" will be interpreted to be limited to Uber Technologies, Inc. and its employees in the United States

2. Uber objects to the definition of "Uber App" as overbroad, vague, and ambiguous. Uber construes the term "Uber App" to mean Uber's smartphone application that connects users looking for transportation with independent transportation providers.

3. Uber objects to the term "Driver-Partner" as overbroad, vague, and ambiguous. Uber construes the term "Driver-Partner" to mean an independent transportation provider who has accepted a ride request from a rider, at least one time, through the Uber App, in the United States.

4. Uber objects to the definition of "Surge Pricing" as overbroad, vague, and ambiguous. Uber construes the term "Surge Pricing" to refer to the dynamic calculation of specific fares, and that when demand outstrips supply in a specific neighborhood area, Uber's pricing algorithm temporarily increases the factor applied to the calculation of the fare based on the published rates in that area to encourage more independent transportation providers to become available to offer rides and therefore expand supply.

### SPECIFIC RESPONSES TO REQUESTS FOR ADMISSIONS

**REQUEST FOR ADMISSION NO. 1:**

Admit that at one or more times between January 1, 2010 and the present, Kalanick has been an Uber Driver-Partner.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Subject to Uber's General Objections and Uber's understanding of the Request, Uber admits that Mr. Kalanick drove a vehicle using the Uber App in San Francisco, California, on one night—starting at 9:19 p.m. on February 21, 2014, and ending at 1:57 a.m. on February 22, 2014. Except as expressly admitted, Uber denies Request No. 1.

**REQUEST FOR ADMISSION NO. 2:**

Admit that when Kalanick acted as an Uber Driver-Partner, Kalanick provided transportation services to Uber Users.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Uber objects to this Request on the grounds that the term "provided" is vague and ambiguous. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits that Mr. Kalanick drove a vehicle using the Uber App in San Francisco, California, on one night—starting at 9:19 p.m. on February 21, 2014, and

ending at 1:57 a.m. on February 22, 2014.  Except as expressly admitted, Uber denies Request No. 2.

**REQUEST FOR ADMISSION NO. 3:**

Admit that when Kalanick acted as an Uber Driver-Partner, Kalanick sold transportation services to Uber Users.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Uber objects to this Request on the grounds that the term "sold" is vague and ambiguous. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits that Mr. Kalanick drove a vehicle using the Uber App in San Francisco, California, on one night—starting at 9:19 p.m. on February 21, 2014, and ending at 1:57 a.m. on February 22, 2014.  Except as expressly admitted, Uber denies Request No. 3.

**REQUEST FOR ADMISSION NO. 4:**

Admit that when Kalanick acted as an Uber Driver-Partner, Kalanick did not bid or compete with other Uber Driver-Partners based on price.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Uber objects to this Request on the grounds that the phrase "bid or compete with other Uber Driver Partners based on price" is vague and ambiguous.  Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits that Mr. Kalanick drove a vehicle using the Uber App in San Francisco, California, on one night— starting at 9:19 p.m. on February 21, 2014, and ending at 1:57 a.m. on February 22, 2014. Except as expressly admitted, Uber denies Request No. 4.

**REQUEST FOR ADMISSION NO. 5:**

Admit that when Kalanick acted as an Uber Driver-Partner, Kalanick did not negotiate fares with Uber Users.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Uber objects to this Request on the grounds that the term "negotiate fares" is vague and ambiguous. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits that Mr. Kalanick drove a vehicle using the Uber App in San Francisco, California, on one night—starting at 9:19 p.m. on February 21, 2014, and ending at 1:57 a.m. on February 22, 2014. Except as expressly admitted, Uber denies Request No. 5.

**REQUEST FOR ADMISSION NO. 6:**

Admit that when Kalanick acted as an Uber Driver-Partner, Kalanick did not negotiate fares with Uber.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Uber objects to this Request on the grounds that the term "negotiate fares" is vague and ambiguous. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber denies Request No. 6 and refers Plaintiff to its Response to Request No.7.

**REQUEST FOR ADMISSION NO. 7:**

Admit that when Kalanick acted as an Uber Driver-Partner, Kalanick did not request that Uber reduce any fare calculated by the Uber App.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Uber objects to this request on the grounds that the term "reduce any fare" is vague and ambiguous. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits that Mr. Kalanick drove a vehicle using the Uber App in San Francisco, California, on one night—starting at 9:19 p.m. on February 21, 2014, and ending at 1:57 a.m. on February 22, 2014. Uber further admits that, on that night, Mr. Kalanick did not request that Uber reduce any fare recommended by the Uber App's algorithm. Except as expressly admitted, Uber denies Request No. 7.

**REQUEST FOR ADMISSION NO. 8:**

Admit that when Kalanick acted as an Uber Driver-Partner, Kalanick did not reduce any fare calculated by the Uber App.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Uber objects to this Request on the grounds that the term "reduce any fare" is vague and ambiguous. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber denies Request No. 8 and refers Plaintiff to its Responses to Requests No. 5 and 7.

**REQUEST FOR ADMISSION NO. 9:**

Admit that from January 1, 2010 to the present, Uber has offered in the United States a smartphone application that connects Uber Users with independent transportation providers.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Uber objects to this Request on the grounds that the term "independent transportation provider" is vague and ambiguous. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits that it offers a smartphone

application that connects Uber Users with independent transportation providers. Except as expressly admitted, Uber denies Request No. 9.

**REQUEST FOR ADMISSION NO. 10:**

Admit that from January 1, 2010 to the present, Uber has not been a transportation company in the United States.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Uber objects to this Request on the grounds that the term "transportation company" is vague and ambiguous. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits that it is not a transportation company in the United States. Except as expressly admitted, Uber denies Request No. 10.

**REQUEST FOR ADMISSION NO. 11:**

Admit that from January 1, 2010 to the present, Uber has not been a transportation carrier in the United States.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Uber objects to this Request on the grounds that the term "transportation carrier" is vague and ambiguous. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits that Uber is not a transportation carrier in the United States. Except as expressly admitted, Uber denies Request No. 11.

**REQUEST FOR ADMISSION NO. 12:**

Admit that from January 1, 2010 to the present, Uber has not sold transportation services to Uber Users in the United States.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Uber objects to this Request on the grounds that the terms "sold" and "transportation services" are vague and ambiguous. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits that Uber does not sell transportation services to Uber Users in the United States. Except as expressly admitted, Uber denies Request No. 12.

**REQUEST FOR ADMISSION NO. 13:**

Admit that from January 1, 2010 to the present, Uber Driver-Partners have been independent companies or individuals in the business of providing transportation services.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Uber objects to this Request on the grounds that the terms "independent companies" or "individuals in the business of providing transportation services" are vague and ambiguous. Uber further objects to this Request on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence, in that, among other things, it is not reasonably limited as to geographic region. Uber further objects to this Request because it seeks information that is not within Uber's possession, custody or control. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits that Uber Driver-Partners are independent providers of transportation services. Except as expressly admitted, Uber denies Request No. 13.

**REQUEST FOR ADMISSION NO. 14:**

Admit that from January 1, 2010 to the present, Uber Driver-Partners have sold transportation services to Uber Users.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Uber objects to this Request on the grounds that the terms "sold" and "transportation services" are vague and ambiguous. Uber further objects to this Request on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence, in that, among other things, it is not reasonably limited as to geographic region. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits that Uber Driver-Partners sell transportation services to Uber Users. Except as expressly admitted, Uber denies Request No. 14.

**REQUEST FOR ADMISSION NO. 15:**

Admit that from January 1, 2010 to the present, the legal relationship between Uber and Uber Driver-Partners, other than corporate employees of Uber, has been solely that of independent contracting parties.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Uber objects to this Request on the grounds that the terms "legal relationship" and "other than corporate employees" are vague and ambiguous. Uber further objects to this Request on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence, in that, among other things, it is not reasonably limited as to geographic region. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits that excluding Uber corporate employees, Uber Driver-Partners are independent providers of transportation services. Except as expressly admitted, Uber denies Request No. 15.

**REQUEST FOR ADMISSION NO. 16:**

Admit that from January 1, 2010 to the present, Uber has not employed Uber Driver-Partners, other than corporate employees of Uber, like Kalanick.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Uber objects to this Request on the grounds that the term "other than corporate employees" is vague and ambiguous. Uber further objects to this Request on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence, in that, among other things, it is not reasonably limited as to geographic region. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber refers Plaintiff to its Response to Request No. 15.

**REQUEST FOR ADMISSION NO. 17:**

Admit that from January 1, 2010 to the present, no Uber Driver-Partner, other than corporate employees of Uber, has had any employment agreement with Uber.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Uber objects to this Request on the grounds that the terms "other than corporate employees" and "employment agreement" are vague and ambiguous. Uber further objects to this Request on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence, in that, among other things, it is not reasonably limited as to geographic region. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber refers Plaintiff to its Response to Request No. 15.

**REQUEST FOR ADMISSION NO. 18:**

Admit that from January 1, 2010 to the present, no Uber Driver-Partner, other than corporate employees of Uber, has had any employment relationship with Uber.

13

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Uber objects to this Request on the grounds that the terms "corporate employees" and "employment relationship" are vague and ambiguous. Uber further objects to this Request on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence, in that, among other things, it is not reasonably limited as to geographic region. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber refers Plaintiff to its Response to Request No. 15.

**REQUEST FOR ADMISSION NO. 19:**

Admit that from January 1, 2010 to the present, all Uber Driver-Partners entered into agreements with Uber before providing transportation services through the Uber App.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Uber objects to this Request on the grounds that the term "agreements" is vague and ambiguous. Uber further objects to this Request on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence, in that, among other things, it is not reasonably limited as to geographic region. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits that Uber Driver-Partners must enter into certain written agreements with Uber before becoming driver-partners. Except as expressly admitted, Uber denies Request No. 19.

**REQUEST FOR ADMISSION NO. 20:**

Admit that from January 1, 2010 to the present, Uber has not had a joint venture relationship with Uber Driver-Partners (other than corporate employees of Uber) as a result of their agreements with Uber or their use of the Uber App.

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

Uber objects to this Request on the grounds that the terms "joint venture relationship," "corporate employees," "agreements," and "use of the Uber App" are vague and ambiguous. Uber further objects to this Request on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence, in that, among other things, it is not reasonably limited as to geographic region. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits that the operative agreement with Uber Driver-Partners states, "No joint venture, partnership, employment, or agency relationship exists between you, the Company or any third party provider as a result of this Agreement of use of the Service or Application." Except as expressly admitted, Uber denies Request No. 20 and specifically denies the absence of an efficiency-enhancing integration of economic activity within the meaning of the antitrust laws.

**REQUEST FOR ADMISSION NO. 21:**

Admit that from January 1, 2010 to the present, Uber has not had a partnership relationship with Uber Driver-Partners (other than corporate employees of Uber) as a result of their agreements with Uber or their use of the Uber App.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

Uber objects to this Request on the grounds that the terms "partnership relationship," "corporate employees," "agreements," and "use of the Uber App" are vague and ambiguous. Uber further objects to this Request on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence, in that, among other things, it is not reasonably limited as to geographic region. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits that the operative

agreement with Uber Driver-Partners states, "No joint venture, partnership, employment, or agency relationship exists between you, the Company or any third party provider as a result of this Agreement of use of the Service or Application." Except as expressly admitted, Uber denies Request No. 21 and specifically denies the absence of an efficiency-enhancing integration of economic activity within the meaning of the antitrust laws.

**REQUEST FOR ADMISSION NO. 22:**

Admit that from January 1, 2010 to the present, Uber has not had an employment relationship with Uber Driver-Partners (other than corporate employees of Uber) as a result of their agreements with Uber or their use of the Uber App.

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

Uber objects to this Request on the grounds that the terms "employment relationship," "corporate employees," "agreements," and "use of the Uber App" are vague and ambiguous. Uber further objects to this Request on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence, in that, among other things, it is not reasonably limited as to geographic region. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits that excluding Uber corporate employees, Uber Driver-Partners are independent providers of transportation services. Except as expressly admitted, Uber denies Request No. 22.

**REQUEST FOR ADMISSION NO. 23:**

Admit that from January 1, 2010 to the present, Uber has not had an agency relationship with Uber Driver-Partners (other than corporate employees of Uber) as a result of their agreements with Uber or their use of the Uber App.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

Uber objects to this Request on the grounds that the terms "agency relationship," "corporate employees," "agreements," and "use of the Uber App" are vague and ambiguous. Uber further objects to this Request on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence, in that, among other things, it is not reasonably limited as to geographic region. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits that the operative agreement with Uber Driver-Partners states, "No joint venture, partnership, employment, or agency relationship exists between you, the Company or any third party provider as a result of this Agreement of use of the Service or Application." Except as expressly admitted, Uber denies Request No. 23.

**REQUEST FOR ADMISSION NO. 24:**

Admit that Uber Driver-Partners are not required to drive exclusively for Uber.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

Uber objects to this Request on the grounds that the term "exclusively" is vague and ambiguous. Uber further objects to this Request on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence, in that, among other things, it is not reasonably limited as to geographic region. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits that Driver-Partners are not required to drive exclusively on the Uber platform. Except as expressly admitted, Uber denies Request No. 24.

**REQUEST FOR ADMISSION NO. 25:**

Admit that from January 1, 2010 to the present, Uber has facilitated Uber Users' payment of fares by charging Uber Users' credit cards or other payment methods on file.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

Uber objects to this Request on the grounds that the term "other payment methods on file" is vague and ambiguous. Uber further objects to this Request on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence, in that, among other things, it is not reasonably limited as to geographic region. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits that the Uber App facilitates the payment of an Uber User's fare. Except as expressly admitted, Uber denies Request No. 25.

**REQUEST FOR ADMISSION NO. 26:**

Admit that from January 1, 2010 to the present, Uber has sent receipts for transportation services to Uber Users via email.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

Uber objects to this Request on the grounds that the term "receipts for transportation services" is vague and ambiguous. Uber further objects to this Request on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence, in that, among other things, it is not reasonably limited as to geographic region. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits that the Uber App has the ability to generate and send to Uber Users receipts for transportation services provided by Uber Driver-Partners. Except as expressly admitted, Uber denies Request No. 26.

**REQUEST FOR ADMISSION NO. 27:**

Admit that from January 1, 2010 to the present, each receipt for transportation service sent by Uber to an Uber User identified the fare charged to that Uber User.

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

Uber objects to this Request on the grounds that the term "receipts for transportation services" is vague and ambiguous. Uber further objects to this Request on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence, in that, among other things, it is not reasonably limited as to geographic region and seeks information related to "each receipt." Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber denies Request No. 27.

**REQUEST FOR ADMISSION NO. 28:**

Admit that from January 1, 2010 to the present, Uber Users have not been required to have any method of payment on hand at the time of the trip in order to receive transportation services through the Uber App.

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

Uber objects to this Request on the grounds that the terms "method of payment on hand," "at the time of the trip," and "transportation services" are vague and ambiguous. Uber further objects to this Request on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence, in that, among other things, it is not reasonably limited as to geographic region. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber denies Request No. 28.

**REQUEST FOR ADMISSION NO. 29:**

Admit that the document attached hereto as Exhibit 1 is a true, correct, genuine, and authentic copy of Uber Technologies, Inc.'s December 11, 2015 filing with the Public Utilities Commission of the State of California entitled "RESPONSE OF UBER TECHNOLOGIES, INC. TO ASSIGNED COMMISSIONER AND ADMINISTRATIVE LAW JUDGE'S RULING ORDERING UBER TECHNOLOGIES, INC. TO ANSWER QUESTIONS, FOLLOW-UP QUESTIONS, AND TO PRODUCE DOCUMENTS."

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

Subject to Uber's General Objections, Uber admits that Exhibit 1 purports to be a December 11, 2015 filing by Uber with the Public Utilities Commission of the State of California. If and to the extent the document is ever held to be admissible, it would speak for itself. Except as expressly admitted, Uber denies Request No. 29.

**REQUEST FOR ADMISSION NO. 30:**

Admit that from January 1, 2010 to the present, Uber has required Uber Driver-Partners to notify Uber in order to adjust any fare charged to Uber Users.

**RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

Uber objects to this Request on the grounds that the term "adjust" is vague and ambiguous. Uber further objects to this Request on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence, in that, among other things, it is not reasonably limited as to geographic region. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits that where the Uber App is used to facilitate payment between an Uber user and an independent

transportation provider, the independent transportation provider may contact Uber in order to adjust a charged fare. Except as expressly admitted, Uber denies Request No. 30.

**REQUEST FOR ADMISSION NO. 31:**

Admit that from January 1, 2010 to the present, Uber has required Uber Driver-Partners to provide confirmation to Uber for all reductions in fares charged to Uber Users.

**RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

Uber objects to this Request on the grounds that the terms "confirmation" and "reductions in fares charged" are vague and ambiguous. Uber further objects to this Request on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence, in that, among other things, it is not reasonably limited as to geographic region. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber denies Request No. 31.

**REQUEST FOR ADMISSION NO. 32:**

Admit that between January 1, 2015 and November 30, 2015, Uber received only 344 confirmed requests by Uber Driver-Partners in the United States to charge a fare that was lower than the fare calculated by Uber.

**RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

Uber objects to this Request on the grounds that the term "confirmed requests" is vague and ambiguous. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber denies Request No. 32.

**REQUEST FOR ADMISSION NO. 33:**

Admit that between January 1, 2015 and November 30, 2015, Uber received only 344 confirmed requests by Uber Driver-Partners in California to charge a fare that was lower than the fare calculated by Uber.

**RESPONSE TO REQUEST FOR ADMISSION NO. 33:**

Uber objects to this Request on the grounds that the term "confirmed requests" is vague and ambiguous. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber denies Request No. 33.

**REQUEST FOR ADMISSION NO. 34:**

Admit that between January 1, 2015 and November 30, 2015, Uber received only 13 unconfirmed requests by Uber Driver-Partners in the United States to charge a fare that was lower than the fare calculated by Uber.

**RESPONSE TO REQUEST FOR ADMISSION NO. 34:**

Uber objects to this Request on the grounds that the term "unconfirmed requests" is vague and ambiguous. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber denies Request No. 34.

**REQUEST FOR ADMISSION NO. 35:**

Admit that between January 1, 2015 and November 30, 2015, Uber received only 13 unconfirmed requests by Uber Driver-Partners in California to charge a fare that was lower than the fare calculated by Uber.

<u>**RESPONSE TO REQUEST FOR ADMISSION NO. 35:**</u>

Uber objects to this Request on the grounds that the term "unconfirmed requests" is vague and ambiguous. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber denies the Request No. 35.

<u>**REQUEST FOR ADMISSION NO. 36:**</u>

Admit that Uber has never received a request from an Uber Driver-Partner, before the Uber User entered the Uber Driver-Partner's vehicle, to reduce the fare to be charged to the Uber User.

<u>**RESPONSE TO REQUEST FOR ADMISSION NO. 36:**</u>

Uber objects on the grounds that this request is unduly burdensome and is not reasonably limited as to scope of time. Uber further objects to this request because, among other reasons, it is unintelligible. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber lacks sufficient information to admit or deny this Request and on that basis, denies Request No. 36.

<u>**REQUEST FOR ADMISSION NO. 37:**</u>

Admit that in September of 2014, one or more Uber Driver-Partners requested that Uber increase base fares.

<u>**RESPONSE TO REQUEST FOR ADMISSION NO. 37:**</u>

Uber objects to this Request on the grounds that the terms "requested" and "base fares" are vague and ambiguous. Uber further objects to this Request on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence, in that, among other things, it is not reasonably limited as to geographic region. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits

that in September of 2014, one or more Uber Driver-Partners in New York City requested that Uber increase base fares.

**REQUEST FOR ADMISSION NO. 38:**

Admit that from January 1, 2010 to the present, Uber has had the technological capability to enable Surge Pricing.

**RESPONSE TO REQUEST FOR ADMISSION NO. 38:**

Uber objects to this Request on the grounds that the terms "technological capability" and "enable" are vague and ambiguous. Uber further objects to this Request on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence, in that, among other things, it is not reasonably limited as to geographic region. Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits that the Uber algorithm is dynamic, and when demand outstrips supply in a given area, the Uber algorithm temporarily increases the factor applied to the calculation of the fare in that area to encourage more independent transportation providers to become available to offer rides and therefore expand supply. Except as expressly admitted, Uber denies Request No. 38.

**REQUEST FOR ADMISSION NO. 39:**

Admit that from January 1, 2010 to the present, Uber has had the technological capability to disable Surge Pricing.

**RESPONSE TO REQUEST FOR ADMISSION NO. 39:**

Uber objects to this Request on the grounds that the terms "technological capability" and "disable" are vague and ambiguous. Uber further objects to this Request on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence, in that, among other things, it is not reasonably limited as to geographic region. Subject to the

foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits that the Uber algorithm is dynamic, and when demand outstrips supply in a given area, the Uber algorithm temporarily increases the factor applied to the calculation of the fare in that area to encourage more independent transportation providers to become available to offer rides and therefore expand supply.  Except as expressly admitted, Uber denies Request No. 39.

**REQUEST FOR ADMISSION NO. 40:**

Admit that from January 1, 2010 to the present, the Uber App has notified Uber Driver-Partners of instances of Surge Pricing.

**RESPONSE TO REQUEST FOR ADMISSION NO. 40:**

Uber objects to this Request on the grounds that the terms "notified" and "instances" are vague and ambiguous.  Subject to the foregoing and Uber's General Objections and based on Uber's understanding of the Request, Uber admits that the Uber App has the ability to notify Uber Driver-Partners of instances of Surge Pricing.  Except as expressly admitted, Uber denies Request No. 40.

Dated:   August 8, 2016

Respectfully submitted,

/s/ Daniel G. Swanson
Daniel G. Swanson

GIBSON, DUNN & CRUTCHER LLP

Theodore J. Boutrous, Jr.
Daniel G. Swanson
Nicola T. Hanna

25

Joshua S. Lipshutz
333 South Grand Avenue
Los Angeles, CA  90071
Telephone:     213.229.7000
Facsimile:     213.229.7520
TBoutrous@gibsondunn.com
DSwanson@gibsondunn.com
NHanna@gibsondunn.com

JLipshutz@gibsondunn.com

Reed Brodsky
200 Park Avenue
New York, NY  10166-0193
Telephone:     212.351.4000
Facsimile:     212.351.4035
RBrodsky@gibsondunn.com

Cynthia E. Richman
1050 Connecticut Avenue, N.W.
Washington, DC  20036
Telephone:     202.955.8500
Facsimile:     202.467.0539
CRichman@gibsondunn.com

*Attorneys for Uber Technologies, Inc.*

## **Certificate of Service**

I hereby certify that the foregoing document was served via email upon counsel of record on August 8, 2016.


/s/ Daniel G. Swanson
Daniel G. Swanson

# EXHIBIT 9

# EXHIBIT 1

<% include ../header.html %>

## Terms and Conditions

Last Updated: May 17, 2013

<% include ../country-picker-terms.html %>

The terms and conditions stated herein (collectively, the "Agreement") constitute a legal agreement between you and Uber Technologies, Inc., a Delaware corporation (the "Company"). In order to use the Service (defined below) and the associated Application (defined below) you must agree to the terms and conditions that are set out below. By using or receiving any services supplied to you by the Company (collectively, the "Service"), and downloading, installing or using any associated application supplied by the Company which purpose is to enable you to use the Service (collectively, the "Application"), you hereby expressly acknowledge and agree to be bound by the terms and conditions of the Agreement, and any future amendments and additions to this Agreement as published from time to time at https://www.uber.com/terms or through the Service.

The Company reserves the right to modify the terms and conditions of this Agreement or its policies relating to the Service or Application at any time, effective upon posting of an updated version of this Agreement on the Service or Application. You are responsible for regularly reviewing this Agreement. Continued use of the Service or Application after any such changes shall constitute your consent to such changes.

THE COMPANY DOES NOT PROVIDE TRANSPORTATION SERVICES, AND THE COMPANY IS NOT A TRANSPORTATION CARRIER. IT IS UP TO THE THIRD PARTY TRANSPORTATION PROVIDER, DRIVER OR VEHICLE OPERATOR TO OFFER TRANSPORTATION SERVICES WHICH MAY BE SCHEDULED THROUGH USE OF THE APPLICATION OR SERVICE. THE COMPANY OFFERS INFORMATION AND A METHOD TO OBTAIN SUCH THIRD PARTY TRANSPORTATION SERVICES, BUT DOES NOT AND DOES NOT INTEND TO PROVIDE TRANSPORTATION SERVICES OR ACT IN ANY WAY AS A TRANSPORTATION CARRIER, AND HAS NO RESPONSIBILITY OR LIABILITY FOR ANY TRANSPORTATION SERVICES PROVIDED TO YOU BY SUCH THIRD PARTIES.

## Key Content-related Terms

"Content" means text, graphics, images, music, software (excluding the Application), audio, video, information or other materials.

"Company Content" means Content that Company makes available through the Service or Application, including any Content licensed from a third party, but excluding User Content.

"User" means a person who accesses or uses the Service or Application.

"User Content" means Content that a User posts, uploads, publishes, submits or transmits to be made available through the Service or Application.

"Collective Content" means, collectively, Company Content and User Content.

## Representations and Warranties

By using the Application or Service, you expressly represent and warrant that you are legally entitled to enter this Agreement. If you reside in a jurisdiction that restricts the use of the Service because of age, or restricts the ability to enter into agreements such as this one due to age, you must abide by such age limits and you must not use the Application and Service. Without limiting the foregoing, the Service and Application is not available to children (persons under the age of 18). By using the Application or Service, you represent and warrant that you are at least 18

years old. By using the Application or the Service, you represent and warrant that you have the right, authority and capacity to enter into this Agreement and to abide by the terms and conditions of this Agreement. Your participation in using the Service and/or Application is for your sole, personal use. You may not authorize others to use your user status, and you may not assign or otherwise transfer your user account to any other person or entity. When using the Application or Service you agree to comply with all applicable laws from your home nation, the country, state and city in which you are present while using the Application or Service.

You may only access the Service using authorized means. It is your responsibility to check to ensure you download the correct Application for your device. The Company is not liable if you do not have a compatible handset or if you have downloaded the wrong version of the Application for your handset. The Company reserves the right to terminate this Agreement should you be using the Service or Application with an incompatible or unauthorized device.

By using the Application or the Service, you agree that:

- You will only use the Service or Application for lawful purposes; you will not use the Services for sending or storing any unlawful material or for fraudulent purposes.
- You will not use the Service or Application to cause nuisance, annoyance or inconvenience.
- You will not impair the proper operation of the network.
- You will not try to harm the Service or Application in any way whatsoever.
- You will not copy, or distribute the Application or other content without written permission from the Company.
- You will only use the Application and Service for your own use and will not resell it to a third party.
- You will keep secure and confidential your account password or any identification we provide you which allows access to the Service.
- You will provide us with whatever proof of identity we may reasonably request.
- You will only use an access point or 3G data account (AP) which you are authorized to use.
- You are aware that when requesting transportation services by SMS, standard messaging charges will apply.

## License Grant, Restrictions and Copyright Policy

### Licenses Granted by Company to Company Content and User Content

Subject to your compliance with the terms and conditions of this Agreement, Company grants you a limited, non-exclusive, non-transferable license: (i) to view, download and print any Company Content solely for your personal and non-commercial purposes; and (ii) to view any User Content to which you are permitted access solely for your personal and non-commercial purposes. You have no right to sublicense the license rights granted in this section.

You will not use, copy, adapt, modify, prepare derivative works based upon, distribute, license, sell, transfer, publicly display, publicly perform, transmit, stream, broadcast or otherwise exploit the Service, Application or Collective Content, except as expressly permitted in this Agreement. No licenses or rights are granted to you by implication or otherwise under any intellectual property rights owned or controlled by Company or its licensors, except for the licenses and rights expressly granted in this Agreement.

### License Granted by User

We may, in our sole discretion, permit Users to post, upload, publish, submit or transmit User Content. By making available any User Content on or through the Service or Application, you hereby grant to Company a worldwide, irrevocable, perpetual, non-exclusive, transferable, royalty-free license, with the right to sublicense, to use, view, copy, adapt, modify, distribute, license, sell, transfer, publicly display, publicly perform, transmit, stream, broadcast and otherwise exploit such User Content only on, through or by means of the Service or Application. Company does not claim any ownership rights in any User Content and nothing in this Agreement will be deemed to restrict any rights that you may have to use and exploit any User Content.

You acknowledge and agree that you are solely responsible for all User Content that you make available through the

Service or Application. Accordingly, you represent and warrant that: (i) you either are the sole and exclusive owner of all User Content that you make available through the Service or Application or you have all rights, licenses, consents and releases that are necessary to grant to Company and to the rights in such User Content, as contemplated under this Agreement; and (ii) neither the User Content nor your posting, uploading, publication, submission or transmittal of the User Content or Company's use of the User Content (or any portion thereof) on, through or by means of the Service or Application will infringe, misappropriate or violate a third party's patent, copyright, trademark, trade secret, moral rights or other intellectual property rights, or rights of publicity or privacy, or result in the violation of any applicable law or regulation.

**Application License**

Subject to your compliance with this Agreement, Company grants you a limited non-exclusive, non-transferable license to download and install a copy of the Application on a single mobile device or computer that you own or control and to run such copy of the Application solely for your own personal use. Furthermore, with respect to any Application accessed through or downloaded from the Apple App Store ("App Store Sourced Application"), you will use the App Store Sourced Application only: (i) on an Apple-branded product that runs iOS (Apple's proprietary operating system software); and (ii) as permitted by the "Usage Rules" set forth in the Apple App Store Terms of Service. Company reserves all rights in and to the Application not expressly granted to you under this Agreement.

**Accessing and Downloading the Application from iTunes**

The following applies to any App Store Sourced Application:

- You acknowledge and agree that (i) this Agreement is concluded between you and Company only, and not Apple, and (ii) Company, not Apple, is solely responsible for the App Store Sourced Application and content thereof. Your use of the App Store Sourced Application must comply with the App Store Terms of Service.
- You acknowledge that Apple has no obligation whatsoever to furnish any maintenance and support services with respect to the App Store Sourced Application.
- In the event of any failure of the App Store Sourced Application to conform to any applicable warranty, you may notify Apple, and Apple will refund the purchase price for the App Store Sourced Application to you and to the maximum extent permitted by applicable law, Apple will have no other warranty obligation whatsoever with respect to the App Store Sourced Application. As between Company and Apple, any other claims, losses, liabilities, damages, costs or expenses attributable to any failure to conform to any warranty will be the sole responsibility of Company.
- You and Company acknowledge that, as between Company and Apple, Apple is not responsible for addressing any claims you have or any claims of any third party relating to the App Store Sourced Application or your possession and use of the App Store Sourced Application, including, but not limited to: (i) product liability claims; (ii) any claim that the App Store Sourced Application fails to conform to any applicable legal or regulatory requirement; and (iii) claims arising under consumer protection or similar legislation.
- You and Company acknowledge that, in the event of any third party claim that the App Store Sourced Application or your possession and use of that App Store Sourced Application infringes that third party's intellectual property rights, as between Company and Apple, Company, not Apple, will be solely responsible for the investigation, defense, settlement and discharge of any such intellectual property infringement claim to the extent required by this Agreement.
- You and Company acknowledge and agree that Apple, and Apple's subsidiaries, are third party beneficiaries of this Agreement as related to your license of the App Store Sourced Application, and that, upon your acceptance of the terms and conditions of this Agreement, Apple will have the right (and will be deemed to have accepted the right) to enforce this Agreement as related to your license of the App Store Sourced Application against you as a third party beneficiary thereof.
- Without limiting any other terms of this Agreement, you must comply with all applicable third party terms of agreement when using the App Store Sourced Application.

You shall not (i) license, sublicense, sell, resell, transfer, assign, distribute or otherwise commercially exploit or make

available to any third party the Service or the Application in any way; (ii) modify or make derivative works based upon the Service or the Application; (iii) create Internet "links" to the Service or "frame" or "mirror" any Application on any other server or wireless or Internet-based device; (iv) reverse engineer or access the Application in order to (a) build a competitive product or service, (b) build a product using similar ideas, features, functions or graphics of the Service or Application, or (c) copy any ideas, features, functions or graphics of the Service or Application, or (v) launch an automated program or script, including, but not limited to, web spiders, web crawlers, web robots, web ants, web indexers, bots, viruses or worms, or any program which may make multiple server requests per second, or unduly burdens or hinders the operation and/or performance of the Service or Application.

You shall not: (i) send spam or otherwise duplicative or unsolicited messages in violation of applicable laws; (ii) send or store infringing, obscene, threatening, libelous, or otherwise unlawful or tortious material, including material harmful to children or violative of third party privacy rights; (iii) send or store material containing software viruses, worms, Trojan horses or other harmful computer code, files, scripts, agents or programs; (iv) interfere with or disrupt the integrity or performance of the Application or Service or the data contained therein; or (v) attempt to gain unauthorized access to the Application or Service or its related systems or networks.

Company will have the right to investigate and prosecute violations of any of the above to the fullest extent of the law. Company may involve and cooperate with law enforcement authorities in prosecuting users who violate this Agreement. You acknowledge that Company has no obligation to monitor your access to or use of the Service, Application or Collective Content or to review or edit any Collective Content, but has the right to do so for the purpose of operating the Service and Application, to ensure your compliance with this Agreement, or to comply with applicable law or the order or requirement of a court, administrative agency or other governmental body. Company reserves the right, at any time and without prior notice, to remove or disable access to any Collective Content that Company, at its sole discretion, considers to be in violation of this Agreement or otherwise harmful to the Service or Application.

**Copyright Policy**

Company respects copyright law and expects its users to do the same. It is Company's policy to terminate in appropriate circumstances Users or other account holders who repeatedly infringe or are believed to be repeatedly infringing the rights of copyright holders. Please see Company's Copyright Policy at https://www.uber.com/legal/copyright, for further information.

## Payment Terms

Any fees that the Company may charge you for the Application or Service, are due immediately and are non-refundable. This no refund policy shall apply at all times regardless of your decision to terminate your usage, our decision to terminate your usage, disruption caused to our Application or Service either planned, accidental or intentional, or any reason whatsoever. The Company reserves the right to determine final prevailing pricing - Please note the pricing information published on the website may not reflect the prevailing pricing.

The Company, at its sole discretion, make promotional offers with different features and different rates to any of our customers. These promotional offers, unless made to you, shall have no bearing whatsoever on your offer or contract. The Company may change the fees for our Service or Application, as we deem necessary for our business. We encourage you to check back at our website periodically if you are interested about how we charge for the Service of Application.

## SMS Messaging

If you select this feature, and have SMS service from one of the supported Carriers (T-Mobile, Verizon Wireless, AT&T, Sprint, Nextel, Boost, U.S. Cellular, MetroPCS and Cricket), you can request pickups via SMS and get notified if you request pickups through our Applications. Message and data rates may apply.

You will only receive messages from Company if you make a pickup request. If you change your mobile phone service

provider the service may be deactivated and you will need to re-enroll in the notification service. Company reserves the right to cancel the notification service at any time; you may cancel (opt-out) the service by texting the word STOP to 827-222 from your mobile phone. For more information, please text the word HELP to 827-222, or call 866-576-1039.

## Intellectual Property Ownership

The Company alone (and its licensors, where applicable) shall own all right, title and interest, including all related intellectual property rights, in and to the Application and the Service and any suggestions, ideas, enhancement requests, feedback, recommendations or other information provided by you or any other party relating to the Application or the Service. This Agreement is not a sale and does not convey to you any rights of ownership in or related to the Application or the Service, or any intellectual property rights owned by the Company. The Company name, the Company logo, and the product names associated with the Application and Service are trademarks of the Company or third parties, and no right or license is granted to use them.

## Third Party Interactions

During use of the Application and Service, you may enter into correspondence with, purchase goods and/or services from, or participate in promotions of third party service providers, advertisers or sponsors showing their goods and/or services through the Application or Service. Any such activity, and any terms, conditions, warranties or representations associated with such activity, is solely between you and the applicable third-party. The Company and its licensors shall have no liability, obligation or responsibility for any such correspondence, purchase, transaction or promotion between you and any such third-party. The Company does not endorse any sites on the Internet that are linked through the Service or Application, and in no event shall the Company or its licensors be responsible for any content, products, services or other materials on or available from such sites or third party providers. The Company provides the Application and Service to you pursuant to the terms and conditions of this Agreement. You recognize, however, that certain third-party providers of goods and/or services may require your agreement to additional or different terms and conditions prior to your use of or access to such goods or services, and the Company disclaims any and all responsibility or liability arising from such agreements between you and the third party providers.

The Company may rely on third party advertising and marketing supplied through the Application or Service and other mechanisms to subsidize the Application or Service. By agreeing to these terms and conditions you agree to receive such advertising and marketing. If you do not want to receive such advertising you should notify us in writing. The Company reserves the right to charge you a higher fee for the Service or Application should you choose not to receive these advertising services. This higher fee, if applicable, will be posted on the Company's website located at http://www.uber.com. The Company may compile and release information regarding you and your use of the Application or Service on an anonymous basis as part of a customer profile or similar report or analysis. You agree that it is your responsibility to take reasonable precautions in all actions and interactions with any third party you interact with through the Service.

## Indemnification

By entering into this Agreement and using the Application or Service, you agree that you shall defend, indemnify and hold the Company, its licensors and each such party's parent organizations, subsidiaries, affiliates, officers, directors, Users, employees, attorneys and agents harmless from and against any and all claims, costs, damages, losses, liabilities and expenses (including attorneys' fees and costs) arising out of or in connection with: (a) your violation or breach of any term of this Agreement or any applicable law or regulation, whether or not referenced herein; (b) your violation of any rights of any third party, including providers of transportation services arranged via the Service or Application, or (c) your use or misuse of the Application or Service.

## Disclaimer of Warranties

THE COMPANY MAKES NO REPRESENTATION, WARRANTY, OR GUARANTY AS TO THE RELIABILITY,

TIMELINESS, QUALITY, SUITABILITY, AVAILABILITY, ACCURACY OR COMPLETENESS OF THE SERVICE OR APPLICATION. THE COMPANY DOES NOT REPRESENT OR WARRANT THAT (A) THE USE OF THE SERVICE OR APPLICATION WILL BE SECURE, TIMELY, UNINTERRUPTED OR ERROR-FREE OR OPERATE IN COMBINATION WITH ANY OTHER HARDWARE, APPLICATION, SYSTEM OR DATA, (B) THE SERVICE OR APPLICATION WILL MEET YOUR REQUIREMENTS OR EXPECTATIONS, (C) ANY STORED DATA WILL BE ACCURATE OR RELIABLE, (D) THE QUALITY OF ANY PRODUCTS, SERVICES, INFORMATION, OR OTHER MATERIAL PURCHASED OR OBTAINED BY YOU THROUGH THE SERVICE WILL MEET YOUR REQUIREMENTS OR EXPECTATIONS, (E) ERRORS OR DEFECTS IN THE SERVICE OR APPLICATION WILL BE CORRECTED, OR (F) THE SERVICE OR THE SERVER(S) THAT MAKE THE SERVICE AVAILABLE ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS. THE SERVICE AND APPLICATION IS PROVIDED TO YOU STRICTLY ON AN "AS IS" BASIS. ALL CONDITIONS, REPRESENTATIONS AND WARRANTIES, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT OF THIRD PARTY RIGHTS, ARE HEREBY DISCLAIMED TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW BY THE COMPANY. THE COMPANY MAKES NO REPRESENTATION, WARRANTY, OR GUARANTY AS TO THE RELIABILITY, SAFETY, TIMELINESS, QUALITY, SUITABILITY OR AVAILABILITY OF ANY SERVICES, PRODUCTS OR GOODS OBTAINED BY THIRD PARTIES THROUGH THE USE OF THE SERVICE OR APPLICATION. YOU ACKNOWLEDGE AND AGREE THAT THE ENTIRE RISK ARISING OUT OF YOUR USE OF THE APPLICATION AND SERVICE, AND ANY THIRD PARTY SERVICES OR PRODUCTS REMAINS SOLELY WITH YOU, TO THE MAXIMUM EXTENT PERMITTED BY LAW.

**Internet Delays**

THE COMPANY'S SERVICE AND APPLICATION MAY BE SUBJECT TO LIMITATIONS, DELAYS, AND OTHER PROBLEMS INHERENT IN THE USE OF THE INTERNET AND ELECTRONIC COMMUNICATIONS. THE COMPANY IS NOT RESPONSIBLE FOR ANY DELAYS, DELIVERY FAILURES, OR OTHER DAMAGE RESULTING FROM SUCH PROBLEMS.

**Limitation of Liability**

IN NO EVENT SHALL THE COMPANY AND/OR ITS LICENSORS BE LIABLE TO ANYONE FOR ANY INDIRECT, PUNITIVE, SPECIAL, EXEMPLARY, INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES OF ANY TYPE OR KIND (INCLUDING PERSONAL INJURY, LOSS OF DATA, REVENUE, PROFITS, USE OR OTHER ECONOMIC ADVANTAGE). THE COMPANY AND/OR ITS LICENSORS SHALL NOT BE LIABLE FOR ANY LOSS, DAMAGE OR INJURY WHICH MAY BE INCURRED BY YOU, INCLUDING BY NOT LIMITED TO LOSS, DAMAGE OR INJURY ARISING OUT OF, OR IN ANY WAY CONNECTED WITH THE SERVICE OR APPLICATION, INCLUDING BUT NOT LIMITED TO THE USE OR INABILITY TO USE THE SERVICE OR APPLICATION, ANY RELIANCE PLACED BY YOU ON THE COMPLETENESS, ACCURACY OR EXISTENCE OF ANY ADVERTISING, OR AS A RESULT OF ANY RELATIONSHIP OR TRANSACTION BETWEEN YOU AND ANY THIRD PARTY SERVICE PROVIDER, ADVERTISER OR SPONSOR WHOSE ADVERTISING APPEARS ON THE WEBSITE OR IS REFERRED BY THE SERVICE OR APPLICATION, EVEN IF THE COMPANY AND/OR ITS LICENSORS HAVE BEEN PREVIOUSLY ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

THE COMPANY MAY INTRODUCE YOU TO THIRD PARTY TRANSPORTATION PROVIDERS FOR THE PURPOSES OF PROVIDING TRANSPORTATION. WE WILL NOT ASSESS THE SUITABILITY, LEGALITY OR ABILITY OF ANY THIRD PARTY TRANSPORTATION PROVIDERS AND YOU EXPRESSLY WAIVE AND RELEASE THE COMPANY FROM ANY AND ALL ANY LIABILITY, CLAIMS OR DAMAGES ARISING FROM OR IN ANY WAY RELATED TO THE THIRD PARTY TRANSPORTATION PROVIDER. YOU ACKNOWLEDGE THAT THIRD PARTY TRANSPORTATION PROVIDERS PROVIDING TRANSPORTATION SERVICES REQUESTED THROUGH UBERX MAY OFFER RIDESHARING OR PEER-TO-PEER TRANSPORTATION SERVICES AND MAY NOT BE PROFESSIONALLY LICENSED OR PERMITTED. THE

COMPANY WILL NOT BE A PARTY TO DISPUTES, NEGOTIATIONS OF DISPUTES BETWEEN YOU AND ANY THIRD PARTY PROVIDERS. WE CANNOT AND WILL NOT PLAY ANY ROLE IN MANAGING PAYMENTS BETWEEN YOU AND THE THIRD PARTY PROVIDERS. RESPONSIBILITY FOR THE DECISIONS YOU MAKE REGARDING SERVICES OFFERED VIA THE APPLICATION OR SERVICE (WITH ALL ITS IMPLICATIONS) RESTS SOLELY WITH YOU. WE WILL NOT ASSESS THE SUITABILITY, LEGALITY OR ABILITY OF ANY SUCH THIRD PARTIES AND YOU EXPRESSLY WAIVE AND RELEASE THE COMPANY FROM ANY AND ALL LIABILITY, CLAIMS, CAUSES OF ACTION, OR DAMAGES ARISING FROM YOUR USE OF THE APPLICATION OR SERVICE, OR IN ANY WAY RELATED TO THE THIRD PARTIES INTRODUCED TO YOU BY THE APPLICATION OR SERVICE. YOU EXPRESSLY WAIVE AND RELEASE ANY AND ALL RIGHTS AND BENEFITS UNDER SECTION 1542 OF THE CIVIL CODE OF THE STATE OF CALIFORNIA (OR ANY ANALOGOUS LAW OF ANY OTHER STATE), WHICH READS AS FOLLOWS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM, MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

THE QUALITY OF THE TRANSPORTATION SERVICES SCHEDULED THROUGH THE USE OF THE SERVICE OR APPLICATION IS ENTIRELY THE RESPONSIBILITY OF THE THIRD PARTY PROVIDER WHO ULTIMATELY PROVIDES SUCH TRANSPORTATION SERVICES TO YOU. YOU UNDERSTAND, THEREFORE, THAT BY USING THE APPLICATION AND THE SERVICE, YOU MAY BE EXPOSED TO TRANSPORTATION THAT IS POTENTIALLY DANGEROUS, OFFENSIVE, HARMFUL TO MINORS, UNSAFE OR OTHERWISE OBJECTIONABLE, AND THAT YOU USE THE APPLICATION AND THE SERVICE AT YOUR OWN RISK.

**Notice**

The Company may give notice by means of a general notice on the Service, electronic mail to your email address on record in the Company's account information, or by written communication sent by first class mail or pre-paid post to your address on record in the Company's account information. Such notice shall be deemed to have been given upon the expiration of 48 hours after mailing or posting (if sent by first class mail or pre-paid post) or 12 hours after sending (if sent by email). You may give notice to the Company (such notice shall be deemed given when received by the Company) at any time by any of the following: letter sent by confirmed facsimile to the Company at the following fax numbers (whichever is appropriate): (877) 223-8023; letter delivered by nationally recognized overnight delivery service or first class postage prepaid mail to the Company at the following addresses (whichever is appropriate): Uber Technologies, Inc., 182 Howard Street, #8, San Francisco, CA 94105 addressed to the attention of: Chief Executive Officer.

**Assignment**

This Agreement may not be assigned by you without the prior written approval of the Company but may be assigned without your consent by the Company to (i) a parent or subsidiary, (ii) an acquirer of assets, or (iii) a successor by merger. Any purported assignment in violation of this section shall be void.

**Export Control**

You agree to comply fully with all U.S. and foreign export laws and regulations to ensure that neither the Application nor any technical data related thereto nor any direct product thereof is exported or re-exported directly or indirectly in violation of, or used for any purposes prohibited by, such laws and regulations. By using the App Store Sourced Application, you represent and warrant that: (i) you are not located in a country that is subject to a U.S. Government embargo, or that has been designated by the U.S. Government as a "terrorist supporting" country; and (ii) you are not listed on any U.S. Government list of prohibited or restricted parties.

**Dispute Resolution**

You and Company agree that any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof or the use of the Service or Application (collectively, **"Disputes"**) will be settled by binding arbitration, except that each party retains the right to bring an individual action in small claims court and the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights. **You acknowledge and agree that you and Company are each waiving the right to a trial by jury or to participate as a plaintiff or class User in any purported class action or representative proceeding.** Further, unless both you and Company otherwise agree in writing, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of any class or representative proceeding. If this specific paragraph is held unenforceable, then the entirety of this "Dispute Resolution" section will be deemed void. Except as provided in the preceding sentence, this "Dispute Resolution" section will survive any termination of this Agreement.

Arbitration Rules and Governing Law. The arbitration will be administered by the American Arbitration Association ("AAA") in accordance with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the "AAA Rules") then in effect, except as modified by this "Dispute Resolution" section. (The AAA Rules are available at www.adr.org/arb_med or by calling the AAA at 1-800-778-7879.) The Federal Arbitration Act will govern the interpretation and enforcement of this Section.

Arbitration Process. A party who desires to initiate arbitration must provide the other party with a written Demand for Arbitration as specified in the AAA Rules. (The AAA provides a form Demand for Arbitration at www.adr.org/aaa/ShowPDF?doc=ADRSTG_004175 and a separate form for California residents at www.adr.org/aaa/ShowPDF?doc=ADRSTG_015822.) The arbitrator will be either a retired judge or an attorney licensed to practice law in the state of California and will be selected by the parties from the AAA's roster of consumer dispute arbitrators. If the parties are unable to agree upon an arbitrator within seven (7) days of delivery of the Demand for Arbitration, then the AAA will appoint the arbitrator in accordance with the AAA Rules.

Arbitration Location and Procedure. Unless you and Company otherwise agree, the arbitration will be conducted in the county where you reside. If your claim does not exceed $10,000, then the arbitration will be conducted solely on the basis of documents you and Company submit to the arbitrator, unless you request a hearing or the arbitrator determines that a hearing is necessary. If your claim exceeds $10,000, your right to a hearing will be determined by the AAA Rules. Subject to the AAA Rules, the arbitrator will have the discretion to direct a reasonable exchange of information by the parties, consistent with the expedited nature of the arbitration.

Arbitrator's Decision. The arbitrator will render an award within the time frame specified in the AAA Rules. The arbitrator's decision will include the essential findings and conclusions upon which the arbitrator based the award. Judgment on the arbitration award may be entered in any court having jurisdiction thereof. The arbitrator's award damages must be consistent with the terms of the "Limitation of Liability" section above as to the types and the amounts of damages for which a party may be held liable. The arbitrator may award declaratory or injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim. If you prevail in arbitration you will be entitled to an award of attorneys' fees and expenses, to the extent provided under applicable law. Company will not seek, and hereby waives all rights it may have under applicable law to recover, attorneys' fees and expenses if it prevails in arbitration.

Fees. Your responsibility to pay any AAA filing, administrative and arbitrator fees will be solely as set forth in the AAA Rules. However, if your claim for damages does not exceed $75,000, Company will pay all such fees unless the arbitrator finds that either the substance of your claim or the relief sought in your Demand for Arbitration was frivolous or was brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)).

Changes. Notwithstanding the provisions of the modification-related provisions above, if Company changes this "Dispute Resolution" section after the date you first accepted this Agreement (or accepted any subsequent changes to this Agreement), you may reject any such change by sending us written notice (including by email to support@uber.com) within 30 days of the date such change became effective, as indicated in the "Last Updated Date"

above or in the date of Company's email to you notifying you of such change. By rejecting any change, you are agreeing that you will arbitrate any Dispute between you and Company in accordance with the provisions of this "Dispute Resolution" section as of the date you first accepted this Agreement (or accepted any subsequent changes to this Agreement).

## General

No joint venture, partnership, employment, or agency relationship exists between you, the Company or any third party provider as a result of this Agreement or use of the Service or Application. If any provision of the Agreement is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions shall be enforced to the fullest extent under law. The failure of the Company to enforce any right or provision in this Agreement shall not constitute a waiver of such right or provision unless acknowledged and agreed to by the Company in writing. This Agreement comprises the entire agreement between you and the Company and supersedes all prior or contemporaneous negotiations, discussions or agreements, whether written or oral, between the parties regarding the subject matter contained herein.

<% include ../footer.html %>