# EXHIBIT D

**CONFIDENTIAL**

THE ARBITRATION TRIBUNALS OF THE
AMERICAN ARBITRATION ASSOCIATION

In the Matter of the Arbitration between

Spencer Meyer,
    Claimant,

v.

Uber Technologies, Inc.; and Travis Kalanick,
    Respondents.

Les Weinstein
AAA No. 01-18-0002-1956

**UBER'S MOTION TO DISMISS CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF**

TABLE OF CONTENTS

Preliminary Statement     1

Background     2

    A.    Uber Successfully Compelled This Arbitration After Meyer Initially Filed This Case In Federal District Court.     2

    B.    The Agreement Precludes Recovery On Behalf Of Others.     4

    C.    Meyer Files This Demand And Seeks Broad Declaratory And Injunctive Relief.     5

Argument     5

    A.    The Agreement Limits The Equitable Relief That The Arbitrator May Award To Only That Necessary To Provide Relief To Meyer.     7

    B.    Meyer's Request For Equitable Relief Seeks Non-Individualized Remedies And Goes Beyond What Is Necessary To Address Meyer's Individual Claim.     8

    C.    The Arbitrator Should Enter Uber's Stipulated Award.     9

Conclusion     12

TABLE OF AUTHORITIES

**CASES**

*Am. Express Co. v. Italian Colors Restaurant*,
  570 U.S. 228 (2013) .......... 6

*AT&T Mobility LLC v. Bernardi*,
  No. 11-03992, 2011 WL 5079549 (N.D. Cal. Oct. 26, 2011) .......... 7

*AT&T Mobility LLC v. Gonnello*,
  No. 11-cv-5636, 2011 WL 4716617 (S.D.N.Y. Oct. 7, 2011) .......... 7, 8

*AT&T Mobility LLC v. Princi*,
  No. 11-cv-11448-RWZ, 2011 WL 6012945 (D. Mass. Dec. 2, 2011) .......... 8

*Campbell-Ewald Co. v. Gomez*,
  136 S. Ct. 663 (2016) .......... 11

*C.T. Shipping, Ltd. v. DMI (U.S.A.) Ltd.*,
  774 F. Supp. 146 (S.D.N.Y. 1991) .......... 10

*Hepler v. Abercrombie & Fitch Co.*,
  607 F. App'x 91 (2d Cir. 2015) .......... 9, 11

*John Hancock Life Ins. Co. v. Wilson*,
  254 F.3d 48 (2d Cir. 2001) .......... 5

*Leed Architectural Prod's, Inc. v. United Steelworkers of Am., Local 6674*,
  916 F.2d 63 (2d Cir. 1990) .......... 5

*Leyse v. Lifetime Entm't Servs., LLC*,
  679 F. App'x 44 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 637 (2018) .......... 11

*Meyer v. Kalanick*,
  291 F. Supp. 3d 526 (S.D.N.Y. 2018) .......... 4

*Meyer v. Kalanick*,
  No. 15-cv-9796, 2016 WL 3509496 (S.D.N.Y. June 20, 2016) .......... 3, 10

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017) .......... 1, 3, 4

*Schatz v. Cellco P'ship*,
  842 F. Supp. 2d 594 (S.D.N.Y. 2012) .......... 7

*Seabury Constr. Corp. v. Jeffrey Chain Corp.*,
  289 F.3d 63 (2d Cir. 2002) .......... 5

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010)     5, 6

*Trustees of the Welfare Fund v. A. Terzi Prod's, Inc.*,
   1999 WL 1252806 (S.D.N.Y. Dec. 22, 1999)     10

**STATUTES, RULES & REGULATIONS**

15 U.S.C. § 15     9

15 U.S.C. § 26     7

Respondent Uber Technologies, Inc. ("Uber") hereby moves, pursuant to the American Arbitration Association's Consumer Arbitration Rule 24, to dismiss Claimant Spencer Meyer's claims for injunctive and declaratory relief because they seek remedies not necessary to provide relief warranted by his individual claim and, as such, are not permissible under the arbitration agreement that governs this proceeding. Uber also respectfully requests that the Arbitrator enter the stipulated award attached as Exhibit 1 to this motion, which will dispose of this matter.

## PRELIMINARY STATEMENT

Meyer's strategy from the beginning of this dispute—which began on December 12, 2015—has been to exert leverage to force a settlement that exceeds the value of his meritless claims. He filed a federal complaint against Uber's then-CEO to avoid his agreement with Uber to arbitrate disputes without the possibility of class relief. But the courts properly rejected that play. In this arbitration, he is at it again—demanding relief he contracted away to amplify the purported value of his claims.

Meyer asks the Arbitrator to declare the Uber pricing algorithm illegal in respect to surge pricing and to enjoin Uber from using the pricing algorithm to set surge. This relief would fundamentally alter Uber's business model. And Uber brings this motion because it is also barred under Meyer's User Agreement with Uber, dated May 17, 2013 (the "Agreement," attached as Exhibit 2 to this motion).

The Agreement's dispute resolution provision provides the procedure to resolve all disputes between Meyer and Uber, including Meyer's antitrust claims. Ex. 2 at 8-10; *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 71-72 (2d Cir. 2017). The Agreement provides in part: "The arbitrator may award declaratory and injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim." Ex. 2 at 9.

Meyer's requested relief, even if applied only to surge pricing, is broader than necessary to redress any individual harm he may suffer because it would necessarily apply to all consumers—not just Meyer. There is no practical bar to providing individualized relief to Meyer. Uber can tailor relief that applies solely to Mr. Meyer's future use of the app. That is, to the extent the Arbitrator were to agree with Meyer that Uber's use of its pricing algorithm to set surge pricing is a *per se* violation of the antitrust laws—a proposition with which Uber vehemently disagrees—the only remedy permissible under the contract between the parties is to prevent surge pricing from being applied to *Meyer* going forward. Meyer's demand for declaratory and injunctive relief affecting the Uber app for all users goes well beyond what is "necessary to provide relief warranted by the Claimant's individual claims."

Given that the costs of this proceeding are disproportionate to the relief sought, Uber also submits with this motion a stipulated arbitration award pursuant to which Uber would pay Meyer $82.86—three times the portion of his total previous Uber fares that is attributable to surge pricing—for the past harm alleged and agree to not apply surge pricing on any future rides Meyer arranges through the Uber app, which would remedy any future harm. The stipulated award affords Meyer relief for all alleged past and future injury he claims, and if entered by the Arbitrator, will moot Meyer's claims for relief under the Agreement.

## BACKGROUND

### A. Uber Successfully Compelled This Arbitration After Meyer Initially Filed This Case In Federal District Court.

When he registered for Uber, Meyer agreed not to participate in "any purported class action" and to individually arbitrate "any dispute" related to his use of Uber. Ex. 2 at 9. Instead of initiating arbitration with Uber, Meyer filed a federal class action against Uber's then-CEO Travis Kalanick. Although his complaint articulated claims and sought relief that threatened

Uber's "entire business operation," Ex. 4 (June 16, 2016 Hrg. before the Hon. Jed S. Rakoff) at 16:18-22 (Rakoff, J.), Meyer did not name Uber as a defendant. As the district court recognized, Meyer appeared to be circumventing the dispute resolution provisions of the Agreement, which did not expressly cover disputes with Kalanick.[1] *Meyer v. Kalanick*, No. 15-cv-9796, 2016 WL 3509496, at *1 (S.D.N.Y. June 20, 2016) ("Although many of the allegations of the complaint related to practices identified with Uber, plaintiff Meyer named only Mr. Kalanick in the suit, and not Uber itself, possibly in order to avoid an arbitration clause in the User Agreement between plaintiff and Uber."); Ex. 5 (July 14, 2016 Hrg. before the Hon. Jed S. Rakoff) at 31:1-3 (Judge Rakoff observing that it was "not implausible on two minutes inspection that that was being done to arguably avoid the arbitration requirement . . . .").

Meyer's ploy failed. Following motions by Kalanick to join Uber and by Uber to intervene, the district court joined Uber as a necessary party under Rule 19(a). *Meyer*, 2016 WL 3509496, at *3. Because Meyer was targeting Kalanick for purported misconduct that arose from the Uber app and Uber's contracts with drivers, the Court rejected Meyer's assertion that he was not seeking any relief against Uber as "at odds with any fair reading of plaintiff's claim." *Id*. at *2; *see also* Ex. 4 at 16:18-22 (Judge Rakoff explaining that Meyer's request for a declaration that the use of a pricing algorithm is unlawful "sort of goes to [Uber's] entire business operation"). The Court concluded that "it could not, in Uber's absence, accord complete relief." *Meyer*, 2016 WL 3509496 at *2 (internal citations omitted).

Uber attached a motion to compel arbitration to its motion to intervene. Ex. 6 (Motion to Intervene in District Court Proceedings, dated May 24, 2016) at 1. Uber asserted that the

---

[1] The Second Circuit confirmed that Kalanick is entitled to enforce the dispute resolution provisions of the Agreement, though he is not a signatory to the Agreement. *Meyer*, 868 F.3d at 80 n.11.

3

Agreement's dispute resolution provisions mandated that any disputes between Meyer and Uber "will be settled by binding arbitration." *Id*. at 2. Thus, "as soon as Uber was timely joined to the action, Uber moved to compel arbitration." *Meyer v. Kalanick*, 291 F. Supp. 3d 526, 535 (S.D.N.Y. 2018). Uber's position has been consistent throughout this case: the plain language of the Agreement should be enforced.

The district court denied Uber's motion to compel arbitration, but the Second Circuit reversed and held that Meyer had adequate notice of the dispute resolution provision, which was thus enforceable. *Meyer*, 868 F.3d at 77-80. On remand, the district court granted Uber's motion to compel arbitration. *Meyer*, 291 F. Supp. 3d at 536-37 (enforcing agreement); *see also* Ex. 3 (Demand for Arbitration, dated May 31, 2018) at 4 (attaching the "arbitration agreement, enforced by the District Court" as Exhibit 9).

### B. The Agreement Precludes Recovery On Behalf Of Others.

The Agreement specifies that the scope of the arbitration is limited to disputes between Meyer and Uber and expressly excludes class actions. Both parties waive the right "to participate as a plaintiff or class User in any purported class action or representative proceeding." Ex. 2, at 9. They further agree that "the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of any class or representative proceeding." *Id*.

Additionally, consistent with the foregoing provisions regarding class actions, the Agreement limits any relief to individual relief, providing: "The arbitrator may award declaratory or injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim." *Id*.

### C. Meyer Files This Demand And Seeks Broad Declaratory And Injunctive Relief.

On May 31, 2018, Meyer filed his demand in arbitration (the "Demand"), seeking, in addition to damages and attorneys' fees:

- "A declaration that the use of the Uber pricing algorithm for setting fares, including surge fares, is unlawful and violates the Sherman Act and the Donnelly Act"; and

- "An injunction prohibiting Uber and Kalanick from continuing to use the Uber pricing algorithm for setting fares, including surge fares."

Ex. 3, Demand at 4. The equitable relief Meyer requests in the Demand mirrors the broad injunctive and declaratory relief he sought on behalf of the putative class of riders in the district court.

Since filing the Demand, Meyer has modified it on two occasions—in the preliminary hearing on October 19, 2018 and the scheduling conference on December 6, 2018—to state that his antitrust claims rely *only* on a *per se* theory and are limited *only* to an alleged conspiracy to fix surge pricing. Meyer is not challenging how the Uber algorithm calculates the standard fares charged by Uber driver-partners. He challenges only the surge pricing aspect of the subset of rides on which surge pricing is applied. Meyer has not formally amended his Demand, but Uber in this motion addresses the Demand as modified and confirmed by counsel for Meyer on the record before the Arbitrator.

## ARGUMENT

An "arbitrator derives his or her powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010). Accordingly, "an arbitrator's authority to settle disputes…is contractual in nature, and is limited to the powers that the agreement confers." *Leed Architectural Prods., Inc. v. United Steelworkers of Am., Local 6674*, 916 F.2d 63, 65 (2d Cir. 1990). *See also*

*id.* ("This rule applies not only to the arbitrator's substantive findings, but also to his choice of remedies"). "Like any other contract, courts must interpret an arbitration provision to give effect to the parties' intent as expressed by the plain language of the provision." *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 58 (2d Cir. 2001). "Where the contract is unambiguous, courts must effectuate its plain language." *Seabury Constr. Corp. v. Jeffrey Chain Corp.*, 289 F.3d 63, 68 (2d Cir. 2002) (collecting citations).

Here, the scope of equitable relief the Arbitrator may award Meyer is limited by the Agreement between Meyer and Uber. The Agreement allows for declaratory and injunctive relief "only in favor of the claimant" and "only to the extent necessary to provide relief warranted by the claimant's individual claim." These limitations are consistent with the purposes of that provision, and of arbitration more generally, while still allowing Meyer to receive relief adequate to remedy any harm he has suffered and may suffer in the future.

"In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Stolt-Nielsen S.A*, 559 U.S. at 685. Allowing Meyer to seek representative relief on behalf of all Uber riders would undermine the parties' agreement that Meyer would not participate in any purported class action against Uber and that "the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of any class or representative proceeding." Ex. 2 at 9. It also would make the commercial stakes comparable to those of class-action litigation without two key benefits: a judgment clearly binding on absent parties and judicial review of the fact finder's conclusions. *See Stolt-Nielsen S.A.*, 559 U.S. at 686-87 (holding that consent to class

proceedings in arbitration cannot be inferred because, *inter alia*, "the differences between bilateral and class-action arbitration are too great for arbitrators to presume" from silence).

The Supreme Court has held that class-action waivers are enforceable in the antitrust context in part because the class action mechanism is not necessary to obtain statutory relief. *Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233-37 (2013). The same reasoning applies to dispute resolution provisions that limit injunctive relief to the extent necessary to remedy a party's individual claims. The Sherman Act does not expressly allow for representative or general injunctive relief; rather, it provides that "any person . . . shall be entitled to sue for and have injunctive relief . . . ." 15 U.S.C. § 26. Limiting the remedies available in arbitration to relief affecting only the rights of the two parties involved does not prevent Claimant from vindicating his statutory antitrust remedy. *See Schatz v. Cellco P'ship*, 842 F. Supp. 2d 594, 613-14 (S.D.N.Y. 2012) (where such relief is not clearly required by statute, "the Court would be hard-pressed to say that the plaintiff's inability to obtain 'general injunctive relief' on behalf of others would render the arbitral forum inadequate").

### A. The Agreement Limits The Equitable Relief That The Arbitrator May Award To Only That Necessary To Provide Relief To Meyer.

The Agreement limits the Arbitrator's power to grant declaratory and injunctive relief in two ways. First, the "arbitrator may award declaratory and injunctive relief only in favor of the claimant." Ex. 2 at 9. Second, any such relief may be awarded "only to the extent necessary to provide relief warranted by the claimant's individual claim." *Id*.

Courts interpreting similar language in other arbitration agreements have explained that such provisions provide "an important limitation on the power of the arbitrator," and their "natural reading" withholds "from the arbitrator the power to decide questions that would necessarily affect the rights of more than the parties to the dispute through the grant of declaratory or injunctive

7

relief." *E.g.*, *AT&T Mobility LLC v. Gonnello*, No. 11-cv-5636, 2011 WL 4716617, at \*3-4 (S.D.N.Y. Oct. 7, 2011); *accord AT&T Mobility LLC v. Bernardi*, No. 11-03992, 2011 WL 5079549, at \*9 (N.D. Cal. Oct. 26, 2011) ("necessary to provide" provisions permit only "relief that would affect only the particular claimant initiating the arbitration").

Accordingly, any relief beyond that necessary to provide Meyer redress for his individual claims is beyond the authority of the Arbitrator.

### B. Meyer's Request For Equitable Relief Seeks Non-Individualized Remedies And Goes Beyond What Is Necessary To Address Meyer's Individual Claim.

The equitable relief Meyer seeks exceeds the Arbitrator's authority because it aims to provide relief to all Uber riders rather than to Meyer alone. That is prohibited by the parties' Agreement. Meyer demands an order declaring surge pricing unlawful and an injunction prohibiting Uber from using surge pricing for all Uber riders. An award granting this relief would violate the Agreement's requirements that the relief awarded be "only in favor of the claimant" and "only to the extent necessary to provide relief warranted by the claimant's individual claim."

A broad injunction that Uber cannot use surge pricing *at all* is not necessary to address any purported harm that Meyer may suffer in the future, so long as an adequate injunction can be tailored to remedy Meyer's alleged individualized harm. Here, an injunction barring application of surge pricing as to Meyer would remedy any potential for future harm to Meyer. Meyer's requested relief is thus outside the Arbitrator's authority.

Several district courts have reached the same conclusion in considering arbitration demands that sought to enjoin mergers under the Clayton Act, holding that such injunctive relief was unavailable under provisions similar to the one at issue here and thus beyond the arbitrator's authority. *See, e.g.*, *AT&T Mobility LLC v. Princi*, No. 11-cv-11448-RWZ, 2011 WL 6012945, at \*1 & n.1 (D. Mass. Dec. 2, 2011) (collecting cases and concluding: "Since the challenge to the

8

merger necessarily implicates other customers, it is, a fortiori, a class or representative claim and outside the agreement," which limited relief to individual claims); *Gonnello*, No. 11-cv-5636, 2011 WL 4716617, at *3 (relief that would "necessarily affect the rights of all individuals and entities who have an interest, either in favor of or against" a merger was beyond the authority of the Arbitrator under a provision limiting relief to "declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim").

For all of these reasons, Meyer's overly broad claims for injunctive and declaratory relief should be dismissed.

### C. The Arbitrator Should Enter Uber's Stipulated Award.

In addition to the foregoing, and in light of the disproportionate cost of defending this action relative to the relief sought, Uber also submits with this motion a stipulated arbitration award under which it would pay Meyer $82.86 for any past harm alleged and agree to not apply surge pricing on any future rides Meyer arranges through the Uber app.[2] The damages and equitable relief offered provide Meyer redress for all past and future injury he claims. Therefore, in addition to bringing this dispute to a quick resolution that will save all parties additional resources, the stipulated arbitration award effectively moots Meyer's dispute.

The award also provides for costs and attorneys' fees accrued for this arbitration, to which Meyer is arguably entitled under 15 U.S.C. § 15 and the Agreement. To be clear, this excludes any

---

[2] The monetary damages are calculated by review of Meyer's trip data. Meyer completed 10 trips using the Uber app, with the first being on April 4, 2015 and the last being on December 6, 2015. Surge pricing was a component of the price paid for two of these trips: an April 4, 2015 trip in Washington, D.C. for which Meyer paid $14.98 in total, $6.62 of which was attributable to a 1.9X surge; and a September 26, 2015 trip in New York, New York for which Meyer paid $40.09 in total, $21.00 of which was attributable to a 2.1X surge. *See* Ex. 7. Meyer has thus paid a total of $27.62 as a result of surge pricing, which is trebled to $82.86.

9

claim for costs and attorneys' fees accrued by or on behalf of Claimant as part of any pre-arbitration litigation in the federal courts. With respect to costs and attorneys' fees, "arbitrators lack the authority to award counsel fees in the absence of an express power granted to the panel," *C.T. Shipping, Ltd. v. DMI (U.S.A.) Ltd.*, 774 F. Supp. 146, 151 (S.D.N.Y. 1991), and "may not award fees incurred in litigation to compel arbitration." *Id*. (citing *Federal Commerce & Navigation Co. v. Associated Metals & Minerals Corp.*, 1979 A.M.C. 1733 (S.D.N.Y.1978)). Consistent with these principles, the Agreement here limits the costs and fees the Arbitrator may award Meyer to only those costs and fees incurred during *arbitration*: "If you prevail in arbitration you will be entitled to an award of attorneys' fees and expenses, to the extent provided under applicable law." Ex. 2 at 9 (emphasis added). The Arbitrator thus lacks authority to award fees and costs (1) incurred outside of arbitration or (2) if Meyer does not prevail.[3]

These limitations are also consistent with the Agreement's other limits on the "Arbitrator's Decision," which limits damages to those allowable under "the terms of the 'Limitation of Liability'" and equitable relief "only to the extent necessary to provide relief warranted by the claimant's individual claim." Ex. 2 at 9.[4] And they both apply to any fees and cost incurred in the federal court litigation that preceded this arbitration, in which Meyer attempted to circumvent his agreement to arbitrate through clever pleadings against the company's then-CEO rather than the company itself. *Kalanick*, 2016 WL 3509496, at *1-3; Ex. 4 (Rakoff, J.) at 16:18-22; Ex. 5

---

[3] To the extent the Agreement can be construed as allowing the Arbitrator to award Meyer fees and costs associated with the litigation in the federal courts, very little of the fees and costs he incurred in that litigation went to prosecuting the merits of his antitrust claim such that he may ultimately "prevail" on them; almost all the litigation was attributable to Meyer's efforts to escape his agreement to arbitrate. *See supra* pp. 2-4 (detailing Meyer's years-long efforts to efforts to avoid arbitrating his claims)

[4] The Limitation of Liability provision of the Agreement forecloses certain types of damages. Ex. 2 at 7-8. For example, an arbitrator may not award punitive damages, exemplary damages, lost profits, or economic loss damages. *Id*.

(Rakoff, J.) at 31:1-3; *Trustees of the Welfare Fund v. A. Terzi Prod's, Inc.*, 1999 WL 1252806, at *1 (S.D.N.Y. Dec. 22, 1999) (eliminating from an award of fees "time spent preparing an unnecessary motion for summary judgment and the time spent for unnecessary research to amend the complaint").

The award provides Meyer complete relief. As a result, the Arbitrator should enter the stipulated award, which will moot the case. *Hepler v. Abercrombie & Fitch Co.*, 607 F. App'x 91, 92 (2d Cir. 2015) ("If the offer tenders *complete* relief, the court should (absent additional procedural complications) enter judgment pursuant to the terms of that offer, with or without the plaintiff's consent."). Although the Supreme Court recently held that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case," the Court expressly stated that its holding did not extend to cases in which a defendant "deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672, 193 L. Ed. 2d 571 (2016). Nor did it disturb, or question, a trial court's authority to enter judgment when a defendant presents an offer that affords full relief to the plaintiff. *Leyse v. Lifetime Entm't Servs., LLC*, 679 F. App'x 44, 48 (2d Cir. 2017) (affirming entry of judgment where defendant had deposited the full amount of the plaintiff's claim in an account payable to plaintiff), *cert. denied*, 138 S. Ct. 637 (2018). Well-established precedent holds that trial courts should enter judgment, "with or without the plaintiff's consent," to offers providing complete relief. *Hepler*, 607 F. App'x at 92 (collecting cases).

The point of arbitration is to quickly and justly resolve disputes while conserving resources. With the stipulated award, Uber has done that. Accordingly, this case can and should be resolved now, with the relief offered by Uber in the stipulated award, and without further costs to the parties.

CONFIDENTIAL

## Conclusion

For these reasons, Uber respectfully requests that Meyer's claims for declaratory and injunctive relief be dismissed and that the Court enter the stipulated arbitration award.

Date: December 21, 2018

/s/ William A. Isaacson
William A. Isaacson
Karen L. Dunn
Abby L. Dennis
James A. Kraehenbuehl
BOIES SCHILLER FLEXNER LLP
1401 New York Ave. NW
Washington, D.C. 20005
T: (202) 237-2727

Peter M. Skinner
BOIES SCHILLER FLEXNER LLP
575 Lexington Ave., 7th Floor
New York, N.Y. 10022
T: (212) 446-2300

*Attorneys for Uber Technologies, Inc.*