# EXHIBIT F

In the Matter of the Arbitration between

SPENCER MEYER,
     Claimant,

v.

UBER TECHNOLOGIES, INC.; and TRAVIS KALANICK,
     Respondents.

Les Weinstein
AAA No. 01-18-0002-1956

# MEMORANDUM OF LAW IN OPPOSITION TO UBER TECHNOLOGIES, INC.'S MOTION TO DISMISS

**HARTER SECREST & EMERY LLP**
Brian Marc Feldman
1600 Bausch & Lomb Place
Rochester, New York 14604

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes
Ellen Meriwether
205 N. Monroe Street
Media, Pennsylvania 19063

**ANDREW SCHMIDT LAW PLLC**
Andrew Arthur Schmidt
97 India Street
Portland, Maine 04101

*Counsel for Claimant Spencer Meyer*

January 18, 2019
New York, New York

# TABLE OF CONTENTS

Preliminary Statement...................................................................................................1

Argument .......................................................................................................................3

POINT I—MEYER IS ENTITLED TO INJUNCTIVE AND DECLARATORY RELIEF
ENDING UBER'S PRICE-FIXING.................................................................................3

    A.     Meyer would be entitled to such injunctive and declaratory relief as an
            individual litigant in district court.............................................................3

    B.     The arbitration agreement does not restrict injunctive or declaratory relief
            because both are necessary to protect Meyer.............................................5

    C.     Uber's cases do not compel a different reading.........................................6

POINT II—UBER IS EQUITABLY ESTOPPED FROM ARGUING THAT MEYER IS
RESTRICTED FROM OBTAINING SUCH RELIEF.....................................................8

POINT III—IF THE ARBITRATION AGREEMENT WERE CONSTRUED TO PROHIBIT
MEYER FROM OBTAINING INJUNCTIVE AND DECLARATORY RELIEF ENDING
UBER'S PRICE-FIXING, IT WOULD BE UNENFORCEABLE..................................12

    A.     Arbitration agreements may not waive statutory remedies, particularly
            relief deterring antitrust violations.........................................................13

    B.     The arbitration agreement cannot bar the injunction and declaration
            Meyer seeks. ............................................................................................17

POINT IV–UBER'S ATTORNEYS' FEES ARGUMENTS ARE PREMATURE.....................18

Conclusion ...................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Express v. Italian Colors Restaurant,*
    570 U.S. 228 (2013)........................................................................................13, 15

*Anderson v. Shipowners Ass'n of the Pac. Coast,*
    272 U.S. 359 (1926)...........................................................................................4, 6

*AT&T Mobility LLC v. Bernardi,*
    No. C 11-03992 CRB, 2011 U.S. Dist. LEXIS 124084 (N.D. Cal. Oct. 26,
    2011) ............................................................................................................................7

*AT&T Mobility LLC v. Gonnello,*
    11 Civ. 5636, 2011 U.S. Dist. LEXIS 116420 (S.D.N.Y. Oct. 7, 2011) ..................7

*AT&T Mobility LLC v. Princi,*
    11-cv-11448, 2011 U.S. Dist. LEXIS 138851 (D. Mass. Dec. 2, 2011)..................7

*AT&T Mobility LLC v. Smith,*
    11-cv-5157, 2011 U.S. Dist. LEXIS 125367 (E.D. Pa. Oct. 7, 2011) ......................7

*Begonja v. Vornado Realty Trust,*
    159 F. Supp. 3d 402 (S.D.N.Y. 2016)....................................................................14

*Booker v. Robert Half Int'l, Inc.,*
    413 F.3d 77 (D.C. Cir. 2005) ..................................................................................14

*Broadcast Music, Inc. v. Columbia Broadcasting Sys., Inc.,*
    441 U.S. 1 (1979)...............................................................................................3, 5

*C.T. Shipping, Ltd. v. DMI (U.S.A.) Ltd.,*
    774 F. Supp. 146 (S.D.N.Y.1991) ..........................................................................19

*Cargill, Inc. v. Monfort of Colo., Inc.,*
    479 U.S. 104 (1986)..................................................................................................5

*Circuit City Stores, Inc. v. Adams,*
    279 F.3d 889 (9th Cir. 2002) ..................................................................................13

*Cole v. Burns Int'l Sec'y Servs.,*
    105 F.3d 1465 (D.C. Cir. 1997)..............................................................................13

*Columbia Broadcasting v. Am. Society of Composers,*
    562 F.2d 130 (2d Cir. 1977).................................................................................3, 5

*Duplex Printing Press Co. v. Deering,*
  254 U.S. 443 (1921)..............................................................................4, 6, 15, 17

*ES Dev., Inc. v. RWM Enterp., Inc.,*
  939 F.2d 547 (8th Cir. 1991) ...............................................................................3, 5

*Gaines v. Carrollton Tobacco Bd. of Trade, Inc.,*
  386 F.2d 757 (6th Cir. 1967) ...............................................................................15

*Gilmer v. Interstate/Johnson Lane Corp.,*
  500 U.S. 20 (1991)...............................................................................................16

*Green Tree Fin. Corp.-Alabama v. Randolph,*
  531 U.S. 79 (2000)...............................................................................................13

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.,*
  995 F.2d 414 (3d Cir.1993)..................................................................................19

*Hawaii v. Standard Oil Co.,*
  405 U.S. 251 (1972).................................................................................................5

*Keenan v. City of Philadelphia,*
  983 F.2d 459 (3d Cir.1992)..................................................................................19

*Kristian v. Comcast,*
  446 F.3d 25 (1st Cir. 2006).............................................................................15, 16

*Lewis v. Epic Sys. Corp.,*
  823 F.3d 1147 (7th Cir. 2016) .........................................................................13, 14

*Meyer v. Kalanick,*
  174 F. Supp. 3d 817 (S.D.N.Y. 2016)....................................................................1

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,*
  473 U.S. 614 (1985) ................................................................................... *passim*

*Morris v. Ernst & Young, LLP,*
  834 F.3d 975 (9th Cir. 2016) ...............................................................................13

*Morrison v. Circuit City Stores,*
  317 F.3d 646 (6th Cir. 2003) ...............................................................................13

*Murray v. Silberstein,*
  882 F.2d 61 (3d Cir. 1989)...................................................................................11

*N. Cent. Const. v. Siouxland Energy & Livestock Co-op.*,
No. C02-4041-MWB, 2004 U.S. Dist. LEXIS 21760
(N.D. Iowa Oct. 26, 2004) ...............................................................................19

*Nat'l Soc'y of Prof'l Engineers v. United States*,
435 U.S. 679 (1978).....................................................................................3, 5

*New Hampshire v. Maine*,
532 U.S. 742 (2001)......................................................................................8, 9

*Ogden Martin Sys. of Indianapolis v. Whiting Corp.*,
179 F.3d 523 (7th Cir. 1999) ..............................................................................12

*Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*,
669 F.2d 490 (7th Cir. 1982) ................................................................... *passim*

*PacifiCare Health Sys., Inc. v. Book*,
538 U.S. 401 (2003)..........................................................................................13

*Paladino v. Avnet Computer Techns., Inc.*,
134 F.3d 1054 (11th Cir. 1998) ........................................................................13

*Pegram v. Herdrich*,
530 U.S. 211 (2000)............................................................................................8

*Penberthy v. Chickering*,
15 Civ. 7613 (PAE), 2017 U.S. Dist. LEXIS 6152 (S.D.N.Y. Jan. 13, 2017)..........................9

*Perez v. Globe Airport Sec'y Servs., Inc.*,
253 F.3d 1280 (11th Cir. 2001) ........................................................................14

*Ragone v. Atl. Video at Manhattan Ctr.*,
595 F.3d 115 (2d Cir. 2010)..............................................................14, 16, 17

*Reilly v. Hearst Corp.*,
107 F. Supp. 2d 1192 (N.D. Cal. 2000) ...............................................................6

*Reiter v. Sonotone Corp.*,
442 U.S. 330 (1979)..........................................................................................16

*Reyes v. Gracefully, Inc.*,
17-CV-9328, 2018 U.S. Dist. LEXIS 80059 (S.D.N.Y. May 11, 2018) ................................14

*Salus Capital Partners, LLC v. Moser*,
289 F. Supp. 3d 468 (S.D.N.Y. 2018)................................................................20

*Scarano v. Central R. Co. of N.J.*,
    203 F.3d 510 (3d Cir. 1953)..................................................................8

*Schatz v. Cellco P'ship*,
    842 F. Supp. 2d 594 (S.D.N.Y. 2012)...................................................15

*Schwegmann Bros. v. Calvert Distillers Corp.*,
    341 U.S. 384 (1951)..............................................................................4

*Trump v. Hawaii*,
    138 S. Ct. 2392 (2018)..........................................................................4

*United States v. E.I. du Pont de Nemours & Co.*,
    366 U.S. 316 (1961)............................................................................16

*Vandervelde v. Put and Call Brokers and Dealers Assn.*,
    344 F. Supp. 157 (S.D.N.Y. 1972) ......................................................19

*Wilk v. Am. Med'l Ass'n*,
    895 F.2d 352 (7th Cir. 1990) ......................................................4, 6, 16

*Zenith Radio Corp. v. Hazeltine Research Inc.*,
    395 U.S. 100 (1969)....................................................................4, 5, 16

**STATUTES**

15 U.S.C. § 15...............................................................................18, 19

15 U.S.C. § 26..........................................................................3, 14, 17

28 U.S.C. § 2201...........................................................................3, 17

**RULES**

Fed. R. Civ. P. 19...........................................................................10, 11

**OTHER AUTHORITIES**

Woolhandler & Nelson, "Does History Defeat Standing Doctrine?,"
    102 Mich. L. Rev. 689 (2004)...............................................................4

Claimant Spencer Meyer ("Meyer") respectfully submits this memorandum of law in opposition to the motion to dismiss claims for injunctive and declaratory relief submitted by Uber Technologies, Inc. ("Uber"), dated Dec. 21, 2018.

## Preliminary Statement

Meyer brings this arbitration to prevent Uber's ongoing price-fixing, which allows its driver-partners to surge prices without fearing competition from anyone else on the platform. Meyer filed his claims originally in district court, where Judge Rakoff held that they were legally viable. *See Meyer v. Kalanick*, 174 F. Supp. 3d 817 (S.D.N.Y. 2016). Meyer asked the court to enjoin the price-fixing, declare it illegal, and award damages and fees. But the court never had a chance, because Uber moved to arbitrate. In persuading the court to compel arbitration, Uber argued that arbitration would provide Meyer the same remedies as he had sought in court. But Uber now argues that the opposite is true—that, under the arbitration agreement, Meyer cannot seek either an injunction against price-fixing or a declaration that it is illegal.

Uber's motion must be denied for three reasons.

***First***, Meyer seeks relief wholly consistent with the arbitration agreement. Uber's agreement states that the arbitrator may "award declaratory or injunctive relief . . . only to the extent necessary to provide relief warranted by the claimant's individual claim." Agreement, attached to the Declaration of Brian Feldman ("Feldman Decl") as Exhibit ("Ex.") 1. This is no more restrictive than long-standing federal law: Courts have long recognized that injunctive and declaratory relief prohibiting ongoing price-fixing is relief that goes no further than necessary to protect the individual litigant. Meyer thus seeks what the Agreement allows. *See infra* Point I.

***Second***, Uber is equitably estopped from pursuing its motion. The parties are arbitrating Meyer's claims because Uber persuaded the district court that Meyer could not litigate those

claims. In persuading the district court to compel arbitration, Uber represented that this arbitration would be "capable of providing Meyer with the same remedies Meyer [sought] in . . . litigation." Uber Mem., *Meyer v. Kalanick*, Dkt. 151 at 14 (Oct. 6, 2017), Feldman Decl., Ex. 2. Uber conceded that those remedies included an injunction against Uber's ongoing price-fixing and a declaration of its illegality. Uber won that argument, and the court held that arbitration presented "an adequate remedy." Opinion and Order at 20, Dkt. 173 (Mar. 5, 2018), Feldman Decl., Ex. 3. The doctrine of judicial estoppel prevents Uber from now arguing the exact opposite—that, in fact, this arbitration will not permit Meyer to seek injunctive or declaratory remedies ending Uber's price-fixing. *See infra* Point II.

**Third**, Uber's construction would render the arbitration agreement unenforceable. The Supreme Court has long explained that parties may be compelled to arbitrate statutory claims, rather than litigate them, because "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985). But that doctrine does not tolerate a waiver of statutory remedies—and, in particular, antitrust remedies—through arbitration agreements. The Court long ago explained that, if arbitration agreements operate "as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations," courts "would have little hesitation in condemning the agreement as against public policy." *Id.* at 637 n.19. Here, a construction of the arbitration agreement that restricted Meyer's rights to injunctive and declaratory relief prohibiting price-fixing would fly in the face of public policy and would be unenforceable.

For these reasons, this tribunal should deny Uber's motion. This tribunal should hold that the arbitration agreement entitles Meyer to the injunctive and declaratory he seeks. In the

alternative, if this tribunal accepts Uber's construction, this tribunal should enter an award invalidating the arbitration agreement.

## ARGUMENT

## POINT I

## MEYER IS ENTITLED TO INJUNCTIVE AND DECLARATORY RELIEF ENDING UBER'S PRICE-FIXING.

**A.     Meyer would be entitled to such injunctive and declaratory relief as an individual litigant in district court.**

Meyer seeks antitrust remedies available under federal law.  If Meyer succeeded on his individual claims in federal court, he would be able to enjoin Uber's illegal price-fixing and obtain a declaration that surge pricing violates the antitrust laws.  The injunction would be available under Section 16 of the Clayton Act, *see* 15 U.S.C. § 26 ("Any person . . . shall . . . have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws"), and the declaratory relief would be available under the Declaratory Judgment Act, *see* 28 U.S.C. § 2201(a) ("any court . . . may declare the rights and other legal relations of any interested party seeking such declaration").

This relief would appropriately redress any ongoing price-fixing by Uber and Kalanick by enjoining the price-fixing and declaring it illegal.  As the Supreme Court has instructed, once a court finds "a violation of the Sherman Act," it is "empowered to fashion appropriate restraints on the [defendant's] future activities both to avoid a recurrence of the violation and to eliminate its consequences."  *Nat'l Soc'y of Prof'l Engineers v. United States*, 435 U.S. 679, 697 (1978); *ES Dev., Inc. v. RWM Enterp., Inc.*, 939 F.2d 547, 557 (8th Cir. 1991) (same, in private antitrust case). The Second Circuit has thus observed that, "[n]ormally, after a finding of price-fixing, the remedy is an injunction against the price-fixing."  *Columbia Broadcasting v. Am. Society of Composers*,

562 F.2d 130, 140 (2d Cir. 1977), *rev'd on other grounds*, *Broadcast Music, Inc. v. Columbia Broadcasting Sys., Inc.*, 441 U.S. 1 (1979).[1]

An injunction stopping ongoing price-fixing would obviously also benefit non-parties, but those benefits pose no barrier to the injunction Meyer seeks. *See Wilk v. Am. Med'l Ass'n*, 895 F.2d 352, 371 (7th Cir. 1990) ("Doubtless, [non-parties] may benefit from the . . . order. But this does not necessarily make the [private antitrust] injunction overbroad."). *Cf. Trump v. Hawaii*, 138 S. Ct. 2392, 2427 (2018) (Thomas, J., concurring) (explaining the "benefit [to] third parties" of an injunction awarded to a private litigant is "merely a consequence of providing relief to the plaintiff"); Woolhandler & Nelson, "Does History Defeat Standing Doctrine?," 102 Mich. L. Rev. 689, 702-03 (2004) ("this benefit to the public [is] 'incidental'; the private plaintiff [does] not . . . represent[] the public, but rather . . . protect[s] his own private interest"), *cited by Trump*, 138 S. Ct. at 2427 (Thomas, J., concurring). A private plaintiff, even when proceeding alone, is entitled to injunctive relief designed "to ensure that the defendant will not continue the specific illegal practice." *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 669 F.2d 490, 495 (7th Cir. 1982). Such relief is necessary to prevent ongoing restraints of trade. *See, e.g., id.*; *Zenith Radio Corp. v. Hazeltine Research Inc.*, 395 U.S. 100, 129-32 (1969).

Moreover, an injunction against price-fixing is indivisible relief—it cannot be more narrowly designed for a single plaintiff than it can for a group of plaintiffs or for a class. The

---

[1] Authority for such injunctions is longstanding and overwhelming. *See, e.g., Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 386 (1951) (stating, in private price-fixing suit, "[i]t is clear from our decisions under the Sherman Act (26 Stat. 209) that this . . . arrangement would be illegal [and] that it would be enjoined"); *Anderson v. Shipowners Ass'n of the Pac. Coast*, 272 U.S. 359, 360 (1926) (private "suit to enjoin the respondents from maintaining a combination in restraint of [trade] . . . is authorized by §§ 4 and 16 of the Clayton Act"); *Duplex Printing Press Co. v. Deering*, 254 U.S. 443, 478 (1921) (a private "complainant has a clear right to an injunction under the Sherman Act as amended by the Clayton Act").

Supreme Court has concluded as much: "While . . . any individual threatened with injury by an antitrust violation may . . . sue for injunctive relief against violations of the antitrust laws, and while they may theoretically do so simultaneously against the same persons for the same violations, the fact is that one injunction is as effective as 100, and, concomitantly, that 100 injunctions are no more effective than one." *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 261 (1972); *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 111 n.6 (1986) (same). Even though an individual litigant's injunction against an illegal restraint may benefit others, it nevertheless constitutes "injunctive relief only to the extent necessary to protect" that single private litigant. *Ohio-Sealy Mattress Mfg. Co.*, 669 F.2d at 495.

## B.     The arbitration agreement does not restrict such remedies.

The arbitration agreement leaves room for the injunctive and declaratory relief typically awarded in price-fixing cases. *Columbia Broadcasting*, 562 F.2d at 140 ("Normally, after a finding of price-fixing, the remedy is an injunction against the price-fixing."). The agreement states that the "arbitrator may award declaratory or injunctive relief . . . only to the extent necessary to provide relief warranted by the claimant's individual claim." Agreement, Feldman Decl., Ex. 1. That provision mirrors antitrust doctrine: injunctive relief is available "only to the extent necessary to protect" a private litigant. *Ohio-Sealy Mattress Mfg. Co.*, 669 F.2d at 495. And as explained above, under antitrust doctrine, injunctions stopping a defendant's illegal restraint of trade are available precisely because they are "necessary" to protect the private litigant. *Id.*; *see also Nat'l Soc'y of Prof'l Engineers*, 435 U.S. at 697; *Zenith Radio Corp.*, 395 U.S. at 129-32; *ES Dev., Inc.*, 939 F.2d at 557.

Accordingly, injunctive and declaratory relief ending Uber's price-fixing is available under the arbitration agreement.

## C.     Uber's cases do not compel a different reading.

Uber identifies no case preventing an arbitrator from enjoining price-fixing under terms akin to those in Uber's arbitration agreement.  Uber instead relies on cases finding that demands to enjoin mergers were beyond the scope of an arbitration agreement.  *See* Uber Mem. in Support of Motion to Dismiss Claims for Injunctive and Declaratory Relief, dated Dec. 21, 2018 ("Uber Mem.") at 8 (citing cases).  But those cases are distinguishable for at least two reasons.

***First***, Uber's cases did not involve price-fixing.  As noted, precedents abound—including multiple Supreme Court precedents—granting injunctions against price-fixing to individual litigants.  *See, e.g.*, *Anderson*, 272 U.S. at 360 (private "suit to enjoin the respondents from maintaining a combination in restraint of [trade] . . . is authorized by §§ 4 and 16 of the Clayton Act"); *Duplex Printing Press Co.*, 254 U.S. at 478 (a private "complainant has a clear right to an injunction under the Sherman Act as amended by the Clayton Act"); *Wilk*, 895 F.2d at 371.  The case law is far murkier with respect to a private litigant's right to enjoin a merger, *see, e.g.*, *Reilly v. Hearst Corp.*, 107 F. Supp. 2d 1192, 1212 (N.D. Cal. 2000) (finding merger violated antitrust laws but refusing to enjoin it), which was the relief sought in the cases Uber cites.  Significantly, we are unaware of any case holding that an injunction against a merger would be relief drawn "only to the extent necessary to protect" a private litigant.  By contrast, an injunction preventing continued price-fixing is, in fact, relief drawn "only to the extent necessary to provide relief warranted by that party's individual claim," and is thus consistent with the arbitration agreement here.  *Ohio-Sealy Mattress Mfg. Co.*, 669 F.2d at 495 (holding that an injunction against price-fixing *was* relief drawn "only to the extent necessary to protect" a party).

***Second***, none of Uber's cases held that a consumer had "contract[ed] away" his right to enjoin price-fixing.  *See* Uber Mem. at 1.  Rather, they held that arbitration agreements did not

extend to claims for the injunctive relief at issue in those cases, which involved a series of nearly 1,000 concerted arbitrations seeking to enjoin the AT&T and T-Mobile USA merger in 2011. *See, e.g., AT&T Mobility LLC v. Gonnello*, 11 Civ. 5636, 2011 U.S. Dist. LEXIS 116420, at *2 (S.D.N.Y. Oct. 7, 2011). It is true that AT&T's arbitration agreement, like Uber's, provided that the arbitrator could "award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim." *Id.* at *7-8. But the courts did not hold that the injunctive relief had been contracted away, as Uber urges here. Instead, the courts held that arbitration was not a forum for seeking such relief under those agreements. *See, e.g., id.* at *12 (holding that "the demand for arbitration is beyond the scope of disputes that the parties have contractually agreed to arbitrate").[2] Uber cannot make such an argument here because it has previously and successfully argued that all of Meyer's claims had to be arbitrated. *See AT&T Mobility LLC v. Smith*, 11-cv-5157, 2011 U.S. Dist. LEXIS 125367, at *11-12, n.4 (E.D. Pa. Oct. 7, 2011) (noting "concern[]" with "inconsistent positions on the arbitrability of claims seeking broad injunctive remedies," and noting applicability of "judicial estoppel").

For these reasons, this tribunal should construe the arbitration agreement as permitting Meyer to seek an injunction and declaratory relief against Uber's (and Kalanick's) continued price-fixing. Meyer would be entitled to such relief because courts have agreed that such relief is *already*

---

[2] *See also AT&T Mobility LLC v. Bernardi*, No. C 11-03992 CRB, 2011 U.S. Dist. LEXIS 124084, at *31 (N.D. Cal. Oct. 26, 2011) ("the demand for arbitration is beyond the scope of disputes that the parties have contractually agreed to arbitrate"); *AT&T Mobility LLC v. Smith*, 11-cv-5157, 2011 U.S. Dist. LEXIS 125367, at *24 (E.D. Pa. Oct. 7, 2011) (holding arbitration demand "barred by the arbitration agreement"); *AT&T Mobility LLC v. Princi*, 11-cv-11448, 2011 U.S. Dist. LEXIS 138851, at *3 (D. Mass. Dec. 2, 2011) (refusing "to arbitrate a claim plaintiff did not agree to arbitrate").

drawn "only to the extent necessary to protect" him.  *Ohio-Sealy Mattress Mfg. Co.*, 669 F.2d at 495.

**POINT II**

**UBER IS EQUITABLY ESTOPPED FROM ARGUING THAT MEYER IS RESTRICTED FROM OBTAINING SUCH RELIEF.**

In any event, Uber's flawed arguments cannot be advanced here because they are the opposite of what Uber successfully argued in the district court.  Uber now argues that "[t]he equitable relief Meyer seeks exceeds the Arbitrator's authority."  Uber Mem. at 8.  But Uber told Judge Rakoff that this arbitration "is capable of providing Meyer with the same remedies Meyer [sought] in this litigation."  Uber Mem., *Meyer v. Kalanick*, Dkt. 151 at 14 (Oct. 6, 2017), Feldman Ex. 2.  The doctrine of judicial estoppel prevents Uber from reversing its position.

"Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."  *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000).  The doctrine prohibits "parties from deliberately changing positions according to the exigencies of the moment."  *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (quotation marks and citations omitted); *id.*, *citing Scarano v. Central R. Co. of N.J.*, 203 F.3d 510, 513 (3d Cir. 1953) ("Such use of inconsistent positions would most flagrantly exemplify . . . playing fast and loose with the courts," "an evil the courts should not tolerate").

Judicial estoppel has three elements.  *See New Hampshire*, 532 U.S. at 749-50.  First, the party's positions must be clearly inconsistent.  *Id.* at 750.  Second, the party must have prevailed in the first matter.  *See id.*[3]  And, third, the adjudicator should consider "whether the party seeking

---

[3] "[T]he former position of the party against whom estoppel is sought need not have been the 'but

8

to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751. Each element is satisfied here.

**First**, Uber's current position is precisely the opposite of its position in district court. There, Meyer had sought to enjoin Uber's price-fixing and obtain a declaration of its illegality, as Uber always understood. Uber thus explained that "the very relief sought by Plaintiff is designed to grind Uber's business to a halt by enjoining the use of Uber's pricing algorithm and the driver-partner agreements that reference it." Uber Mem. at 4, Dkt. 59 (May 24, 2016), Feldman Decl., Ex. 4; *id.* at 13 ("Uber's presence is required in a suit seeking to declare [its business model] illegal and forbid their use"); Uber Reply Mem. at 2, Dkt. 84 (June 9, 2016) ("the equitable relief he seeks would 'decimate' the driver-partner contracts"), Feldman Decl., Ex. 5; *id.* at 3 ("the relief Plaintiff seeks, including a declaration that Uber's pricing algorithm is illegal, would affect Uber's substantial interests"). And Uber acknowledged that Meyer "seeks an injunction against the use of Uber's pricing algorithm and restraining enforcement of Uber's contracts with its driver-partners that reference the algorithm." Uber Mem. at 15, Dkt. 59, Feldman Decl., Ex. 4. The district court agreed, holding that "[t]he declaration plaintiff seeks, that the use of the Uber pricing algorithm for setting fares is unlawful, is no mere appendage to the Complaint: it is a fundamental part of the relief necessary to remedy plaintiff's claimed injury." Order, Dkt. 90, at 5 (June 20, 2016), Feldman Decl., Ex. 6; *id.* (holding Meyer "seeks declaratory and injunctive relief against the operation of these mechanisms").

---

for' cause of the earlier court's determination, so long as allowing that party to change positions would yield some unfair burden or benefit." *Penberthy v. Chickering*, 15 Civ. 7613 (PAE), 2017 U.S. Dist. LEXIS 6152, at *18 (S.D.N.Y. Jan. 13, 2017).

Uber then assured the district court that Meyer could obtain such relief—an injunction against ongoing price-fixing and a declaration of illegality—through this arbitration. Uber had moved to compel arbitration of Meyer's claims against it. *See* Uber Mem., Dkt. 151, Feldman Decl., Ex. 2. But Uber faced the risk that Judge Rakoff would still permit Meyer to litigate against Kalanick, because Kalanick had waived his right to compel arbitration. *See* Excerpts of Trans. of Oct. 24, 2017, Dkt. 167, at 7-8 (Judge Rakoff: "Kalanick . . . said flat out that he was waiving arbitration"), Feldman Decl., Ex. 7; Opinion at 9, Dkt. 44 (May 9, 2016) (concluding that any right of Kalanick to compel arbitration "appears to have been effectively relinquished"), Feldman Decl., Ex. 8. Uber argued that such litigation should not be permitted in Uber's absence, as a necessary party under Rule 19(b) of the Federal Rules of Civil Procedure. *See* Uber Mem. at 13, Dkt. 151 (Oct. 6, 2017), Feldman Decl., Ex. 2. To prevail on that argument, Uber sought to convince the court that Meyer "would have an adequate remedy if the action were dismissed." Fed. R. Civ. P. 19(b)(4). In that context, Uber argued that "arbitration between Uber and Meyer (whether it includes Kalanick or not) is capable of providing Meyer with the same remedies Meyer seeks in this litigation." Uber Mem. at 14, Dkt. 151 (Oct. 6, 2017), Feldman Decl., Ex. 2.

Uber's position in district court is flatly inconsistent with Uber's position today. In arguing that arbitration was an adequate remedy, Uber represented that arbitration "is capable of providing Meyer with the same remedies" sought in litigation, *id.*, which Uber had recognized as an "injunction against the use of Uber's pricing algorithm," Uber Mem. at 15, Dkt. 59, Feldman Decl., Ex. 4. Now, Uber argues that such relief is not, in fact, available in arbitration. This inconsistency readily satisfies the first element for judicial estoppel.

***Second***, Uber prevailed on its argument. As noted, Uber had argued that arbitration was adequate because it was "capable of providing Meyer with the same remedies Meyer seeks in this

litigation." Uber Mem. at 14, Dkt. 151 (Oct. 6, 2017), Feldman Decl., Ex. 2. Uber prevailed and convinced the district court that arbitration was "an adequate remedy." Opinion and Order at 20, Dkt. 173 (Mar. 5, 2018), Feldman Decl., Ex. 3. Uber thus succeeded not only on its motion to compel but also on its argument that Meyer's claims against Kalanick should be dismissed because, under Rule 19(b), arbitration offered an adequate remedy for Meyer, as he could seek "the same remedies" in arbitration.

Uber's success satisfies the second element of judicial estoppel. In another case concerning shifting positions on available remedies, *Murray v. Silberstein*, 882 F.2d 61 (3d Cir. 1989), the Third Circuit applied judicial estoppel. There, the litigant had moved for a preliminary injunction and argued that irreparable harm was threatened because damages were unavailable. *See id.* at 64. Although the district court did not comment on whether damages would have in fact been available, it granted the preliminary injunction. *See id.* The Third Circuit held that, because the litigant prevailed on its preliminary injunction motion, the litigant was judicially estopped from reversing its position on available remedies later. *Id.* at 66. The litigant could not "be permitted to retreat from [its] original position" on what remedies would be available, after the litigant prevailed on its motion. *Id.* ("The governing law . . . bar[s] switches in position of this kind"). Uber likewise improperly seeks to shift its position on available remedies after prevailing on its earlier motion, in satisfaction of the second element for judicial estoppel.

***Third***, Uber's reversal would unfairly benefit Uber to Meyer's detriment. If Uber had taken its current position when advancing its Rule 19(b) motion, Meyer would have argued that arbitration would be inadequate to secure the relief Meyer sought. Uber avoided that argument by staking out its original position that this arbitration "is capable of providing Meyer with the same remedies" sought in litigation. If Uber were allowed to reverse that position now, it will have its

cake and eat it too—by using the false promise of full arbitration remedies to escape litigation, only to shift positions and avoid those remedies once the arbitration had commenced.

Moreover, Meyer would be unfairly harmed if Uber were allowed to reverse its position. Of course, Meyer would be left without the primary relief he has always sought in this litigation—an end to price-fixing and a declaration of its illegality. But, in addition, Meyer would have wasted his time pursuing this arbitration following Uber's representation that the declaratory and injunctive remedies he sought would be available in arbitration. Uber's shifting positions, if permitted, would unfairly devalue Meyer's investment in this arbitration.

All three elements of judicial estoppel are thus satisfied. The doctrine applies here to ensure "that a party who prevails on one ground in a lawsuit cannot turn around and in another lawsuit repudiate the ground." *Ogden Martin Sys. of Indianapolis v. Whiting Corp.*, 179 F.3d 523, 526 (7th Cir. 1999). Uber, after prevailing in district court on the theory that Meyer would be entitled to the "same remedies" in arbitration as in litigation, cannot now obtain an order stating the opposite. Its motion should be denied.

## POINT III

**IF THE ARBITRATION AGREEMENT WERE CONSTRUED TO PROHIBIT MEYER FROM OBTAINING INJUNCTIVE AND DECLARATORY RELIEF ENDING UBER'S PRICE-FIXING, IT WOULD BE UNENFORCEABLE.**

If this tribunal were to grant Uber's motion and deny Meyer the opportunity to seek an injunction against ongoing price-fixing and a declaration of illegality, the arbitration agreement would be unenforceable, and Meyer would be free to litigate his claims in district court.

## A. Arbitration agreements may not waive statutory remedies, particularly relief deterring antitrust violations.

Black-letter law provides that arbitration agreements may not prospectively waive a party's right to pursue a statutory remedy. *See Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1160 (7th Cir. 2016) (Wood, C.J.) ("Arbitration agreements that act as a 'prospective waiver of a party's *right to pursue* statutory remedies'—that is, of a substantive right—are not enforceable." (emphasis in original)) (citing cases); *see also Am. Express v. Italian Colors Restaurant*, 570 U.S. 228, 236 (2013) (explaining that "a provision in an arbitration agreement forbidding the assertion of certain statutory rights" would be illegal); *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 406-07 (2003) (construing arbitration agreement to preserve RICO remedies to avoid rendering the agreement unenforceable); *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90-91 (2000) (arbitration permissible "so long as the prospective litigant may effectively vindicate her or her statutory cause of action in the arbitral forum"); *Mitsubishi Motors Corp.*, 473 U.S. at 628 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute"); *Morris v. Ernst & Young, LLP*, 834 F.3d 975, 985-86 (9th Cir. 2016).

In particular, an arbitration agreement must "provide for *all* of the types of relief that would otherwise be available in court." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 895 (9th Cir. 2002) (emphasis added); *accord Morrison v. Circuit City Stores*, 317 F.3d 646, 670 (6th Cir. 2003) (striking agreement that failed to preserve "the full panoply of remedies"); *Paladino v. Avnet Computer Techns., Inc.*, 134 F.3d 1054, 1059 (11th Cir. 1998) (litigants compelled to arbitrate are entitled to "all of the types of relief that would otherwise be available in court"); *Cole v. Burns Int'l Sec'y Servs.*, 105 F.3d 1465, 1482 (D.C. Cir. 1997) (enforcing agreement, where it provided for "all of the types of relief" available by statute). And an arbitration agreement is enforceable

"only if it is clear that 'the prospective litigant may effectively vindicate its statutory cause of action in the arbitral forum,' such that the statute under which its claims are brought 'will continue to serve both its remedial and deterrent function.'" *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 125 (2d Cir. 2010) (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 637); *Begonja v. Vornado Realty Trust*, 159 F. Supp. 3d 402, 410 (S.D.N.Y. 2016) (same).

Thus, if an arbitration agreement limits statutory remedies, the agreement must be invalidated. *See, e.g.*, *Perez v. Globe Airport Sec'y Servs., Inc.*, 253 F.3d 1280, 1286-87 (11th Cir. 2001) (voiding agreement and holding that "[i]f the arbitration agreement limits remedies Congress determined were appropriate, it should not be enforced"). Applying this rule, courts "routinely invalidate arbitration provisions that interfere with substantive statutory rights." *Lewis*, 823 F.3d at 1160 (citing cases); *see, e.g.*, *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 83 (D.C. Cir. 2005) (then-Circuit Judge John G. Roberts, Jr.) (holding unenforceable arbitration clause proscribing certain Title VII remedies). Quite simply, "[a]n arbitration agreement containing provisions that defeat a federal statute's remedial purpose is . . . not enforceable." *Perez*, 253 F.3d at 1287; *cf. Reyes v. Gracefully, Inc.*, 17-CV-9328, 2018 U.S. Dist. LEXIS 80059, at *16 (S.D.N.Y. May 11, 2018) (finding restriction of "Plaintiff's statutory rights" unenforceable).

The law is particularly clear that arbitration agreements may not limit antitrust remedies, such as the right to injunctive relief. *See* 15 U.S.C. § 26 ("Any person . . . shall . . . have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws"). Indeed, antitrust remedies are the archetypical example of statutory remedies that cannot be waived. The Supreme Court has thus warned that if an arbitration agreement "operated . . . as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, [the Court] would have little hesitation in condemning the agreement as against public policy." *Mitsubishi*, 473 U.S. at 637 n.

14

19. And Circuits have repeatedly held that arbitration agreements cannot lawfully waive remedies available under the antitrust statutes. *See Kristian v. Comcast*, 446 F.3d 25, 46 (1st Cir. 2006) ("[U]nder federal law, the remedies provided by the antitrust statutes cannot be contractually waived"); *see also Gaines v. Carrollton Tobacco Bd. of Trade, Inc.*, 386 F.2d 757, 759 (6th Cir. 1967) ("[I]t seems clear as a matter of law that such an agreement, if executed in a fashion calculated to waive damages arising from future violations of the antitrust laws, would be invalid on public policy grounds."); *cf. Schatz v. Cellco P'ship*, 842 F. Supp. 2d 594, 599 (S.D.N.Y. 2012) ("in the context of an antitrust action, . . . if a plaintiff can adequately demonstrate that the provisions of an arbitration agreement would effectively preclude any action seeking to vindicate the statutory rights asserted by the plaintiff, the arbitration agreement may be unenforceable") (quotation marks omitted).[4]

The availability of all antitrust remedies is crucial because "Congress has [legislated] that it is willing to go, in certain respects, beyond the normal limits of law in advancing its goals of deterring and remedying unlawful trade practice." *Am. Express*, 570 U.S. at 233. "The key to the whole question of an antitrust remedy is of course the discovery of measures effective to restore competition. . . . [C]ourts are . . . required to decree relief effective to redress the violations, whatever the adverse effect of such a decree on private interests." *United States v. E.I. du Pont de*

---

[4] Uber erroneously suggests that *Schatz* held that a litigant could waive its rights to enjoin antitrust violations. *See* Uber Mem. at 7. But *Schatz* only considered whether a litigant could enjoin violations of a New York consumer statute and found the answer to that question ambiguous. *See* 842 F. Supp. 2d at 608-09 (questioning whether N.Y. Gen. Bus. L. 349(h) permitted an individual to enjoin unlawful practices). By contrast, there is no question that an individual litigant may enjoin price-fixing under the antitrust laws. *See supra* 3-5 (citing cases); *see, e.g.*, *Duplex Printing Press Co.*, 254 U.S. at 478 (a private "complainant has a clear right to an injunction under the Sherman Act as amended by the Clayton Act"). Indeed, *Schatz* expressly stated that antitrust remedies are not waivable through arbitration agreements. 842 F. Supp. 2d at 599, 606-09 (citing and quoting from *Mitsubishi*, 472 U.S. at 637 n.19).

*Nemours & Co.*, 366 U.S. 316, 326 (1961). Even in private antitrust cases, that means the court must design injunctive relief "to ensure that the defendant will not continue the specific illegal practice." *Ohio-Sealy Mattress Mfg. Co.*, 669 F.2d at 495; *see also Wilk*, 895 F.2d at 371 (explaining there is a "public interest served by private antitrust suits" in "effectively open[ing] competition to a market that was previously closed by illegal restraints"). "[T]he purpose of giving private parties treble-damage and injunctive remedies was not merely to provide private relief, but was to serve as well the high purpose of enforcing the antitrust laws." *Zenith Radio Corp.*, 395 U.S. at 130-31; *id.* at 133 (such cases "are brought for private ends, but . . . serve the public interest in that they effectively pry open to competition a market that has been closed by defendants' illegal restraints"). Private antitrust injunctions must "be construed and applied with this purpose in mind." *Id.* at 131.

Arbitration without the full panoply of statutory antitrust remedies would fail "to serve both [the antitrust law's] remedial and deterrent function." *Mitsubishi*, 473 U.S. at 637; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) (same); *Ragone*, 595 F.3d at 125 (same). Limiting treble damages to single damages would reduce these functions indirectly—by reducing incentives to sue in the wake of anticompetitive conduct. *See, e.g.*, *Kristian*, 446 F.3d at 48 ("the award of treble damages under the federal antitrust laws cannot be waived"). But precluding price-fixing injunctions or declaratory relief would reduce those functions directly—by prohibiting the very orders that would remedy and deter price-fixing. *Cf. Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979) ("These private suits provide a significant supplement . . . for enforcing the antitrust laws and deterring violations."). The Supreme Court has explained that private injunctive relief serves "the general public upon whom the cost [of illegal restraints of trade] must ultimately fall, and whose vital interest in unobstructed commerce constituted the prime and paramount concern

of Congress in enacting the antitrust laws." *Duplex Printing Press Co.*, 254 U.S. at 477-78. Public policy thus prohibits any exclusion of injunctive relief barring price-fixing. *See Ragone*, 595 F.3d at 125 ("[A]s the Supreme Court stated in *Mitsubishi*, if certain terms of an arbitration agreement served to act 'as a prospective waiver of a party's right to pursue statutory remedies . . ., we would have little hesitation in condemning the agreement as against public policy.'") (quoting *Mitsubishi*, 473 U.S. at 637 n.19).

**B.    The arbitration agreement cannot bar the injunction and declaration Meyer seeks.**

Here, Uber's proffered construction of the arbitration agreement would render it invalid. As noted, the antitrust laws would entitle Meyer, if he prevailed in his claims against Uber or Kalanick in district court, to both an injunction against continued price-fixing and a declaration that such price-fixing is illegal. *See* 15 U.S.C. § 26 (injunctive relief); 28 U.S.C. § 2201 (declaratory relief). Yet Uber insists that Meyer "contracted away" those rights. *See* Uber Mem. at 1. Uber further insists that the agreement "limit[s] the Arbitrator's power to grant declaratory and injunctive relief." Uber Mem. at 7. Such a construction would operate "as a prospective waiver of [Meyer's] right to pursue statutory remedies for antitrust violations." *Mistubishi*, 473 U.S. at 637 n. 19. Any such construction is patently impermissible. *See id.*

Accordingly, if this tribunal agrees with Uber's construction of the relief provisions—and concludes that Meyer "contracted away" his antitrust remedies, *see* Uber Mem. at 1, so as to "limit the Arbitrator's power to grant declaratory and injunctive relief," *id.* at 7—this tribunal must hold the agreement unenforceable and enter an award invaliding the arbitration agreement.

# POINT IV

## UBER'S ATTORNEYS' FEES ARGUMENTS ARE PREMATURE.

Uber's arguments regarding appropriate attorneys' fees are for another day. For the reasons stated in Points I through III, Meyer is entitled to the injunctive and declaratory relief he seeks, either in this arbitration or in federal district court. Consequently, there is no basis for this tribunal to resolve this matter now, nor to enter the so-called "Stipulation of Award" proposed by Uber. Moreover, as this tribunal recognized in response to Uber's motion, "even assuming, arguendo that [the tribunal] were to consider granting the relief [Uber] now seek[s] . . . the matter would not be ripe for disposition in any event" because there has been no "evidence on attorneys fees, etc., sufficient to include it in a final award." Email dated Dec. 22, 2018. Meyer agrees: Uber's request for a determination of attorneys' fees and costs is premature and should not be entertained at this time.

In any event, Uber is wrong about how fees and costs must be measured. Uber erroneously insists that any award of fees and costs must exclude "any claim for costs and attorneys' fees accrued by or on behalf of claimant as part of any pre-arbitration litigation in the federal courts." Uber Mem. at 9-10. But such a limitation is neither required nor permitted under 15 U.S.C. § 15, the fee shifting provisions of the Clayton Act. Citing to the Arbitration Agreement, Uber argues that the fees and costs this Tribunal may award are limited to only the fees and costs "incurred during *arbitration*." Uber Mem. at 10 (emphasis in original). But the Agreement says no such thing. To the contrary, it provides: "If you prevail in arbitration, you will be entitled to an award of attorneys' fees and expenses *to the extent provided under applicable law.* Uber Mem. at 10 (emphasis added). And the law applicable to Meyer's claim for attorneys' fees and costs is Section 4 of the Clayton Act, which provides, in relevant part:

any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States ... and shall recover threefold the damages by him sustained and the cost of suit, including a reasonable attorney's fee.

15 U.S.C. § 15. This provision of the Clayton Act governs fees.

The purpose of the Clayton Act's grant of attorneys' fees is to insulate a treble damage recovery from expenditure for legal fees. *See Vandervelde v. Put and Call Brokers and Dealers Assn.*, 344 F. Supp. 157, 159-60 (S.D.N.Y. 1972). The award is mandatory to an injured plaintiff and may include fees and expenses incurred in related litigation. *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 420 (3d Cir.1993). As the court stated in *Gulfstream III*, "if the plaintiff can prove that the fees and expenses incurred in the other litigation resulted in work product that was actually utilized in the instant litigation, that the time spent on other litigation was inextricably linked to the issues raised in the present litigation, and that plaintiff has not previously been compensated for those fees and expenses, then the district court may include those fees and expenses in its fee award." *Cf. Keenan v. City of Philadelphia,* 983 F.2d 459 (3d Cir.1992*)* (upholding a district court's decision to include in the calculation of a fee award in a successful section 1983 suit the hours spent in preparing, litigating, and appealing a labor arbitration hearing arising out of the same conduct). Uber thus errs in insisting that this tribunal must exclude any fees and expenses incurred during the district court litigation.

Uber presents no authority to the contrary. Indeed, in *C.T. Shipping, Ltd. v. DMI (U.S.A.) Ltd.,* 774 F. Supp. 146 (S.D.N.Y.1991), a case cited by Uber, the district court found that the arbitrators *did not* exceed their authority in awarding attorneys' fees related to pre-arbitration attachment proceedings. *Id.* at 152-52. *See also N. Cent. Const. v. Siouxland Energy & Livestock Co-op.,* No. C02-4041-MWB, 2004 U.S. Dist. LEXIS 21760 (N.D. Iowa Oct. 26, 2004) (finding

no authority to support the position that an arbitration panel to whom the issue of attorneys' fees is submitted by the parties does not have the authority to consider pre-arbitration attorneys' fees"); *Salus Capital Partners, LLC v. Moser*, 289 F. Supp. 3d 468, 479–80 (S.D.N.Y. 2018) (arbitrator acted within the scope of his authority is awarding fees incurred during the pre-arbitration investigation of the conduct of the company's CEO).[5] These questions may be addressed in greater detail following resolution of the claims in this arbitration.

For the reasons stated above, while Uber's position on available fees and costs is erroneous, it is premature for this tribunal to consider what amounts would be recoverable by Meyer. This tribunal should deny Uber's request to enter its proposed "Stipulation of Award," which Meyer opposes.

## Conclusion

For the reasons stated above, this tribunal should either (i) deny Uber's motion and hold that Meyer is entitled to pursue the injunctive and declaratory relief set out in his Claim, or (ii) adopt Uber's construction but enter an award invalidating the arbitration agreement, so that the parties may return to district court.

Dated: January 18, 2019

By: /s/ Brian M. Feldman
HARTER SECREST & EMERY LLP
Brian Marc Feldman
1600 Bausch & Lomb Place
Rochester, New York 14604

---

[5] Recognizing that the lack of support for its position, Uber argues that "very little of the fees and costs [Meyer] incurred in the [federal] litigation went to prosecuting the merits of his antitrust claim. . ." Uber Mem. at 10 n. 3. This is incorrect. To the contrary, Uber did not move to intervene and compel arbitration until the litigation was months old. By this time, motions to dismiss the substantive claims had been briefed and argued and lost by Kalanick and discovery on the merits was well underway.

**CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP**
Bryan L. Clobes
Ellen Meriwether
205 N. Monroe Street
Media PA 19063

**ANDREW SCHMIDT LAW PLLC**
Andrew Arthur Schmidt
97 India Street
Portland, Maine 04101

*Counsel for Claimant Spencer Meyer*