# EXHIBIT G

THE ARBITRATION TRIBUNALS OF THE
AMERICAN ARBITRATION ASSOCIATION

In the Matter of the Arbitration between

SPENCER MEYER,
    Claimant,

v.

UBER TECHNOLOGIES, INC.; and TRAVIS KALANICK,
    Respondents.

Les Weinstein
AAA No. 01-18-0002-1956

**SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO
UBER TECHNOLOGIES, INC.'S MOTION TO DISMISS**

**HARTER SECREST & EMERY LLP**
Brian Marc Feldman
Gregory M. Dickinson
1600 Bausch & Lomb Place
Rochester, New York 14604

**CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP**
Bryan L. Clobes
Ellen Meriwether
205 N. Monroe Street
Media, Pennsylvania 19063

**ANDREW SCHMIDT LAW PLLC**
Andrew Arthur Schmidt
97 India Street
Portland, Maine 04101

*Counsel for Claimant Spencer Meyer*

March 11, 2019
New York, New York

# TABLE OF CONTENTS

Table of Authorities ................................................................................................... ii

Preliminary Statement ................................................................................................1

Argument ...................................................................................................................3

POINT I:   THE TERMS OF THE PROPOSED AWARD CANNOT MOOT MEYER'S CLAIMS. .............3

        A. The proposed award cannot moot Meyer's injunctive and declaratory claims. .......................................................................................3

           1. *Mitsubishi Motors* controls. ...................................................4

           2. The proposed injunction would be insufficient to protect Meyer. ...........................................................................6

        B. The proposed award cannot moot Meyer's attorneys' fees claims. ...................................................................................................7

        C. The proposed award includes numerous improper terms. ................8

POINT II:  IN ANY EVENT, UBER'S PROPOSED AWARD IS MERELY AN OFFER, WHICH CANNOT MOOT MEYER'S CLAIMS ...........................................................9

Conclusion .................................................................................................................9

# TABLE OF AUTHORITIES

PAGE

**CASES**

*American Express v. Italian Colors Restaurant*,
    570 U.S. 228 (2013)................................................................................................5, 6

*Campbell-Ewald Co. v. Gomez*,
    136 S. Ct. 663 (2016).................................................................................................9

*CBS v. Am. Soc'y of Composers*,
    562 F.2d 130 (2d Cir. 1977).......................................................................................3

*Geismann v. ZocDoc, Inc.*,
    909 F.3d 534 (2d Cir. 2018).......................................................................................9

*Hrivnak v. NCO Portfolio Mgmt.*,
    719 F.3d 564 (6th Cir. 2013) .....................................................................................8

*Kristian v. Comcast Corp.*,
    446 F.3d 25 (1st Cir. 2006).......................................................................................4

*Lafeyette v. La. Power & Light Co.*,
    435 U.S. 389 (1978)..................................................................................................6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
    473 U.S. 614 (1985).........................................................................................2, 4, 5

*Nat'l Soc'y of Prof'l Eng'rs v. United States*,
    435 U.S. 679 (1978)..................................................................................................6

*Nat'l Supermarkets Ass'n v. Am. Express Travel Servs. Co.*,
    681 F.3d 139 (2d Cir. 2012).......................................................................................5

*Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*,
    669 F.2d 490 (7th Cir. 1982) .....................................................................................3

*Zenith Radio Corp. v. Hazeltine Research*,
    395 U.S. 100 (1969)...............................................................................................5, 6

**RULES AND REGULATIONS**

Fed. R. Civ. P. 19.............................................................................................................1, 2

Fed. R. Civ. P. 65................................................................................................................8

As requested on February 21, 2019, Claimant Spencer Meyer ("Meyer") respectfully submits this supplemental memorandum of law in opposition to the motion to dismiss claims for injunctive and declaratory relief submitted by Uber Technologies, Inc. ("Uber").

**Preliminary Statement**

Meyer is entitled to enjoin Uber's price-fixing after proving that Uber wrongfully allows driver-partners to surge prices without fearing competition from anyone else on the platform. Yet Uber continues to dodge any antitrust adjudication on the merits. In litigation, Uber contended that Meyer should arbitrate to enjoin any price-fixing, advising Judge Rakoff that arbitration would be "capable of providing Meyer with the same remedies Meyer [sought] in . . . litigation." Uber apparently believed that Meyer would never follow through with arbitration. After Meyer demanded arbitration, Uber changed its tune. It now claims the exact opposite of what it told Judge Rakoff—that, in fact, this arbitration will not permit Meyer to seek injunctive or declaratory remedies ending Uber's price-fixing. To support its new position, Uber cites language in the arbitration agreement limiting "declaratory or injunctive relief . . . only to the extent necessary to provide relief warranted by the claimant's individual claim."

Uber is wrong, and Meyer is entitled to enjoin Uber's price-fixing, as Meyer previously briefed. *See* Meyer Opp., dated Jan. 18, 2019. This is true for the three reasons set out in Meyer's papers. As an initial matter, the language Uber has cited reflects the same standard set out in long-standing federal law, under which courts have recognized that injunctive relief prohibiting ongoing price-fixing is, in fact, relief that goes no further than necessary for an individual litigant like Meyer. *See id.*, Point I. Moreover, Uber is equitably estopped from taking its new position because it conflicts with the position Uber staked out in convincing the district court to dismiss Meyer's claims against Kalanick under Rule 19(b) of the Federal Rules

of Civil Procedure. *See id.,* Point II. And, most fundamentally, allowing Uber to evade an injunction ending its price-fixing would render the arbitration agreement unenforceable under *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985), where the Supreme Court instructed that statutory remedies, including those under federal antitrust law, cannot be waived through arbitration agreements. *See* Meyer Opp., Point III.

Following such briefing, this tribunal asked the parties to supplement their arguments to explain why Uber's offer of damages and narrow injunction would not moot Meyer's claims against Uber. That offer—styled by Uber as a "Proposed Arbitral Award for Injunctive and Monetary Relief" (the "proposed award")—cannot moot Meyer's claims because the terms are inappropriate, and an offer, rather than a tender, cannot moot claims.

This memorandum explains why the proposed award's terms cannot moot Meyer's claims. ***First***, Meyer's injunctive or declaratory claims would not be moot because Meyer is entitled to a broader scope of relief than Uber has offered in its proposed award. In particular, Meyer is entitled to enjoin price-fixing if he prevails on the merits. *See infra*, Point I-A. ***Second***, the terms of Uber's offer would not moot the attorneys' fees issues, which, as this tribunal has recognized, should be separately briefed. *See infra*, Point I-B. And, ***third***, there are a number of improper other terms lurking in the award, which Meyer opposes. These include Uber's effort to cloak the award in confidentiality and its self-serving characterization for its motivations in making the offer and what the award would represent. *See infra*, Point I-C.

This memorandum also explains why the form of Uber's proposed award—as an unaccepted offer—is insufficient to moot this case in any event. Under Supreme Court precedent, an unaccepted offer does not moot a controversy. Here, Uber's proposed award is therefore incapable of mooting Meyer's claims. *See infra*, Point II.

2

For these reasons and those set forth in Meyer's opposition memorandum of January 18, 2019, this tribunal should deny Uber's motion.

## ARGUMENT

### POINT I

### THE TERMS OF THE PROPOSED AWARD CANNOT MOOT MEYER'S CLAIMS.

**A.     The proposed award cannot moot Meyer's injunctive and declaratory claims.**

Uber's proposed award cannot moot Meyer's injunctive or declaratory claims because the proposed injunction is much narrower than the relief to which Meyer would be entitled after prevailing on the merits. Uber's proposed award would enjoin "Uber and any of its successors . . . from subjecting Claimant to surge pricing when Claimant uses the Uber App in the future," but would permit "Uber and any of its successors [to] continue to charge surge pricing to all other users of the Uber App." Proposed Award, ¶¶ 4-5. The proposed award is designed to grant Uber license to continue price-fixing in the marketplace.

That injunction is too narrow for all the reasons set out in Meyer's opposition papers. Meyer would be entitled, after prevailing on the merits, to a standard antitrust injunction that prevents ongoing price-fixing by Uber. As previously briefed, that is the standard relief for a private litigant because "normally, after a finding of price-fixing, the remedy is an injunction against the price-fixing." *CBS v. Am. Soc'y Composers*, 562 F.2d 130, 140 (2d Cir. 1977), *rev'd on other grounds*, *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1 (1979). Courts have long recognized that such relief is already narrowly drawn "only to the extent necessary to protect" the private plaintiff. *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 669 F.2d 490, 495 (7th Cir. 1982). Meyer's requested relief thus accords with the arbitration agreement. *See* Meyer Opp., Point I, at 3-8. Moreover, Uber is equitably estopped from arguing otherwise, after

3

prevailing on its argument to the district court that Meyer could obtain such relief in this arbitration. *See* Meyer Opp., Point II, at 8-12. And, most importantly, the Supreme Court has repeatedly made clear that arbitration agreements may not limit an antitrust plaintiff's rights to the full range of statutory relief, such as the injunctive relief sought here, because arbitration with such limitations would fail "to serve both [the antitrust law's] remedial and deterrent function." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 637 (1985). *See* Meyer Opp., Point II, at 12-17.

At this tribunal's request, Meyer now supplements his arguments to add two additional points, which respond to new issues raised by Uber's February 5, 2019, reply brief, and in connection with Uber's revised proposed award. First, *Mitsubishi Motors* remains controlling law and precludes enforcement of any arbitration agreement that would limit Meyer's ability to enjoin Uber's illegal price-fixing. Second, the injunction proposed by Uber in the proposed award is insufficient to protect Meyer from ongoing antitrust harm.

    1.    ***Mitsubishi Motors* controls.**

In its reply, Uber argues that the rule set out in *Mitsubishi Motors* is no longer good law. *See* Uber Reply Mem. at 9-11. Uber is wrong. In *Mitsubishi*, the Court held that arbitration agreements may not limit plaintiffs' *remedies* for antitrust violations. *See, e.g.*, *Mitsubishi Motors Corp.*, 473 at 637 n.19 (warning that if an agreement "operated . . . as a prospective waiver of a party's right to pursue statutory *remedies* for antitrust violations, [the Court] would have little hesitation in condemning the agreement as against public policy") (emphasis added); *Kristian v. Comcast Corp.*, 446 F.3d 25, 46 (1st Cir. 2006) ("[U]nder federal law, the *remedies* provided by the antitrust statutes cannot be contractually waived.") (emphasis added). The reason both "treble-damages and injunctive remedies" must remain available to prevailing

4

parties is "not merely to provide private relief, but [also] to serve as well the high purpose of enforcing the antitrust laws." *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 130-31 (1969).

This rule remains good law. Contrary to Uber's suggestion, the Supreme Court reaffirmed the doctrine in *American Express v. Italian Colors Restaurant*, 570 U.S. 228 (2013). *See* Uber Reply Mem. at 9-11. There, the Court explained that the *Mitsubishi Motors* doctrine "finds its origin in the desire to prevent 'prospective waiver of a party's *right to pursue* statutory remedies.'" *Italian Colors*, 570 U.S. at 236 (emphasis in original) (quoting *Mitsubishi Motors*, 473 U.S. at 637 n.19). *Italian Colors* drew a distinction between class procedures—which may be waived—and the ability to seek all statutory remedies—which cannot be waived by an arbitration agreement. As to class procedures, the Court explained that arbitration agreements could permissibly increase "the expense involved in *proving* a statutory remedy." *See id.; see also id.* at 234. But, as to particular antitrust remedies, the Court reiterated that an arbitration agreement simply cannot "eliminat[e] the *right to pursue* [an antitrust] remedy."[1] *Id.*

Uber thus fundamentally mischaracterizes *Italian Colors* in claiming it "upheld a limitation on the nature of relief parties could pursue in arbitration." Uber Reply Mem. at 9-10. To the contrary, in that case, the Supreme Court held that a "class-action waiver" would be permissible precisely because it would not deny a "party's right to pursue statutory remedies." *Italian Colors*, 570 U.S. at 234 n.3. In so holding, the *Italian Colors* court reiterated that broad

---

[1] To illustrate this point, the Supreme Court cited the dissent of Chief Judge Jacobs on the Second Circuit, who explained that the *Mitsubishi Motors* doctrine prohibits any "arbitration agreement that entirely foreclosed a *remedy* to which one of the parties was otherwise entitled to seek at law." *Nat'l Supermarkets Ass'n v. Am. Express Travel Servs. Co. (In re Am. Express Merchants' Litig.)*, 681 F.3d 139, 147-48 (2d Cir. 2012) (Jacobs, C.J., dissent from denial of rehearing en banc), *cited at Italian Colors*, 570 U.S. at 236.

antitrust remedies—*e.g.*, treble damages and fulsome injunctive relief—are necessary to "advanc[e Congress's] goals of deterring and remedying unlawful trade practices." *Id.* at 233. Thus, here, Meyer retains his rights to pursue an injunction against price-fixing to deter and remedy Uber's unlawful practices. No other result would stop Uber from continuing to fix prices, which is the very purpose of those private remedies. *See id.*; *Zenith Radio Corp.*, 395 U.S. at 130-31.

### 2. The proposed injunction would be insufficient to protect Meyer.

Furthermore, the narrower relief proposed by Uber is patently insufficient to prevent ongoing harm to Meyer. Uber wrongly assumes that it can remedy the harm to Meyer from an across-the-market price-fixed surge, for instance, a multiple of two, by reducing a $40 fare to $20. But Meyer is harmed by more than the doubling of his fare; he is harmed by the distortion of the market. As courts have long recognized, restraints on trade cause "serious distortion of the rational and efficient allocation of resources" in markets. *Lafeyette v. La. Power & Light Co.*, 435 U.S. 389, 408 (1978). The very reason the antitrust laws provide for "an injunction against price fixing," and not just a damage award alone, is to "avoid a recurrence of the violation and to eliminate its consequences." *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 695 (1978). "The assumption that competition is the best method of allocating resources in a free market recognizes that all elements of a bargain—quality, service, safety, and durability—and *not just the immediate cost*, are favorably affected by the free opportunity to select among alternative offers." *Id*. (emphasis added).

Uber's proposed injunction—aimed merely at "the immediate cost," *id.*—would create more problems than solutions. Even if Uber somehow covers Meyer for the immediate cost of paying surge (and exactly how Uber would do this is not explained), the market in which Meyer

6

hailed and purchased rides would remain skewed by surge pricing. Indeed, this was one of the facts considered by Judge Rakoff in ruling on the motion to dismiss. *See* Opinion dated Mar. 31, 2016, Dkt. 37, at 24-25, attached as Ex. 3 to Arbitration Demand. As studies reviewed by Judge Rakoff concluded, surge pricing can cause cars to become idle or leave a surge area, *id.* at 24, and, moreover, by re-distributing drivers already on the road, surge can deplete the rides available in adjacent areas, *id.* at 25. In other words, if Uber can continue to impose surge pricing, as it proposes, it may harm Meyer when he seeks rides in adjacent areas. While Uber surges prices in Manhattan, Meyer may be left waiting in the cold in Brooklyn for rides that would be available more quickly in a market without price-fixing.

So long as Uber "continue[s] to charge surge pricing to all other uses of the Uber App," as it proposes in its award, *see* Proposed Award ¶ 5, Meyer will be subjected to ongoing harm through the manipulation of the free market, such as by artificially prolonged waits for Uber rides in the areas adjacent to a surge. These problems, like all problems caused by the misallocation of resources created by Uber's price-fixing, will continue so long as Uber imposes surge pricing. And nothing in Uber's proposed injunction—which is limited to backing out the immediate price impact of surge pricing on Meyer—could remedy how Uber's price-fixing skews the free market.

For these reasons and those set forth in Meyer's briefing, Uber's proposed award is insufficient to remedy the harm to Meyer and cannot moot his injunctive or declaratory claims.

**B.** **The proposed award cannot moot Meyer's attorneys' fees claims.**

In addition to failing to satisfy Meyer's claims for injunctive and declaratory relief, the proposed award also fails to resolve Meyer's claims for attorneys' fees. "To moot a case or controversy between opposing parties," the defendant "must give the plaintiff *everything* he has

7

asked for as an individual." *Hrivnak v. NCO Portfolio Mgmt.*, 719 F.3d 564, 567 (6th Cir. 2013) (emphasis in original). "An offer limited to what the *defendant* believes is appropriate does not suffice. The question is whether the defendant is willing to meet plaintiff on his terms." *Id.* Here, Meyer and Uber have extensively briefed their disagreement about the extent to which Meyer is entitled to fees. The fee question thus remains open, as this tribunal has recognized.

**C.  The proposed award includes numerous improper terms.**

The proposed award presents numerous other terms that Uber "believes . . . appropriate" but that do not "meet plaintiff on his terms." *Id.* These include:

- Uber's erroneous claims that Meyer "is not entitled to injunctive relief that affects any users of the Uber App other than Claimant" and "is not entitled to declaratory relief that affects any users of the Uber App other than Claimant," *see* Proposed Award ¶¶ 1-2, along with Uber's contention that Meyer "is not awarded declaratory relief, because such relief is not necessary to provide Claimant with relief warranted by his individual claim," *id.* ¶ 7, and Uber's insistence that "Uber and any of its successors may continue to charge surge pricing to all other users of the Uber App," *see id.* ¶ 5, all of which are claims and terms that Meyer has strenuously opposed;

- Uber's limitation of any injunction to "Uber and any of its successors," ¶ 4, rather than Uber, its officers, agents, servants, employees, and all other persons who are in active concert or participation with the same, including Kalanick and other board members, consistent with the full scope of Rule 65 of the Federal Rules of Civil Procedure;

- Uber's insertion of language aimed, presumably, at limiting the preclusive effects of the proposed award, by claiming that "the Arbitrator makes no findings regarding the merits of Claimant's Demand or any of the claims therein," *id.* ¶ 9; and

- Uber's improper demand, opposed by Meyer, that the proposed award be "confidential" and "not be disclosed in or used in any other legal proceeding, except as necessary to give effect to this Award," *id.* ¶ 10.

Meyer has not asked for, and does not agree to, any of these terms. The proposed award, with such terms, is improper.

8

# POINT II

## IN ANY EVENT, UBER'S PROPOSED AWARD IS MERELY AN OFFER, WHICH CANNOT MOOT MEYER'S CLAIMS.

In any event, Uber's proposed award suffers from another fatal defect—it is an unaccepted offer. In *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), the Supreme Court squarely addressed this issue. It held that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." *Id.* at 672. The Supreme Court explained that whenever "a plaintiff rejects . . . an offer—however good the terms—her interest in the lawsuit remains just what it was before. And so too does the court's ability to grant her relief. An unaccepted settlement offer—like any unaccepted contract offer—is a legal nullity, with no operative effect." *Id.* at 670 (quotation marks omitted). There is thus no basis to grant Uber's motion.[2]

## Conclusion

For these reasons and those stated in Meyer's opposition filed January 18, 2019, this tribunal should deny Uber's motion for relief.

Dated: March 11, 2019

By: /s/ Brian M. Feldman
**HARTER SECREST & EMERY LLP**
Brian Marc Feldman
Gregory M. Dickinson
1600 Bausch & Lomb Place
Rochester, New York 14604

---

[2] Indeed, the Second Circuit has held that even a tender by Uber—whatever its terms—would be insufficient to moot this dispute. Because there is "no material difference between a plaintiff rejecting a *tender* of payment . . . and an *offer* of payment," neither can moot a case. *Geismann v. ZocDoc, Inc.*, 909 F.3d 534, 541 (2d Cir. 2018).

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes
Ellen Meriwether
205 N. Monroe Street
Media, Pennsylvania 19063

**ANDREW SCHMIDT LAW PLLC**
Andrew Arthur Schmidt
97 India Street
Portland, Maine 04101

*Counsel for Claimant Spencer Meyer*