# EXHIBIT I

Page 655

THE ARBITRATION TRIBUNALS OF THE AMERICAN
ARBITRATION ASSOCIATION
- - - - - - - - - - - - - - - - - - - - - x
In the Matter of Arbitration between
SPENCER MEYER,
        Claimant,
                    Les Weinstein
      -against-    AAANo. 01-18-0002-1956
  Uber Technologies, INC.,
        Respondent.
- - - - - - - - - - - - - - - - - - - - - x
              October 25, 2019
              9:00 a.m.

              BOIES SCHILLER FLEXNER LLP
              55 Hudson Yards
              New York, New York 10001

B E F O R E:

        LES WEINSTEIN, The Arbitrator


                      - - -




          MAGNA LEGAL SERVICES
    320 West 37th Street, 12th Floor
      New York, New York 10018
           (866) 624-6221



```
 1
 2   APPEARANCES:
 3
 4   Harter Secrest & EMERY LLP
     Attorneys for Claimant
 5              1600 Bausch & Lomb Place
                Rochester, New York 14604
 6   BY:        BRIAN M. FELDMAN, ESQUIRE
                LAUREN MENDOLERA, ESQUIRE
 7
 8
     BOIES SCHILLER FLEXNER LLP
 9   Attorneys for Respondent
                55 Hudson Yards
10              New York, New York 10001
     BY:        WILLIAM ISAACSON, ESQUIRE
11              PETER SKINNER, ESQUIRE
                ABBY DENNIS, ESQUIRE
12              ALEXANDRA JUMPER, ESQUIRE
                WILLIAM WEAVER, ESQUIRE
13
14   ALSO PRESENT:
15      KALEIGH WOOD,Paralegal
16      ERIC LIPMAN, ESQUIRE, Uber
17
18
19
20
21
22
23
24
25
```



1               D. Carlton - Direct
2      the testimony from Ms. Kennington you
3      reviewed before this hearing happened and
4      gave a short report about.
5               Now, we are disputing in this
6      arbitration whether Ms. Kennington's
7      testimony is worth any weight whatsoever, but
8      let's go ahead and assume its given some
9      weight.  Ms. Kennington states that drivers
10     generally recorded that they earn more money
11     on a surged ride, although some drivers
12     reported they did not get as many riders as
13     they wanted during a surge.
14               From a point of view of an
15     economist, if we accept that statement as
16     true, is there any consequence to it?
17         A.   No.  I think the statement is true
18     and I think the statement makes the point
19     that surge pricing is designed to increase
20     supply and lower waiting time, so the fact
21     that a driver makes more money in surge,
22     that's the whole point in surge, raise the
23     price to get drivers, so if they get the
24     business, they make more money, that's the
25     point of surge.



Page 921

1
2  we started. The major arguments and the
3  crux of this case is the very same thing we
4        were arguing before Judge Rakoff, Mr.
5        Isaacson and I, in March of 2016. And I
6        think after all of this, if you clear
7        all the evidence away and you see
8        through to the facts as everyone admits
9        they are, you will see this turns on
10       whether Judge Rakoff got it right. And we
11       submit he did, and you should follow his
12       decision.
13              Very quickly, just a blast from the
14       past. This case was about unhealthy oil
15       markets. They were failing so badly that
16       wells were being abandoned. If you read
17       through this very dense case, which I did
18       again last night, there were price wars,
19       distressed gasoline was flying onto the
20       market, businesses were going out of
21       business because they couldn't organize
22       price and the government did not
23       immunize them, didn't step in far
24       enough. The government agencies were
25       encouraging the price fixing that



Page 936

1
2          MR. FELDMAN:  Then I can flip
3     through all of this and get straight to
4     Leegin and Interstate Circuit.  I have a
5     lot here.
6          Because the points are, yes, rides
7     could be sold and there is evidence on
8     that, obviously, but the matches could
9     be made, right.  We heard testimony that
10    the batch matching works without surge
11    pricing and there are lots of
12    alternatives that we maybe spent too
13    much time going through. But there are a
14    lot of alternatives, including Uber
15 selling the rides itself, which were not possible
16    as an alternative in BMI.
17         So I will flip through many, many
18    slides and I can come back to them if it
19    comes up later.  But BMI is not going to
20    be proven in this particular case.
21         So where does that leave us.  That
22    leaves us where we began this case back
23    in front of Judge Rakoff in March of
24    2016, whether it's horizontal.  Uber's
25    arguments haven't changed and I want to


MAGNA
LEGAL SERVICES

Page 937

```
 1
 2      show you that the way they're making the
 3      argument now is the same as the way they
 4      were making the argument before and that
 5      the deciding -- the dispositive legal
 6      points haven't changed either.
 7              So here is the argument they made
 8      before.  It was Mr. Isaacson and I back
 9      then as well.  And we have the oral
10      argument transcript in the binders that
11      Boies Schiller has prepared for you so
12      you can see this for yourself.  The
13      argument is that if you accept this is a
14      horizontal conspiracy, then you have a
15      conspiracy of hundreds of thousands of
16      people who have never met each other,
17      sprawled across the nation, all of whom
18      are jointly and severally liable and
19      that simply cannot be the case.  You
20      heard the same argument here on day one
21      and we need factual evidence that all of
22      these millions of drivers are somehow
23      collaborating with each other, and if
24      you accept our theory, then every driver
25      in Uber in America is jointly and
```



Page 938

1
2    severally liable for all the damage
3    that's caused by the app or the surge
4    pricing.  And I will put on the record
5    we are not going after Uber drivers.
6         But those were the arguments that
7    Judge Rakoff rejected. They were not the
8    only arguments he rejected, but they
9    were one of them.  Judge Rakoff rejected
10 this, explaining the capacity to orchestrate
11    such an agreement was the genius
12    of Mr. Kalanick and his company, which
13    through the magic of smart phone
14    technology can invite hundreds of
15    thousands of drivers from far flung
16    locations to agree to Uber's terms,
17    which is his recitation of our
18    complaint, to be fair.  And then he
19    explained that Uber's digitally
20    decentralized nature, his words not
21    mine, does to the prevent the app from
22    constituting a marketplace through which
23    Uber organized a horizontal conspiracy
24    among drivers. And the advancement of
25    technological means need not leave



Page 939

1
2     antitrust law behind.
3            So what else was argued? And this is
4     probably the more significant argument.
5     There was a debate at the time over
6     whether this was a Leegin case or this
7     was an Interstate Circuit case, which is
8     the same debate I think we are having
9     here today as well.
10           ARBITRATOR WEINSTEIN:  Except one
11    is the 20th century, one is the 21st
12    century.  When I was a young lawyer I
13    was citing Interstate.
14           MR. FELDMAN:  We will talk about
15    the cases that continue to cite
16    Interstate Circuit, not just Judge
17    Rakoff, but United States versus Apple
18    is centered around Interstate Circuit,
19    the Toys R Us case we talked about today
20    as well.  The same arguments are made
21    that Leegin should apply rather than
22    Interstate Circuit. And Mr. Isaacson had
23    argued that what we are trying to do by
24    saying this is one conspiracy is avoid
25    the line of cases with Leegin that say,



           1
           2      no look vertical relationships
           3      properly done are innocent behavior.
           4             This was, if you look at the
           5      transcript, this was the main front of
           6      the battle for both sides before Judge
           7      Rakoff and we won that battle.  We said,
           8      no, recent jurisprudence on vertical
           9      resale price maintenance agreements does
          10      not, as defendants would have it, as
          11      defendant would have it, undermine
          12      plaintiff's claim of an illegal
          13      horizontal agreement.
          14             That here, unlike in Leegin, Uber
          15      is not selling anything to drivers that
          16      is then resold to riders.  Moreover, the
          17      justifications for rule of reason
          18      treatment of resale price maintenance
          19      agreements offered in Leegin are not
          20      directly applicable.
          21             You heard Dr. Carlton tell you
          22      today about the free rider problem and
          23      that he made an argument in the Toys
          24      R Us case but he didn't make a similar
          25      argument here.



1
2            So I will explain in more detail
3       why I think Judge Rakoff got it right
4       but --
5            ARBITRATOR WEINSTEIN:  It was at
6       the pleading stage.
7            MR. FELDMAN:  It was at the
8       pleading stage.  It did not decide the
9       case.
10           ARBITRATOR WEINSTEIN:  It's not law
11      of the case and it's not preclusive,
12      it's not issue preclusive.  It never
13      became final.  There was no right to
14      appeal.
15           MR. FELDMAN:  Let me address
16      finality.  So finality for issue
17      preclusion purposes is not what it seems
18      to be.
19           ARBITRATOR WEINSTEIN:  I read your
20      brief and I have my doubts but I will
21      see more of that later on.  They have
22      not had a chance yet to respond to that
23      so let us not do it twice before they
24      have one chance to answer it.
25           MR. FELDMAN:  I will argue it



1
2        later, whenever you like.
3            ARBITRATOR WEINSTEIN:  I'm assuming
4        -- certainly they will brief it.  They
5        didn't know it was coming because they
6        think it doesn't apply so they didn't
7        preemptively discuss it.  So let's move
8        on.
9            MR. FELDMAN:  Sure.  So why doesn't
10       Interstate Circuit apply in the first
11       place. If you go back to Interstate
12       Circuit and look at what the government
13       argued and what the Supreme Court
14       decided, it's very much the situation we
15       have here.  What Dr. Carlton called that
16       conditionality.  The government argued
17       that each distributor in that case,
18    these were the major movie distributors who
19       were invited by a big theatre company in
20       Texas to agree to certain terms, 25 cent
21       tickets and no second runs.  The
22       government argued there that each
23       distributor would benefit by unanimous
24       action where otherwise the restrictions
25       would probably injure the distributors



Page 943

```
 1
 2      who impose them, right. Meaning tying
 3      yourself like Ulysses to the mast to a
 4      restraint-- that only succeeds if
 5      everybody else ties themself to the mast.
 6   It doesn't make any sense unless you know
 7      that everyone else is not going to
 8      compete against you.
 9            Interestingly, and we can get to
10      this too, later Justice Jackson who was
11      a solicitor general who argued
12      Interstate Circuit and who is also on
13      the brief, in his brief he argued that
14      even if the evidence before the court
15      failed to show an agreement amongst the
16      distributors, their common agreement
17      with Interstate Circuit made them
18      parties to the conspiracy. That it was
19      immaterial that the several distributors
20      may have taken the  step without a prior
21      understanding or agreement with each
22      other as to concert of action.  And the
23      Supreme Court agreed. The Supreme Court
24      said an agreement was not a prerequisite,
25      meaning that actual communication among
```



 1
 2          the rim was not a prerequisite.  If you
 3          could get to that same place of having a
 4          rim where they each, knowing that
 5          concerted action was contemplated and
 6          invited, gave their adherence to the
 7          scheme and participated in it.  Each was
 8          advised that the others were asked to
 9          participate just like an Uber driver
10          partner knew that every other driver
11          partner has that same agreement. It's
12          online for the world to see. Each knew
13          that cooperation was essential to the
14          successful operation of the plan,
15          meaning if somebody else could charge
16          their own fare  and not surge a rider,
17          they would get the rider over you and
18          they knew the plan, if carried out,
19          would result in a restraint and knowing
20          all that, they participated.
21               I will show you this diagram we
22          have, courtesy of Uber.  Uber invited --
23          this was the diagram that Uber used to
24          make the point that this wasn't
25          Interstate Circuit. But this diagram is



1
2      Interstate Circuit.  You have Uber in
3      the middle, you have millions of drivers
4      all having agreements with Uber.  The
5      reason there is a rim on this conspiracy
6      is that the drivers would not agree to
7      surge unless all drivers were bound
8      to surge pricing.  It only works with
9      unanimous uniform raising of prices,
10     which is the argument we made to Judge
11     Rakoff as well.
12          How is that Interstate Circuit? We
13     substituted little car icons for little
14     movie picture icons and now we have
15     Interstate Circuit, same diagram
16     otherwise.  What did Interstate Circuit
17     do? They were in the middle and invited
18     all these distributors to limit first
19     run movies.
20          ARBITRATOR WEINSTEIN:  It wasn't a
21     price restraint.
22          MR. FELDMAN:  It wasn't a price
23     restraint, our case is easier in that
24     way, but it was a per se restraint and
25     it also worked only because there was



Page 962

1
2    available to us here which we are very
3    appreciative of, but if Uber is going to
4    make an argument about its finances and
5    what it can afford to do and what it
6    can't afford to do it has access to all
7    those witnesses it didn't put it in.
8         ARBITRATOR WEINSTEIN:  I'm just
9    asking you, you are asking, for the
10   purpose of our being here with all of
11   these people is, you think I have the
12   power under the evidence you presented
13   to enjoin surge pricing nationwide?
14        MR. FELDMAN:  We do.
15        ARBITRATOR WEINSTEIN:  Do you know
16   of a single case in which an individual
17   in an antitrust case got a nationwide
18   injunction?
19        MR. FELDMAN:  So I could find you
20   some and I would be happy to submit them
21   in post hearing briefing.
22        ARBITRATOR WEINSTEIN:  I would
23   think -- if the answer is you think
24   there is, cite it to me.  I know of
25   none.



Page 1001

1
2    three days you've spent with us, for the
3    work you've done before that, the work
4    we will be asking you to do from this
5    point forward.  We asked you for a
6    reasoned award because we believe
7    strongly that there should be a
8    declaration that a company that does
9    something like this is to be lauded under
10    the antitrust laws and not condemned
11    because otherwise the antitrust laws are
12    taking a very dangerous turn and going
13    down a very dark alley.  All of us who
14    worked hard on this appreciate all the
15    hard work you are doing.
16    ARBITRATOR WEINSTEIN:  I want to
17    say on both sides, the writing has been
18    as good as I have seen, and I have seen
19    a lot of writing.  It's been excellent.
20    I want to say to you Mr. Meyer, not --
21    Mr. Feldman, not only do you have the
22    burden of proof, you have the burden of
23    persuasion.  If you think you can
24    distinguish Leegin and you want to brief
25    it, I haven't read Leegin recently but



```
 1
 2        if you want to brief it, I will give you
 3        the opportunity but I think that's where
 4        your case rests:  Distinguishing Leegin.
 5             Most of the cases we talk about are
 6        cases decided before the internet
 7        existed, before this digital age was
 8        upon us which has changed a lot of
 9        stuff.
10             I must say I act out of fear.  My
11        fear is if I ruled Uber illegal, I would
12        need security.  I wouldn't be able to
13        walk the streets at night.  People would
14        be after me.
15             So I want to thank you for your
16        hospitality.
17             Do you want to brief it.
18             MR. FELDMAN:  Of course, yes.
19             ARBITRATOR WEINSTEIN:  How much
20        time do you want to brief it?
21             MR. FELDMAN:  I'm not sure.  I
22        would like to talk to Mr. Isaacson.
23             ARBITRATOR WEINSTEIN:  You can
24        brief whatever you want to brief but I
25        have a good handle on all the arguments
```

