# EXHIBIT J

```
THE ARBITRATION TRIBUNALS OF THE AMERICAN
ARBITRATION ASSOCIATION
- - - - - - - - - - - - - - - - - - - - -x
In the Matter of Arbitration between
SPENCER MEYER,
         Claimant,
                           Les Weinstein
   -against-              AAA No. 01-18-0002-1956
UBER TECHNOLOGIES, INC.,
         Respondent.
- - - - - - - - - - - - - - - - - - - - -x
                     October 23, 2019
                     9:30 a.m.

                     BOIES SCHILLER FLEXNER LLP
                     55 Hudson Yards
                     New York, New York 10001

B E F O R E:

        LES WEINSTEIN, The Arbitrator


                       - - -



             MAGNA LEGAL SERVICES
       320 West 37th Street, 12th Floor
           New York, New York 10018
                (866) 624-6221
```



```
 1
 2   APPEARANCES:
 3
 4   HARTER SECREST & EMERY LLP
     Attorneys for Claimant
 5            1600 Bausch & Lomb Place
              Rochester, New York 14604
 6   BY:      BRIAN M. FELDMAN, ESQUIRE
              LAUREN MENDOLERA, ESQUIRE
 7            ANDREW SCHMIDT, ESQUIRE
 8   BOIES SCHILLER FLEXNER LLP
     Attorneys for Respondent
 9            55 Hudson Yards
              New York, New York 10001
10   BY:      WILLIAM ISAACSON, ESQUIRE

11            PETER SKINNER, ESQUIRE
              ABBY DENNIS, ESQUIRE
12            ALEXANDRA JUMPER, ESQUIRE
              WILLIAM WEAVER, ESQUIRE
13
14
15   ORRICK HERRINGTON & SUTCLIFFE LLP
     Attorneys for Witness, Travis Kalanick
16            405 Howard Street
17            San Francisco, CA 94105
18   BY:      WALTER BROWN, ESQUIRE
              MIRANDA HAAG, ESQUIRE
19
20
21    ALSO PRESENT:
22
        SPENCER MEYER, CLAIMANT
23      KALEIGH WOOD, PARALEGAL
24      ERIC LIPMAN, ESQUIRE, UBER
25
```



Page 56

```
 1          S. Meyer - Direct
 2     in a sense, certain presumptions that he
 3     might not get if there were an Appellate
 4     Court standing there to rule on certain
 5     things.
 6          I have, in my mind, decided nothing
 7     or certainly nothing I would tell you
 8     about.  I claim to have an open mind.  I
 9     am aware there are lots of issues in
10     this case that are fascinating and it,
11     obviously, involves more than $80, so
12     with that in mind, proceed.
13          MR. FELDMAN:  Thank you, Mr.
14     Weinstein.
15 DIRECT EXAMINATION
16 MR. FELDMAN:
17     Q.   Good morning, Mr. Meyer.
18     A.   Good morning.
19     Q.   I would like to start with a few
20 background questions.
21          Mr. Meyer, how old are you?
22     A.   Forty-one.
23     Q.   Where do you live?
24     A.   Guilford, Connecticut.
25     Q.   With whom?
```



```
 1              T. Kalanick - Direct
 2   T R A V I S   K A L A N I C K,  called as a
 3      witness, having been duly sworn by a
 4      Notary Public, was examined and testified
 5      as follows:
 6           MR. FELDMAN:  claimant calls Mr.
 7      Kalanick as its next witness, as an
 8      adverse witness.
 9   DIRECT EXAMINATION
10   BY MR. FELDMAN:
11      Q.   Good afternoon, Mr. Kalanick.
12      A.   Good afternoon.
13      Q.   My name is Brian Feldman.  We met
14   at your deposition.  I want to start with
15   just a few questions about your current
16   relationship with Uber Technologies, which I
17   will call Uber.
18           You currently sit on Uber's board
19   of directors, is that right?
20      A.   That's correct.
21      Q.   You are one of nine current
22   directors at Uber?
23      A.   That sounds about right, but I
24   would have to count.
25      Q.   The others would be Ronald Sugar,
```



```
 1            T. Kalanick - Direct
 2      Q.    Who were Uber's founders?
 3      A.    Myself and Garrett Camp.
 4      Q.    You first learned of the idea that
 5  become Uber from Mr. Camp, is that right?
 6      A.    That's correct.
 7      Q.    That was around December 2008?
 8      A.    Yes, that's correct.
 9      Q.    Something called the LeWeb,
10  L-E-W-E-B, Tech Conference in Paris?
11      A.    Yes, that's correct.
12      Q.    It was at that conference, Garrett
13  Camp told you he wanted to push a button and
14  get a ride and he was very excited about it
15  being a nice car, right?
16      A.    That's correct.
17      Q.    Mr. Camp's idea, at least
18  initially, was that Uber would own the cars
19  and employ the drivers, right?
20      A.    That is correct.
21      Q.    But you weren't excited about that
22  approach, were you?
23      A.    No, I thought there were enough
24  cars on the road already.
25      Q.    You didn't want to be in the limo
```



                    T. Kalanick - Direct
the following answer.
          Question: In a new city where Uber
launched in that period of time, what was the
pitch to drivers?
          Answer: It was the same.
          Did I read that correctly?
     A.   I think so.
     Q.   We are still talking about this
period between 2010 and 2013.
          Did ▉▉▉▉▉▉▉ work at Uber
during that period?
     A.   Yes, she did.
          ARBITRATOR WEINSTEIN: Before you
     get to that, the one thing I want to
     understand, are you only pitching this
     to people that are already in the
     driving business?
          THE WITNESS: Yes.
          ARBITRATOR WEINSTEIN: Or are you
     trying to bring new people in as Uber
     drivers?
          THE WITNESS: Generally, most of
     the people were already in the business,
     especially when we would launch the



```
 1          T. Kalanick - Direct
 2      original service from, let's call it mid
 3      2010 to early 2013.  There were
 4      some times where we would pitch
 5      individuals to start, like get into this
 6      business.  It could be a good thing and
 7      that happened on occasion, but the
 8      majority were people who were already in
 9      the business.
10              ARBITRATOR WEINSTEIN:  When you say
11      you were trying to get them to more
12      efficiently utilize their time, you were
13      actually trying to fill in their blank
14      spaces?
15              THE WITNESS:  Correct.  And for any
16      black car on the road, here in New York
17      City or anywhere, that's still our pitch
18      today, for black cars.
19              ARBITRATOR WEINSTEIN:  Got it.
20       Q.    Returning to ███████████ who
21  worked at Uber during that time period, her
22  role was to launch Uber in new cities, is
23  that right?
24       A.    She ran that function, so she would
25  launch, but she had a team of people
```



```
 1              T. Kalanick - Direct
 2       Q.   Let's talk about your level of
 3  involvement in this case before it became the
 4  arbitration?
 5              MR. FELDMAN:  And, Mr. Arbitrator,
 6       I'm asking these questions to probe
 7       privity for purposes of our preclusion
 8       defense, preclusion argument.
 9              If you will stipulate that Mr.
10       Kalanick is in privity with Uber in the
11       District Court litigation, I can skip
12       this section of my questions.
13              MR. ISAACSON:  Can I take a minute?
14              ARBITRATOR WEINSTEIN:  It seems
15       that was pretty much your argument
16       before the judge below.
17              (Off the record. )
18              MR. ISAACSON:  For the record, are
19       you talking about the period when he is
20       CEO or after that?
21              MR. FELDMAN:  To be specific, what
22       I'm trying to establish is that Uber,
23       the company, and Mr. Kalanick were in
24       privity as that doctrine exists on issue
25       preclusion when the decision on the
```



```
 1         T. Kalanick - Cross
 2    motion to dismiss was decided by Judge
 3    Rakoff.And we've laid out this argument
 4    in our papers, in our prehearing brief,
 5    if you won't contest the privity point.
 6         MR. ISAACSON:  What is the date of
 7    the decision?
 8         MR. FELDMAN:  The date of the
 9    decision, he was still CEO of the
10    company.  It was March 31, 2016.
11         MR. ISAACSON:  During the period he
12    was CEO, we don't contest that he is CEO
13    and in privity with the company.
14         ARBITRATOR WEINSTEIN:  It seems to
15    me that's good enough for you.  Whatever
16    date that is, you can figure that out.
17         MR. FELDMAN:  If that's good enough
18    for you, it's good enough for me, Mr.
19    Weinstein.
20         No further questions at this time.
21    Thank you, Mr. Kalanick.
22 CROSS-EXAMINATION
23 BY MR. ISAACSON:
24    Q.  A few follow-up questions, Mr.
25 Kalanick.
```


MAGNA LEGAL SERVICES