# Exhibit 1

**AMERICAN ARBITRATION ASSOCIATION**
**CONSUMER ARBITRATION RULES**

| | |
|---|---|
| SPENCER MEYER,<br><br>       Claimant,<br><br>v.<br><br>UBER TECHNOLOGIES, INC. AND TRAVIS KALANICK,<br><br>       Respondents. | Case No. 01-18-0002-1956 |

**RESPONDENT UBER'S ANSWER**

Pursuant to Rule 2(c) of the American Arbitration Association Consumer Arbitration Rules, Respondent Uber Technologies, Inc. ("Respondent" or "Uber") respectfully submits this Answer to the Demand for Arbitration ("Demand") submitted on May 31, 2018 by Spencer Meyer ("Claimant" or "Meyer").

**GENERAL DENIAL**

Respondent denies each and every allegation, statement and matter not expressly admitted or qualified herein. Claimant is not entitled to any of the relief claimed in the Demand, or at all.

**SPECIFIC RESPONSES TO DEMAND ALLEGATIONS**

Uber responds to the primary allegations in Meyer's Demand in the order in which they are presented because Meyer's Demand does not contain numbered paragraphs.

1. **Preliminary Statement**

Uber is an innovative technology company that connects independent driver-partners and riders through its smartphone application. As a new entrant in the transportation marketplace, Uber has vastly increased options, reduced prices and improved service for millions of Americans. Antitrust law has long appreciated the procompetitive benefits that come along with technological innovation and new market entry. Claimant's Demand nonetheless invokes that same antitrust law to shut down Uber's innovative technology and its benefits to consumers and competition — indeed, Meyer does not simply seek monetary relief for the handful of rides for which he (wrongly) claims he was overcharged, but sweeping declaratory and injunctive relief that would prevent Uber from using its pricing algorithm.

The Demand attempts this feat by alleging a wildly implausible—and physically impossible—conspiracy among hundreds of thousands of independent transportation providers all across the United States ("driver-partners"), based solely on the fact that they agreed to use Uber's pricing algorithm, and at some point in time accepted ride requests via the Uber App. To credit those claims would turn antitrust on its head by strangling innovation, decreasing competition, and increasing prices—defeating precisely the behavior antitrust law is designed to encourage.

As Uber looks forward to establishing at the appropriate time in this arbitration, Meyer's antitrust theory is simply wrong. According to Meyer's amended complaint, each and every driver-partner joined a single "horizontal" agreement—that is, an agreement between direct competitors—to fix prices when using the Uber App. But the complaint lacks any specific factual allegations to support any reasonable inference that driver-partners came to an agreement among themselves to violate the law, as opposed to their independent decisions to enter into

vertical agreements with Uber.  These agreements only serve to underscore the legality of the conduct at issue:  Uber, an upstream technology company, has proposed contractual terms of dealing to downstream transportation providers that include use of Uber's pricing algorithm, and those downstream providers who wish to become driver-partners for Uber have agreed to those contractual terms and used the algorithm.  Those driver-partners, moreover, remain free to contract with Uber's many competitors in the transportation marketplace that offer their own mobile applications for matching riders and drivers—including Lyft and traditional taxi companies.

For nearly a century, the Supreme Court has made clear that it is perfectly lawful for a vertical actor like Uber to announce terms of dealing to prospective downstream counterparties, and to deal only with those who agree to its preferred terms.  Meyer seeks to avoid this settled jurisprudence by making manifestly implausible and factually unsupported allegations of a horizontal conspiracy.

**2.      The Dispute**

Meyer registered for an Uber rider account on October 18, 2014.  As a condition of registering to use Uber's services, Meyer was required to agree to Uber's Terms of Service.  At the time Plaintiff registered for an Uber rider account, Uber's Terms of Service contained an arbitration clause, requiring Uber and Uber users like Meyer to submit "any dispute, claim or controversy arising out of or relating to . . . the use of the [Uber] Service or Application" to "binding arbitration."

On December 16, 2015, notwithstanding this arbitration agreement, Meyer filed suit in the United States District Court for the Southern District of New York against Travis Kalanick, the co-founder and then-CEO of Uber, for alleged violations of the Sherman Act, 15 U.S.C. § 1,

and the Donnelly Act, N.Y. Gen. Bus. Law § 340, claiming that the Uber App allows third-party transportation providers to fix prices amongst themselves, forcing riders like Meyer to pay a higher price than if the third-party transportation providers competed on price.

After Kalanick moved to dismiss, Meyer amended his Complaint on January 29, 2016. Although all of Plaintiff's claims arose out of or related to Uber's application and services, Meyer again brought his amended claims solely against Kalanick individually. Kalanick again moved to dismiss. And on March 31, 2016, the district court, Honorable Jed S. Rakoff presiding, denied that motion.

In doing so, Judge Rakoff found that Meyer had pled a claim upon which relief could be granted. The Court did not, as Meyer now wrongly suggests, reach any "key findings and conclusions" related to Meyer's allegation that Uber is a price fixing conspiracy. Even the selective and incomplete quotations that Meyer includes in his demand make clear that Judge Rakoff believed that Meyer's allegations, if true and with all inferences drawn in Meyer's favor, were sufficient to state an antitrust conspiracy claim, not that an antitrust conspiracy in fact existed.

On April 14, 2016, Kalanick filed an answer, a copy of which is attached as Exhibit A.[1] On May 20, 2016, Kalanick filed a Motion for Joinder, requesting that Uber be joined as a necessary party to the district court action. On May 24, 2016, Uber filed a motion requesting that the Court permit it to intervene. The Court granted Kalanick's motion on June 19, 2016, and ordered that Uber be joined as a defendant. It denied Uber's motion as moot.

---

[1] We have conferred with Travis Kalanick's counsel. Mr. Kalanick joins in Uber's Answer to Meyer's demand and further incorporates the denials, admissions and defenses asserted in his Answer to Meyer's complaint.

4

Kalanick moved to compel Meyer to arbitrate on June 7, 2016, and Uber moved to compel Plaintiff to arbitrate on June 21, 2016. Meyer opposed the motions, denying that he had ever assented to Uber's Terms of Service.

Uber filed an Answer to Meyer's First Amended Complaint, a copy which is attached as Exhibit B, on July 29, 2016. Uber incorporates in this Answer to Meyer's Demand for arbitration the denials, admissions and defenses asserted in its Answer to Meyer's complaint. To avoid any doubt, Uber also denies that its business model involves any form of anticompetitive price fixing.

Also on July 29, 2016, Judge Rakoff denied both motions to compel, finding that Meyer had not assented to Uber's Terms of Service, including the arbitration provision. In doing so, Judge Rakoff expressed deep reservations about consumers waiving their "precious and fundamental right" to jury trials by entering into arbitration agreements over the internet, and characterized assent to such electronic agreements as a "legal fiction." *Meyer v. Kalanick*, 200 F. Supp. 3d 408, 410 (S.D.N.Y. 2016), *vacated Meyer v. Uber Tech., Inc.*, 868 F.3d 66 (2d Cir. 2017). The Court proceeded to review Uber's registration screens and determine that "'a reasonably prudent user'" would not have been "put 'on inquiry notice' of the terms" of Uber's Terms of Service, which included an agreement to arbitrate, when registering for the Uber App. *Id.* at 416 (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)).

Uber and Kalanick filed notices of appeal on August 5, 2016. On that same day, they filed a joint motion to stay the district court proceedings pending appeal. The district court granted the motion on August 26, 2016.

The Second Circuit subsequently granted Uber's and Kalanick's appeals. Reviewing *de novo* the same registration screens that Judge Rakoff had considered and found lacking, the

5

Circuit began its analysis by observing that it must consider the "perspective of a reasonable smartphone user," and that in doing so, "need not presume that the user has never before encountered an app or entered into a contract using a smartphone." *Meyer v. Uber Tech., Inc.*, 868 F.3d at 78. The court further observed that, the "reasonably prudent smartphone user knows that text that is highlighted in blue and underlined" — like the link to the Terms of Service that Meyer encountered — "is hyperlinked to another webpage where additional information will be found." *Id.* Turning to the "interface at issue," the Second Circuit rejected Judge Rakoff's findings and concluded instead that "the design of the screen and language used render the notice provided reasonable." *Id* at 78-79.

The Circuit vacated Judge Rakoff's order denying the motions to compel arbitration and remanded the case to Judge Rakoff to address collateral issues. After resolving those issues, Judge Rakoff entered an order on March 18, 2018 that granted Uber's motion to compel arbitration and dismissed Meyer's claims against Kalanick.

**3.    The Facts and Legal Issues**

Meyer is incorrect that the principal facts and legal issues have already been resolved in Meyer's favor. As Judge Rakoff observed, "the Court [was] required to draw all reasonable inferences in [Meyer's] favor," and "[g]iven this standard, the Court [found] that [Meyer had] plausibly alleged a conspiracy." *Meyer v. Kalanick*, 174 F. Supp. 3d 817, 820 (S.D.N.Y. 2016). But whether Meyer's "allegations are in fact accurate is a different matter, to be left to the factfinding process." *Id.*

Moreover, Uber did not admit facts in the district court case sufficient to prove the existence of an antitrust conspiracy, as Meyer now seems to suggest. The facts Meyer recites say nothing about whether Uber's driver-partners agreed with each other to set prices, much less

6

whether they did so in a manner that violated the antitrust laws. Meyer's suggestion that this case is an easy one that can be resolved on the papers is simply wrong. To the contrary, Uber expects there to be substantial development of the factual record.

**4.      Meyer Is Not Entitled to the Declaratory and Injunctive Relief He Seeks**

Meyer seeks a declaration that the use of Uber's pricing algorithm to set fares is illegal and an injunction prohibiting Uber and Kalanick from continuing to use the Uber pricing algorithm. The arbitration agreement provides that the "arbitrator may award declaratory or injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim." Meyer is not entitled to sweeping declaratory and injunctive relief he seeks because it is not necessary to provide relief for his claim — that he had to pay higher prices because of an alleged price fixing conspiracy. If Meyer were injured, he will be made whole with monetary damages. Indeed, Meyer's request for declaratory and injunctive relief with respect to Kalanick is particularly meritless given that Kalanick is no longer Uber's CEO. Uber and Kalanick anticipate that, at the appropriate time, they will request to make a motion to dismiss the Demand's claims for declaratory and equitable relief.

**5.      Uber Requests a Hearing**

Meyer seems to suggest that this arbitration should be resolved on the papers because his claim does not exceed $10,000. The arbitration agreement provides: "If your claim does not exceed $10,000, then the arbitration will be conducted solely on the basis of documents you and Company submit to the arbitrator, unless you request a hearing or the arbitrator determines that a hearing is necessary." Uber requests a hearing. Meyer raises a complicated antitrust claim that all of the hundreds of thousands of independent drivers using the Uber App in the United States entered into a single agreement to fix prices when using the Uber App. He further seeks to shut

down Uber's App—an app that has been used billions of times by millions of users. The court should not resolve this substantial antitrust matter without receiving evidence and argument at a hearing.

## PRAYER FOR RELIEF

WHEREFORE, Respondent prays that the Demand be dismissed with prejudice and that Respondent be awarded such other relief as the arbitrator deems just and proper.

Dated: New York, New York
July 5, 2017

BOIES SCHILLER FLEXNER LLP

By: /s/ Peter M. Skinner

Karen L. Dunn
William A. Isaacson
1401 New York Ave., NW
Washington, DC 20015
Tel: (202) 237-2727
Fax: (202) 237-6131
kdunn@bsfllp.com
wisaacson@bsfllp.com

Peter M. Skinner
575 Lexington Avenue, 7th Floor
New York, NY 10022
Tel: (212) 446-2300
Fax: (212) 446-2350
pskinner@bsfllp.com

*Counsel for Respondent Uber Technologies, Inc.*