# Exhibit 7



January 24, 2020

**BY ELECTRONIC MAIL**
Karen D'Amico
Manager of ADR Services
KarenDAmico@adr.org

    Re:    *Spencer Meyer v. Uber Technologies, Inc.*
            AAA Case Number 01-18-0002-1956

Dear Ms. D'Amico:

    Claimant Spencer Meyer writes to advise the tribunal of two significant developments.

    *First*, we attach, as **Exhibits A-1**, **A-2**, **A-3**, and **A-4**, several media reports this week explaining that Uber is permitting drivers, in certain areas, to opt out of surge pricing and compete on price. At the hearing, Uber took the position that permitting drivers to opt out of surge pricing or to compete on price by modulating price up or down was impracticable and unsafe. *See, e.g.* Uber Post-Hearing Br. at 13. Uber also suggested that "the Uber marketplace" could not be "operational" if these charges were made and price competition permitted. *See id.* at 27.

    But, according to the attached reports, Uber has since modified its app to permit drivers to do exactly that—to opt out of surge and to compete on price. The modification allows drivers both to "charge more than the base fare . . . in multiples of 1.0 to 5 and in increments of 0.1" and "to set fares lower than the base fare." *See* A-2 at 2. "Drivers will be able to opt out of surge" and "choose not to accept surge pricing." *See* A-4 at 2. The way the feature works is that "drivers and passengers will be paired with the **lowest/cheapest driver price**, so if [a first driver] opt[s] out of surge but [a] fellow driver does not, [the first driver] will get the ride over them." *Id.* at 4 (showing Uber screenshots). Articles note that this price competition should benefit riders. *See, e.g.*, A-2 at 2 ("I don't see anyone raising rates and getting rides.") ("Even if there's a price surge most drivers are going to go low because they'll get more rides."); A-3 at 3 ("Since jobs go to the lowest bidder under the new rule, some believe drivers will end up earning far less than they did under old regulations."). Uber, according to the article may "deploy" this feature—price competition and a surge opt-out—"more broadly in the months ahead." A-4 at 2. We ask that the tribunal be permitted to consider this week's action by Uber.

    *Second*, we attach, as **Exhibit B**, a screenshot from Uber's website explaining that, at least in California, Uber is matching driver fare multiples exactly with rider fare multiples. At the

Harter Secrest & Emery LLP
ATTORNEYS AND COUNSELORS

January 24, 2020
Page 2

hearing, Uber took the position that surge was "decoupled," because what "a driver-partner earns (a fixed amount, or 'additive') when surge is in effect is not what a rider pays (a multiplier)." Uber Post-Hearing Br. at 9. Meyer took that position that an exact match is immaterial, and that the evidence established that drivers share a common motive to surge because, whether matched exactly or not, surged rides result in higher fares for drivers, except in "very rare" cases. Trans. 324:23-325:2.

But now, Uber has redesigned surge pricing, at least in California, so that driver fare multiples and rider fare multiples match exactly. The Uber website explains to Uber drivers that the "amount you earn for Surge will now match the amount a driver pays in Surge on every trip, less Uber's fixed Service Fee. This means that drivers will now earn multiples of the fare . . . when it's busy and riders pay more a trip. You will be able to see the Surge multiples (e.g., 1.8x) highlighted in orange on your map." *See* Ex. B at 5. The website displays a sample driver map. *Id*. at 2. It shows multipliers; and the text beside it explains, "Your trip earnings will be based on the same Surge multiple that the rider pays." According to the Uber website, this change was posted on January 8, 2019. Meyer had submitted his post-hearing reply brief the day before.

Meyer recognizes that the hearing record has been closed. Nevertheless, Meyer respectfully requests that the arbitrator be permitted to consider these exhibits reflecting significant post-hearing developments. To the extent such consideration requires the hearing to be reopened, Meyer respectfully requests that it be reopened for the limited purpose of considering this submission. *See* Consumer Arbitration Rules, R-41.[1]

Respectfully submitted,

Harter Secrest & Emery LLP

/s/ Brian M. Feldman

Brian M. Feldman
PARTNER, DIRECT DIAL: 585.231.1201
EMAIL: BFELDMAN@HSELAW.COM

Attachments (Exhibits A & B)

cc:   Arbitrator Les J. Weinstein (lesweinsteinadr@gmail.com)
      All Uber counsel

---

[1] Because the "contract(s) out of which the controversy has arisen" does not provide a "specific time" for "the making of the award," the arbitrator may reopen the hearing without seeking Uber's consent. *See id*. "If the arbitrator reopens the hearing, he . . . will have 30 days from the closing of the reopened hearing within which to make the award." *Id*. That means, if the arbitrator reopens the hearing for the limited purpose of considering this submission and closes it again, the award would due in 30 days from today, *i.e.*, on Monday, February 24, 2020.